## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

**Civil Case Number:** _____

| | | |
|---|---|---|
| ANDREA ROSSI, individually; and LEONARDO CORPORATION, a Florida corporation, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | **CIVIL COMPLAINT & DEMAND FOR JURY TRIAL** |
| THOMAS DARDEN, individually; JOHN T. VAUGHN, individually; INDUSTRIAL HEAT, LLC, a Delaware limited liability company; IPH INTERNATIONAL B.V., a Netherlands company; and CHEROKEE INVESTMENT PARTNERS, LLC, a Delaware limited liability company, | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) / | |

### COMPLAINT

Plaintiffs, ANDREA ROSSI ("ROSSI") and LEONARDO CORPORATION ("LEONARDO"), a Florida corporation, sue Defendants, THOMAS DARDEN, individually; JOHN T. VAUGHN, individually; INDUSTRIAL HEAT, LLC, a Delaware limited liability company; and IPH INTERNATIONAL B.V., a Netherlands company; and CHEROKEE INVESTMENT PARTNERS, LLC, a Delaware limited liability company; and allege:

### I.  NATURE OF ACTION

1.      ROSSI is the sole inventor of a revolutionary low energy nuclear reactor, popularly known as the "Energy Catalyzer" or "E-Cat" (hereafter "E-Cat"), which through the use of a catalyst, generates a low energy nuclear reaction resulting in an exothermic release of energy at a

cost well below more traditional energy sources. LEONARDO, a Florida corporation, is the sole owner of all of the intellectual property related to and underlying the E-Cat technology (hereafter "E-Cat IP").

2.     Defendants, THOMAS DARDEN ("DARDEN"), JOHN T. VAUGHN ("VAUGHN"), INDUSTRIAL HEAT, LLC ("IH"), IPH INTERNATIONAL, B.V. ("IPH") and CHEROKEE INVESTMENT PARTNERS, LLC ("CHEROKEE") have meticulously and systematically defrauded ROSSI and LEONARDO in an effort to misappropriate Plaintiffs' intellectual property rights in the E-Cat IP.

3.     DARDEN, VAUGHN, IH, and CHEROKEE induced Plaintiffs to enter into a License Agreement which granted IH a geographically limited license to use the E-Cat IP despite the fact that they had no intention of paying ROSSI and/or LEONARDO the agreed upon price.

4.     Notwithstanding its contractual obligation to do so, IH and its assignee, IPH, refused to pay LEONARDO the agreed upon amount for the license to use the E-Cat IP in furtherance of their fraudulent scheme to wrongfully deprive ROSSI and LEONARDO of their intellectual property. At all times relevant hereto, DARDEN, VAUGHN, IH, IPH and CHEROKEE intentionally and willfully failed to disclose to ROSSI and LEONARDO their intention to misappropriate the E-Cat IP and deprive the Plaintiffs of the same without compensation.

5.     Moreover, Defendants IH and IPH have misappropriated the E-Cat IP; illegally copied ROSSI's innovative technology and products, features, designs; and, have wrongfully attempted to obtain a patent for ROSSI and LEONARDO's intellectual property. Instead of pursuing independent product development, or utilizing the E-Cat IP within the scope of its geographically limited license, IH and IPH slavishly copied ROSSI and LEONARDO's

technology illegally claiming the E-Cat IP as its own in violation of ROSSI and LEONARDO's valuable intellectual property rights. Furthermore, IH has infringed upon ROSSI and LEONARDO's intellectual property rights by actively pursuing patents in foreign jurisdiction predicated upon the innovations and technology developed by ROSSI and LEONARDO including the E-Cat IP.

6.      ROSSI and LEONARDO are filing this suit to enforce the terms of the License Agreement and to put an end to IH and IPH's continued wrongful infringement upon ROSSI and LEONARDO's valuable intellectual property.

## II.      THE PARTIES

7.      Plaintiff ROSSI is a resident of Miami-Dade County, Florida whose principal residence is located in Miami Beach, Florida 33139.

8.      Plaintiff LEONARDO[1] is a Florida corporation having its principal place of business located at 1331 Lincoln Road, Apt. 601, Miami Beach, Florida 33139.

9.      Defendant DARDEN is a resident of North Carolina and is, *inter alia,* the President of Industrial Heat, LLC, the CEO of Cherokee Investment Partners, LLC and is otherwise *sui juris*.

10.      Defendant VAUGHN is a resident of North Carolina and is, *inter alia,* the Vice-President of Industrial Heat, LLC, and Manager at Cherokee Investment Partners, LLC and is otherwise *sui juris*.

11.      Defendant INDUSTRIAL HEAT ("IH") is a Delaware limited liability company having its principal place of business at 111 East Hargett Street, Suite 300 Raleigh, NC 27601.

12.      Defendant IPH INTERNATIONAL B.V. ("IPH") is a Netherlands company having its principal place of business at Kepler 34, 1171CD Badhoevedorp, Netherlands.

---

[1] LEONARDO CORPORATION, a New Hampshire Corporation, was merged into LEONARDO CORPORATION, a Florida Corporation, wherein the Florida Corporation was the surviving entity.

13.     Defendant CHEROKEE is a Delaware limited liability company having its principal place of business at 111 East Hargett Street, Suite 300 Raleigh, NC 27601.

