# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

_____

| | |
|---|---|
| ANDREA ROSSI and LEONARDO CORPORATION,<br><br>Plaintiffs,<br><br>v.<br><br>THOMAS DARDEN; John T. Vaughn; INDUSTRIAL HEAT, LLC; IPH INTER-NATIONAL B.V.; and CHEROKEE INVESTMENT PARTNERS, LLC,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)     CASE NO. 1:16-cv-21199-CMA |

_____

## DEFENDANTS' MOTION TO DISMISS

## TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................ 1

ALLEGATIONS IN THE COMPLAINT AND ITS EXHIBITS ................................... 2

LEGAL STANDARD .................................................................................................... 4

ARGUMENT ................................................................................................................. 5

    I.      Count I Fails to State a Breach of Contract Claim ..................................... 5

    II.     Count II Fails to State a Breach of Contract Claim. ................................... 7

          A.      Defendants' statement about their "ownership" of the E-Cat IP is
not a breach of the License Agreement ..................................................... 7

          B.      "Attempting to obtain a European patent" is not a breach of the
License Agreement. ................................................................................... 7

          C.      Listing T. Barker Dameron as a co-inventor in a U.S. Patent
Application is not a breach of the License Agreement. ............................ 8

    III.    Count III Fails to State an Unjust Enrichment Claim. ............................... 8

    IV.    Count IV Fails to State a Misappropriation of Trade Secrets Claim. ................... 9

          A.      By the License Agreement, Plaintiffs permitted IH and IPH to
disclose the E-Cat IP and did not protect its secrecy against IH or
IPH's use or disclosure. .......................................................................... 10

          B.      Defendants did not use improper means to obtain the E-Cat IP. ............. 11

          C.      The specific acts alleged by Plaintiffs do not constitute
misappropriation. .................................................................................... 11

    V.     Count V Fails to State a Civil Conspiracy Claim. ................................... 13

    VI.    Count VI Fails to State a Fraud and Deceit Claim ................................... 14

    VII.   Count VII Fails to State a Constructive and Equitable Fraud Claim. ................. 16

    VIII.  Count VIII Fails to State a Patent Infringement Claim ................................... 18

    IX.    Plaintiffs Impermissibly Lump Defendants Together in Several Counts. ........... 20

CONCLUSION ............................................................................................................ 20

CERTIFICATE OF SERVICE .................................................................................... 22

# TABLE OF AUTHORITIES

**Page**

CASES

*Abbot Labs., Inc. v. Gen. Elec. Capital*,
  765 So.2d 737 (Fla. Dist. Ct. App. 2000) ...............................................................7

*Abruzzo v. Haller*,
  603 So.2d 1338 (Fla. Dist. Ct. App. 1992) ..............................................................7

*Alhassid v. Bank of Am., N.A.*,
  60 F.Supp.3d 1302, 1318 (S.D. Fla. 2014) ............................................................15

*Allocco v. City of Coral Gables*,
  221 F.Supp.2d 1317 (S.D. Fla. 2002) ....................................................................14

*Amoco Oil Co. v. Gomez*,
  125 F.Supp.2d 492 (S.D. Fla. 2000) .................................................................16, 17

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...........................................................................................4, 12

*Ashmore v. F.A.A.*,
  2011 WL 3915752 (S.D. Fla. Sept. 2, 2011) ...................................................4, 8, 17

*Babe, Inc. v. Babies Formula Serv., Inc.*,
  165 So.2d 795 (Fla. Dist. Ct. App. 1964) ............................................................5, 6

*Behrman v. Allstate Life Ins. Co.*,
  388 F.Supp.2d 1346 (S.D. Fla. 2005) ...............................................................13, 14

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................................4

*Bradley Factor, Inc. v. U.S.*,
  86 F.Supp.2d 1140 (M.D. Fla. 2000) ....................................................................15

*Bray v. Gillespie Mgmt. LLC v. Lexington Ins. Co.*,
  527 F.Supp.2d 1355 (M.D. Fla. 2007) ...................................................................20

*Carl's Furniture, Inc. v. APJL Consulting, LLC*,
  2015 WL 1467726 (S.D. Fla. Mar. 30, 2015) ....................................................14, 16

**TABLE OF AUTHORITIES**
(continued)

Page

*Cassedy v. Alland Invs. Corp.*,
  128 So.3d 976 (Fla. Dist. Ct. App. 2014) ....................................................16

*Classen Immunotherapies, Inc. v. Elan Pharms., Inc.*,
  786 F.3d 892 (Fed. Cir. 2015)...................................................................19

*Diamond "S" Dev. Corp. v. Mercantile Bank*,
  989 So.2d 696 (Fla. Dist. Ct. App. 2008) ....................................................9

*Dickerson v. Alachua Cty. Com'n*,
  200 F.3d 761 (11th Cir. 2000) ..................................................................13

*E & C Copiers Export Import Corp. v. Arizs Fotocopiadoras S.A.S.*,
  2015 WL 7720604 (S.D. Fla. Nov. 30, 2015)...............................................14

*Fito v. Attorneys' Title Ins. Fund, Inc.*,
  83 So.3d 755 (Fla. Dist. Ct. App. 2011) .....................................................9

*Garcia v. United Auto Credit Corp.*,
  2008 WL 141579 (S.D. Fla. Jan. 11, 2008) ..................................................4

*Geter v. Galardi South Enters., Inc.*,
  43 F.Supp.3d 1322, 1328 (S.D. Fla. 2014) ..................................................5

*Greenberg v. Miami Children's Hosp. Research Inst., Inc.*,
  264 F.Supp.2d 1064 (S.D. Fla. 2003) .....................................................10, 11

*Harman v. Adjoined Consulting, LLC*,
  2007 WL 2377058 (S.D. Fla. Aug. 16, 2007).............................................16, 18

*Immediate Capital Group v. Spongetech Delivery Sys.*,
  2010 WL 1644952 (S.D. Fla. Apr. 22, 2010) ..............................................18

*In re Estate of Boyar*,
  592 So.2d 341 (Fla. Dist. Ct. App. 1992) ..................................................5, 6

*Indulgence Yacht Charters, Ltd. v. Ardell Inc.*,
  2008 WL 4346749 (S.D. Fla. Sept. 16, 2008) ..............................................5

*Joyeria Paris, SRL v. Gus & Eric Custom Servs., Inc.*,
  2013 WL 6633175 (S.D. Fla. Dec. 17, 2013)................................................15

*Kaye v. Ingenio, Filiale De Loto-Quebec, Inc.*,
  2014 WL 2215770 (S.D. Fla. May 29, 2014) ...........................................14, 15, 16

**TABLE OF AUTHORITIES**
(continued)

Page

*Kolmat Do Brasil, LDTA v. Evergreen United Invs., LLC*,
  2015 WL 3606277 (S.D. Fla. June 8, 2015) ........................................................20

*Kovtan v. Frederiksen*,
  449 So.2d 1 (Fla. Dist. Ct. App. 1984) ..............................................................9

*Levenger Co. v. Feldman*,
  516 F.Supp.2d 1272 (S.D. Fla. 2007) ................................................10, 11, 12

