## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

ANDREA ROSSI, individually; and
LEONARDO CORPORATION, a Florida
corporation,

        Plaintiffs,

        v.

THOMAS DARDEN, individually; JOHN
T. VAUGHN, individually; INDUSTRIAL
HEAT, LLC, a Delaware limited liability
company; IPH INTERNATIONAL B.V., a
Netherlands company; and CHEROKEE
INVESTMENT PARTNERS, LLC, a
Delaware limited liability company,

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

CASE NO. 1:16-cv-21199-CMA

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

# TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| LEGAL STANDARD | .................................................... | 1 |
| MEMORANDUM OF LAW | .................................................... | 2 |
| I. | COUNT I:  Breach of Contract .................................................... | 2 |
| II. | COUNT II:  Breach of Contract .................................................... | 5 |
| III. | COUNT III:  Unjust Enrichment .................................................... | 6 |
| IV. | COUNT IV:  Misappropriation of Trade Secrets ............................. | 8 |

IV.      (a)    Whether Plaintiffs protected the secrecy of the Trade Secrets is a question of fact not properly raised in a Motion to Dismiss ..... 8

         (b)    Plaintiffs have adequately alleged that Defendants acquired the Trade Secrets by improper means which must be accepted as true. .................................................... 8

         (c)    Specific acts alleged by Plaintiffs constitute misappropriation. ....... 9

V.    COUNT V:  Conspiracy not Barred by Intra-Corporate Conspiracy Doctrine .................................................... 12

VI.    COUNT VI:  Fraud .................................................... 14

VII.    COUNT VII:  Constructive and Equitable Fraud .......................... 15

VIII.    COUNT VIII:  Patent Infringement .......................................... 17

CONCLUSION .................................................... 18

CERTIFICATE OF SERVICE .......................................... 20

## TABLE OF CITATIONS

**Cases**                                                                 **Page**

*Abbot Labs., Inc. v. Gen. Elec. Capital,*
    765 So.2d 737 (Fla. 5th DCA 2000) .............................................   5

*Abruzzo v. Haller,*
    603 So.2d 1338 (Fla. 1st DCA 1992) ............................................   5

*Aceto Corp. v. TherapeuticsMD, Inc.,*
    953 F. Supp. 2d 1269, 1287 (S.D. Fla. 2013) .............................   7

*Arellano v. Am. Airlines, Inc.,*
    69 F. Supp. 3d 1345 (S.D. Fla. 2014) ........................................   9

*Ashcroft v. Iqbal,*
    129 S.Ct. 1937 (2009) ..............................................................   1

*Azalea Meats, Inc. v. Muscat,*
    386 F.2d 5 (5th Cir. 1967) ........................................................   16

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. at 544, 127 S.Ct. 1955 (2006) .................................   1, 2, 3

*Biodynamic Techs., Inc. v. Chattanooga Corp.,*
    644 F. Supp. 607  (S.D. Fla. 1986) ..........................................   16

*Caravello v. Am. Airlines, Inc.,*
    315 F. Supp. 2d 1346 (S.D. Fla. 2004) ....................................   2, 5

*Chamberlain v. Integraclick, Inc.,*
    2011 WL 2118699 at *3 (N.D. Fla. 2011) .............................   15

*Classen Immunotherapies, Inc. v. Elan Pharms., Inc.,*
    786 F.3d 892 (Fed. Cir. 2015) .................................................   17, 18

*Conley v. Gibson,*
    355 U.S. 41 (1957) ..................................................................   2

*Eli Lilly & Co. v. Emisphere Techs., Inc.,*
    408 F. Supp. 2d 668 (S.D. Ind. 2006) ....................................   6

*F.T.C. v. 1st Guar. Mortg. Corp.,*
    2011 WL 1226213 at *2 (S.D. Fla. Mar. 30, 2011) .................   2

*(Table of Citations, cont'd)*

**Page**

*Int'l Sch. Services, Inc. v. AAUG Ins. Co., Ltd.*,
　2012 WL 5635590 at *7 (S.D. Fla. 2012) ……………………………… 3

*Kaye v. Ingenio, Filiale de Loto-Quebec, Inc.*,
　2014 WL 2215770 at *5 (S.D. Fla. 2014) ……………………………… 14

*Lomax v. Wal-Mart Stores E.*,
　2009 WL 3415561 at *3 (S.D. Fla. 2009) ……………………………… 2

*Martorella v. Deutsche Bank Nat. Trust Co.*,
　931 F. Supp. 2d 1218 (S.D. Fla. 2013) ……………………………… 7

*McAndrew v. Lockheed Martin Corp.*,
　206 F.3d 1031 (11th Cir. 2000) ……………………………… 12

*Medimport S.R.L. v. Cabreja*,
　929 F. Supp. 2d 1302 (S.D. Fla. 2013) ……………………………… 8

*Mettler, Inc. v. Ellen Tracy, Inc.*,
　648 So.2d 253 (Fla. 2nd DCA 1994) ……………………………… 5

*Microsoft Corp. v. Big Boy Distribution, LLC*,
　589 F. Supp. 2d 1308 (S.D. Fla. 2008) ……………………………… 12

*Nationstar Mortg., LLC v. Sunderman*,
　40 Fla. L. Weekly D2492 (Fla. 3d DCA Nov. 4, 2015) ……………………… 11

*New Lennox Industries, Inc. v. Fenton*,
　510 F. Supp. 2d 893 (N.D. Fla. 2007) ……………………………… 14

*Ovesen v. Scandinavian Boiler Serv., Inc.*,
　2011 WL 3510586 at *4 (S.D. Fla. 2011) ……………………………… 2

*Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp., S.A.*,
　711 F.2d 989, 995 (11th Cir.1983) ……………………………… 2

*Ramos v. County of Miami Dade*,
　2012 WL 3962436 at *4 (S.D. Fla. 2012) ……………………………… 2

*Regions Bank v. Kaplan*,
　2014 WL 5088889 at *6 (M.D. Fla. 2014) ……………………………… 13

*(Table of Citations, cont'd)*

**Page**

*Rivell v.Private Health Care Sys., Inc.,*
   520 F.3d 1308, 1309 (11th Cir. 2008) ………………………………………… 2

*Santillana v. Florida State Court Sys., 18th Judicial Circuit, Seminole County Courts,*
   2010 WL 6774486, at \*6 (M.D. Fla. 2010) …………………………… 12, 13

*Sensormatic Elecs. Corp. v. TAG Co. US, LLC,*
   632 F. Supp. 2d 1147 (S.D. Fla. 2008) ………………………………… 10

*Shaw v. E. I. DuPont De Nemours & Co.,*
   126 Vt. 206, 210, 226 A.2d 903 (1966) ………………………………… 6

