# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

| | | |
|---|---|---|
| ANDREA ROSSI and LEONARDO CORPORATION, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CASE NO. 1:16-cv-21199-CMA |
| THOMAS DARDEN; JOHN T. VAUGHN; INDUSTRIAL HEAT, LLC; IPH INTER-NATIONAL B.V.; and CHEROKEE INVESTMENT PARTNERS, LLC, | ) ) ) ) ) | |
| Defendants. | ) ) | |

## DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS

Thomas Darden ("Darden"), John T. Vaughn ("Vaughn"), Industrial Heat, LLC ("IH"), IPH International, B.V. ("IPH"), and Cherokee Investment Partners, LLC ("Cherokee") hereby reply to the Opposition to Defendants' Motion to Dismiss [D.E. 18] ("Opp.") of Andrea Rossi ("Rossi") and Leonardo Corporation ("Leonardo").

## LEGAL STANDARD

Plaintiffs' depiction of the applicable legal standard is flawed in numerous respects. First, Plaintiffs rely on *Conley v. Gibson*, 355 U.S. 41 (1957), and *Quality Foods de Centro America, S.A. v. Latin American Agribusiness Development Corp., S.A.*, 711 F.2d 989 (11th Cir. 1983), for the proposition that the pleading standard is exceptionally low. The federal court pleading standard, however, has been replaced – and substantially heightened – by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

Furthermore, Plaintiffs erroneously suggest that this Court is limited to considering only the Complaint when ruling on Defendants' Motion to Dismiss. Plaintiffs blatantly ignore the cases Defendants cite in the Motion holding that courts must also consider exhibits to a complaint and documents referenced in a complaint that are central to a claim when ruling on a motion to dismiss. *See Rodriguez v. Holder*, 2011 WL 2911927, at *1 n.5 (S.D. Fla. Mar. 9, 2011); *Prestige Rests. & Entm't, Inc. v. Bayside Seafood Rest., Inc.*, 2010 WL 680905, at *3 (S.D. Fla. Feb. 23, 2010); *Garcia v. United Auto Credit Corp.*, 2008 WL 141579, at *1 (S.D. Fla. Jan. 11, 2008). They also ignore that to the extent a complaint contradicts its exhibits, the exhibits control. *See Geter v. Galardi South Enters., Inc.*, 43 F.Supp.3d 1322, 1328 (S.D. Fla. 2014); *Indulgence Yacht Charters, Ltd. v. Ardell Inc.*, 2008 WL 4346749, at *4 (S.D. Fla. Sept. 16, 2008). Here, the Complaint's Exhibits are controlling and clearly demonstrate the fatal flaws in Plaintiffs' claims. *See id*.

## ARGUMENT

### I.       Count I Fails To State A Viable Cause Of Action.

Plaintiffs' attempt to salvage their first breach of contract claim by relying on the Proposed Second Amendment fails on multiple grounds. First, as Plaintiffs recognize, a contract

executed by some but not all parties "may be upheld against a signing party, *unless the nature or the wording of the contract indicates that his signature was conditioned upon all other parties signing* the contract[.]"  Opp. at 4 (quoting *Skinner v. Haugseth*, 426 So.2d 1127, 1131 (Fla. Dist. Ct. App. 1983)) (emphasis added).  Here, such a condition is reflected in Section 3 of the Proposed Second Amendment, which expressly required that it could be executed in counterparts but the counterparts collectively had to "contain the signatures of all Parties to this Amendment." *See Buzzmarketing LLC v. Upper Deck Co.*, 2004 WL 966241, at *3 (E.D. Pa. May 5, 2004). The Proposed Second Amendment, however, was not signed by two parties identified in that document – neither AEG nor Leonardo signed it.  The Proposed Second Amendment also arose after the License Agreement was assigned to IPH, but IPH did not sign the Proposed Second Amendment.  Mot. at 6.  And if that were not enough, Section 16.9 of the License Agreement itself states that it may be amended "only by a written instrument signed by the Parties."  So Plaintiffs, IH, IPH and AEG all knew, even before the Proposed Second Amendment was drafted, that it would only be effective to amend the License Agreement if they all signed it.

