**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
_____

| | | |
|---|---|---|
| ANDREA ROSSI and LEONARDO CORPORATION, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | CASE NO. 1:16-cv-21199-CMA |
| THOMAS DARDEN; JOHN T. VAUGHN, INDUSTRIAL HEAT, LLC; IPH INTERNATIONAL B.V.; and CHEROKEE INVESTMENT PARTNERS, LLC, | ) ) ) ) ) ) | **OPPOSITION TO PLAINTIFFS' MOTION TO STRIKE IN PART DEFENDANTS' SECOND AMENDED ANSWER,** |
| Defendants. | ) ) ) ) ) ) | **AFFIRMATIVE [SIC.] DEFENSES, COUNTERCLAIMS AND THIRD-PARTY CLAIMS, OR IN THE ALTERNATIVE, MOTION FOR A MORE DEFINITE STATEMENT** |

| | |
|---|---|
| INDUSTRIAL HEAT, LLC and IPH INTERNATIONAL B.V., | ) ) |
| Counter-Plaintiffs, | ) ) |
| v. | ) ) |
| ANDREA ROSSI and LEONARDO CORPORATION, | ) ) ) |
| Counter-Defendants, | ) ) |
| and | ) ) |
| J.M. PRODUCTS, INC.; HENRY JOHNSON; FABIO PENON; UNITED STATES QUANTUM LEAP, LLC; FULVIO FABIANI; and JAMES A. BASS, | ) ) ) ) ) |
| Third-Party Defendants. | ) ) ) |

# TABLE OF CONTENTS

**Page**

FACTUAL AND PROCEDURAL BACKGROUND.................................................................. 1

LEGAL STANDARD............................................................................................................. 2

ARGUMENT ......................................................................................................................... 3

    I.    Defendants' Additional Defenses Are Sufficient as a Matter of Law .................. 3

        A.    Defendants' First Additional Defense (Standing) Is Legally
            Sufficient..................................................................................................... 4

        B.    Defendants' Second Additional Defense (Failure to State a Claim)
            Is Legally Sufficient................................................................................... 6

        C.    Defendants' Third Additional Defense (Estoppel, Waiver, Laches,
            and Other Applicable Equitable Doctrines) Is Legally Sufficient ............ 7

        D.    Defendants' Fourth Additional Defense (Unclean Hands), Sixth
            Additional Defense (Unlawful Actions), and Seventh Additional
            Defense (Fraudulent Misrepresentation) Are Legally Sufficient.............. 8

        E.    Defendants' Ninth Additional Defense (Merger, Integration and
            Ratification) Is Legally Sufficient ........................................................... 11

        F.    Defendants' Tenth Additional Defense (Speculative Damages) Is
            Legally Sufficient..................................................................................... 13

    II.    Count II – Failure to Pay Taxes (Paragraphs 126 through 133) Is Not
        Immaterial, Impertinent, or Scandalous............................................................. 13

CONCLUSION...................................................................................................................... 14

CERTIFICATE OF SERVICE .............................................................................................. 16

# TABLE OF AUTHORITIES

**Page**

CASES

*Adams v. Jumpstart Wireless Corp.*,
294 F.R.D. 668 (S.D. Fla. 2013)......................................................................................2, 3

*Aidone v. Nationwide Auto Guard, L.L.C.*,
295 F.R.D. 658 (S.D. Fla. 2013)..........................................................................................11

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).............................................................................................................2

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007).............................................................................................................2

*Billington v. Ginn-LA Pine Island, Ltd.*,
192 So.2d 77 (Fla. Dist. Ct. App. 2016) ....................................................................11, 12

*Cincom Sys., Inc. v. Novelis Corp.*,
581 F.3d 431 (6th Cir. 2009) ...............................................................................................5

*Dinuro Invs., LLC v. Camacho*,
141 So.3d 731 (Fla. Dist. Ct. App. 2014) ............................................................................6

*Ferguson Enterp., Inc. v. Astro Air Conditioning & Heating, Inc.*,
137 So.3d 613 (Fla. Dist. Ct. App. 2014) ............................................................................4

*Hillcrest Pacific Corp. v. Yamamura*,
727 So.2d 1053 (Fla. Dist. Ct. App. 1999) ........................................................................12

*Hilson v. D'More Help, Inc.*,
2015 WL 5308713 (S.D. Fla. Sept. 11, 2015) ................................................................6, 7

*Home Mgmt. Solutions, Inc. v. Prescient, Inc.*,
2007 WL 2412834 (S.D. Fla. Aug. 21, 2007)......................................................................6

