# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# MIAMI DIVISION

| | |
|---|---|
| ANDREA ROSSI and LEONARDO CORPORATION, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) CASE NO. 1:16-cv-21199-CMA<br>) |
| THOMAS DARDEN; JOHN T. VAUGHN, INDUSTRIAL HEAT, LLC; IPH INTERNATIONAL B.V.; and CHEROKEE INVESTMENT PARTNERS, LLC, | )<br>)<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |
| INDUSTRIAL HEAT, LLC and IPH INTERNATIONAL B.V., | )<br>)<br>) |
| Counter-Plaintiffs, | )<br>) |
| v. | ) **OPPOSITION TO COUNTER-**<br>) **DEFENDANTS' MOTION TO**<br>) **DISMISS SECOND AMENDED** |
| ANDREA ROSSI and LEONARDO CORPORATION, | ) **COUNTERCLAIMS**<br>)<br>) |
| Counter-Defendants, | )<br>) |
| and | )<br>) |
| J.M. PRODUCTS, INC.; HENRY JOHNSON; FABIO PENON; UNITED STATES QUANTUM LEAP, LLC; FULVIO FABIANI; and JAMES A. BASS, | )<br>)<br>)<br>)<br>) |
| Third-Party Defendants. | )<br>)<br>) |

## TABLE OF CONTENTS

                                                        Page

LEGAL STANDARD .................................................................................................................. 1

ARGUMENT .................................................................................................................................. 2

      I.      Count I States a Breach of Contract Claim ............................................................. 2

            A.      Industrial Heat Has Standing to Bring the Count I Breach of Contract Claim ........................................................................................... 2

            B.      Count I States a Cause of Action for Breach of Contract .......................... 4

      II.     Count II States a Breach of Contract Claim ........................................................... 5

            A.      Counter-Plaintiffs Have Sufficiently Alleged that Counter-Defendants Violated the License Agreement's Covenant Not to Compete ....................................................................................................... 5

            B.      The Court Has Sustained Counter-Plaintiffs' Allegations that Counter-Defendants Have Failed to Pay Taxes as Required by the License Agreement ................................................................................... 6

      III.    Count III States a Fraudulent Inducement Claim against Counter-Defendants .............................................................................................................. 7

      IV.    Count IV States a Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") Claim against Counter-Defendants ................................................... 9

            A.      Counter-Plaintiffs Are Allowed to Bring a FDUTPA Claim and a Breach of Contract Claim Based on the Same Conduct in the Same Action ........................................................................................................... 9

            B.      Industrial Heat Has Standing to Bring a FDUTPA Claim against Counter-Defendants ................................................................................. 10

            C.      Counter-Plaintiffs Are Not Required to Satisfy the Heightened Pleading Standard of Rule 9(b) in Count IV, But They Do ..................... 11

CONCLUSION ............................................................................................................................. 12

CERTIFICATE OF SERVICE .................................................................................................... 14

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Ashcroft v. Iqbal*,
　556 U.S. 662 (2009) ................................................................................................................1

*Ashmore v. F.A.A.*,
　2011 WL 3915752 (S.D. Fla. Sept. 2, 2011) ..........................................................................1

*Coutant v. U.S. Dep't of Treasury*,
　2002 WL 34382737 (S.D. Fla. Feb. 27, 2002) .......................................................................7

*Deere Constr., LLC v. Cemex Constr. Materials Fl., LLC*,
　2016 WL 4374970 (S.D. Fla. July 26, 2016) .......................................................................11

*Delgado v. J.W. Courtesy Pontiac GMC-Truck, Inc.*,
　693 So.2d 602 (Fla. Dist. Ct. App. 1997) .............................................................................10

*Esys Latin Am., Inc. v. Intel Corp.*,
　925 F.Supp.2d 1306 (S.D. Fla. 2013) .................................................................................3, 4

*Garcia v. United Auto Credit Corp.*,
　2008 WL 141579 (S.D. Fla. Jan. 11, 2008) ...........................................................................2

*Gaustaldi v. Sunvest Cmtys. USA, LLC*,
　637 F.Supp.2d 1045 (S.D. Fla. 2009) ..................................................................................11

*Geter v. Galardi South Enters., Inc.*,
　43 F.Supp.3d 1322 (S.D. Fla. 2014) ......................................................................................1

*Guarisma v. Microsoft Corp.*,
　2016 WL 4017196 (S.D. Fla. July 26, 2016) .........................................................................5

