**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

ANDREA ROSSI, et al.,

        Plaintiff,

CASE NO. 1:16-cv-21199-CMA

v.

THOMAS DARDEN, et al.

        Defendants.
_____/

INDUSTRIAL HEAT, LLC, et al.,

        Counter-Plaintiffs,

v.

ANDREA ROSSI, et al.,

        Counter-Defendants,

and

J.M. PRODUCTS, INC., et al.,

        Third-Party Defendants.
_____/

**THIRD-PARTY DEFENDANTS' *COMBINED* MOTION TO DISMISS COUNTS III, IV, AND V OF COUNTER-PLAINTIFFS' SECOND AMENDED COUNTERCLAIMS AND THIRD-PARTY CLAIMS, AND INCORPORATED MEMORANDUM OF LAW**

Pursuant to this Court's Order [**ECF No. 62**], Third-Party Defendants, J.M. Products, Inc. ("JMP"), Henry Johnson ("Johnson"), James A. Bass ("Bass"), United States Quantum Leap, LLC ("USQL"), and Fulvio Fabiani ("Fabiani") (collectively, the "Third-Party Defendants"), by and through their undersigned counsel and pursuant to Rule 12(b)(6), Fed. R. Civ. P., collectively move this Court for the entry of an Order dismissing Counts III, IV, and V of the

1

Second Amended Counterclaims and Third-Party Claims (the "Counterclaims and Third-Party Claims," **ECF No. 50**). filed by Counter-Plaintiffs Industrial Heat, LLC ("IH") and IPH International, B.V. ("IPH") (collectively, "Counter-Plaintiffs"). In support thereof, Third-Party Defendants state as follows:

## BRIEF PROCEDURAL HISTORY

1. On September 19, 2016, Counter-Plaintiffs filed their Counterclaims and Third-Party Claims.

2. Count III of the Counterclaims and Third-Party Claims attempts to allege the fraudulent inducement into the Term Sheet.[1]

3. Count IV attempts to allege a claim against the Counter-Defendants and Third-Party Defendants for violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").

4. Count V attempts to allege a claim against Fabiani and USQL for the breach of a Technical Consulting Agreement.

5. Counter-Plaintiffs fail to state a claim upon which relief can be granted.

6. Third-Party Defendants respectfully move this Court to dismiss Counts III, IV, and V of the Counterclaims and Third-Party Claims for the reasons set forth below.

---

[1] All capitalized terms not otherwise defined herein shall have the same definitions assigned to them in the operative Complaint, or, if not defined therein, in the Counterclaims and Third-Party Claims.

The Term Sheet (**ECF No. 50**, Ex. 17) was an agreement between Leonardo, IH, and JMP for the rental of the Plant and purchase of energy for a period of two years, wherein IH would maintain and monitor the Plant and Counter-Defendants (and others designated by IH) would operate the Plant.

## RELEVANT FACTUAL ALLEGATIONS IN THE COUNTERCLAIMS AND THIRD-PARTY CLAIMS AND EXHIBITS THERETO

7. In their Counterclaims and Third-Party Claims, Counter-Plaintiffs set forth over 100 paragraphs with allegations that purportedly support their claims, yet only a few of them involve or relate to Third-Party Defendants.

8. First, Counter-Plaintiffs allege that IH entered into a Technical Consulting Agreement with USQL and Fabiani that "required, among other things, that USQL and Fabiani promptly disclose to [IH] any and all improvements, inventions, developments, discoveries, innovations, systems, techniques, processes, formulas, programs and other things that may be of assistance to [IH] or its affiliates …." (**ECF No. 50**, ¶63.)

9. Counter-Plaintiffs allege that "Rossi and Johnson made a number of false representations to IH, most notably that JMP was a confidential subsidiary of Johnson Matthey p.l.c. ("Johnson Matthey"), and that Johnson Matthey was interested in using the E-Cat technology in connection with a confidential manufacturing process it wanted to operate in Florida." (**ECF No. 50**, ¶74.)

10. Counter-Plaintiffs allege that JMP (a) "was not operating or planning to operate any manufacturing process in Florida, and was in fact owned by persons whom Johnson represented in writing did not have any ownership interest in JMP," (b) had "no commercial use for the steam power generated by the Plant," and (c) was "sending falsified invoices to [IH] stating the amount of energy or steam JMP was purportedly receiving and using from the Plant during a given month." Counter-Plaintiffs attach a "selection" of the alleged invoices as Exhibit 18. (**ECF No. 50**, ¶¶74, 76, 77.)

