```
 1                    UNITED STATES DISTRICT COURT
                      SOUTHERN DISTRICT OF FLORIDA
 2                          MIAMI DIVISION
                     CASE NO. 1:16-cv-21199-CMA
 3

 4    ANDREA ROSSI, et al.,          Miami, Florida

 5             Plaintiffs,           October 14, 2016

 6        vs.                        8:34 a.m. to 9:38 a.m.

 7    THOMAS DARDEN, et al.,         Courtroom 12-2

 8             Defendants.           (Pages 1 to 60)

 9    ─────────────────────────────────────────────────────

              MOTION HEARING AND STATUS CONFERENCE
10        BEFORE THE HONORABLE CECILIA M. ALTONAGA,
                 UNITED STATES DISTRICT JUDGE
11

12    APPEARANCES:

      FOR THE              JOHN W. ANNESSER, ESQ.
13    PLAINTIFFS:          CHRISTOPHER PERRE, ESQ.
                           Perlman, Bajandas, Yevoli & Albright,
14                         P.L.
                           283 Catalonia Ave., Second Floor
15                         Coral Gables, Florida 33134
                           (305) 377-0086
16                         Jannesser@pbyalaw.com
                           cperre@pbyalaw.com
17

18    FOR THE DEFENDANTS:  CHRISTOPHER R.J. PACE, ESQ.
                           CHRISTOPHER M. LOMAX, ESQ.
19                         CHRISTINA T. MASTRUCCI, ESQ.
                           Jones Day
20                         600 Brickell Avenue
                           Brickell World Plaza
21                         Suite 3300
                           Miami, FL 33131
22                         (305) 714-9730
                           (305) 714-9719
23                         (305) 714-9731
                           crjpace@jonesday.com
24                         Clomax@jonesday.com
                           cmastrucci@jonesday.com
25
```

```
1    APPEARANCES CONTINUED:

2       FOR THE THIRD-PARTY      FERNANDO S. ARÁN, ESQ.
        DEFENDANTS J.M.          Aran Correa & Guarch, P.A.
3       PRODUCTS, HENRY          255 University Drive
        JOHNSON, AND JAMES       Coral Gables, FL 33134
4       BASS:                    (305) 665-3400
                                 faran@acg-law.com
5

6       FOR THE THIRD-PARTY      RODOLFO NUÑEZ, ESQ.
        DEFENDANTS UNITED        Aran Correa & Guarch, P.A.
7       STATES QUANTUM LEAP      255 University Drive
        LLC AND FULVIO           Coral Gables, FL 33134
8       FABIANI:                 (305) 665-3400

9

10      REPORTED BY:             STEPHANIE A. McCARN, RPR
                                 Official Court Reporter
11                               400 North Miami Avenue
                                 Twelfth Floor
12                               Miami, Florida 33128
                                 (305) 523-5518
13                               Stephanie_McCarn@flsd.uscourts.gov

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                          I N D E X

 2                          WITNESSES

 3
      WITNESSES FOR THE PLAINTIFFS:                    Page
 4                                                      --

 5

 6
      WITNESSES FOR THE DEFENDANTS:                    Page
 7                                                      --

 8

 9    EXHIBITS IN EVIDENCE          PRE    MARKED    ADMITTED

10    Plaintiffs' Exhibit No.       --      --         --

11    Defendants' Exhibit No.       --      --         --

12

13

14

15

16

17                        MISCELLANEOUS

18
                                                      Page
19    Proceedings.......................................  4
      Court Reporter's Certificate......................  51
20

21

22

23

24

25
```

```
 1        (The following proceedings were held at 8:34 a.m.)

 2            THE COURT:  Good morning, please be seated.

 3            ALL PARTIES:  Good morning, Your Honor.

 4            THE COURT:  Please state your appearances.

 5            MR. ANNESSER:  Your Honor, John Annesser and Chris

 6   Perre on behalf of the plaintiffs Andrea Rossi and Leonardo

 7   Corporation.  I also have my client with me, Mr. Rossi -- I'm

 8   sorry -- Dr. Rossi.

 9            THE COURT:  Mr. Annesser and what was the second name?

10            MR. ANNESSER:  Christopher Perre is my associate.

11            THE COURT:  Spell the last name, please.

12            MR. PERRE:  P-E-R-R-E.

13            THE COURT:  Okay.  Thank you.  Good morning.

14            MR. ANNESSER:  Thank you.

15            MR. PACE:  Good morning, Your Honor, we have got a lot

16   of Chris's in the house today.  This is Chris Pace with Chris

17   Lomax and Christy Mastrucci, all for the defendants Industrial

18   Heat, IPH International, Cherokee Investment Partners, Tom

19   Darden, and JT Vaughn.

20            THE COURT:  Good morning.

21            MR. NUÑEZ:  Good morning, Your Honor.

22            THE COURT:  I -- you need a microphone, please.

23            MR. NUÑEZ:  Good morning, Your Honor, Rodolfo Nuñez on

24   behalf of United States Quantum Leap LLC and Fulvio Fabiani,

25   third-party defendants.
```

```
 1              MR. ARAN:  Good morning, Your Honor, Fernando Aran on
 2    behalf of third-party defendants for J.M. Products, Henry
 3    Johnson, and James Bass.
 4              THE COURT:  Thank you.  Good morning.
 5              MR. ARAN:  Good morning.
 6              THE COURT:  Okay.  Before we address the motion to
 7    strike the second amended affirmative defenses, I wanted to
 8    hear from perhaps the plaintiff whether all of the parties in
 9    this action have been served.
10              MR. ANNESSER:  Your Honor, actually I am going to turn
11    this to Mr. Pace.
12              THE COURT:  Mr. Pace, all right.
13              MR. ANNESSER:  The original parties in the action have
14    all been served.  The third-party defendants have not.
15              THE COURT:  All right.  Mr. Pace.
16              MR. PACE:  That's correct, Your Honor.  There is one
17    defendant who is -- one third-party defendant yet to be served.
18    He is in Italy.  His name is Penon.  So all the third-party
19    defendants -- I'm sorry.
20              THE COURT:  His name is Fabio Penon.
21              MR. PACE:  Fabio Penon.  The defendants have been
22    served or have waived service.  All of the third parties have
23    been served or waived service, with the exception of Fabio
24    Penon.  We are doing The Hague Convention process for him right
25    now.  And in all honesty, partially our mistake.  The Hague
```

1    website said we didn't have to translate something that we then

2    found out in Italy we have to translate.  So we are getting the

3    complaints and the counterclaims and third-party claims,

4    everything translated into Italian in order to serve it.  So

5    we're expecting to be able to serve it, we think -- or I'm

6    sorry -- file it with the court in Italy next week.

7         THE COURT:  And that means we are going to have

8    Mr. Penon served when, Mr. Pace?

9         MR. PACE:  It is up to the Italian courts at that

10   point, unfortunately.  They won't give us a particular time.  I

11   am certainly hoping he will get served within the month, but I

12   have to be honest, Your Honor, my experience is not consistent

13   with that.

14        THE COURT:  Right.  And neither is mine.  And that

15   makes a problem for the case and for your ability to bring

16   Mr. Penon into the case.

17        MR. PACE:  We understand that, Your Honor, and I guess

18   our request at this point would be to see how it progresses or

19   to see how it proceeds.  I mean I -- we would like the case

20   otherwise to proceed.  If Mr. Penon is served relatively

21   quickly, that's great.  If Mr. Penon is not, then we are going

22   to have to address the issue of what to do with the claims

23   against Mr. Penon.

24        THE COURT:  You can bring those separately?

25        MR. PACE:  We could.  I mean, he is part of -- there

1    is a common claim that he is part of.  And, you know, the

2    parties -- the plaintiffs have already sent or attempted to

3    send a subpoena to him.  I don't know how they're going to do

4    that, since he's in Italy.  But I think people recognize that

5    he's relevant to the case.  So I wish I had a better solution

6    for right now, but I guess I would ask for the Court to give us

7    at least a little bit of time to see how it plays out.  If, for

8    example, it is sitting in the court system over in Italy for a

9    month and nothing at all has happened, I am going to have to

10   deal the issue of trying to figure out do I -- can I carve him

11   out of the suit, sue him separately, dismiss him -- I just

12   don't have an answer for you right now, Your Honor.

13           THE COURT:  Well, Mr. Annesser, this affects your

14   clients' claims that you are desirous of bringing to a

15   resolution.

16           MR. ANNESSER:  Yes, Your Honor, we do not wish to

17   delay this any further than it has to be.  As Mr. Pace pointed

18   out, our subpoena may or may not effectively reach him.  We are

19   going to have to go through the same process, I'm sure, that he

20   has to go through unless we can get Mr. Penon to agree to

21   accept service, which he has not yet.  We personally believe

22   they should serve him or carve it out into a separate case.  If

23   they do carve it out into a separate case and then later can

24   consolidate it back in --

25           THE COURT:  We have the scheduling order in place,

```
 1    don't we?
 2              MR. ANNESSER:  Yes, we do, Your Honor.  But that
 3    was --
 4              THE COURT:  What's our trial -- what's our trial date?
 5              MR. ANNESSER:  Your Honor, we were set, I believe,
 6    for -- I do not have it in front of me -- I believe it was July
 7    of 2017.
 8              THE COURT:  All right.
 9              MR. ANNESSER:  But that was prior to the addition of
10    the third-party defendants.  And actually the other parties as
11    well as the plaintiffs have been working together to propose to
12    the Court a joint proposed scheduling order that takes into
13    account the late service of the third-party defendants and
14    allows us adequate time to conclude discovery on all of the
15    issues.
16              THE COURT:  And what is that?
17              MR. ANNESSER:  It has not been finalized yet, although
18    I believe we are substantially finished with it, and we
19    hopefully can propose that to the Court within a couple days.
20              THE COURT:  What trial date are you envisioning?
21              MR. ANNESSER:  We were -- Chris, do you recall?  I
22    don't have it in front of me.
23              MR. PACE:  Your Honor, if I recall correctly, it is
24    essentially about a -- somewhere in a three- to four-month
25    extension.  I think it was still by the end of 2017, if I
```

```
1    remember correctly, but I don't actually have our notes from

2    our negotiation, but we did actually have an in-person meeting

3    with everybody to come up with a new schedule to propose to the

4    Court.

5              THE COURT:  What discovery has taken place to date?

6              MR. ANNESSER:  Your Honor, there has been written

7    discovery between the plaintiffs and the defendants at this

8    point in time.  There has been some third-party discovery

9    propounded -- I'm sorry -- nonparty discovery propounded by the

10   defendants.  But we are at a very early stage, and we are in

11   the process of discussing deposition dates for at least one

12   deponent at this point in time, but we'll likely be discussing

13   numerous other deponents shortly.

14             THE COURT:  Well, until I'm able to pull up our

15   docketing, let's move on to the motion to strike.

16             What's your discovery cutoff date, Mr. Annesser?

17             MR. ANNESSER:  Currently, Your Honor, I believe the

18   discovery cutoff was in February or March of 2017.  And I

19   apologize, Your Honor, I did not bring the scheduling order

20   with me.

21             THE COURT:  All right.  Well, let's address, if we

22   would, then, the motion to strike.

23             MR. ANNESSER:  Yes, Your Honor, would you prefer that

24   I address the court from the podium or from the bench?

25             THE COURT:  Wherever you are more comfortable.  And
```

```
1    let's just go defense by defense as opposed to all of them.  So
2    you might want to stay there, if you'd like, and I will be
3    hearing from defense counsel as to each one.
4            MR. ANNESSER:  Thank you, Your Honor.  As to the first
5    affirmative defense that was asserted, it was a general defense
6    of standing.  There's actually two parts to the defense that I
7    would like to individually address.
8            The first one is there is a claim that when Leonardo
9    Corporation New Hampshire merged into the Leonardo Corporation
10   Florida, that that merger was in violation of a
11   nonassignability transfer provision within the license
12   agreement that is at the heart of this case.
13           The defendants rely on a case Cincom Systems v.
14   Novelis Corp. out of 6th Circuit court, which was interpreting
15   Ohio law, similar to Florida law although not exact, on the
16   issue.  And in that court, they found that a merger was a
17   transfer that would in fact violate that provision within a
18   contract, or actually in that case, it was a nonassignability
19   provision relating to -- to the transfer of a license for
20   intellectual property, which is not dissimilar to our case.
21           But in Florida law -- and I have cited a couple of
22   cases in our brief -- a merger in Florida is seen -- and I'd
23   like to quote -- "is like the uniting of two or more rivers;
24   neither stream is annihilated but all continue in existence."
25   There is law that says if you want to specifically exclude
```

```
 1    mergers, you can state that.  You can say even a merger is a

 2    violation of this provision.

 3              They did not do that here.

 4              But going just beyond that -- and again that's Florida

 5    law.  That's Celotex Corp. v. Pickett, 490 So.2d 35 --

 6              THE COURT:  I'm sorry.  Did you gentleman give my

 7    court reporter the case cites?  I think, if you look at the

 8    notice on the tables, it tells you if you are going to cite any

 9    case law, to please give those --

10              MR. ANNESSER:  I apologize, Your Honor, I will retract

11    that.  It is within the brief, and so I will retract the case

12    citation.  In essence --

13              THE COURT:  I'm sorry.  I don't understand that.

14              MR. ANNESSER:  I did not provide it to the court

15    reporter, and the case that I am citing to is within the brief.

16              THE COURT:  I know.  Do you want me to spell them out

17    as you say them?  Or how do you want her to get the spellings?

18              MR. ANNESSER:  Your Honor, I don't believe she even

19    needs to have it.  I can argue without the direct citation

20    because I believe it is set forth adequately within our brief.

21              THE COURT:  All right.

22              MR. ANNESSER:  And so this is directly from the

23    argument in the brief.

24              The issue in Florida is there is no extinguishment.

25    The independent existence may cease, but it still exists as
```

1   part of a larger corporation, a merged corporation, and

2   therefore there is no transfer.  In fact, the model business

3   code, which is also cited in the brief, likewise provides that

4   a merger is not a transfer and it is not an assignment.

5          Florida's law -- Florida model business corporation

6   act is based upon the model business code, adopted almost word

7   for word with a very minor change which we don't believe

8   affects the commentary at all.

9          But looking further beyond the competing law as to

10  whether a merger is, in fact, a transfer in assignment, we'd

11  have to ask ourselves in this particular case, unlike in the

12  cases cited by defendants, we have a merger of the licensor,

13  not the licensee.  So what they're advocating is is that

14  because the licensor merged, they can no longer enforce a

15  contract that they were a party to.  The company that merged

16  into Leonardo Florida can no longer enforce that contract, yet

17  at the same time maintaining the position that they can sue

18  Leonardo Florida -- and they have -- under the same contract.

19  It is an inequitable result that does not have any support in

20  logic.

21         Moreover, the assignment in this particular case

22  occurred after all of the obligations under the contract by

23  Leonardo New Hampshire or Leonardo Florida had been completed.

24  And as cited in the brief, Florida law provides that you can

25  assign a claim at any time irrespective of an antiassignment or

antitransfer provision within a contract.  So if a claim

arises, money is owed or otherwise, you can assign that claim.

In this case, our merger, even if it were seen as a transfer or

an assignment, occurred after the completion of all of the

obligations of the contract, and therefore would be

permissible.

          Lastly, under this portion of the argument on

standing, the defendants are required to accept all of the

allegations in the complaint as true.  We have alleged that we

have standing and that we have the -- that we have merged into

the company and that we are the party at interest.  By denying

that, they have, in essence, created a denial as opposed to an

affirmative defense, which has to accept as true and then offer

a justification, excuse or avoidance of the claims in the

complaint.

          Now, the second aspect to the standing argument that

they raise is that Dr. Rossi is not the beneficiary of the

provision that we claimed a breach of.  For instance, the

contract was entered into by Dr. Rossi and Leonardo

Corporation.  The payment, which we claim has not been made, of

$89 million was to be directed to Leonardo Corporation.  On

that ground alone, defendants argue and assert as a defense

that we therefore don't have standing on behalf of Dr. Rossi to

bring our claim.

          The 11th Circuit has held that -- and this is within

```
 1    our brief, Your Honor -- the 11th Circuit has held that a party
 2    to a contract for the benefit of another party is the party in
 3    interest and is not divested of standing as a result of the
 4    benefit being -- I'm sorry -- being inferred upon another
 5    party.
 6              THE COURT:  Why are you making an issue out of this
 7    defense, because quite frankly if it remains as an affirmative
 8    defense, the burden is on the defendants to prove it at trial.
 9              MR. ANNESSER:  Your Honor, I agree.
10              THE COURT:  Why do you care?
11              MR. ANNESSER:  I agree, and that actually could be
12    said of a number of these defenses.  This is a very complicated
13    case.  It's going to be complicated going along.  And I think
14    it's in the Court's best interests as well as my client's best
15    interests --
16              THE COURT:  Well, courts never like motions to strike
17    affirmative defenses.  I don't know if you knew, but the case
18    law is pretty plain about that aspect of it.  They're generally
19    disfavored.  But this is one where there's no downside to you.
20    Let them say you have no standing, let them prove it, right?
21              MR. ANNESSER:  Your Honor, yes, that is the
22    alternative, although it is yet another issue that must be
23    addressed as the case proceeds.
24              THE COURT:  How?  How?  At trial, it would be the
25    defendant's burden to get before that jury and say you have no
```

1    standing and you have no claim against them.  It would be their

2    burden of proof.

3          MR. ANNESSER:  Yes, Your Honor.  And, of course, if

4    they come up with any type of proof whatsoever, whether we

5    believe it's adequate or not, we do have to respond to that.

6    And that again clouds the issue.  And frankly, Your Honor, we

7    believe a number of the defenses and number of the statements,

8    which we'll get to further in this motion to strike, have been

9    inserted just to cloud the issue in this case.  It is a fairly

10    basic case at the heart, but with the affirmative defenses, it

11    clouds the issues that are truly at the matter of the dispute

12    as opposed to peripheral.

