# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

_____

| | | |
|---|---|---|
| ANDREA ROSSI and LEONARDO CORPORATION, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CASE NO. 1:16-cv-21199-CMA |
| THOMAS DARDEN; JOHN T. VAUGHN, INDUSTRIAL HEAT, LLC; IPH INTERNATIONAL B.V.; and CHEROKEE INVESTMENT PARTNERS, LLC, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |
| INDUSTRIAL HEAT, LLC and IPH INTERNATIONAL B.V., | ) ) | |
| Counter-Plaintiffs, | ) ) | |
| v. | ) ) | **OPPOSITION TO THIRD-PARTY DEFENDANTS' COMBINED MOTION TO DISMISS COUNTS III, IV, AND V OF COUNTER-PLAINTIFFS' THIRD AMENDED COUNTERCLAIMS AND THIRD-PARTY CLAIMS** |
| ANDREA ROSSI and LEONARDO CORPORATION, | ) ) ) | |
| Counter-Defendants, | ) ) | |
| and | ) ) | |
| J.M. PRODUCTS, INC.; HENRY JOHNSON; FABIO PENON; UNITED STATES QUANTUM LEAP, LLC; FULVIO FABIANI; and JAMES A. BASS, | ) ) ) ) ) | |
| Third-Party Defendants. | ) ) ) | |

# TABLE OF CONTENTS

**Page**

LEGAL STANDARD ................................................................................................. 1

ARGUMENT .......................................................................................................... 2

I.    Count III States A Valid Fraudulent Inducement Claim Against JMP And Johnson. ........................................................................................... 2

II.   Count IV States A Valid Florida Deceptive And Unfair Trade Practices Act ("FDUTPA") Claim Against The Third-Party Defendants. ......................... 4

    A.    Counter-Plaintiffs Are Allowed To Bring A FDUTPA Claim And A Breach Of Contract Claim Based On Overlapping Conduct. ............... 4

    B.    Count IV Otherwise Adequately Pleads A Violation Of FDUTPA .......... 5

III.  Count V States A Valid Breach of Contract Claim Against USQL And Fabiani ............................................................................................... 13

    A.    The USQL Agreement Was In Force During The Relevant Period. ....... 13

    B.    The Technical Consulting Agreement Is Enforceable As To Fabiani ........................................................................................... 14

    C.    Count V States Sufficient Bases For Fabiani's Breach Of The USQL Agreement ............................................................................ 15

CONCLUSION ...................................................................................................... 16

CERTIFICATE OF SERVICE ................................................................................. 18

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*A1 Procurement, LLC v. Hendry Corp.*,
2012 WL 6214546 (S.D. Fla. Dec. 12, 2012) .......................................................2

*Alexander/Davis Props., Inc. v. Graham*,
397 So.2d 699 (Fla. Dist. Ct. App. 1981) ...........................................................3

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................................................1, 7, 11

*City First Mortg. Corp. v. Barton*,
988 So.2d 82 (Fla. Dist. Ct. App. 2008) ...........................................................12

*Davis v. Powertel, Inc.*,
776 So.2d 971 (Fla. Dist. Ct. App. 2000) ..........................................................10

*Deere Constr., LLC v. Cemex Constr. Materials Fla., LLC*,
2016 WL 4374970 (S.D. Fla. July 26, 2016)........................................................6

*Degutis v. Fin. Freedom, LLC*,
978 F. Supp.2d 1243 (M.D. Fla. 2013).........................................................9, 10

*Delgado v. J.W. Courtesy Pontiac GMC-Truck, Inc.*,
693 So.2d 602 (Fla. Dist. Ct. App. 1997) ...........................................................4

*Dorestin v. Hollywood Imports, Inc.*,
45 So.3d 819 (Fla. Dist. Ct. App. 2010) ............................................................9

*Dorman v. Publix-Saenger-Sparks Theatres*,
184 So. 886 (Fla. 1938)........................................................................14, 15

*Five for Entm't S.A. v. Rodriguez*,
877 F. Supp.2d 1321 (S.D. Fla. 2012) .............................................................12

*Garcia v. United Auto Credit Corp.*,
2008 WL 141579 (S.D. Fla. Jan. 11, 2008) .....................................................1, 13

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Galstaldi v. Sunvest Cmtys. USA, LLC*,
  637 F. Supp.2d 1045 (S.D. Fla. 2009) ................................................................6, 7

*Geter v. Galardi South Enters., Inc.*,
  43 F. Supp.3d 1322 (S.D. Fla. 2014) ...............................................................1, 13

*Guarisma v. Microsoft Corp.*,
  2016 WL 4017196 (S.D. Fla. July 26, 2016)...............................................7, 10, 11

*Holser v. Alcon Labs., Inc.*,
  2012 WL 4792983 (S.D. Fla. Oct. 9, 2012) ...........................................................2

*Kia Motors Am. Corp. v. Butler*,
  985 So.2d 1133 (Fla. Dist. Ct. App. 2008) ......................................................9, 13

*Kenneth F. Hackett & Assocs. v. G.E. Capital Info. Tech. Solutions*,
  744 F. Supp.2d 1305 (S.D. Fla. 2010) .........................................................5, 9, 10

*Land Title of Cent. Fla., LLC v. Jimenez*,
  946 So.2d 90 (Fla. Dist. Ct. App. 2006) .............................................................12

*Leisure Founders, Inc. v. CUC Intern., Inc.*,
  833 F. Supp. 1562 (S.D. Fla. 1993) ......................................................................4

*Nature's Prods., Inc. v. Natrol, Inc.*,
  990 F. Supp.2d 1307 (S.D. Fla. 2013) ............................................................9, 10

