UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:16-cv-21199-CIV-ALTONAGA/O'Sullivan

ANDREA ROSSI and LEONARDO
CORPORATION,

    Plaintiffs,

v.

THOMAS DARDEN; JOHN T. VAUGHN;
INDUSTRIAL HEAT, LLC;
IPH INTERNATIONAL B.V.;
And CHEROKEE INVESTMENT
PARTNERS, LLC,

    Defendants.
_____
INDUSTRIAL HEAT, LLC and
IPH INTERNATIONAL B.V.,

    Counter-Plaintiffs,

v.

ANDREA ROSSI and LEONARDO
CORPORATION,

    Counter-Defendants,

v.

J.M. PRODUCTS, INC.; HENRY
JOHNSON; FABIO PENON;
UNITED STATES QUANTUM LEAP, LLC;
FULVIO FABIANI; and JAMES A. BASS,

    Third-Party Defendants.
_____/

**THIRD-PARTY DEFENDANTS' *COMBINED* REPLY TO COUNTER-PLAINTIFFS' RESPONSE IN OPPOSITION TO THIRD-PARTY DEFENDANTS' COMBINED MOTION TO DISMISS COUNTS III, IV, AND V OF COUNTER-PLAINTIFFS' THIRD AMENDED COUNTERCLAIMS AND THIRD-PARTY CLAIMS**

Third-Party Defendants, J.M. Products, Inc. ("JMP"), Henry Johnson ("Johnson"), James A. Bass ("Bass"), United States Quantum Leap, LLC ("USQL"), and Fulvio Fabiani ("Fabiani")

1

(collectively, the "Third-Party Defendants"), by and through their undersigned counsel, hereby collectively reply in support of their *Combined* Motion to Dismiss Counts III, IV, and V of Counter-Plaintiffs' Third Amended Counterclaims and Third-Party Claims (the "Counterclaims and Third-Party Claims," **ECF No. 78**).

## ARGUMENT

### I. Count III: Fraudulent Inducement

Counter-Plaintiffs seem to concede they have not explicitly satisfied the pleading requirements for a cause of action for fraudulent inducement and instead argue that the shortcomings in their Counterclaims and Third-Party Claims are easily remedied by extended inferences about what they purport to allege. First, Counter-Plaintiffs maintain that because they have alleged that Johnson's written representations induced them to enter into the Term Sheet, they are *by extension* alleging that the written representation was made in connection with, or even before, they executed the Term Sheet. This ignores the fact that the Federal Rule of Civil Procedure 9(b) requires a heightened level of specificity that extends beyond the inference that because they are attempting to allege a cause of action for fraud in the inducement they are, in fact, sufficiently alleging that a representation was made at a point in time that supports the cause of action. Similarly, Counter-Plaintiffs maintain that because the knowledge element may be satisfied when a representation is made under circumstances in which the representor ought to have known of the falsity thereof that they have sufficiently done so here. Industrial Heat ("IH") has *not* alleged, even generally, that JMP or Johnson knew the statements were false when made, were without knowledge of their truth or falsity, or should have known the statements were false. Instead, Counter-Plaintiffs contend that given the allegations in the Counterclaims and Third-Party Claims, JMP and Johnson should infer what exactly is being alleged. However, this argument also fails to consider the heightened pleading requirement under Rule 9(b).

Accordingly, JMP and Johnson respectfully submit that Count III of the Counterclaims and Third-Party Claims should be dismissed.

