# EXHIBIT 27

## AMENDED AND RESTATED
## ASSIGNMENT AND ASSUMPTION OF
## LICENSE AGREEMENT

**THIS AMENDED AND RESTATED ASSIGNMENT AND ASSUMPTION OF LICENSE AGREEMENT** (this "Agreement") is entered into as of September *12*, 2014, by and between **INDUSTRIAL HEAT, LLC**, a Delaware limited liability company (the "Assignor"), and **IPH INTERNATIONAL B.V.**, a Netherlands company (the "Assignee").

**WHEREAS**, Assignor and Assignee entered into that certain Assignment and Assumption of License Agreement made effective as of April 29, 2013 (the "Assignment"), pursuant to which the Assignor assigned to the Assignee that certain License Agreement dated as of October 26, 2012, by and among Licensor, Leonardo Corporation, Andrea Rossi and AmpEnergo, Inc., as amended by that certain First Amendment to License Agreement dated as of April 26, 2013 (as amended, the "License Agreement");

**WHEREAS**, the Assignor and the Assignee desire to amend and restate the Assignment effective as of April 29, 2013, to clarify the agreement between them regarding the assignment of the License Agreement;

**NOW, THEREFORE**, in consideration of the above premises, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1.      Recitals and Defined Terms. The Recitals set forth above are material and are incorporated into and made a part of this Agreement. Capitalized terms used herein without definition shall have the meanings given them in the License Agreement.

2.      Assignment. In consideration of Assignee's agreement to pay to Assignor the sum of $460,000 (the "Purchase Price") and to assume all obligations under the License Agreement as set forth below, the Assignor hereby sells, transfers and assigns to the Assignee, effective as of April 29, 2013, all right, title and interest of the Assignor in and to the License Agreement; provided however, that the Plant is excluded from such transfer and assignment and shall remain the property of Assignor.

3.      Acceptance and Assumption. The Assignee hereby accepts the assignment of the License Agreement and assumes all of Assignor's obligations under the License Agreement.

4.      Payment of Purchase Price. The Assignee hereby agrees to pay to Assignor the Purchase Price on or before April 29, 2016, in accordance with the terms of the promissory note attached hereto as Exhibit A (the "Note"). Assignee shall deliver the executed Note concurrent with delivery of this Agreement.

5.      Binding Effect. This Agreement shall inure to the benefit of, and be binding on, each of the parties hereto and their respective successors and assigns. This Agreement and the Note represent the entire agreement of the parties with respect to the subject matter hereof.

6.     Counterparts.  This Assignment may be executed in any number of counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument.

7.     Governing Law.  This Assignment and any claim, controversy or dispute arising under or related to this Assignment shall be governed by and construed in accordance with the laws of the State of Florida.

8.     Further Assurances.

A.     Assignor hereby agrees to provide to the Assignee such further assurances as may be reasonably requested by the Assignee at any time from and after the date hereof with respect to the License Agreement and the assignment thereof to Assignee as provided herein, and, without limiting the foregoing, shall execute and deliver such affidavits, certificates and other instruments with respect to the License Agreement as may be reasonably requested by the Assignee.

B.     The Assignee hereby agrees to provide to Assignor such further assurances as may be reasonably requested by the Assignor at any time from and after the date hereof with respect to the License Agreement and the assignment thereof to Assignee as provided herein, and, without limiting the foregoing, shall execute and deliver such affidavits, certificates and other instruments with respect to the License Agreement as may be reasonably requested by the Assignor.

**IN WITNESS WHEREOF,** the Assignor and the Assignee have executed this Amended and Restated Assignment and Assumption of License Agreement effective the day and year first above written.

<u>ASSIGNOR</u>:

Industrial Heat, LLC

By: _____
      Thomas F. Darden
      Manager

<u>ASSIGNEE</u>:

IPH International B.V.