### III. JURISDICTION AND VENUE

14.     This Court has subject matter jurisdiction under 28 U.S.C. §1332 (diversity), 28 U.S.C. §1331 (federal question) and 28 U.S.C. §1338(a) (any act of Congress relating to patents or trademarks).

15.     United States Code §1332 provides original jurisdiction over an action between citizens of different states and in which the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00), exclusive of interests and costs.

16.     The amount in controversy in the instant matter exceeds Eighty-Nine Million Dollars ($89,000,000.00). Moreover, complete diversity exists because the respective Plaintiffs and Defendants are citizens of different states.

17.     This Court has personal jurisdiction over Defendants DARDEN, VAUGHN, IH, IPH and CHEROKEE under Florida's Long Arm Statute, §48.193, Fla. Stat., in that the Defendants have (a) breached a contract in the state; (b) directed tortious actions into the state causing damage to Plaintiffs within the State of Florida; (c) entered into a contract with a specific forum selection/choice of law provision; (d) engaged in substantial commercial activity within the State of Florida; (e) engaged in solicitation within the state; and (f) conducted and engaged in the operation of a business in the state.

18.     Moreover, this Court has personal jurisdiction over Defendants DARDEN, VAUGHN and IH under Florida's Long Arm Statute, §48.193, Fla. Stat., in that such Defendants (a) participated in and/or observed the testing of the E-Cat Unit in Miami, Florida; and (b) attended

4

meetings regarding the License Agreement in Miami, Florida in furtherance of their fraudulent scheme.

19.    By committing tortious acts within the State of Florida and directing their fraudulent scheme into the State of Florida, Defendants DARDEN, VAUGHN, IH, IPH and CHEROKEE have purposefully availed themselves of this Court's jurisdiction, and have maintained sufficient minimum contacts for this Court to exercise such jurisdiction.

20.    Moreover, IH and IPH have committed and continue to commit acts of infringement in violation of 35 U.S.C. §271 pursuant to a specific fraudulent scheme both directed to, and perpetrated within this District.

21.    The acts by DARDEN, VAUGHN, IH, IPH and CHEROKEE have caused injury to ROSSI and LEONARDO within this District.

22.    Upon information and belief, Defendants IH and IPH have derived substantial revenue from the operations conducted in Miami, Florida, involving the leasing of the very technology and intellectual property that is at the heart of this Complaint to customer(s) within this District.

23.    At all times material hereto, Defendants expected their actions to have consequences within this District, and anticipated that they would derive substantial revenue from their tortious acts taken in, and directed to, this District.

24.    Venue is proper within this District under 28 U.S.C. §1391(b) and (c) because the Defendants transact business within this District and have offered for lease in this District the device which infringes upon the LEONARDO patents. Moreover, the device derived from the underlying intellectual property which is the subject of this litigation is located within this District.

25.     Venue is also proper in this District because LEONARDO's principal place of business is in this District and LEONARDO suffered harm in this District. Additionally, a substantial part of the events giving rise to the claims herein occurred in this District.

## IV. PATENTS IN SUIT

26.     LEONARDO and ROSSI have filed numerous patent applications, provisional patent applications, PCT applications and trademark applications in order to protect their intellectual property.

27.     On or about December 15, 2010, the European Patent Office duly and legally published European Patent No. 2259998 (the "European Patent") entitled "Method and Apparatus for Carrying Out Nickel and Hydrogen Exothermal Reaction."

28.     On or about April 6, 2011, the Italian Patent and Trademark Office (in Italian "Ufficio Italiano Brevetti e Marchi") duly and legally issued Italian Patent No. 0001387256 (the "Italian Patent") entitled "Processo ed apparecchiatura per ottenere reaxioni esotrmiche, in particolare da nickel ed idrogeno."

29.     On August 25, 2015, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 9,115,913 B1 (the "US Patent") entitled "Fluid Heater." A true and correct copy of the "US Patent" is attached hereto as Exhibit "A."

30.     At all times relevant hereto, DARDEN, VAUGHN, IH, IPH and CHEROKEE had knowledge and notice of the European Patent, the Italian Patent and the US Patent, as well as of IH and IPH's infringement of such patents.

## V. FACTUAL BACKGROUND

31.     Over the past twenty (20) years, ROSSI has invented, developed and improved numerous apparatuses and processes used to generate an exothermic reaction, utilizing a

proprietary fuel wafer employing both reagents and a catalyst, which produces energy substantially in excess of the amount of energy input into the reaction at a cost substantially below that of more traditional energy sources. This device is popularly known as the "Energy Catalyzer" or "E-Cat."

32.    The design and construction of the apparatus, as well as the process by which the device operates, constitutes the intellectual property of ROSSI and LEONARDO. LEONARDO is the sole owner of all rights, title and interest in the underlying E-Cat IP.

33.    LEONARDO and ROSSI have protected their innovative and cutting edge intellectual property through a broad range of intellectual property rights including, but not limited to the US Patent, the Italian Patent, the European Patent, as well as numerous provisional patents, and PCTs.

34.    In early 2012, ROSSI and LEONARDO were contacted by Defendants DARDEN, VAUGHN and CHEROKEE, who expressed an interest in licensing the E-Cat IP in the United States of America.

35.    In pursuit of their stated desire to obtain a license for the E-Cat IP, Defendant DARDEN, and other CHEROKEE representatives, traveled to LEONARDO's office in Miami, Florida in an effort to convince and induce ROSSI and LEONARDO to grant CHEROKEE a license for the E-Cat IP.