*Luckett v. Delpark, Inc.*,
  270 U.S. 496 (1926) ........................................................................................19

*Marshall Const., Ltd. v. Coastal Sheet Metal & Roofing, Inc.*,
  569 So.2d 845 (Fla. Dist. Ct. App. 1990) ......................................................5, 6

*Mettler, Inc. v. Ellen Tracy, Inc.*,
  648 So.2d 253, 255 (Fla. Dist. Ct. App. 1994) ................................................7

*Microsoft Corp. v. Big Boy Dist. LLC*,
  589 F.Supp.2d 1308 (S.D. Fla. 2008) ..........................................................13, 14

*Ocean Commc'ns, Inc. v. Bubeck*,
  956 So.2d 1222 (Fla. Dist. Ct. App. 2007) ......................................................9

*Pierson v. Orlando Gen. Healthcare Sys., Inc.*,
  619 F.Supp.2d 1260 (M.D. Fla. 2009) ............................................................20

*Porsche Cars N. Am., Inc. v. Diamond*,
  140 So.3d 1090 (Fla. Dist. Ct. App. 2014) ......................................................9

*Prestige Rests. & Entm't, Inc. v. Bayside Seafood Rest., Inc.*,
  2010 WL 680905 (S.D. Fla. Feb. 23, 2010) ....................................................4

*Reilly v. Reilly*,
  94 So.3d 693 (Fla. Dist. Ct. App. 2012) ........................................................5, 6

*Rodriguez v. Holder*,
  2011 WL 2911927 (S.D. Fla. Mar. 9, 2011) ....................................................4

*Rogers v. Mitzi*,
  584 So.2d 1092 (Fla. Dist. Ct. App. 1991) ....................................................16

*Sinaltrainal v. Coca-Cola Co.*,
  578 F.3d 1252 (11th Cir. 2009) ......................................................................4

**TABLE OF AUTHORITIES**
(continued)

Page

*Taylor Woodrow Homes Fla., Inc. v. 4/46-A Corp.*,
    850 So.2d 536 (Fla. Dist. Ct. App. 2013) ...............................................................17

*Tulepan v. Roberts*,
    2015 WL 235441 (S.D. Fla. Jan. 16, 2015) ...........................................................18

*Watts v. City of Port St. Lucie, Fla.*,
    2015 WL 7736532 (S.D. Fla. Nov. 30, 2015) ...........................................................4

**STATUTES**

35 U.S.C. § 116 ...........................................................................................................8

Fla. Stat. § 688.002 ...........................................................................................10, 11

Fla. Stat. § 688.002(2) ...............................................................................................10

Fla. Stat. § 688.002(2)(b) ....................................................................................11, 13

Fla. Stat. § 688.002(4) ...............................................................................................10

**OTHER AUTHORITIES**

Rule 8 .........................................................................................................................20

Rule 9(b) .....................................................................................................................14

Rule 12(b)(6) ................................................................................................................4

Thomas Darden ("Darden"), John T. Vaughn ("Vaughn"), Industrial Heat, LLC ("IH"), IPH International, B.V. ("IPH"), and Cherokee Investment Partners, LLC ("Cherokee") (collectively, "Defendants") hereby move to dismiss the complaint ("Complaint") of Andrea Rossi ("Rossi") and Leonardo Corporation ("Leonardo") (collectively, "Plaintiffs") pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6).

## INTRODUCTION

The various claims pled in the Complaint all revolve around two central contentions – that IH and IPH were required to pay Leonardo $89 million under a License Agreement and that Defendants were limited in their use of certain information they received from Plaintiffs. Attached to, and incorporated into, the Complaint, however, is the License Agreement.  The plain language of that Agreement, coupled with the admissions in the Complaint, demonstrates that Plaintiffs' central contentions are incurably flawed:  The License Agreement required performance by Plaintiffs within a specific time period, which Plaintiffs acknowledge did not occur within that time period, and the License Agreement permitted IH and IPH – after having paid Plaintiffs over $10 million (which Plaintiffs admit was paid) – virtually unlimited usage of information they received from Plaintiffs.

Plaintiffs' non-contract claims, brought in an effort to bring parties into this litigation beyond IH and IPH, suffer from additional fatal flaws.  Plaintiffs' misconceived fraud claims are simply efforts to recast breach of contract claims as fraud claims, but this is clearly impermissible.  They are not predicated on the breach of any duty independent of contract-created obligations.  The Complaint also fails adequately to allege facts in support of Plaintiffs' non-contract claims, and further suffers from an impermissible lumping together of Defendants without identifying how each Defendant allegedly committed each claimed infraction.

For all of these reasons and the additional reasons set forth below, Defendants respectfully request that the Court dismiss the Complaint in its entirety.[1]

---

[1]    Because Defendants are not permitted to introduce facts outside the Complaint and its Exhibits, this motion does not address, for example, the numerous errors in Plaintiffs' purported

## ALLEGATIONS IN THE COMPLAINT AND ITS EXHIBITS

Plaintiffs allege that Rossi is the "sole inventor" of a "low energy nuclear reactor, popularly known as the 'Energy Catalyzer' or 'E-Cat'" unit.  Complaint ("Compl.") ¶ 1.  On October 26, 2012, Plaintiffs entered into a "License Agreement" with IH – attached as Exhibit B to the Complaint – which granted IH "the exclusive right and license under the Patents and other E-Cat IP to develop, manufacture, make, have made, use, have used, offer to sell, have offered to sell, have sold, import, and have imported all products deriving from the E-Cat IP" in the Americas, China, Russia, Saudi Arabia and the Arabian Emirates (the "Territory") after a $10 million payment was made to Leonardo.  License Agreement § 1, 1.1; Compl ¶ 83.  The License Agreement also provided IH – and after its assignment, IPH – a host of additional rights and interests, including "the immediate transfer" to IH of "all E-Cat IP"; "the right to grant sublicenses of any of its rights under this Agreement"; the right to have "the Licensed Patents with respect to the Territory" assigned to IH or IPH; and the right to a license over or ownership of (depending upon the circumstances) subsequently developed intellectual property based on the original E-Cat IP.  License Agreement §§ 1, 3.2(b), 10, 13.4.[2]  As Plaintiffs acknowledge in the Complaint, IH paid the $10 million to Leonardo in May 2013, after already having paid Leonardo $1.5 million in October 2012 for the E-Cat unit (also called the "Plant" in the License Agreement).  Compl. ¶¶ 47, 58; License Agreement § 3.2(a) (payment for 1MW E-Cat unit/"Plant") & § 3.2(b) (payment following 24-hour validation test).

The License Agreement provided for a third potential payment to Leonardo, which is the subject of this litigation:  An $89 million payment "contingent upon the Plant operating at the

---

"Guaranteed Performance Test" that the Complaint purposely ignores (such as departing from the purported test plan, ignoring inoperable reactors, relying on flawed measurements, and using unsuitable measuring devices).