*Skinner v. Haugseth,*
   426 So.2d 1127 (Fla. 2nd DCA 1983) …………………………………… 4

*Solyom v. World Wide Child Care Corp.,*
   2015 WL 6167411 at \*1-2 (S.D. Fla. 2015) ………………………… 12, 13

*State Farm Mut. Auto. Ins. Co. v. A & J Med. Ctr., Inc.,*
   20 F. Supp. 3d 1363 (S.D. Fla. 2014) …………………………………… 7

*Suter v. Carnival Corp.,*
   2007 A.M.C. 2564 (S.D. Fla. 2007) …………………………………… 17

*Tardif v. People for the Ethical Treatment of Animals,*
   160 Lab. Cas. P 61065 (M.D. Fla. 2010) …………………………… 15, 16

*Treco Intern. S.A. v. Kromka,*
   706 F. Supp. 2d 1283, 1286 (S.D. Fla. 2010) ………………………… 8

*Thompkins v. Lil' Joe Records, Inc.,*
   476 F.3d 1294, 1305 (11th Cir. 2007) ………………………………… 4

*Watts v. City of Port St. Lucie, Florida,*
   2015 WL 7736532 at \*2 (S.D. Fla. 2015) ……………………………… 3

*Wesley-Jessen, Inc. v. Armento,*
   519 F. Supp. 1352 (N.D. Ga. 1981) …………………………………… 16

*Williams v. Peak Resorts Intern., Inc.,*
   676 So.2d 513 (Fla. 5th DCA 1996) …………………………………… 14

*(Table of Citations, cont'd)*

| | **Page** |
|---|---|
| **Statutes** | |
| 35 U.S.C.A. §271 (West) .................................................... | 17, 18 |
| Fla. Stat. §688.001, *et seq.* (Florida's Uniform Trade Secrets Act) ......................8, 9, 10, 12 | |
| **Other Authorities** | |
| Rule 8(a)(2), Fed. R. Civ. P. .................................................... | 16, 17 |
| Rule 9(b), Fed. R. Civ. P. .................................................... | 15, 16 |
| *Oxford English Dictionary Online,* http://www.oxforddictionaries.com/us/definition/american_english/use (June 2016) .................................................... | 17, 18 |

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

| | | |
|---|---|---|
| ANDREA ROSSI, individually; and LEONARDO CORPORATION, a Florida corporation, | ) ) ) ) | |
| Plaintiffs, | ) ) | CASE NO. 1:16-cv-21199-CMA |
| v. | ) ) | |
| THOMAS DARDEN, individually; JOHN T. VAUGHN, individually; INDUSTRIAL HEAT, LLC, a Delaware limited liability company; IPH INTERNATIONAL B.V., a Netherlands company; and CHEROKEE INVESTMENT PARTNERS, LLC, a Delaware limited liability company, | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

### PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Plaintiffs ANDREA ROSSI ("ROSSI") and LEONARDO CORPORATION ("LEONARDO"), by and through their undersigned counsel, hereby respond in opposition to Defendants THOMAS DARDEN ("DARDEN"), JOHN T. VAUGHN ("VAUGHN"), INDUSTRIAL HEAT, LLC ("IH"), IPH INTERNATIONAL, B.V. ("IPH") and CHEROKEE INVESTMENT PARTNERS, LLC's ("CHEROKEE") (collectively "Defendants") Motion to Dismiss (DE:17), and state:

### LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 544, 127 S.Ct. 1955 (2006) (internal citations omitted). In *Twombly*, the Supreme Court explained that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citation omitted). "A claim has facial plausibility

when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

The Eleventh Circuit, in addressing the pleading standard under *Twombly*, has stated that "[t]his rule does not 'impose a probability requirement at the pleading stage.'" *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008) (citations omitted); *see also F.T.C. v. 1st Guar. Mortg. Corp.*, No. 09-61840-CIV-SEITZ, 2011 WL 1226213, at *2 (S.D. Fla. Mar. 30, 2011) ("Dismissal is only appropriate where the plaintiff's factual allegations do not 'raise a right to relief above a speculative level.'"). Instead, the "standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the required element." *Id.* at 1309-10 (citations omitted). "It is sufficient if the complaint succeeds in 'identifying facts that are suggestive enough to render [the element] plausible.'" *Id.* at 1310 (citations omitted). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41 (1957). The threshold standard to survive a motion to dismiss is an "exceedingly-low one." *Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp., S.A.,* 711 F.2d 989, 995 (11th Cir.1983). The result of this liberal pleading standard is that very few motions to dismiss are granted. *Id.*

The cases are legion, and this Court has repeatedly held that "in deciding a motion to dismiss, a court may only examine the four corners of the complaint and not matters outside the complaint without converting the motion to dismiss to a motion for summary judgment." *Caravello v. Am. Airlines, Inc.*, 315 F. Supp. 2d 1346, 1348 (S.D. Fla. 2004); *Ovesen v. Scandinavian Boiler Serv., Inc.,* 11-61300-CIV, 2011 WL 3510586, at *4 (S.D. Fla. 2011); *See also Ramos v. County of Miami Dade*, 12-21888-CIV, 2012 WL 3962436, at *4 (S.D. Fla. 2012). "For purposes of a motion to dismiss, the complaint must be construed in the light most favorable to the plaintiff and its allegations of material fact must be taken as true." *Lomax v. Wal-Mart Stores E.*, 09-20901-CIV, 2009 WL 3415561, at *3 (S.D. Fla. 2009) (*citing Roberts v. Florida Power & Light Co.,* 146 F.3d 1305, 1307 (11th Cir.1998).

## MEMORANDUM OF LAW

**I.     Count I: Breach of Contract**

The gravamen of Defendants' Motion to Dismiss as it relates to Count I is threefold. Defendants argue that Plaintiffs have failed to state a cause of action for breach of contract because

(a) Plaintiffs allegedly failed to satisfy the conditions precedent to payment under the terms of the License Agreement (DE:17 at 5); (b) the Second Amendment to the License Agreement was invalid because it was not signed by all of the parties to the License Agreement (DE:17 at 6); and (c) the device tested pursuant to the terms of the Contract was not the device referenced in the Second Amendment to the License Agreement (DE:17 at 6). These grounds do not test the sufficiency of the allegations in the Complaint. Rather, they constitute factual issues, not apparent on the face of the Complaint, which likewise can be factually disputed by the Plaintiffs. Notably, Defendants fail to cite a single case supporting any of their arguments addressed to the sufficiency or purported insufficiency of the allegations of Count I of the Complaint asserting a valid claim for breach of contract.