Second, Plaintiffs do not dispute that Section 1 of the Proposed Second Amendment required a testing of a "Six Cylinder Unit," not an E-Cat, and Plaintiffs did not test a Six Cylinder Unit.  Instead, they claim this requirement is somehow void "under the doctrines of equitable estoppel and waiver," but there are no allegations in the Complaint that provide a basis to apply either doctrine (which, in any event, would be ineffective absent a signed, written waiver of the Six Cylinder Unit requirement given License Agreement §16.9).  Plaintiffs also do not allege in the Complaint a "date agreed to in writing between the Parties" to start Plaintiffs' new testing.  Proposed Second Amendment §1.  Plaintiffs cannot rewrite the Proposed Second Amendment after the fact to fit their flawed claim – Plaintiffs either (a) could run their test using the E-Cat because the Proposed Second Amendment was not in effect, but then their testing was untimely under the License Agreement, or (b) had to run their test using the Six Cylinder Unit after agreeing in writing with the other contracting parties to a new testing start date, as stated in the Proposed Second Amendment, which Plaintiffs did not do.  *See St. Johns Inv. Mgmt. Co. v.*

2

*Albaneze*, 22 So.3d 728, 731-32 (Fla. Dist. Ct. App. 2009) (contracts should not be interpreted in a way that renders contract provisions meaningless, and courts cannot rewrite clear contract terms, "even where the terms of the contract are 'harsh'").

Third, Plaintiffs suggest that they were excused from abiding by the License Agreement's timing requirement for any Guaranteed Performance testing because IH or IPH somehow failed to secure a testing location for Plaintiffs within the testing period mandated by the License Agreement.  The License Agreement, however, simply does not impose upon IH or IPH any obligation to secure a testing location for Plaintiffs.  Further, this alleged failure could not have amended or altered the License Agreement's timing requirement since such an amendment or alteration could only be effective if contained in a signed writing, per License Agreement §16.9.

Plaintiffs' first breach of contract claim is contradicted by the License Agreement, and even by the inoperative Proposed Second Amendment, both of which are attached to the Complaint.  Accordingly, the Court should dismiss this claim.

## II.     Count II Fails To State A Viable Cause Of Action.

Plaintiffs' assertion that they do not need to specify which provisions of the License Agreement were allegedly violated is plainly incorrect.  "[T]o allege a material breach in accordance with the pleading standards required under the Federal Rules of Civil Procedure, the plaintiff must allege which provision of the contract has been breached."  *Brown v. Capital One Bank (USA), N.A.*, 2015 WL 5584697, at *3 (S.D. Fla. Sept. 22, 2015) (quoting *Pierce v. State Farm Mut. Auto. Ins. Co.*, 2014 WL 7671718, at *4 (S.D. Fla. Dec. 14, 2014)).  While Plaintiffs claim they have identified Sections 1 and 2 of the License Agreement as the provisions IH and IPH allegedly breached, neither section imposes any obligations upon IH or IPH, much less any obligations forbidding the conduct which Plaintiffs allege exceeds the scope of the license.[1]

---

[1]     The activities Plaintiffs claim in Count II that breach the License Agreement are IH and/or IPH (1) stating they "own" the E-Cat IP; (2) "attempting to obtain a European patent"; and (3) listing Dameron as a co-inventor in a U.S. Patent Application.  Compl. ¶¶ 85, 86.