*Mac-Gray Servs., Inc. v. DeGeorge*,
913 So.2d 630 (Fla. Dist. Ct. App. 2005) ..........................................................................12

*Markham v. Carnival Corp.*,
2012 WL 12866787 (S.D. Fla. Dec. 3, 2012) ......................................................................3

*Merrill Lynch Bus. Fin. Servs., Inc. v. Performance Mach. Sys. U.S.A., Inc.*,
  2005 WL 975773 (S.D. Fla. March 4, 2005) ...........................................................................3

*Noveshen v. Bridgewater Assocs., LP*,
  2016 WL 3902580 (S.D. Fla. Feb. 25, 2016) ...........................................................................7

*PPG Indus., Inc. v. Guardian Indus. Corp.*,
  597 F.2d 1090 (6th Cir. 1979) ...........................................................................5

*Reyher v. Trans World Airlines, Inc.*,
  881 F.Supp. 574 (M.D. Fla. 1995) ...........................................................................3

*Sanchez-Knutson v. Ford Motor Co.*,
  52 F.Supp.3d 1223 (S.D. Fla. 2014) ...........................................................................10

*Sparta Ins. Co. v. Colareta*,
  2013 WL 5588140 ...........................................................................2

*Toback v. GNC Holdings, Inc.*,
  2013 WL 5206103 (S.D. Fla. Sept. 13, 2013) ...........................................................................10

*Tsavaris v. Pfizer, Inc.*,
  310 F.R.D. 678 (S.D. Fla. 2015) ...........................................................................2, 7

*W. Coast Life Ins. Co. v. Life Brokerage Partners LLC*,
  2009 WL 2957749 (S.D. Fla. Sept. 9, 2009) ...........................................................................9

*Yamashita v. Merck & Co., Inc.*,
  2013 WL 275536 (S.D. Fla. Jan. 24, 2013) ...........................................................................12

*Ziemba v. Cascade Int'l, Inc.*,
  156 F.3d 1994 (11th Cir. 2001) ...........................................................................9

**STATUTES**

Florida Deceptive and Unfair Trade Practices Act ...........................................................................8, 10

Florida Statutes § 607.1106 ...........................................................................5

Florida Statutes § 607.1106(1)(b) ...........................................................................5

**OTHER AUTHORITIES**

Fed. R. Civ. P. 8(a) ...........................................................................2

Fed. R. Civ. P. 8(b) ..............................................................................................................2

Fed. R. Civ. P. 8(b)(1)(A) ...................................................................................................2

Fed. R. Civ. P. 8(c) ..............................................................................................................2

Fed. R. Civ. P. 9(b) ....................................................................................................8, 9, 10

Fed. R. Civ. P. 12(f) ............................................................................................................3

Model Business Corporation Act .........................................................................................5

Model Business Corporation Act § 11.07 ............................................................................5

Defendants Industrial Heat, LLC ("Industrial Heat"), IPH International, B.V. ("IPH"), Thomas Darden , John T. Vaughn, and Cherokee Investment Partners, LLC (collectively, "Defendants") hereby respond to the Motion to Strike in Part Defendants' Second Amended Answer, Affirmative [sic.] Defenses, Counterclaims and Third-Party Claims, or in the Alternative, Motion for a More Definite Statement ("Motion to Strike") of Andrea Rossi ("Rossi") and Leonardo Corporation ("Leonardo") (collectively, "Plaintiffs"). [D.E. 54].

## FACTUAL AND PROCEDURAL BACKGROUND

In April 2016, Plaintiffs sued Defendants in an eight-count complaint ("Complaint"). [D.E. 1]. Defendants moved to dismiss the Complaint, which motion the Court granted in part and denied in part in July 2016. [D.E. 17, 24]. Following the Court's ruling, four counts remained in the Complaint: breach of contract (Count I), unjust enrichment (Count III), trade secrets misappropriation (Count IV), and fraudulent inducement to contract (Count VI).

Defendants filed their First Amended Answer, Additional Defenses, Counterclaims and Third-Party Claims ("1st Amended AACT") on August 11, 2016. [D.E. 30]. The 1st Amended AACT asserted, *inter alia*, separate affirmative and other additional defenses to the remaining claims in the Complaint ("Additional Defenses"). *See* 1st Am. AACT at pp. 21-23. Plaintiffs thereafter moved to strike the Additional Defenses from the 1st Amended AACT. [D.E. 39].