*Kia Motors Am. Corp. v. Butler*,
　985 So.2d 1133 (Fla. Dist. Ct. App. 2008) ...........................................................................11

*Lauren Kyle Holdings, Inc. v. Heath-Peterson Constr. Corp.*,
　864 So.2d 55 (Fla. Dist. Ct. App. 2004) ................................................................................3

*Leesberg Cmty. Cancer Ctr. v. Leesburg Reg'l Med. Ctr.*,
　972 So.2d 203 (Fla. Dist. Ct. App. 2007) ..............................................................................3

## TABLE OF AUTHORITIES
(continued)

Page

*Leisure Founders, Inc. v. CUC Intern., Inc.*,
   833 F.Supp. 1562 (S.D. Fla. 1993) ...................................................................................9

*Nature's Prods., Inc. v. Natrol, Inc.*,
   990 F.Supp.2d 1307 (S.D. Fla. 2013) ..............................................................................10

*N. Am. Clearing, Inc. v. Brokerage Comp. Sys., Inc.*,
   666 F.Supp.2d 1299 (M.D. Fla. 2009) .............................................................................10

*PNR, Inc. v. Beacon Prop. Mgmt., Inc.*,
   842 So.2d 773 (Fla. 2003) ............................................................................................9, 10

*Prestige Rests. & Entm't, Inc. v. Bayside Seafood Rest., Inc.*,
   2010 WL 680905 (S.D. Fla. Feb. 23, 2010) ......................................................................2

*Rodriguez v. Holder*,
   2011 WL 2911927 (S.D. Fla. Mar. 9, 2011) ......................................................................1

*Rollins, Inc. v. Butland*,
   951 So.2d 860 ( Fla. Dist. Ct. App. 2006) .......................................................................11

*Sanchez-Knutson v. Ford Motor Co.*,
   52 F.Supp.3d 1223 (S.D. Fla. 2014) ................................................................................11

*Sanctuary Surgical Ctr., Inc. v. Conn. Gen. Life Ins. Co., Inc.*,
   2012 WL 28263 (S.D. Fla. Jan. 5, 2012) ...........................................................................2

*Siever v. BWGaskets, Inc.*,
   669 F.Supp.2d 1286 (M.D. Fla. 2009) .............................................................................11

*Slip-N-Slide Records, Inc. v. TVT Records, LLC*,
   2007 WL 3232270 (S.D. Fla. Oct. 31, 2007) .............................................................2, 3, 4

*State Farm Fire & Cas. Co. v. Ray*,
   556 So.2d 811 (Fla. Dist. Ct. App. 1990) ......................................................................3, 4

*State Farm Mut. Auto. Ins. Co. v. Gonnella*,
   677 So.2d 1355 (Fla. Dist. Ct. App. 1996) ........................................................................2

*Toback v. GNC Holdings, Inc.*,
   2013 WL 5206103 (S.D. Fla. Sept. 13, 2013) .................................................................12

# TABLE OF AUTHORITIES
(continued)

**Page**

*Univ. Creek Assocs., II, Ltd. V. Boston Am. Fin. Group, Inc.*,
  100 F.Supp.2d 1337 (S.D. Fla. 1998) ...............................................................................2

*W. Coast Life Ins. Co. v. Life Brokerage Partners LLC*,
  2009 WL 2957749 (S.D. Fla. Sept. 9, 2009) ....................................................................8

*Ziemba v. Cascade Int'l, Inc.*,
  156 F.3d 1994 (11th Cir. 2001) .......................................................................................8

**STATUTES**

Florida Deceptive and Unfair Trade Practices Act ........................................................9, 10, 11, 12

Fla. Stat. 501.204(1) ....................................................................................................................10

**OTHER AUTHORITIES**

Rule 9(b) ...........................................................................................................................7, 9, 11, 12

### COUNTER-PLAINTIFFS' OPPOSITION TO COUNTER-DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COUNTERCLAIMS

Counter-Plaintiffs Industrial Heat, LLC ("Industrial Heat") and IPH International, B.V. ("IPH") (collectively, "Counter-Plaintiffs") hereby respectfully oppose Counter-Defendants Andrea Rossi ("Rossi") and Leonardo Corporation's ("Leonardo") (collectively, "Counter-Defendants") Motion to Dismiss Defendants' [Second] Amended Counterclaims against Plaintiffs ([D.E. 56]) ("Motion to Dismiss").  The relevant pleading for purpose of the Motion to Dismiss is the Second Amended Answer, Additional Defenses, Counterclaims and Third-Party Claims ("2nd Amended AACT").  [D.E. 50].