11. Then, Counter-Plaintiffs allege that JMP's involvement increased when "Leonardo, Rossi, JMP, Johnson and Fabiani enlisted Bass to pretend to be a JMP employee

3

serving as its Director of Engineering to make JMP appear to be a real manufacturing company" and to "meet with IH at JMP's Doral facility" and "others, falsely claiming that JMP was using steam from the Plant." (**ECF No. 50**, ¶¶78, 79.)

12. Counter-Plaintiffs allege that "Leonardo, Rossi, JMP, Johnson, USQL, Fabiani and Bass also restricted access to the JMP area at the Doral location." (**ECF No. 50**, ¶83.)

13. Counter-Plaintiffs allege that USQL and Fabiani failed to promptly disclose information related to their work, which is alleged to be the property of IH. (**ECF No. 50**, ¶¶85, 86, 87, 88.)

14. Lastly, Counter-Plaintiffs allege that Leonardo, Rossi, JMP, Johnson, and USQL are all interconnected in a number of ways (**ECF No. 50**, ¶89) and that Third-Party Defendants were engaged in a common scheme against Counter-Plaintiffs (**ECF No. 50**, ¶141).

## MEMORANDUM OF LAW

### I.   Count III: Fraudulent Inducement

Count III of the Counterclaims and Third-Party Claims alleges that Rossi, Leonardo, JMP, and Johnson fraudulently induced IH into entering into the Term Sheet. (**ECF No. 50**, ¶¶134-139.) Counter-Plaintiffs' allegations fail to comply with the heightened requirements of Rule 9(b), F.R. Civ. P., and the specificity necessary to properly plead a claim for fraudulent inducement.

"To state a cause of action for fraudulent inducement, a plaintiff must plead: (1) the defendant made a false statement about a material fact; (2) the defendant knew the statement was false when he made it or was without knowledge of its truth or falsity; (3) the defendant intended that the plaintiff rely and act on the false statement; and (4) the plaintiff justifiably

4

relied on the false statement to his detriment." *Persaud v. Bank of Am., N.A.*, 14-21819-CIV, 2014 WL 4260853, at *12 (S.D. Fla. Aug. 28, 2014) (internal citations omitted).

"Under [Rule 9(b)], a plaintiff must also plead the circumstances constituting fraud with particularity." *Id.* "To comply with Rule 9(b), the Eleventh Circuit requires a complaint to set forth (1) precisely what statements were made in what documents or oral representations or what omissions were made, (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *W. Coast Life Ins. Co. v. Life Brokerage Partners LLC*, 08-80897-CIV, 2009 WL 2957749, at *7 (S.D. Fla. Sept. 9, 2009) (citing *Ziemba v. Cascade Int'l. Inc.*, 156 F.3d 1994, 1202 (11th Cir. 2001)). Moreover, "[w]here multiple parties are charged with fraud, the complaint must distinguish among defendants and specify their respective roles in the fraud." *Leisure Founders, Inc. v. CUC Intern., Inc.*, 833 F. Supp. 1562, 1575 (S.D. Fla. 1993). "It is a serious matter to charge a person with fraud and hence no one is permitted to do so unless he is in a position and is willing to put himself on record as to what the alleged fraud consists of specifically." *Id.*

As is evident from the relevant facts set forth above, all of the allegations against JMP and Johnson are conclusory in nature and deficient as a matter of law. IH alleges that Rossi, Leonardo, JMP, and Johnson falsely represented to IH that JMP was a manufacturing company with a real commercial use for the steam power generated by the Plant. (*See* **ECF No. 50**, ¶135.) However, IH fails to specify the exact statement(s) made, when they were made, to whom, specifically, they were made, by whom, specifically they were made, and what such person or entity obtained as a result. Similarly, IH fails to allege any facts that support its conclusion that

5

JMP was not a manufacturing company, had no commercial use for the steam power generated by the Plant, and was created solely for as a ruse to induce IH to ship the Plant to Florida. (*See* **ECF No. 50**, ¶136.) Furthermore, the Term Sheet expressly contradicts IH's claim, as it specifically states that JMP "operates a production facility in Miami, FL, which requires low temperature steam." (**ECF No. 50**, Ex. 17, ¶2.) *See, e.g. Mac-Gray Serv., Inc. v. DeGeorge*, 913 So.2d 630, 634 (Fla. 4th DCA 2005) ("A party cannot recover in fraud for alleged oral misrepresentations that are adequately covered or expressly contradicted in a later written contract.")