13          THE COURT:  I mean, you have no concern that you have

14    standing.  You know you do, right?

15          MR. ANNESSER:  Yes, Your Honor.  Yes, Your Honor,

16    we --

17          THE COURT:  Much ado about nothing on this one,

18    wouldn't you say?

19          MR. ANNESSER:  Your Honor, again, it's do we deal it

20    with now?  Pay me now or pay me later.  And we just -- it's

21    been my experience that it's easier to get these things when

22    there is no basis as a matter of law, for the defense to clear

23    them out early, and so we can limit the labors that are

24    required later.

25          THE COURT:  All right.

```
1              Mr. Pace, do you want to have this burden of showing
2     these plaintiffs don't have standing?
3              MR. PACE:  Certainly.
4              THE COURT:  And what is the law that applies to this
5     case?
6              MR. PACE:  Florida.
7              THE COURT:  Florida.
8              MR. PACE:  This is going to end up being Florida law.
9     I mean, there is some gimmicks here when it comes to it's a New
10    Hampshire corporation into a Florida corporation.
11             But our point is -- and some of these things
12    admittedly blend between affirmative defense and negating,
13    but --
14             THE COURT:  Well, let's be clear, do you want to
15    simply negate or do you want to take the burden on?
16             MR. PACE:  We would have the burden on standing,
17    Your Honor.  I'm not trying to waiver on that.  There's some
18    other ones that will come --
19             THE COURT:  I know, and I saw that.  And you asked me
20    to treat them as denials or what have and leave them there, but
21    it really changes your burden of proof.
22             MR. PACE:  I agree, Your Honor.  And again when we get
23    to the next one and talk about failure to state a claim --
24             THE COURT:  Well, that's not an affirmative defense.
25             MR. PACE:  Right.  It's a -- averment is a denial --
```

1    THE COURT:  I think I already addressed that, didn't

2    I, on the 12(b)(6) motion?

3    MR. PACE:  You did.  You did.  We've raised it.  We've

4    preserved it.  We are not asking the Court to rule on a motion

5    to dismiss again.  But let me just, if I can, just on this one

6    on standing, because I do want to explain our basis for it,

7    even though I agree, I believe in the posture we are in, it's

8    really not necessarily the occasion for the Court to, you know,

9    rule on the ultimate merits.

10    But the point is the case law is -- we feel the case

11    law is clear that when you've got a contract that bars any

12    assignment of transfer, including involuntarily and including

13    by operation of law of this contract, that you can't just

14    assign it to another -- you can't just transfer it to another

15    corporation.  You can't move corporations.  And they can say

16    all they want about licensor and licensee.

17    But if I can give you one concrete example of why

18    there's an issue here, my client -- one of my clients -- two of

19    my clients actually, but let's just say one of them, has the

20    control over any distribution or any disclosure of certain

21    information, certain intellectual property.  One thing they

22    can't prevent is they can't prevent the Leonardo from

23    disclosing it amongst itself.  Right?  In other words, they can

24    say, Leonardo, you can't disclose it to any outsider, but you

25    can keep internally.  Leonardo merges into IBM.  Under their

 1   theory, well, that's fine.  IBM now can use all that

 2   information internally.  Well, no, wait a second.  We have a

 3   contract provision that says, little company Leonardo, you

 4   can't tell this information to anybody else.  You know, and now

 5   all of a sudden you can merge into somebody else.

 6          So we are in the same situation as the case that I've

 7   cited.  I agree, in the case I cited one is a licensor versus a

 8   licensee.  But they talk about the model business code.

 9   Florida, there's a provision in the model code that refers to

10   contracts.  Florida cut that out.  When he says it's a minor

11   change, that's a huge change.  Under the Model Business

12   Corporation Act, it says contracts are vested in the new

13   company without any impairment.  Florida says, we don't want

14   that language.  They consciously dropped it.  They had to

15   consciously drop it, and they just are referring to transfer of

16   title.

17          So I think the law is actually relatively clear on

18   this, but again I also don't know if this is necessarily the

19   occasion that the Court has to tackle the issue.  Their

20   reference to obligations under the contract, just to be clear,

21   the contract is continuing.  They have continuing obligation of

22   the contract.  We disagree about that.  They think it's over.

23   We don't.  But, you know, it's not so clear that the

24   obligations under the contract are not continuing.  There is a

25   license in perpetuity -- well, maybe not in -- yeah, to some --

1    in some parts in perpetuity; in other parts for the duration of

2    a patent, assuming we made all the payments.  We feel we made

3    all the payments.  They feel we didn't make all the payments.

4    But that's a dispute the Court will handle.

5              As to Dr. -- as to Rossi versus Leonardo on

6    enforcement -- and we have cited our support for the issue --

7    the payment, they don't dispute it, the payment was to be made

8    to Leonardo Corporation.  That somebody is the shareholder of

9    Leonard Corporation or the sole owner of Leonardo Corporation

10   doesn't let them sue on behalf of Leonard Corporation.  That

11   there are other obligations in the contract that may flow to

12   Rossi does not mean that he gets to enforce obligations that

13   flow to Leonardo.  That's the case we cited for the Court for

14   the proposition that -- and mainly this does not arise often --

15   but there are situations where there are multiparty contracts,

16   and if there is an obligation flowing to one particular party,

17   that party's the one who's supposed to enforce that.  That's

18   the example that we've provided to the Court.

19             So do I feel on the standing issues we have the

20   burden?  We do have the burden.  I would imagine these would

21   never make it to trial because they are probably going to be

22   decided on summary judgment one way or the other.

23             THE COURT:  Unless the facts are disputed.

24             MR. PACE:  Unless the facts are in dispute.  And then

25   there'll be -- you know, then there'll end up being issues for

```
 1    trial.
 2              THE COURT:  Right.
 3              MR. PACE:  But we don't, you know -- that's -- we
 4    don't have a concern about that.  Or we recognize that.  Maybe
 5    that's a better way of phrasing it.
 6              THE COURT:  It's certainly.  I mean the standard here
 7    is under Rule 12(f):  Is the defense impertinent, scandalous,
 8    immaterial, redundant?
 9              I don't see that it meets those descriptions on this
10    one affirmative defense, Mr. Annesser.
11              So let's move on to the next.
12              MR. ANNESSER:  Your Honor, the second affirmative
13    defense which, I believe, the defendants have admitted is not a
14    proper affirmative defense, yet they ask the Court to treat it
15    as a denial, certainly we acknowledge that that is the proper
16    procedure where an affirmative defense fails to actually state
17    an affirmative defense, it may be treated as a denial.
18              But in this particular case with this defense, I am
19    not quite sure how it could be treated as a denial --
20              THE COURT:  Failure to state a claim?
21              MR. ANNESSER:  Yes, Your Honor.
22              THE COURT:  Let me direct my question to Mr. Pace, if
23    I could.  I have already found the plaintiffs stated a claim,
24    so I would agree that this is redundant, immaterial, and
25    impertinent.
```

```
 1              MR. PACE:  Well, Your Honor, the case law that

 2   addresses it.

 3              THE COURT:  Um-hmm.

 4              MR. PACE:  It generally says the response, if it is

 5   really a negative averment, is not to strike it but just to

 6   treat it as a negative averment.

 7              THE COURT:  But I will be striking some other ones, so

 8   let's clean up your answer and let's remove that.

 9              MR. PACE:  Again, as long as -- from my standpoint, as

10   long as I haven't waived any rights to this position --

11              THE COURT:  I don't know how you waive it when you

12   filed a 12(b)(6) motion.

13              MR. PACE:  Your Honor, I'm not necessarily

14   disagreeing, but --

15              THE COURT:  Okay.  So that one is stricken.  Next.

16              MR. ANNESSER:  Thank you, Your Honor.

17              The third affirmative defense, which is actually a

18   multiple-issue defense, they raise estoppel, waiver, laches and

19   I quote, other applicable equitable defenses without any

20   description as to what those defenses are.

21              Specifically, Florida law provides that on equitable

22   defenses such as waiver and estoppel and laches, to state the

23   defense, the party must state the elements of the defense and

24   allege facts to support those elements.  They have failed to do

25   so, particularly in relation to other applicable equitable
```

```
 1    defenses, which they fail to even identify.  That doesn't even
 2    reach the standard of bare-bones pleading requirement much less
 3    adequate pleadings as required under the rules.
 4              THE COURT:  Okay.  Thank you.
 5              Mr. Pace.
 6              MR. PACE:  Your Honor, I think this is quite to the
 7    contrary.  We have pled -- if you look at these affirmative
 8    defenses, certainly the context in which I know historically
 9    people have thought of these are one-line affirmative defenses.
10    They start, Your Honor, if you look at our answer on Page 21,
11    this one that they are addressing right now is they are on
12    Page 22.  There is an explanation as to each -- the basis for
13    each of the affirmative defenses.  This is then a citation to
14    portions of the counterclaims and third-party claims that
15    provide additional context.
16              Given that the only issue here and the standard here
17    is fair notice, we believe that this is certainly more than
18    fair notice.  In fact, I -- I have never seen an answer in
19    affirmative defenses -- and Your Honor may very well have and
20    will tell me to the contrary -- but that have this kind of
21    detail.  And --
22              THE COURT:  I would agree -- I would agree, though,
23    with the plaintiff.  You can't just say, And other applicable
24    and equitable doctrines.  I don't -- I can only wonder what
25    they might be, as would plaintiffs.  So I would agree to
```

1    striking that part of your third defense.

2           MR. PACE:  That's fine, Your Honor, as long as we have

3    the estoppel, waiver, and laches, and then in all honesty, that

4    is part of the "and other inequitable defenses" tends to be one

5    of those things where you find out as discovery goes on, so we

6    would have to come back to Your Honor and say we've discovered

7    a new affirmative defense that we didn't have a basis

8    originally to provide the detail on so --

9           THE COURT:  And that we couldn't raise before the

10   deadline for amending pleadings because we were really diligent

11   in pursuing this in discovery and, nonetheless, did not

12   discover it.

13          MR. PACE:  I agree, Your Honor.

14          THE COURT:  All right.  So that part is stricken,

15   though.

16          MR. PACE:  So just that part is under equitable.

17          THE COURT:  Correct.  Yes.  Next.

18          MR. ANNESSER:  Okay.  Your Honor, with respect to --

19   and I believe we can address two of them together -- the fourth

20   and sixth affirmative defenses, which are for unclean hands and

21   unlawful actions, they're all predicated upon allegations

22   within the counterclaim and reference to the counterclaim that

23   allege fraud, fraud in the -- I'm sorry -- yeah, fraud in the

24   inducement as to the term sheet and other fraudulent actions on

25   behalf of Dr. Rossi, the Leonardo Corporation, the USQL,

1    Mr. Fabio Penon, and the other third-party defendants.  In

2    fact, with respect to those allegations, I believe they cite to

3    the entirety of their second amended answers and affirmative

4    defenses.  This is a shotgun pleading that says, okay, you find

5    within these allegations which ones may apply.

6            But moreover, because they are based on fraud, this

7    Court has held that where the allegations on a FDUTPA claim are

8    based on allegations of fraudulent acts, that it has to meet

9    the Rule 9 pleading requirements, the heightened standard of

10   pleading under Rule 9, as opposed to under Rule 8.

11   Specifically, in this case, they allege that there was a

12   scheme -- and that is the word that they use -- among the

13   third-party defendants and the plaintiffs to defraud them under

14   the license agreement and the term sheet.  Those allegations of

15   fraud, which are addressed in our motion to dismiss in more

16   detail, we feel are -- well, they lack the specificity required

17   under 9(b).  And so by simply stating "we rely on the entire

18   second amended affirmative answer, affirmative defenses, and

19   counterclaims and third-party claims," likewise this defense

20   lacks the requisite specificity required under Rule 9.

21           THE COURT:  Thank you.

22           Mr. Pace.

23           MR. PACE:  Thank you, Your Honor.  I think he grouped

24   the fourth and the sixth?

25           THE COURT:  4 and 6, correct.

```
 1          MR. PACE:  Because the sixth affirmative defense only
 2    refers to nine paragraphs, very specific.  The fourth
 3    affirmative defense refers to some particular paragraphs in the
 4    counterclaim and third-party claim.  Your Honor, there is very
 5    detailed counterclaims and third-party claims here.  They're
 6    very clear.  They talk about very specific actions.  They cite
 7    e-mail documents, they cite memos, they give particular dates,
 8    they give particular people who were involved.  That we cite
 9    multiple paragraphs to give context to it.  This is not one of
10    those things that we are abstractly saying go off to the
11    library and try to find something.  It is within the very same
12    document.
13          Your Honor's aware -- I mean, this is a case that's
14    only three or four months old from Your Honor recognizing that
15    9(b) does not apply to FDUTPA claims and that FDUTPA claims can
16    involve not just fraud, but deception, manipulation, unfair
17    practices.  And you can use the word scheme in that context, as
18    we, I think, appropriately have.  It is a very involved scheme.
19    It takes a number of paragraphs to plead.
20          I think Mr. Annesser is confusing what's a shotgun
21    pleading with a detailed pleading.  A shotgun pleading is I'm
22    going to plead a few facts, and then out of that, I'm going to
23    say there's RICO, antitrust, securities, ERISA violations, etc.
24    That's a shotgun pleading.
25          When you have a pleading that has a lot of detail and
```

```
1    talks about particular meetings and quotes from e-mails and

2    references to context of those meetings and gives -- you know,

3    brings together all the multiple parties and multiple

4    locations, that is not a shotgun pleading.  That's a detailed

5    pleading.  That's what we have here.

6            Now, could we literally reprint those paragraphs in

7    the affirmative defenses?  I guess in theory we could.  I

8    just -- that seems to me to be a little bit ridiculous.  And in

9    all fairness, Your Honor, in the terms of structuring this,

10   I'll just be honest, you know, we put it -- we kind of drafted

11   the counterclaims and third-party claims first and then worked

12   on the affirmative defenses and so didn't seem to make a whole

13   lot of sense.  They raised originally the issue of -- because I

14   have to admit in our first version of this, they were the

15   one-sentence affirmative defenses; I'll acknowledge that.  And

16   they said, you know, that's not good enough.  And I went -- we

17   went back, and we changed them all.  And this is an example of

18   changing them.

19           THE COURT:  I agree that these are good enough, and if

20   and when on the motion to dismiss I require more particularized

21   pleading, then it would also similarly address any concerns as

22   to these affirmative defenses.  But I see no problem with

23   directing the plaintiffs to those particular paragraphs that

24   flesh out the factual bases for these defenses.  This is --

25   this is certainly, in my mind, satisfying *Iqbal* and *Twombly*.
```

1  Otherwise, as Mr. Pace said, he is going to have to basically

2  repeat and regurgitate everything that he's incorporating by

3  reference, so that the motion to strike these two is denied.

4           I think you also wanted to address the seventh

5  fraudulent representation, Mr. Annesser?

6           MR. ANNESSER:  Yes, Your Honor.  Certainly, there can

7  be no argument whatsoever as to whether fraudulent

8  misrepresentation falls under the heightened pleading

9  requirements.  In this particular case they have failed yet

10  again to reach those heightened pleading requirements in the

11  allegations.

12          Under Florida law, to reach that -- Your Honor, I'm

13  sorry -- under the federal rules, to reach that heightened

14  pleading requirement, they have to have specific alleged

15  fraudulent statements, specifically state who made those

16  statements, they have to state the individuals -- I'm sorry --

17  what the individual or entity obtained as a consequence of the

18  fraud.  That's not set forth either in the counterclaims and

19  third-party claims or within this particular affirmative

20  defense.

21          And to the extent that they relate to the entirety of

22  the counterclaim, again there is case law in Florida that makes

23  it very clear you can't leave a party -- it is not proper

24  notice to a party to leave them guessing as to which

25  allegations pertain to that defense and which ones don't.

1    There are allegations in the counterclaim of standing, of

2    venue, etc., and identifying the parties.  Certainly, those

3    don't give rise to a claim for fraudulent misrepresentation.

4            So we are entitled to know more specifically what they

5    are relying on and the individual statements that they are

6    relying upon.  And that's not set forth clearly.  There is

7    admittedly in the counterclaim, third-party claim, there is one

8    e-mail which is attributed to Dr. Rossi, but everything else is

9    identified as statements made by Dr. Rossi, Leonardo, USQL,

10   Henry Johnson, J.M., etc., grouped together as one.  And

11   certainly, they're not talking in unison or singing as a choir.

12   We are entitled generally to know individually what statements

13   were made by each defendant in that particular claim and when

14   those statements were made and the other requisite details

15   required under Rule 9.

16           THE COURT:  Thank you.

17           I will hear from defense.

18           MR. PACE:  It's ironic for him to raise this, only

19   because the complaint provides, quote, language that they say

20   was by defendants, and obviously defendants being corporations

21   and individuals could never have spoken at the same time.  So

22   they're literally applying a different standard than when he

23   advocated to this Court on the motion to dismiss.

24           And, in fact, even if the correct standard were

25   applied, we have satisfied it, even though their complaint did

1    not, because we do identify.  We have e-mail from Dr. Rossi.

2    We will have a meeting where it was -- I am saying Dr. Rossi,

3    Mr. Rossi.  We'll have a meeting where he will be in attendance

4    with one other person -- we've pled it with another defendant

5    here or -- I'm sorry -- a third-party defendant -- and we talk

6    about what the substance is that occurred at that meeting.  We

7    have got e-mails from him that provide the substance of what

8    those e-mails are.  I mean, look, it is not that hard to go

9    through in our counterclaims and third-party claims and find

10   the statements that are said to be false or fraudulent, because

11   there's a good indicator.  They use the word "false" or

12   "fraudulent."  They are in here.

13        Now, contextually, I still think it's appropriate,

14   I'll give, if I can, just as an example, there is a -- there

15   are allegations in the complaint about a company that was

16   created in Florida so that -- to provide an excuse for them to

17   move down -- for Mr. Rossi and Leonardo to move down here to

18   Florida and bring a plant, a piece of equipment that we bought

19   from them down here to operate in Florida and that the company

20   was not -- they -- it was pitched to us as a company that was

21   going to have a real manufacturing process, and, in fact, that

22   didn't occur.