*PNR, Inc. v. Beacon Prop. Mgmt., Inc.*,
  842 So.2d 773 (Fla. 2003)...........................................................................4, 9, 10

*Prestige Rests. & Entm't, Inc. v. Bayside Seafood Rest., Inc.*,
  2010 WL 680905 (S.D. Fla. Feb. 23, 2010) .....................................................1, 13

*Real Estate World Fla. Commercial, Inc. v. Piemat, Inc.*,
  920 So.2d 704 (Fla. Dist. Ct. App. 2006) ............................................................14

*Rodriguez v. Holder*,
  2011 WL 2911927 (S.D. Fla. Mar. 9, 2011)....................................................1, 13

*Rollins, Inc. v. Butland*,
  951 So.2d 860 (Fla. Dist. Ct. App. 2006) ..............................................................9

## TABLE OF AUTHORITIES
### (continued)

Page(s)

*Samuels v. King Motor Co. of Fort Lauderdale,*
    782 So.2d 489 (Fla. Dist. Ct. App. 2001) ............................................................10

*Sanchez-Knutson v. Ford Motor Co.,*
    52 F. Supp.3d 1223 (S.D. Fla. 2014) .....................................................................6

*Siever v. BWGaskets, Inc.,*
    669 F. Supp.2d 1286 (M.D. Fla. 2009) ..................................................................9

*Smith v. 2001 South Dixie Highway, Inc.,*
    872 So.2d 992 (Fla. Dist. Ct. App. 2004) .............................................................13

*Specialized Mach. Trans., Inc. v. Westphal,*
    872 So.2d 424 (Fla. Dist. Ct. App. 2004) .............................................................16

*Sundance Apartments I, Inc. v. Gen. Elec. Capital Corp.,*
    581 F. Supp.2d 1215 (S.D. Fla. 2008) ....................................................................7

*Terzis v. Pompano Paint & Body Repair, Inc.,*
    127 So.3d 592 (Fla. Dist. Ct. App. 2012) .......................................................14, 15

*Thor Bear, Inc. v. Crocker Mizner Park, Inc.,*
    648 So.2d 168 (Fla. Dist. Ct. App. 1994) ..............................................................3

*Toback v. GNC Holdings, Inc.,*
    2013 WL 5206103 (S.D. Fla. Sept. 13, 2013) ........................................................6

*Watts v. City of Port St. Lucie, Fla.,*
    2015 WL 7736532 (S.D. Fla. Nov. 30, 2015).............................1, 7, 10, 11, 14

*Ziemba v. Cascade Int'l, Inc.,*
    256 F.3d 1994 (11th Cir. 2001) ..............................................................................2

STATUTES

Florida Deceptive and Unfair Trade Practices Act ...............................................*passim*

Fla. Stat. 501.204(1) (2015)..............................................................................9, 10

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

OTHER AUTHORITIES

13 C.J., Contracts § 150 ............................................................................................14

Fed. R. Civ. P. 9(b) .......................................................................................2, 3, 4, 6

## COUNTER-PLAINTIFFS' OPPOSITION TO THIRD-PARTY DEFENDANTS' COMBINED MOTION TO DISMISS THIRD-PARTY CLAIMS

Counter-Plaintiffs Industrial Heat, LLC ("Industrial Heat") and IPH International, B.V. ("IPH") (collectively, "Counter-Plaintiffs") hereby respectfully oppose Third-Party Defendants J.M. Products, Inc. ("JMP"), Henry Johnson ("Johnson"), James A. Bass ("Bass"), United States Quantum Leap, LLC ("USQL"), and Fulvio Fabiani's ("Fabiani") (collectively, "Third-Party Defendants") Combined Motion to Dismiss Counts III, IV, and V of Counter-Plaintiffs' Third Amended Counterclaims and Third-Party Claims ([D.E. 90]) ("Motion").  The relevant pleading for purpose of the Motion to Dismiss is the Third Amended Answer, Additional Defenses, Counterclaims and Third-Party Claims ("3rd Amended AACT").  [D.E. 78].

### LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Watts v. City of Port St. Lucie, Fla.*, 2015 WL 7736532, at *8 (S.D. Fla. Nov. 30, 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  To plead a plausible claim for relief, a claimant need only "'plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Ashmore v. F.A.A.*, 2011 WL 3915752, at *2 (S.D. Fla. Sept. 2, 2011) (quoting *Iqbal*, 556 U.S. at 678).  Furthermore, in ruling on a motion to dismiss, a court considers not only the allegations in the relevant pleading (here, the 3rd Amended AACT), but also the exhibits attached thereto (and documents referenced therein that are central to a claim). *See Geter v. Galardi South Enters., Inc.*, 43 F. Supp.3d 1322, 1328 (S.D. Fla. 2014); *Rodriguez v. Holder*, 2011 WL 2911927, at *1 n.5 (S.D. Fla. Mar. 9, 2011); *Prestige Rests. & Entm't, Inc. v. Bayside Seafood Rest., Inc.*, 2010 WL 680905, at *3 (S.D. Fla. Feb. 23, 2010); *Garcia v. United Auto Credit Corp.*, 2008 WL 141579, at *1 (S.D. Fla. Jan. 11, 2008).