### II. Count IV: Florida Deceptive and Unfair Trade Practices Act

**A. Counter-Plaintiffs fail to plead sufficient facts separate from alleged violations of the License Agreement, Term Sheet, and USQL Agreement**

As stated in the Motion to Dismiss, "a breach of contract claim without significant allegations of unfair or deceptive conduct is insufficient to state a cause of action under

FDUTPA. Mere allegations of intentional breach of contract are insufficient to state a claim under the statute." *Hache v. Damon Corp.*, No. 8:07CV1248T30EAJ, 2008 WL 912434, at *2 (M.D. Fla. Apr. 1, 2008) (quoting *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So.2d 773, 777 n. 2 (Fla.2003)). Here, the majority of the acts or omissions alleged by Counter-Plaintiffs are merely allegations of violations of the License Agreement, Term Sheet, and USQL Agreement. Counter-Plaintiffs argue that their FDUTPA claim pleads that Third-Party Defendants deceived Counter-Plaintiffs about JMP's operations, its use of the steam provided by Counter-Defendants, and Bass's role at JMP. However, these acts alone are not likely to mislead consumers or offend established public policy, and are not immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. This is particularly true considering that the Term Sheet does not require Third-Party Defendants to disclose any such information and the crux of the scheme alleged by Counter-Plaintiffs is the alleged manipulation of the testing on the Plant. To be clear, Counter-Plaintiffs do not allege that Third-Party Defendants were responsible for any such manipulation of data.

### B. Counter-Plaintiffs fail to plead sufficient facts to show any deceptive act or practice by JMP, Johnson, or Bass that directly resulted in actual damages

As noted in the Motion to Dismiss, Counter-Plaintiffs lump Third-Party Defendants together with Counter-Defendants in an alleged common scheme to defraud Counter-Plaintiffs by manipulating the operation of the Plant during the Guaranteed Performance test and demanding payment of $89 million. However, the Counterclaims and Third-Party Claims are devoid of any specific allegations establishing deceptive acts or unfair practices or how each Third-Party Defendant's alleged acts caused any *actual* damage to Counter-Plaintiffs.

"Under FDUTPA, a 'deceptive act' is 'one that is likely to mislead consumers and an unfair practice is one that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" *Hennegan Co. v. Arriola*, 855 F.Supp.2d 1354, 1360-1361 (S.D. Fla. 2012) (citing *Washington v. LaSalle Bank Nat'l Ass'n.*, 817 F.Supp.2d 1345, 1350 (S.D. Fla. 2011)). "[D]eception occurs if there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *Garcia v. Kashi Co.*, 43 F.Supp.3d 1359, 1384 (S.D. Fla. 2014) (citing *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So.2d 773, 777 (Fla.2003)); *see also Zlotnick v. Premier Sales Grp., Inc.*, 480 F.3d 1281, 1284 (11th Cir.2007). In addition,

3

there must be "a showing of probable, not possible deception that is likely to cause injury to a reasonable relying consumer." *Id.* (internal citations omitted).

Contrary to Counter-Plaintiffs argument in their Opposition, Third-Party Defendants do not take pled individual acts and practices out of context, but instead provide the necessary context of the alleged acts within the general scheme alleged by Counter-Plaintiffs to be deceptive. In fact, the Term Sheet and the License Agreement shed some much needed light on the contacts and business relationships between Counter-Plaintiffs and Third-Party Defendants. It is clear from the context of JMP, Johnson, and Bass's interaction and relationship with Counter-Plaintiffs that the acts complained of in the Counterclaims and Third-Party Claims are not deceptive, as they are not "likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *Garcia v. Kashi Co.*, 43 F.Supp.3d 1359, 1384 (S.D. Fla. 2014). Stated differently, it is not reasonable to assume Counter-Plaintiffs, who had already invested over $10 million before the involvement of the Third-Party Defendants and were slated to invest another $89 million in the Plant and E-Cat technology, would simply rely on JMP, Johnson, or Bass's alleged misrepresentations given their arms-length business relationship. Neither JMP, Johnson, nor Bass were alleged to be involved prior to the execution of the License Agreement nor were they in the business of developing or operating E-Cat plants or technology. Accordingly, Counter-Plaintiffs cannot contend that they reasonably relied on any of JMP, Johnson, or Bass's alleged misrepresentations. Furthermore, a reasonable consumer investing over $100 million in the Plant and E-Cat technology would certainly conduct a high level of due diligence prior to entering into *any* agreement relating to same.