By:    IPH Management, LLC, Managing Director

By: _____
      Thomas F. Darden
      Manager

## EXHIBIT A

PROMISSORY NOTE

## Promissory Note

$460,000                                                                                                                      April 29, 2013

FOR VALUE RECEIVED, the undersigned, IPH International B.V., an entity organized under the laws of the Netherlands (the "Borrower"), promises unconditionally to pay to the order of Industrial Heat, LLC, a Delaware limited liability company (the "Creditor"), at such place as Creditor may from time to time designate, the principal amount of Four Hundred Sixty Thousand and 00/100 Dollars ($460,000) (the "Principal Amount"), together with interest on the unpaid Principal Amount outstanding from time to time at the rate or rates hereafter specified and any and all other sums which may be owing to Creditor by Borrower pursuant to this Promissory Note, and any modifications, renewals, extensions or replacements thereof (the "Note").  The following terms shall apply to this Note:

1.      **Nature of Debt**.  This Note is given on September 12, 2014 to memorialize and evidence Borrower's obligation incurred effective as of April 29, 2013 to pay to Creditor the purchase price for the License Agreement assigned to Borrower on April 29, 2013, as set forth in the Amended and Restated Assignment and Assumption of License Agreement being entered into by Borrower and Creditor concurrent herewith.

2.      **Interest Rate**.  Interest shall accrue from April 29, 2013 at the rate of Twenty Two One Hundredths percent (0.22%) per annum on an actual/360 basis (on the actual number of days elapsed over a year of 360 days) until this Note is paid in full.

3.      **Default Interest Rate**. Upon an "Event of Default," as hereafter defined, Creditor, in Creditor's sole discretion and without notice or demand, may raise the rate of interest accruing on the outstanding Principal Amount to the lesser of (a) the highest contract rate, if any, permitted by applicable law or (b) a rate per annum of two (2) percentage points above the rate of interest otherwise applicable, independent of whether Creditor elects to accelerate the unpaid principal balance as a result of such default. Such default interest rate shall continue, in Creditor's sole discretion, until all defaults are cured.

4.      **Principal and Interest Repayments**.  Accrued interest is payable on the last business day of each calendar quarter beginning December 31, 2014.  The outstanding Principal Amount and all accrued and unpaid interest is due and payable in full on April 29, 2016 (the "Maturity Date").

5.      **Repayment Extension**. If any payment of principal or interest shall be due on a Saturday, Sunday or any other day on which banking institutions in the State of North Carolina are required or permitted to be closed, such payment shall be made on the next succeeding business day and such extension of time shall be included in computing interest under this Note.

6.      **Late Charge**. Time is of the essence of this Note.  If any payment of interest in whole or in part due under this Note is not received by Creditor within five (5) days after its due date, Creditor, in Creditor's sole discretion and without notice or demand, may charge Borrower a late charge equal to four percent (4%) of the late payment.  The late payment charge shall be payable to Creditor on demand.  Such late charge shall be in addition to, and not in lieu of, any other right or remedy Creditor may have, including the right to receive principal and interest and to reimbursement of costs and expenses.

7.      **Manner and Application of Payments**. All payments due hereunder shall be paid in lawful money of the United States of America in immediately available funds, without offset, deduction or recoupment. Any payment by check or draft shall be subject to the condition that any receipt issued therefor shall be ineffective unless the amount due is actually received by Creditor. Each payment shall be applied first to the payment of any and all costs, fees and expenses incurred by or payable to Creditor in connection with the collection or enforcement of this Note, second to the payment of all unpaid late charges (if any), third, to the payment of all accrued and unpaid interest hereunder and fourth, to the payment of the unpaid Principal Amount, or in any other manner which Creditor may, in its sole discretion, elect from time to time.

401921

8.      **Prepayment**. This Note may be prepaid in whole or in part at any time without premium or penalty, provided that each payment shall be accompanied by payment of all unpaid costs, fees, expenses and late charges, if any, which are due plus all accrued and unpaid interest due as of the date of such prepayment.

9.      **Events of Default**. The occurrence of any one or more of the following events shall constitute an "Event of Default" under this Note:

(a)      the failure of Borrower to pay any sum due under this Note when due, whether by demand or otherwise;

(b)      the filing by or against Borrower of any petition for bankruptcy relief or any similar action for relief from the obligations of the Borrower;

(c)      the making of an application for the appointment of a custodian, trustee or receiver for, or of a general assignment for the benefit of creditors by Borrower;

(d)      the insolvency of Borrower or the failure of Borrower generally to pay debts as such debts become due;

(e)      any representation or information contained in any financial statement or any other document given by Borrower to Creditor shall not in all material respects be true and complete when made;

(f)      the determination in good faith by Creditor that the prospect of payment of any of the indebtedness under the Note is materially impaired.