36.    Thereafter, Defendant CHEROKEE sent representatives to LEONARDO's facility in Bologna, Italy in an effort to further convince ROSSI and LEONARDO to grant CHEROKEE a license for the E-Cat IP.

37.    Similarly, Defendant VAUHGN arranged to meet with ROSSI and LEONARDO in Zurich, Germany to further discuss CHEROKEE's interest in obtaining a license for the E-Cat IP and to emphasize CHEROKEE's ability and willingness to pay for such license.

38.     At each of the aforementioned meetings, DARDEN, VAUGHN and CHEROKEE repeatedly stated that "CHEROKEE has billions of dollars at its disposal, and is willing to pay ROSSI and LEONARDO" to license the E-Cat IP.

39.     Moreover, at these meetings, DARDEN, VAUGHN and CHEROKEE fraudulently represented:

   a.   That if CHEROKEE were granted a license to the E-Cat IP, they would protect the E-Cat IP from dissemination so as to maximize the value of the intellectual property around the world; and

   b.   That they were authorized to use the funds managed by CHEROKEE to pay LEONARDO in excess of One Hundred Million Dollars ($100,000,000.00) for the E-Cat IP license.

40.     In reliance upon such representations, ROSSI and LEONARDO, with the assistance of their Italian attorney, negotiated the terms of a license agreement with CHEROKEE. Once the terms of the license agreement had been negotiated, ROSSI, at the suggestion of Defendants DARDEN and VAUGHN, traveled to Defendant CHEROKEE's office to execute the license agreement on October 26, 2012.

41.     Upon arrival at the CHEROKEE office, Defendants DARDEN and VAUGHN informed ROSSI and LEONARDO that they had formed a new business entity named INDUSTRIAL HEAT, LLC, which was a "branch of Cherokee Investment Partners, LLC" to serve as the holding company for the E-Cat license, and that the License Agreement would be signed by the new company.

42.     Unbeknownst to ROSSI and LEONARDO, on October 24, 2012, DARDEN and VAUGHN had formed INDUSTRIAL HEAT, LLC as a Delaware limited liability company.

43.     Upon expressing concern about the new company, to induce ROSSI and LEONARDO's execution of the license agreement, DARDEN and VAUGHN, with full knowledge of the falsity of their statements, assured ROSSI and LEONARDO that:

    a.  "CHEROKEE and INDUSTRIAL HEAT, LLC are the same company";

    b.  that IH was "entirely owned and funded by" CHEROKEE; and

    c.  that "CHEROKEE guaranteed that LEONARDO will be paid in accordance with the License Agreement."

44.     In justifiable reliance upon the aforementioned representations and assurances of DARDEN, VAUGHN, CHEROKEE and IH, on October 26, 2012, ROSSI and LEONARDO entered into a License Agreement with IH and the then licensee Ampenergo, Inc. for the E-Cat IP ("License Agreement"), a copy of which is attached hereto as Exhibit "B."

45.     Pursuant to the License Agreement, ROSSI and LEONARDO granted to IH a license to use the E-Cat IP within the specific limited geographic territories of North America, Central America and Caribbean, South America, China, Russia, Saudi Arabia and Arabian Emirates.

46.     In exchange for granting the aforementioned license, IH agreed to pay LEONARDO One Hundred Million Five Hundred Thousand Dollars ($100,500,000.00) over three (3) payments. The payment schedule was to be as follows:

    a.  One Million Five Hundred Thousand Dollars ($1,500,000.00) upon execution of the License Agreement;

    b.  Ten Million Dollars ($10,000,000.00) after the successful completion of a twenty-four hour test period (hereafter the "Validation Test") performed by an independent expert responsible for validation (hereafter "ERV"); and

    c.  Eighty-Nine Million Dollars ($89,000,000.00) after the successful completion of a three hundred fifty (350) day test period (hereafter the "Guaranteed Performance Test") performed by the ERV, or another independent expert agreed upon by the parties.

47.    On or about October 26, 2012, upon executing the License Agreement, IH paid to LEONARDO One Million Five Hundred Thousand Dollars ($1,500,000.00).

48.    Upon agreement of the parties, the Validation Test was to take place on April 30, 2013 at LEONARDO's facility in Fererra, Italy.

49.    On April 28, 2013, just prior to the Validation Test, IH informed ROSSI and LEONARDO that they would be required to execute a First Amendment to License Agreement ("First Amendment") before IH would place the second payment of Ten Million Dollars ($10,000,000.00) into escrow.[2]

50.    On April 29, 2013, IH provided ROSSI and LEONARDO with a copy of the proposed First Amendment which amended the License Agreement to permit IH to assign the License Agreement under certain circumstances, but without relieving IH of its obligations under the License Agreement. After a brief review of the document, ROSSI and LEONARDO executed the First Amendment, a copy of which is attached hereto as Exhibit "C".

51.    At the same time, DARDEN, VAUGHN and IH informed ROSSI and LEONARDO that IH had formed a new wholly owned subsidiary, IPH, and that IPH was going to "be the IP holding entity for Industrial Heat."

52.    In order to convince ROSSI and LEONARDO to agree to such assignment, DARDEN, VAUGHN and IH assured ROSSI and LEONARDO that IPH was a wholly owned subsidiary of IH and that IPH would remain wholly owned by IH until LEONARDO had been paid in full under the License Agreement.