[2]     IH subsequently assigned its rights under the License Agreement to IPH, as permitted by the fully executed First Amendment to License Agreement ("First Amendment"), which is attached as Exhibit C to the Complaint.  The License Agreement was not otherwise assignable. Thus, while the Complaint alleges that Leonardo Corporation of New Hampshire assigned by operation of law the License Agreement to Leonardo (the Florida corporation that is a plaintiff here), Defendants do not accept that such an assignment is valid or effective.

same level (or better) at which Validation was achieved for a period of 350 days (even if not consecutive) within a 400 day period commencing on the date immediately following delivery of the Plant to the Company," which the License Agreement described as "Guaranteed Performance."  License Agreement §§ 3.2(c), 5; Compl. ¶ 46.  That delivery, Plaintiffs allege, occurred in August 2013:  "In or around August 2013, the E-Cat Unit was delivered from Ferrara, Italy to IH at its facility in Raleigh, North Carolina, where preparations began for the final Guaranteed Performance Test."  Compl. ¶ 59.  Plaintiffs' purported "Guaranteed Performance Test," however, was not commenced until "on or about February 19, 2015" and not "concluded" until "February 15, 2016."  *Id.* ¶¶ 66, 71.

The Complaint alleges that the Second Amendment to the License Agreement ("Proposed Second Amendment"), which is attached as <u>Exhibit D</u> to the Complaint, "formally eliminated the requirement that the Guaranteed Performance test period be commenced immediately upon delivery of the plant and instead requiring [sic.] that the Guaranteed Performance Test period would commence on a date agreed to in writing by the parties."  Compl. ¶ 62.  The Proposed Second Amendment, however, clearly states that "[t]his Amendment may be executed in counterparts, none of which need contain the original signatures of all Parties, provided that one or more counterparts collectively ***shall contain the signatures of all Parties*** to this Amendment."  Proposed Second Amendment § 3 (emphasis added).  AmpEnergo, Inc. ("AEG"), a party to the License Agreement and the Proposed Second Amendment, never signed the Proposed Second Amendment.  *Id.* at 3.  The Proposed Second Amendment also addressed the testing of a "Six Cylinder Unit," not the E-Cat unit alleged in the Complaint to have been tested.  *Id.* § 1.

Finally, the License Agreement does not place any limits on IH or IPH's ability to disclose, disseminate or publish the E-Cat IP information obtained from Plaintiffs.  To the contrary, it contains a broad confidentiality provision that operates only against Plaintiffs:  "During the term of this Agreement, ***each of Leonardo, Rossi, and AEG*** agrees to keep the E-

Cat IP strictly confidential and not disclose any of the E-Cat IP to any other party [subject to certain specified exceptions]."  License Agreement § 16.4 (emphasis added).

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Watts v. City of Port St. Lucie, Fla.*, 2015 WL 7736532, at *8 (S.D. Fla. Nov. 30, 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  Pleadings in federal court "must contain 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'"  *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "[P]leadings that 'are no more than conclusions, are not entitled to the assumption of truth.'"  *Ashmore v. F.A.A.*, 2011 WL 3915752, at *2 (S.D. Fla. Sept. 2, 2011) (quoting *Iqbal*, 556 U.S. at 678).

Furthermore, a complaint must state a plausible claim for relief to survive a motion to dismiss.  *Id.* (quoting *Iqbal*, 556 U.S. at 679).  To do so, "a plaintiff must 'plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Id.* (quoting *Iqbal*, 556 U.S. at 678).  "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss."  *Id.* at *1 (quoting *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009)).

In deciding a motion to dismiss, a District Court can consider not only a complaint itself, but also "documents referred to in the complaint which are central to the claim," *Prestige Rests. & Entm't, Inc. v. Bayside Seafood Rest., Inc.*, 2010 WL 680905, at *3 (S.D. Fla. Feb. 23, 2010), and the exhibits attached to the complaint, *Rodriguez v. Holder*, 2011 WL 2911927, at *1 n. 5 (S.D. Fla. Mar. 9, 2011); *Prestige Rests. & Entm't*, 2010 WL 680905, at *3; *Garcia v. United Auto Credit Corp.*, 2008 WL 141579, at *1 (S.D. Fla. Jan. 11, 2008).  The License Agreement, the First Amendment and the Proposed Second Amendment are all central to Plaintiffs' claims and Complaint exhibits.  Moreover, "[a] copy of a written instrument included as an exhibit to a pleading is a part of the pleading for all purposes, including a Rule 12(b)(6) motion to dismiss. When the exhibits contradict the general and conclusory allegations of the pleading, the exhibits

govern." *Geter v. Galardi South Enters., Inc.*, 43 F.Supp.3d 1322, 1328 (S.D. Fla. 2014) (internal quotation marks, brackets and citations omitted). *See also Indulgence Yacht Charters, Ltd. v. Ardell Inc.*, 2008 WL 4346749, at \*4 (S.D. Fla. Sept. 16, 2008) ("Thus, while courts accept the facts in a complaint as true in considering a motion to dismiss, they can be trumped by contradictory facts presented in an exhibit or attachment to the pleading").

## ARGUMENT

### I.    Count I Fails to State a Breach of Contract Claim.

Count I alleges that IH and IPH breached the License Agreement by failing to pay Leonardo $89 million upon the achievement of Guaranteed Performance pursuant to Section 3.2(c) of the License Agreement.  Compl. ¶ 80.  To maintain an action for breach of contract, Plaintiffs must first establish performance on their part of the contractual obligations imposed upon them by the License Agreement.  *See Marshall Const., Ltd. v. Coastal Sheet Metal & Roofing, Inc.*, 569 So.2d 845, 848 (Fla. Dist. Ct. App. 1990) (citing *Babe, Inc. v. Babies Formula Serv., Inc.*, 165 So.2d 795 (Fla. Dist. Ct. App. 1964)).  In addition, the conditions precedent to IH and IPH's obligation to perform under the License Agreement must occur before Plaintiffs may claim that IH and IPH have breached the License Agreement and before Plaintiffs have a right to demand performance.  *See Reilly v. Reilly*, 94 So.3d 693, 697 (Fla. Dist. Ct. App. 2012) (quoting *In re Estate of Boyar*, 592 So.2d 341, 343 (Fla. Dist. Ct. App. 1992)).

Count I fails to state a cause of action for breach of contract because the Complaint and its Exhibits demonstrate that Plaintiffs have failed to fulfill their obligation regarding Guaranteed Performance, the fulfillment of which is a condition precedent to IH and IPH's obligation to pay $89 million under License Agreement § 3.2(c).  The License Agreement states that if Guaranteed Performance is not achieved, "[IH] shall not be required to pay any amount pursuant to Section 3[.2](c)[.]"  License Agreement § 5.  It further states that the 400-day Guaranteed Performance period begins "on the date immediately following delivery of the Plant to [IH]."  *Id.*

Plaintiffs allege in the Complaint that the Plant was delivered to IH in August 2013. Compl. ¶ 59.  Therefore, by the terms of the License Agreement, the Guaranteed Performance

period must have ended in either September or October 2014.  *See* License Agreement § 5.  By Plaintiffs' own admission, however, they did not even start their "Guaranteed Performance Test" until February 2015 and it was not completed until February 2016.  Compl. ¶¶ 66, 71.  Such testing was undeniably untimely (by a wide margin) and thus unable to satisfy the "Guaranteed Performance" condition of the License Agreement.