To state a cause of action for breach of contract, a plaintiff must allege "(1) a valid contract, (2) a material breach, and (3) damages." *Int'l Sch. Services, Inc. v. AAUG Ins. Co., Ltd.*, 10-62115-CIV, 2012 WL 5635590, at *7 (S.D. Fla. 2012). Under the standard set forth in *Twombly,* "a plaintiff must plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Watts v. City of Port St. Lucie, Florida*, 2:15-CV-14192, 2015 WL 7736532, at *2 (S.D. Fla. 2015) (internal quotations omitted). Defendants do not assert as a ground for dismissal that one of these required elements are missing from the Complaint for each element of the claim is alleged. (DE:17 at 5, 6).

As their first basis for dismissal, Defendants erroneously argue that Plaintiffs failed to satisfy the prerequisite conditions to payment under the License Agreement (the "Agreement") by failing to complete the "Guaranteed Performance" condition within the time set forth in the Agreement. (DE:17 at 5, 6). Such argument flies directly in the face of the Plaintiffs' plain and clear allegations that (a) the time period set forth for the "Guaranteed Performance" test was "formally eliminated" by the Second Amendment to License Agreement (DE:1 ¶62); (b) Plaintiffs "have satisfied all conditions precedent before commencing this action" (DE:1 ¶75); and (c) the "E-Cat Unit has satisfied and/or exceeded each and every minimum performance criteria set forth in the License Agreement" (DE:1 ¶79). Having failed to accept the facts alleged in the Complaint as true, Defendants' Motion fails.

In an effort to circumvent the requirement that the Court accept the well pled facts in the Complaint as true, Defendants further argue that the Second Amendment to License Agreement ("Second Amendment"), a copy of which is attached to the Complaint as Exhibit "D", extending

the time for the "Guaranteed Performance" test "was not effective because it was not signed by the contracting parties" to support their denial of Plaintiffs' allegations that they had satisfied the conditions precedent to payment. (DE:17 at 6).  Their argument of ineffectiveness is premised upon the lack of execution by AmpEnergo, Inc., an entity that is not affected way by the Second Amendment (DE:17 at 6). The Second Amendment pertains solely to the duties and obligations of the Plaintiffs and Defendant IH under the Agreement and did not affect any of the rights or obligations of AmpEnergo, Inc. Notably, Defendants do not contest the fact that Defendant IH executed the Second Amendment and it is Defendant IH whom Plaintiffs seek to hold to the terms of the agreement it executed..

In Florida, "[g]enerally, it is enough that the party against whom the contract is sought to be enforced signs it." *Thompkins v. Lil' Joe Records, Inc.,* 476 F.3d 1294, 1305 (11th Cir. 2007) (citing *Dodge of Winter Park, Inc. v. Morley,* 756 So. 2d 1085, 1085-86 (Fla. 5th DCA 2000); and *Skinner v. Haugseth,* 426 So.2d 1127 (Fla. 2nd DCA 1983)). "A contract not signed by all the parties, but otherwise valid, may be upheld against a signing party, unless the nature of the wording of the contract indicates that his signature was conditioned upon all other parties signing..." *Skinner* at 1131. The Second Amendment provides, in pertinent part, that:

> "IN WITNESS WHEREOF, the parties hereto intending to be legally bound hereby, have duly executed this Second Amendment to License Agreement on the date first above written." (DE:1, Ex. "D" at 2).

Clearly, this plain language does not require all parties to execute the document in order for it to be effective, but rather, provides that those parties "intending to be bound" have duly executed the Second Amendment. *Id.* As set forth above, it is uncontested that Defendant IH executed the Second Amendment.

Contrary to the plain language above, Defendants erroneously rely upon the language contained in ¶3 of the Second Amendment which provides that "[t]his Amendment **may be executed in counterparts**... provided that one or more counterparts shall contain the signatures of all Parties to this Amendment" for their contention that Defendant IH's execution of the Second Amendment was contingent upon AmpEnergo, Inc. executing the same. (DE:17 at 6) (emphasis supplied). Such reliance is clearly misplaced. In the instant case, the "parties to this Amendment" are Plaintiffs and Defendant IH who executed the same copy of the Second Amendment which

Plaintiffs now seek to enforce against Defendant IH. *See* (DE:1, Ex. "D"). The "counterparts" provision does not apply.

Notwithstanding the above, even assuming, arguendo, that the Second Amendment was not effective as a result of AmpEnergo, Inc.'s failure to execute the same (which is denied), Defendants are equitably estopped from alleging that the "Guaranteed Performance" test was not completed within the time set forth in the Agreement. Any delay in the testing was caused by Defendants' failure to secure a location and/or facility for such "Guaranteed Performance" test as required by the License Agreement. (DE:1, ¶¶60, 61). Moreover, even if the Second Amendment was somehow deemed ineffective to amend the terms of the Agreement, the Second Amendment clearly constitutes a waiver of the time requirements imposed by the Agreement pursuant to paragraph 16.9 thereof. (DE:1, Ex. "B" ¶16.9).

Lastly, Defendants argue that Plaintiffs' claim for Breach of Contract should be dismissed because "Plaintiffs have not pled, and cannot pled [sic], that they performed their "test" ...using such a Six Cylinder Unit." Such argument is clearly improper as it goes beyond the four corners of the Complaint and therefore cannot be considered by the Court when considering the Motion to Dismiss. *Caravello v. Am. Airlines, Inc.*, 315 F. Supp. 2d 1346, 1348 (S.D. Fla. 2004). Moreover, such argument would likewise be subject to limitation under the doctrines of equitable estoppel and waiver, matters of fact, not an insufficiency of pleading.

**II.    Count II: Breach of Contract**

In clear contradiction to the well-established standard, Defendants erroneously move to dismiss Count II arguing that Plaintiffs "fail to state a claim because it fails sufficiently [sic] to allege specific provisions of the License Agreement that were breached" (DE:17 at 7). Defendants completely ignore the allegation set forth in Paragraph 83 of the Complaint that Defendants breached "paragraphs 1 and 2 of the License Agreement." (DE:1, ¶83).

The cases cited by Defendants for the above proposition do not support such contention. Specifically, the cases merely set forth the three elements necessary to state a cause of action for breach of contract. *See Abbot Labs., Inc. v. Gen. Elec. Capital,* 765 So.2d 737, 740 (Fla. 5th DCA 2000), *Mettler, Inc. v. Ellen Tracy, Inc.,* 648 So.2d 253, 255 (Fla. 2nd DCA 1994), and *Abruzzo v. Haller*, 603 So.2d 1338 (Fla. 1st DCA 1992). Moreover, even if such heightened pleading standard were imposed, Plaintiffs' Complaint more than satisfies such heightened standard.