As to Plaintiffs' contention that Sections 1 and 2 can be stretched to "imply" certain obligations upon IH and IPH, Plaintiffs conveniently ignore the remainder of the License Agreement. But the License Agreement must be interpreted as a whole, and Plaintiffs cannot interpret Sections 1 and 2 without considering the parties' rights and obligations provided elsewhere in the License Agreement. *See Lalow v. Codomo*, 101 So.2d 390, 393 (Fla. 1958) ("The intention of the parties must be determined from an examination of the whole contract and not from the separate phrases or paragraphs."); *PNC Bank, N.A. v. Progressive Emp'r Servs. II*, 55 So.3d 655, 658 (Fla. Dist. Ct. App. 2011) ("The contract should be reviewed as a whole and all language given effect[.]" (internal quotation marks and citation omitted)); *Specialized Machinery Transport, Inc. v. Westphal*, 872 So.2d 424, 426 (Fla. Dist. Ct. App. 2004) ("[T]he meaning [of a contract] is not to be gathered from any one phrase, but from a general view of the whole writing, with all of its parts being compared, used, and construed, each with reference to the others."). As explained in the Motion, there are no provisions in the License Agreement forbidding IH or IPH from engaging in the specific activities pled by Plaintiffs, and various provisions allow or are consistent with those activities. In the end, Plaintiffs' allegations in Count II that IH and IPH breached the License Agreement are conclusory and untethered to the License Agreement's language, and hence insufficient. *See Ashmore v. F.A.A.*, 2011 WL 3915752, at *2 (S.D. Fla. Sept. 2, 2011) (quoting *Iqbal*, 556 U.S. at 678).[2]

Finally, Plaintiffs fail to address their insufficient allegations of damages. *Iqbal* and *Twombly* apply to pleading damages resulting from a breach of contract. *Geller v. Von Hagens*, 2010 WL 4867540, at *4 (M.D. Fla. Nov. 23, 2010) ("Plaintiffs did not sufficiently show under the new plausibility standard facts that demonstrate damages to Plaintiffs, other than to say they 'have suffered and will continue to suffer irreparable damages to their business and reputation.'

---

[2]      Plaintiffs also fail to address that they have not pled any factual context from which the IH and/or IPH patent applications referenced in Count II can be identified. Without providing such factual context, it is impossible for the Court "to draw the reasonable inference that [IH and IPH are] liable for the misconduct alleged." *See Ashmore*, 2011 WL 3915752, at *2 (quoting *Iqbal*, 556 U.S. at 678). Instead, Plaintiffs offer only conclusory allegations in the Complaint, and such allegations are not entitled to the assumption of truth. *See id*.

This is conclusory.").  Plaintiffs utterly fail to identify any damages they have suffered resulting from IH and/or IPH allegedly engaging in the activities pled in Count II (indeed, it is hard to fathom how one party merely applying for a patent that has not be granted damages another party).  Their allegation that "[Rossi] and [Leonardo] have been damaged" (Compl. ¶ 87) is entirely conclusory and not to be accepted as true.  *See Ashmore*, 2011 WL 3915752, at *2; *Geller*, 2010 WL 4867540, at *4.

### III.    Count III Fails To State A Viable Cause Of Action.

A plaintiff may plead unjust enrichment in the alternative to breach of contract, but a plaintiff may do so only "where one of the parties asserts the contract governing the dispute is invalid."  *Persaud v. Bank of Am.*, 2014 WL 4260853, at *13 (S.D. Fla. Aug. 28, 2014); *Central Magnetic Imaging Open MRI of Plantation Ltd v. State Farm Mut. Auto. Ins. Co.*, 789 F.Supp.2d 1311, 1317 (S.D. Fla. 2011).  No party in this action is asserting that the License Agreement is invalid.  Therefore, Plaintiffs may not plead unjust enrichment as an alternative to their breach of contract claims.  *See id.*

Further, Plaintiffs do not, and cannot, allege that IH or IPH made or sold any products based on the E-Cat IP, or sublicensed the E-Cat IP for profit.  All they allege is the conclusion that IH or IPH raised funds based on having entered the License Agreement.  Compl. ¶ 70.  That allegation is not only conclusory (and thus insufficient), but it reflects a direct benefit conferred on IH or IPH from others (the investors), not Plaintiffs.  *See City of Miami v. Bank of Am. Corp.*, 800 F.3d 1262, 1287 (11th Cir. 2015) ("[T]he benefit must be conferred directly from the plaintiff[.]"); *Paylan v. Teitelbaum*, 2016 WL 1068443, at *10 (N.D. Fla. Feb. 16, 2016).