On September 15, 2016, in an effort to address some of the concerns raised by Plaintiffs in that motion to strike, Defendants filed an unopposed motion for leave to file a Second Amended Answer, Additional Defenses, Counterclaims and Third-Party Claims ("2nd Amended AACT"). [D.E. 45]. The 2nd Amended AACT provides further allegations as to each Additional Defense, most commonly by summarizing and cross-referencing allegations that were already elsewhere in the 1st Amended AACT. The Court granted Defendants' motion for leave the next day [D.E. 47], and Defendants filed their 2nd Amended AACT a few days later. [D.E. 50].

## LEGAL STANDARD

The instant Motion to Strike misinterprets the pleading standard for affirmative defenses by arguing that affirmative defenses must satisfy the heightened pleading standard of *Twombly* and *Iqbal*.  Mot. to Strike at pp. 1-2 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).  This Court has made clear, however, that *Twombly* and *Iqbal* do not apply to affirmative defenses, and that "a lower pleading standard [for affirmative defenses] is consistent with binding case law" in this circuit.  *Tsavaris v. Pfizer, Inc.*, 310 F.R.D. 678, 681 (S.D. Fla. 2015) (explaining that the Southern District of Florida "joins the growing number of courts in this circuit and others in finding that a lower pleading standard applies to affirmative defenses"); *see also Sparta Ins. Co. v. Colareta*, 2013 WL 5588140, at *3 ("[T]his Court is ultimately convinced of the correctness of the cases holding that the clearness in the difference in the language between Rule 8(a) and Rules 8(b) and (c) requires a different pleading standard for claims and defenses.").  This is because affirmative defenses are governed by Federal Rule of Civil Procedure ("Rule") 8(b)(1)(A), which requires a pleader to simply "state in short and plain terms its defenses to each claim asserted against it."  *See Tsavaris*, 310 F.R.D. at 681.  In other words, affirmative defenses must simply "give the plaintiff 'fair notice' of the nature of the defense and the grounds on which it rests."  *Id.* at 682 (citation and internal quotation marks omitted).  Apart from failing to meet the pleading requirements of Rule 8(b)(1)(A), an affirmative defense will only be stricken if it is "'patently frivolous, or . . . clearly invalid as a matter of law.'"  *Adams v. Jumpstart Wireless Corp.*, 294 F.R.D. 668, 671 (S.D. Fla. 2013) (quoting *Anchor Hocking Corp. v. Jacksonville Elec. Auth.*, 419 F.Supp. 992, 1000 (M.D. Fla. 1976)); *see also Sparta Ins. Co.*, 2013 WL 5588140, at *4 ("[A]ffirmative defenses should be stricken only where they fail to give the plaintiff fair notice of the nature of the defense or where they are clearly insufficient as a matter of law.").

As Plaintiffs recognize, "'a court will not exercise its discretion under Rule 12(f) to strike a pleading [whether an affirmative defense or other pleading] unless the matter sought to be omitted has no possible relationship to the controversy, may confuse the issues, or otherwise prejudice a party.'" *Markham v. Carnival Corp.*, 2012 WL 12866787, at *2 (S.D. Fla. Dec. 3, 2012) (quoting *Reyher v. Trans World Airlines, Inc.,* 881 F.Supp. 574, 576 (M.D. Fla. 1995)); *see also* Mot. to Strike at p. 3. "Indeed, 'motions to strike generally are disfavored and will usually be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties.'" *Markham*, 2012 WL 12866787, at *2 (quoting *Merrill Lynch Bus. Fin. Servs., Inc. v. Performance Mach. Sys. U.S.A., Inc.,* 2005 WL 975773, at *11 (S.D. Fla. March 4, 2005).

## ARGUMENT

### I.  Defendants' Additional Defenses Are Sufficient as a Matter of Law.

The Court is not faced here with bare affirmative defenses stated at the end of an answer that otherwise consists merely of a series of conclusory allegations or assertions.  *See Adams*, 294 F.R.D. at 671 (explaining that a defense should be stricken when it comprises of no more than "bare-bones" allegations).  The factual allegations in the 2nd Amended AACT are highly detailed and provide a wealth of information that supports not only Industrial Heat and IPH's counterclaims and third party claims (as well as Defendants' denials of various accusations in the Complaint), but also Defendants' Additional Defenses.  Moreover, Defendants revised the Additional Defenses as between the 1st and 2nd Amended AACTs to provide summaries and cross-references to specific allegations found elsewhere in these pleadings.  Nevertheless, Plaintiffs have moved to strike Defendants' Additional Defenses, largely disregarding the revisions to the 2nd Amended AACT and erroneously contending that Defendants are required to reiterate and explain these allegations even further within the body of their Additional Defenses.

Furthermore, to the extent that Plaintiffs' arguments for striking Defendants' Additional Defenses are not based upon failure to satisfy the requisite pleading standard for affirmative defenses, they are either based upon incorrect interpretations of Florida law, misleading, or otherwise without merit.