### LEGAL STANDARD

Counter-Defendants' depiction of the applicable legal standard is inaccurate or incomplete in several respects.  First, Counter-Defendants mischaracterize the applicable pleading standard by implying that if they can dream up potential alternative explanations for events pled in the 2nd Amended AACT, based on assumed or hypothetical "facts" not pled in the 2nd Amended AACT, then those events cannot support claims against Counter-Defendants because the events only create a "mere possibility" of liability.  *See* Mot. to Dismiss at 4, 7.  The correct standard, however, is that for a party to state a plausible claim for relief, the party need only "'plead factual content that allows the court to draw the reasonable inference that the [opposing party] is liable for the misconduct alleged.'"  *Ashmore v. F.A.A.*, 2011 WL 3915752, at *1 (S.D. Fla. Sept. 2, 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Second, Counter-Defendants fail to address that, in ruling on a motion to dismiss, a court considers not only the allegations in the relevant pleading (here, the 2nd Amended AACT), but also the exhibits attached thereto (and documents referenced therein that are central to a claim). *See Geter v. Galardi South Enters., Inc.*, 43 F.Supp.3d 1322, 1328 (S.D. Fla. 2014); *Rodriguez v.*

*Holder*, 2011 WL 2911927, at *1 n.5 (S.D. Fla. Mar. 9, 2011); *Prestige Rests. & Entm't, Inc. v. Bayside Seafood Rest., Inc.*, 2010 WL 680905, at *3 (S.D. Fla. Feb. 23, 2010); *Garcia v. United Auto Credit Corp.*, 2008 WL 141579, at *1 (S.D. Fla. Jan. 11, 2008).[1]

## ARGUMENT

I.  **Count I States a Breach of Contract Claim.**

   A.  **Industrial Heat Has Standing to Bring the Count I Breach of Contract Claim**

Counter-Defendants erroneously contend that, due to the Assignment and Assumption of the License Agreement (the "Original Assignment"), Industrial Heat lacks standing to bring the Count I breach of contract claim. "In construing assignments, the court must determine . . . exactly what has been assigned to make certain that the [assignee] is the real party in interest[.]" *Univ. Creek Assocs., II, Ltd. v. Boston Am. Fin. Group, Inc.*, 100 F.Supp.2d 1337, 1339 (S.D. Fla. 1998). "Like any other contract, the scope of the assignment depends foremost upon the language of the agreement itself." *Sanctuary Surgical Ctr., Inc. v. Conn. Gen. Life Ins. Co., Inc.*, 2012 WL 28263, at *3 (S.D. Fla. Jan. 5, 2012). "If the terms of the assignment are qualified, then the assignment may be construed as being limited by its terms[.]" *Slip-N-Slide Records, Inc. v. TVT Records, LLC*, 2007 WL 3232270, at *4 (S.D. Fla. Oct. 31, 2007) (citing *State Farm Mut. Auto. Ins. Co. v. Gonnella*, 677 So.2d 1355 (Fla. Dist. Ct. App. 1996)).

Counter-Defendants' argument is premised on the Original Assignment, but they wholly ignore the Amended and Restated Assignment and Assumption of License Agreement

---

[1] Counter-Defendants also proclaim that they are not contesting in their Motion the 2nd Amended AACT's allegations, *see* Motion to Dismiss at 2 n. 1, but then misstate what is pled in the 2nd Amended AACT. For example, contrary to what Counter-Defendants claim in the Motion to Dismiss, the 2nd Amended AACT does not plead that (a) the measurements of the Plant operated in Florida were "conducted by a mutually agreed upon independent third party expert", (b) the validation test in 2013 was "successful[]", (c) the operation of the Plant in Florida was a "Guaranteed Performance" process under the License Agreement, or (d) Counter-Plaintiffs approved the methodologies used to operate and measure the Plant in Florida. *Compare* 2nd Amended AACT at pp. 36-38, 43-51 *with* Mot. to Dismiss at 1, 3-4.