Accordingly, JM and Johnson respectfully submit that Counter-Plaintiff IH has failed to meet the heightened pleading requirements necessary to properly plead a claim for fraud, and that Count III should therefore be dismissed.

## II.     Count IV: FDUTPA

Counter-Plaintiffs allege that Counter-Defendants, Third-Party Defendants, and Fabio Penon violated FDUTPA as part of a common scheme against Counter-Plaintiffs arising from, in large part, the same alleged facts and circumstances set forth in Count III. (*See, e.g.,* **ECF No. 50**, ¶140-148.)   Notably absent from such allegations are any unfair or deceptive trade practices, nor are there any specific allegations as to what underlying acts of fraud were allegedly undertaken to Counter-Plaintiffs' detriment. Accordingly, this claim therefore must be dismissed for lack of standing, as an improper contract claim masquerading as a tort claim, and because it has not been pleaded with the requisite particularity.

### A. <u>IH and IPH Lack Standing on Claims Relating to the License Agreement</u>

Counter-Plaintiffs make no distinction between IH and IPH in Count IV, simply referring to the two parties jointly as "Counter-Plaintiffs." (**ECF No. 50**, ¶140.)   In doing so, the Counterclaims and Third-Party Claims purport to assert identical claims on behalf of both

entities despite the heightened pleading requirements of Rule 9(b) discussed herein.  To wit, IH alleges that Plaintiffs undertook a fraudulent scheme to manipulate the results of the Guaranteed Performance test in order to induce Counter-Plaintiffs to pay Plaintiffs Eighty-Nine Million Dollars ($89,000,000.00) in accordance with the License Agreement (**ECF No. 1**, Ex. B). (*See* **ECF No. 50**, ¶¶143-146.)  To the extent such claims are based upon the License Agreement, including but not limited to allegations pertaining to the testing and operation of the E-Cat in accordance with the License Agreement, IH lacks standing to assert such claims since it was not a party to the License Agreement. Similarly, IPH lacks standing to raise any claims in relation to the Term Sheet, as IPH was not alleged to be a party to the Term Sheet nor a third party beneficiary thereof.

      B.  <u>Count IV Sounds in Contract, Not Tort</u>

Each of the allegations contained in Count IV arises from the terms of the License Agreement, Term Sheet and/or USQL Agreement (**ECF No. 50**, Ex. 11), *see* **ECF No. 50**, ¶146, and the allegations rely solely on the alleged breach of the parties' agreements.  But parties to a contract may not recast their breach of contract claims as tort claims.  *Kaye v. Ingenio, Filiale De Loto-Quebec, Inc.,* No. 13-61687-CIV, 2014 WL 2215770, at *4 (S.D. Fla. May 29, 2014); *Rebman v. Follett Higher Educ. Grp., Inc.,* 575 F.Supp.2d 1272, 1279 (M.D. Fla.2 008) ("Florida law permits a FDUTPA claim to travel with a related breach of contract claim if the FDUTPA claim challenges the acts underlying or "giving rise" to the breach, and does not "rely solely on a violation of the Agreement as a basis for assertion of a FDUTPA claim.") (citing *PNR, Inc. v. Beacon Prop. Mgmt., Inc.,* 842 So.2d 773, 777 (Fla. 2003) (granting summary judgment to defendant)); *accord Kenneth F. Hackett & Associates, Inc. v. GE Capital Info. Tech. Sols., Inc.,* 744 F. Supp. 2d 1305, 1312 (S.D. Fla. 2010).

Counter-Plaintiffs specifically alleged that Counter-Defendants and Third-Party Defendants collectively "engaged in unconscionable, unfair and deceptive acts and practices" by "refusing to provide other information properly requested by Counter-Plaintiffs, and to which Counter-Plaintiffs were entitled pursuant to the License Agreement, the Term Sheet, the USQL Agreement…" (**ECF No. 50**, ¶146(e)).  Then, Counter-Plaintiffs impermissibly attempt to recast such contract claims as tort claims.  But "a breach of contract claim without significant allegations of unfair or deceptive conduct is insufficient to state a cause of action under FDUTPA.  Mere allegations of intentional breach of contract are insufficient to state a claim under the statute."  *Hache v. Damon Corp.*, No. 8:07CV1248T30EAJ, 2008 WL 912434, at *2 (M.D. Fla. Apr. 1, 2008) (quoting *PNR, Inc. v. Beacon Prop. Mgmt., Inc.,* 842 So.2d 773, 777 n. 2 (Fla.2003)).