23        Contextually, you should have all of that to

24   understand when we cite in Paragraph 71, here is a long e-mail

25   from Mr. Rossi that makes a number of statements, and then in

```
 1    Paragraphs 72 and 73, we say they are false.  I don't think
 2    there is any problem with including the prior paragraphs that
 3    say here is the setup for this whole -- you know, for these --
 4    this whole series of communications.  So that's pretty detailed
 5    and again much more detailed than the complaint ended up being,
 6    which said defendants say quote/unquote and it is impossible
 7    for five different parties to have said the exact same things
 8    in unison, which is literally what he just argued, as opposed
 9    to what we've pled, which actually does have a breakdown.
10              MR. ANNESSER:  Your Honor, if I may just briefly
11    respond.  One of the confusions comes -- and they are claiming
12    fraudulent misrepresentation, particularly in relation to the
13    term sheet.  To the extent they are claiming that Leonardo
14    Corporation New Hampshire is the proper party as opposed to
15    Leonardo Corporation Florida, that in itself requires a
16    distinguishment as to which one they are alleging.  If they are
17    going to continue on the path and say that we don't have rights
18    under the contract and that it was Leonardo Corporation New
19    Hampshire the entire time and that that should be separate and
20    distinct from us, then they need to state that because they are
21    currently suing Leonardo Corporation Florida for a term sheet
22    that they are claiming was entered into by Leonardo Corporation
23    New Hampshire.  So we are entitled to clarification at the bare
24    minimum as to who the statements were made by.
25              And the plaintiffs acknowledge the one e-mail that
```

1   does attribute to Dr. Rossi.  So as to Dr. Rossi, I do believe

2   the defense could be adequately pled.  But as to Leonardo, it

3   is not because it fails to identify even a single instance

4   where the Leonardo Corporation Florida made a statement by

5   itself, this is what the statement was, this is when it was

6   made, etc.  Again, the only example of an individual allegation

7   that has been made is that e-mail that we have referenced.

8           THE COURT:  The motion to strike is granted in part,

9   denied in part.  Please amend it so that you are clear as to

10  the actual fraudulent misrepresentation by the corporate

11  entity.

12          All right?  Next.

13          MR. PACE:  Your Honor, may I ask just one thing on

14  that, though, because -- just so we're clear -- and I can add

15  the allegation if it's needed in here, but Mr. Rossi owns both

16  Leonardo Corporation New Hampshire and Leonardo Corporation of

17  Florida.  To the extent he's dealing on behalf of Leonardo,

18  everything he does is on behalf of every corporation.  I mean,

19  I don't know how there's necessarily -- he's the one who's

20  created the confusion.  He created two companies called

21  Leonardo Corporation, one in New Hampshire and one in Florida.

22          THE COURT:  Right.

23          MR. PACE:  So everything that's said on behalf of

24  Leonard Corporation, he was talking about a contract Leonardo

25  Corporation was entering.  It's on behalf of Leonardo.  They

1    have created the confusion.

2         THE COURT:  Well, there are two Leonardos, though, so

3    you need to clarify.

4         MR. PACE:  You want me just to provide that?

5         THE COURT:  You need to clarify.  You need to amend to

6    clarify that.

7         MR. PACE:  Then we will provide that clarification.

8         THE COURT:  Okay.  Next.

9         MR. ANNESSER:  Your Honor, as to the ninth affirmative

10   defense, merger, integration and ratification, in essence, the

11   defense alleges that -- and the heart of this defense is that,

12   because we entered into the license agreement and the first

13   amendment thereto, then any claim for fraudulent inducement is

14   vitiated.  By entering into the agreement, we have merged every

15   prior conversation, representation, or otherwise and integrated

16   it into that agreement, and therefore, there could not be a

17   claim for fraudulent inducement.

18        They have cited to a 5th D.C.A. opinion that just came

19   out recently for the proposition that a merger clause negates a

20   cause of action for fraud or fraudulent inducement.  And

21   specifically, with respect to that opinion itself, the court

22   goes on -- had they read the rest of the opinion -- it states,

23   that is an oversimplification and they don't accept it.  In

24   fact, they go on to say that such a conclusion would be

25   superficial and in defiance of logic.  Clearly, if there were

1    statements made to induce a party into a contract -- and this

2    Court as well as all of the Florida courts have held that where

3    those statements have been made to induce a party into the

4    contract, that is not vitiated by a merger clause that says we

5    are merging all prior agreements into this one.

6           Now, on the other hand, had there been a nonreliance

7    clause, which we do not have in this case -- and that was what

8    the Court, the 5th D.C.A. addressed in the court cited by the

9    defendants, had there been a nonreliance clause saying the

10    parties did not rely on anything outside of this agreement,

11    that would be a different story, but we don't have that here.

12           THE COURT:  Thank you.

13           Defense.

14           MR. PACE:  First of all, I kind of agree with

15    Mr. Annesser's implication.  I have read the case, and I give

16    the Court the context for the case in my brief, which is what

17    the 5th D.C.A. said is we don't like this -- we don't think

18    this is necessarily the right rule -- I say that in my brief --

19    but this is the only way we can reconcile these two conflicting

20    Supreme Court -- Florida Supreme Court cases, one that he cites

21    and one that the court also cites.  You know, the court

22    identified the cases, said here's the rule, we think it is kind

23    of a weird rule, but this seems to be the rule.  So this --

24    this -- Billington is a statement in 2016 of what Florida law

25    is.

```
 1              But let me, if I can, just kind of talk about this in
 2     a slight bit more detail because I think it merits it.  The
 3     agreement states it contains the entire agreement of the
 4     parties and it supersedes any oral representation.  So it's not
 5     just a merger.  It is kind of a merger -- you know, a merger
 6     integration/nonreliance, so it really does kind of cover the
 7     gamut here.  The parties -- the allegations -- for example, one
 8     basis of fraudulent inducement is Cherokee said it was going to
 9     guarantee the payment.
10              Well, there is no guarantee by Cherokee.  This is a
11     long agreement.  This is a long document.  There's related
12     documents to it.  In total, there are a bunch of pages.  None
13     of them have Cherokee as a party.  None of them have Cherokee
14     as a guarantor.  That should negate any fraudulent inducement.
15     Otherwise, there is no ability in a written contract to prevent
16     these things.  This is one of the reasons you have these
17     provisions.
18              So now admit -- I admit in this context on a motion to
19     strike an affirmative defense, the Court doesn't need to reach
20     this issue.  It can simply say it's at least a defense.  But we
21     actually think it goes more than just being a defense.  We
22     think it's actually the right position on the law.
23              So -- but -- and again, that's -- we then make
24     reference to in terms of how this is pled, obviously the
25     affirmative defense clearly pleads here are the contract
```

1    provisions, here is how they apply.  That's what I am

2    explaining to the Court now.

3              Our view is and has always been, now, whether you say

4    this is a matter of negating their claim or an affirmative

5    defense, this is an example of one where I would say there is

6    ambiguity.  If your -- you can say statements in the contract

7    expressly contradict what you are basing your fraudulent

8    inducement claim on -- maybe that's negative.  When you say I

9    am relying on a merger clause, integration clause, nonreliance

10   clause, maybe that becomes an affirmative defense.  So there is

11   some ambiguity there, I will concede.

12             But regardless of which way you go, we think that we

13   prevail on the underlying issue.

14             THE COURT:  I will not strike this defense.  I think

15   there is a slim chance of prevailing on it, but that doesn't

16   mean it can't be there and that it's not supported at least by

17   some law as cited by defense counsel.

18             The next?

19             MR. ANNESSER:  Your Honor, defendants' tenth

20   affirmative defense is speculative damages, and they state no

21   factual support or basis for the damages being speculative.

22   They do raise and they have raised in a motion that we have not

23   provided enough information to allow them to determine whether

24   they're speculative or not, I believe was their argument.  At

25   the end of the day, until we specify -- which we have not been

```
 1    required to do yet -- the specific elements of our damages, I
 2    believe it's premature and there is no foundation to allege
 3    that our damages are speculative and therefore is improper at
 4    this time.
 5              THE COURT:  Defense.
 6              MR. PACE:  Your Honor, the complaint -- this is
 7    directed at their noncontract claims.  We are clear that that's
 8    what we are talking about.  The complaint identifies no
 9    damages.  The only damages they identify are on the contract
10    claim.  The Court recognized that in the motion to dismiss
11    order when we made this as a point, they can't identify any
12    damages, and the Court concluded, you know, that they have not
13    identified any separate damages, but it's possible discovery
14    will reveal separate damages for plaintiffs' fraud claim, and
15    you're allowing them discovery as a consequence.  I understand
16    that.  But we should be entitled to raise a defense.  We can't
17    figure out what their damages could be.  They haven't figured
18    them out.
19              THE COURT:  It is not a pleading defect, though.  It
20    is not a defect in the pleading.  And you can certainly raise
21    it at the appropriate time, a motion *in limine*, motion for
22    summary judgment, any other way.  But that -- this is not
23    proper.  Right now, I have given them, as you say, the ability
24    to pursue this.  They are going to do it.  And if they can't
25    prove up damages, you'll have that discussion at the right
```

1  time, but it is not to be an affirmative defense.

2          MR. PACE:  Your Honor, as long as we haven't waived

3  it --

4          THE COURT:  You don't.

5          MR. PACE:  -- we have no problem with it.  We just --

6          THE COURT:  You never -- you never waive that a party

7  doesn't have sufficient evidence of damages.  How would you

8  waive that?

9          MR. PACE:  Well, actually, Your Honor, it's a little

10  bit trickier, right, because when it comes to speculative

11  damages, it is not that you don't have damages.  Think of the

12  new business, because we are dealing a little bit with a new

13  business issue, where the law will say there is limitations on

14  damages a new business can get because it is too speculative.

15  I can tell you what would happen mostly likely with the next

16  McDonald's franchise at a location because I've got all these

17  other McDonald's franchises to test it on.  When Chris Pace

18  opens up the Chris Pace Restaurant, who knows?  Would you have

19  succeeded?  Would you not?  And you want to -- I want to claim

20  I would have made $20 million a year, I would have been prime

21  112.  Somebody else comes along and says, no, you would have

22  been a terrible restaurant.  So there is limits on speculative

23  damages that is different than no damages.

24          THE COURT:  Right.  That's a motion for partial

25  summary judgment.

1          MR. PACE:  Again, 7, as long as we are not waiving

2     that --

3          THE COURT:  You are not.

4          MR. PACE:  -- but that's why I'm saying there's some

5     ambiguity where the burden lies with that.  But as long as we

6     are not waiving it, we are perfectly happy to take it out of

7     the document.

8          THE COURT:  You are not.  You are not.  Next.

9          MR. ANNESSER:  Your Honor, as to the last portion that

10    we are seeking to strike, it's actually a portion of the

11    counterclaim claim, third-party claims that addresses eight

12    paragraphs' worth of what I can only refer to as defamation

13    against my client, claiming he has had tax problems in the past

14    and that he has failed to pay taxes, etc.  They have responded

15    by saying, well, it comes back into an antecedent breach

16    argument that they may have with respect to an affirmative

17    defense on our clients.

18          But it is improper for a number of reasons, one of

19    which is they fail to allege any facts that would be required

20    to prove up even an affirmative defense of antecedent breach,

21    much less the allegations that are contained with the

22    counterclaim, specifically with respect to damages.  They are

23    claiming that my client didn't pay taxes.  Well, in order for

24    that to be a defense or an independent claim, two things have

25    to happen.  One is there has to be damages to them.  You cannot

1    have a breach without damages.  And second of all, they have to

2    show that it was a material breach.

3         Certainly a provision in the contract that says he has

4    to pay all his taxes does not go to the heart of this case or

5    of this license agreement that was entered into by the parties.

6         A material breach goes to the basis of this license

7    agreement, and it is clear that the basis was the licensing of

8    intellectual property to a company within a certain geographic

9    territory, not whether they pay taxes or don't.  Even if the

10   allegations were true, they would not give rise to a defense,

11   because if Dr. Rossi did not pay his taxes, which is denied,

12   but notwithstanding, even if it was true, there is no way that

13   they could be harmed by that.

14        They had asserted this originally in their first

15   counterclaim and subsequently withdrew it because we pointed

16   out the fact that there was no basis.  There is no damages that

17   could affect them, and therefore they don't have a claim.  And

18   that equally applies to an affirmative defense.  Without

19   damages, they can't say, oh, well, he did something that was

20   against the contract, even though it didn't hurt us and we

21   should be able to get out of it.

22        THE COURT:  Defense.

23        MR. PACE:  To start, Your Honor, they have not

24   challenged and I don't think they can challenge, but they have

25   not challenged the fifth affirmative defense -- he acknowledged

1    that here -- which is the antecedent breach.  So that question

2    of is that a defense or not is not before the Court, doesn't

3    need to be addressed.  It is a defense, but in any event, what

4    we have pled is the basis for -- we -- and they are not

5    disputing this, you know, where they -- one part say you don't

6    plead enough, now he is complaining we plead too much.  It is

7    an antecedent breach to violate provisions of the contract.  We

8    specified those provisions in the contract.

9            The prior tax problems that Mr. Rossi had is the

10   reason -- is part of the reason for this being material.  It is

11   the reason they are being included in there.  They were not

12   only included in the license agreement.  They were -- they

13   actually -- the parties made them certify it a second time

14   later on before the -- or at the time the $10 million payment

15   that was made.  So it was always an issue because of the

16   concerns that the implications it could have.

17           You know, this is an agreement where they are buying

18   and licensing certain intellectual property, and there is

19   additional intellectual property that might or could be created

20   on an ongoing basis in the future.  So they have a direct

21   interest in it.  And again, to me, the materiality is shown by

22   the fact that there are certain provisions in this contract

23   that deal with this issue.  They brought it up repeatedly.  As

24   we said, there's a factual basis for it, which is the

25   historical issues, which I don't even go into in the complaint.

1   They're far more detailed than we referenced in the

2   counterclaim and third-party claim.  We're entitled to be able,

3   at the very least, to assert it as an affirmative defense, and

4   we have asserted it in here is an affirmative defense.

5          THE COURT:  This defense is not stricken.

6          MR. ANNESSER:  Your Honor, we were not -- we were not

7   addressing the defense itself.

8          THE COURT:  The actual paragraphs that you are

9   challenging and seeking to strike will not be ordered stricken.

10         MR. PACE:  Your Honor, can I raise one house -- almost

11  administrative matter.

12         THE COURT:  Yes.

13         MR. PACE:  There is a pending motion to dismiss by the

14  plaintiffs.  It does raise some of the same issues that the

15  third-party defendants raised.

16         THE COURT:  Yes.

17         MR. PACE:  Yesterday the Court struck the third-party

18  defendant motion to dismiss --

19         THE COURT:  Yes.

20         MR. PACE:  -- but not the plaintiff motion to dismiss

21  to require one motion, so I'm just a little bit -- I just

22  wanted to make sure we should still be moving forward with

23  responding to the plaintiffs' motion to dismiss and then there

24  is going to be another round of motions to dismiss with the

25  third-party defendants.  Or did you want all that consolidated?

1    because they do raise overlapping arguments.

2              THE COURT:  I know that they are.  But in terms of my

3    work on my end, as opposed to having six sets of briefs

4    addressing the third-party claims, I wanted to have three.  On

5    the plaintiffs' motion, it is going to be those three briefs

6    that we work on.

7              MR. PACE:  Perfect.

8              THE COURT:  And I don't like to have parties

9    incorporate arguments from your other papers, so please don't

10   do that, having me go back and forth and figure out what you

11   are incorporating or adopting from the other parties'

12   arguments.

13             MR. PACE:  Your Honor, from a timing standpoint,

14   because there's one affirmative defense -- you struck the

15   second, the struck certain words in the third and I think the

16   tenth, but there is one where you said we have to provide some

17   additional allegations.  May I ask, at least at this juncture,

18   to not have to amend the document quite yet because of the

19   motions to dismiss, if there is going to be -- I would rather

20   not --  I've already --

21             THE COURT:  I agree.  I agree.

22             MR. PACE:  -- do it twice.  Okay.  So I will hold off

23   doing that.

24             THE COURT:  Let's hold off on your amended affirmative

25   defenses until such time as I rule on the plaintiffs' motion to

```
 1   dismiss.

 2            Does that give you the clarity you are seeking?

 3            MR. PACE:  It will, because I actually imagine that

 4   once the Court gets the third-party motions to dismiss, they're

 5   very interrelated, so the rulings will probably be somewhat

 6   similar or --

 7            THE COURT:  I am trying to keep this case simple.  And

 8   you are all going to do your best to complicate it for me, so

 9   we're not going to do that, because complicating and papering

10   the file is just going to make it go a lot slower, and we're

11   not going to do that.  I apologize to you gentlemen over there

12   for having you do your work over again, but to the extent that

13   we have parties filing -- it might come at summary judgment

14   time as well where you're going to do it together and not in

15   separate submissions, because that really multiplies my work on

16   my end.

17            MR. PACE:  Understood.

18            THE COURT:  Okay.  Now let's go back to the schedule,

19   as soon as I am able to open up the docket.  Now, the case was

20   filed in April.

21            MR. PACE:  It was.

22            THE COURT:  And you were served shortly thereafter.

23            MR. PACE:  We accepted service, and so we had --

24            THE COURT:  Right.  So you had knowledge of this case

25   from May?
```

1          MR. PACE:  Yes.

2          THE COURT:  Right.

3          MR. PACE:  Yes.

4          THE COURT:  Okay.  So.

5          MR. PACE:  Since April -- I mean, Your Honor, since it

6  was filed.  I am not going to deny that.

7          THE COURT:  All right.  So we have the missing

8  defendant needing to be served through The Hague Convention,

9  and I am going to give you one month to do it and get him

10  served, failing which, he will be dismissed without prejudice.