## ARGUMENT

### I.   Count III States A Valid Fraudulent Inducement Claim Against JMP And Johnson.

Third-Party Defendants' argument that Industrial Heat has not pled fraudulent inducement with specificity required by Federal Rule of Civil Procedure ("Rule") 9(b) is without merit.  As to Third-Party Defendants JMP and Johnson, Industrial Heat has alleged with considerable specificity (a) precisely what statements were made either in an specified document or orally at a specified meeting; (b) the time and place of each such statement and the person responsible for making same;[1] (c) the content of such statements and the manner in which they misled Counter-Plaintiffs (*e.g.*, that JMP was an affiliate of Johnson Matthey and was a real customer in Florida who needed steam power for processing its chemical products); and (d) what JMP and Johnson obtained as a result of such fraudulent statements (furtherance of the scheme to enable the 1MW Plant to be operated in Florida away from Counter-Plaintiffs' oversight and the other parties to charge Counter-Plaintiffs for unnecessary costs).  *See, e.g.*, 3rd Amended AACT at pp. 43-44, 46-47, 60-61 & at Ex. 17; *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1994, 1202 (11th Cir. 2001); *A1 Procurement, LLC v. Hendry Corp.*, 2012 WL 6214546, at *9 (S.D. Fla. Dec. 12, 2012); *Holser v. Alcon Labs., Inc.*, 2012 WL 4792983, at *10 (S.D. Fla. Oct. 9, 2012).

---

[1]   Industrial Heat has alleged that Johnson, both in his individual capacity and on behalf of JMP, made the following two fraudulent statements during his August 2014 meeting with Industrial Heat in North Carolina: (1) that JMP was a confidential subsidiary of Johnson Matthey p.l.c. ("Johnson Matthey") and (2) that Johnson Matthey was interested in using the E-Cat technology in connection with a confidential manufacturing process it wanted to operate in Florida.  *See* 3rd Amended AACT at pp. 46.  Industrial Heat has also alleged that in August 2014, Johnson on behalf of JMP falsely represented in writing that JMP "[was] owned by an entity formed in the United Kingdom, and none of Leonardo, Dr. Andrea Rossi, Henry W. Johnson nor any of their respective subsidiaries, directors, officers, agents, employees, affiliates, significant others, or relatives by blood or marriage [had] any ownership interest" in JMP.  *See id.* at p. 46-47.  As noted in the 3rd Amended AACT, the writing is contained as the last page of Plaintiffs' Complaint Exhibit B.  *See id.*

Third-Party Defendants' argument that Counter-Plaintiffs have not alleged that Johnson's written representation about JMP's ownership occurred before the Term Sheet was executed is equally unavailing. By alleging that Johnson's written representation induced them to enter into the Term Sheet, Counter-Plaintiffs are necessarily alleging that the written representation was made in connection with or before they executed the Term Sheet. *See* 3rd Amended AACT at p. 46-47. This allegation, accepted as true and construed in the light most favorable to Counter-Plaintiffs, establishes that Johnson made the written representation before or as part of the Term Sheet being executed. *See id.*[2]

Similarly, Third-Party Defendants' argument that Counter-Plaintiffs have not alleged that JMP or Johnson "knew the statements were false when made or were without knowledge of their truth or falsity" is also unavailing. *See* Motion at 7. Contrary to Third-Party Defendants' suggestion, the knowledge element of fraud is also satisfied "when a representation is made 'under circumstances in which the representor ought to have known, if he did not know, of the falsity thereof.'" *Thor Bear, Inc. v. Crocker Mizner Park, Inc.*, 648 So.2d 168, 172 (Fla. Dist. Ct. App. 1994) (quoting *Alexander/Davis Props., Inc. v. Graham*, 397 So.2d 699, 706 (Fla. Dist. Ct. App. 1981)). Alleging that JMP and Johnson made false representations *about themselves* (such that they would have been in the best position to know the truth of what they were representing) is sufficient to establish that JMP and Johnson, at the very least, "ought to have known" of the falsity of their statements. *See* 3rd Amended AACT at p. 46-47; *Thor Bear, Inc.*, 648 So.2d at 172. *See also* Rule 9(b) (mental states may be alleged in general terms).

---

[2]     If the Court concludes that Counter-Plaintiffs must explicitly allege that Johnson's written representation was made before the Term Sheet was executed, Counter-Plaintiffs can and will allege as such in a subsequent amendment.

The allegations supporting Industrial Heat's fraudulent inducement claim in the 3rd Amended AACT are detailed and clear, and the allegations regarding JMP and Johnson's fraudulent statements (both oral and written) are more than sufficient to meet the heightened pleading standard of Rule 9(b) and allow JMP and Johnson to frame a response to the allegations. *Leisure Founders, Inc. v. CUC Int'l, Inc.*, 833 F. Supp. 1562, 1574 (S.D. Fla. 1993). Accordingly, as to Count III, the Motion should be denied.

**II.     Count IV States A Valid Florida Deceptive And Unfair Trade Practices Act ("FDUTPA") Claim Against The Third-Party Defendants.**

   **A.     Counter-Plaintiffs Are Allowed To Bring A FDUTPA Claim And A Breach Of Contract Claim Based On Overlapping Conduct.**

Third-Party Defendants' argument that Counter-Plaintiffs are prohibited from bringing both a breach of contract claim and a FDUTPA claim based on the same or overlapping conduct is meritless.  Under Florida law, a claimant may bring both a breach of contract claim and a FDUTPA claim based on the same or overlapping conduct so long as the conduct underlying the breach of contract is itself unfair and/or deceptive.  *See PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So.2d 773, 777 n.2 (Fla. 2003) ("To the extent an action giving rise to a breach of contract . . . may also constitute an unfair or deceptive act, such a claim is and has always been cognizable under the FDUTPA."); *Delgado v. J.W. Courtesy Pontiac GMC-Truck, Inc.*, 693 So.2d 602, 609 (Fla. Dist. Ct. App. 1997) (finding that economic loss rule did not apply to bar FDUTPA claim based on a written sales contract);  *see also N. Am. Clearing, Inc. v. Brokerage Comp. Sys., Inc.*, 666 F. Supp.2d 1299, 1310 (M.D. Fla. 2009) (holding that conduct amounting to a breach of contract can also support a FDUTPA claim "if the conduct underlying the breach is, by itself, unfair or deceptive" (citing *PNR, Inc.*, 842 So.2d at 777 n.2)).