As noted in the Motion to Dismiss, several of the Counter-Plaintiffs' allegations are belied by the License Agreement and the Term Sheet, as it was contemplated in both documents that Leonardo and Rossi would operate the Plant during the Guaranteed Performance test. "Each of Leonardo and Rossi will use their commercially reasonably (sic) best efforts to cause Guaranteed Performance to be achieved, including making repairs, adjustments and alterations to the Plant as needed to achieve Guaranteed Performance." (**ECF No. 1-2**, pg. 24, License Agreement Section 5.) Similarly, the Term Sheet expressly provided that Leonardo and Rossi would operate the Plant with the assistance of "*any others designated by IH*" at no additional cost to IH, IH would maintain the Plant, and IH "may provide whatever security, monitoring and control measures it deems appropriate to protect and monitor the 1MW Plant and related

equipment." (**ECF No. 78-17**, pg. 2 (emphasis supplied).) Given that IH negotiated its ability to provide for monitoring and control measures, a consumer acting reasonably under the circumstances would certainly have provided such monitoring and control measures for the testing of the Plant rather than rely on any alleged representation by JMP, Johnson, or Bass, who were expressly restricted from accessing the Plant.

In their Opposition, Counter-Plaintiffs argue that they have sufficiently alleged causation because they alleged that the overall scheme caused them harm. *See* Opposition at 11. However, Counter-Plaintiffs have not alleged that the acts of JMP, Johnson, or Bass *directly* caused any of their alleged damages and accordingly have not established the element of causation. Similarly, Counter-Plaintiffs have not alleged any damages that actually and necessarily resulted from JMP, Johnson, or Bass's alleged wrongdoing. Furthermore, the cases cited by Counter-Plaintiffs do not support any of the alleged damages (i.e. Counter-Plaintiffs do not allege lost profits, loss of a prospective loan, repair or resale damages, or termination of a third-party contract). The alleged damages, namely the payments made by the Counter-Defendants to the Counter-Plaintiffs, were sustained prior to the involvement of JMP, Johnson, or Bass.

For the foregoing reasons, Count IV of the Counterclaims and Third-Party claims must be dismissed as to JMP, Johnson, and Bass.

### C. Allegations of Unfair or Deceptive Acts Involving USQL and Fabiani are Insufficient as a Matter of Law to Maintain FDUTPA Claim

This Court issued its Order denying Counter-Defendants Rossi and Leonardo's Motion to Dismiss the Second Amended Counterclaims on November 16, 2016. In this Order the Court ruled on certain arguments made by Counter-Defendants that were similarly made by the Third-Party Defendants in the Combined Motion to Dismiss. In particular, the Court ruled on whether the Counter-Plaintiffs stated a cause of action under the Florida Deceptive and Unfair Trade Practices Act (hereafter "FDUTPA"). (**ECF No. 76**, pgs. 14-17.) Applying the Court's analysis to the facts alleged against both USQL and Fabiani justifies the dismissal of Count IV against these two particular Third-Party Defendants.

In the November 16th Order, the Court held that "[a]lthough the FDUTPA is not intended to convert every breach of contract claim into a claim under the statute, '[t]o the extent an action giving rise to a breach of contract . . . may also constitute an unfair or deceptive act, such a claim is and has always been cognizable under the FDUTPA.' *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773, 777 n.2 (Fla. 2003)." (**ECF No. 76**, pg. 15.) The Counter-Plaintiffs also cite the

correct general legal proposition in their opposition to the Combined Motion to Dismiss. However, the Counter-Plaintiffs opposition to the Combined Motion to Dismiss fails to properly apply the law to the facts alleged against USQL and Fabiani.  In paragraph 146 of the Third Amended Third-Party Claims [**ECF No. 78**], the Counter-Plaintiffs summarize the purported "unconscionable, unfair, and deceptive acts and practices" that form the basis for the FDUTPA claim in Count IV.  A review of each individual allegation reveals that neither USQL nor Fabiani was involved in the substantive acts that constituted the alleged common scheme.