10.      **Rights and Remedies upon Default**. Upon the occurrence of an Event of Default hereunder, Creditor, in Creditor's sole discretion and without notice to Borrower may: (a) declare the entire outstanding Principal Amount, together with all accrued interest and all other sums due under this Note, to be immediately due and payable, and the same shall thereupon become immediately due and payable without presentment, demand or notice, which are hereby expressly waived; (b) exercise its right of setoff against any money, funds, credits or other property of any nature whatsoever of Borrower now or at any time hereafter in the possession of, in transit to or from, under the control or custody of or on deposit with, Creditor; (c) terminate any outstanding commitments of Creditor to Borrower; and (d) exercise any or all rights, powers and remedies now or hereafter existing at law, in equity, by statute or otherwise.

11.      **Remedies Cumulative**. Each right, power and remedy of Creditor hereunder, or now or hereafter existing at law, in equity, by statute or otherwise shall be cumulative and concurrent, and the exercise or beginning of the exercise of any one or more of them shall not preclude the simultaneous or later exercise by Creditor of any or all such other rights, powers or remedies. No failure or delay by Creditor to insist upon the strict performance of any one or more provisions of this Note or to exercise any right, power or remedy consequent upon a breach thereof or default hereunder shall constitute a waiver thereof or preclude Creditor from exercising any such right, power or remedy. By accepting full or partial payment after the due date of any amount of principal of or interest on this Note, or other amounts payable on demand, Creditor shall not be deemed to have waived the right either to require prompt payment when due and payable of all other amounts of principal of or interest on this Note or other amounts payable on demand, or to exercise any rights and remedies available to it in order to collect all such other amounts due and payable under this Note.

12.      **Collection Expenses**. If this Note is placed in the hands of an attorney for collection following the occurrence of an Event of Default hereunder, Borrower agrees to pay to Creditor upon demand all costs and expenses, including, without limitation, reasonable attorneys' fees (based on the usual and customary charges of the attorneys engaged and without reference to any statutory presumption based on a percentage of the amount owed hereunder) and all court costs incurred by Creditor in connection with the enforcement or collection of this Note (whether or not any action has been commenced by Creditor to enforce or collect this Note) or in successfully defending any counterclaim or other legal proceeding brought by Borrower contesting Creditor's right to collect the

amounts outstanding.  All of such costs and expenses shall bear interest at the higher of the rate of interest provided herein or any default rate of interest provided herein, from the date of payment by Creditor until repaid in full.

13.  **Interest Rate after Judgment**. If judgment is entered against Borrower on this Note, the amount of the judgment entered (which may include principal, interest, fees and costs) shall bear interest at the higher of: (a) the rate of interest provided herein; (b) any default rate of interest provided herein; or (c) the legal rate of interest then applicable to judgments in the jurisdiction in which judgment was entered.

14.  **Certain Waivers by Borrower**. Borrower waives demand, presentment, protest and notice of demand, of non-payment, of dishonor and of protest of this Note. Creditor, without notice to or further consent of Borrower and without in any respect compromising, impairing, releasing, lessening or affecting the obligations of Borrower hereunder may: (a) release, surrender, waive, add, substitute, settle, exchange, compromise, modify, extend or grant indulgences with respect to this Note and (b) grant any extension or other postponements of the time of payment hereof.

15.  **Choice of Law**.  This Note shall be governed by, construed and interpreted in accordance with the laws of the State of Delaware, United States of America (excluding the choice of law rules thereof).

16.  **Miscellaneous**. The paragraph headings of this Note are for convenience only, and shall not limit or otherwise affect any of the terms hereof. This Note constitutes the entire agreement between the parties with respect to its subject matter and supersedes all prior letters, representations or agreements, oral or written, with respect thereto. No modification, release or waiver of this Note shall be deemed to be made by Creditor unless in writing signed by Creditor, and each such waiver, if any, shall apply only with respect to the specific instance involved. No course of dealing or conduct shall be effective to modify, release or waive any provisions of this Note. This Note shall inure to the benefit of and be enforceable by Creditor and Creditor's successors and assigns and shall be binding upon and enforceable against Borrower and Borrower's successors and permitted assigns. Whenever used herein, the singular number shall include the plural, the plural the singular, and the use of the masculine, feminine or neuter gender shall include all genders. This Note may be executed in any number of counterparts, all of which, when taken together shall constitute one Note.

[Signature page follows]

IN WITNESS WHEREOF, Borrower has duly executed this Note under seal as of the day and year first hereinabove set forth.

IPH INTERNATIONAL B.V.

By:    IPH Management, LLC, Managing Director

By:    _____
        Thomas F. Darden
        Manager