---

[2] Pursuant to the License Agreement, IH was required to place Ten Million Dollars ($10,000,000.00) in escrow before the commencement of the Validation Test.

53.    DARDEN, VAUGHN and IH further represented that the assignment would not affect ROSSI or LEONARDO's rights under the License Agreement.

54.    In reliance upon the aforementioned representations, ROSSI and LEONARDO consented to IH's assignment of the License Agreement to IPH.

55.    Pursuant to the terms of the First Amendment, no assignment under the License Agreement would relieve IH of any of its obligations or performance under the License Agreement.

56.    In accordance with the License Agreement, and the First Amendment thereto, the parties selected Eng. Fabio Penon as the Expert Responsible for Validation ("ERV") engaged to perform the Validation Test of the E-Cat Unit in Ferrara, Italy.

57.    On or about May 1, 2013, the ERV performed the Validation Test of the E-Cat Unit, following the test protocol which had been agreed upon by the parties.

58.    Upon conclusion of the Validation Test on or about May 2, 2013, the ERV certified that the E-Cat Unit satisfied each of the Validation requirements within the Validation Test period and IH paid to LEONARDO the second payment of Ten Million Dollars ($10,000,000.00) in accordance with the terms of the License Agreement and amendments thereto.

59.    In or around August 2013, the E-Cat Unit was delivered from Fererra, Italy to IH at its facility in Raleigh, North Carolina, where preparations began for the final Guaranteed Performance Test.

60.    As a result of IH's inability or failure to secure an adequate facility in which the Guaranteed Performance test could be completed, and the failure to obtain the requisite regulatory approval to operate the E-Cat Unit, ROSSI and LEONARDO were prevented from commencing the Guaranteed Performance Test as set forth in the License Agreement.

11

61.     Acknowledging their failure to secure an adequate location and authorization for the Guaranteed Performance Test, DARDEN, VAUGHN, IH and IPH informed ROSSI and LEONARDO that the time for the commencement of the Guaranteed Performance Test would not begin to toll until an adequate testing facility had been located, the requisite approvals obtained and the E-Cat Unit delivered to the test location.

62.     In October 2013, IH, ROSSI and LEONARDO executed the Second Amendment to License Agreement ("Second Amendment") which, in relevant part, formally eliminated the requirement that the Guaranteed Performance test period be commenced immediately upon delivery of the plant and instead requiring that the Guaranteed Performance Test period would commence on a date agreed to in writing by the parties.  A copy of the Second Amendment is attached hereto as Exhibit "D."

63.     Despite IH's and IPH's continued failure to secure an adequate testing facility, ROSSI took it upon himself to locate and secure a location in which to conduct the Guaranteed Performance Test, as well as obtain the requisite regulatory approvals for the operation of the E-Cat Unit.

64.     On or before August 13, 2014, ROSSI and LEONARDO located a customer in Miami, Florida, who agreed to allow its facility to be used for the Guaranteed Performance Test and even agreed to pay IH up to One Thousand Dollars ($1,000.00) per day for the energy produced by the E-Cat Unit during the Guaranteed Performance Test.

65.     Accordingly, on January 28, 2015, the ERV prepared and submitted to the parties a proposed test protocol for the Guaranteed Performance Test. After suggesting minor changes to the test protocol, and clarifying other points, DARDEN on behalf of IH and/or IPH agreed to the test protocol prior to the commencement of the Guaranteed Performance Test.

66.     Under the supervision of the ERV, the Guaranteed Performance Test was commenced on or about February 19, 2015, after the ERV had performed a thorough inspection of the E-Cat Unit and installed his monitoring equipment therein.

67.     During the Guaranteed Performance Test period, IH and/or IPH engaged and paid two of their representatives, Mr. Barry West and Mr. Fulvio Fabiani, to monitor, maintain, take part in, and report on the operation of the E-Cat Unit being tested.

68.     Throughout the Guaranteed Performance testing period, the results of the test, including measurements and operational status, were routinely reported to DARDEN, VAUGHN, IH and IPH by ROSSI, the ERV and IH/IPH's agents Mr. Fabiani and Mr. West.

69.     During the Guaranteed Performance Test, IH, DARDEN and VAUGHN each publically claimed, on several occasions, that they had "acquired Rossi's intellectual property" and upon information and belief, IH, DARDEN and VAUGHN undertook substantial fundraising predicated upon such claims.

70.     Upon information and belief, IH, DARDEN and VAUGHN were able to raise substantial sums of money from numerous investors including, but not limited to, approximately Fifty Million Dollars ($50,000,000.00) from the Woodford Funds (including Woodford Patient Capital Trust, PLC and CF Woodford Equity Income Fund), predicated upon their claims that IH and/or IPH had "acquired Rossi's intellectual property."

71.     On February 15, 2016, the Guaranteed Performance test was successfully concluded. The E-Cat Unit had successfully operated for more than three hundred fifty (350) days out of a four hundred (400) day period at a level substantially greater than the level achieved during the Validation Test. By all accounts, the amount of energy produced by the E-Cat Unit during the

Guaranteed Performance Test was substantially greater than fifty (50) times the amount of energy consumed by the E-Cat Unit during the same period.