Plaintiffs attempt to avoid this obvious outcome by claiming that the Proposed Second Amendment modified the License Agreement so that the Guaranteed Performance period would begin on "the date agreed to in writing between the Parties."  Compl. ¶ 62.  *See also* License Agreement § 16.9 (requiring amendments or extensions to the License Agreement to be in writing and signed by the contracting parties).  But the Proposed Second Amendment was not effective because it was not signed by all the parties thereto, as was expressly required by the document.  Proposed Second Amendment § 3 ("This Amendment may be executed in counterparts … ***provided that one or more counterparts collectively shall contain the signatures of all Parties to this Amendment***." (emphasis added)).  It was not signed by AEG, nor was it signed by IPH even though the Proposed Second Amendment arose after IH had assigned the License Agreement to IPH.  *Id.* at 3.  Furthermore, even if the Proposed Second Amendment was effective, it required that the Guaranteed Performance Test be conducted using a "Six Cylinder Unit."  *Id*. § 1.  Plaintiffs have not pled, and cannot plead, that they performed their "test" from February 2015 to February 2016 using such a Six Cylinder Unit.

For the foregoing reasons, it is clear and undeniable under the express terms of the Exhibits attached to the Complaint that Plaintiffs did not satisfy the condition precedent to be entitled to the $89 million payment under the License Agreement: Plaintiffs did not achieve Guaranteed Performance by September or October 2014.  Accordingly, their breach of contract claim based on IH and IPH not paying them $89 million must be dismissed.  *See Marshall Const.*, 569 So.2d at 848 (citing *Babe*, 165 So.2d 795); *Reilly*, 94 So.3d at 697 (quoting *In re Estate of Boyar*, 592 So.2d at 343).  Therefore, Count I of the Complaint should be dismissed.

## II.    Count II Fails to State a Breach of Contract Claim.

Count II alleges that IH and IPH breached the License Agreement by exceeding the scope of the License granted therein in various ways.  Compl. ¶ 86.  Count II, however, fails to state a claim because it fails sufficiently to allege specific provisions of the License Agreement that were breached.  *See Abbot Labs., Inc. v. Gen. Elec. Capital*, 765 So.2d 737, 740 (Fla. Dist. Ct. App. 2000) (citing *Mettler, Inc. v. Ellen Tracy, Inc.*, 648 So.2d 253, 255 (Fla. Dist. Ct. App. 1994); *Abruzzo v. Haller*, 603 So.2d 1338 (Fla. Dist. Ct. App. 1992)).

### A.    Defendants' statement about their "ownership" of the E-Cat IP is not a breach of the License Agreement.

Plaintiffs' allegations that IH and IPH stated they "owned" the E-Cat IP are not sufficient to state a claim for breach of contract.  *See* Compl. ¶¶ 85, 86a.  Plaintiffs have failed to point to any provision in the License Agreement that forbids IH or IPH merely from stating that they "own" the E-Cat IP.  In fact, the License Agreement expressly required that, after IH paid Leonardo $10 million, "Leonardo and Rossi w[ould] immediately transfer … to the Company [*i.e.*, IH] all E-Cat IP."  License Agreement § 3.2(c).  Furthermore, neither Rossi nor Leonardo has identified any damage caused to them from the mere fact that IH or IPH stated it "owned" the E-Cat IP as opposed to stating, for example, that it owned an exclusive license to the E-Cat IP or that it had "the exclusive right … to develop, manufacture, make, have made, use, have used, offer to sell, have offered for sale, sell, have sold, import, and have imported all the products deriving from the E-Cat IP in the Territory" as well as the right to have Plaintiffs transfer to IH "all E-Cat IP."  *Id.* §§ 1, 3.2(c).

### B.    "Attempting to obtain a European patent" is not a breach of the License Agreement.

Plaintiffs' allegations that IH and IPH "attempt[ed] to use the E-Cat IP outside of its limited Licensed Territory [by] attempting to obtain a European Patent" are also not sufficient to state a claim for breach of contract.  *See* Compl. ¶¶ 85, 86b.  Plaintiffs have failed to point to any provision in the License Agreement that was breached by IH or IPH's alleged "attempt[]" to obtain a patent.  Plaintiffs also have not pled anything other than a conclusion as to the alleged

"attempting to obtain a European Patent," and pleading conclusions without factual context is insufficient to state a plausible claim.  *See Ashmore*, 2011 WL 3915752, at *2.  Finally, Plaintiffs have not identified any damage caused to them by this purported attempt.

### C.   Listing T. Barker Dameron as a co-inventor in a U.S. Patent Application is not a breach of the License Agreement.

Along similar lines, Plaintiffs' allegation that IH and IPH listed T. Barker Dameron as a co-inventor of the E-Cat IP in a "U.S. Patent Application" is not sufficient to state a claim for breach of contract.  *See* Compl. ¶ 86c.  Plaintiffs have failed to point to any provision in the License Agreement that forbids IH or IPH from listing people as co-inventors on U.S. patent applications.  Indeed, the License Agreement contemplates and accepts that such co-inventors might exist in connection with inventions or ideas derived from the E-Cat IP after its transfer to IH.  *See* License Agreement § 13.4.  It also specifically allows IH "[to] participate in patent prosecution and maintenance . . . to the extent it deems necessary and desirable."  *Id*. § 7.1.  Further, Plaintiffs' allegations about this co-inventor listing are clearly deficient because they are simply conclusory; they do not even identify the relevant patent application or explain how Rossi purports to be the sole inventor of each claim in the patent application.[3]  *See Ashmore*, 2011 WL 3915752, at *2.  And, as with Plaintiffs' attempted-European-patent breach theory, Plaintiffs have not identified any damage caused to them by this U.S. patent application.[4]

For all of the foregoing reasons, Count II of the Complaint should be dismissed.

## III.   Count III Fails to State an Unjust Enrichment Claim.

Count III alleges that IH and IPH would be unjustly enriched if allowed to retain the license granted under the License Agreement without paying Plaintiffs $89 million.  Compl. ¶ 91.  To state a claim for unjust enrichment under Florida law, Plaintiffs must allege that: (1)

---

[3]    Whether a person qualifies as a co-inventor is defined by statute, not contract.  A person need only make a contribution to the subject matter of a single claim in a patent to so qualify. *See* 35 U.S.C. § 116.

[4]    To the contrary, it costs money to pursue a patent application, which Plaintiffs have not borne (or claim to have borne) despite Rossi being listed as a co-inventor on the disputed application.  Assigning the application to Rossi would resolve Plaintiffs' grievance, but it would do so simply by shifting the cost of prosecuting the disputed application to Rossi.

Plaintiffs conferred a benefit on IH and IPH; (2) IH and IPH voluntarily accepted and retained the benefit conferred; and (3) the circumstances are such that it would be inequitable for IH and IPH to retain the benefit without paying the value thereof to Plaintiffs. *See Porsche Cars N. Am., Inc. v. Diamond*, 140 So.3d 1090, 1100 (Fla. Dist. Ct. App. 2014) (citing *Fito v. Attorneys' Title Ins. Fund, Inc.*, 83 So.3d 755, 758 (Fla. Dist. Ct. App. 2011)).