5

In essence, the gravamen of Defendants' erroneous argument is that Plaintiffs have failed to identify any provision in the License Agreement that "forbids" Defendants from engaging in wrongful conduct in excess of the granted license. *See* (DE:17 at 7). Notwithstanding such argument, the law provides that "[w]hen permission is granted to operate in a restricted area, the acceptance of the privilege implies a condition that the area reserved will not be invaded. An English judge has observed,—This seems to be common sense." *Eli Lilly & Co. v. Emisphere Techs., Inc.*, 408 F. Supp. 2d 668, 689-90 (S.D. Ind. 2006) (citing *Incandescent Gas Light Co. v. Cantelo,* 12 Rep. Pat. Cas. 262, (Opinion by Mr. Justice Wills, quoted *690 with approval in *Henry v. A.B. Dick Co.,* 224 U.S. 1, 32 S.Ct. 364, 56 L.Ed. 645, 661)).

In the instant case, the Complaint sufficiently states the scope of the license being granted (*see* DE:1, ¶83) and the territory in which the license is valid (*Id.)* and then properly alleges the means by which Defendants exceeded their rights under the License Agreement including, but not limited to, (a) claiming ownership of the underlying intellectual property in excess of its rights under the License Agreement, (b) applying for patents and otherwise using the underlying intellectual property outside the geographic territory licensed, and (c) claiming ownership status by falsely claiming their employee to be one of the inventors of the licensed intellectual property. (DE:1, ¶86). "The implication that the defendant is not to exceed the limits of his license is not external to the license agreement." *Shaw v. E. I. DuPont De Nemours & Co.*, 126 Vt. 206, 210, 226 A.2d 903, 906 (1966). Where, as here, a defendant has operated outside of the scope of its license to the detriment of the patent rights reserved by the licensor, an action may be brought predicated upon a breach of the geographically limited license. "[I]t is the implied assumption from the language that the defendant would not operate outside the limits of his license to the detriment of the patent rights reserved by the licensor." *Id.* (citing to *Manners v. Morosco*, supra, 252 U.S. 317 (1920). Accordingly, the Defendants' actions, which exceed the scope and geographic territory of the subject License Agreement, constitute a breach of the Agreement and is therefore actionable in contract. To accept Defendants' position, no licensor could limit its license to a specific geographic territory and every license would be worldwide, disrupting commerce and established rights.

### III.    Count III: Unjust Enrichment

"While the theory of unjust enrichment is equitable in nature and is, therefore, not available where there is an adequate legal remedy, a plaintiff may maintain an unjust enrichment claim in

the alternative to its legal claims." *Aceto Corp. v. TherapeuticsMD, Inc.*, 953 F. Supp. 2d 1269, 1287 (S.D. Fla. 2013). In Florida, "a party may plead in the alternative for relief under an express contract and for unjust enrichment." *Martorella v. Deutsche Bank Nat. Trust Co.*, 931 F. Supp. 2d 1218, 1227 (S.D. Fla. 2013). "[I]t is not upon the allegation of the existence of a contract, but upon a showing that an express contract exists that the unjust enrichment count fails." *Id at 1228. "*Until an express contract is proven, a motion to dismiss a claim for unjust enrichment on these grounds is premature." *Id.* While Plaintiffs concede that they "cannot pursue a quasi-contract claim for unjust enrichment if an express contract exists concerning the same subject matter as their claim for unjust enrichment," until such time as the express contract is proven, Plaintiffs' claim for unjust enrichment survives. It is surprising that Defendants make this specious argument, while at the same time, challenge the breach of contract claims set forth in Counts I and II.

There is no dispute that "[t]o state an actionable claim for unjust enrichment, a plaintiff must allege: (1) a benefit bestowed upon a defendant by the plaintiff; (2) the defendant's appreciation of the benefit; (3) the defendant's acceptance and retention of the benefit; and (4) circumstances that make it inequitable for the defendant to retain the benefit without compensating the plaintiff for its value." *State Farm Mut. Auto. Ins. Co. v. A & J Med. Ctr., Inc.*, 20 F. Supp. 3d 1363, 1368 (S.D. Fla. 2014). Defendants erroneously assert that the Plaintiffs have failed to sufficiently allege that Plaintiffs "conferred a benefit on IH and IPH", a required element of the claim for relief. But once again, Defendants blatantly ignore the plain and unambiguous allegations in the Complaint. (DE:17 at 9).

Specifically, Plaintiffs allege that they conferred upon Defendants an exclusive right to "use the E-Cat IP and related technology within North America, South America, Central America, Caribbean, Russia, China and the Arab Emirates." (DE:1, ¶89). Contrary to the Defendants' argument, in the event the Court, or finder of fact, determines that no valid License Agreement exists, the benefit of the exclusive use of the E-Cat intellectual property in the specified geographic areas has still been bestowed upon Defendants to their benefit. Furthermore, Plaintiffs have sufficiently alleged that Defendants IH and/or IPH had knowledge of such benefit (¶90) and retained the benefits thereof including engaging in substantial fundraising predicated upon Defendants having the exclusive right to the E-Cat Intellectual Property. (¶70). As such, Plaintiffs' allegations are more than sufficient to withstand Defendants' Motion to Dismiss, as each element of the cause of action has been adequately alleged.

### IV.   Count IV: Misappropriation of Trade Secrets

In Florida, "[t]he elements of a claim for misappropriation of trade secrets under Florida's Uniform Trade Secrets Act, Fla. Stat. §688.001 *et seq.* are: "(1) the plaintiff possessed secret information and took reasonable steps to protect its secrecy and (2) the secret it possessed was misappropriated, either by one who knew or had reason to know that the secret was improperly obtained or by one who used improper means to obtain it." *Medimport S.R.L. v. Cabreja*, 929 F. Supp. 2d 1302, 1322 (S.D. Fla. 2013). In satisfying the first element, Plaintiffs properly allege that Plaintiffs possessed intellectual property including, but not limited to, formulas, patterns, devices, designs, methods and processes relating to the design, construction and operation of the Plaintiffs' Energy Catalyzer. (DE:1, ¶96). In Florida, "[a] party proceeding under FUTSA need only describe the misappropriated trade secrets with "reasonable particularity." *Treco Intern. S.A. v. Kromka*, 706 F. Supp. 2d 1283, 1286 (S.D. Fla. 2010) (allegations that defendant "became familiar with the development, structure, feasibility, and marketing of the [subject] network and timing of its release" satisfied the "reasonable particularity" pleading requirement).

#### (a)   Whether Plaintiffs Protected the Secrecy of the Trade Secrets is a Question of Fact not Properly Raised in a Motion to Dismiss.