### IV.    Count IV Fails To State A Viable Cause Of Action.

There are several glaring deficiencies in Count IV of the Complaint, which Plaintiffs cannot cure by mischaracterizing or watering down the essential elements of a misappropriation of trade secrets cause of action.  Plaintiffs must plead sufficient facts to demonstrate that reasonable steps were taken to protect the trade secrets and failed to do so.  *See Greenberg v. Miami Children's Hosp. Research Inst., Inc.*, 264 F.Supp.2d 1064, 1077 (S.D. Fla. 2003).

Plaintiffs allege that they took steps to maintain the confidentiality of their trade secrets, Compl. ¶ 104, but this is in direct conflict with the License Agreement, which grants IH and IPH access to the E-Cat IP – and the right to sublicense it to anyone it wants – without imposing *any* confidentiality obligations.  Mot. at 10-11; *see also Geter*, 43 F.Supp.3d at 1328 (explaining that when a complaint contradicts its exhibits, the exhibits control).  Plaintiffs' failure to seek confidentiality limitations on IH and IPH renders their misappropriation of trade secrets claim patently implausible.  Indeed, "[i]f an individual discloses his trade secret to others who are under no obligation to protect the confidentiality of the information, or otherwise publicly discloses the secret, his property right is extinguished." *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1002 (1984) (citations omitted).[3]

Plaintiffs also assert that the Court must accept their conclusion that Defendants acquired the E-Cat IP by improper means, but they admit they provided the E-Cat IP to Defendants "[a]s required by the License Agreement" and further that they received $11.5 million in exchange under the License Agreement.  Compl. ¶¶ 47, 58, 121.  There is nothing improper about this means of acquisition, and it does not retroactively become improper because Plaintiffs claim that IH and/or IPH later breached the License Agreement.  *See Greenberg*, 264 F.Supp.2d at 1077.

Lastly, Plaintiffs argue that the License Agreement does not allow "IH or any other Defendant" to apply for patents, but in fact it expressly provides that IH "may participate in patent prosecution and maintenance as set forth above [in the License Agreement, which includes to "prepare, file and prosecute" patent applications]" and owns "any and all inventions, discoveries, concepts, ideas, information and anything else that the Company . . . makes or develops which relate to the E-Cat IP."  License Agreement §§ 7.1, 13.4.  Moreover, Plaintiffs still have not identified any confidential trade secrets in any IH- or IPH-filed patent application.

---

[3]    Plaintiffs contend that courts are reluctant to examine the reasonableness of the steps taken to protect a trade secret at the motion to dismiss stage.  Opp. at 8.  But here the License Agreement demonstrates that Plaintiffs took no steps to restrict IH and IPH's disclosure of the E-Cat IP, and in fact freely allowed them to distribute (sublicense) it to others.  Mot. at 12 n.5.

**V.      Count V Fails To State A Viable Cause Of Action.**

As an initial matter, Plaintiffs' Opposition does not contest the fact that if the misappropriation of trade secrets claim is dismissed, as it should be, the civil conspiracy claim fails as a matter of law.

Even if the Court does not dismiss Count IV, Count V should be dismissed for failure to sufficiently plead a cause of action for conspiracy.  Plaintiffs conflate Defendants throughout the Complaint, *see* Mot. at 20, yet for purposes of Count V now want to contend they are each separate entities and actors.  They cannot have it both ways, nor does *Santillana v. Fla. State Court Sys., 18th Jud. Cir., Seminole Cty. Courts*, 2010 WL 6774486, at *6 n.4 (M.D. Fla. Jun. 4, 2010), support Plaintiffs' strained theory that a conspiracy claim should not be dismissed under the intracorporate conspiracy doctrine if the claim is so poorly drafted that "it is not clear which company, if any, the individual Defendants' actions should be attributed to, or in what capacity such Defendants took those actions."  Opp. at 13.