**A.      Defendants' First Additional Defense (Standing) Is Legally Sufficient.**

**i.      Leonardo's Lack of Standing**

Plaintiffs contend that the merger they allege between Leonardo Corporation, a New Hampshire Corporation (a party to the License Agreement), and Leonardo Corporation, a Florida corporation (not a party to the License Agreement), did not involve an invalid assignment or transfer of the License Agreement from the former to the latter.  But the License Agreement explicitly prohibits Plaintiffs from "*assign[ing] or otherwise transfer[ring]* any of [their] rights . . . under this Agreement, in each case *whether voluntarily, involuntarily, by operation of law or otherwise*, without [Industrial Heat or IPH's] prior written consent."  License Agreement § 16.7 (emphasis added) (attached as Exhibit B to the Complaint).  This broad language – which covers both assignments and any other form of transfer, even if "by operation of law or otherwise" – naturally extends to the situation where Leonardo Corporation, a New Hampshire corporation, is merged into Leonardo Corporation, a Florida corporation, such that Leonardo Corporation of Florida becomes the new holder of rights under the License Agreement.

Contrary to the instant case, the case upon which Plaintiffs rely in arguing that there was no assignment via merger discusses solely the issue of an assignment (as opposed to a broader form of transfer) and does not involve a contractual provision prohibiting any kind of transfer, whether by operation of law or otherwise.  *See Ferguson Enterp., Inc. v. Astro Air Conditioning & Heating, Inc.*, 137 So.3d 613, 616 (Fla. Dist. Ct. App. 2014) (discussing assignment of special guarantees in context of merger).  More on point is the Sixth Circuit's decision in *Cincom*

-4-

*Systems, Inc. v. Novelis Corp.*, 581 F.3d 431 (6th Cir. 2009).  The court there held that a merger statute which automatically vests by operation of law in a surviving corporation the contracts of a merged corporation still amounts to a transfer that can be barred by contract: "The vesting of the license in the surviving entity could not occur without being transferred by the old entity.  'A transfer is no less a transfer because it takes place by operation of law rather than by a particular act of the parties.'"  *Id.* at 438 (quoting *PPG Indus., Inc. v. Guardian Indus. Corp.*, 597 F.2d 1090, 1096 (6th Cir. 1979)).

Finally, Plaintiffs rely upon on the commentary to the Model Business Corporation Act ("MBCA"), but the Florida Legislature did not adopt that commentary as part of the Florida merger statute (Florida Statutes section 607.1106).  More significantly, the MBCA states that "all property owned by, *and every contract right possessed by*, each corporation or eligible entity that merges into the survivor is vested in the survivor without reversion or impairment."  MBCA § 11.07 (emphasis added).  Florida Statutes section 607.1106, however, only states that "*title* to all real estate and other property, or any interest therein, owned by each corporation party to the merger is vested in the surviving corporation without reversion or impairment."  Fla. Stat. § 607.1106(1)(b) (emphasis added).  How the authors of the MBCA interpreted in their commentary a provision addressing "every contract right possessed" is not relevant to what the Florida Legislature meant when it adopted a narrow statute only governing "title" to property or an "interest" in the title to property.

### ii.     Rossi's Lack of Standing

Plaintiffs' focus on the fact that Rossi is a party to the License Agreement is misleading. The specific contractual provision at issue in Count I of Plaintiffs' Complaint involves solely the potential $89 million payment at issue in this lawsuit.  That provision specifically states that such payment is due, if at all, from Industrial Heat to Leonardo, not Rossi.  License Agreement

§ 3.2(c).  Contrary to Plaintiffs' suggestion, Defendants are not arguing that this provision prevents Rossi from enforcing any provision in the License Agreement.  Rather, Defendants are arguing that the benefit of this specific contractual provision inheres in Leonardo alone, and thus Rossi is not entitled to enforce its performance.  *Cf. Dinuro Invs., LLC v. Camacho*, 141 So.3d 731, 741-42 (Fla. Dist. Ct. App. 2014) (limited liability company ("LLC") member who was a party to operating agreement along with LLC and other members could not enforce the other members' obligations under the agreement that flowed to LLC and not directly to the member).