("Amended Assignment"), attached as Exhibit 27 to the 2nd Amended AACT.  The Amended Assignment makes clear that "the Plant [i.e., the 1MW E-Cat Unit or Plant] is excluded from such transfer and assignment and shall remain the property of the Assignor [Industrial Heat]." Amended Assignment § 2.  As the Plant was excluded from the Assignment, Industrial Heat may still enforce the License Agreement as it pertains to Industrial Heat's property and ownership rights in the Plant.  *See State Farm Fire & Cas. Co. v. Ray*, 556 So.2d 811, 813 (Fla. Dist. Ct. App. 1990) ("[A]n *unqualified* assignment transfers to the assignee all the interest of the assignor under the assigned contract, [and] the assignor has no right to make any claim on the contract once the assignment is complete, *unless authorized to do so by the assignee*.") (emphasis added). *See also Esys Latin Am., Inc. v. Intel Corp.*, 925 F.Supp.2d 1306, 1312 (S.D. Fla. 2013) ("The plain and unambiguous language of this statement [in the assignment] indicates the [first agreement] is independent of the [second agreement] and remains in effect between the two original signatories. Because the 'plain language' controls, the [first agreement] was not assigned, but rather reaffirmed in the [assignment]." (internal citations omitted)); *Slip-N-Slide Records, Inc.*, 2007 WL 3232270, at *4.  *Cf. Leesberg Cmty. Cancer Ctr. v. Leesburg Reg'l Med. Ctr.*, 972 So.2d 203, 206 (Fla. Dist. Ct. App. 2007) ("'An assignment is a transfer of all the interests and rights *to the thing assigned*.'" (quoting *Lauren Kyle Holdings, Inc. v. Heath-Peterson Constr. Corp.*, 864 So.2d 55, 58 (Fla. Dist. Ct. App. 2004) (emphasis added)).

Industrial Heat's property and ownership rights in the Plant are implicated by Count I because, among other things, that Count seeks return of the initial $1.5 million payment to Leonardo (as well as the subsequent $10 million payment and other payments), *see* 2nd Amended AACT at pp. 26-27, 52, and the License Agreement is clear that the initial $1.5 million covered payment in full for the Plant.  *See* License Agreement §§ 3.1, 3.2(a), 4.  The License Agreement

is also clear that Leonardo must refund that payment if "validation" under the License Agreement was not achieved (with the Plant being returned to Leonardo). *See id*. § 3.2(a). Thus, Industrial Heat, which was still the owner of the Plant following the Amended Assignment, is entitled to enforce the License Agreement and seek recovery of the $1.5 million payment sought under Count I. *See Esys Latin Am., Inc.*, 925 F.Supp.2d at 1312; *Slip-N-Slide Records, Inc.*, 2007 WL 3232270, at *4; *State Farm Fire & Cas. Co.*, 556 So.2d at 813.

  **B.**  **Count I States a Cause of Action for Breach of Contract.**

Counter-Defendants' argument that Counter-Plaintiffs have failed to state a cause of action for breach of contract in Count I is without merit. Counter-Plaintiffs have pled that there are only three possible explanations for their inability to replicate the results claimed by Counter-Defendants and Fabio Penon. *See* 2nd Amended AACT at pp. 28-29, 52. Counter-Defendants refuse to accept these allegations, and instead dream up alternative theories that are not based on any facts pled in the 2nd Amended AACT. *See* Mot. to Dismiss at 7. In fact, Counter-Defendants' theories are contradicted by the 2nd Amended AACT, which makes clear several times that Counter-Plaintiffs used the E-Cat technology provided to them by Leonardo and Rossi (not that they misused it or used only part of it, as Counter-Defendants hypothesize). *See* 2nd Amended AACT at pp. 28-29, 41-42, 52.[2] That pleading also alleges that Counter-Plaintiffs were unable to replicate Counter-Defendants'/Penon's claimed results even when Rossi was working with them in North Carolina to attempt to do so. *See id*. at pp. 40-41, 42, 52. Because the allegations as pled in the 2nd Amended AACT must be accepted as true, Counter-Defendants'

---

[2]   Counter-Defendants also argue that Counter-Plaintiffs do not allege in Count I the "specific provisions of the License Agreement" that were breached. Mot. to Dismiss at 6. But the 2nd Amended AACT very clearly identifies the validation and IP transfer provisions of the License Agreement, *see* 2nd Amended AACT at pp. 51-52, and the License Agreement is also attached as an exhibit to Counter-Defendants' Complaint.

efforts to avoid or ignore those allegations must be rejected and Count I sustained. *See Guarisma v. Microsoft Corp.*, 2016 WL 4017196, at *2 (S.D. Fla. July 26, 2016).[3]

## II.     Count II States a Breach of Contract Claim.

### A.     Counter-Plaintiffs Have Sufficiently Alleged that Counter-Defendants Violated the License Agreement's Covenant Not to Compete.