Accordingly, Defendants' claims must be dismissed as Defendants are attempting improperly to recast their contract claims as claims in tort under FDUTPA.

C. <u>Count IV Fails to Meet the Rule 9(b) Heightened Pleading Requirements</u>

Where, as Counter-Plaintiffs intend here, FDUTPA claims sound in fraud, the heightened pleading requirements of Rule 9(b) apply—i.e., (a) the specific facts including time, date, place and person responsible for the alleged actions and/or inactions which Defendants' claim were misleading, (b) how such alleged actions and/or statements were misleading, and (d) and any allegations as to causation connecting the alleged misleading actions to any alleged damages.. *Ferrara v. LCS Fin. Services Corp.*, No. 8:14-CV-2450- T-30AEP, 2015 WL 84703, at *3 (M.D. Fla. Jan. 7, 2015); *accord E & C Copiers Export Import Corp. V. Arizs Fotocopiandras S.A.S.,* No. 15-21693-CIV, 2015 WL 7720604, at *3 (S.D. Fla. Nov. 30, 2015); *Llado-Carreno v. Guidant Corp.*, No. 09-20971-CIV, 2011 WL 705403, at *5 (S.D. Fla. Feb. 22, 2011) (finding that

8

the "particularity requirement of Rule 9(b) applies to all claims that sound in fraud, regardless of whether those claims are grounded in state or federal law"); *also Stires v. Carnival Corp.,* 243 F.Supp.2d 1313, 1322 (M.D. Fla. 2002) ("Most courts construing claims alleging violations of the Federal Deceptive Trade Practices Act or its state counterparts have required the heightened pleading standard requirements of Rule 9(b).").

Counter-Plaintiffs allege, generally, that Counter-Defendants sought to manipulate the operation and measurements of the Plant in order to obtain an $89 million payment upon successful completion of a performance test. Despite the numerous allegations in the Counterclaims and Third-Party Claims, the few allegations that include Third-Party Defendants are irrelevant, immaterial, and, even if true (which they are not) would not constitute a violation by Third-Party Defendants, as alleged by the Counter-Plaintiffs.

Counter-Plaintiffs allege that JMP's role in the scheme magnified when JMP began sending "falsified invoices" to IH stating the amount of energy or steam JMP was purportedly receiving and using from the Plant during a given month. (**ECF No. 50**, ¶77.) Counter-Plaintiffs' allegations are belied by the Term Sheet and the face of the documents themselves. Pursuant to the Term Sheet, JMP was required to pay rent based upon the amount of energy it received from the Plant. Accordingly, JMP provided monthly reports with a breakdown of the energy received during a given month. Despite their burden to plead with specificity, Counter-Plaintiffs offer no factual basis to support the allegation that JMP's reports were falsified.

Counter-Plaintiffs allege that Leonardo, Rossi, JMP, Johnson, and Fabiani enlisted Bass to pretend to be the Director of Engineering of JMP and that Bass gave his business card representing himself as such. (**ECF No. 50**, ¶¶78-79.) Once again, the Counterclaims and Third-Party Claims are devoid of any factual support for the allegation that Bass was not an employee

9

of JMP and was not the Director of Engineering. In addition, Counter-Plaintiffs allege that Bass met with IH at JMP's Doral facility and also met with others, expressing JMP's satisfaction with the energy received from the Plant. (**ECF No. 50**, ¶79.) Not surprisingly, Counter-Plaintiffs again fail to plead these allegations with the specificity required, including what representations, specifically, were made, when they were made, to whom they were made, and what Bass obtained as a result of such representation. Even more importantly, as with Counter-Plaintiffs' claims that "JMP had no real use for the steam power" and "there was no secretive manufacturing process taking place" (**ECF No. 50**, ¶79.), Counter-Plaintiffs fail to allege any facts that support the conclusion that such statements were in fact false or fraudulent. These naked allegations alone are not entitled to any presumption of fraud.