11  You can serve him later and sue him later, but it is not going

12  to be him dictating how this case gets resolved.

13          MR. PACE:  May I ask this, only because -- remember,

14  this is a third-party defendant, it's not a defendant, so I

15  mean, if you -- from a timing standpoint of the case, it's not,

16  you know, April obviously isn't the relevant touchstone.  April

17  was when the plaintiffs filed their complaint.

18          THE COURT:  That's a relevant touchstone for you

19  knowing you needed to bring in a third party, and here we are

20  in October still talking about that third party.

21          MR. PACE:  But in fairness, Your Honor, we filed a

22  motion to dismiss -- to dismiss the complaint.  If the

23  complaint had been dismissed, we wouldn't have been suing these

24  other parties.

25          THE COURT:  But you could evaluate the merits of your

```
1   motion to dismiss and say, well, what are the chances?  And the

2   motion to dismiss and the pendency of it doesn't mean you can

3   sort of sit back and not do anything when you have a scheduling

4   order in place with deadlines and a trial date.

5           MR. PACE:  Well, yes, Your Honor, but we didn't have

6   to answer, and until we answered and filed our claims, we

7   couldn't serve anything on Penon.  I mean, prior to us filing

8   our counterclaims and third-party claims, we couldn't have

9   served anything on Penon.  What -- I am not sure what we were

10  supposed to do in April, May, and June as to this person in

11  Italy.  We knew he was in Italy.  I don't think we were

12  required to bring our claims while our motion to dismiss was

13  pending.

14          THE COURT:  When did you receive my order on the

15  motion?

16          MR. PACE:  Your Honor, as soon as it came down.  And

17  I'm -- Your Honor's ruling was in July.

18          THE COURT:  July 19.

19          MR. PACE:  July 19.

20          THE COURT:  July 19.

21          MR. PACE:  Wow, I got that right.

22          THE COURT:  It's almost three months later.

23          MR. PACE:  I agree, Your Honor.  I am not trying to

24  claim --  all I'm asking --

25          THE COURT:  So you've had the 90 days envisioned by
```

1   our rules for regular service.  This is service on an

2   international party.  And when I have international parties

3   clouding the issues and clouding our schedule, we can do one of

4   two things and you gentlemen can tell me what you want to do.

5   I administratively close the case until all of the parties are

6   before the Court and we can pursue a realistic discovery

7   schedule and look at a realistic time table for trial case.

8           And the case goes away from my end, and I don't sit

9   and have to handle these 12(b)(6) motions and other preliminary

10  matters.  We can do that, and you bring this gentleman and make

11  him a part of this case and take six months, take a year to do

12  so.  That's generally how long it takes under The Hague, in my

13  experience.  Or, as you said, he's a third-party defendant.

14  You can sue him separately and later, once you are obtaining

15  your service under The Hague.  So those are your options,

16  because I'm not going to just keep this case sort of hostage to

17  the gentleman in Italy.

18          MR. PACE:  I understand.  And I guess my request -- as

19  I understood what the Court was just saying initially and maybe

20  I overreacted to it, but was it -- I thought you were going to

21  enter an order today that within a month, the case was going to

22  be dismissed as to him.

23          THE COURT:  I'm giving you one additional month to

24  serve him.  On July 19, you knew at that point, the very

25  latest, you needed to get him served and made a party to this

1    case.  And here we are, as I said, three months later:  He is

2    not here, and everyone else is.

3          So you all speak to each other.  If you want to

4    administratively close the case -- I think the plaintiff also

5    wants to subpoena the gentleman and have him deposed.  You tell

6    me what your preference is, but it is not going to be piecemeal

7    continuances and tinkering with the scheduling order, which is

8    already in place and was in place before you impleaded him.

9          MR. PACE:  I understand Your Honor's position.  As I

10   said -- and we will do everything we can to serve Mr. Penon.

11   We will confer with the other parties.

12         I am not going to deny that ultimately what's very

13   likely going to happen is that we're going to end up having to

14   carve out the claims against Mr. Penon and do him separately.

15   All I'm saying is I'm asking that the Court not today order or

16   rule that 30 days from now, his claims are gone unless he's

17   appeared before the Court.  That's -- and I am sorry if I

18   misunderstood where the Court was going --

19         THE COURT:  Discovery closes February 27.  He is not

20   even here.  The scheduling order gives you a February 27

21   deadline on discovery, and this third-party defendant hasn't

22   even been served.

23         MR. PACE:  I understand, Your Honor.  The order was

24   set before there was any third-party claims or counterclaims.

25   It was based on the original complaint.  I think this is what

1    Mr. Annesser was saying.  The parties have actually all agreed

2    they're going to come to the Court and ask for some additional

3    time in light of there being counterclaims and third-party

4    claims.  But -- and if -- it is not a motion before the Court

5    right now.  The only other motion out there, I think, is our

6    motion for a protective order, but -- a confidentiality order.

7    But I understand what the Court is saying.  And again, we will

8    deal with the Penon issue, and within a month, we will --

9            THE COURT:  The third-party defendants have been a

10   part of this case since August 5th.  The order, the scheduling

11   order, was entered July 1st, and it gave you an August 11th

12   deadline to join parties.

13           MR. PACE:  And we did.

14           THE COURT:  And you did.  But it doesn't mean you join

15   the parties and serve them six months or a year later, which is

16   what we are looking at under The Hague Convention.

17           MR. PACE:  I agree, Your Honor.

18           THE COURT:  So, indeed, you will have one month to

19   serve this Italian gentleman and make him appear here.

20   Otherwise, he will be dismissed without prejudice, and you can

21   pursue your claims against him separately on a separate track

22   whenever you get service on him under The Hague Convention.

23           MR. PACE:  I understand -- again, I'm sorry and if I'm

24   being hyper technical, Your Honor just said serve and him

25   appear here.

```
 1              THE COURT:  Serve him.
 2         MR. PACE:  Okay.
 3              THE COURT:  Give me proof of service.
 4         MR. PACE:  That he has been served --
 5              THE COURT:  Served under The Hague Convention, which
 6    you knew you needed to do when you received my order denying
 7    your motion to dismiss, and that was back on July 19.
 8              MR. PACE:  Your Honor, I understand the Court's
 9    position.  We will move with absolute diligence, and I am
10    certainly not going to deny my experience is similar to the
11    Court's in terms of how long it's going to take, so I know
12    where this very likely will be heading, but we would like to
13    have the month to do our best.
14              THE COURT:  Right.  And if you all want to agree to
15    put this case on the back burner for six months, a year, or
16    longer while you pursue the gentleman under The Hague, you let
17    me know that.
18              MR. PACE:  I think we understand the alternatives,
19    Your Honor.  We appreciate that.
20              THE COURT:  All right.
21              MR. PACE:  And that's for the defense.  I don't
22    believe we had any other issues, Your Honor.
23              THE COURT:  Any issues from third-party defendants?
24         MR. NUÑEZ:  No, Your Honor.
25              MR. ARAN:  On the scheduling aspect, I will try to do
```

```
 1    everything possible, but I respectfully submit, we, as counsel,
 2    didn't learn of this until September, and I have got a
 3    February 27th discovery deadline.  I don't do well --
 4          THE COURT:  It sounds like you are going to be getting
 5    a continuance because, indeed, you just came into this case in
 6    September, notwithstanding the fact that the main parties have
 7    known about it since April, but I am looking at probably two
 8    additional months beyond that.
 9          MR. ARAN:  That would probably be enough.  That would
10    probably be enough.
11          THE COURT:  And given that all that has taken place is
12    paper discovery, not like depositions have been taken that you
13    missed out on, I think the third-party defendants can come up
14    to speed fairly quickly.
15          MR. ARAN:  Understood.  Thank you.
16          THE COURT:  Okay.  And I would ask that whatever
17    proposed, revised scheduling report you want to submit, to
18    please do that quickly so that we all know the dates that are
19    governing the case.
20          MR. PACE:  Well, Your Honor, we will have it to you
21    before the end of next week.
22          THE COURT:  Okay.  Anything else?
23          MR. PACE:  That's all, Your Honor.  Thank you very
24    much.
25          MR. ANNESSER:  Thank you, Your Honor.
```

1        THE COURT:  Thank you.  All right.  You all have a

2   good day.

3        MR. PACE:  Thank you.

4     (The proceedings concluded at 9:38 a.m.)

5

6                    C E R T I F I C A T E

7

8     I hereby certify that the foregoing is an

9   accurate transcription of the proceedings in the

10  above-entitled matter.

11

12  _12/5/16__

13     DATE        STEPHANIE A. McCARN, RPR
                   Official United States Court Reporter
14                 400 North Miami Avenue, Twelfth Floor
                   Miami, Florida 33128
15                 (305) 523-5518

16

17

18

19

20

21

22

23

24

25

**$**

**$10** [1] - 40:14
**$20** [1] - 37:20
**$89** [1] - 13:21

**1**

**1** [1] - 1:8
**112** [1] - 37:21
**11th** [3] - 13:25, 14:1, 48:11
**12(b)(6** [3] - 17:2, 21:12, 46:9
**12(f** [1] - 20:7
**12-2** [1] - 1:7
**12/5/16** [1] - 51:12
**14** [1] - 1:5
**19** [5] - 45:18, 45:19, 45:20, 46:24, 49:7
**1:16-cv-21199-CMA** [1] - 1:2
**1st** [1] - 48:11

**2**

**2016** [2] - 1:5, 33:24
**2017** [3] - 8:7, 8:25, 9:18
**21** [1] - 22:10
**22** [1] - 22:12
**255** [2] - 2:3, 2:7
**27** [2] - 47:19, 47:20
**27th** [1] - 50:3
**283** [1] - 1:14

**3**

**30** [1] - 47:16
**305** [8] - 1:15, 1:22, 1:22, 1:23, 2:4, 2:8, 2:12, 51:15
**3300** [1] - 1:21
**33128** [2] - 2:12, 51:14
**33131** [1] - 1:21
**33134** [3] - 1:15, 2:3, 2:7
**35** [1] - 11:5
**377-0086** [1] - 1:15

**4**

**4** [2] - 3:19, 24:25
**400** [2] - 2:11, 51:14
**490** [1] - 11:5

**5**

**51** [2] - 1:8, 3:19
**523-5518** [2] - 2:12,

51:15
**5th** [4] - 32:18, 33:8, 33:17, 48:10

**6**

**6** [1] - 24:25
**600** [1] - 1:20
**665-3400** [2] - 2:4, 2:8
**6th** [1] - 10:14

**7**

**7** [1] - 38:1
**71** [1] - 29:24
**714-9719** [1] - 1:22
**714-9730** [1] - 1:22
**714-9731** [1] - 1:23
**72** [1] - 30:1
**73** [1] - 30:1

**8**

**8** [1] - 24:10
**8:34** [2] - 1:6, 4:1

**9**

**9** [4] - 24:9, 24:10, 24:20, 28:15
**9(b** [1] - 25:15
**9(b)** [1] - 24:17
**90** [1] - 45:25
**9:38** [2] - 1:6, 51:4

**A**

**a.m** [4] - 1:6, 4:1, 51:4
**ability** [3] - 6:15, 34:15, 36:23
**able** [5] - 6:5, 9:14, 39:21, 41:2, 43:19
**above-entitled** [1] - 51:10
**absolute** [1] - 49:9
**abstractly** [1] - 25:10
**accept** [4] - 7:21, 13:8, 13:13, 32:23
**accepted** [1] - 43:23
**account** [1] - 8:13
**accurate** [1] - 51:9
**acknowledge** [3] - 20:15, 26:15, 30:25
**acknowledged** [1] - 39:25
**act** [1] - 12:6
**Act** [1] - 18:12
**action** [3] - 5:9, 5:13, 32:20
**actions** [3] - 23:21,

23:24, 25:6
**acts** [1] - 24:8
**actual** [2] - 31:10, 41:8
**add** [1] - 31:14
**addition** [1] - 8:9
**additional** [6] - 22:15, 40:19, 42:17, 46:23, 48:2, 50:8
**address** [8] - 5:6, 6:22, 9:21, 9:24, 10:7, 23:19, 26:21, 27:4
**addressed** [5] - 14:23, 17:1, 24:15, 33:8, 40:3
**addresses** [2] - 21:2, 38:11
**addressing** [3] - 22:11, 41:7, 42:4
**adequate** [3] - 8:14, 15:5, 22:3
**adequately** [2] - 11:20, 31:2
**administrative** [1] - 41:11
**administratively** [2] - 46:5, 47:4
**admit** [3] - 26:14, 34:18
**admitted** [1] - 20:13
**ADMITTED** [1] - 3:9
**admittedly** [2] - 16:12, 28:7
**ado** [1] - 15:17
**adopted** [1] - 12:6
**adopting** [1] - 42:11
**advocated** [1] - 28:23
**advocating** [1] - 12:13
**affect** [1] - 39:17
**affects** [2] - 7:13, 12:8
**agree** [18] - 7:20, 14:9, 14:11, 16:22, 17:7, 18:7, 20:24, 22:22, 22:25, 23:13, 26:19, 33:14, 42:21, 45:23, 48:17, 49:14
**agreed** [1] - 48:1
**agreement** [13] - 10:12, 24:14, 32:12, 32:14, 32:16, 33:10, 34:3, 34:11, 39:5, 39:7, 40:12, 40:17
**agreements** [1] - 33:5
**al** [2] - 1:4, 1:7
**Albright** [1] - 1:13
**ALL** [1] - 4:3
**allegation** [2] - 31:6, 31:15
**allegations** [15] - 13:9, 23:21, 24:2, 24:5,

23:24, 25:6
**acts** [1] - 24:8
24:7, 24:8, 24:14, 27:11, 27:25, 28:1, 29:15, 34:7, 38:21, 39:10, 42:17
**allege** [5] - 21:24, 23:23, 24:11, 36:2, 38:19
**alleged** [2] - 13:9, 27:14
**alleges** [1] - 32:11
**alleging** [1] - 30:16
**allow** [1] - 35:23
**allowing** [1] - 36:15
**allows** [1] - 8:14
**almost** [3] - 12:6, 41:10, 45:22
**alone** [1] - 13:22
**alternative** [1] - 14:22
**alternatives** [1] - 49:18
**ALTONAGA** [1] - 1:10
**ambiguity** [3] - 35:6, 35:11, 38:5
**amend** [3] - 31:9, 32:5, 42:18
**amended** [4] - 5:7, 24:3, 24:18, 42:24
**amending** [1] - 23:10
**amendment** [1] - 32:13
**AND** [3] - 1:9, 2:3, 2:7
**Andrea** [1] - 4:6
**ANDREA** [1] - 1:4
**Annesser** [8] - 4:5, 4:9, 7:13, 9:16, 20:10, 25:20, 27:5, 48:1
**ANNESSER** [57] - 1:12, 4:5, 4:10, 4:14, 5:10, 5:13, 7:16, 8:2, 8:5, 8:9, 8:17, 8:21, 9:6, 9:17, 9:23, 10:4, 11:10, 11:14, 11:18, 11:22, 14:9, 14:11, 14:21, 15:3, 15:15, 15:19, 20:12, 20:21, 21:16, 23:18, 27:6, 30:10, 32:9, 35:19, 38:9, 41:6, 50:25
**Annesser's** [1] - 33:15
**annihilated** [1] - 10:24
**answer** [6] - 7:12, 21:8, 22:10, 22:18, 24:18, 45:6
**answered** [1] - 45:6
**answers** [1] - 24:3
**antecedent** [4] - 38:15, 38:20, 40:1, 40:7
**antiassignment** [1] -

12:25
**antitransfer** [1] - 13:1
**antitrust** [1] - 25:23
**apologize** [3] - 9:19, 11:10, 43:11
**appear** [2] - 48:19, 48:25
**APPEARANCES** [2] - 1:11, 2:1
**appearances** [1] - 4:4
**appeared** [1] - 47:17
**applicable** [3] - 21:19, 21:25, 22:23
**applied** [1] - 28:25
**applies** [2] - 16:4, 39:18
**apply** [3] - 24:5, 25:15, 35:1
**applying** [1] - 28:22
**appreciate** [1] - 49:19
**appropriate** [2] - 29:13, 36:21
**appropriately** [1] - 25:18
**April** [6] - 43:20, 44:5, 44:16, 45:10, 50:7
**ARAN** [5] - 5:1, 5:5, 49:25, 50:9, 50:15
**Aran** [2] - 2:2, 2:6, 5:1
**argue** [2] - 11:19, 13:22
**argued** [1] - 30:8
**argument** [6] - 11:23, 13:7, 13:16, 27:7, 35:24, 38:16
**arguments** [3] - 42:1, 42:9, 42:12
**arise** [1] - 19:14
**arises** [1] - 13:2
**ARÁN** [1] - 2:2
**aspect** [3] - 13:16, 14:18, 49:25
**assert** [2] - 13:22, 41:3
**asserted** [3] - 10:5, 39:14, 41:4
**assign** [3] - 12:25, 13:2, 17:14
**assignment** [5] - 12:4, 12:10, 12:21, 13:4, 17:12
**associate** [1] - 4:10
**assuming** [1] - 19:2
**attempted** [1] - 29:3
**attendance** [1] - 29:3
**attribute** [1] - 31:1
**attributed** [1] - 28:8
**August** [2] - 48:10, 48:11
**Ave** [1] - 1:14
**Avenue** [3] - 1:20,

2

2:11, 51:14
**averment** [3] - 16:25,
21:5, 21:6
**avoidance** [1] - 13:14
**aware** [1] - 25:13