Counter-Plaintiffs' FDUTPA claim pleads much more than a mere breach of either the License Agreement or the USQL Agreement – the claim pleads in detail a deceptive and unfair scheme to mislead Counter-Plaintiffs, conceal relevant information from them, and manipulate them.  *See* 3rd Amended AACT at pp. 28-29, 43-52, 61-64.  For example, the claim pleads that all of the Third-Party Defendants, along with Counter-Defendants, deceived Counter-Plaintiffs about JMP's operations, its use of the steam provided by Counter-Defendants, and Bass's role as a JMP "Director of Engineering" employee.  *See id.* at pp. 47-50.  Thus, even though Counter-Plaintiffs' FDUTPA claim is supported by Johnson and JMP's conduct in fraudulently inducing Industrial Heat to enter into the Term Sheet and USQL and Fabiani's conduct in breaching the USQL Agreement, the FDUTPA claim is broader than just a simple breach of contract and involves clear and extensive allegations of deceptive and unfair conduct.  The FDUTPA claim against the Third-Party Defendants is thus perfectly permissible under Florida law.  *See, e.g., Kenneth F. Hackett & Assocs. v. G.E. Capital Info. Tech. Solutions*, 744 F. Supp.2d 1305, 1312 (S.D. Fla. 2010) ("Florida law permits a FDUTPA claim to travel with a related breach of contract claim if the FDUTPA claim challenges the acts underlying or giving rise to the breach, and does not rely solely on a violation of the Agreement as a basis for assertion of a FDUTPA claim" (internal quotation marks and citation omitted)).

**B.      Count IV Otherwise Adequately Pleads A Violation Of FDUTPA.**

Section II.B. of the Motion relies on one of the same arguments as Section II.A. of the Motion (namely, Counter-Plaintiffs cannot bring both a breach of contract claim and a FDUTPA

claim based on the same conduct). *See* Motion at 7-8, 13-15.  Counter-Plaintiffs have already

rebutted this argument in Section II.A. *supra*.[3]

The remaining arguments raised in Section II.B fall into three categories: (1) the specific

conduct alleged by Counter-Plaintiffs is not deceptive and/or unfair, namely because it is

irrelevant or because it exceeds the scope of Third-Party Defendants' respective contractual

relationships with Counter-Plaintiffs; (2) Counter-Plaintiffs have failed to adequately allege

causation; and (3) Counter-Plaintiffs have failed to adequately allege damages.  *See* Motion at 9-

15.  None of these remaining arguments, however, is meritorious.

*As to the first argument*, as a general matter, Third-Party Defendants take the pled

individual acts and practices out of context and ignore Counter-Plaintiffs' allegations that each

act and practice was part of an elaborate scheme among Counter-Defendants and Third-Party

Defendants to deceive and manipulate Counter-Plaintiffs.  For example, Johnson and JMP's

deception about the ownership and operations of JMP was used to induce Counter-Plaintiffs to

allow the 1MW Plant to be moved to Florida out of their direct control.[4]  Likewise, Johnson,

---

[3]       To the extent that Third-Party Defendants argue that a claim under FDUTPA must satisfy
the heightened pleading standard of Rule 9(b) (*see* Motion at 15), such argument is clearly
erroneous. *See Deere Constr., LLC v. Cemex Constr. Materials Fla., LLC*, 2016 WL 4374970, at
*8 (S.D. Fla. July 26, 2016) ("[t]he requirements of Rule 9(b) do not apply to claims under the
FDUTPA" because, among other things, FDUTPA does not require the elements of fraud and it
reaches deceptive and unfair practices that need not involve fraud (quoting *Galstaldi v. Sunvest
Cmtys. USA, LLC*, 637 F. Supp.2d 1045, 1058 (S.D. Fla. 2009))); *Sanchez-Knutson v. Ford
Motor Co.*, 52 F. Supp.3d 1223, 1239 (S.D. Fla. 2014) (citing *Toback v. GNC Holdings, Inc.*,
2013 WL 5206103, at *2 (S.D. Fla. Sept. 13, 2013) ("[T]his Court is persuaded that Rule 9(b)
does not apply to FDUTPA claims."). Even if Rule 9(b)'s heightened pleading standard applied
to FDUTPA claims, Counter-Plaintiffs have more than satisfied it by specifically alleging that
Third-Party Defendants engaged in a variety of deceptive acts and/or unfair practices against
both Counter-Plaintiffs, and that such acts and practices have caused both Counter-Plaintiffs to
suffer harm. *See* 3rd Amended AACT at pp. 28-29, 43-52, 61-64.