1. Paragraph 146(a) alleges that the "FDUTPA Defendants" deceived Counter-Plaintiffs concerning JMP, the operations of JMP, the role of Bass and the reasons for JMP wanting to use the steam power generated by the plant.  This general allegation seeks to impute the myriad of prior allegations jointly and severally against all the FDUTPA Defendants without distinction.  The specific allegations made by the Counter-Plaintiffs, however, do not provide support for this attempt to attribute these specific acts to USQL and Fabiani.  Counter-Plaintiffs alleged that Leonardo and Rossi devised the scheme to move the plant to Florida [**ECF No. 78**, ¶69]; Johnson created JMP [**ECF No. 78**, ¶70]; Leonardo and Rossi made the "pitch" to move the plant to Florida [**ECF No. 78**, ¶71]; Rossi and Johnson made false representations and warranties concerning the ownership of JMP [**ECF No. 78**, ¶74]; only JMP and Leonardo were parties to or negotiated the provisions of the Term Sheet [**ECF No. 78**, ¶75]; and JMP sent the false invoices [**ECF No. 78**, ¶77].[1]  The allegations make clear that USQL had no involvement with or partook in any acts related to JMP.  Accepting the allegations as true, Fabiani's only involvement is by virtue of a general allegation naming Fabiani as one of many with the alleged knowledge that Bass was not a real employee, but he is not alleged to have committed any of the substantive acts concerning the involvement of JMP in the grand scheme to deceive and cause damages to Counter-Plaintiffs.

2. Paragraph 146(b) alleges that the "FDUTPA Defendants" deceived Counter-Plaintiffs concerning the reasons for wanting to move the Plant to North Carolina.  The relevant

---

[1] None of these acts involves USQL or Fabiani; nevertheless, in paragraphs 78-79 Counter-Plaintiffs allege without any prior support that Fabiani had a role in enlisting Bass to pretend to be a JMP employee.  This conclusory leap to include Fabiani in the business of JMP is contradicted by the prior allegations made by the Counter-Plaintiffs and provisions of the Term Sheet where it is specified that Fabiani's only role is in assisting the operation of the Plant. Nowhere is it alleged by the Counter-Plaintiffs that Fabiani had any role with JMP.

allegations concerning this portion of the common scheme can be found in paragraphs 69 through 76 of the Third-Party Claims.  Neither USQL nor Fabiani is mentioned as taking part in any acts related to this alleged deception.

3. Paragraph 146(c) alleges that the "FDUTPA Defendants" deceived Counter-Plaintiffs by manipulating the operation of the plant and the measurements of the Plant's operations.  In paragraph 143, the Counter-Plaintiff alleged that the manipulated and fabricated testing and measurements were done "through Leonardo, Rossi and Penon."  Admittedly paragraph 7 of the Third-Party Claims alleges without specificity that Fabiani somehow also manipulated the operation of the Plant.  This general allegation should not be considered by the Court as it is repugnant to the specific allegation in paragraph 143.  Moreover, in paragraphs 90 through 92 the Counter-Plaintiffs allege with specificity that the improper measurement of the Plant's operations in Florida during the Guaranteed Performance test was done and reported by Penon.  These specific allegations of the Third-Party Claims concerning the alleged manipulation of testing and the resulting data are directed at Penon, Leonardo and Rossi—not USQL or Fabiani.