72.     On or about March 29, 2016, the ERV published his final report regarding the operation of the E-Cat Unit during the Guaranteed Performance test. In the ERV's report, the ERV confirmed that the E-Cat Unit had satisfied all of the performance requirements imposed by the License Agreement including, but not limited to, the requirement that the production of energy was at least six (6) times greater than the energy consumed.

73.     More specifically, the ERV found that over the Guaranteed Performance period, the amount of energy produced by the E-Cat Unit was consistently substantially greater than six (6) times the amount of energy consumed by the unit. In fact, the ERV found that during the testing period, the average energy multiplier (Energy Produced ÷ Energy Consumed) was often greater than sixty (60).

74.     Pursuant to the License Agreement, on March 29, 2016, LEONARDO demanded payment of the remaining Eighty-Nine Million Dollars ($89,000,000.00) due and owing under the License Agreement, but such demand has been refused and the requisite payment has not been made.

75.     ROSSI and LEONARDO have satisfied all conditions precedent before commencing this action.

### COUNT I: BREACH OF CONTRACT (NON-PAYMENT)
### (IH & IPH)

76.     Plaintiffs reallege and reaver the allegations contained in Paragraphs 1 through 75 above as though fully restated herein.

77.     Pursuant to paragraph 3.2(c) of the License Agreement, and amendments thereto, (Exhibits "B", "C" & "D") "within five business days following 350 days of operation of the [E-

Cat] Plant during which the Guaranteed Performance has been achieved … [IH] will pay to Leonardo Eighty Nine Million Dollars ($89,000,000)."

78.     By virtue of the assignment, IPH is also responsible for the Eighty-Nine Million Dollar ($89,000,000.00) payment.

79.     As verified by the ERV, the E-Cat Unit has satisfied and/or exceeded each and every minimum performance criteria set forth in the License Agreement.

80.     IH and IPH have refused to make the requisite Eighty-Nine Million Dollar ($89,000,000.00) payment to LEONARDO in breach of the License Agreement. As a result of such breach, LEONARDO and ROSSI have been damaged.

81.     ROSSI and LEONARDO have retained the undersigned law firm, and have agreed to pay a reasonable fee for its services in relation to this matter.

## COUNT II: BREACH OF CONTRACT (EXCEEDING SCOPE OF LICENSE) (IH & IPH)

82.     Plaintiffs reallege and reaver the allegations contained in Paragraphs 1 through 75 and Paragraph 78 above as though fully restated herein.

83.     Pursuant to paragraphs 1 and 2 of the License Agreement, and amendments thereto, IH or its assignee, was granted "the exclusive right and license under the Patents and other E-Cat IP to develop, manufacture, make, have made, use, have used, offer to sell, have offered for sale, sell, have sold, import, and have imported all the products deriving from the E-Cat IP in the Territory" including North America, Central America, South America, Caribbean, China, Russia, Saudi Arabia and the Arabian Emirates.

84.     Notably, the License Agreement did not convey any right, title or interest in the ownership of the underlying E-Cat IP, but rather merely granted IH the right to exclusively use the E-Cat IP in the specified geographically limited territory.

85.    Notwithstanding the above, IH, IPH, DARDEN and VAUGHN have publically announced that IH and/or IPH own the rights to the E-Cat IP, and have attempted to obtain both a United States Patent and a European Patent for the E-Cat IP which has already been patented by ROSSI and LEONARDO.

86.    IH and/or IPH have breached the License Agreement by exceeding the scope of their license including, but not limited to:

      a.    publically claiming an ownership interest in the underlying E-Cat IP;

      b.    attempting to use the E-Cat IP outside of its limited Licensed Territory including attempting to obtain a European Patent in its name using the E-Cat IP; and

      c.    wrongfully applying for a United States Patent for the E-Cat IP and falsely asserting that one of its agents, contractors and/or employees, Mr. Thomas Barker Dameron, was a co-inventor of the E-Cat IP so as to enable IH and/or IPH to misappropriate ROSSI and LEONARDO's intellectual property.

87.    As a result of IH and IPH's breach of the License Agreement, ROSSI and LEONARDO have been damaged.

## COUNT III: UNJUST ENRICHMENT
### (IH & IPH)

88.    Plaintiffs reallege and reaver the allegations contained in Paragraphs 1-2, 5, 7-16, 17(a-b), 17(d-f), 18-43, 48, 51, 57, 59, 61, 63-73 and 75 above as though fully restated herein.

89.    ROSSI and LEONARDO have conferred a benefit upon IH and IPH in that they have granted IH and/or IPH an exclusive license to use the E-Cat IP and related technology within North America, South America, Central America, Caribbean, Russia, China and the Arab Emirates.

90.     At all times relevant hereto, IH and/or IPH have had knowledge of the benefit conferred upon them, and IH and IPH have accepted and retained the license, and all benefits thereof, for the E-Cat IP and related technology including, but not limited to, the E-Cat Unit.

91.     IH and IPH have failed to pay ROSSI or LEONARDO the full value of the license granted, and it would be inequitable for IH and/or IPH to retain the benefits of the aforementioned license without paying fair value for it.

92.     As a result of IH and IPH's failure to pay ROSSI or LEONARDO, IH and/or IPH have been unjustly enriched and conversely, ROSSI and LEONARDO have been damaged.

### COUNT IV: MISAPPROPRIATION OF TRADE SECRETS
### (DARDEN, VAUGHN, CHEROKEE, IH & IPH)

93.     Plaintiffs reallege and reaver the allegations contained in Paragraphs 1 through 75, and Paragraphs 83 through 86 above as though fully restated herein.