Plaintiffs cannot pursue a quasi-contract claim for unjust enrichment if an express contract exists concerning the same subject matter as their claim for unjust enrichment. *See Diamond "S" Dev. Corp. v. Mercantile Bank*, 989 So.2d 696, 697 (Fla. Dist. Ct. App. 2008) (citing *Ocean Commc'ns, Inc. v. Bubeck*, 956 So.2d 1222, 1225 (Fla. Dist. Ct. App. 2007); *Kovtan v. Frederiksen*, 449 So.2d 1 (Fla. Dist. Ct. App. 1984)).  As a consequence, Count III obviously fails because the License Agreement is just such an express contract concerning the same subject matter as Plaintiffs' claim for unjust enrichment – Plaintiffs' licensing and conveyance of the E-Cat IP to IH.  *See id.*

In addition, Plaintiffs have not alleged sufficiently that they have conferred a benefit on IH and IPH.  The benefit that Plaintiffs allege they have conferred on IH and IPH (the license to the E-Cat IP) was conferred only if the License Agreement is valid.  The premise of an unjust enrichment claim, however, is that there is no valid contract. *See Diamond "S" Dev. Corp.*, 989 So.2d at 697 (citing *Ocean Commc'ns*, 956 So.2d at 1225; *Kovtan*, 449 So.2d 1).  If the License Agreement is not valid, then the E-Cat IP license would not exist, meaning that Plaintiffs would not have conferred the alleged benefit of such a license on IH or IPH.  *See Porsche Cars N. Am.*, 140 So.3d at 1100 (citing *Fito*, 80 So.3d at 758).

For the foregoing reasons, Count III of the Complaint should be dismissed.

## IV.    Count IV Fails to State a Misappropriation of Trade Secrets Claim.

Count IV alleges that Defendants "attempted" to misappropriate Plaintiffs' trade secrets for their own use by:

> (a) deceptively attempting to patent Rossi and Leonardo's intellectual property as their own, (b) falsely alleging that one of their employees, agents and/or representatives is a co-inventor of the E-Cat technology, (c) conveying

> Rossi & Leonardo's intellectual property to third party competitors, and (d)
> failing to return Rossi and Leonardo's trade secrets after IH and IPH breached
> the terms of the License Agreement.

Compl. ¶ 98.  To plead misappropriation of trade secrets adequately, Plaintiffs must demonstrate that (1) they possessed valuable confidential information and took reasonable steps to protect it and (2) the information was misappropriated either by one who knew or had reason to know that the secret was improperly obtained or by one who used improper means to obtain it.  *See Greenberg v. Miami Children's Hosp. Research Inst., Inc*., 264 F.Supp.2d 1064, 1077 (S.D. Fla. 2003) (citing Fla. Stat. § 688.002).  Moreover, a party seeking relief for misappropriation of a trade secret must describe the allegedly misappropriated trade secret with reasonable particularity.  *Levenger Co. v. Feldman*, 516 F.Supp.2d 1272, 1287 (S.D. Fla. 2007).

Under Florida law, a trade secret consists of information that "(1) derives economic value from not being readily ascertainable by others and (2) is the subject of reasonable efforts to maintain its secrecy."  *Id.* at 1286.  "Information that is generally known or ***readily accessible to third parties*** cannot qualify for trade secret protection."  *Id.* (emphasis added) (citing Fla. Stat. § 688.002(4)).  Misappropriation includes "disclosure or use of a trade secret of another without express or implied consent by a person who . . . at the time of the disclosure or use, knew or had reason to know that knowledge of the trade secret was . . . acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use."  Fla. Stat. § 688.002(2).

> **A.** **By the License Agreement, Plaintiffs permitted IH and IPH to disclose the E-Cat IP and did not protect its secrecy against IH or IPH's use or disclosure.**

Plaintiffs have not pled, and cannot plead, that they took reasonable steps to protect against IH or IPH using or disclosing the E-Cat IP.  The Complaint and License Agreement clearly show that Plaintiffs, in exchange for significant monetary consideration, willingly disclosed the E-Cat IP to IH and IPH.  *See* Compl. ¶ 121; License Agreement §§ 1, 1.2, 3.2(b), 4, 5, 6, 7, 12(b), 13.1, 13.4.  For example, the Complaint alleges that "[a]s required by the License Agreement, ROSSI and LEONARDO fully disclosed to DARDEN, VAUGHN, IH and IPH their valuable intellectual property and trade secrets including, but not limited to, designs, formulas, operating manuals, and other proprietary information comprising the E-Cat IP."  Compl. ¶ 121.

There is no provision in the Licensing Agreement, however, that requires Defendants to keep the E-Cat IP confidential or to protect its purported secrecy.  In fact, the License Agreement expressly allows IH and IPH to disclose the E-Cat IP, *see, e.g.,* License Agreement § 1 (providing a right to sublicense the E-Cat IP), and only obligates Plaintiffs (and non-party AEG) – for the benefit of IH and IPH – "to keep the E-Cat IP strictly confidential and not disclose any of the E-Cat IP to any other party." *Id*. § 16.4.  Accordingly, Plaintiffs cannot seek trade secret protection for the E-Cat IP under Florida law because Plaintiffs cannot demonstrate that they took reasonable steps to maintain its secrecy. *See Levenger*, 516 F.Supp.2d at 1286.

**B.      Defendants did not use improper means to obtain the E-Cat IP.**

Plaintiffs have not alleged that Defendants used improper means to obtain the E-Cat IP. IH made two huge payments to Plaintiffs – one for $1.5 million and one for $10 million – in exchange for, among other things, the E-Cat IP.  Plaintiffs then provided this E-Cat IP without restrictions on IH or IPH's use of it in the Territory and without any basic confidentiality obligation.  Indeed, the License Agreement permitted IH and IPH to sublicense the E-Cat IP to anyone they wanted on any terms they desired, to pursue patents, and to restrict Plaintiffs' ability to disclose the E-Cat IP to others. *See* License Agreement §§ 1, 7.1, 16.4.  Plaintiffs thus consented to Defendants' disclosure and use of the E-Cat IP. *See* Fla. Stat. § 688.002(2)(b) (defining misappropriation to include "[d]isclosure or use of a trade secret of another ***without express or implied consent***" (emphasis added)).  As a result, Plaintiffs cannot demonstrate misappropriation under Florida law. *See Greenberg*, 264 F.Supp.2d at 1077 (citing Fla. Stat. § 688.002).

**C.      The specific acts alleged by Plaintiffs do not constitute misappropriation.**

Turning to the conduct of Defendants that Plaintiffs cast as misappropriations of trade secrets, none amounts to a misappropriation.  First, Defendants' alleged attempt to patent technology related to the E-Cat IP is not an improper use or disclosure of the E-Cat IP because the License Agreement expressly allows IH and IPH to pursue patents relating to the E-Cat IP. *See* License Agreement §§ 7.1, 13.4.  Plaintiffs also have not demonstrated in their conclusory

misappropriation allegations what was the intellectual property in any patent application that was not already disclosed in Plaintiffs' various patent applications or otherwise confidential. *See Levenger*, 516 F.Supp.2d at 1287 (explaining that a party claiming misappropriation must describe the trade secret that was allegedly misappropriated with reasonable particularity).