In their Complaint, Plaintiffs allege that the aforementioned information was "maintained as a closely held trade secret in order to prevent the unauthorized dissemination of such information," and that Plaintiffs have "undertaken extensive steps to preserve and maintain the confidential and secret nature" of such trade secrets. (DE:1, ¶104). Despite such allegations, Defendants contend that Count IV should be dismissed predicated upon Defendants' allegation that Plaintiffs "did not protect its secrecy against IH or IPH's disclosure" of the trade secrets. (DE:17 at 10). "However, whether a party has taken reasonable steps under the circumstances to preserve its trade secrets is a factual inquiry that cannot be resolved on a motion to dismiss." *Treco Intern. S.A. v. Kromka,* 706 F. Supp. 2d 1283, 1287 (S.D. Fla. 2010) (citing *Furmanite America, Inc. v. T.D. Williamson, Inc.,* 506 F.Supp.2d at 1141 (M.D. Fla. 2007) ("Courts are extremely hesitant to grant summary judgment regarding the fact-intensive questions of the existence of a trade secret or whether a plaintiff took reasonable steps to protect its trade secrets")). As such, Defendants' argument fails.

#### (b)   Plaintiffs have Adequately Alleged that Defendants Acquired the Trade Secrets by Improper Means which must be Accepted as True.

Next, Defendant argues that "Defendants did not use improper means to obtain the E-Cat IP." As before, Plaintiffs have sufficiently satisfied the second element of a claim for misappropriation of trade secrets by alleging, *inter alia,* that Defendants (a) are attempting to patent Plaintiffs' intellectual property as their own, (b) falsely claiming that one of their agents is a co-inventor of the Plaintiffs' intellectual property, (c) failing to return the intellectual property and trade secrets after Defendants breached the terms of the License Agreement, and (d) created shell companies to deprive Plaintiffs of their trade secrets. (DE:1, ¶¶98, 99). Defendants' entire argument is predicated upon their denial of the factual allegations in Plaintiffs' Complaint as opposed to any legal basis for dismissal. (DE:17 at 11). As this Court has held, on numerous occasions, the law is clear that "[w]hen reviewing a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and take the factual allegations therein as true. *Arellano v. Am. Airlines, Inc.,* 69 F. Supp. 3d 1345, 1347 (S.D. Fla. 2014) (citing *Brooks v. Blue Cross & Blue Shield of Fla., Inc.,* 116 F.3d 1364, 1369 (11th Cir.1997)). Taking the allegations in the Complaint as true, Plaintiffs have satisfied the pleading requirements to state a cause of action for misappropriation of trade secrets.

**(c) Specific Acts Alleged by Plaintiffs Constitute Misappropriation.**

Lastly, Defendants argue that the allegations contained in the Complaint "do not constitute misappropriation" so as to give rise to a claim for misappropriation of trade secrets. (DE:17 at 11). Pursuant to §688.002, Fla. Stat., the term "Misappropriation" is defined as:

> (2)(a)  Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
>
> (b)  Disclosure or use of a trade secret of another without express or implied consent by a person who:
>
>   1.  Used improper means to acquire knowledge of the trade secret; or
>
>   2.  At the time of disclosure or use, knew or had reason to know that her or his knowledge of the trade secret was:
>
>       a.  Derived from or through a person who had utilized improper means to acquire it;
>
>       b.  Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or
>
>       c.  Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or

> 3.   Before a material change of her or his position, knew or had
> reason to know that it was a trade secret and that knowledge
> of it had been acquired by accident or mistake.

*Id.* While Defendants attempt to "cherry pick" certain allegations in an attempt to argue that such allegation standing alone does not constitute a "misappropriation", the allegations contained in Count IV of the Complaint must be considered together.

Generally, Plaintiffs allege that Defendants IH and/or IPH procured the subject trade secrets by making fraudulent misrepresentations to Plaintiffs that, *inter alia,* (a) "Cherokee and Industrial Heat, LLC are the same company"; (b) "IH was entirely owned and funded by Cherokee"; (c) "IPH was a wholly owned subsidiary of IH"; "IPH would remain wholly owned by IH until Leonardo had been paid in full"; and (d) Defendants acquired the underlying trade secrets, *in part,* by failing to disclose "their intention to misappropriate the E-Cat IP and deprive the Plaintiffs of the same without compensation." (DE:1, ¶¶43, 52, 98, 99). Taken as true, such allegations clearly demonstrate that underlying trade secrets were acquired by "improper means" as used in §688.002(2)(a), Fla. Stat.

Moreover, "[t]he definition of "improper means" under FUTSA includes "breach or inducement of a breach of a duty to maintain secrecy." *Sensormatic Elecs. Corp. v. TAG Co. US, LLC*, 632 F. Supp. 2d 1147, 1185 (S.D. Fla. 2008), *aff'd in part sub nom. Sensormatic Elecs., LLC v. Kahle*, 367 Fed. Appx. 143 (Fed. Cir. 2010). Where, as here, trade secrets were disclosed in violation of a licensing agreement, such disclosure constitutes a misappropriation as contemplated by §688.002, Fla. Stat. *See Id.* at 1185.

In addition, Plaintiffs alleged in their Complaint that Defendants "were engaged in a confidential and fiduciary relationship" with Plaintiffs and "IH and IPH had a duty and responsibility to protect and preserve the confidentiality of the information and trade secrets." (DE:1, ¶101). Even assuming, arguendo, that Defendants had acquired the trade secrets by proper means, any subsequent disclosures made, other than those authorized in the License Agreement, constitute a misappropriation because such use and/or disclosure occurred without the consent of the Plaintiffs. (DE:1, ¶¶102, 103); *see also* §688.002(2)(b)(3), Fla. Stat.

Notwithstanding the above, Defendants raise five specific arguments in their Motion to Dismiss on the grounds that the allegations in the Complaint do not give rise to a misappropriation including (1) Defendants' attempt to obtain patents using Plaintiffs' trade secrets was permitted

by the License Agreement, therefore it was not improper; (2) the License Agreement permitted them to attempt to obtain a patent using Plaintiffs' trade secrets and falsely naming one of their agents as an inventor; (3) they were provided the trade secrets with no confidentiality restrictions; (4) Defendants' continued use and failure to return the subject trade secrets is not a "disclosure or use"; and (5) the creation of shell companies does not amount to a misappropriation of the Plaintiffs' trade secrets. (DE:17 at 11-13). As with Defendants' arguments in relation to the other Counts, Defendants improperly seek a factual determination by the Court on a motion to dismiss that is supposed to challenge the legal sufficiency of the allegations and whether Defendants are on notice of the claims being asserted, not factually dispute what is alleged. *See Nationstar Mortg., LLC v. Sunderman*, 40 Fla. L. Weekly D2492 (Fla. 3d DCA Nov. 4, 2015).