Further, the Complaint fails to plead facts that would trigger the "personal stake" exception to the intracorporate conspiracy doctrine that Plaintiffs cite.  *See Santillana*, 2010 WL 6774486, at *6 n.4.  Plaintiffs needed to allege that Darden and Vaughn had a personal stake in the misappropriation of trade secrets that was "at odds with rather than on behalf of" Cherokee, IH, or IPH's interests.  *See Fried v. Stiefel Labs., Inc.*, 2012 WL 4364300, at *8 (S.D. Fla. Jun. 8, 2012) (citation and internal quotation marks omitted).  The Complaint is utterly devoid of such allegations.

As Plaintiffs have essentially admitted, their civil conspiracy claim is unclear, speculative and conclusory.  It must be dismissed.

**VI.     Count VI Fails To State A Viable Cause Of Action.**

The Complaint labels Count VI as a claim for "Fraud and Deceit."  Plaintiffs' Opposition expressly argues, however, that Count VI is a claim for fraudulent inducement.  Even assuming Plaintiffs can rewrite Count VI by their Opposition, it is to no avail.  First, a claim for fraudulent inducement is not actionable against a defendant that was not a party to the contract that the

plaintiff claims it was induced to sign. *GlobeTec Const., LLC v. Custom Screening & Crushing, Inc.*, 77 So.3d 802, 803 (Fla. Dist. Ct. App. 2011) ("[W]here there is no contract between the parties there can be no suit for fraudulent inducement[.]"); *see also Greco v. Jones*, 38 F.Supp.3d 790, 794 (N.D. Tex. 2014) ("Because Plaintiffs' contract was only with the NFL, any claim that Plaintiffs were fraudulently induced to purchase such tickets can be made only against the NFL."). Because Cherokee, Darden and Vaughn are not parties to the License Agreement, no fraudulent inducement claim can be plead against them. Second, the remedy for fraudulent inducement is rescission of a contract. *See Mazzoni Farms v. E.I. DuPont De Nemours & Co.*, 761 So.2d 306, 313 (Fla. 2000).[4]  But Plaintiffs do not ask for the License Agreement to be rescinded.

To the extent Plaintiffs attempt to salvage their fraud claim, the attempt fails. In *Williams v. Peak Resorts Intern. Inc.*, 676 So.2d 513 (Fla. Dist. Ct. App. 1996), which Plaintiffs cite in their Opposition, the court makes clear that "a party may not recover damages for both breach of contract and fraud unless the party first establishes that the damages arising from the fraud are separate or distinguishable from the damages arising from the breach of contract." *Id.* at 517. Count V, however, does not allege any damages "separate or distinguishable" from the damages alleged in connection with Count I; rather, the fraud pled in that Count is, in short, that Defendants deceived Plaintiffs into believing IH had the money to and would pay Plaintiffs the $89 million that is the subject of Count I. Compl. ¶ 112.

## VII.   Count VII Fails To State A Viable Cause Of Action.

With respect to their constructive and equitable fraud claim, Plaintiffs incorrectly argue that a court cannot determine whether a confidential relationship has been properly alleged at the pleading stage. Opp. at 16. The court in *American Honda Motor Co., Inc. v. Motorcycle Info. Network, Inc.* made clear that dismissal at this stage is warranted where a plaintiff makes only "conclusory allegations [that] are insufficient to properly allege the existence of a confidential or fiduciary relationship[.]" 390 F.Supp.2d 1170, 1179 (M.D. Fla. May 10, 2005).

---

[4]      An alternative "remedy" is to ratify a contract and seek damages for breach. *Id.*

Plaintiffs do nothing to demonstrate that any Defendant owed a fiduciary duty to them. Rather, they point to the fact that *they* owed confidentiality obligations *to IH*, Opp. at 16 & n.3, which actually refutes any notion that a fiduciary duty ran *from* IH *to* Plaintiffs.