**B.    Defendants' Second Additional Defense (Failure to State a Claim) Is Legally Sufficient.**

Plaintiffs' argument that Defendants' Second Additional Defense is "devoid of legal or factual support" is without merit.  *See* Mot. to Strike at p. 6.  Defendants expressly cite to the arguments of their Motion to Dismiss [D.E. 17], their reply in support of the Motion [D.E. 19], and their 2nd Amended AACT.  *See* 2nd Amended AACT at p. 22.  These documents contain the arguments and references to allegations and operative written agreements that clearly demonstrate the bases for this defense.  Furthermore, Plaintiffs' contention that Defendants are "attempting to re-litigate their Motion to Dismiss" is false.  Asserting Plaintiffs' failure to state a claim as a defense is not asking the Court to rule again on, or reconsider, Defendants' Motion to Dismiss; it is merely preserving Defendants' arguments that Plaintiffs have not stated claims upon which relief ultimately could be granted to Plaintiffs.[1]

---

[1]    Admittedly, this is a "defense that simply points out a defect or lack of evidence in the plaintiff's case," and is thus more of a "negative averment" than an "affirmative defense."  *See Hilson v. D'More Help, Inc.*, 2015 WL 5308713, at *2 (S.D. Fla. Sept. 11, 2015).  The "proper remedy" for this, however, "'is not [to] strike the claim, but rather to treat it as a specific denial.'"  *Id.* (quoting *Home Mgmt. Solutions, Inc. v. Prescient, Inc.*, 2007 WL 2412834, at *3 (S.D. Fla. Aug. 21, 2007)).

**C.**      **Defendants' Third Additional Defense (Estoppel, Waiver, Laches, and Other Applicable Equitable Doctrines) Is Legally Sufficient.**

Plaintiffs' contention that Defendants' Third Additional Defense (Estoppel, Waiver, Laches, and Other Applicable Equitable Doctrines) should be stricken is also without merit. Defendants cite to numerous, detailed factual allegations in support of the Third Additional Defense. *See* 2nd Amended AACT at p. 22. These allegations are more than enough to place Plaintiffs on notice of the grounds for Defendants' Third Additional Defense. *See Tsavaris*, 310 F.R.D. at 682; *see also Hilson*, 2015 WL 5308713, at *3 (refusing to strike affirmative defense where "[d]efendant's defense [was] not merely conclusory and [was] stated with sufficient clarity to provide Plaintiff fair notice of the defense"). Given the detail Defendants have provided, they need not structure each defense explicitly to list the legal elements thereof. The case upon which Plaintiffs rely is highly distinguishable from the instant case, as the equitable defenses in that case were stricken because they were conclusory, "bare bones," and not "linked to some fact to provide . . . notice of [their] grounds." *Noveshen v. Bridgewater Assocs., LP*, 2016 WL 3902580, at *2 (S.D. Fla. Feb. 25, 2016).

Plaintiffs raise additional bases for striking Defendants' Third Additional Defense which are also without merit. First, Plaintiffs mischaracterize Defendants' equitable estoppel defense as being directed to Plaintiffs' remaining breach of contract claim. *See* Mot. to Strike at p. 8. As stated in their Third Additional Defense, however, Defendants' equitable estoppel defense is directed to Plaintiff's "equitable claims." 2nd Amended AACT at p. 22. Thus, Plaintiffs' argument in support of striking Defendants' equitable estoppel defense should be disregarded. Second, Plaintiffs erroneously claim that there is "no legal support" for Defendants' defense of waiver (directed toward Plaintiffs' claim for fraudulent inducement) based upon Plaintiffs' agreeing to the provisions in the License Agreement and the First Amendment to the License

Agreement (Ex. C to the Complaint).  To the contrary, as explained *infra* under Section I.E., there is clear support for this defense.  Third, Plaintiffs do not dispute – nor can they in light of the Court's motion to dismiss ruling – that their unjust enrichment claim would be barred if the License Agreement is valid.  Fourth, as to the defense of laches directed toward Plaintiffs' claim for unjust enrichment, Defendants clearly state that Plaintiffs inexcusably delayed "in asserting any claim to the invalidity of the License Agreement, claiming instead that they were acting pursuant to" that agreement.  2nd Amended AACT at p. 22.  Indeed, Plaintiffs even continue to assert in the Complaint that the License Agreement is valid and that they operated under it.  *See, e.g.*, Compl. ¶¶ 56, 74, 79.  If they really believed the License Agreement were invalid, they should have brought that claim at or immediately after entering the License Agreement.[2]

> **D.**    **Defendants' Fourth Additional Defense (Unclean Hands), Sixth Additional Defense (Unlawful Actions), and Seventh Additional Defense (Fraudulent Misrepresentation) Are Legally Sufficient.[3]**

Plaintiffs' arguments in support of striking Defendants' Fourth, Sixth, and Seventh Additional Defenses are largely based upon the contention that these affirmative defenses fail to meet the pleading requirements of Rule 9(b).[4]  To the extent that Defendants' Fourth, Sixth, and Seventh Additional Defenses are based upon Industrial Heat's factual allegations supporting its

---

[2]    Plaintiffs do not even assert in their unjust enrichment claim that the License Agreement is invalid, but instead "reallege" their allegations supporting the agreement's validity.  Compl. ¶¶ 88-92.