Counter-Defendants erroneously argue that Counter-Plaintiffs have not sufficiently alleged that Counter-Defendants violated the License Agreement's covenant not to compete because Counter-Defendants read into the License Agreement's covenant not to compete language or exceptions that are simply not there. Pursuant to the plain language of the License Agreement, the covenant not to compete prohibits Counter-Defendants and any of their affiliates from "be[ing] . . . connected in any manner with any business or enterprise (a) engaged in the design, development, manufacture, distribution, lease, rental or sale of any E-Cat Products, or the provision of any services related thereto or (b) which is competitive with the E-Cat Products[.]" other than "as an officer, director, stockholder, employee, agent or consultant" of Industrial Heat or a subsidiary. License Agreement § 13.3.

Contrary to what Counter-Defendants assert (*see* Mot. to Dismiss at 10), there is nothing in Section 13.3 that limits it to the Licensed Territory. Moreover, the 2nd Amended AACT

---

[3]     Counter-Defendants also knowingly mischaracterize the 2nd Amended AACT as "acknowledg[ing] that numerous third parties have been successful in generating an energy multiplier (COP) ranging from COP 2.6 to COP 10.85." Mot. to Dismiss at 8. The 2nd Amended AACT is clear that the only persons ever to have claimed a double-digit COP, or even a COP anywhere near or over 10, are Counter-Plaintiffs and the partner in their scheme, Third-Party Defendant Penon. Swiss and Italian scientists determined far lower COPs (below any threshold in the License Agreement), and even their COP determinations have been subject to serious criticism. See 2nd Amended AACT at pp. 38-39, 42-43. In any event, none of this changes or could change the results of Counter-Plaintiffs' testing using the E-Cat technology as provided to them by Counter-Defendants.

- 5 -

alleges (on page 29) that Counter-Defendants are based in the United States, which is included within the Territory.[4]

Counter-Defendants' contention that Counter-Plaintiffs encouraged Rossi to continue his research and development efforts after entering the License Agreement also misses the mark. *See* Mot. to Dismiss at 10. Section 13.3 is clear that such efforts would not violate its restrictions if Rossi undertook them as, for example, an "agent or consultant" of Counter-Plaintiffs. But Section 13.3 is violated if Rossi undertook such efforts for someone else.

Finally, Counter-Defendants argue that their activities could only violate Section 13.3 if they were competing with IPH. Mot. to Dismiss at 10. Again, however, this fails to read the Section fully – it applies both to a business "(a) engaged in the design, development, manufacture, distribution, lease, rental or sale of any E-Cat Products, or the provision of any services related thereto *or* (b) which is competitive with the E-Cat Products." License Agreement § 13.3 (emphasis added).

Counter-Plaintiffs allege that Counter-Defendants are "engaged in designing and developing what are classified as 'E-Cat Products' under the License Agreement" and are doing so "in combination with a company or companies unaffiliated with IPH." 2nd Amended AACT at p. 58. This is sufficient to state a violation of License Agreement § 13.3.

### B. The Court Has Sustained Counter-Plaintiffs' Allegations that Counter-Defendants Have Failed to Pay Taxes as Required by the License Agreement.

In the Court's recent Order on Plaintiffs'/Counter-Defendants' motion to strike ("Motion to Strike Order") ([D.E. 67]), the Court refused to strike, but instead sustained, the allegations in the 2nd Amended AACT relating to Counter-Defendants' failure to pay taxes as required by the

---

[4] Counter-Defendants note that Leonardo has licensed the E-Cat technology in geographic areas outside the Territory. But nothing in Section 13.3 states or implies that such licensing activity would further allow Counter-Defendants to, for example, manage or operate a business that manufactures or distributes E-Cat Products.

License Agreement because those allegations support the defense of prior breach pled in the 2nd Amended AACT.  *See* Mot. to Strike Order at 1 ("Paragraphs 126–33 of Count II of the Counterclaims and Third-Party Claims in Defendants' Answer remain intact.").