In addition, Counter-Plaintiffs allege that "Leonardo, Rossi, JMP, Johnson, USQL, Fabiani and Bass restricted access to the JMP area at the Doral location, claiming that there was a secretive manufacturing process being conducted there, when in fact it was simply recycling steam from the Plant and sending it back to the Plant as water." (**ECF No. 50**, ¶83.) First, this allegation is contradicted by Counter-Plaintiffs' own allegation that Bass met with IH at the JMP facility in Doral. (**ECF No. 50**, ¶79.) Second, Counter-Plaintiffs fail to state when access was denied, to whom it was denied, and how it was denied. Third, Counter-Plaintiffs fail to set forth any allegations to support their conclusion that JMP "was simply recycling steam from the Plant and sending it back to the Plant as water." Finally, pursuant to the Term Sheet, IH was only to have access to the Plant and IH was not entitled to any access to JMP's section of the facility or its operations, which are irrelevant to the operation of the Plant.[2]

---

[2] Moreover, each of the allegations is belied by the Term Sheet, which expressly provides that IH will maintain the Plant and Leonardo will operate the Plant. (**ECF No. 50**, Ex. 17, ¶¶7, 8.) JMP, Johnson, and Bass were under no obligation to operate, maintain, or otherwise measure the

With regard to USQL and Fabiani, Counter- Plaintiffs allege that: (1) IH entered into a Technical Consulting Agreement with USQL and Fabiani that required, among other things, that USQL and Fabiani promptly disclose any and all improvements, inventions developments, etc… (**ECF No. 50**, ¶63.); (2) USQL and Fabiani failed to promptly disclose information related to their work that is alleged to be the property of IH. (**ECF No. 50**, ¶¶85-88.); (3) Leonardo, Rossi, JMP, Johnson, and USQL are all interconnected in a number of ways (**ECF No. 50**, ¶89.); and (4) USQL and Fabiani were engaged in a common scheme against Counter-Plaintiffs (**ECF No. 50**, ¶141.) Again, Counter-Plaintiffs fail to plead any allegations with the required specificity, i.e. what information was requested, by whom and to whom, when the information was requested, what information did USQL or Fabiani fail to disclose. Furthermore, Counter-Plaintiffs fail to set forth the "number of ways" that Counter-Defendants and Third-Party Defendants are interconnected.

For each of the foregoing reasons, Count IV of the Counterclaims and Third-Party Claims should be dismissed.

D. <u>Failure to State a Cause of Action</u>

"To establish a claim for damages under FDUTPA a plaintiff must show three elements: 1) a deceptive act or unfair practice; 2) causation; and 3) actual damages." *Casey v. Florida Coastal Sch. of L., Inc.*, 3:14-CV-01229, 2015 WL 10818746, at *2 (M.D. Fla. Sept. 29, 2015). In pleading a claim under FDUTPA, Counter-Plaintiffs must plead not only the alleged wrongdoing, but also facts to establish the causation between the alleged wrongdoing and the alleged damages. "[C]ausation must be direct, rather than remote or speculative." *Hennegan Co.*

---

operations of the Plant, nor were they required to provide Counter-Plaintiffs with details concerning same. (**ECF No. 50**, Ex. 17, ¶9.) The Term Sheet does not require JMP, Johnson, or Bass to provide Counter-Plaintiffs with any details concerning JMP's facility or its operations therein.

11

*v. Arriola,* 855 F.Supp.2d 1354, 1361 (S.D.Fla.2012) (King, J.); *see also* Fla. Stat. § 501.211(2) (A "person who has suffered a loss *as a result of* a violation of this part ... may recover actual damages.") (emphasis added). Further, Counter-Plaintiffs must show actual damages, which *necessarily* result from the allegedly deceptive act or unfair practice. *See e.g.*, *Bishop v. VIP Transp. Grp., LLC*, No. 615CV2118ORL22KRS, 2016 WL 4435700, at *5 (M.D. Fla. Aug. 2, 2016), *report and recommendation adopted*, No. 615CV2118ORL22KRS, 2016 WL 4382694 (M.D. Fla. Aug. 17, 2016).

As noted above, Counter-Plaintiffs allege that Third-Party Defendants were part of an overall scheme orchestrated by Counter-Defendants to defraud Counter-Plaintiffs by manipulating the operation and measurement of the Plant in order to obtain payment in the amount of $89 million upon the successful completion of a performance test. (**ECF No. 50**, ¶¶142-144.) However, Counter-Plaintiffs have failed to set forth any allegations against Third-Party Defendants that give rise to a claim under FDUTPA.