## B

**Bajandas** [1] - 1:13
**bare** [2] - 22:2, 30:23
**bare-bones** [1] - 22:2
**bars** [1] - 17:11
**based** [4] - 12:24, 24:6,
24:8, 47:25
**bases** [1] - 26:24
**basic** [1] - 15:10
**basing** [1] - 35:7
**basis** [15] - 15:22,
17:6, 22:12, 23:7,
34:8, 35:21, 39:6,
39:7, 39:16, 40:4,
40:20, 40:24
**BASS** [1] - 2:4
**Bass** [1] - 5:3
**becomes** [1] - 35:10
**BEFORE** [1] - 1:10
**behalf** [10] - 4:6, 4:24,
5:2, 13:23, 19:10,
23:25, 31:17, 31:18,
31:23, 31:25
**bench** [1] - 9:24
**beneficiary** [1] - 13:17
**benefit** [2] - 14:2, 14:4
**best** [4] - 14:14, 43:8,
49:13
**better** [2] - 7:5, 20:5
**between** [2] - 9:7,
16:12
**beyond** [3] - 11:4,
12:9, 50:8
**Billington** [1] - 33:24
**bit** [6] - 7:7, 26:8, 34:2,
37:10, 37:12, 41:21
**blend** [1] - 16:12
**bones** [1] - 22:2
**bought** [1] - 29:18
**breach** [8] - 13:18,
38:15, 38:20, 39:1,
39:2, 39:6, 40:1,
40:7
**breakdown** [1] - 30:9
**Brickell** [2] - 1:20,
1:20
**brief** [10] - 10:22,
11:11, 11:15, 11:20,
11:23, 12:3, 12:24,
14:1, 33:16, 33:18
**briefly** [1] - 30:10
**briefs** [2] - 42:3, 42:5
**bring** [8] - 6:15, 6:24,

9:19, 13:24, 29:18,
44:19, 45:12, 46:10
**bringing** [1] - 7:14
**brings** [1] - 26:3
**brought** [1] - 40:23
**bunch** [1] - 34:12
**burden** [10] - 14:8,
14:25, 15:2, 16:1,
16:15, 16:16, 16:21,
19:20, 38:5
**burner** [1] - 49:15
**business** [7] - 12:2,
12:5, 12:6, 18:8,
37:12, 37:13, 37:14
**Business** [1] - 18:11
**buying** [1] - 40:17
**BY** [1] - 2:10

## C

**cannot** [1] - 38:25
**care** [1] - 14:10
**carve** [4] - 7:10, 7:22,
7:23, 47:14
**CASE** [1] - 1:2
**case** [55] - 6:15, 6:16,
6:19, 7:5, 7:22, 7:23,
10:12, 10:13, 10:18,
10:20, 11:7, 11:9,
11:11, 11:15, 12:11,
12:21, 13:3, 14:13,
14:17, 14:23, 15:9,
15:10, 16:5, 17:10,
18:6, 18:7, 19:13,
20:18, 21:1, 24:11,
25:13, 27:9, 27:22,
33:7, 33:15, 33:16,
39:4, 43:7, 43:19,
43:24, 44:12, 44:15,
46:5, 46:7, 46:8,
46:11, 46:16, 46:21,
47:1, 47:4, 48:10,
49:15, 50:5, 50:19
**cases** [4] - 10:22,
12:12, 33:20, 33:22
**Catalonia** [1] - 1:14
**cease** [1] - 11:25
**CECILIA** [1] - 1:10
**Celotex** [1] - 11:5
**certain** [6] - 17:20,
17:21, 39:8, 40:18,
40:22, 42:15
**certainly** [13] - 6:11,
16:3, 20:6, 20:15,
22:8, 22:17, 26:25,
27:6, 28:2, 28:11,
36:20, 39:3, 49:10
**Certificate..............
....** [1] - 3:19
**certify** [2] - 40:13,

51:8
**challenge** [1] - 39:24
**challenged** [2] -
39:24, 39:25
**challenging** [1] - 41:9
**chance** [1] - 35:15
**chances** [1] - 45:1
**change** [3] - 12:7,
18:11
**changed** [1] - 26:17
**changes** [1] - 16:21
**changing** [1] - 26:18
**Cherokee** [5] - 4:18,
34:8, 34:10, 34:13
**choir** [1] - 28:11
**Chris** [6] - 4:5, 4:16,
6:21, 37:17, 37:18
**Chris's** [1] - 4:16
**CHRISTINA** [1] - 1:19
**CHRISTOPHER** [3] -
1:13, 1:18, 1:18
**Christopher** [1] - 4:10
**Christy** [1] - 4:17
**Cincom** [1] - 10:13
**Circuit** [3] - 10:14,
13:25, 14:1
**citation** [3] - 11:12,
11:19, 22:13
**cite** [6] - 11:8, 24:2,
25:6, 25:7, 25:8,
29:24
**cited** [11] - 10:21,
12:3, 12:12, 12:24,
18:7, 19:6, 19:13,
32:18, 33:8, 35:17
**cites** [3] - 11:7, 33:20,
33:21
**citing** [1] - 11:15
**claim** [28] - 7:1, 10:8,
12:25, 13:1, 13:2,
13:20, 13:24, 15:1,
16:23, 20:20, 20:23,
24:7, 25:4, 28:3,
28:7, 28:13, 32:13,
32:17, 35:4, 35:8,
36:10, 36:14, 37:19,
38:11, 38:24, 39:17,
41:2, 45:24
**claimed** [1] - 13:18
**claiming** [5] - 30:11,
30:13, 30:22, 38:13,
38:23
**claims** [23] - 6:3, 6:22,
7:14, 13:14, 22:14,
24:19, 25:5, 25:15,
26:11, 27:19, 29:9,
36:7, 38:11, 42:4,
45:6, 45:8, 45:12,
47:14, 47:16, 47:24,
48:4, 48:21

**clarification** [2] -
30:23, 32:7
**clarify** [3] - 32:3, 32:5,
32:6
**clarity** [1] - 43:2
**clause** [7] - 32:19,
33:4, 33:7, 33:9,
35:9, 35:10
**clean** [1] - 21:8
**clear** [12] - 15:22,
16:14, 17:11, 18:17,
18:20, 18:23, 25:6,
27:23, 31:9, 31:14,
36:7, 39:7
**clearly** [3] - 28:6,
32:25, 34:25
**client** [4] - 4:7, 17:18,
38:13, 38:23
**client's** [1] - 14:14
**clients** [3] - 17:18,
17:19, 38:17
**clients'** [1] - 7:14
**clomax@jonesday.**
**com** [1] - 1:24
**close** [2] - 46:5, 47:4
**closes** [1] - 47:19
**cloud** [1] - 15:9
**clouding** [2] - 46:3
**clouds** [2] - 15:6,
15:11
**cmastrucci@**
**jonesday.com** [1] -
1:24
**code** [4] - 12:3, 12:6,
18:8, 18:9
**comfortable** [1] - 9:25
**commentary** [1] - 12:8
**common** [1] - 7:1
**communications** [1] -
30:4
**companies** [1] - 31:20
**company** [8] - 12:15,
13:11, 18:3, 18:13,
29:15, 29:19, 29:20,
39:8
**competing** [1] - 12:9
**complaining** [1] - 40:6
**complaint** [13] - 13:9,
13:15, 28:19, 28:25,
29:15, 30:5, 36:6,
36:8, 40:25, 44:17,
44:22, 44:23, 47:25
**complaints** [1] - 6:3
**completed** [1] - 12:23
**completion** [1] - 13:4
**complicate** [1] - 43:8
**complicated** [2] -
14:12, 14:13
**complicating** [1] -
43:9

**concede** [1] - 35:11
**concern** [2] - 15:13,
20:4
**concerns** [2] - 26:21,
40:16
**conclude** [1] - 8:14
**concluded** [2] - 36:12,
51:4
**conclusion** [1] - 32:24
**concrete** [1] - 17:17
**confer** [1] - 47:11
**CONFERENCE** [1] -
1:9
**confidentiality** [1] -
48:6
**conflicting** [1] - 33:19
**confusing** [1] - 25:20
**confusion** [2] - 31:20,
32:1
**confusions** [1] - 30:11
**consciously** [2] -
18:14, 18:15
**consequence** [2] -
27:17, 36:15
**consistent** [1] - 6:12
**consolidate** [1] - 7:24
**consolidated** [1] -
41:25
**contained** [1] - 38:21
**contains** [1] - 34:3
**context** [7] - 22:8,
22:15, 25:9, 25:17,
26:2, 33:16, 34:18
**contextually** [2] -
29:13, 29:23
**continuance** [1] - 50:5
**continuances** [1] -
47:7
**continue** [2] - 10:24,
30:17
**CONTINUED** [1] - 2:1
**continuing** [3] - 18:21,
18:24
**contract** [30] - 10:18,
12:15, 12:16, 12:18,
12:22, 13:1, 13:5,
13:19, 14:2, 17:11,
17:13, 18:3, 18:20,
18:21, 18:22, 18:24,
19:11, 30:18, 31:24,
33:1, 33:4, 34:15,
34:25, 35:6, 36:9,
39:3, 39:20, 40:7,
40:8, 40:22
**contracts** [3] - 18:10,
18:12, 19:15
**contradict** [1] - 35:7
**contrary** [2] - 22:7,
22:20
**control** [1] - 17:20

**Convention** [5] - 5:24, 44:8, 48:16, 48:22, 49:5

**conversation** [1] - 32:15

**Coral** [3] - 1:15, 2:3, 2:7

**Corp** [2] - 10:14, 11:5

**corporate** [1] - 31:10

**Corporation** [22] - 4:7, 10:9, 13:20, 13:21, 18:12, 19:8, 19:9, 19:10, 23:25, 30:14, 30:15, 30:18, 30:21, 30:22, 31:4, 31:16, 31:21, 31:24, 31:25

**corporation** [7] - 12:1, 12:5, 16:10, 17:15, 31:18

**corporations** [2] - 17:15, 28:20

**Correa** [2] - 2:2, 2:6

**correct** [4] - 5:16, 23:17, 24:25, 28:24

**correctly** [2] - 8:23, 9:1

**counsel** [3] - 10:3, 35:17, 50:1

**counterclaim** [10] - 23:22, 25:4, 27:22, 28:1, 28:7, 38:11, 38:22, 39:15, 41:2

**counterclaims** [10] - 6:3, 22:14, 24:19, 25:5, 26:11, 27:18, 29:9, 45:8, 47:24, 48:3

**couple** [2] - 8:19, 10:21

**course** [1] - 15:3

**court** [11] - 6:6, 7:8, 9:24, 10:14, 10:16, 11:7, 11:14, 32:21, 33:8, 33:21

**Court** [36] - 2:10, 3:19, 7:6, 8:12, 8:19, 9:4, 17:4, 17:8, 18:19, 19:4, 19:13, 19:18, 20:14, 24:7, 28:23, 33:2, 33:8, 33:16, 33:20, 34:19, 35:2, 36:10, 36:12, 40:2, 41:17, 43:4, 46:6, 46:19, 47:15, 47:17, 47:18, 48:2, 48:4, 48:7, 51:13

**COURT** [115] - 1:1, 4:2, 4:4, 4:9, 4:11, 4:13, 4:20, 4:22, 5:4, 5:6, 5:12, 5:15, 5:20,

6:7, 6:14, 6:24, 7:13, 7:25, 8:4, 8:8, 8:16, 8:20, 9:5, 9:14, 9:21, 9:25, 11:6, 11:13, 11:16, 11:21, 14:6, 14:10, 14:16, 14:24, 15:13, 15:17, 15:25, 16:4, 16:7, 16:14, 16:19, 16:24, 17:1, 19:23, 20:2, 20:6, 20:20, 20:22, 21:3, 21:7, 21:11, 21:15, 22:4, 22:22, 23:9, 23:14, 23:17, 24:21, 24:25, 26:19, 28:16, 31:8, 31:22, 32:2, 32:5, 32:8, 33:12, 35:14, 36:5, 36:19, 37:4, 37:6, 37:24, 38:3, 38:8, 39:22, 41:5, 41:8, 41:12, 41:16, 41:19, 42:2, 42:8, 42:21, 42:24, 43:7, 43:18, 43:22, 43:24, 44:2, 44:4, 44:7, 44:18, 44:25, 45:14, 45:18, 45:20, 45:22, 45:25, 46:23, 47:19, 48:9, 48:14, 48:18, 49:1, 49:3, 49:5, 49:14, 49:20, 49:23, 50:4, 50:11, 50:16, 50:22, 51:1

**Court's** [3] - 14:14, 49:8, 49:11

**Courtroom** [1] - 1:7

**courts** [3] - 6:9, 14:16, 33:2

**cover** [1] - 34:6

**cperre@pbyalaw. com** [1] - 1:16

**created** [6] - 13:12, 29:16, 31:20, 32:1, 40:19

**crjpace@jonesday. com** [1] - 1:23

**cut** [1] - 18:10

**cutoff** [2] - 9:16, 9:18

---

**D**

**D.C.A** [3] - 32:18, 33:8, 33:17

**damages** [22] - 35:20, 35:21, 36:1, 36:3, 36:9, 36:12, 36:13, 36:14, 36:17, 36:25, 37:7, 37:11, 37:14, 37:23, 38:22, 38:25, 39:1, 39:16, 39:19

**DARDEN** [1] - 1:7

**Darden** [1] - 4:19

**DATE** [1] - 51:13

**date** [5] - 8:4, 8:20, 9:5, 9:16, 45:4

**dates** [3] - 9:11, 25:7, 50:18

**days** [3] - 8:19, 45:25, 47:16

**deadline** [4] - 23:10, 47:21, 48:12, 50:3

**deadlines** [1] - 45:4

**deal** [4] - 7:10, 15:19, 40:23, 48:8

**dealing** [2] - 31:17, 37:12

**deception** [1] - 25:16

**decided** [1] - 19:22

**defamation** [1] - 38:12

**defect** [2] - 36:19, 36:20

**defendant** [11] - 5:17, 28:13, 29:4, 29:5, 41:18, 44:8, 44:14, 46:13, 47:21

**defendant's** [1] - 14:25

**defendants** [27] - 4:17, 4:25, 5:2, 5:14, 5:19, 5:21, 8:10, 8:13, 9:7, 9:10, 10:13, 12:12, 13:8, 13:22, 14:8, 20:13, 24:1, 24:13, 28:20, 30:6, 33:9, 41:15, 41:25, 48:9, 49:23, 50:13

**DEFENDANTS** [4] - 1:18, 2:2, 2:6, 3:6

**Defendants** [1] - 1:8

**defendants'** [1] - 35:19

**Defendants'** [3] - 3:11

**defense** [64] - 10:1, 10:3, 10:5, 10:6, 13:13, 13:22, 14:7, 14:8, 15:22, 16:12, 16:24, 20:7, 20:10, 20:13, 20:14, 20:16, 20:17, 20:18, 21:17, 21:18, 21:23, 23:1, 23:7, 24:19, 25:1, 25:3, 27:20, 27:25, 28:17, 31:2, 32:10, 32:11, 33:13, 34:19, 34:20, 34:21, 34:25, 35:5, 35:10, 35:14, 35:17, 35:20, 36:5, 36:16, 37:1, 38:17, 38:20, 38:24, 39:10,

39:18, 39:22, 39:25, 40:2, 40:3, 41:3, 41:4, 41:5, 41:7, 42:14, 49:21

**defenses** [23] - 5:7, 14:12, 14:17, 15:7, 15:10, 21:19, 21:20, 21:22, 22:1, 22:8, 22:9, 22:13, 22:19, 23:4, 23:20, 24:4, 24:18, 26:7, 26:12, 26:15, 26:22, 26:24, 42:25

**defiance** [1] - 32:25

**defraud** [1] - 24:13

**delay** [1] - 7:17

**denial** [5] - 13:12, 16:25, 20:15, 20:17, 20:19

**denials** [1] - 16:20

**denied** [3] - 27:3, 31:9, 39:11

**deny** [3] - 44:6, 47:12, 49:10

**denying** [2] - 13:11, 49:6

**deponent** [1] - 9:12

**deponents** [1] - 9:13

**deposed** [1] - 47:5

**deposition** [1] - 9:11

**depositions** [1] - 50:12

**description** [1] - 21:20

**descriptions** [1] - 20:9

**desirous** [1] - 7:14

**detail** [5] - 22:21, 23:8, 24:16, 25:25, 34:2

**detailed** [6] - 25:5, 25:21, 26:4, 30:4, 30:5, 41:1

**details** [1] - 28:14

**determine** [1] - 35:23

**dictating** [1] - 44:12

**different** [4] - 28:22, 30:7, 33:11, 37:23

**diligence** [1] - 49:9

**diligent** [1] - 23:10

**direct** [3] - 11:19, 20:22, 40:20

**directed** [2] - 13:21, 36:7

**directing** [1] - 26:23

**directly** [1] - 11:22

**disagree** [1] - 18:22

**disagreeing** [1] - 21:14

**disclose** [1] - 17:24

**disclosing** [1] - 17:23

**disclosure** [1] - 17:20

**discover** [1] - 23:12

**discovered** [1] - 23:6

**discovery** [16] - 8:14, 9:5, 9:7, 9:8, 9:9, 9:16, 9:18, 23:5, 23:11, 36:13, 36:15, 46:6, 47:19, 47:21, 50:3, 50:12

**discussing** [2] - 9:11, 9:12

**discussion** [1] - 36:25

**disfavored** [1] - 14:19

**dismiss** [20] - 7:11, 17:5, 24:15, 26:20, 28:23, 36:10, 41:13, 41:18, 41:20, 41:23, 41:24, 42:19, 43:1, 43:4, 44:22, 45:1, 45:2, 45:12, 49:7