[4]       Contrary to Third-Party Defendants' suggestion, that "it was contemplated in the Term
Sheet, and even in the License Agreement, that Leonardo and Rossi would operate the Plant"

Bass, and JMP's false statements about the power they were receiving and using from the 1MW Plant were designed, among other things, to reinforce Rossi and Leonardo's false claims about how successfully the Plant was operating.  And Fabiani and USQL's refusal to disclose information they were required to provide under the USQL Agreement furthered Counter-Defendants' and Third-Party Defendants' deceptive and unfair scheme by withholding from Counter-Plaintiffs information that would have revealed the scheme and by providing Counter-Plaintiffs the false impression that everything at the Doral location was operating appropriately and not against Counter-Plaintiffs' interests.  *See* 3rd Amended AACT at pp. 43-44, 46-50, 61-64. *See also Galstaldi*, 637 F. Supp.2d at 1056 ("To state a claim under the FDUTPA, one need not show the defendant was the principal actor involved in the violative acts, or that the defendant initiated those acts."); *Sundance Apartments I, Inc. v. Gen. Elec. Capital Corp.*, 581 F. Supp.2d 1215, 1222 (S.D. Fla. 2008) ("[U]nder Florida law, it is sufficient to allege that a party directly participated in a violation of the FDUTPA, even if that violation was initiated by another."). Because the allegations as pled in the 3rd Amended AACT must be accepted as true, Third-Party Defendants' request that the Court question or dispute those allegations is improper.  *See Guarisma v. Microsoft Corp.*, 2016 WL 4017196, at *2 (S.D. Fla. July 26, 2016); *Watts*, 2015 WL 7736532, at *8 (quoting *Iqbal*, 556 U.S. at 678).

In addition, Third-Party Defendants make a variety of arguments as to relevance premised on the same fundamental flaw.  They argue that lies about the power JMP was

---

does not render the relocation of the Plant from North Carolina to Florida inconsequential to Counter-Plaintiffs.  *See* Motion at 10.  Clearly Counter-Plaintiffs would have been better able to oversee or monitor the operation of the Plant if that operation occurred at or near Industrial Heat's place of business in North Carolina.  Relocating the Plant to Florida was thus critical to the deceptive and unfair scheme by making it more difficult for Counter-Plaintiffs to monitor the operations and detect the scheme.

receiving from Counter-Defendants,[5] deception about the ownership and operations of JMP,[6] and concealing from Counter-Plaintiffs that JMP was a fake operation (including by hiring Bass as a fake "Director of Engineering" for JMP and restricting Counter-Plaintiffs' access to the Doral facility)[7] are irrelevant because none of these actions breached the License Agreement, none prove that Counter-Defendants did not achieve the energy output (the COP level) they claim, and none caused Counter-Defendants to sue Counter-Plaintiffs for breach of the License Agreement. *See* Motion at 10-12.  They also argue that USQL and Fabiani's failure to provide information and/or materials to Counter-Plaintiffs under the USQL Agreement is irrelevant because it was not related to the Plant's relocation to Florida, providing operation results to Counter-Plaintiffs, or the negotiation and demand for final payment under the License Agreement.  *See id.* at 14. But the FDUTPA claim is predicated on *all* of the unfair and deceptive conduct of Counter-Defendants and Third-Party Defendants, whether that conduct breached the License Agreement or not.  *See* 3rd Amended AACT at 62-63.  And the damages caused to Counter-Plaintiffs extend beyond recovering the $11.5 million they paid Counter-Defendants, to include (for example) payments they made to Counter-Defendants and Third-Party Defendants while they were supposedly conducting and/or testing commercial operations in Florida that turned out to be a sham.  *See id.* at 63-64.

---

[5]     *See* Motion at 11 ("The amount of energy being received and used by JMP is not related to and does not allow the inference that the Plant is operating at the requisite COP, only that JMP is receiving such amount of energy.").  *See also* Motion at 12 ("Bass' representation that JMP was satisfied with the steam energy being received has no bearing on the performance or COP of the Plant, which was being measured and monitored in connection with the testing.").

[6]     *See* Motion at 10 ("The ownership of an entity or the operations conducted thereby is irrelevant and immaterial to the lease of an E-Cat plant or purchase of energy.").

[7]     *See* Motion at 11, 12.

Furthermore, Third-Party Defendants' suggestion that a FDUTPA claim against a defendant is limited to the scope of the contractual relationship that defendant has with a plaintiff is unfounded.[8]  Third-Party Defendants cite to no authority stating that a FDUTPA claim in limited in such a manner.  On the contrary, a FDUTPA claim does not require the existence of contractual privity and may be based on a broad variety of conduct.  *See* Fla. Stat. § 501.204(1); *Nature's Prods., Inc. v. Natrol, Inc.*, 990 F. Supp.2d 1307, 1322 (S.D. Fla. 2013) ("'A claim under FDUTPA is not defined by the express terms of a contract, but instead encompasses unfair and deceptive practices arising out of business relationships" (quoting *Siever v. BWGaskets, Inc.*, 669 F. Supp.2d 1286, 1292 (M.D. Fla. 2009))); *Kia Motors Am. Corp. v. Butler*, 985 So.2d 1133, 1140 (Fla. Dist. Ct. App. 2008) (citing *Rollins, Inc. v. Butland*, 951 So.2d 860, 869 (Fla. Dist. Ct. App. 2006)); *see also Degutis v. Fin. Freedom, LLC*, 978 F. Supp.2d 1243, 1264 (M.D. Fla. 2013); *Kenneth F. Hackett & Assocs.*, 744 F. Supp.2d at 1313 (upholding FDUTPA claim against contracting party and non-contracting party because claim was based on deceptive and unfair acts of both, even though the acts also supported a breach of contract against contracting party); *PNR, Inc.*, 842 So.2d at 777.  While Counter-Plaintiffs' contracts with Third-Party Defendants may help define the scope of the parties' business relationships, they do not impose a limit on the scope of a FDUTPA claim Counter-Plaintiffs can bring.  *See Dorestin v. Hollywood Imports, Inc.*, 45 So.3d 819, 832 (Fla. Dist. Ct. App. 2010) ("Although the express terms of a