4. Paragraph 146(d) alleges, similar to the previous paragraph, that the "FDUTPA Defendants" provided false information as to the operation of the Plant and the measurements of the Plant.  This allegation as it relates to USQL and Fabiani is completely belied by the allegations throughout the Third-Party Claims that USQL and Fabiani failed to provide required information.  The crux of the claim against USQL and Fabiani is their failure and refusal to provide the information that supposedly was properly requested pursuant to the USQL Agreement.  (*See* **ECF No. 78**, ¶86-88.)  Indeed it was Third-Party Defendant Penon who is alleged to have provided the "purported measurement of the Plant's operation in Florida during the purported Guaranteed Performance test."  (**ECF No. 78**, ¶90.)  According to the allegations of the Third-Party Claims, it was Leonardo, Rossi and Penon who were making representations as to the performance of the Plant.  (**ECF No. 78**, ¶87.)

5. Paragraph 146(e) alleges that the "FDUTPA Defendants" refused to provide other information properly requested by Counter-Plaintiffs.  The Court's Order [**ECF No. 76**] specifically addresses this allegation, ruling that "Counter-Plaintiffs do not allege a deceptive or unfair practice so much as a breach of contract." (**ECF No. 76**, pg. 16).  This alleged act of failing and refusing to provide information is the only alleged basis for liability against USQL

and Fabiani and such act is *only* properly pled as the basis for the breach of contract claim. Therefore, as the Court noted, it should be included in the breach of contract count against them. This act, however, is insufficient to state a claim against USQL and Fabiani under FDUTPA.

6. Paragraph 146(f) alleges that the "FDUTPA Defendants" prevented the Counter-Plaintiffs from obtaining truthful information about the Plant's operations, measurements, role of JMP, or the role of Penon. This subparagraph essentially paraphrases the previous allegations. As set forth above, the alleged inaccurate information was obtained from Leonardo, Rossi and Penon and the circumstances involving and surrounding JMP and Penon do not involve USQL or Fabiani. Again, there are no specific acts alleged against either USQL or Fabiani that would be sufficient for a finding that either committed a deceptive or unfair practice.

7. Finally, Paragraph 146(g) alleges that the "FDUTPA Defendants" charged the Counter-Plaintiffs for services, expenses and equipment that were not used for the benefit of Counter-Plaintiffs. This allegation appears to relate to the damages sustained by the Counter-Plaintiffs. To the extent the Counter-Plaintiffs did not receive any benefit for the payments made to USQL or Fabiani, such payments are properly recoverable as damages in the Count V breach of contract claim.

As noted by the Court, the common scheme alleged by the Counter-Plaintiffs to state a claim under FDUTPA was accomplished by: (1) manipulating the Counter-Plaintiffs into moving the Plant to Florida [**ECF No. 78**, ¶142]; (2) manipulating the results of the Plant's operation to create the false appearance the Plant was performing at exceptional levels [**ECF No. 78**, ¶143]; (3) demanding payment of $89 million based on the deceptive results of the Plant's operation [**ECF No. 78**, ¶144]; and (4) obtaining payments for work that was completed to Counter-Plaintiffs' detriment [**ECF No. 78**, ¶145]. There can be no dispute that pursuant to the allegations in the Third-Party Claim, USQL and Fabiani were not involved in any acts that were caused by the Plant's move to Florida. The allegations also make clear that Leonardo, Rossi and Penon were the ones providing the operation results to the Counter-Plaintiffs. No allegation is made that USQL or Fabiani had any involvement in the negotiation of the Licensing Agreement or the demand for the final payment under that agreement. Yes, USQL and Fabiani received compensation and reimbursement of expenses from IH in accordance with their contract and any dispute about the propriety of such payments are to be resolved through Count V of the Third-Party Claim.

Notwithstanding the Court's prior ruling that the heightened pleading requirements of Rule 9(b) are inapplicable to the arguments presented in the Combined Motion to Dismiss, the Counter-Plaintiffs still have failed to allege a cognizable FDUTPA claim against USQL or Fabiani.  USQL is not alleged to have participated in any acts of alleged deception or unfair practice except for the failure to provide information.  Fabiani's name may be included generally in certain allegations relating to the true identity of Bass or in manipulating data, however, his gratuitous inclusion in these general allegations does not survive scrutiny when examined against the specific factual allegations that make clear Fabiani had no actual involvement in these alleged deceptive acts or unfair practices.   Accordingly, Counter-Plaintiffs failed to provide any specific allegations of unfair and deceptive acts supporting the "common scheme" as to USQL and Fabiani.  With respect to these two Third-Party Defendants, the requirements of Rule 8(a)(2) have not been satisfied.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.").