94.     ROSSI and LEONARDO own all of the right, title and interest in the E-Cat intellectual property including, but not limited to, all patented devices, designs and/or processes related to the E-Cat IP.

95.     The E-Cat IP is comprised of proprietary business and scientific information which, gives economic advantage to ROSSI and LEONARDO. Such information is maintained as a closely held trade secret in order to prevent the unauthorized dissemination of such information.

96.     The E-Cat IP, which is included in ROSSI and LEONARDO's trade secrets, is comprised of, *inter alia,* the formulas, patterns, devices, designs, devices, methods, processes and techniques, in addition to a general compilation of information used in the design, construction and operation of the E-Cat Unit which gives ROSSI and LEONARDO an advantage over their competitors.

17

97.     DARDEN, VAUGHN, CHEROKEE, IH and IPH, with the intent of stealing ROSSI and LEONARDO intellectual property, have systematically and deceptively taken measures to deprive ROSSI and LEONARDO of their control of their trade secrets.

98.     DARDEN, VAUGHN, IH and IPH have, *inter alia,* intentionally attempted to misappropriate ROSSI and LEONARDO's trade secrets for their own use by (a) deceptively attempting to patent ROSSI and LEONARDO's intellectual property as their own, (b) falsely alleging that one of their employees, agents and/or representatives is a co-inventor of the E-Cat technology, (c) conveying ROSSI & LEONARDO's intellectual property to third party competitors, and (d) failing to return ROSSI & LEONARDO's trade secrets after IH and IPH breached the terms of the License Agreement.

99.     DARDEN, VAUGHN and CHEROKEE have deceptively created numerous foreign and domestic shell companies which they have, on more than one occasion, used to execute a classic "bait and switch" with ROSSI and LEONARDO, all while assuring Plaintiffs that they were actually just wholly owned holding entities and subsidiaries of CHEROKEE, and that CHEROKEE was still the true party in interest.

100.    ROSSI and LEONARDO's trade secrets which have been misappropriated by the Defendants, including the E-Cat IP, are not generally known to the public or to any other unaffiliated third parties.

101.    Moreover, IH and/or IPH were engaged in a confidential and fiduciary relationship with ROSSI and LEONARDO in that they were the exclusive licensee of the E-Cat intellectual property in the limited geographic region set forth above. As such, IH and IPH had a duty and responsibility to protect and preserve the confidentiality of the information and trade secrets including the E-Cat IP.

102.     Notwithstanding the above, DARDEN, VAUGHN, IH and IPH have disclosed to third parties, and otherwise used ROSSI and LEONARDO's trade secrets, including the E-Cat IP, without the express or implied consent of ROSSI and/or LEONARDO.

103.     Among other things, DARDEN, VAUGHN, IH and IPH have (a) disclosed the E-Cat IP to LEONARDO's competitors; (b) attempted to utilize ROSSI and LEONARDO's trade secrets outside of the scope of the limited License Agreement; and (c) attempted to misappropriate the trade secrets by requesting a patent for ROSSI and LEONARDO's intellectual property in their own name.

104.     ROSSI and LEONARDO have undertaken extensive steps to preserve and maintain the confidential and secret nature of the trade secrets, including the E-Cat IP, and to prevent the unauthorized disclosure of the same. Such precautionary steps include, but are not limited to, requiring individuals to whom the information is disclosed to sign confidentiality agreements and/or non-disclosure agreements.

105.     As a result of DARDEN, VAUGHN, IH and IPH's intentional and willful misappropriation of ROSSI and LEONARDO's trade secrets, ROSSI and LEONARDO have been damaged.

## COUNT V: CIVIL CONSPIRACY TO MISAPPROPRIATE TRADE SECRETS (IH, IPH, CHEROKEE, DARDEN & VAUGHN)

106.     Plaintiffs reallege and reaver the allegations contained in Paragraphs 1 through 75, 83 through 86 and paragraphs 94 through 104 above as though fully restated herein.

107.     DARDEN, VAUGHN, IH and IPH conspired to misappropriate ROSSI and LEONARDO's trade secrets including, but not limited to, the E-Cat intellectual property.

108.     DARDEN, VAUGHN, IH and IPH entered into an agreement to wrongfully deprive ROSSI and LEONARDO of their valuable trade secrets, to wrongfully disseminate the trade

secrets to unauthorized third parties, and to wrongfully convert such trade secrets for their own respective benefit without compensating ROSSI and/or LEONARDO.

109.   In furtherance of the aforementioned agreement, DARDEN, VAUGHN, IH and IPH undertook overt acts including, but not limited to, wrongfully submitting a patent application to the United States Patent Office in the name of IH and/or IPH for the E-Cat IP, wrongfully pursuing a patent from the European Patent Office in  the name of IH and/or IPH, setting up a series of shell companies to individually use and disseminate the trade secrets; and by disclosing ROSSI and LEONARDO's trade secrets to Plaintiffs' competitors.

110.   As a direct and proximate result of DARDEN, VAUGHN, IH and IPH's conspiracy to misappropriate ROSSI and LEONARDO's trade secrets, ROSSI and LEONARDO have been damaged.