Second, Plaintiffs' conclusory assertion that Defendants misappropriated the E-Cat IP by including T. Barker Dameron as a co-inventor in a patent application does not show misappropriation. Once again, the License Agreement expressly allows IH and IPH to pursue patents relating to the E-Cat IP, and also to develop their own inventions and ideas derived from the E-Cat IP. *See* License Agreement §§ 7.1, 13.4. And (again) Plaintiffs' conclusory allegations do not identify what is supposed to qualify as a trade secret in any patent application that includes T. Barker Dameron as a co-inventor. *See Levenger*, 516 F.Supp.2d at 1287.

Third, Plaintiffs' allegation that Defendants misappropriated the E-Cat IP by conveying it to "third party competitors" is riddled with flaws. IH and IPH were provided the E-Cat IP pursuant to the License Agreement (after Plaintiffs were paid $11.5 million) without a prohibition on them revealing it to others. In fact, they were expressly allowed to sublicense the E-Cat IP to anyone they wanted, without even a condition that they do so only to sublicensees that agreed to confidentiality restrictions.[5] Plaintiffs also do not provide any factual context for this contention, such as the identity of the third party competitors or what was allegedly disclosed to those competitors, as required by *Iqbal*, 556 U.S. at 678.

Fourth, Plaintiffs allege that Defendants misappropriated the E-Cat IP by failing to return it to Plaintiffs after breaching the License Agreement. This is without merit because (a) as shown above, Plaintiffs have not pled adequately a breach of the License Agreement, and in any

---

[5]     "Leonardo and Rossi further grant to the Company the ***right to grant sublicenses*** of any of its rights under this Agreement. The granting of sublicenses shall be at the Company's ***sole and exclusive discretion*** and the Company shall have the ***sole and exclusive power*** to determine the identity of any sublicensee, the applicable license fees or royalty rates, if any, and other terms and conditions of the sublicense." License Agreement § 1 (emphasis added).

event (b) a defendant failing to return information voluntarily provided to it by a plaintiff is not a "[d]isclosure or use" of such information.  *See* Fla. Stat. § 688.002(2)(b).

Fifth, Plaintiffs allege that Defendants somehow misappropriated the E-Cat IP by creating foreign and domestic shell companies for purposes of modifying the party of interest on the IH side of the License Agreement.  But Plaintiffs offer no facts demonstrating how such conduct could amount to a misappropriation.  Simply forming a company cannot misappropriate (or even appropriate) information.  *See* Fla. Stat. § 688.002(2)(b).  Further, Plaintiffs' suggestion that they were somehow unaware that they were providing the E-Cat IP to IH or that IH might provide it to others makes no sense because IH is expressly identified as a party to the License Agreement, which in turn expressly allows IH to sublicense the E-Cat IP to anyone it wants on any terms it wants.  *See* note 5, *supra*.

For all of the foregoing reasons, Count IV of the Complaint should be dismissed.

## V.      Count V Fails to State a Civil Conspiracy Claim.

Count V alleges that Defendants "conspired to misappropriate [Plaintiffs'] trade secrets including, but not limited to, the E-Cat [IP]."  Compl. ¶ 107.  To plead a civil conspiracy adequately under Florida law, Plaintiffs must allege facts demonstrating (1) a conspiracy between two or more parties; (2) to do an unlawful act, or to do a lawful act by unlawful means; (3) an overt act in pursuance of the conspiracy; and (4) damage to Plaintiffs as a result.  *See Microsoft Corp. v. Big Boy Dist. LLC*, 589 F.Supp.2d 1308, 1322 (S.D. Fla. 2008).  "[U]nder the intracorporate conspiracy doctrine, a corporation's officers, directors, or employees, acting as agents of the corporation, are deemed incapable of conspiring among themselves or with the corporation."  *Id.* (citing *Dickerson v. Alachua Cty. Com'n*, 200 F.3d 761, 767 (11th Cir. 2000)).  This doctrine arises out of the principle that acts of a corporation's agents are attributed to the corporation, thereby making the agents' actions those of a single actor (the corporation).  *Dickerson*, 200 F.3d at 767.

Plaintiffs' civil conspiracy claim fails as a matter of law because their misappropriation of trade secret claim fails.  *See Behrman v. Allstate Life Ins. Co.,* 388 F.Supp.2d 1346, 1353

(S.D. Fla. 2005). Under Florida law, a claim that is not found to be actionable cannot serve as the basis for a conspiracy claim. *Id.* (citing *Allocco v. City of Coral Gables*, 221 F.Supp.2d 1317, 1360-61 (S.D. Fla. 2002)).

Even if the misappropriation of trade secret claim survives dismissal, which it should not, Plaintiffs' civil conspiracy claim fails under the intracorporate conspiracy doctrine. The Complaint alleges that Darden is the President of IH and the CEO of Cherokee and that Vaughn is the Vice President of IH and Manager at Cherokee. Compl. ¶¶ 9, 10. Because a corporation can only act through its agents and representatives, Defendants (as pled in the Complaint) are viewed as a single legal entity for purposes of the intracorporate conspiracy doctrine. *See Microsoft Corp.*, 589 F.Supp.2d at 1322. Accordingly, this doctrine bars Plaintiffs' claimed conspiracy by and among Defendants. *Id.*

For the foregoing reasons, Count V of the Complaint should be dismissed.

## VI.    Count VI Fails to State a Fraud and Deceit Claim.

Count VI alleges that Defendants committed fraud and deceit. Compl. ¶¶ 111-117. Under Florida law, to plead an action for fraud and deceit sufficiently, Plaintiffs must allege facts showing that "(1) the [D]efendant[s] made a representation on which the [P]laintiff[s] [were] meant to act; (2) the [D]efendants knew the representation was false; and (3) the [P]laintiff[s] relied on the representation to [their] detriment." *Carl's Furniture, Inc. v. APJL Consulting, LLC*, 2015 WL 1467726, at *3 (S.D. Fla. Mar. 30, 2015). In addition, fraud claims must be pled with particularity pursuant to Rule 9(b). *E & C Copiers Export Import Corp. v. Arizs Fotocopiadoras S.A.S.*, 2015 WL 7720604, at *3 (S.D. Fla. Nov. 30, 2015). Rule 9(b) is satisfied if a complaint sets forth "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the plaintiffs; and (4) what the defendants gained by the alleged fraud." *Id.* (citation omitted).