In their first and second arguments, Defendants attempt to mislead the Court by arguing that the License Agreement expressly permits Defendants IH and IPH to "pursue patents relating to the E-Cat IP", citing to paragraph 7.1 and 13.4 of the License Agreement. (DE:17 at 11). Notably, paragraph 7.1 of the License Agreement provides that Defendant IH "may participate in patent prosecution and maintenance" undertaken by Leonardo Corporation". (DE:1, Ex. "B", ¶7.1). Nothing therein gives IH or any other Defendant the right to apply for patents for the Plaintiffs' underlying trade secrets in their own name(s). Paragraph 13.4 of the License Agreement provides that Defendant IH shall maintain its rights to "any and all inventions, discoveries, concepts, ideas, information and anything else the Company, its sublicensees, or any of their affiliates, makes or develops which relate to the E-Cat IP." (DE:1, Ex. "B", ¶13.4). Neither provision relied upon by Defendants grants any Defendant the right to claim the Plaintiffs' intellectual property and trade secrets as their own or obtain a patent for such trade secrets in their name(s). Even assuming, arguendo, that the License Agreement permitted such use of the trade secrets (it does not), such acts would still constitute a misappropriation because the License Agreement was procured by improper means as discussed above.

As Defendants' third and fourth arguments, Defendants merely contest the factual allegations set forth in the Complaint relating to Defendants' right to disclose the subject trade secrets, and whether their continued use of the same is improper. (DE:17 at 12-13). As discussed above, it is alleged in the Complaint that Defendants acquired the subject trade secrets by improper means whereby any use or dissemination thereof would constitute a misappropriation which gives rise to a claim for misappropriation of trade secrets. (DE:1, ¶¶43, 52, 98, 99). Notwithstanding,

even if the trade secrets were not procured by improper means, the authorized use of such trade secrets by Defendants would be a question of fact not properly raised in a Motion to Dismiss.

Finally, Defendants argue that the creation of foreign and domestic shell companies does not constitute a misappropriation sufficient to give rise to a claim under §688.002, Fla. Stat., for misappropriation of trade secrets. (DE:17 at 13). As discussed above, this allegation, read together with the other allegations in Count IV, set forth a prima facie case for misappropriation of trade secrets. While Plaintiffs concede that the simple formation of a shell company, with nothing more, does not arise to a misappropriation under the statute, where that shell company is used as part of a scheme to obtain trade secrets by improper means, such act is part of the misappropriation and is properly alleged. For the foregoing reasons, Defendants' Motion to Dismiss Count IV should be denied.

### V.    Count V: Conspiracy Not Barred by Intra-Corporate Conspiracy Doctrine

"The elements of civil conspiracy under Florida law consist of (1) a conspiracy between two or more parties; (2) to do an unlawful act, or to do a lawful act by unlawful means; (3) an overt act in pursuance of the conspiracy, and (4) damage to plaintiff as a result." *Microsoft Corp. v. Big Boy Distribution, LLC*, 589 F. Supp. 2d 1308, 1322 (S.D. Fla. 2008). Notwithstanding the fact that Plaintiffs have adequately alleged each and every element necessary to state a prima facie claim for civil conspiracy, Defendants argue that the "intra-corporate conspiracy doctrine" bars the Plaintiffs' claim for relief.

"The intra-corporate conspiracy doctrine originated in the antitrust arena where it seemed logical to conclude that a corporation could not conspire with itself to restrain trade." *McAndrew v. Lockheed Martin Corp.,* 206 F.3d 1031, 1036 (11th Cir. 2000). "The doctrine provides that just as it is not legally possible for an individual to conspire with himself, it is not possible for a single legal entity to conspire with itself. *Solyom v. World Wide Child Care Corp.*, 14-80241-CIV, 2015 WL 6167411, at *1-2 (S.D. Fla. 2015)(citing *McAndrew, 206 F.3d at 1036).* "Stemming from basic agency principles, the doctrine 'attributes the acts of agents of a corporation to the corporation, so that all of their acts are considered to be those of a single actor." *Id.* (citing *Dickerson v. Alachua County Com'n, 200 F.3d 761, 767 (11th Cir. 2000)).

"However, the intra-corporate conspiracy doctrine does not apply when corporate agents act outside the scope of their employment, have an independent personal stake in the corporate action, or engage in a series of discriminatory acts as opposed to a single action." *Santillana v.*

*Florida State Court Sys., Eighteenth Judicial Circuit, Seminole County Courts,* 6:09-CV-2095-ORL-19, 2010 WL 6774486, at *6 (M.D. Fla. 2010) (citing *Dickerson v. Alachua County Com'n,* 200 F.3d 761, 767 (11th Cir. 2000) (internal quotations omitted). Nor does the intra-corporate conspiracy doctrine apply where separate legal entities are involved in the alleged conspiracy. *See Regions Bank v. Kaplan,* 8:12-CV-1837-T-17MAP, 2014 WL 5088889, at *6 (M.D. Fla. 2014).

In the instant case, Plaintiffs allege that CHEROKEE INVESTMENT PARTNERS, LLC, INDUSTRIAL HEAT, LLC and IPH INTERNATIONAL, B.V. are separate legal entities, organized in separate jurisdiction, and under separate legal authority. (DE:1, ¶¶11, 12, 13). As such, although related, the corporate Defendants are separate legal entities, operating independently of each other and therefore do not benefit from the intra-corporate conspiracy doctrine. *See Solyom*, 14-80241-CIV, 2015 WL 6167411, at *1-2 (S.D. Fla. 2015). Furthermore, it is alleged that the individual Defendants, JOHN VAUGHN and THOMAS DARDEN, are officers at both INDUSTRIAL HEAT, LLC and CHEROKEE INVESTMENT PARTNERS, LLC. (DE:1, ¶9, 10).[1] In this scenario, the intra-corporate conspiracy doctrine would be inapplicable because it is not clear which company, if any, the individual Defendants' actions should be attributed to, or in what capacity such Defendants took those actions. Where the Court cannot determine from the alleged facts whether any of the exceptions to the intra-corporate conspiracy doctrine applies, dismissal on such grounds is improper. *See Santillana,* 6:09-CV-2095-ORL-19, 2010 WL 6774486, at *6 (M.D. Fla. 2010).

Moreover, the individual Defendants in this case had a personal stake in the product of the conspiracy undertaken to make sure that they maintained control over the misappropriated trade secrets. *See Regions Bank v. Kaplan*, 8:12-CV-1837-T-17MAP, 2014 WL 5088889, at *6 (M.D. Fla. 2014) (individuals transferring assets from one company to another "maintain control over those funds" created a personal stake sufficient to overcome intra-corporate conspiracy doctrine). Specifically, Plaintiffs allege that Defendants JOHN VAUGHN, THOMAS DARDEN and CHEROKEE INVESTMENT PARTNERS, LLC have each created numerous foreign and domestic shell companies as part of their scheme to misappropriate Plaintiffs' trade secrets which evidences each such Defendant's personal stake in the conspiracy. (DE:1, ¶¶98, 106). Accordingly, the intra-corporate conspiracy doctrine does not apply to the Defendants in this case.

---

[1] It appears that Mr. DARDEN is also the owner of the company IPH Holdings, Ltd. which is named as the Manager of IPH INTERNATIONAL, B.V.