## VIII.   Count VIII Fails To State A Viable Cause Of Action.

Plaintiffs' misguided patent infringement claim must be dismissed for a host of reasons. As Plaintiffs acknowledge, the only case law on point (a recent case from the Federal Circuit) is clear that the filing of a patent application is not patent infringement.  Opp. at 17.  That is because filing an application simply is not the use of an invention (whether patented or not). *Classen Immunotherapies, Inc. v. Elan Pharms., Inc*., 786 F.3d 892, 899 (Fed. Cir. 2015). Moreover, infringement under 35 U.S.C. §271(a) requires that a patented invention be used, made, offered for sale or sold "within the United States."  Even if filing a patent application could be the use of a patented invention (which it cannot be), filing for a patent in another country (which is what Plaintiffs allege) would not be a use "within the United States."

Plaintiffs fare no better with their contention that somehow IH and IPH committed patent infringement by soliciting investments based on the claim of having acquired the E-Cat IP. Claiming ownership of a patent or patentable invention does not involve use of the patent invention because it does not involve any infringing product, let alone the creation, sale, manufacture or preparation for sale of an infringing product.  *Alphamed Pharms. Corp. v. Arriva Pharms., Inc.*, 391 F.Supp.2d 1148, 1158 (S.D. Fla. 2005).  In addition, even if IH and IPH solicited investments based on a claim to having acquired the E-Cat IP, such a claim would have been consistent with them having, per the License Agreement, an exclusive license to the E-Cat IP, the right to have "all E-Cat IP" transferred to them, and the right to have any "Licensed Patents" assigned to them.  Mot. at 19.

Lastly, Plaintiffs ignore entirely – because they have no response to – Defendants' argument that the Complaint does not allege any factual basis for Plaintiffs' claim of infringement of U.S. Patent No. 9,115,913 ("the '913 Patent").  Plaintiffs do not identify the patent claims in the '913 Patent that were allegedly infringed or how specific acts by IH or IPH

allegedly infringed such patent claims.  *See Atlas IP LLC v. Pacific Gas & Elec. Co.*, 2016 WL 1719545, at *2 (N.D. Cal. Mar. 9, 2016).[5]

## IX.   Plaintiffs Fail to Address Their Lumping of Defendants Together in Several Counts.

Plaintiffs completely fail to address in their Opposition Defendants' argument that Counts IV through VII improperly lump Defendants together, attributing conduct to all Defendants where the conduct can and must be broken down by Defendant.  Mot. at 20.  For this additional and undisputed reason, Counts IV through VII should be dismissed.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Opposition is without merit and this Court should dismiss Plaintiffs' Complaint in its entirety.

Dated:      June 27, 2016                    Respectfully submitted,


                                             /s/ Christopher R. J. Pace
                                             Christopher R.J. Pace (FBN 721166)
                                             cpace@jonesday.com
                                             Christopher M. Lomax (FBN 56220)
                                             clomax@jonesday.com
                                             Christina T. Mastrucci (FBN 113013)
                                             JONES DAY
                                             600 Brickell Avenue, Suite 3300
                                             Miami, Florida 33131
                                             Tel: 305-714-9700
                                             Fax: 305-714-9799

                                             *Attorneys for Defendants*

---

[5]      Plaintiffs are careful in the Complaint to avoid addressing the substance of the '913 Patent because it is simply a patent for a heat transfer system, not for a method of creating a "low energy nuclear reaction resulting in an exothermic release of energy."  Compl. ¶ 1 (describing the E-Cat).  That alleged "reaction" is covered instead by a separate Rossi patent application that is currently pending but subject to a non-final rejection from the Patent Office.  *See* Method and Apparatus for Carrying Out Nickel and Hydrogen Exothermal Reaction, Application No. 12/736,193, *available with file history at* portal.uspto.gov/pair/PublicPair.

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on June 27, 2016, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record for the parties.

*/s/ Christopher R. J. Pace*
Christopher R.J. Pace