[3]    Defendants' Fourth, Sixth, and Seventh Additional Defenses are based in part upon Industrial Heat and IPH's allegations supporting their claims for fraudulent inducement and violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").  Plaintiffs have separately moved to dismiss those claims as not pled with the specificity required by Rule 9(b).  [D.E. 56].  Whether Rule 9(b) applies to those claims and, if so, whether the claims comply with Rule 9(b) are more appropriately addressed in the context of resolving that motion to dismiss.

[4]    As to Defendants' Fourth Additional Defense (Unclean Hands), Plaintiffs fail to acknowledge that Defendants also cite to three paragraphs of the Answer component of their 2nd Amended AACT in support of this defense, all of which are pled with specificity.  *See* 2nd Amended AACT at p. 23 (citing to *id*. at pp. 10-11, 13).

claim for fraudulent inducement, Defendants have  met the pleading requirements of Rule 9(b)

by alleging with considerable specificity (via summarizing and cross-referencing Industrial Heat

and IPH's relevant factual allegations): (a) precisely what statements were made in what

documents or oral representations;[5] (b) the time and place of each such statement and the person

responsible for making same;[6] (c) the content of such statements and the manner in which they

misled Industrial Heat and/or IPH (*e.g.*, that there was a real customer in Florida who needed

steam power for its chemical products processing; that Plaintiffs intended to operate the Plant to

provide power to a real customer; and that Plaintiffs intended to seek authorizations from

regulatory agencies to allow the Plant or subsequent E-Cat plants to be used for other

commercial purposes); and (d) what Plaintiffs obtained as a result of such fraudulent statements

(the ability to operate the 1MW Plant in Florida away from Defendants so that Plaintiffs could

conduct a fatally flawed attempt at demonstrating "Guaranteed Performance" and thus

improperly claim entitlement to $89 million under the License Agreement).  *See* 2nd Amended

AACT at pp. 43-47, 60-61; *W. Coast Life Ins. Co. v. Life Brokerage Partners LLC*, 2009 WL

2957749, at *7 (S.D. Fla. Sept. 9, 2009) (citing *Ziemba v. Cascade Int'l, Inc.*, 156 F.3d 1994,

1202 (11th Cir. 2001)).  Nevertheless, at least as to Defendants' Seventh Additional Defense

(Fraudulent Misrepresentation), Plaintiffs attempt to cast the "one e-mail alleged to be made by

Rossi" (Exhibit 16) as devoid of any specific content, blatantly disregarding the specific

---

[5]    Defendants, via summarizing and cross-referencing Industrial Heat and IPH's relevant factual allegations, have alleged (among other things) that Rossi, both in his individual capacity and on behalf of Leonardo, made the specific fraudulent statements contained in the e-mail from Rossi to Tom Darden and others attached as Exhibit 16 to the 2nd Amended AACT, as well as the following two fraudulent statements during Rossi's August 2014 meeting with Industrial Heat in North Carolina: (1) that J.M. Products, Inc. was a confidential subsidiary of Johnson Matthey p.l.c. ("Johnson Matthey") and (2) that Johnson Matthey was interested in using the E-Cat technology in connection with a confidential manufacturing process it wanted to operate in Florida.  *See* 2nd Amended AACT at pp. 43-47.

[6]    *See* footnote 5, *supra*.

statements contained therein, and entirely ignore the statements Defendants note that Rossi made during the August 2014 meeting in North Carolina.  *See* Mot. to Strike at p. 12.  Plaintiffs also ignore the detailed allegations provided to them that address their deception and manipulation in connection with the Validation testing in 2013.  *See* 2nd Amended AACT at pp. 36-38.