Those allegations are not pled to support a present affirmative claim against Counter-Defendants, but since they are at issue in the case in any event as part of the prior breach defense, Counter-Plaintiffs have "reserve[d] the right to assert" the allegations as an affirmative claim if or when additional facts develop that warrant an affirmative claim for relief.  2nd Amended AACT at p. 60.  Counter-Defendants contend such facts can never develop, but the very case they cite to support this conclusion shows that a federal tax lien can take priority over a private party's interest in property if the private party's interest is not protected by a perfected lien prior to the attachment of the federal tax lien.  *See Coutant v. U.S. Dep't of Treasury*, 2002 WL 34382737, at *5 (S.D. Fla. Feb. 27, 2002).

### III.   Count III States a Fraudulent Inducement Claim against Counter-Defendants.

Counter-Defendants' argument that Counter-Plaintiffs have not pled fraudulent inducement with specificity required by Rule 9(b) is without merit.  As to Counter-Defendants, Counter-Plaintiffs have alleged with considerable specificity (a) precisely what statements were made in what documents or oral representations;[5] (b) the time and place of each such statement and the person responsible for making same;[6] (c) the content of such statements and the manner in which they misled Counter-Plaintiffs (*e.g.*, that there was a real customer in Florida who

---

[5]   Counter-Plaintiffs have alleged that Rossi, both in his individual capacity and on behalf of Leonardo, made the specific fraudulent statements contained in the e-mail from Rossi to Tom Darden and others attached as Exhibit 16 to the 2nd Amended AACT, as well as two fraudulent statements during Rossi's August 2014 meeting with Industrial Heat in North Carolina: (1) that J.M. Products, Inc. ("J.M. Products") was a confidential subsidiary of Johnson Matthey p.l.c. ("Johnson Matthey") and (2) that Johnson Matthey was interested in using the E-Cat technology in connection with a confidential manufacturing process it wanted to operate in Florida. *See* 2nd Amended AACT at pp. 43-47.

[6]   *See* Footnote 5 *supra*.

needed steam power for its chemical products processing; that Counter-Defendants intended to operate the Plant to provide power to a real customer; and that Counter-Defendants intended to seek authorizations from regulatory agencies to allow the Plant or subsequent E-Cat plants to be used for other commercial purposes); and (d) what Counter-Defendants obtained as a result of such fraudulent statements (the ability to operate the 1MW Plant in Florida away from Defendants so that Plaintiffs could conduct a fatally flawed attempt at demonstrating "Guaranteed Performance" and thus improperly claim entitlement to $89 million under the License Agreement).  *See* 2nd Amended AACT at pp. 43-47, 60-61; *W. Coast Life Ins. Co. v. Life Brokerage Partners LLC*, 2009 WL 2957749, at *7 (S.D. Fla. Sept. 9, 2009) (citing *Ziemba v. Cascade Int'l, Inc.*, 156 F.3d 1994, 1202 (11th Cir. 2001)).  Nevertheless, Counter-Defendants attempt to cast the "one e-mail alleged to be made by Rossi" (Exhibit 16) as devoid of any specific content, blatantly disregarding the numerous and specific statements contained therein, and entirely ignore the statements Counter-Plaintiffs allege that Rossi made during the August 2014 meeting in North Carolina.  *See* Mot. to Dismiss at 14.  Plaintiffs also ignore the detailed allegations provided to them that address their deception and manipulation in connection with the Validation testing in 2013.  *See* 2nd Amended AACT at pp. 36-38.

Counter-Defendants' suggestion that Counter-Plaintiffs have not distinguished among Counter-Defendants and the Third-Party Defendants is equally unavailing.  Counter-Plaintiffs' allegations regarding the July 15, 2014 e-mail clearly demonstrate that Counter-Plaintiffs are attributing the statements contained therein to Counter-Defendants, not Henry Johnson ("Johnson") or J.M. Products, Inc. ("J.M. Products").  *See* 2nd Amended AACT at pp. 43-45.  Furthermore, that Counter-Plaintiffs allege that Johnson and J.M. Products made similar fraudulent statements to Counter-Defendants in the August 2014 meeting in North Carolina does

not render such allegations insufficiently specific – Counter-Plaintiffs are in fact alleging that Rossi (both in his individual capacity and on behalf of Leonardo) and Henry Johnson (both in his individual capacity and on behalf of J.M. Products) made similar fraudulent statements regarding J.M. Products. *See id.* at pp. 45-46.