With respect to JMP and Johnson, Counter-Plaintiffs allegations that JMP and Johnson misrepresented the ownership of JM and its operations (**ECF No. 50**, ¶¶74, 76), provided false invoices stating amount of energy received by JM (**ECF No. 50**, ¶77), enlisted Bass to pretend to be JMP's Director of Engineering (**ECF No. 50**, ¶78), and restricted access to JMP's facility and operation (**ECF No. 50**, ¶83) are devoid of any facts supporting any of these conclusions and do not constitute a deceptive act or unfair practice. The ownership of an entity or the operations conducted thereby is irrelevant and immaterial to the lease of the Plant or purchase of energy. Similarly, providing falsified "invoices", which were in fact simply requests for invoices based on JMP's belief of the amount of energy received in any given month, is not a deceptive act or unfair practice. Counter-Plaintiffs would have this Court believe that IH, whose sole relationship

12

with JMP is to provide energy to it, relied solely on JMP's breakdown of energy consumed when determining the amount of energy provided by IH or the productivity or efficiency of the Plant. In addition, the purported hiring of a fake engineer and restriction of access to JMP's facility and operation are also not deceptive or unfair because pursuant to the Term Sheet, JMP, Johnson, and Bass did not have a business relationship with Counter-Plaintiffs for anything other than the rental of the Plant (in fact, pursuant to the Term Sheet, JMP, Johnson, and Bass were not even allowed access to the Plant) and access to JMP's facility or operation were never promised or required. It is clear that the alleged conduct by JMP and Johnson does not rise to the level of a "deceptive act or unfair practice" as contemplated by FDUTPA. Furthermore, Counter-Plaintiffs have failed to set forth actual damages that necessarily resulted from the allegedly deceptive or unfair conduct.

With respect to Bass, the allegations of wrongdoing alleged by Counter-Plaintiffs arise well after Counter-Plaintiffs entered into the License Agreement and Term Sheet and were not the result of any business relationship between Bass and Counter-Plaintiffs. First, Counter-Plaintiffs fail to set forth any facts to support the conclusion that Bass was not the Director of Engineering or that JMP was not satisfied with the steam power or that it was not using the steam power. Furthermore, restricting access to areas of a private facility, especially when under no contractual obligation to do so, is not deceptive or unfair. Lastly, the Counterclaims and Third-Party Claims is devoid of any facts establishing causation between the alleged wrongdoing and actual damages. Stated differently, Counter-Plaintiffs do not set forth any damages that directly resulted from Bass' alleged wrongdoing.

With respect to Fabiani and USQL, the only allegations of wrongdoing alleged by Counter-Plaintiffs are solely related to Fabiani and/or USQL's failure to provide information

and/or materials to Industrial Heat as required by the parties Consulting Agreement. "Florida law permits a FDUTPA claim to travel with a related breach of contract claim if the FDUTPA claim challenges the acts underlying or "giving rise" to the breach, and does not "rely solely on a violation of the Agreement as a basis for assertion of a FDUTPA claim." *Rebman v. Follett Higher Educ. Grp., Inc.,* 575 F.Supp.2d 1272, 1279 (M.D.Fla.2008) (citing *PNR, Inc. v. Beacon Prop. Mgmt., Inc.,* 842 So.2d 773, 777 (Fla.2003) (granting summary judgment to defendant)). *Kenneth F. Hackett & Associates, Inc. v. GE Capital Info. Tech. Sols., Inc.,* 744 F. Supp. 2d 1305, 1312 (S.D. Fla. 2010).  It goes without saying that the alleged failure to provide information pursuant to the terms of the Consulting Agreement falls well short of a "deceptive act or unfair practice" as contemplated by FDUTPA.  To allow such claims, based upon nothing more than an alleged breach of contract, even if it is alleged that such breach was part of a greater scheme, would open the floodgates to litigating every breach of contract action under the FDUTPA statute.  Plainly stated, if IH and IPH's claims against Fabiani and USQL are based solely upon the alleged failure to provide information in breach of the Consulting Agreement, then they have failed to state a cause of action under FDUTPA as they have failed to identify any deceptive act or unfair practice.  If, on the other hand, IH and IPH claim that such failure was part of some greater fraudulent scheme, then IH and IPH have failed to state, with the requisite specificity, the alleged underlying fraud perpetrated by Fabiani and/or USQL. Either way, the FDUTPA claim should be dismissed.

In sum, Counter-Plaintiffs must plead not only some alleged wrongdoing, but also facts to establish the causation between the alleged wrongdoing and the alleged damages.  Counter-Plaintiffs have not met their burden. Similarly, since Counter-Plaintiffs were required to plead damages as an element of their FDUTPA claim, their unsupported allegation that they "have

suffered and continue to suffer actual damages…" lacks the requisite specificity and is insufficient as a matter of law.