**dismissed** [4] - 44:10, 44:23, 46:22, 48:20

**dispute** [4] - 15:11, 19:4, 19:7, 19:24

**disputed** [1] - 19:23

**disputing** [1] - 40:5

**dissimilar** [1] - 10:20

**distinct** [1] - 30:20

**distinguishment** [1] - 30:16

**distribution** [1] - 17:20

**DISTRICT** [3] - 1:1, 1:1, 1:10

**divested** [1] - 14:3

**DIVISION** [1] - 1:2

**docket** [1] - 43:19

**docketing** [1] - 9:15

**doctrines** [1] - 22:24

**document** [4] - 25:12, 34:11, 38:7, 42:18

**documents** [2] - 25:7, 34:12

**down** [4] - 29:17, 29:19, 45:16

**downside** [1] - 14:19

**Dr** [13] - 4:8, 13:17, 13:19, 13:23, 19:5, 23:25, 28:8, 28:9, 29:1, 29:2, 31:1, 39:11

**drafted** [1] - 26:10

**Drive** [2] - 2:3, 2:7

**drop** [1] - 18:15

**dropped** [1] - 18:14

**duration** [1] - 19:1

---

**E**

**e-mail** [6] - 25:7, 28:8, 29:1, 29:24, 30:25, 31:7

**e-mails** [3] - 26:1, 29:7, 29:8
**early** [2] - 9:10, 15:23
**easier** [1] - 15:21
**effectively** [1] - 7:18
**eight** [1] - 38:11
**either** [1] - 27:18
**elements** [3] - 21:23, 21:24, 36:1
**end** [9] - 8:25, 16:8, 19:25, 35:25, 42:3, 43:16, 46:8, 47:13, 50:21
**ended** [1] - 30:5
**enforce** [4] - 12:14, 12:16, 19:12, 19:17
**enforcement** [1] - 19:6
**enter** [1] - 46:21
**entered** [5] - 13:19, 30:22, 32:12, 39:5, 48:11
**entering** [2] - 31:25, 32:14
**entire** [3] - 24:17, 30:19, 34:3
**entirety** [2] - 24:3, 27:21
**entitled** [6] - 28:4, 28:12, 30:23, 36:16, 41:2, 51:10
**entity** [2] - 27:17, 31:11
**envisioned** [1] - 45:25
**envisioning** [1] - 8:20
**equally** [1] - 39:18
**equipment** [1] - 29:18
**equitable** [5] - 21:19, 21:21, 21:25, 22:24, 23:16
**ERISA** [1] - 25:23
**ESQ** [7] - 1:12, 1:13, 1:18, 1:18, 1:19, 2:2, 2:6
**essence** [3] - 11:12, 13:12, 32:10
**essentially** [1] - 8:24
**estoppel** [3] - 21:18, 21:22, 23:3
**et** [2] - 1:4, 1:7
**etc** [5] - 25:23, 28:2, 28:10, 31:6, 38:14
**evaluate** [1] - 44:25
**event** [1] - 40:3
**evidence** [1] - 37:7
**EVIDENCE** [1] - 3:9
**exact** [2] - 10:15, 30:7
**example** [8] - 7:8, 17:17, 19:18, 26:17, 29:14, 31:6, 34:7, 35:5

**exception** [1] - 5:23
**exclude** [1] - 10:25
**excuse** [2] - 13:14, 29:16
**Exhibit** [2] - 3:10, 3:11
**EXHIBITS** [1] - 3:9
**existence** [2] - 10:24, 11:25
**exists** [1] - 11:25
**expecting** [1] - 6:5
**experience** [4] - 6:12, 15:21, 46:13, 49:10
**explain** [1] - 17:6
**explaining** [1] - 35:2
**explanation** [1] - 22:12
**expressly** [1] - 35:7
**extension** [1] - 8:25
**extent** [4] - 27:21, 30:13, 31:17, 43:12
**extinguishment** [1] - 11:24

# F

**Fabiani** [1] - 4:24
**FABIAN** [1] - 2:8
**Fabio** [4] - 5:20, 5:21, 5:23, 24:1
**fact** [11] - 10:17, 12:2, 12:10, 22:18, 24:2, 28:24, 29:21, 32:24, 39:16, 40:22, 50:6
**facts** [5] - 19:23, 19:24, 21:24, 25:22, 38:19
**factual** [3] - 26:24, 35:21, 40:24
**fail** [2] - 22:1, 38:19
**failed** [3] - 21:24, 27:9, 38:14
**failing** [1] - 44:10
**fails** [2] - 20:16, 31:3
**failure** [1] - 16:23, 20:20
**fair** [2] - 22:17, 22:18
**fairly** [2] - 15:9, 50:14
**fairness** [2] - 26:9, 44:21
**falls** [1] - 27:8
**false** [3] - 29:10, 29:11, 30:1
**far** [1] - 41:1
**faran@acg** [1] - 2:4
**faran@acg-law.com** [1] - 2:4
**FDUTPA** [3] - 24:7, 25:15
**February** [4] - 9:18, 47:19, 47:20, 50:3

**federal** [1] - 27:13
**FERNANDO** [1] - 2:2
**Fernando** [1] - 5:1
**few** [1] - 39:25
**fifth** [1] - 39:25
**figure** [3] - 7:10, 36:17, 42:10
**figured** [1] - 36:17
**file** [2] - 6:6, 43:10
**filed** [6] - 21:12, 43:20, 44:6, 44:17, 44:21, 45:6
**filing** [2] - 43:13, 45:7
**finalized** [1] - 8:17
**fine** [2] - 18:1, 23:2
**finished** [1] - 8:18
**first** [7] - 10:4, 10:8, 26:11, 26:14, 32:12, 33:14, 39:14
**five** [1] - 30:7
**FL** [3] - 1:21, 2:3, 2:7
**flesh** [1] - 26:24
**Floor** [3] - 1:14, 2:11, 51:14
**FLORIDA** [1] - 1:1
**Florida** [36] - 1:4, 1:15, 2:12, 10:10, 10:15, 10:21, 10:22, 11:4, 11:24, 12:5, 12:16, 12:18, 12:23, 12:24, 16:6, 16:7, 16:8, 16:10, 18:9, 18:10, 18:13, 21:21, 27:12, 27:22, 29:16, 29:18, 29:19, 30:15, 30:21, 31:4, 31:17, 31:21, 33:2, 33:20, 33:24, 51:14
**Florida's** [1] - 12:5
**flow** [2] - 19:11, 19:13
**flowing** [1] - 19:16
**following** [1] - 4:1
**FOR** [6] - 1:12, 1:18, 2:2, 2:6, 3:3, 3:6
**foregoing** [1] - 51:8
**forth** [4] - 11:20, 27:18, 28:6, 42:10
**forward** [1] - 41:22
**foundation** [1] - 36:2
**four** [2] - 8:24, 25:14
**four-month** [1] - 8:24
**fourth** [3] - 23:19, 24:24, 25:2
**franchise** [1] - 37:16
**franchises** [1] - 37:17
**frankly** [2] - 14:7, 15:6
**fraud** [2] - 23:23, 24:6, 24:15, 25:16, 27:18, 32:20, 36:14
**fraudulent** [16] -

23:24, 24:8, 27:5, 27:7, 27:15, 28:3, 29:10, 29:12, 30:12, 31:10, 32:13, 32:17, 32:20, 34:8, 34:14, 35:7
**front** [2] - 8:6, 8:22
**FULVIO** [1] - 2:7
**Fulvio** [1] - 4:24
**future** [1] - 40:20

# G

**Gables** [3] - 1:15, 2:3, 2:7
**gamut** [1] - 34:7
**general** [1] - 10:5
**generally** [4] - 14:18, 21:4, 28:12, 46:12
**gentleman** [6] - 11:6, 46:10, 46:17, 47:5, 48:19, 49:16
**gentlemen** [2] - 43:11, 46:4
**geographic** [1] - 39:8
**gimmicks** [1] - 16:9
**given** [3] - 22:16, 36:23, 50:11
**governing** [1] - 50:19
**granted** [1] - 31:8
**great** [1] - 6:21
**ground** [1] - 13:22
**grouped** [2] - 24:23, 28:10
**guarantee** [2] - 34:9, 34:10
**guarantor** [1] - 34:14
**Guarch** [2] - 2:2, 2:6
**guess** [4] - 6:17, 7:6, 26:7, 46:18
**guessing** [1] - 27:24

# H

**Hague** [9] - 5:24, 5:25, 44:8, 46:12, 46:15, 48:16, 48:22, 49:5, 49:16
**Hampshire** [8] - 10:9, 12:23, 16:10, 30:14, 30:19, 30:23, 31:16, 31:21
**hand** [1] - 33:6
**handle** [2] - 19:4, 46:9
**hands** [1] - 23:20
**happy** [1] - 38:6
**hard** [1] - 29:8
**harmed** [1] - 39:13
**heading** [1] - 49:12
**hear** [2] - 5:8, 28:17

**HEARING** [1] - 1:9
**hearing** [1] - 10:3
**heart** [4] - 10:12, 15:10, 32:11, 39:4
**Heat** [1] - 4:18
**heightened** [4] - 24:9, 27:8, 27:10, 27:13
**held** [5] - 4:1, 13:25, 14:1, 24:7, 33:2
**HENRY** [1] - 2:3
**Henry** [2] - 5:2, 28:10
**hereby** [1] - 51:8
**historical** [1] - 40:25
**historically** [1] - 22:8
**hmm** [1] - 21:3
**hold** [2] - 42:22, 42:24
**honest** [2] - 6:12, 26:10
**honesty** [2] - 5:25, 23:3
**Honor** [77] - 4:3, 4:5, 4:15, 4:21, 4:23, 5:1, 5:10, 5:16, 6:12, 6:17, 7:12, 7:16, 8:2, 8:5, 8:23, 9:6, 9:17, 9:19, 9:23, 10:4, 11:10, 11:18, 14:1, 14:9, 14:21, 15:3, 15:6, 15:15, 15:19, 16:17, 16:22, 20:12, 20:21, 21:1, 21:13, 21:16, 22:6, 22:10, 22:19, 23:2, 23:6, 23:13, 23:18, 24:23, 25:4, 25:14, 26:9, 27:6, 27:12, 30:10, 31:13, 32:9, 35:19, 36:6, 37:2, 37:9, 38:9, 39:23, 41:6, 41:10, 42:13, 44:5, 44:21, 45:5, 45:16, 45:23, 47:23, 48:17, 48:24, 49:8, 49:19, 49:22, 49:24, 50:20, 50:23, 50:25
**Honor's** [3] - 25:13, 45:17, 47:9
**HONORABLE** [1] - 1:10
**hopefully** [1] - 8:19
**hoping** [1] - 6:11
**hostage** [1] - 46:16
**house** [2] - 4:16, 41:10
**huge** [1] - 18:11
**hurt** [1] - 39:20
**hyper** [1] - 48:24

## I

**IBM** [2] - 17:25, 18:1
**identified** [3] - 28:9, 33:22, 36:13
**identifies** [1] - 36:8
**identify** [5] - 22:1, 29:1, 31:3, 36:9, 36:11
**identifying** [1] - 28:2
**imagine** [2] - 19:20, 43:3
**immaterial** [2] - 20:8, 20:24
**impairment** [1] - 18:13
**impertinent** [2] - 20:7, 20:25
**impleaded** [1] - 47:8
**implication** [1] - 33:15
**implications** [1] - 40:16
**impossible** [1] - 30:6
**improper** [2] - 36:3, 38:18
**IN** [1] - 3:9
**in-person** [1] - 9:2
**included** [2] - 40:11, 40:12
**including** [3] - 17:12, 30:2
**incorporate** [1] - 42:9
**incorporating** [2] - 27:2, 42:11
**indeed** [2] - 48:18, 50:5
**independent** [2] - 11:25, 38:24
**indicator** [1] - 29:11
**individual** [3] - 27:17, 28:5, 31:6
**individually** [2] - 10:7, 28:12
**individuals** [2] - 27:16, 28:21
**induce** [2] - 33:1, 33:3
**inducement** [7] - 23:24, 32:13, 32:17, 32:20, 34:8, 34:14, 35:8
**Industrial** [1] - 4:17
**inequitable** [2] - 12:19, 23:4
**inferred** [1] - 14:4
**information** [4] - 17:21, 18:2, 18:4, 35:23
**inserted** [1] - 15:9
**instance** [2] - 13:18, 31:3
**integrated** [1] - 32:15

**integration** [2] - 32:10, 35:9
**integration/ nonreliance** [1] - 34:6
**intellectual** [5] - 10:20, 17:21, 39:8, 40:18, 40:19
**interest** [3] - 13:11, 14:3, 40:21
**interests** [2] - 14:14, 14:15
**internally** [1] - 17:25, 18:2
**international** [2] - 46:2
**International** [1] - 4:18
**interpreting** [1] - 10:14
**interrelated** [1] - 43:5
**Investment** [1] - 4:18
**involuntarily** [1] - 17:12
**involve** [1] - 25:16
**involved** [2] - 25:8, 25:18
**IPH** [1] - 4:18
**Iqbal** [1] - 26:25
**ironic** [1] - 28:18
**irrespective** [1] - 12:25
**issue** [20] - 6:22, 7:10, 10:16, 11:24, 14:6, 14:22, 15:6, 15:9, 17:18, 18:19, 19:6, 21:18, 22:16, 26:13, 34:20, 35:13, 37:13, 40:15, 40:23, 48:8
**issues** [9] - 8:15, 15:11, 19:19, 19:25, 40:25, 41:14, 46:3, 49:22, 49:23
**Italian** [3] - 6:4, 6:9, 48:19
**Italy** [8] - 5:18, 6:2, 6:6, 7:4, 7:8, 45:11, 46:17
**itself** [5] - 17:23, 30:15, 31:5, 32:21, 41:7

## J

**J.M** [3] - 2:2, 5:2, 28:10
**James** [1] - 5:3
**JAMES** [1] - 2:3
**jannesser@pbyalaw. com** [1] - 1:16

**JOHN** [1] - 1:12
**John** [1] - 4:5
**JOHNSON** [1] - 2:3
**Johnson** [2] - 5:3, 28:10
**join** [2] - 48:12, 48:14
**joint** [1] - 8:12
**Jones** [1] - 1:19
**JT** [1] - 4:19
**JUDGE** [1] - 1:10
**judgment** [4] - 19:22, 36:22, 37:25, 43:13
**July** [8] - 8:6, 45:17, 45:18, 45:19, 45:20, 46:24, 48:11, 49:7
**juncture** [1] - 42:17
**June** [1] - 45:10
**jury** [1] - 14:25
**justification** [1] - 13:14

## K

**keep** [3] - 17:25, 43:7, 46:16
**kind** [7] - 22:20, 26:10, 33:14, 33:22, 34:1, 34:5, 34:6
**knowing** [1] - 44:19
**knowledge** [1] - 43:24
**known** [1] - 50:7
**knows** [1] - 37:18

## L

**labors** [1] - 15:23
**laches** [3] - 21:18, 21:22, 23:3
**lack** [1] - 24:16
**lacks** [1] - 24:20
**language** [2] - 18:14, 28:19
**larger** [1] - 12:1
**last** [2] - 4:11, 38:9
**lastly** [1] - 13:7
**late** [1] - 8:13
**latest** [1] - 46:25
**law** [25] - 10:15, 10:21, 10:25, 11:5, 11:9, 12:5, 12:9, 12:24, 14:18, 15:22, 16:4, 16:8, 17:10, 17:11, 17:13, 18:17, 21:1, 21:21, 27:12, 27:22, 33:24, 34:22, 35:17, 37:13
**law.com** [1] - 2:4
**Leap** [1] - 4:24
**LEAP** [1] - 2:7
**learn** [1] - 50:2

**least** [6] - 7:7, 9:11, 34:20, 35:16, 41:3, 42:17
**leave** [3] - 16:20, 27:23, 27:24
**Leonard** [3] - 19:9, 19:10, 31:24
**Leonardo** [33] - 4:6, 10:8, 10:9, 12:16, 12:18, 12:23, 13:19, 13:21, 17:22, 17:24, 17:25, 18:3, 19:5, 19:8, 19:9, 19:13, 23:25, 28:9, 29:17, 30:13, 30:15, 30:18, 30:21, 30:22, 31:2, 31:4, 31:16, 31:17, 31:21, 31:24, 31:25
**Leonardos** [1] - 32:2
**less** [2] - 22:2, 38:21
**library** [1] - 25:11
**license** [8] - 10:11, 10:19, 18:25, 24:14, 32:12, 39:5, 39:6, 40:12
**licensee** [3] - 12:13, 17:16, 18:8
**licensing** [2] - 39:7, 40:18
**licensor** [4] - 12:12, 12:14, 17:16, 18:7
**lies** [1] - 38:5
**light** [1] - 48:3
**likely** [4] - 9:12, 37:15, 47:13, 49:12
**likewise** [2] - 12:3, 24:19
**limine** [1] - 36:21
**limit** [1] - 15:23
**limitations** [1] - 37:13
**limits** [1] - 37:22
**line** [1] - 22:9
**literally** [3] - 26:6, 28:22, 30:8
**LLC** [2] - 2:7, 4:24
**location** [1] - 37:16
**locations** [1] - 26:4
**logic** [2] - 12:20, 32:25
**Lomax** [1] - 4:17
**LOMAX** [1] - 1:18
**look** [5] - 11:7, 22:7, 22:10, 29:8, 46:7
**looking** [3] - 12:9, 48:16, 50:7

## M

**mail** [6] - 25:7, 28:8, 29:1, 29:24, 30:25, 31:7

**mails** [3] - 26:1, 29:7, 29:8
**main** [1] - 50:6
**maintaining** [1] - 12:17
**manipulation** [1] - 25:16
**manufacturing** [1] - 39:21
**March** [1] - 9:18
**MARKED** [1] - 3:9
**MASTRUCCI** [1] - 1:19
**Mastrucci** [1] - 4:17
**material** [3] - 39:2, 39:6, 40:10
**materiality** [1] - 40:21
**matter** [5] - 15:11, 15:22, 35:4, 41:11, 51:10
**matters** [1] - 46:10
**McCARN** [2] - 2:10, 51:13
**McDonald's** [2] - 37:16, 37:17
**mean** [15] - 6:19, 6:25, 15:13, 16:9, 19:12, 20:6, 25:13, 29:8, 31:18, 35:16, 44:5, 44:15, 45:2, 45:7, 48:14
**means** [1] - 6:7
**meet** [1] - 24:8
**meeting** [4] - 9:2, 29:2, 29:3, 29:6
**meetings** [2] - 26:1, 26:2
**meets** [1] - 20:9
**memos** [1] - 25:7
**merge** [1] - 18:5
**merged** [6] - 10:9, 12:1, 12:14, 12:15, 13:10, 32:14
**merger** [15] - 10:10, 10:16, 10:22, 11:1, 12:4, 12:10, 12:12, 13:3, 32:10, 32:19, 33:4, 34:5, 35:9
**mergers** [1] - 11:1
**merges** [1] - 17:25
**merging** [1] - 33:5
**merits** [3] - 17:9, 34:2, 44:25
**MIAMI** [1] - 1:3
**Miami** [6] - 1:4, 1:21, 2:11, 2:12, 51:14, 51:14
**microphone** [1] - 4:22
**might** [4] - 10:2, 22:25, 40:19, 43:13
**million** [3] - 13:21,