---

[8]  *See* Motion at 11 ("[T]he purported hiring of a fake engineer and restriction of access to JMP's facility and operation are also not deceptive or unfair because pursuant to the Term Sheet, JMP, Johnson, and Bass did not have a business relationship with Counter-Plaintiffs for anything other than the rental of the Plant . . . and access to JMP's facility or operation was never promised or required. Moreover, the Term Sheet does not require JMP, Johnson, or Bass to provide Counter-Plaintiffs with any details concerning JMP's facility or its operations therein."). *See also* Motion at 12 ("[T]he allegations of [Bass's] wrongdoing alleged by Counter-Plaintiffs arise well after Counter-Plaintiffs entered into the License Agreement and Term Sheet and were not the result of any business relationship between Bass and Counter-Plaintiffs.").

contract shed light upon the course of the business dealings that may give rise to a claim under FDUTPA, they are not dispositive."). Counter-Plaintiffs may rely in support of their FDUTPA claim on any of Third-Party Defendants' unfair and/or deceptive acts or practices "in the conduct of any trade or commerce," even if outside the scope of their contractual agreements with Third-Party Defendants.[9] *See* 3rd Amended AACT at pp. 28-29, 43-52, 61-64; Fla. Stat. § 501.204(1); *Nature's Prods., Inc.*, 990 F. Supp.2d at 1322; *Kenneth F. Hackett & Assocs.*, 744 F. Supp.2d at 1312-13.[10]

*As to the second argument*, Third-Party Defendants falter in two respects. First, contrary to Third-Party Defendants' assertion, Counter-Plaintiffs have alleged that certain of Third-Party Defendants' acts and practices caused certain harms. *See* 3rd Amended AACT at pp. 43-44, 46-

---

[9]    Third-Party Defendants also erroneously contend that Counter-Plaintiffs are required to allege independent corroboration for certain facts which they have alleged in support of their FDUTPA claim. *See* Motion at 12 ("Counter-Plaintiffs fail to set forth any facts to support the conclusion that Bass was not the Director of Engineering or that JMP was not satisfied with the steam energy or that it was not using the steam energy."). Because the 3rd Amended AACT's allegations must be accepted as true, the Court must reject Third-Party Defendants' efforts to dispute the allegations. *See Guarisma*, 2016 WL 4017196, at *2; *Watts*, 2015 WL 7736532, at *8. In any event, if there are any allegations in the 3rd Amended AACT that the Court concludes require independent corroboration, Counter-Plaintiffs can and will provide such corroboration in a subsequent amendment.

[10]    To the extent that Third-Party Defendants attempt to argue that "restricting access to areas of a private facility, especially when under no contractual obligation to do so, is not deceptive or unfair" as a matter of law, they cite to no authority (because there is none) supporting this proposition. To the contrary, "deceptive" and "unfair" in the FDUTPA context are defined in exceptionally broad terms, and whether conduct is "deceptive" and/or "unfair" is based on the circumstances. *See Degutis*, 978 F. Supp.2d at 1264 ("A deceptive practice is one that is 'likely to mislead' consumers" (quoting *Davis v. Powertel, Inc.*, 776 So.2d 971, 974 (Fla. Dist. Ct. App. 2000))); *PNR, Inc.*, 842 So.2d at 777 ("An unfair practice is 'one that 'offends established public policy' and one that is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers'" (quoting *Samuels v. King Motor Co. of Fort Lauderdale*, 782 So.2d 489, 499 (Fla. Dist. Ct. App. 2001))).

50, 62-64.[11]  Second (and more importantly), Counter-Plaintiffs have sufficiently alleged

causation because they have alleged that the deceptive and manipulative scheme as a whole

caused the alleged harms.  *See id.* at pp. 62-64.  As with their first argument in support of

dismissing Count IV, Third-Party Defendants again take the pled individual acts and practices

out of context and ignore Counter-Plaintiffs' allegations that each act and practice was part of an

elaborate scheme involving Third-Party Defendants.  *See* pages 6-7 *supra*.  And again, Third-

Party Defendants' request that the Court question or dispute those allegations is improper and

must be rejected.  *See id.*; *Guarisma*, 2016 WL 4017196, at *2; *Watts*, 2015 WL 7736532, at *8

(quoting *Iqbal*, 556 U.S. at 678).

Finally, *as to the third argument*, Third-Party Defendants take the inconsistent position

that Counter-Plaintiffs have simultaneously (1) alleged in a conclusory fashion that they "have

suffered and continue to suffer actual damages" and (2) pled various types of harms that are non-

recoverable consequential damages under FDUTPA.  *See* Motion at 13, 15.  As to the first aspect

of this argument, Third-Party Defendants mischaracterize the 3rd Amended AACT as merely

alleging that Counter-Plaintiffs "have suffered and continue to suffer actual damages," when the

3rd Amended AACT actually pleads multiple harms to Counter-Plaintiffs in support of the

FDUTPA claim (as Third-Party Defendants acknowledge in the second aspect of this

---

[11]     For example, Counter-Plaintiffs have alleged that JMP, Johnson, and Bass's
misrepresentations about JMP caused Counter-Plaintiffs to agree to the relocation of the Plant to
Florida away from Counter-Plaintiffs' oversight and control.  *See* 3rd Amended AACT at pp. 43-
44, 46-47, 62-63.  Counter-Plaintiffs have also alleged that Third-Party Defendants'
misrepresentations about the operations of the Plant caused Counter-Plaintiffs to be ignorant
and/or misinformed about the Plant's true operations.  *See id.* at pp. 47-50, 62-64.  Further,
Counter-Plaintiffs have alleged that Third-Party Defendants' performance of and charging for
work related to the operation of the Plant in the Doral facility caused Counter-Plaintiffs to pay
for expenses that were not truly incurred to Counter-Plaintiffs' benefit.  *See id.* at pp. 63-64.

argument).[12]  *See* Motion at 13, 15; 3rd Amended AACT at pp. 63-64.  As to the second aspect of

this argument, Third-Party Defendants mischaracterize the alleged harms as (and fail to provide

any support for their contention that the alleged harms "are more akin to") consequential

damages.  *See id*.  In reality, such harms directly and naturally flowed from Third-Party

Defendants' deceptive and/or unfair acts that formed part of the elaborate scheme orchestrated

by Counter-Defendants and Third-Party Defendants to deceive and manipulate Counter-

Plaintiffs.[13]  *See* Motion at 13; 3rd Amended AACT at pp. 62-64; *Land Title of Cent. Fla., LLC v.