### III.    Count V (Breach of Contract Claim Against USQL and Fabiani) Requires More Specificity

Third Party Defendants Fabiani and USQL do not disagree with Defendants that they entered into a contractual relationship with IH to perform services, but re-assert that the Technical Consulting Agreement was not the operative agreement and did not bind any of the parties after it expired.  The Agreement expressly provided:

> The Agreement shall commence as of September 1, 2013 and shall continue in effect for an initial term through and including August 31, 2014 (the "Initial Term").  This Agreement shall terminate upon expiration of the Initial Term unless the parties agree in writing to extend it.

(**ECF No. 78**, Ex. 11.)  "The cardinal rule of contractual construction is that when the language of a contract is clear and unambiguous, the contract must be interpreted and enforced in accordance with its plain meaning." *CitiMortgage, Inc. v. Turner*, 172 So. 3d 502, 504 (Fla. 1st DCA 2015), *reh'g denied* (Sept. 4, 2015), *review denied sub nom. Loper v. Turner*, No. SC15-1813, 2016 WL 1083306 (Fla. Mar. 18, 2016) (*citing Columbia Bank v. Columbia Developers*, LLC, 127 So.3d 670, 673 (Fla. 1st DCA 2013)).

The allegations regarding the breach of this agreement revolve around acts and omissions that took place *after* the agreement expired.  The Counter-Plaintiffs fail to make any allegations

in the Third-Party Claims as to how the agreement was extended or that it even was extended.  In the opposition to the Combined Motion to Dismiss, the Counter-Plaintiffs argue that certain emails attached to the operative pleading demonstrate "by inference" that the Agreement had been extended into 2016.  (**ECF No. 101**, pg. 13)  While USQL and Fabiani agree that exhibits to a complaint can be considered by the Court, these emails fall short of detailing how the extension was accomplished, the term of the extension, any agreement between the parties as to the continuing relationship between the parties, or if the agreement to extend amended any terms of the original agreement.  If the agreement was extended, the contract required the extension to be done in writing.  Where is that writing?  If something else happened it should be alleged.  Without alleging facts to show that the Technical Consulting Agreement appended to Counter-Plaintiffs' operative pleading [**ECF No. 78, Ex. 11**] was extended in writing, Counter-Plaintiffs cannot base a breach of contract claim on the Agreement.  Dismissal is required under these circumstances.

      Respectfully submitted this 10th day of January, 2017.

      Arán Correa & Guarch, P.A.
*Counsel for JMP, Johnson, and Bass*
255 University Drive
Coral Gables, Florida 33134
Telephone: (305) 665-3400
Telefax: (305) 665-2250

By: */s/ Francisco J. León de la Barra*
    Francisco J. León de la Barra, Esq.
    Florida Bar No.: 105327
    Fernando S. Arán, Esq.
    Florida Bar No.: 349712


RODOLFO NUÑEZ, P.A.
*Counsel for Fabiani and USQL*
255 University Drive
Coral Gables, Florida 33143
Telephone:   (305) 443-2440
Facsimile:    (305) 443-2334
Email: rnunez@acg-law.com

    /s/ *Rodolfo Nuñez*
    Rodolfo Nuñez, Esq.
    Fla. Bar No.: 016950

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on January 10, 2017, I electronically filed the foregoing with the Clerk of Court using CM/ECF and copies of the foregoing will be served upon all counsel of record via transmission of Notice of Electronic Filing generated by CM/ECF.

                                            _/s/ Rodolfo Nuñez_
                                            Rodolfo Nuñez, Esq.