### COUNT VI: FRAUD AND DECEIT
### (IH, IPH, CHEROKEE, DARDEN & VAUGHN)

111.   Plaintiffs reallege and reaver the allegations contained in Paragraphs 1 through 75, 83 through 86, 94 through 104, and Paragraphs 107 through 109 above as though fully restated herein.

112.   At all times relevant hereto, Defendants DARDEN, VAUGHN, IH and CHEROKEE misrepresented to ROSSI and LEONARDO that:

    a.   both IH and CHEROKEE had funds in excess of One Hundred Million Dollars ($100,000,000.00) available to pay to ROSSI and LEONARDO for the license for the E-Cat IP;

    b.   upon the completion of the Guaranteed Performance test, IH (and subsequently IPH) would pay ROSSI and LEONARDO the full amount of the license fee;

    c.   "IH and CHEROKEE are both the same COMPANY" and that "IH was a wholly owned intellectual property holding entity for CHEROKEE;" and

    d.  CHEROKEE would guarantee the payment of the License Fee by its "wholly owned subsidiary" IH. Specifically, DARDEN and VAUGHN stated that ROSSI and LEONARDO "had his word that IH was wholly owned and fully funded by CHEROKEE."

113.    Moreover, in order to induce ROSSI and LEONARDO to consent to an assignment of the License Agreement to IPH, Defendants DARDEN, VAUGHN and IH falsely represented that:

    a.  IPH was a "wholly owned subsidiary" of IH and that IPH was the "holding entity for Industrial Heat;" and

    b.  IPH was controlled and managed directly by IH.

114.    At all times relevant hereto, Defendants DARDEN, VAUHGN, IH and CHEROKEE knew that the aforementioned statements were false, that ROSSI and LEONARDO would rely upon such false representations, and that neither IH nor CHEROKEE had any ability and/or intention of paying ROSSI and LEONARDO the License Fee.

115.    Defendants DARDEN, VAUGHN, IH, IPH and CHEROKEE knowingly and intentionally failed to disclose the fact that:

    a.  Defendants DARDEN, VAUGHN, IH, IPH and CHEROKEE intended to misappropriate ROSSI and LEONARDO's intellectual property including the E-Cat IP;

    b.  Defendants had absolutely no intention of compensating ROSSI and/or LEONARDO the full amount set forth in the License Agreement; and

    c.  Defendants intended to disclose ROSSI and LEONARDO's intellectual property and trade secrets to ROSSI and LEONARDO's competitors as part of their plan to misappropriate the same.

116.    Defendants made the foregoing misrepresentations and omissions with the intention that Plaintiffs rely thereon

117.    Plaintiffs ROSSI and LEONARDO justifiably relied to their detriment upon the aforementioned fraudulent misrepresentations and omissions and as a direct result have been damaged.

## COUNT VII: CONSTRUCTIVE & EQUITABLE FRAUD
### (IH, IPH, DARDEN & VAUGHN)

118.    Plaintiffs reallege and reaver the allegations contained in Paragraphs 1 through 75, 83 through 86, 94 through 104, 107 through 109 and Paragraphs 112 through 116 above as though fully restated herein.

119.    Predicated upon the aforementioned representations made by Defendants DARDEN, VAUGHN, IH and CHEROKEE, ROSSI and LEONARDO granted IH a license for the E-Cat IP in accordance with the parties' License Agreement.

120.    In accordance with the License Agreement, ROSSI, LEONARDO, IH and IPH engaged in a confidential and fiduciary relationship as Licensor and Licensee. At all times hereto, DARDEN and VAUGHN served as officers and/or agents of both IH and IPH in relation to the License Agreement and the aforementioned Licensor/Licensee relationship.

121.    As required by the License Agreement, ROSSI and LEONARDO fully disclosed to DARDEN, VAUGHN, IP and IPH their valuable intellectual property and trade secrets including, but not limited to, designs, formulas, operating manuals, and other proprietary information comprising the E-Cat IP with the expectation that the Defendants would protect such information from disclosure to competitors and/or any other third party to the detriment of ROSSI and LEONARDO.

122.    Unbeknownst to ROSSI and LEONARDO, the Defendants DARDEN, VAUGHN, IH, IPH began diligently setting up a series of off-shore foreign shell companies, holding

companies and management companies as part of a scheme to deprive ROSSI and LEONARDO of their intellectual property and trade secrets.

123.    Upon information and belief, after acquiring ROSSI and LEONARDO's intellectual property and trade secrets, DARDEN, VAUGHN and IH began supporting and investing in companies which are in direct competition with ROSSI and LEONARDO.

124.    Upon information and belief, DARDEN, VAUGHN and IH have deliberately and knowingly disclosed some or all of ROSSI and LEONARDO's intellectual property and trade secrets to the aforementioned competitors in which the Defendants had invested.

125.    Moreover, DARDEN, VAUGHN, IH and IPH began attempting to misappropriate ROSSI and LEONARDO's intellectual property and trade secrets by submitting patent and PCT applications, in the name of IH and IPH, claiming ROSSI and LEONARDO's intellectual property as their own.

126.    DARDEN, VAUGHN, IH and IPH have taken improper advantage of the Licensor/Licensee relationship between IH/IPH and Plaintiffs by wrongfully disclosing the subject trade secrets and intellectual property in an attempt to realize an unconscionable advantage at the expense of ROSSI and LEONARDO.

127.    Defendants' willful and wanton abuse of their confidential and fiduciary relationship with ROSSI and LEONARDO has caused Plaintiffs to be damaged.