Parties may not recast breach-of-contract claims as tort claims. *Kaye v. Ingenio, Filiale De Loto-Quebec, Inc.*, 2014 WL 2215770, at *4 (S.D. Fla. May 29, 2014). "[T]o set forth a

- 14 -

claim in tort between parties in contractual privity, a party must allege action beyond and independent of breach of contract that amounts to an independent tort." *Id.*; *Alhassid v. Bank of Am., N.A.*, 60 F.Supp.3d 1302, 1318 (S.D. Fla. 2014) (explaining that fundamental contract principles bar tort claims where the offending party has not been alleged to have breached a duty independent of its contractual obligations); *Joyeria Paris, SRL v. Gus & Eric Custom Servs., Inc.*, 2013 WL 6633175, at *3-4 (S.D. Fla. Dec. 17, 2013) (holding that plaintiff failed to plead a proper cause of action for fraud where plaintiff's fraud claims arose out of the same conduct as its breach of contract claims).

Plaintiffs' fraud claim fails because it does not allege any tortious conduct by Defendants independent of the conduct that serves as the basis for the alleged breaches of the License Agreement. The Complaint alleges Defendants misrepresented to Plaintiffs that 1) both IH and Cherokee had funds in excess of $100 million to pay Plaintiffs pursuant to the License Agreement; 2) upon the completion of the Guaranteed Performance test, IH or IPH would pay Leonardo $89 million; 3) IH and Cherokee are the same company and IH was a holding company for Cherokee; 4) Cherokee would guarantee the payment of the license fee by IH; 5) IPH was a wholly owned subsidiary of IH and IPH was the holding company for IH; and 6) IPH was controlled and managed directly by IH. Compl. ¶ 112. These alleged misrepresentations relate solely to the obligations under the License Agreement and whether Plaintiffs would be paid the money they believed they were owed under the License Agreement. *See Bradley Factor, Inc. v. U.S.*, 86 F.Supp.2d 1140, 1144 (M.D. Fla. 2000) (explaining that facts underlying a fraud claim are deemed interwoven with facts surrounding a breach of contract claim if the factual inquiry needed to prove both allegations is essentially the same). Indeed, Plaintiffs do not allege any harm to them from these supposed misrepresentations other than their contention that they were not paid the $89 million they seek under the License Agreement. Moreover, absent the existence of the License Agreement, Plaintiffs have not identified any reason why any of the above representations would have been material or detrimental to them. In short, Plaintiffs attempt to manufacture a fraud claim out of a breach of contract claim in an effort to bring non-

contracting parties into this litigation and to collect on the License Agreement from non-contracting parties.  This is plainly impermissible.  *See Kaye*, 2014 WL 2215770, at *4.

Second, Plaintiffs' fraud allegations fail to meet Rule 9(b)'s particularity requirements, as there is little to no indication in the Complaint of when these purported misrepresentations were made to them, which Defendant(s) made them, or the context in which they were made.  *See Harman v. Adjoined Consulting, LLC*, 2007 WL 2377058, at *7 (S.D. Fla. Aug. 16, 2007) (finding fraud claims did not satisfy particularity requirements where they did not "allege the dates, time, places, or actors involved in the alleged fraudulent activity").  Indeed, the Complaint lumps Darden, Vaughn, IH, and Cherokee together in alleging that each Defendant made every purported misrepresentation, *see* Compl. ¶ 112, which is patently implausible.[6]

For the foregoing reasons, Count VI of the Complaint should be dismissed.

## VII.   Count VII Fails to State a Constructive and Equitable Fraud Claim.

Count VII alleges that Defendants (other than Cherokee) took "improper advantage" of their relationship with Plaintiffs by engaging in the conduct Plaintiffs plead to support their misappropriation and civil conspiracy claims.  Compl. ¶¶ 122-26.  "A constructive fraud is deemed to exist where a duty under a confidential or fiduciary relationship has been abused." *Rogers v. Mitzi*, 584 So.2d 1092, 1094 (Fla. Dist. Ct. App. 1991).  The elements of constructive fraud are the same as the elements of breach of fiduciary duty when the claim is based upon misrepresentations or concealment.  *Amoco Oil Co. v. Gomez*, 125 F.Supp.2d 492, 508-09 (S.D. Fla. 2000).  The elements of a cause of action for breach of fiduciary duty under Florida law are "(1) the existence of a duty; (2) breach of that duty; and (3) damages flowing from the breach." *Cassedy v. Alland Invs. Corp.*, 128 So.3d 976, 978 (Fla. Dist. Ct. App. 2014).

---

[6]      Furthermore, to the extent Plaintiffs' fraud and deceit claim is based upon Defendants not disclosing facts, the claim must be dismissed.  Under Florida law, "in an action for fraud and deceit, a plaintiff must allege with reasonable certainty that (1) the defendant ***made a representation*** on which the plaintiff was meant to act; (2) the defendant knew the representation was false; and (3) the plaintiff relied on the representation to his detriment." *Carl's Furniture, Inc.*, 2015 WL 1467726, at *3 (emphasis added).  The elements of fraud and deceit require a showing that Defendants made a representation, not that they failed to make one – at least absent a special relationship that does not exist here, as explained in Section VII.

Count VII fails to state a claim for constructive and equitable fraud because Plaintiffs have not alleged any facts demonstrating that Defendants owed Plaintiffs a fiduciary duty. A conclusory assertion that Defendants owed Plaintiffs a fiduciary duty is insufficient to survive dismissal. *See Ashmore*, 2011 WL 3915752, at *2. In actuality, the License Agreement makes clear that Plaintiffs, IH and IPH were simply independent parties to an agreement that was negotiated and executed at arm's length. *See Amoco Oil*, 125 F.Supp.2d at 509-10. To the extent that this claim is based upon Defendants' alleged disclosure of the E-Cat IP, as stated previously *ad nauseam*, Defendants were not obligated under the License Agreement to refrain from disclosing the E-Cat IP and the Complaint fails to identify any provision in the License Agreement to the contrary.

Moreover, the entire structure of the License Agreement belies any notion that any Defendant owed any fiduciary duty to Plaintiffs: IH and IPH could disclose or sublicense the E-Cat IP to whomever they wanted, License Agreement §§ 1, 16.4; Plaintiffs had a broad obligation not to compete against IH and IPH, but there was no correspondingly broad obligation imposed on IH or IPH, *id*. § 13.3; IH and IPH could participate in patent prosecution and maintenance "to the extent it deems necessary or desirable," regardless of Plaintiffs' views on the matter, *id*. § 7.1; IH or IPH could force Plaintiffs to assign "the Licensed Patents with respect to the Territory" to them, again regardless of Plaintiffs' views on the matter, *id*. § 10; and Plaintiffs owed a duty of confidentiality to IH and IPH, but neither IH nor IPH owed a corresponding duty of confidentiality to Plaintiffs, *id*. § 16.4. Nothing about this relationship between Plaintiffs and Defendants supports Plaintiffs' misguided view that somehow Defendants owed Plaintiffs any fiduciary duty. *See Taylor Woodrow Homes Fla., Inc. v. 4/46-A Corp.*, 850 So.2d 536, 541 (Fla. Dist. Ct. App. 2013) ("When the parties are dealing at arm's length, a fiduciary relationship does not exist because there is no duty imposed on either party to protect or benefit the other. … Hence, the courts have held that, in the usual creditor-debtor relationship, a fiduciary duty does not arise and allegations of superior knowledge of a party's financial condition are generally insufficient to transform the creditor-debtor relationship into a fiduciary