## VI.    COUNT VI: Fraud

The gravamen of Defendants' Motion as it pertain to the Fraud claim, is predicated upon their wrongful characterization of the claim as they ignore the allegations in the Complaint asserting fraudulent inducement of the contract and fraudulent inducement of the First Amendment.  It is well recognized that fraudulent inducement is a tort independent from a breach of contract, and normally occurs prior to the contract.  *Kaye v. Ingenio, Filiale de Loto-Quebec, Inc.*, 13-61687-CIV, 2014 WL 2215770, at *5 (S.D. Fla. 2014).   The actions of fraudulent inducement into a contract and breach of that contract are not mutually exclusive and may be brought in the same suit.  *Williams v. Peak Resorts Intern., Inc.*, 676 So.2d 513, 517 (Fla. 5th DCA 1996).  The mere fact that the damages sought in both a breach of contract claim and a fraud in the inducement claim are similar has no bearing on the separateness of the two claims.  *New Lennox Industries, Inc. v. Fenton*, 510 F. Supp. 2d 893 (N.D. Fla. 2007).

The allegations in the Complaint in Paragraphs 38, 39 and 43 all relate to representations made to Plaintiffs to induce the execution of the License Agreement, specifically:  "CHEROKEE has billions of dollars at its disposal, and is willing to pay ROSSI and LEONARDO" (DE:1 ¶38); "if CHEROKEE were granted a license to the E-Cat IP, they would protect the E-Cat IP from dissemination so as to maximize the value of the intellectual property around the world" (DE:1 ¶39 a.); "they were authorized to use the funds managed by CHEROKEE to pay LEONARDO in excess of One Hundred Million Dollars ($100,000,000.00) for the E-Cat IP license" (DE:1 ¶39 b.); "CHEROKEE and INDUSTRIAL HEAT, LLC are the same company" (DE:1 ¶43 a.); IH was "entirely owned and funded by CHEROKEE" (DE:1 ¶43 b.); "CHEROKEE guaranteed that LEONARDO will be paid in accordance with the License Agreement" (DE:1 ¶43 c.).  Allegations of a "strong financial status" and "net worth of Twenty-One Million Dollars ($21,000,000.00)" made to induce the entry into a contract have been held sufficient to sustain a claim for relief predicated upon fraud in the inducement.  *Williams v. Peak Resorts Intern., Inc.*, 676 So.2d 513, 515-516 (Fla. 5th DCA 1996).

The Complaint further alleges representations inducing the First Amendment and assignment of the License Agreement from IH to IPH.  Those representations which form the gravamen of this part of the fraudulent inducement claim are that "IPH was a wholly owned subsidiary of IH" (DE:1, ¶52, 53); "IPH would remain wholly owned by IH until Leonardo had been paid in full" (DE:1, ¶52); and "the assignment would not affect ROSSI or LEONARDO's

rights under the License Agreement." (DE:1, ¶53). As to each of the allegations, the Complaint specifies that the allegations were made on or about April 29, 2013 (DE:1, ¶50), the allegations were made by DARDEN, VAUGHN and IH (DE:1, ¶¶51, 52)[2], that the parties were in Fererra, Italy (DE:1, ¶48) and that predicated upon such misrepresentations, they were induced to execute the First Amendment and related assignment. (DE:1, ¶54). Moreover, Plaintiffs further allege that all Defendants "knowingly and intentionally failed to disclose" that: (a) Defendants intended to misappropriate Plaintiffs' intellectual property (DE:1, ¶115(a)); Defendants had no intention of compensating Plaintiffs pursuant to the License Agreement (DE:1, ¶115(b)); and Defendants intended to disclose Plaintiffs' intellectual property and trade secrets to Plaintiffs' competitors as part of a plan to misappropriate the same (DE:1, ¶115(c)). The first element of a claim for fraud may be satisfied by alleging either an omission or a material misrepresentation. *See Chamberlain v. Integraclick, Inc.,* 4:10-CV-00477-SPM, 2011 WL 2118699 at *3 (N.D. Fla. 2011). Contrary to the argument of Defendants, Plaintiffs have alleged, with the requisite specificity to satisfy the particularity requirements of Rule 9(b), sufficient facts to support a claim for fraud. Accordingly, Defendants' Motion to Dismiss should accordingly be denied.

## VII.   COUNT VII: Constructive and Equitable Fraud

Defendants' argument for dismissal as to Count VII for constructive and equitable fraud is threefold. Specifically, Defendants argue that (a) Plaintiffs have failed to any facts demonstrating that Defendants owed Plaintiffs a fiduciary duty, (b) the allegations of fraud "do not meet Rule 9(b)'s particularity requirements," and (c) the claim is just a characterization of the breach of contract claim. (DE:17 at 17, 18). For the reasons set forth below, such arguments fail.

"Constructive fraud occurs when a duty under a confidential or fiduciary relationship has been abused **or** where an unconscionable advantage has been taken. *Tardif v. People for the Ethical Treatment of Animals*, 160 Lab. Cas. P 61065 (M.D. Fla. 2010) (citing *Levy v. Levy,* 862 So.2d 48, 53 (Fla. 3d DCA 2003))(emphasis supplied). "Constructive fraud may be based on a misrepresentation or concealment, or the fraud may consist of taking an improper advantage of the fiduciary relationship at the expense of the confiding party." *Id.* The Defendants erroneously argue that the lack of a broad confidentiality provision in the License Agreement, no such confidential

---

[2] Defendants argue that it is "patently implausible" that each of the Defendants made the fraudulent representations, but that would be a question of fact not properly raised in a Motion to Dismiss (DE:17 at 16).

relationship exists. To the contrary, "express agreements or promises [of trust and confidentiality] are not necessary with regard to the imposition of limitations on the Defendant's use of the disclosures because trust and confidentiality may be implied from the very relationship between the parties. *Biodynamic Techs., Inc. v. Chattanooga Corp.*, 644 F. Supp. 607, 612 (S.D. Fla. 1986). In the instant case, a confidential relationship can clearly be implied by the strict confidentiality provision contained in ¶16.4 of the License Agreement wherein Defendant IH acknowledges the confidential nature of the information being disclosed by Plaintiffs relating to the E-Cat IP.[3] (DE:1, Ex. "B" ¶16.4). A confidential relationship can also be inferred based upon the requirement that Plaintiffs obtain a confidentiality agreement from any future licensees naming IH as a third party beneficiary to such confidentiality agreement. (DE:1, Ex. "B" ¶16.4). Moreover, the negotiations between the parties to the License Agreement "established a confidential relationship between the parties in the course of which the Plaintiff disclosed secret information to the Defendant and that the Defendant in this position of trust and confidence used the information to the injury of the Plaintiff." *See Biodynamic Techs., Inc. v. Chattanooga Corp.*, 644 F. Supp. 607, 612-13 (S.D. Fla. 1986).