To the extent that Defendants' Fourth, Sixth, and Seventh Additional Defenses are based upon Industrial Heat and IPH's factual allegations supporting their claim under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), contrary to Plaintiffs' assertion, the heightened pleading standard of Rule 9(b) does not apply to FDUTPA claims.  *See Sanchez-Knutson v. Ford Motor Co.*, 52 F.Supp.3d 1223, 1239 (S.D. Fla. 2014) (citing *Toback v. GNC Holdings, Inc.*, 2013 WL 5206103, at *2 (S.D. Fla. Sept. 13, 2013)) ("[T]his Court is persuaded that Rule 9(b) does not apply to FDUTPA claims.").  Even if such standard did apply to FDUTPA claims, Defendants have more than satisfied it by alleging with considerable specificity (via summarizing and cross-referencing Industrial Heat and IPH's relevant factual allegations) that Plaintiffs engaged in a variety of deceptive acts and/or unfair practices against both Industrial Heat and IPH, and that such acts and practices have caused both Industrial Heat and IPH to suffer harm.  *See* 2nd Amended AACT at pp. 61-63.  Plaintiffs' arguments to the contrary are thus unavailing.[7]

In addition, as to Defendants' Sixth Additional Defense (Unlawful Actions), Plaintiffs incorrectly argue and cite no authority supporting the proposition that to plead the affirmative defense of unlawful actions, Defendants are required to allege particular types or forms of

---

[7]    In fact, compared to Plaintiffs' claim for fraudulent inducement in the Complaint, Defendants' Fourth, Sixth, and Seventh Additional Defenses direct Plaintiffs to allegations that contain far more detail and far less aggregation of statements.  *See* Compl. ¶¶ 112-17 (pleading statements as across five different parties without specifying which party made what statement).

-10-

damages.  Even if pleading damages would be required were the defense being alleged as an affirmative claim for relief, Defendants are not required to plead specific damages in conjunction with an affirmative defense.  To the contrary, and as explained above, Defendants need only state in short and plain terms their defenses to Plaintiffs' claims such that Plaintiffs have fair notice as to the nature of each defense.  *See Aidone v. Nationwide Auto Guard, L.L.C.*, 295 F.R.D. 658, 660 (S.D. Fla. 2013).

> **E.    Defendants' Ninth Additional Defense (Merger, Integration and Ratification) Is Legally Sufficient.**

Plaintiffs first attack this defense by stating that it is not directed to a specific claim in the Complaint.  But it is clearly directed at Plaintiffs' fraudulent inducement claim.  *See* 2nd Amended AACT at p. 24 (starting the defense with "Plaintiffs' fraud claim is barred . . .").

More substantively, Plaintiffs state that neither the License Agreement § 16.8 nor the First Amendment § 2 can bar their fraudulent inducement claim.  The first of these provisions states that the License Agreement and its related written documents "contain the entire agreement among the parties with respect to the transactions described herein, and supersede all prior agreements, written or oral, with respect thereto."  License Agreement § 16.8.  The second provision states that, except as provided in the First Amendment, "the Agreement remains in full force and effect and is ratified and confirmed by the parties."  First Amendment § 2.

While Florida law is not a model of clarity on this issue, the Fifth District recently addressed and reconciled two Florida Supreme Court cases that are in tension with each other to conclude that "a superficial resolution of the apparent conflict between the cases is that a 'merger' clause negates a fraud claim but a 'non-reliance' clause does not," and further that a contract containing both merger and non-reliance clauses negates a fraud claim because of the effect of the merger clause.  *Billington v. Ginn-LA Pine Island, Ltd.*, 192 So.3d 77, 83 (Fla. Dist.

Ct. App. 2016).  The *Billington* court questioned whether this was the best rule of decision and called upon the Florida Supreme Court to address the issue, *see id*. at 85, but the Florida Supreme Court has not.  Thus, Florida law remains as stated in the recent *Billington* case – that "a 'merger' clause negates a fraud claim."  *Id*. at 83; *see also Hillcrest Pacific Corp. v. Yamamura*, 727 So.2d 1053, 1055-56 (Fla. Dist. Ct. App. 1999) (in connection with an agreement that stated it "contained the entire agreement between the parties and merged and extinguished all prior negotiations," court held that "the Agreement contains an integration clause that expressly extinguishes all prior negotiations and 'sales pitches'" and "[a] party cannot recover in fraud for alleged oral misrepresentations that are adequately covered or expressly contradicted in a later written contract").  The License Agreement contains just such a merger and integration clause.

This defense is further bolstered by the First Amendment.  Roughly six months after the License Agreement was executed, Plaintiffs "ratified and confirmed" the License Agreement in the First Amendment § 2, even though neither document contained any of the promises Plaintiffs claim fraudulently induced them to enter into the License Agreement.  In fact, each contradicted Plaintiffs' claim because, for example, Cherokee is not a party to either the License Agreement or the First Amendment, even though Plaintiffs now claim that somehow Cherokee had committed to make or guarantee the payments under the License Agreement.  *See, e.g., Mac-Gray Servs., Inc. v. DeGeorge*, 913 So.2d 630, 634 (Fla. Dist. Ct. App. 2005) ("A party cannot recover in fraud for alleged oral misrepresentations that are adequately covered or expressly contradicted in a later written contract."); *Yamashita v. Merck & Co., Inc.*, 2013 WL 275536, at *4 (S.D. Fla. Jan. 24, 2013) ("Nor may an action for fraud in the inducement proceed where the alleged fraud contradicts the subsequent written contract.").