Counter-Defendants' arguments are ironic given that the fraudulent inducement claim in their Complaint does not distinguish among Defendants but instead attributes alleged misrepresentations to multiple Defendants lumped together. *See* Compl. ¶¶ 112-17. In any event, the allegations supporting Counter-Plaintiffs' fraudulent inducement claim in the 2nd Amended AACT are detailed and clear, and the allegations regarding Counter-Defendants' fraudulent statements are more than sufficient to meet the heightened pleading standard of Rule 9(b) and "alert [Counter-Defendants] to the precise misconduct with which they are charged." *Leisure Founders, Inc. v. CUC Intern., Inc.*, 833 F.Supp. 1562, 1575 (S.D. Fla. 1993).[7]

### IV. Count IV States a Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") Claim against Counter-Defendants.

#### A. Counter-Plaintiffs Are Allowed to Bring a FDUTPA Claim and a Breach of Contract Claim Based on the Same Conduct in the Same Action.

Counter-Defendants contend that Counter-Plaintiffs are prohibited from bringing both a breach of contract claim and a FDUTPA claim based on the same or overlapping conduct. Florida law is to the contrary. A claimant may bring both a breach of contract claim and a FDUTPA claim based on the same or overlapping conduct so long as the conduct underlying the breach of contract is itself unfair and/or deceptive. *See PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So.2d 773, 777 n.2 (Fla. 2003) ("To the extent an action giving rise to a breach of contract . .

---

[7]   In the Court's Motion to Strike Order, Defendants were directed to clarify the specific corporate entity responsible for fraudulent misrepresentations pled in the 2nd Amended AACT. To the extent the Motion to Dismiss is read to raise the same issue, it will be addressed and resolved by Defendants' amendment pursuant to the Motion to Strike Order.

. may also constitute an unfair or deceptive act, such a claim is and has always been cognizable under the FDUTPA."); *Delgado v. J.W. Courtesy Pontiac GMC-Truck, Inc.*, 693 So.2d 602, 609 (Fla. Dist. Ct. App. 1997) (finding that economic loss rule did not apply to bar FDUTPA claim based on a written sales contract); *see also N. Am. Clearing, Inc. v. Brokerage Comp. Sys., Inc.*, 666 F.Supp.2d 1299, 1310 (M.D. Fla. 2009) (holding that conduct amounting to a breach of contract can also support a FDUTPA claim "if the conduct underlying the breach is, by itself, unfair or deceptive" (citing *PNR, Inc.*, 842 So.2d at 777 n.2)).

Counter-Plaintiffs' FDUTPA claim pleads much more than a mere breach of contract – the claim pleads in detail a deceptive and unfair scheme to mislead Counter-Plaintiffs, conceal relevant information from them, and manipulate them. *See* 2nd Amended AACT at pp. 27-28, 36-38, 41-42, 43-49, 61-63. Thus, even though Counter-Defendants' conduct in breaching the License Agreement also supports Counter-Plaintiffs' FDUTPA claim, the latter claim is broader than just a simple breach of contract and involves clear and extensive allegations of deceptive and unfair conduct. The FDUTPA claim is perfectly permissible under Florida law.

**B. Industrial Heat and IPH Have Standing to Bring a FDUTPA Claim against Counter-Defendants.**

Counter-Defendants' argument that Industrial Heat and IPH lack standing to bring a FDUTPA claim against them is also without merit. Even assuming that Industrial Heat transferred all of its rights in the License Agreement to IPH (which it did not, *see* page 3 supra), and even assuming IPH does not have any right to enforce the Term Sheet, Industrial Heat and IPH would still have standing to bring a FDUTPA claim against Counter-Defendants because a FDUTPA claim does not require the existence of contractual privity. *See* Fla. Stat. 501.204(1) (2015); *Nature's Prods., Inc. v. Natrol, Inc.*, 990 F.Supp.2d 1307, 1322 (S.D. Fla. 2013), *appeal docketed*, No. 15-11180 (11th Cir. 2015) ("'A claim under FDUTPA is not defined by the