For the foregoing reasons, Count IV of the Counterclaims and Third-Party Claims should be dismissed.

### III. Count V: Breach of Contract

Count V of the Counterclaims and Third-Party Claims alleges that Third-Party Defendants Fabiani and USQL breached the terms of the Technical Consulting Agreement (referred to in Count V as the "USQL Agreement"). (**ECF No. 50**, ¶¶149-156.) Specifically, IH alleges that IH, Fabiani and USQL entered into the USQL Agreement on September 1, 2013. (**ECF No. 50**, ¶63.) In support thereof, IH attached a copy of the Technical Consulting Agreement to the Counterclaims and Third-Party Claims as Exhibit 11 thereto. (**ECF No. 50**, ¶61, Ex. 11.) As grounds for its claim, IH alleges that Fabiani and USQL (1) "disregarded their contractual obligations to [IH] in order to assist Leonardo and Rossi in their deceptive operations" (**ECF No. 50**, ¶153.); (2) "failed to provide [IH] with information relating to the scheme to manipulate the operation and testing of the Plant (**ECF No. 50**, ¶154); (3) "refused to provide other information to [IH], as alleged above" (although no "other information" is identified in the Counterclaims and Third-Party Claims) (**ECF No. 50**, ¶154); and lastly, (5) "failing to provide [IH] with information, including reports and data, relating to the operation of the Plant" (**ECF No. 50**, ¶155). For the reasons set forth below, this claim must be dismissed.

### A. Failure to State a Cause of Action

As discussed above, IH bases its claims in Count V upon Fabiani and USQL's alleged breach of the Technical Consulting Agreement (referred to by IH as the "USQL Agreement"). Such alleged breaches, as described more fully above, all pertain to Fabiani and USQL's actions

(or inactions) during the operation and testing of the Plant while it was located in Doral, Florida. (**ECF No. 50**, ¶¶153-155.)  Notably, the Plant was operated in Doral, Florida in 2015 and 2016. (*Second Amended Answer,* **ECF No. 50**, ¶71.) Accordingly, it follows that the alleged breaches of the agreement would have had to occur in 2015 or 2016 while the Plant was in Doral, Florida. Notwithstanding, the Technical Consulting Agreement upon which IH's claims are based provides, in relevant part, that:

> This Agreement shall commence as of September 1, 2013 and shall continue in effect for an initial term through and including August 31, 2014 (the "Initial Term"). This Agreement shall terminate upon the expiration of the Initial Term unless the parties agree in writing to extend it.

(**ECF No. 50**, Exhibit "11", §8).  The agreement further provides that:

> USQL shall not be obligated under this Agreement nor otherwise liable to Industrial Heat for any further payments following termination of this Agreement…

*Id.*

Although the Technical Consulting Agreement provides that it may be extended if the parties agree in writing (*id.*), IH has not alleged that any extension occurred nor has IH attached a copy of any written agreement extending such contract. Accordingly, based solely upon the allegations contained in the Counterclaims and Third-Party Claims, and exhibits thereto, IH's claim for breach of contract fails. Clearly, any actions and/or inactions occurring after the stated termination of the Technical Consulting Agreement on August 31, 2014, cannot give rise to a claim for breach of contract. Moreover, by the plain and unambiguous terms of the Technical Consulting Agreement, upon termination of the Agreement, USQL and/or Fabiani had no further obligations to IH. For the foregoing reason, IH's claim for breach of contract fails.

B.  The Technical Consulting Agreement as to  Fabiani is Void as a Matter of Law

As evidenced by the Technical Consulting Agreement attached to the Counterclaims and Third-Party Claims as Exhibit "11," the parties to the agreement are listed as USQL and IH. (**ECF No. 50**, Ex. 11.)  According to the terms set forth in the agreement, USQL and IH executed the agreement on September 1, 2013, and the agreement was effective on that date. *Id.* Pursuant to the terms of the agreement, IH was to pay USQL for consulting services during the term of the agreement. *Id.*  As such, USQL and Fabiani do not contest that there was consideration for the agreement between USQL and IH.

As further evidenced by the Technical Consulting Agreement, Fabiani executed a joinder to the agreement, agreeing to be bound by certain provisions thereof, more than a week later on September 9, 2013. *Id* at 9.  No consideration was given or promised to Fabiani at any time in exchange for his agreement to be bound by the terms of IH and USQL's agreement. "Under Florida law, the elements of a contract are offer, acceptance, and consideration." *2P Com. Agency S.R.O. v. Familant*, 2:11-CV-652-FTM-29, 2012 WL 6615889, at *5 (M.D. Fla. Dec. 19, 2012)(citing *Air Products and Chemicals, Inc. v. Louisiana Land Exploration Co.,* 806 F.2d 1524, 1529 (11th Cir.1986)).