37:20, 40:14
**mind** [1] - 26:25
**mine** [1] - 6:14
**minimum** [1] - 30:24
**minor** [2] - 12:7, 18:10
**MISCELLANEOUS** [1]
- 3:17
**misrepresentation** [4]
- 27:8, 28:3, 30:12,
31:10
**missed** [1] - 50:13
**missing** [1] - 44:7
**mistake** [1] - 5:25
**misunderstood** [1] -
47:18
**Model** [1] - 18:11
**model** [5] - 12:2, 12:5,
12:6, 18:8, 18:9
**money** [1] - 13:2
**month** [9] - 6:11, 7:9,
8:24, 44:9, 46:21,
46:23, 48:8, 48:18,
49:13
**months** [7] - 25:14,
45:22, 46:11, 47:1,
48:15, 49:15, 50:8
**moreover** [2] - 12:21,
24:6
**morning** [10] - 4:2,
4:3, 4:13, 4:15, 4:20,
4:21, 4:23, 5:1, 5:4,
5:5
**mostly** [1] - 37:15
**motion** [34] - 5:6,
9:15, 9:22, 15:8,
17:2, 17:4, 21:12,
24:15, 26:20, 27:3,
28:23, 31:8, 34:18,
35:22, 36:10, 36:21,
37:24, 41:13, 41:18,
41:20, 41:21, 41:23,
42:5, 42:25, 44:22,
45:1, 45:2, 45:12,
45:15, 48:4, 48:5,
48:6, 49:7
**MOTION** [1] - 1:9
**motions** [5] - 14:16,
41:24, 42:19, 43:4,
46:9
**move** [6] - 9:15, 17:15,
20:11, 29:17, 49:9
**moving** [1] - 41:22
**MR** [119] - 4:5, 4:10,
4:12, 4:14, 4:15,
4:21, 4:23, 5:1, 5:5,
5:10, 5:13, 5:16,
5:21, 6:9, 6:17, 6:25,
7:16, 8:2, 8:5, 8:9,
8:17, 8:21, 8:23, 9:6,
9:17, 9:23, 10:4,

11:10, 11:14, 11:18,
11:22, 14:9, 14:11,
14:21, 15:3, 15:15,
15:19, 16:3, 16:6,
16:8, 16:16, 16:22,
16:25, 17:3, 19:24,
20:3, 20:12, 20:21,
21:1, 21:4, 21:9,
21:13, 21:16, 22:6,
23:2, 23:13, 23:16,
23:18, 24:23, 25:1,
27:6, 28:18, 30:10,
31:13, 31:23, 32:4,
32:7, 32:9, 33:14,
35:19, 36:6, 37:2,
37:9, 38:1, 38:4,
38:4, 38:9, 39:23,
41:6, 41:10, 41:13,
41:17, 41:20, 42:7,
42:13, 42:22, 43:3,
43:17, 43:21, 43:23,
44:1, 44:3, 44:5,
44:13, 44:21, 45:5,
45:16, 45:19, 45:21,
45:23, 46:18, 47:9,
47:23, 48:13, 48:17,
48:23, 49:2, 49:4,
49:8, 49:18, 49:21,
49:24, 49:25, 50:9,
50:15, 50:20, 50:23,
50:25, 51:3
**multiparty** [1] - 19:15
**multiple** [3] - 21:18,
25:9, 26:3
**multiple-issue** [1] -
21:18
**multiplies** [1] - 43:15
**must** [2] - 14:22,
21:23

## N

**name** [4] - 4:9, 4:11,
5:18, 5:20
**necessarily** [5] - 17:8,
18:18, 21:13, 31:19,
33:18
**need** [7] - 4:22, 30:20,
32:3, 32:5, 34:19,
40:3
**needed** [4] - 31:15,
44:19, 46:25, 49:6
**needing** [1] - 44:8
**needs** [1] - 11:19
**negate** [2] - 16:15,
34:14
**negates** [1] - 32:19
**negating** [2] - 16:12,
35:4
**negative** [3] - 21:5,

21:6, 35:8
**negotiation** [1] - 9:2
**never** [6] - 14:16,
19:21, 22:18, 28:21,
37:6
**New** [8] - 10:9, 12:23,
16:9, 30:14, 30:18,
30:23, 31:16, 31:21
**new** [6] - 9:3, 18:12,
23:7, 37:12, 37:14
**next** [11] - 6:6, 16:23,
20:11, 21:15, 23:17,
31:12, 32:8, 35:18,
37:15, 38:8, 50:21
**nine** [1] - 25:2
**ninth** [1] - 32:9
**NO** [1] - 1:2
**nonassignability** [2] -
10:11, 10:18
**noncontract** [1] - 36:7
**none** [2] - 34:12,
34:13
**nonetheless** [1] -
23:11
**nonparty** [1] - 9:9
**nonreliance** [3] - 33:6,
33:9, 35:9
**North** [2] - 2:11, 51:14
**notes** [1] - 9:1
**nothing** [2] - 7:9,
15:17
**notice** [4] - 11:8,
22:17, 22:18, 27:24
**notwithstanding** [2] -
39:12, 50:6
**Novelis** [1] - 10:14
**number** [6] - 14:12,
15:7, 25:19, 29:25,
38:18
**numerous** [1] - 9:13
**NUÑEZ** [4] - 2:6, 4:21,
4:23, 49:24
**Nuñez** [1] - 4:23

## O

**obligation** [2] - 18:21,
19:16
**obligations** [6] -
12:22, 13:5, 18:20,
18:24, 19:11, 19:12
**obtained** [1] - 27:17
**obtaining** [1] - 46:14
**obviously** [3] - 28:20,
34:24, 44:16
**occasion** [2] - 17:8,
18:19
**occur** [1] - 29:22
**occurred** [3] - 12:22,
13:4, 29:6

**October** [2] - 1:5,
44:20
**OF** [1] - 1:1
**offer** [1] - 13:13
**Official** [1] - 51:13
**official** [1] - 2:10
**often** [1] - 19:14
**Ohio** [1] - 10:15
**old** [1] - 25:14
**once** [2] - 43:4, 46:14
**one** [51] - 5:16, 5:17,
9:11, 10:3, 10:8,
14:19, 15:17, 16:23,
17:5, 17:17, 17:18,
17:19, 17:21, 18:7,
19:16, 19:17, 19:22,
20:10, 21:15, 22:9,
22:11, 23:4, 25:9,
26:15, 28:7, 28:10,
29:4, 30:11, 30:16,
30:25, 31:13, 31:19,
31:21, 33:5, 33:20,
33:21, 34:7, 34:16,
35:5, 38:18, 38:25,
40:5, 41:10, 41:21,
42:14, 42:16, 44:9,
46:3, 46:23, 48:18
**one-line** [1] - 22:9
**one-sentence** [1] -
26:15
**ones** [4] - 16:18, 21:7,
24:5, 27:25
**ongoing** [1] - 40:20
**open** [1] - 43:19
**opens** [1] - 37:18
**operate** [1] - 29:19
**operation** [1] - 17:13
**opinion** [3] - 32:18,
32:21, 32:22
**opposed** [7] - 10:1,
13:12, 15:12, 24:10,
30:8, 30:14, 42:3
**options** [1] - 46:15
**oral** [1] - 34:4
**order** [18] - 6:4, 7:25,
8:12, 9:19, 36:11,
38:23, 45:4, 45:14,
46:21, 47:7, 47:15,
47:20, 47:23, 48:6,
48:10, 48:11, 49:6
**ordered** [1] - 41:9
**original** [2] - 5:13,
47:25
**originally** [3] - 23:8,
26:13, 39:14
**otherwise** [6] - 6:20,
13:2, 27:1, 32:15,
34:15, 48:20
**ourselves** [1] - 12:11
**outside** [1] - 33:10

**outsider** [1] - 17:24
**overlapping** [1] - 42:1
**overreacted** [1] -
46:20
**oversimplification** [1]
- 32:23
**owed** [1] - 13:2
**owner** [1] - 19:9
**owns** [1] - 31:15

## P

**P-E-R-R-E** [1] - 4:12
**P.A** [2] - 2:2, 2:6
**P.L** [1] - 1:14
**Pace** [5] - 4:16, 7:17,
27:1, 37:17, 37:18
**PACE** [75] - 1:18, 4:15,
5:16, 5:21, 6:9, 6:17,
6:25, 8:23, 16:3,
16:6, 16:8, 16:16,
16:22, 16:25, 17:3,
19:24, 20:3, 21:1,
21:4, 21:9, 21:13,
22:6, 23:2, 23:13,
23:16, 24:23, 25:1,
28:18, 31:13, 31:23,
32:4, 32:7, 33:14,
36:6, 37:2, 37:5,
37:9, 38:1, 38:4,
39:23, 41:10, 41:13,
41:17, 41:20, 42:7,
42:13, 42:22, 43:3,
43:17, 43:21, 43:23,
44:1, 44:3, 44:5,
44:13, 44:21, 45:5,
45:16, 45:19, 45:21,
45:23, 46:18, 47:9,
47:23, 48:13, 48:17,
48:23, 49:2, 49:4,
49:8, 49:18, 49:21,
50:20, 50:23, 51:3
**pace** [8] - 5:11, 5:12,
5:15, 6:8, 16:1,
20:22, 22:5, 24:22
**Page** [5] - 3:3, 3:6,
3:18, 22:10, 22:12
**Pages** [1] - 1:8
**pages** [1] - 34:12
**paper** [1] - 50:12
**papering** [1] - 43:9
**papers** [1] - 42:9
**Paragraph** [1] - 29:24
**paragraphs** [8] - 25:2,
25:3, 25:9, 25:19,
26:6, 26:23, 30:2,
41:8
**Paragraphs** [1] - 30:1
**paragraphs'** [1] -
38:12

**part** [13] - 6:25, 7:1, 12:1, 23:1, 23:4, 23:14, 23:16, 31:8, 31:9, 40:5, 40:10, 46:11, 48:10
**partial** [1] - 37:24
**partially** [1] - 5:25
**particular** [13] - 6:10, 12:11, 12:21, 19:16, 20:18, 25:3, 25:7, 25:8, 26:1, 26:23, 27:9, 27:19, 28:13
**particularized** [1] - 26:20
**particularly** [2] - 21:25, 30:12
**PARTIES** [1] - 4:3
**parties** [23] - 5:8, 5:13, 5:22, 7:2, 8:10, 26:3, 28:2, 30:7, 33:10, 34:4, 34:7, 39:5, 40:13, 42:8, 43:13, 44:24, 46:2, 46:5, 47:11, 48:1, 48:12, 48:15, 50:6
**parties'** [1] - 42:11
**Partners** [1] - 4:18
**parts** [3] - 10:6, 19:1
**PARTY** [2] - 2:2, 2:6
**party** [55] - 4:25, 5:2, 5:14, 5:17, 5:18, 6:3, 8:10, 8:13, 9:8, 12:15, 13:11, 14:1, 14:2, 14:5, 19:16, 21:23, 22:14, 24:1, 24:13, 24:19, 25:4, 25:5, 26:11, 27:19, 27:23, 27:24, 28:7, 29:5, 29:9, 30:14, 33:1, 33:3, 34:13, 37:6, 38:11, 41:2, 41:15, 41:17, 41:25, 42:4, 43:4, 44:14, 44:19, 44:20, 45:8, 46:2, 46:13, 46:25, 47:21, 47:24, 48:3, 48:9, 49:23, 50:13
**party's** [1] - 19:17
**past** [1] - 38:13
**patent** [1] - 19:2
**path** [1] - 30:17
**pay** [7] - 15:20, 38:14, 38:23, 39:4, 39:9, 39:11
**payment** [5] - 13:20, 19:7, 34:9, 40:14
**payments** [3] - 19:2, 19:3
**pendency** [1] - 45:2
**pending** [1] - 41:13,

45:13
**Penon** [16] - 5:18, 5:20, 5:21, 5:24, 6:8, 6:16, 6:20, 6:21, 6:23, 7:20, 24:1, 45:7, 45:9, 47:10, 47:14, 48:8
**people** [3] - 7:4, 22:9, 25:8
**perfect** [1] - 42:7
**perfectly** [1] - 38:6
**perhaps** [1] - 5:8
**peripheral** [1] - 15:12
**Perlman** [1] - 1:13
**permissible** [1] - 13:6
**perpetuity** [2] - 18:25, 19:1
**Perre** [2] - 4:6, 4:10
**PERRE** [2] - 1:13, 4:12
**person** [3] - 9:2, 29:4, 45:10
**personally** [1] - 7:21
**pertain** [1] - 27:25
**phrasing** [1] - 20:5
**Pickett** [1] - 11:5
**piece** [1] - 29:18
**piecemeal** [1] - 47:6
**pitched** [1] - 29:20
**place** [6] - 7:25, 9:5, 45:4, 47:8, 50:11
**plain** [1] - 14:18
**plaintiff** [4] - 5:8, 22:23, 41:20, 47:4
**Plaintiffs** [1] - 1:5
**plaintiffs** [12] - 4:6, 7:2, 8:11, 9:7, 16:2, 20:23, 22:25, 24:13, 26:23, 30:25, 41:14, 44:17
**PLAINTIFFS** [2] - 1:13, 3:3
**plaintiffs'** [4] - 36:14, 41:23, 42:5, 42:25
**Plaintiffs'** [1] - 3:10
**plant** [1] - 29:18
**plays** [1] - 7:7
**Plaza** [1] - 1:20
**plead** [4] - 25:19, 25:22, 40:6
**pleading** [17] - 22:2, 24:4, 24:9, 24:10, 25:21, 25:24, 25:25, 26:4, 26:5, 26:21, 27:8, 27:10, 27:14, 36:19, 36:20
**pleadings** [2] - 22:3, 23:10
**pleads** [1] - 34:25
**pled** [6] - 22:7, 29:4, 30:9, 31:2, 34:24,

40:4
**podium** [1] - 9:24
**point** [8] - 6:10, 6:18, 9:8, 9:12, 16:11, 17:10, 36:11, 46:24
**pointed** [2] - 7:17, 39:15
**portion** [3] - 13:7, 38:9, 38:10
**portions** [1] - 22:14
**position** [5] - 12:17, 21:10, 34:22, 47:9, 49:9
**possible** [2] - 36:13, 50:1
**posture** [1] - 17:7
**practices** [1] - 25:17
**PRE** [1] - 3:9
**predicated** [1] - 23:21
**prefer** [1] - 9:23
**preference** [1] - 47:6
**prejudice** [2] - 44:10, 48:20
**preliminary** [1] - 46:9
**premature** [1] - 36:2
**preserved** [1] - 17:4
**pretty** [2] - 14:18, 30:4
**prevail** [1] - 35:13
**prevailing** [1] - 35:15
**prevent** [3] - 17:22, 34:15
**prime** [1] - 37:20
**problem** [4] - 6:15, 26:22, 30:2, 37:5
**problems** [2] - 38:13, 40:9
**procedure** [1] - 20:16
**proceed** [1] - 6:20
**proceedings** [3] - 4:1, 51:4, 51:9
**PLAINTIFFS** [2] - 1:13, 3:3
**Proceedings............ ........................** [1] - 3:19
**proceeds** [2] - 6:19, 14:23
**process** [4] - 5:24, 7:19, 9:11, 29:21
**PRODUCTS** [1] - 2:3
**Products** [1] - 5:2
**progresses** [1] - 6:18
**proof** [4] - 15:2, 15:4, 16:21, 49:3
**proper** [5] - 20:14, 20:15, 27:23, 30:14, 36:23
**property** [5] - 10:20, 17:21, 39:8, 40:18, 40:19
**propose** [3] - 8:11, 8:19, 9:3

**proposed** [2] - 8:12, 50:17
**proposition** [2] - 19:14, 32:19
**propounded** [2] - 9:9
**protective** [1] - 48:6
**prove** [4] - 14:8, 14:20, 36:25, 38:20
**provide** [8] - 11:14, 22:15, 23:8, 29:7, 29:16, 32:4, 32:7, 42:16
**provided** [2] - 19:18, 35:23
**provides** [4] - 12:3, 12:24, 21:21, 28:19
**provision** [9] - 10:11, 10:17, 10:19, 11:2, 13:1, 13:18, 18:3, 18:9, 39:3
**provisions** [5] - 34:17, 35:1, 40:7, 40:8, 40:22
**pull** [1] - 9:14
**pursue** [4] - 36:24, 46:6, 48:21, 49:16
**pursuing** [1] - 23:11
**put** [2] - 26:10, 49:15

## Q

**Quantum** [1] - 4:24
**QUANTUM** [1] - 2:7
**quickly** [3] - 6:21, 50:14, 50:18
**quite** [4] - 14:7, 20:19, 22:6, 42:18
**quote** [3] - 10:23, 21:19, 28:19
**quote/unquote** [1] - 30:6
**quotes** [1] - 26:1

## R

**R.J** [1] - 1:18
**raise** [10] - 13:17, 21:18, 23:9, 28:18, 35:22, 36:16, 36:20, 41:10, 41:14, 42:1
**raised** [4] - 17:3, 26:13, 35:22, 44:15
**rather** [1] - 42:19
**ratification** [1] - 32:10
**reach** [6] - 7:18, 22:2, 27:10, 27:12, 27:13, 34:19
**read** [2] - 32:22, 33:15
**real** [1] - 29:21
**realistic** [2] - 46:6,