Jimenez*, 946 So.2d 90, 93 (Fla. Dist. Ct. App. 2006) ("Special [*i.e.*, consequential] damages are

those that do not necessarily result from the wrong or breach of contract complained of, or which

the law does not imply as a result of that injury, even though they might naturally and

proximately result from the injury. . . . General [*i.e.*, direct or actual] damages, on the other hand,

are damages that the law presumes actually and necessarily result from the alleged wrong or

breach." (internal citations omitted)).  Contrary to Third-Party Defendants' suggestion, Counter-

Plaintiffs' alleged harms are not the sorts of damages that courts have determined to be

consequential and thus not recoverable under FDUTPA.  *See Five for Entm't S.A. v. Rodriguez*,

877 F. Supp.2d 1321, 1331 (S.D. Fla. 2012) (lost profits); *City First Mortg. Corp. v. Barton*, 988

---

[12]     These harms include, but are not limited to: (a) the transfer of the Plant to Florida to be
outside Counter-Plaintiffs' direct control; (b) Counter-Plaintiffs' misinformation and/or
ignorance about the operations of the Plant in the Doral facility and the measurements of such
operations; and (c) Counter-Plaintiffs paying "for work that one or more of the [Counter- or
Third-Party] Defendants was performing not to benefit Counter-Plaintiffs, but in fact with the
goal of harming Counter-Plaintiffs" (such as "service payments to USQL, Fabiani, and Penon;
expense reimbursements to Leonardo, Rossi, USQL, Fabiani, and Penon (including for travel,
apartment rentals, visa-related costs, repair work to the Plant, patent attorneys, and patent
application fees); and payments for equipment (or the transportation of equipment) to be used –
or purportedly to be used – by the [Counter- or Third-Party] Defendants").  3rd Amended AACT
at pp. 63-64.

[13]     *See e.g.* footnote 12 *supra*.

So.2d 82, 86 (Fla. Dist. Ct. App. 2008) (loss of prospective loan from third party); *Kia Motors Am. Corp.*, 985 So.2d at 1140 (repair damages or resale damages); *Smith v. 2001 South Dixie Highway, Inc.*, 872 So.2d 992, 994 (Fla. Dist. Ct. App. 2004) (termination of employment by third party).

 For all of the reasons stated above, Counter-Plaintiffs have more than adequately stated a FDUTPA claim against Third-Party Defendants and the Motion as to Count IV should be denied.

**III. Count V States A Valid Breach Of Contract Claim Against USQL And Fabiani.**

 **A. The USQL Agreement Was In Force During The Relevant Period.**

 USQL and Fabiani's argument that the USQL Agreement was not in effect during 2015 and 2016 is unavailing.  Exhibit 21 to the 3rd Amended AACT contains various emails from 2016 involving Fabiani and Industrial Heat personnel demonstrating that the USQL Agreement had been extended into 2016.  *See* 3rd Amended AACT Ex. 21.  Specifically, within these emails Fabiani proposes in April 2016 continuing, and even provides a draft of his proposed renewal of, the USQL Agreement.  *See id.* at pp. 2-4.  He also sends an invoice for the services he performed in March 2016 pursuant to the operative USQL Agreement.  *See id.* at p. 3-4.  As these emails are attached as an exhibit to the 3rd Amended AACT, their content must be considered (and indeed, accepted as true) for purposes of the instant Motion.  *See Geter*, 43 F. Supp.3d at 1328; *Rodriguez*, 2011 WL 2911927, at *1 n.5; *Prestige Rests. & Entm't, Inc.*, 2010 WL 680905, at *3; *Garcia*, 2008 WL 141579, at *1.  Accepted as true, the emails in Exhibit 21 demonstrate and allow the Court to draw the reasonable inference that the USQL Agreement was in effect in 2015 and early 2016, and thus Counter-Plaintiffs may allege that USQL and Fabiani breached the

USQL Agreement during that time.  *See* 3rd Amended AACT Ex. 21 at pp. 2-4; *Watts*, 2015 WL

7736532, at *8; *Ashmore*, 2011 WL 3915752, at *2.[14]

> **B.      The Technical Consulting Agreement Is Enforceable As To Fabiani.**

Fabiani's argument that the USQL Agreement is not enforceable as to him for lack of

consideration is without merit.  Contrary to Fabiani's narrow interpretation of consideration, "for

a contract to be supported by consideration, 'it is not necessary that a benefit should accrue to the

person making the promise.'"  *Terzis v. Pompano Paint & Body Repair, Inc.*, 127 So.3d 592, 596

(Fla. Dist. Ct. App. 2012) (quoting *Real Estate World Fla. Commercial, Inc. v. Piemat, Inc.*, 920

So.2d 704, 706 (Fla. Dist. Ct. App. 2006)).  Instead, "'[i]t is sufficient that something of value

flows from the person to whom it was made, or that [the person] suffers some prejudice or

inconvenience and that the promise is the inducement to the transaction.'"  *Id*.  Indeed,

> [t]he consideration required to support a simple contract need not be money or
> anything having monetary value, but may consist of either a benefit to the
> promisor or a detriment to the promisee. . . . ["T]here is consideration if the
> promisee, in return for the promise, does anything legal which he is not bound to
> do, or refrains from doing anything which he has a right to do, whether there is
> any actual loss or detriment to him or actual benefit to the promisor[.]"