## COUNT VIII: PATENT INFRINGEMENT (U.S. PATENT)
## (IH & IPH)

128.    Plaintiffs reallege and reaver the allegations contained in Paragraphs 1 through 75, 83 through 86 and Paragraphs 98, 109 and 125 above as though fully restated herein.

129.   ROSSI and LEONARDO's inventions and intellectual property have been disclosed in U.S. Patent No. 9,115,913 B1, which has been duly registered and published by the United States Patent and Trademark Office.

130.   Various embodiments of ROSSI and LEONARDO's inventions described in the U.S. Patent have been adopted and utilized in, among other things, the E-Cat Unit and other similar devices designed and developed by ROSSI and LEONARDO.

131.   IH and IPH infringed upon the inventions claimed in the U.S. Patent, at least through their attempts to wrongfully obtain patents and other intellectual property rights for ROSSI and LEONARDO's patented inventions.

132.   Specifically, IH and IPH have submitted patent applications and/or PCT applications to at least the United States Patent and Trademark Office, as well as the Russian Patent Office and the European Patent Office, attempting to patent the exact same claims as set forth in ROSSI and LEONARDO's U.S. Patent.

133.   Among other things, on or about November 6, 2014, IH filed a patent application with the USPTO, without LEONARDO and/or ROSSI's consent, naming IH as the applicant, which was titled "Devices and Methods for Heat Generation". The application was based entirely upon ROSSI and LEONARDO's E-Cat intellectual property which IH had been provided pursuant to the License Agreement, and which was protected by the aforementioned patents, including the U.S. Patent.

134.   Moreover, IH and IPH have solicited millions of dollars in investments predicated upon their claim that they have acquired and now own ROSSI and LEONARDO's intellectual property rights to the E-Cat IP.

135.    Upon information and belief, IH and IPH have had knowledge and notice of the U.S. Patent, as well as of their own infringement of the U.S. Patent.

136.    ROSSI and LEONARDO have been and continue to be damaged by IH and IPH's infringement of the U.S. Patent.

137.    The European Patent, Italian Patent and US Patents are all valid and enforceable.

138.    IH and IPH's infringement of the U.S. Patent has been and continues to be willful.

139.    IH and IPH's infringement of the U.S. Patent renders this case exceptional within the meaning of 35 U.S.C. §285.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs ANDREA ROSSI and LEONARDO CORPORATION pray for judgment as follows:

A. That IH and IPH have breached the License Agreement;

B. That ROSSI and LEONARDO be awarded all damages adequate to compensate them for IH and IPH's breach of the License Agreement; such damages to be determined by a jury;

C. That IH and IPH have been unjustly enriched by utilizing the E-Cat IP without compensating ROSSI and LEONARDO for use of the same;

D. That ROSSI and LEONARDO be awarded all damages adequate to compensate them for IH and IPH unjust enrichment occasioned by the use of ROSSI and LEONARDO's intellectual property;

E. That IH, IPH, DARDEN, VAUGHN and CHEROKEE both conspired to misappropriate, and misappropriated ROSSI and LEONARDO's trade secrets;

F. That ROSSI and LEONARDO be awarded all damages adequate to compensate them for the Defendants' conspiracy and misappropriation of trade secrets, such damages to be determined by a jury;

G. That IH, IPH, DARDEN, VAUGHN and CHEROKEE engaged in fraud, and that IH, IPH, DARDEN and VAUGHN engaged in constructive fraud with the intent that ROSSI and LEONARDO rely upon their fraudulent statements and/or omissions to their detriment;

H. That ROSSI and LEONARDO be awarded damages adequate to compensate them for the Defendants' fraud, such damages to be determined by a jury;

I. That IH and IPH have infringed upon ROSSI and LEONARDO's U.S. Patent;

J. That ROSSI and LEONARDO be awarded all damages adequate to compensate them for IH and IPH's infringement of the U.S. Patent, such damages to be determined by a jury;

K. That the damages awarded to ROSSI and LEONARDO for the patent infringement be trebled, pre-judgment and post-judgment interest;

L. That the case be declared an exceptional case within the meaning of 35 U.S.C. §285 and that ROSSI and LEONARDO be awarded their attorneys' fees, costs and expenses incurred in connection with this case;

M. That this Court enter a permanent injunction enjoining IH and IPH from continuing to infringe upon ROSSI and LEONARDO's patent; and enjoining IH, IPH, DARDEN, VAUGHN and/or CHEROKEE from further disclosing any of ROSSI and LEONARDO's trade secrets, including intellectual property, to any other party; and

N. That ROSSI and LEONARDO be awarded such other relief as this Court deems just

and proper.

**DEMAND FOR TRIAL BY JURY**

Plaintiffs ANDREA ROSSI and LEONARDO CORPORATION, hereby demand a trial

by jury on all issues so triable.

DATED: April 5, 2016

Respectfully submitted:

THE SILVER LAW GROUP, P.A.
P.O. Box 710
Islamorada, FL  33036
(305) 664-3363   Telephone
(305) 664-3365   Fax
Jannesser@silverlawgroup.com
Psilver@silverlawgroup.com
service@silverlawgroup.com
Linda@silverlawgroup.com

By: _____
      John W. Annesser, Esq.
      Fla. Bar No. 98233
      Patricia M. Silver, Esq.
      Fla. Bar No. 198919