- 17 -

relationship."); *Immediate Capital Group v. Spongetech Delivery Sys.*, 2010 WL 1644952, at *2 (S.D. Fla. Apr. 22, 2010) ("To establish a fiduciary relationship, a party must allege some degree of dependency on one side and some degree of undertaking on the other side to advise, counsel, and protect the weaker party.  When the parties are dealing at arm's length, a fiduciary relationship does not exist because there is no duty imposed on either party to protect or benefit the other.  Thus, an ordinary commercial transaction generally does not give rise to a fiduciary relationship." (internal quotation marks and citations omitted)).[7]

Plaintiffs' constructive fraud claim fails for additional reasons as well.  As explained above, what Plaintiffs cast as misappropriations are not misappropriations at all.  *See* pages 11-13, *supra*.  Further, Plaintiffs' allegations of fraud and deception do not meet Rule 9(b)'s particularity requirements, as they contain no details about the dates, times, or places the alleged misrepresentations were made, who specifically made them, or the context in which they were made.  *See Harman*, 2007 WL 2377058, at *7.  Finally, Plaintiffs' constructive fraud claim – like their fraud claim – is just a recharacterization of the breach of contract claims and should be dismissed because it is not based on any detrimental or material tortious conduct independent of their claimed breach of the License Agreement (which itself did not impose any fiduciary obligations on Defendants).  *See* pages 14-16, *supra*.

For the foregoing reasons, Count VII of the Complaint should be dismissed.

## VIII.   Count VIII Fails to State a Patent Infringement Claim.

Count VIII alleges that IH and IPH infringed a U.S. patent on which Rossi is the inventor and Leonardo is the assignee because they "submitted patent applications and/or PCT [Patent

---

[7]     *See also Tulepan v. Roberts*, 2015 WL 235441, at *11 (S.D. Fla. Jan. 16, 2015) ("For a confidential or fiduciary relationship to exist under Florida law there must be substantial evidence showing some dependency by one party and some undertaking by the other party to advise, counsel, and protect the weaker party.  Further, the fact that one party places trust or confidence in the other does not create a confidential relationship in the absence of some recognition, acceptance or undertaking of the duties of a fiduciary on the part of the other party. … [W]hen the parties are dealing at arm's length, a fiduciary relationship does not exist because there is no duty imposed on either party to protect or benefit the other." (internal quotation marks, brackets and citations omitted)).

Cooperation Treaty] applications to at least the United States Patent and Trademark Office, as well as the Russian Patent Office and the European Patent Office."  Compl. ¶ 132, Ex. A.

Contrary to Plaintiffs' belief, filing a patent application is not an act of patent infringement.  As the Federal Circuit explained just one year ago:

> Filing a patent application is generally not an infringement of a patent.  It is not the making, using, offering to sell, selling, or importing of an invention.  It is the act of approaching an agency of the government in order to obtain a limited privilege and to fulfill a public goal of making knowledge of an invention available to the public.  It is not commercializing an invention, which requires introducing an invention into commerce, or making preparations to do so.

*Classen Immunotherapies, Inc. v. Elan Pharms., Inc.*, 786 F.3d 892, 898-99 (Fed. Cir. 2015).

Plaintiffs further ignore the License Agreement in asserting this claim.  The License Agreement allows IH and IPH to use the E-Cat IP, to have "all E-Cat IP" transferred to them, to "participate in patent prosecution" and to have the "Licensed Patents" assigned to them.  License Agreement §§ 1, 3.2(c), 7.1, 10.  Plaintiffs do not allege the License Agreement has been voided or invalidated, but instead affirmatively sue to enforce it.  Plaintiffs cannot both seek to enforce the license and sue for patent infringement as if the license did not exist.  *See Luckett v. Delpark, Inc.*, 270 U.S. 496, 510-11 (1926).

Lastly, Plaintiffs do not even attempt to provide a factual basis for explaining how the patent applications they challenge "infringe" upon claims asserted in their U.S. patent ("Patent Claims").  Instead, they confusingly plead that at least the U.S patent application that IH filed is based on Plaintiffs' "E-Cat intellectual property which IH had been provided pursuant to the License Agreement, and which was protected by the aforementioned patents, including the U.S. Patent."  Compl. ¶ 133.  This does not identify the E-Cat IP allegedly contained in the patent application IH filed, the E-Cat IP allegedly protected by the Patent Claims in Plaintiffs' U.S. patent, or the intersection between the two.

For the foregoing reasons, Count VIII of the Complaint should be dismissed.

IX.    **Plaintiffs Impermissibly Lump Defendants Together in Several Counts.**

Counts IV through VII all suffer from a further error:  In each of these Counts, Plaintiffs improperly lump Defendants together, attributing conduct to all Defendants when the conduct can and should be broken out by Defendant.  For example, Paragraph 112(c) purports to quote literal statements made to Plaintiffs – that "'IH and CHEROKEE are both the same COMPANY' and that 'IH was a wholly owned intellectual property holding entity for CHEROKEE'" –  but the paragraph attributes these quotes to all Defendants except IPH, even though there is no chance all these Defendants spoke such words in unison.  Compl. ¶ 112(c).

Plaintiffs are not permitted, particularly with respect to their fraud claims, to merely lump together all of the defendants in their allegations.  *Pierson v. Orlando Gen. Healthcare Sys., Inc.*, 619 F.Supp.2d 1260, 1273 (M.D. Fla. 2009) (explaining that allegations against multiple defendants that do not distinguish their conduct fail to satisfy minimal pleading standards set forth in Rule 8); *Bray v. Gillespie Mgmt. LLC v. Lexington Ins. Co.*, 527 F.Supp.2d 1355, 1363 (M.D. Fla. 2007) ("When [a] complaint asserts claims against multiple defendants, it cannot merely lump together all of the defendants in their allegation of fraud.  Rather it must contain specific allegations with respect to each defendant that are sufficient to inform each defendant of the nature of his alleged participation in the fraud." (internal quotation marks, brackets and citations omitted)).  *See also Kolmat Do Brasil, LDTA v. Evergreen United Invs., LLC*, 2015 WL 3606277, at *4 (S.D. Fla. June 8, 2015) (dismissing all claims where plaintiff improperly lumped defendants together).  Accordingly, this provides an additional basis to dismiss Counts IV through VII of the Complaint.

## CONCLUSION

For the foregoing reasons, this Court should dismiss the Complaint in its entirety.

Dated:      June 2, 2016                                Respectfully submitted,


                                                        */s/ Christopher R. J. Pace*
                                                        Christopher R.J. Pace
                                                        cpace@jonesday.com
                                                        Florida Bar No. 721166
                                                        Christopher M. Lomax
                                                        clomax@jonesday.com
                                                        Florida Bar No. 56220
                                                        Christina T. Mastrucci
                                                        Florida Bar No. 113013
                                                        JONES DAY
                                                        600 Brickell Avenue, Suite 3300
                                                        Miami, Florida 33131
                                                        Tel: 305-714-9700
                                                        Fax: 305-714-9799

                                                        *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 2, 2016, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record for the parties.

*/s/ Christopher R. J. Pace*
Christopher R.J. Pace