Notwithstanding the above, the determination of whether a confidential relationship existed between parties to litigation is determined either on a factual or legal basis properly made after the development of the facts upon a full trial. *Azalea Meats, Inc. v. Muscat*, 386 F.2d 5, 9 (5th Cir. 1967). The existence of a confidential relationship in the absence of a contract provision is a question of fact. *Wesley-Jessen, Inc. v. Armento,* 519 F. Supp. 1352, 1362 (N.D. Ga. 1981). Accordingly, Defendants' failure to accept the Plaintiffs allegation of a confidential relationship is fatal to its argument for dismissal of this cause of action.

Furthermore, Defendants erroneously rely on their argument that the allegations in the Complaint fail to satisfy the particularity requirements of Rule 9(b), Fed. R. Civ. P. Such reliance is clearly misplaced. "Constructive fraud, unlike actual fraud, does not require a showing of intent or of a misrepresentation or concealment and thus **a claim for constructive fraud need only meet the liberal pleading requirements of Rule 8**." *Tardif v. People for the Ethical Treatment of Animals*, 160 Lab. Cas. P 61065 (M.D. Fla. 2010)(emphasis supplied). As stated above "[t]he

---

[3] The License Agreement which was prepared by Defendants included all parties to the agreement as to most of the terms, but suspiciously omitted IH from the portion of the confidentiality agreement relating to the E-Cat IP.

threshold of sufficiency that a complaint must meet to survive a motion to dismiss for failure to state a claim is ... exceedingly low." *Suter v. Carnival Corp.*, 2007 A.M.C. 2564 (S.D. Fla. 2007). Accordingly, the Plaintiffs' Complaint need only set forth a "short and plain statement of the claim", which Plaintiffs have done. *See* Rule 8(a)(2), Fed. R. Civ. P. As for Defendants' final argument that this claim is merely a reiteration of the breach of contract claim, such argument is equally without merit. Plaintiffs rely upon the same authority and reasoning set forth in response to Defendants' Motion to Dismiss Count VI above in response to such argument. Amazingly, Defendants argue that the License Agreement did not create any confidential relationship or fiduciary duty, yet at the same time argue that such claims should be tried as a breach of contract claim. For the foregoing reasons, Defendants' Motion to Dismiss as to Count VII should be denied.

## VIII.    COUNT VIII: Patent Infringement

"[W]hoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent. 35 U.S.C.A. §271 (West). The term "use" or "uses" has the following definition: "Take, hold, or deploy (something) as a means of accomplishing a purpose or achieving a result; employ." *Definition of "uses", Oxford English Dictionary Online, http://www.oxforddictionaries.com/us/definition/american_english/use* (last visited Jun. 16, 2016). In their Complaint, Plaintiffs allege that Defendants have infringed upon Plaintiffs' patent by (a) using Plaintiffs' patented intellectual property to apply for patents in multiple foreign countries (DE:1, ¶132, 133), and (b) using Plaintiffs' intellectual property to solicit millions of dollars in investments for future development. (DE:1, ¶¶69, 70, 134). Such uses were directed and undertaken by Defendants and their counsel in the United States.

Plaintiffs concede that after diligent research and inquiry, the only published case which appears to address whether the filing of a patent application constitutes an infringement is *Classen Immunotherapies, Inc. v. Elan Pharms., Inc.,* 786 F.3d 892, 898-99 (Fed. Cir. 2015). In *Classen,* the Federal Circuit gratuitously observed, in dicta, that;

> To assist the district court in its analysis of infringement, if the court reaches that issue on remand, we make the following observations of the record. Filing a patent application is <u>generally not</u> an infringement of a patent. It is not the making, using, offering to sell, selling, or importing of an invention. *Id.* (emphasis supplied).

The Plaintiffs respectfully submit that the Federal Circuit Court's opinion, as discussed in dicta, is neither binding on this Court, nor is it a proper application of 35 U.S.C.A. §271 regarding patent infringement. Applying the plain and ordinary use of the language, the word "use" as used in 35 U.S.C.A. §271, Defendants' actions employing the patented intellectual property "as a means of accomplishing a purpose or achieving a result" (i.e. obtaining intellectual property rights in foreign jurisdictions or raising capital from investors), is clearly an infringement of Plaintiffs' patent. *See Definition of "uses", Oxford English Dictionary Online.* Moreover, in *Classen,* the court indicated that "filing a patent application is generally not an infringement" indicating that in their opinion, in some circumstances, the filing of a patent application may be considered an infringement of an existing patent. *Id.* at 898. Even if this Court were to adopt the reasoning of the *Classen* court (it should not), Plaintiffs suggest that the circumstances of this case, as alleged in the Complaint, require an exception to the "general" principal predicated upon Defendants' outright attempts to commandeer Plaintiffs' intellectual property.

Lastly, Defendants misconstrue the provisions contained in the License Agreement. (DE:17, ¶19). Defendants attempt to mislead this Court by choosing language of the License Agreement and using such language out of context to infer that Defendants were to be transferred all rights to the underlying intellectual property and patents. *See* (DE:17 at 19). To begin, Defendants conveniently omit that they were granted certain rights related to the underlying patent within a limited territory (which Defendants exceeded). (DE:1, Ex. "B" ¶1). Next, Defendants attempt to infer that somehow "participation in patent prosecution" as provided for in the License Agreement bestows upon them some right to claim ownership of such intellectual property sufficient to obtain their own patent for Plaintiffs' work; this is not the case. (DE:1, Ex. "B" ¶1). Such claims are disingenuous and clearly contradicted by the plain language of the License Agreement. For the reasons set forth above, Defendants' Motion to Dismiss as to Count VIII should be denied.

## CONCLUSION

For the reasons set forth above, this Court should DENY the Defendants' Motion to Dismiss, and require Defendants to file their answer to Plaintiffs' Complaint.

Dated:  June 17, 2016

Respectfully submitted,

THE SILVER LAW GROUP, P.A.
*Attorneys for Plaintiffs*
P.O. Box 710
Islamorada, FL  33036
(305) 664-3363   Telephone
(305) 664-3365   Fax
jannesser@silverlawgroup.com
psilver@silverlawgroup.com
linda@silverlawgroup.com
service@silverlawgroup.com

By: /s/ JOHN W. ANNESSER
        John W. Annesser, Esq.
        Fla. Bar No. 98233
        Patricia M. Silver, Esq.
        Fla. Bar No. 198919

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 17th day of June, 2016, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using the CM/ECF system.  I further certify that the foregoing document was served via transmission of Notice of Electronic Filing generated by CM/ECF to any and all active CM/ECF participants, including:

Christopher R.J. Pace, Esq.
JONES DAY
*Attorneys for Defendants*
crjpace@jonesday.com

/s/ JOHN W. ANNESSER
John W. Annesser, Esq.