-12-

Plaintiffs' argument to strike the Ninth Additional Defense as indefensible as a matter of law must be rejected.

### F. Defendants' Tenth Additional Defense (Speculative Damages) Is Legally Sufficient.

Plaintiffs assert the peculiar argument that Defendants are somehow required to plead facts that demonstrate Plaintiffs' damages on their non-contract claims are speculative when Plaintiffs have not pled any factual basis for non-speculative, actual damages on those claims. The only alleged damages Plaintiffs have identified are the $89 million they claim to be owed under the License Agreement on their contract claim. If Plaintiffs fail to prove Industrial Heat or IPH breached the License Agreement, however, they have not identified the basis for any other damages. Indeed, the Court recognized this in its motion to dismiss order, stating that "Plaintiffs have not identified such separate damages at this stage" but "it is possible discovery will reveal separate damages for Plaintiffs' fraud claim." Mot. to Dismiss Order [D.E. 24] at p. 19. Defendants are not required to allege additional facts to preserve their defense that Plaintiffs' non-contract damages will be speculative where Plaintiffs have not even been able to plead such damages, and it is merely "possible discovery will reveal separate damages." *Id*.

## II. Count II – Failure to Pay Taxes (Paragraphs 126 through 133) Is Not Immaterial, Impertinent, or Scandalous.

Plaintiffs' arguments in support of striking Paragraphs 126 through 133 of Defendants' Second Counterclaim in the 2nd Amended AACT are unavailing. These allegations pertain to Plaintiffs' failure to pay taxes on payments to them from Industrial Heat and/or IPH as required by the License Agreement. These allegations are entirely relevant to the facts at issue in this case, as such failure constitutes a breach of the License Agreement. *See* License Agreement §§ 12(a), 12(j), & 13.5. *See also* 2nd Amended AACT Ex. 8. Plaintiffs do not dispute that a valid affirmative defense to at least their breach of contract claim is that Plaintiffs breached the

License Agreement first; this is the substance of Defendants' Fifth Additional Defense, which is one of only two Additional Defenses that Plaintiffs do not move to strike.  *See* 2nd Amended AACT at p. 23.  Indeed, Defendants expressly state as one basis for that fifth defense Plaintiffs' contract breach by "failing to report and pay taxes on payments/revenue made under the License Agreement."  *Id*.  Defendants are entitled to plead the basis for that defense, and have done so on pages 58 to 60 of the 2nd Amended AACT.

In light of Plaintiffs' representation that there is no tax lien affecting Industrial Heat or IPH's assets or rights under the License Agreement, IPH has stated that it is not presently asserting this defense also as an affirmative claim to recover damages, but has reserved the right to do so in the future.  Regardless of whether that affirmative claim is ever asserted, however, Defendants are entitled to allege, and have so alleged, the basis for the defense of antecedent breach of contract based on failure to pay taxes.  Plaintiffs do not dispute this is a valid defense because they have not moved to strike the Fifth Additional Defense.  Hence, there is no basis to strike allegations in the 2nd Amended AACT in support of that defense.[8]

### Conclusion

For the foregoing reasons, Defendants respectfully request that this Court enter an order denying the Motion to Strike in its entirety.

---

[8]    Plaintiffs argue that Rossi's prior tax issues are inadmissible, but in fact they explain both why the License Agreement has provisions directed towards Plaintiffs' payment of taxes and why those provisions are material.

Dated: October 10, 2016                     Respectfully submitted,


                                            /s/ Christopher R.J. Pace
                                            Christopher R.J. Pace
                                            cpace@jonesday.com
                                            Florida Bar No. 721166
                                            Christopher M. Lomax
                                            clomax@jonesday.com
                                            Florida Bar No. 56220
                                            Erika S. Handelson
                                            ehandelson@jonesday.com
                                            Florida Bar No. 91133
                                            Christina T. Mastrucci
                                            cmastrucci@jonesday.com
                                            Florida Bar No. 113013
                                            JONES DAY
                                            600 Brickell Avenue
                                            Brickell World Plaza
                                            Suite 3300
                                            Miami, FL 33131
                                            Tel: 305-714-9700
                                            Fax: 305-714-9799

                                            *Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on October 10, 2016, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel or parties of record.

*/s/ Christina T. Mastrucci*
Christina T. Mastrucci