express terms of a contract, but instead encompasses unfair and deceptive practices arising out of business relationships" (quoting *Siever v. BWGaskets, Inc.*, 669 F.Supp.2d 1286, 1292 (M.D. Fla. 2009))); *see also Kia Motors Am. Corp. v. Butler*, 985 So.2d 1133, 1140 (Fla. Dist. Ct. App. 2008) (citing *Rollins, Inc. v. Butland*, 951 So.2d 860, 869 (Fla. Dist. Ct. App. 2006) ("[I]t is well recognized in this state that a claim for damages under FDUTPA has three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages."). As alleged in the 2nd Amended AACT, Counter-Defendants engaged in a variety of deceptive acts and/or unfair practices against both Industrial Heat and IPH, and such acts and practices have caused both Industrial Heat and IPH to suffer harm. *See* 2nd Amended AACT at pp. 27-28, 36-38, 41-42, 43-49, 61-63.[8] Therefore, both Industrial Heat and IPH have standing to bring a FDUTPA claim against Counter-Defendants.

### C. Counter-Plaintiffs Are Not Required to Satisfy the Heightened Pleading Standard of Rule 9(b) in Count IV, But They Do.

Counter-Defendants erroneously assert that Counter-Plaintiffs are required to satisfy the heightened pleading standard of Rule 9(b) for their FDUTPA claim. Rule 9(b)'s heightened pleading standard, however, does not apply to FDUTPA claims. *See Deere Constr., LLC v. Cemex Constr. Materials Fl., LLC*, 2016 WL 4374970, at *8 (S.D. Fla. July 26, 2016) (finding that "[t]he requirements of Rule 9(b) do not apply to claims under the FDUTPA" because, among other things, FDUTPA does not require the elements of fraud and it reaches deceptive and unfair practices that need not involve fraud (quoting *Gaustaldi v. Sunvest Cmtys. USA, LLC*, 637 F.Supp.2d 1045, 1058 (S.D. Fla. 2009))); *Sanchez-Knutson v. Ford Motor Co.*, 52 F.Supp.3d

---

[8]  The harms pled include not only the $11.5 million Counter-Plaintiffs already paid to Leonardo, but also the transfer of the Plant to Florida to be outside Counter-Plaintiffs' direct control, the instant litigation, and the Counter-Defendants and Third-Party Defendants "obtain[ing] various payments from Counter-Plaintiffs for work that one or more .. was performing not to benefit Counter-Plaintiffs, but in fact with the goal of harming Counter-Plaintiffs." 2nd Amended AACT at pp. 61-62.

1223, 1239 (S.D. Fla. 2014) (citing *Toback v. GNC Holdings, Inc.*, 2013 WL 5206103, at *2 (S.D. Fla. Sept. 13, 2013) ("[T]his Court is persuaded that Rule 9(b) does not apply to FDUTPA claims.").

Moreover, even if such standard did apply to FDUTPA claims, Counter-Plaintiffs have more than satisfied it by specifically alleging that Counter-Defendants engaged in a variety of deceptive acts and/or unfair practices against both Counter-Plaintiffs, and that such acts and practices have caused both Counter-Plaintiffs to suffer harm. They have pled extensive details about, among other things, Counter-Defendants manipulating them into allowing the Plant to be moved to Florida, deceiving them about J.M. Products and its ownership, manipulating the operations of the Plant in Florida, concealing information from Counter-Plaintiffs, and improperly charging them for services, expenses, and equipment. *See* 2nd Amended AACT at pp. 27-28, 36-38, 41-42, 43-49, 61-63. Counter-Plaintiffs have also alleged actual harms they suffered as a result of these deceptive and unfair acts. *See* note 8 *supra*. Counter-Plaintiffs have more than adequately pled a FDUTPA claim against Counter-Defendants.

## CONCLUSION

For the foregoing reasons, this Court should deny Counter-Defendants' Motion to Dismiss the Counterclaims in the 2nd Amended AACT in its entirety.

Dated:	October 17, 2016	Respectfully submitted,

/s/ *Christopher R. J. Pace*
Christopher R.J. Pace
cpace@jonesday.com
Florida Bar No. 721166
Christopher M. Lomax
clomax@jonesday.com
Florida Bar No. 56220
Erika S. Handelson
Florida Bar No. 91133
ehandelson@jonesday.com
Christina T. Mastrucci
Florida Bar No. 113013
JONES DAY
600 Brickell Avenue, Suite 3300
Miami, Florida 33131
Tel: 305-714-9700
Fax: 305-714-9799

*Attorneys for Defendants and Counter-Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 17, 2016, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record for the parties.

/s/ Christina T. Mastrucci
Christina T. Mastrucci