Here, the alleged Joinder fails to describe any consideration given to Fabiani in exchange for his agreement to be bound by the terms of the agreement between USQL and IH.  Similarly, IH does not allege, nor could it, that any consideration was given to Fabiani in exchange for his agreeing to be bound by the terms of the agreement between USQL and IH.  Moreover, IH cannot argue that the consideration was the execution of the agreement with USQL because it is clear that the agreement had already been executed and became effective well before Fabiani executed the Joinder provision. Accordingly, the entry into such agreement could not have

17

served as consideration to Fabiani to execute the Joinder, as IH was already bound by the terms of the agreement.

Accordingly, as to Third-Party Defendant Fabiani, the Joinder to the agreement was Void and therefore unenforceable. Therefore, Count V as to Fabiani must be dismissed with prejudice.

### C. Alternatively, Fabiani Is Not a Party to the Entire "USQL Agreement"

Assuming, arguendo, that there had been consideration provided to Fabiani in exchange for his agreeing to be bound by certain terms of the agreement (there was not), the "Joinder" provision did not bind Fabiani to all of the terms of the agreement. Specifically, the "Joinder" provision executed by Fabiani provides, in relevant part, that:

> The undersigned, Fulvio Fabiani, the sole member and the sole manager of USQL United States Quantum Leap LLC ("USQL"), hereby joins in the foregoing Agreement for the purpose of agreeing to be bound by the provisions thereof relating to confidentiality, rights to materials, and new developments to the same extent as USQL is bound by such provisions.

*Id.*

Contrary to the plain and unambiguous terms of the "Joinder" provision set forth above, IH attempts to impose an obligation on Fabiani to be bound by terms of the agreement unrelated to "confidentiality, rights to materials, and new developments." Specifically, IH alleges that Fabiani breached §3 of the agreement, which requires the parties to act in "a manner reasonably believed by USQL to be in or not opposed to the best interests of Industrial Heat." *Id.* It is clear that the "Joinder" executed by Fabiani, even if valid, was clearly limited to those certain provisions of the agreement enumerated in the "Joinder" provisions and IH has provided no basis to attempt to expand the application of such "Joinder" provision to all terms of the agreement against Fabiani. Accordingly, all claims for breach of contract arising from any provision other

18

those enumerated in the "Joinder," including any violation of §3 of the agreement, must be dismissed as Fabiani is clearly not a party to such provisions of the contract.

**IV.     Conclusion**

For the foregoing reasons, this Court should dismiss Counts III, IV, and V of the Counterclaims and Third-Party Claims filed against Third-Party Defendants, as applicable.

Respectfully submitted this 20th day of October, 2016.

>Arán Correa & Guarch, P.A.
>*Counsel for JMP, Johnson, and Bass*
>255 University Drive
>Coral Gables, Florida 33134
>Telephone: (305) 665-3400
>Telefax: (305) 665-2250
>
>By:  */s/ Francisco J. León de la Barra*
>     Francisco J. León de la Barra, Esq.
>     Florida Bar No.: 105327
>     Fernando S. Arán, Esq.
>     Florida Bar No.: 349712
>
>**RODOLFO NUÑEZ, P.A.**
>*Counsel for Fabiani and USQL*
>255 University Drive
>Coral Gables, Florida 33143
>Telephone:    (305) 443-2440
>Facsimile:    (305) 443-2334
>rnunez@acg-law.com
>
>        /s/ *Rodolfo Nunez*
>     Rodolfo Nuñez, Esq.
>     Fla. Bar No.: 016950

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on October 20, 2016, I electronically filed the foregoing with the Clerk of the Court using CM/ECF. Copies of the foregoing document will be served on all counsel of record via transmission of Notice of Electronic Filing generated by CM/ECF.

        Arán Correa & Guarch, P.A.
        *Counsel for JMP, Johnson, and Bass*
        255 University Drive
        Coral Gables, Florida 33134
        Telephone: (305) 665-3400
        Telefax: (305) 665-2250

        By: */s/ Francisco J. León de la Barra*
            Francisco J. León de la Barra, Esq.
            Florida Bar No.: 105327
            Fernando S. Arán, Esq.
            Florida Bar No.: 349712