46:7
**really** [6] - 16:21, 17:8, 21:5, 23:10, 34:6, 43:15
**reason** [3] - 40:10, 40:11
**reasons** [2] - 34:16, 38:18
**receive** [1] - 45:14
**received** [1] - 49:6
**recently** [1] - 32:19
**recognize** [2] - 7:4, 20:4
**recognized** [1] - 36:10
**recognizing** [1] - 25:14
**reconcile** [1] - 33:19
**redundant** [2] - 20:8, 20:24
**refer** [1] - 38:12
**reference** [4] - 18:20, 23:22, 27:3, 34:24
**referenced** [2] - 31:7, 41:1
**references** [1] - 26:2
**referring** [1] - 18:15
**refers** [3] - 18:9, 25:2, 25:3
**regardless** [1] - 35:12
**regular** [1] - 46:1
**regurgitate** [1] - 27:2
**relate** [1] - 27:21
**related** [1] - 34:11
**relating** [1] - 10:19
**relation** [2] - 21:25, 30:12
**relatively** [2] - 6:20, 18:17
**relevant** [3] - 7:5, 44:16, 44:18
**rely** [3] - 10:13, 24:17, 33:10
**relying** [3] - 28:5, 28:6, 35:9
**remains** [1] - 14:7
**remember** [2] - 9:1, 44:13
**remove** [1] - 21:8
**repeat** [1] - 27:2
**repeatedly** [1] - 40:23
**report** [1] - 50:17
**REPORTED** [1] - 2:10
**Reporter** [2] - 2:10, 51:13
**reporter** [2] - 11:7, 11:15
**Reporter's** [1] - 3:19
**representation** [3] - 27:5, 32:15, 34:4
**reprint** [1] - 26:6

8

**request** [2] - 6:18, 46:18
**require** [2] - 26:20, 41:21
**required** [9] - 13:8, 15:24, 22:3, 24:16, 24:20, 28:15, 36:1, 38:19, 45:12
**requirement** [2] - 22:2, 27:14
**requirements** [3] - 24:9, 27:9, 27:10
**requires** [1] - 20:20
**requisite** [2] - 24:20, 28:14
**resolution** [1] - 7:15
**resolved** [1] - 44:12
**respect** [5] - 23:18, 24:2, 32:21, 38:16, 38:22
**respectfully** [1] - 50:1
**respond** [2] - 15:5, 30:11
**responded** [1] - 38:14
**responding** [1] - 41:23
**response** [1] - 21:4
**rest** [1] - 32:22
**Restaurant** [1] - 37:18
**restaurant** [1] - 37:22
**result** [2] - 12:19, 14:3
**retract** [2] - 11:10, 11:11
**reveal** [1] - 36:14
**revised** [1] - 50:17
**RICO** [1] - 25:23
**ridiculous** [1] - 26:8
**rights** [2] - 21:10, 30:17
**rise** [2] - 28:3, 39:10
**rivers** [1] - 10:23
**RODOLFO** [1] - 2:6
**Rodolfo** [1] - 4:23
**Rossi** [21] - 4:6, 4:7, 4:8, 13:17, 13:19, 13:23, 19:5, 19:12, 23:25, 28:8, 28:9, 29:1, 29:2, 29:3, 29:17, 29:25, 31:1, 31:15, 39:11, 40:9
**ROSSI** [1] - 1:4
**round** [1] - 41:24
**RPR** [2] - 2:10, 51:13
**rule** [8] - 17:4, 17:9, 33:18, 33:22, 33:23, 42:25, 47:16
**Rule** [6] - 20:7, 24:9, 24:10, 24:20, 28:15
**rules** [3] - 22:3, 27:13, 46:1

**ruling** [1] - 45:17
**rulings** [1] - 43:5

## S

**satisfied** [1] - 28:25
**satisfying** [1] - 26:25
**saw** [1] - 16:19
**scandalous** [1] - 20:7
**schedule** [4] - 9:3, 43:18, 46:3, 46:7
**scheduling** [9] - 7:25, 8:12, 9:19, 45:3, 47:7, 47:20, 48:10, 49:25, 50:17
**scheme** [3] - 24:12, 25:17, 25:18
**seated** [1] - 4:2
**Second** [1] - 1:14
**second** [10] - 4:9, 5:7, 13:16, 18:2, 20:12, 24:3, 24:18, 39:1, 40:13, 42:15
**securities** [1] - 25:23
**see** [5] - 6:18, 6:19, 7:7, 20:9, 26:22
**seeking** [3] - 38:10, 41:9, 43:2
**seem** [1] - 26:12
**send** [1] - 7:3
**sense** [1] - 26:13
**sent** [1] - 7:2
**sentence** [1] - 26:15
**separate** [7] - 7:22, 7:23, 30:19, 36:13, 36:14, 43:15, 48:21
**separately** [5] - 6:24, 7:11, 46:14, 47:14, 48:21
**September** [2] - 50:2, 50:6
**series** [1] - 30:4
**serve** [5] - 6:4, 6:5, 7:22, 44:11, 45:7, 46:24, 47:10, 48:15, 48:19, 48:24, 49:1
**served** [16] - 5:9, 5:14, 5:17, 5:22, 5:23, 6:8, 6:11, 6:20, 43:22, 44:8, 44:10, 45:9, 46:25, 47:22, 49:4, 49:5
**service** [10] - 5:22, 5:23, 7:21, 8:13, 43:23, 46:1, 46:15, 48:22, 49:3
**set** [5] - 8:5, 11:20, 27:18, 28:6, 47:24
**sets** [1] - 42:3
**setup** [1] - 30:3

**seventh** [1] - 27:4
**shareholder** [1] - 19:8
**sheet** [4] - 23:24, 24:14, 30:13, 30:21
**shortly** [2] - 9:13, 43:22
**shotgun** [5] - 24:4, 25:20, 25:21, 25:24, 26:4
**show** [1] - 39:2
**showing** [1] - 16:1
**shown** [1] - 40:21
**similar** [3] - 10:15, 43:6, 49:10
**similarly** [1] - 26:21
**simple** [1] - 43:7
**simply** [3] - 16:15, 24:17, 34:20
**singing** [1] - 28:11
**single** [1] - 31:3
**sit** [2] - 45:3, 46:8
**sitting** [1] - 7:8
**situation** [1] - 18:6
**situations** [1] - 19:15
**six** [4] - 42:3, 46:11, 48:15, 49:15
**sixth** [3] - 23:20, 24:24, 25:1
**slight** [1] - 34:2
**slim** [1] - 35:15
**slower** [1] - 43:10
**So.2d** [1] - 11:5
**sole** [1] - 19:9
**solution** [1] - 7:5
**somewhat** [1] - 43:5
**somewhere** [1] - 8:24
**soon** [2] - 43:19, 45:16
**sorry** [13] - 4:8, 5:19, 6:6, 9:9, 11:6, 11:13, 14:4, 23:23, 27:13, 27:16, 29:5, 47:17, 48:23
**sort** [2] - 45:3, 46:16
**sounds** [1] - 50:4
**SOUTHERN** [1] - 1:1
**specific** [4] - 25:2, 25:6, 27:14, 36:1
**specifically** [7] - 10:25, 21:21, 24:11, 27:15, 28:4, 32:21, 38:22
**specificity** [2] - 24:16, 24:20
**specified** [1] - 40:8
**specify** [1] - 35:25
**speculative** [7] - 35:20, 35:21, 35:24, 36:3, 37:10, 37:14, 37:22

**speed** [1] - 50:14
**spell** [2] - 4:11, 11:16
**spellings** [1] - 11:17
**spoken** [1] - 28:21
**stage** [1] - 9:10
**standard** [6] - 20:6, 22:2, 22:16, 24:9, 28:22, 28:24
**standing** [14] - 10:6, 13:8, 13:10, 13:16, 13:23, 14:3, 14:20, 15:1, 15:14, 16:2, 16:16, 17:6, 19:19, 28:1
**standpoint** [3] - 21:9, 42:13, 44:15
**start** [2] - 22:10, 39:23
**state** [11] - 4:4, 11:1, 16:23, 20:16, 20:20, 21:22, 21:23, 27:15, 27:16, 30:20, 35:20
**statement** [3] - 31:4, 31:5, 33:24
**statements** [13] - 15:7, 27:15, 27:16, 28:5, 28:9, 28:12, 28:14, 29:10, 29:25, 30:24, 33:1, 33:3, 35:6
**STATES** [3] - 1:1, 1:10, 2:7
**States** [2] - 4:24, 51:13
**states** [2] - 32:22, 34:3
**stating** [1] - 24:17
**STATUS** [1] - 1:9
**stay** [1] - 10:2
**STEPHANIE** [2] - 2:10, 51:13
**Stephanie_McCarn @flsd.uscourts.gov** [1] - 2:13
**still** [5] - 8:25, 11:25, 29:13, 41:22, 44:20
**story** [1] - 33:11
**stream** [1] - 10:24
**stricken** [4] - 21:15, 23:14, 41:5, 41:9
**strike** [12] - 5:7, 9:15, 9:22, 14:16, 15:8, 21:5, 27:3, 31:8, 34:19, 35:14, 38:10, 41:9
**striking** [2] - 21:7, 23:1
**struck** [3] - 41:17, 42:14, 42:15
**structuring** [1] - 26:9
**submissions** [1] - 43:15
**submit** [2] - 50:1,

50:17
**subpoena** [3] - 7:3, 7:18, 47:5
**subsequently** [1] - 39:15
**substance** [2] - 29:6, 29:7
**substantially** [1] - 8:18
**succeeded** [1] - 37:19
**sudden** [1] - 18:5
**sue** [5] - 7:11, 12:17, 19:10, 44:11, 46:14
**sufficient** [1] - 37:7
**suing** [2] - 30:21, 44:23
**suit** [1] - 7:11
**Suite** [1] - 1:21
**summary** [4] - 19:22, 36:22, 37:25, 43:13
**superficial** [1] - 32:25
**supersedes** [1] - 34:4
**support** [4] - 12:19, 19:6, 21:24, 35:21
**supported** [1] - 35:16
**supposed** [2] - 19:17, 45:10
**Supreme** [2] - 33:20
**system** [1] - 7:8
**Systems** [1] - 10:13

## T

**table** [1] - 46:7
**tables** [1] - 11:8
**tackle** [1] - 18:19
**talks** [1] - 26:1
**tax** [2] - 38:13, 40:9
**taxes** [5] - 38:14, 38:23, 39:4, 39:9, 39:11
**technical** [1] - 48:24
**tends** [1] - 23:4
**tenth** [2] - 35:19, 42:16
**term** [4] - 23:24, 24:14, 30:13, 30:21
**terms** [4] - 26:9, 34:24, 42:2, 49:11
**terrible** [1] - 37:22
**territory** [1] - 39:9
**test** [1] - 37:17
**THE** [121] - 1:10, 1:12, 1:18, 2:2, 2:6, 3:3, 3:6, 4:2, 4:4, 4:9, 4:20, 4:23, 4:24, 4:20, 4:22, 5:4, 5:6, 5:12, 5:15, 5:20, 6:7, 6:14, 6:24, 7:13, 7:25, 8:4, 8:8, 8:16, 8:20, 9:5,

9:14, 9:21, 9:25,
11:6, 11:13, 11:16,
11:21, 14:6, 14:10,
14:16, 14:24, 15:13,
15:17, 15:25, 16:4,
16:7, 16:14, 16:19,
16:24, 17:1, 19:23,
20:2, 20:6, 20:20,
20:22, 21:3, 21:7,
21:11, 21:15, 22:4,
22:22, 23:9, 23:14,
23:17, 24:21, 24:25,
26:19, 28:16, 31:8,
31:22, 32:2, 32:5,
32:8, 33:12, 35:14,
36:5, 36:19, 37:4,
37:6, 37:24, 38:3,
38:8, 39:22, 41:5,
41:8, 41:12, 41:16,
41:19, 42:2, 42:8,
42:21, 42:24, 43:7,
43:18, 43:22, 43:24,
44:2, 44:4, 44:7,
44:18, 44:25, 45:14,
45:18, 45:20, 45:22,
45:25, 46:23, 47:19,
48:9, 48:14, 48:18,
49:1, 49:3, 49:5,
49:14, 49:20, 49:23,
50:4, 50:11, 50:16,
50:22, 51:1
**theory** [2] - 18:1, 26:7
**there'll** [2] - 19:25
**thereafter** [1] - 43:22
**therefore** [6] - 12:2,
13:5, 13:23, 32:16,
36:3, 39:17
**thereto** [1] - 32:13
**third** [42] - 4:25, 5:2,
5:14, 5:17, 5:18,
5:22, 6:3, 8:10, 8:13,
9:8, 21:17, 22:14,
23:1, 24:1, 24:13,
24:19, 25:4, 25:5,
26:11, 27:19, 28:7,
29:5, 29:9, 38:11,
41:2, 41:15, 41:17,
41:25, 42:4, 42:15,
43:4, 44:14, 44:19,
44:20, 45:8, 46:13,
47:21, 47:24, 48:3,
48:9, 49:23, 50:13
**THIRD** [2] - 2:2, 2:6
**third-party** [36] - 4:25,
5:2, 5:14, 5:17, 5:18,
6:3, 8:10, 8:13, 9:8,
22:14, 24:1, 24:13,
24:19, 25:4, 25:5,
26:11, 27:19, 28:7,
29:5, 29:9, 38:11,

41:2, 41:15, 41:17,
41:25, 42:4, 43:4,
44:14, 45:8, 46:13,
47:21, 47:24, 48:3,
48:9, 49:23, 50:13
**THIRD-PARTY** [2] -
2:2, 2:6
**THOMAS** [1] - 1:7
**three** [6] - 8:24, 25:14,
42:4, 42:5, 45:22,
47:1
**timing** [2] - 42:13,
44:15
**tinkering** [1] - 47:7
**title** [1] - 18:16
**today** [3] - 4:16, 46:21,
47:15
**together** [5] - 8:11,
23:19, 26:3, 28:10,
43:14
**Tom** [1] - 4:18
**total** [1] - 34:12
**touchstone** [2] -
44:16, 44:18
**track** [1] - 48:21
**transcription** [1] -
51:9
**transfer** [10] - 10:11,
10:17, 10:19, 12:2,
12:4, 12:10, 13:3,
17:12, 17:14, 18:15
**translate** [2] - 6:1, 6:2
**translated** [1] - 6:4
**treat** [3] - 16:20,
20:14, 21:6
**treated** [2] - 20:17,
20:19
**trial** [9] - 8:4, 8:20,
14:8, 14:24, 19:21,
20:1, 45:4, 46:7
**trickier** [1] - 37:10
**true** [4] - 13:9, 13:13,
39:10, 39:12
**truly** [1] - 15:11
**try** [2] - 25:11, 49:25
**trying** [4] - 7:10,
16:17, 43:7, 45:23
**turn** [1] - 5:10
**Twelfth** [2] - 2:11,
51:14
**twice** [1] - 42:22
**two** [11] - 10:6, 10:23,
17:18, 23:19, 27:3,
31:20, 32:2, 33:19,
38:24, 46:4, 50:7
**Twombly** [1] - 26:25
**type** [1] - 15:4

## U

**ultimate** [1] - 17:9
**ultimately** [1] - 47:12
**um-hmm** [1] - 21:3
**unclean** [1] - 23:20
**under** [25] - 12:18,
12:22, 13:7, 18:11,
18:20, 18:24, 20:7,
22:3, 23:16, 24:10,
24:13, 24:17, 24:20,
27:8, 27:12, 27:13,
28:15, 30:18, 46:12,
46:15, 48:16, 48:22,
49:5, 49:16
**Under** [1] - 17:25
**underlying** [1] - 35:13
**understood** [3] -
43:17, 46:19, 50:15
**unfair** [1] - 25:16
**unfortunately** [1] -
6:10
**unison** [2] - 28:11,
30:8
**United** [2] - 4:24,
51:13
**UNITED** [3] - 1:1, 1:10,
2:6
**uniting** [1] - 10:23
**University** [2] - 2:3,
2:7
**unlawful** [1] - 23:21
**unless** [4] - 7:20,
19:23, 19:24, 47:16
**unlike** [1] - 12:11
**up** [15] - 6:9, 9:3, 9:14,
15:4, 16:8, 19:25,
21:8, 30:5, 36:25,
37:18, 38:20, 40:23,
43:19, 47:13, 50:13
**USQL** [2] - 23:25, 28:9

## V

**Vaughn** [1] - 4:19
**venue** [1] - 28:2
**version** [1] - 26:14
**versus** [2] - 18:7, 19:5
**vested** [1] - 18:12
**view** [1] - 35:3
**violate** [2] - 10:17,
40:7
**violation** [2] - 10:10,
11:2
**violations** [1] - 25:23
**vitiated** [2] - 32:14,
33:4
**vs** [1] - 1:6

## W

**wait** [1] - 18:2
**waive** [3] - 21:11,
37:6, 37:8
**waived** [4] - 5:22,
5:23, 21:10, 37:2
**waiver** [4] - 16:17,
21:18, 21:22, 23:3
**waiving** [2] - 38:1,
38:6
**wants** [1] - 47:5
**website** [1] - 6:1
**week** [2] - 6:6, 50:21
**weird** [1] - 33:23
**whatsoever** [2] - 15:4,
27:7
**whole** [3] - 26:12,
30:3, 30:4
**wish** [2] - 7:5, 7:16
**withdrew** [1] - 39:15
**WITNESSES** [3] - 3:2,
3:3, 3:6
**wonder** [1] - 22:24
**word** [5] - 12:6, 12:7,
24:12, 25:17, 29:11
**words** [2] - 17:23,
42:15
**World** [1] - 1:20
**worth** [1] - 38:12
**wow** [1] - 45:21
**written** [2] - 9:6, 34:15

## Y

**year** [4] - 37:20, 46:11,
48:15, 49:15
**yesterday** [1] - 41:17
**Yevoli** [1] - 1:13