*Dorman v. Publix-Saenger-Sparks Theatres*, 184 So. 886, 290-91 (Fla. 1938) (quoting 13 C.J.,

Contracts § 150, at pp. 315, 316).

The allegations of the 3rd Amended AACT and the language of the USQL Agreement and

Joinder demonstrate that the Joinder caused both (1) a benefit or something of value to flow from

Industrial Heat directly to Fabiani (*e.g.*, access to Industrial Heat's confidential and valuable

business information; access to records and other types of documents relating to Industrial Heat's

---

[14]      There is also a written extension of the USQL Agreement that is signed by Fabiani but
was not attached to the 3rd Amended AACT.  Counter-Plaintiffs will produce that extension in
discovery, and they can, if the Court so instructs, include that document as an exhibit to a 3rd
Amended AACT.

business; and the opportunity to participate in the development of technology with Industrial Heat) *and* (2) a detriment, prejudice, or inconvenience to be imposed upon Industrial Heat (*e.g.*, disclosure of its confidential and valuable information to Fabiani and less control over its records and other types of documents related to its business to the extent provided to Fabiani; and further obligations to pay for the protection of new technological developments). *See* 3rd Amended AACT at pp. 40-41, 49-50, 64-66 & Ex. 11; *Dorman*, 184 So. at 290-91; *Terzis*, 127 So.3d at 596. Such allegations and language, accepted as true and construed in the light most favorable to Counter-Plaintiffs, establish sufficient consideration for the Joinder. *See* 3rd Amended AACT Ex. 11.

Furthermore, while Fabiani claims that the consideration to be paid to USQL cannot be considered in connection with his Joinder because the USQL Agreement is dated prior to his execution of the Joinder, this ignores the language and structure of the USQL Agreement. The Joinder is not separate from the USQL Agreement, but part thereof, and it clearly identifies Fabiani as entering the Joinder as "the sole member and the sole manager of USQL." *Id.* Ex. 11, at p. 9. It is thus clear that the requirement of the Joinder was part and parcel of the USQL Agreement and that Fabiani, as the sole member and manager of USQL, reaped the benefits that were bestowed upon USQL pursuant to the USQL Agreement (including the consultant fee paid to USQL and the reimbursement for Fabiani's apartment rental). *See id.* Ex. 11, at p. 7.

**C.     Count V States Sufficient Bases For Fabiani's Breach Of The USQL Agreement.**

Finally, Fabiani argues that he is not bound by Section 3 of the USQL Agreement requiring USQL to "perform the services described in this Agreement in good faith and in a manner reasonably believed by USQL to be in and not opposed to the best interests of Industrial Heat." This argument, however, provides no benefit to Fabiani.

First, the 3rd Amended AACT alleges that Sections 3, 6 and 7 of the USQL Agreement were breached, and Fabiani makes no argument that he is not bound by Sections 6 and 7. As a consequence, the breach of contract claim stands in any event against Fabiani.

Second, Fabiani reads the allegations in the 3rd Amended AACT too narrowly. While Industrial Heat states that Section 3 of the USQL Agreement was breached by USQL and Fabiani assisting Rossi and Leonardo in their deceptive operations in Florida, it also alleges that such conduct violated Section 7 of the USQL Agreement. *See* 3rd Amended AACT at p. 66 ("USQL and Fabiani also breached the USQL Agreement by failing to provide Industrial Heat with information relating to the scheme to manipulate the operation and testing of the Plant. USQL and Fabiani had an affirmative obligation to inform Industrial Heat of the scheme to manipulate the Plant's operations and the testing. Such information would constitute a 'New Development' that USQL and Fabiani were required to disclose to Industrial Heat pursuant to the USQL Agreement."). There is no requirement that Fabiani's conduct can only violate one section of the USQL Agreement or another; the same conduct can violate multiple provisions of the USQL Agreement. That is the case here, where Sections 3 and 7 of the USQL Agreement are not only consistent with one another, but in fact are to be construed together and overlap to a degree. *See Specialized Mach. Trans., Inc. v. Westphal*, 872 So.2d 424, 426 (Fla. Dist. Ct. App. 2004) (the meaning of a contract "is not to be gathered from any one phrase, but from a general view of the whole writing, with all of its parts being compared, used, and construed, each with reference to the others").

## CONCLUSION

For the foregoing reasons, this Court should deny Third-Party Defendants' Motion to Dismiss the Third-Party Claims in the 3rd Amended AACT in its entirety.

Dated:       January 3, 2017                    Respectfully submitted,


/s/ Christopher R. J. Pace
Christopher R.J. Pace
cpace@jonesday.com
Florida Bar No. 721166
Christopher M. Lomax
clomax@jonesday.com
Florida Bar No. 56220
Erika S. Handelson
Florida Bar No. 91133
ehandelson@jonesday.com
Christina T. Mastrucci
Florida Bar No. 113013
JONES DAY
600 Brickell Avenue, Suite 3300
Miami, Florida 33131
Tel: 305-714-9700
Fax: 305-714-9799

*Attorneys for Defendants and Counter-Plaintiffs*

- 17 -

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on January 3, 2017, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record for the parties.

*/s/ Christina T. Mastrucci*
Christina T. Mastrucci