# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA
# MIAMI DIVISION

| | |
|---|---|
| **ANDREA ROSSI,** et al., )<br>)<br>Plaintiffs, )<br>v. )<br>)<br>**THOMAS DARDEN,** et al., )<br>)<br>Defendants. )<br>_____) | No. 16-cv-21199-CMA (JJO) |

### DEFENDANTS' MOTION FOR A PROTECTIVE ORDER RELATING TO ATTORNEY-CLIENT PRIVILEGED COMMUNICATIONS AND INCORPORATED MEMORANDUM OF LAW

Defendants Thomas Darden, John T. Vaughn, Industrial Heat, LLC, IPH International, B.V., and Cherokee Investment Partners, LLC ("Defendants") respectfully move, pursuant to Fed. R. Civ. P. 26(c), for a protective order forbidding the disclosure or discovery of emails protected by the attorney-client privilege and/or work product doctrine, as set forth in the incorporated memorandum of law. (Although a Motion to Compel is not pending on the docket, the instant discovery dispute was raised by counsel before this Court at a February 7, 2017 hearing, at which point the Court requested briefs on the issues.)

### BACKGROUND

This case involves the development of and investment in "low energy nuclear reaction" ("LENR") technologies intended to provide clean, reliable, efficient, and safe sources of energy. Defendants and their affiliates are working on the development of such technologies, often in conjunction with inventors who initially discovered or developed different forms or applications of these technologies.

Defendant Thomas Darden and non-party John Mazzarino have been in joint business ventures for nearly thirty years.  Mazzarino Decl. ¶ 1 (attached as Exh. A).  They have established numerous companies together, often under the branding umbrella "Cherokee."  *Id.*  Such ventures include Cherokee Investment Partners, LLC ("CIP"), Cherokee Investment Services, Inc. ("CIS"), Cherokee Advisers, LLC ("CA"), and Industrial Heat, LLC ("Industrial Heat"), among many others.  *Id.*

CIP and CA are privately held companies co-founded by Mr. Darden and Mr. Mazzarino.  They provide investment management services to private equity funds that specialize in the acquisition, remediation, and sustainable redevelopment of contaminated real estate.  Mr. Darden and Mr. Mazzarino are both Managing Members of CIP and CA.  Neither CIP nor CA has any material assets other than management fees or capital contributions by Mr. Darden and Mr. Mazzarino.  *Id.* ¶¶ 2-4.  CA has no employees.  *Id.* ¶ 3.  CIP has eight individuals on its payroll, including Mr. Mazzarino and Mr. Darden, who are co-founders.  *Id.* ¶ 4.

CIS is a privately held company that Mr. Darden and Mr. Mazzarino also co-founded.  It provides services to a number of Cherokee entities, including CA and CIP, as well as to Industrial Heat.  Like CA and CIP, CIS is not an investor in any Cherokee Fund or any other venture.  Rather, it simply provides administrative services, including but not limited to financial accounting and reporting.  CIS presently has seven individuals on its payroll.  *Id.* ¶ 5.

For many years, the law firm of Schell Bray, PLLC ("Schell Bray") has represented numerous corporate entities that Mr. Darden and Mr. Mazzarino co-founded, including CA, CIP, CIS, and Industrial Heat.  *Id.* ¶ 6.  In 2012, Mr. Darden and Mr. Mazzarino entered into negotiations with Andrea Rossi regarding the terms of what would culminate in a License Agreement to, among other things, use Mr. Rossi's intellectual property known as "Energy

2

Catalyzer" or "E-Cat" technology within specific geographic territories. Mr. Darden and Mr. Mazzarino jointly communicated with lawyers from Schell Bray on numerous legal issues relating to the negotiation and terms of the License Agreement, which was executed on October 26, 2012. Many of such communications were via email, and were intended to remain confidential. *Id.* ¶ 7.

On October 24, 2012, Mr. Darden and Mr. Mazzarino co-founded Industrial Heat for purposes of entering into the License Agreement with Andrea Rossi and his company (Leonardo Corporation). Together they contributed the initial capital to the company, and Mr. Mazzarino continues to hold substantial equity stock in Industrial Heat. Prior to the creation of Industrial Heat, Mr. Darden and Mr. Mazzarino jointly communicated with lawyers from Schell Bray on legal issues relating to the formation of Industrial Heat, including legal advice regarding the establishment of the appropriate corporate vehicle for entering into the License Agreement. Many of the communications with counsel were via email, and were intended to remain confidential. *Id.* ¶ 8.

Mr. Darden is an officer and employee of Industrial Heat. Mr. Mazzarino is an officer of the parent company of Industrial Heat (IH International Limited) which owns 100% of Industrial Heat. Because Mr. Darden and Mr. Mazzarino are both investors in Industrial Heat, they share a common legal interest in protecting and properly structuring their investment. *Id.* ¶ 9. Mr. Darden and Mr. Mazzarino also have a common legal interest in maintaining the separateness of the various entities they co-founded, including CIP, CIS, CA and Industrial Heat (among others), so that the liabilities of one do not become the liabilities of the others. But the employees of all these entities were under the common control and direction of Darden and Mazzarino as co-owners of the entities. Thus, a number of the officers and/or employees of such entities were

from time-to-time copied on confidential emails relating to the various legal issues that arose in connection with the Industrial Heat transactions. *Id.* ¶ 10.

In August of 2015, Mr. Darden and Mr. Mazzarino retained Jones Day to advise in connection with disputes arising with Andrea Rossi and Leonardo Corporation with respect to the License Agreement. About that time, Mr. Darden and Mr. Mazzarino began jointly and regularly communicating with lawyers from both Jones Day and Schell Bray on issues related to rights and obligations under the License Agreement of Industrial Heat and its affiliate, IPH International B.V. ("IPH"). Many of such communications were via email, and were intended to remain confidential. *Id.* ¶ 12.

Plaintiffs now seek numerous emails that Defendants withheld during discovery on the basis of the attorney-client privilege and/or the work product doctrine under Florida law. At a discovery hearing on February 7, 2017, this Court directed the parties to "go through every one of these" and brief the issues that remain in dispute. Exh. B at 6. Undersigned counsel has since performed that review and has released or intends to release additional emails to Plaintiffs' counsel in a good faith effort to streamline the discovery process and narrow the issues for resolution by the Court.

By this motion, Defendants respectfully request that the Court issue an order protecting the remaining email communications from disclosure. The disputed emails plainly contain numerous privileged attorney-client communications between Schell Bray, Mr. Darden and the officers or employees of CIP, CIS, and/or CA, including Mr. Mazzarino. Some of the emails also contain attorney work product. Although Mr. Mazzarino is not an employee or officer of Industrial Heat, he and Mr. Darden—along with their affiliated entities, including CIP, CIS and/or CA—share common interests that trigger an exception to third party waiver of the

attorney-client privilege under Florida law. Such common interests include, among other things, negotiation of the License Agreement, the formation of Industrial Heat and IHHI, the defense litigation with Plaintiffs Rossi and Leonardo, and maintenance of the corporate separateness of the various entities co-founded by Messrs. Darden and Mazzarino. Accordingly, Defendants' motion for a protective order should be granted, and any reciprocal motion to compel by the Plaintiffs should be denied.[1]

## DISCUSSION

At the outset, it is important to clarify the types of email communications that are at issue here. The emails fall into three categories:

(1) Emails between Defendant Darden, his counsel, and officers or employees of CIP, CIS, and/or CA, including Mr. Mazzarino, which were created prior to and leading up the formation of Industrial Heat;

(2) Emails between Defendant Darden, his counsel, and officers or employees of CIP, CIS, and/or CA, including Mr. Mazzarino, which were created after the formation of Industrial Heat and relate to matters in controversy with Andrea Rossi under the License Agreement and related agreements, including the instant litigation; and

(3) Emails between Defendant Darden, his counsel, and officers or employees of CIP, CIS, and/or CA, including Mr. Mazzarino, which were created after the formation of Industrial Heat and relate to legal matters other than the instant litigation.

As explained below, Plaintiffs' counsel conceded at the February 7, 2017 hearing that the *first* category of emails—those between Defendant Darden, his counsel, and officers or employees of CIP, CIS, and/or CA, which were created prior to the formation of Industrial Heat—are privileged. Both Defendant Darden and Mr. Mazzarino are investors in Industrial

---

[1] Plaintiffs have not raised objections to particular entries on the privilege log which, in the normal course, would be briefed according to the particularized facts of each document. In light of this unconventional posture, Defendants are not in a position to fully address in this brief their privilege and work product claims with respect to any particular email(s). Of course, Defendants are prepared to supplement the arguments contained herein in the event that the dispute is narrowed to particular entries on the privilege log; it is also prepared to produce representative emails for the Court's *in camera* review, as appropriate.

Heat, which entered into the License Agreement with Plaintiffs Rossi and Leonardo Corporation. Email communications between Schell Bray and Messrs. Darden and Mazzarino relating to the negotiation, drafting, and execution of the License Agreement as well as discussions regarding the appropriate corporate vehicle for entering into that agreement are privileged. *See* Exh. A at ¶ 7.

The ***second*** category of emails—those relating to disputes with Plaintiff Rossi and the instant litigation—are also covered by the attorney client privilege because both Defendant Darden and Mr. Mazzarino have a joint legal interest in protecting and properly structuring their financial investments in Industrial Heat (as well as in the other corporate Defendants in this litigation—CIP and IPH). Attorney communications made in anticipation of litigation with Plaintiffs Rossi and Leonardo Corporation over the License Agreement are additionally covered by the work product doctrine.

The ***third*** category of emails is the only one that the remains in serious dispute for possible *in camera* review by this Court at some juncture in the proceedings. As explained below, however, emails containing attorney communications made for the purpose of giving legal advice regarding common interests of Defendant Darden and officers or employees of CIP, CIS, and/or CA, including Mr. Mazzarino, are also covered by the attorney-client privilege. Accordingly, Defendants' motion should be granted.

**I.      As Plaintiffs' Counsel Conceded at the February 7, 2017 Hearing, Attorney Communications Prior to the Creation of Industrial Heat Are Privileged.**

The law governing Defendants' privilege claims is not in dispute. And it clearly establishes that the sharing of otherwise privileged communications with a third party *does not* categorically waive the privilege.

6

Under Florida law, the attorney-client privilege protects "communication[s] between a lawyer and client not intended to be disclosed to third persons *other than those to whom disclosure is in furtherance of the rendition of legal services, or those reasonably necessary for the transmission of the communication.*" *Tyne v. Time Warner Entm't Co.*, 212 F.R.D. 596, 598 (M.D. Fla. 2002) (citing Fla. Stat. § 90.502(1)(c)) (emphasis added).[2]  Thus, "[i]n general, agents and subordinates working under the direct supervision and control of the attorney are included within the scope of the attorney-client privilege." *Royal Bahamian Assoc., Inc. v. QBE, Ins. Co.*, No. 10-21511-CIV, 2010 WL 3637958, at *3 (S.D. Fla. Sept. 20, 2010) (internal quotation marks omitted).  Accordingly, for example, in *Royal Bahamian Assoc., Inc.*, the court found it "no surprise that the attorney-client privilege applies to communications between a law firm and an independent contractor retained by a partnership to help it develop real estate."[3]

Additionally, and of particular pertinence here, "disclosure to . . . individuals who have a *common legal interest* does not constitute a waiver of privilege." *Tyne*, 212 F.R.D. at 600 (emphasis added).  This common interest exception to third-party waiver of the attorney-client privilege protects the emails in this case from disclosure.  In *Tyne*, the plaintiffs claimed that defendant Warner Brothers waived the privilege by distributing documents to employees of codefendant studios that were involved in a movie project as a joint venture with Warner Brothers.  The court upheld the privilege, explaining that the codefendant studios "both solicited

---

[2]  At the February 7 hearing, Plaintiffs' counsel agreed that communications are covered by the attorney-client privilege if a third party is "someone who is reasonably necessary to receive those communications." Exh. B at 17.  *See also* Fla. Stat. § 90.502(2) ("A client has a privilege to refuse to disclose, and to prevent any other person from disclosing, the contents of confidential communications when such other person learned of the communications because they were made in the rendition of legal services to the client.").

[3]  CIS functioned in this manner for a number of Cherokee entities, "including CA and CIP, as well as affiliated entities that are involved with private investments that [Messrs. Darden and Mazzarino] made, including Industrial Heat." Exh. A at ¶ 5.

and received advice from the Warner Bros. legal department about how to protect their common legal interests in avoiding liability." 212 F.R.D. at 600. Even though the studios were not the clients of the Warner Bros.' lawyers, "Warner Bros. required their cooperation with regard to the production of [the film] in order to protect Warner Bros.' legal interests," so the privilege applied. *Id.*

In this case, as in *Tyne*, the advice of counsel as to the negotiation of the License Agreement and the appropriate corporate structure for the entity that would be executing the agreement on the investors' behalf "would be useless to [Defendant Darden] if the advice could not be disseminated to the few key individuals who were intimately involved in the joint [project]," including Defendant Darden's co-investor, Mr. Mazzarino. *Id.* Defendant Darden entered into negotiations over the License Agreement for the sole purpose of jointly investing in the E-Cat technology with Mr. Mazzarino through a new corporate entity. Given the nature of a start-up venture, it stands to reason that communications between counsel, Defendant Darden and Mr. Mazzarino would also carry "a reasonable expectation of confidentiality," which is an "essential element" of the common interest exception to waiver of the attorney-client privilege. *In re Int'l Oil Trading Co., LLC*, 548 B.R. 825, 832 (Bankr. S.D. Fla. 2016); *see also* Exh. A at ¶¶ 7, 8, 10 (stating that emails were intended to remain confidential). The emails preceding the creation of Industrial Heat are therefore privileged.[4]

---

[4] Defendants note further that, because both Defendant Darden and Mr. Mazzarino were affiliated with the Cherokee-branded entities prior to the formation of Industrial Heat, including CIP, CIS and CA, a number of the emails falling in this category included other officers and/or employees of these affiliated entities. Defendant Darden and Mr. Mazzarino are both co-founders of those other entities. They may draw on the resources of the other entities as agents, but are still interested in maintaining their legal separateness. *See* Exh. A at ¶ 10. Hence, attorney communications that included officers or employees of their other entities are also covered by the common interest exception to third party waiver of the privilege under Florida law.

In any event, at the February 7, 2017 hearing, Plaintiffs' counsel conceded that emails between Defendant Darden and his lawyer that included Mr. Mazzarino are privileged to the extent that they pre-dated the creation of Industrial Heat. This category of emails either related to the negotiation, drafting and execution of the License Agreement, or else they involved legal questions regarding the appropriate corporate structure for the entity in which Defendant Darden and Mr. Mazzarino would invest and which would ultimately enter into the License Agreement on their behalf, i.e., Industrial Heat. The pertinent portions of the hearing transcript are as follows:

> THE COURT: They've [Defendants] indicated that he [Mr. Mazzarino] was involved in the process of negotiating the terms of the agreement with Mr. Rossi or Dr. Rossi.
>
> MR. CHAIKEN: Right.
>
> THE COURT: Generally I take lawyers at their word until you come in here and you are able to show me something different.
>
> MR. CHAIKEN: Sure, Your Honor.
>
> *And if he has privileged communications that are specifically regarding that time frame prior to the entrance of the agreement, that's great.* After the entry of the agreement they formed a company called Industrial Heat.
>
> \* \* \*
> *Again, I'm talking about after the creation of Industrial Heat to the extent that they've had privileged communications before because it dealt with what they are doing before the agreement was signed, fine, but as soon as that company is formed, they have that corporate organization.*

Feb. 7, 2017 Hearing Trans. at 17, 20 (attached as Exh. B) (emphasis added).

Accordingly, because Mr. Darden and Mr. Mazzarino shared a common legal interest in advantageous negotiation of the terms and conditions of the License Agreement, and in consulting with counsel about the appropriate corporate vehicle for entering into the License

9

Agreement, the Court should consider it undisputed that emails dated prior to—and up through—the creation of Industrial Heat are categorically privileged.

## II. Emails Regarding This Litigation Are Protected by the Attorney-Client Privilege and the Work Product Doctrine.

By the same token, Plaintiffs cannot be heard to seriously argue that otherwise privileged emails relating to the instant lawsuit are not protected if either Schell Bray (or other counsel for Industrial Heat) or Mr. Darden made the considered judgment to copy Mr. Mazzarino on them. Both Mr. Darden and Mr. Mazzarino are investors and co-founders of Industrial Heat. They share a common legal interest in protecting their investment, which is obviously threatened by this litigation. Exh. A. at ¶ 9. And they have both sought legal advice from Schell Bray (or other counsel for Industrial Heat) with respect to their numerous joint business ventures over many years. *Id.* at ¶ 6.

Additionally, any attorney communications that are related to Industrial Heat's defense and prosecution of this lawsuit are protected by the work product doctrine. Under Fed. R. Civ. P. 26(b)(3), "documents prepared in anticipation of litigation are not subject to discovery, unless there is a substantial need shown and the party seeking to discover the information cannot acquire it elsewhere without undue hardship." *In re Int'l Oil Trading Co.*, 548 B.R. at 835. Plaintiffs have yet to attempt such a showing. And even if they were able to demonstrate both substantial need and undue hardship, Plaintiffs cannot obtain discovery of "mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P. 26(b)(3). Similar protections exist under Florida law. *In re Int'l Oil Trading Co.*, 548 B.R. at 835 (citing Fla. R. Civ. P. 1.280(b)(4)) (observing that "opinion work product enjoys a nearly absolute immunity and can be discovered only in very rare and extraordinary circumstances") (internal quotation marks omitted). For this additional reason,

email communications involving the defense of this lawsuit are protected from disclosure, whether or not Mr. Mazzarino—or officers and employees from other joint entities—are copied on them.

### III. Because Defendant Darden and Officers and Employees of CIP, CIS and CA Shared Common Legal Interests Subsequent to the Formation of Industrial Heat, Their Attorney Communications Are Privileged.

At the February 7, 2017 hearing, Plaintiffs' counsel argued that the emails created after the formation of Industrial Heat were improperly withheld on the basis of attorney-client privilege, for what appeared to be two reasons.[5]  *First*, Plaintiffs' counsel suggested that, subsequent to the formation of Industrial Heat, emails between attorneys and Mr. Darden that copied Mr. Mazzarino are not privileged because Mr. Mazzarino is not an employee of Industrial Heat, but merely an investor.  *See* Exh. B at 17-18 ("[T]hey're running things up the chain to a guy who claims to be nothing but an investor. . .  So to the extent that they're passing on privileged communications to him, or he's included in those communications, we think they've waived that privilege or there was no privilege to begin with.").  *Second*, Plaintiffs presumably contend that, to the extent that such communications are privileged, the privilege was waived when other employees of CA, CIS, and/or CIP were copied on Mr. Darden's attorney-client communications.  *See id.* at 20 ("The case law says if you are going to share privileged

---

[5]  Plaintiffs' counsel also suggested that, to the extent that Mr. Mazzarino's deposition testimony is allegedly inconsistent with arguments made regarding the attorney-client privilege, the privilege is waived.  The Court roundly, and correctly, rejected Plaintiffs' claim.  *See* Exh. B at 12-13 (The Court: "If they're privileged do you get to look at them because they are different than his testimony in his deposition?  I am not aware of any law that says you do.  I don't know if he's lying or not lying, but I'm saying just because he says something different in his deposition that might appear in something that's privileged that does not waive the privilege as far as I know.").  This argument is therefore irrelevant.  In the event that Plaintiffs renew and provide legal support for this argument, Defendants request and reserve the opportunity to file a supplemental response.

11

communications in the corporate structure, the people who get that information have to have a reasonable need to know."). Both arguments lack merit.

To repeat the governing black letter law, the attorney-client privilege protects "communication[s] between a lawyer and client not intended to be disclosed to third persons other than those to whom disclosure is in furtherance of the rendition of legal services, or those reasonably necessary for the transmission of the communication." *Tyne*, 212 F.R.D. at 598. Accordingly, "disclosure to . . . individuals who have a common legal interest does not constitute a waiver of privilege."[6] *Id.* at 600. In this case, there can be no legitimate question that the disputed emails created after the formation of Industrial Heat are attorney-client communications. The sole issue, therefore, is whether a waiver occurred by virtue of counsel's or Mr. Darden's sharing them with Mr. Mazzarino and, in some instances, with other officers and/or employees of other entities that Mr. Darden and Mr. Mazzarino co-founded.

In *In re Int'l Oil Trading Co.*, the United States Bankruptcy Court for the Southern District of Florida conducted a careful analysis of the common interest exception under Florida law, and determined that it broadly requires "only that the third party and the privilege holder are engaged in some type of common enterprise and that the legal advice relates to the goal of that enterprise." 548 B.R. at 832 (internal quotation marks omitted). More specifically:

---

[6] North Carolina law is in accord with Florida law on the attorney-client privilege. *Berens v. Berens*, 785 S.E.2d 733, 740 (N.C. Ct. App. 2016) (attorney-client communication still privileged where third party involved was "an agent of either party" (internal quotation marks and citation omitted)); *Sessions v. Sloane*, 789 S.E.2d 844, 854 (N.C. Ct. App. 2016) (common interest privilege applies where parties share a common interest; agree to exchange information for the purpose of facilitating legal representation of the parties; and the information is otherwise confidential); *SCR-Tech LLC v. Evonik Energy Servs. LLC*, 2013 NCBC 42 (N.C. Super. Ct. 2013) (attorney-client privilege applies to attorney communications involving two or more corporations where one owns the other or both are owned by the same party (or parties); "the court need not further identify an identical legal interest and a joint strategy to pursue that specific legal interest").

> [T]here are three threshold questions to determine whether . . . the common interest privilege[] should apply: (1) whether the original disclosures were necessary to obtain informed legal advice and might not have been made absent the attorney-client privilege; (2) whether the communication was such that disclosure to third parties was not intended;[7] and (3) whether the information was exchanged between the parties for the limited purpose of assisting in their common cause.

*Id.* at 833 (citations omitted). The third factor is the most important for purposes of the instant case. In particular, "[t]hat cause need not be an identical legal cause, but rather a 'common, litigation-related cause.'" *Id.* (quoting *Infinite Energy, Inc. v. Econnergy Energy Co.*, No. 1:06CV124-SPM/AK, 2008 WL 2856719, at *1 (N.D. Fla. 2008)).

Here, Mr. Darden and Mr. Mazzarino share a common legal cause in ensuring that their respective joint investments in Industrial Heat bear fruit. To that end, they jointly sought the legal advice of their longstanding counsel, Schell Bray, on a range of matters that are plainly legal in nature and which on their face belie any intention on the recipients' part of disclosing the advice to third parties. *See* Exh. A. at ¶ 6. The legal queries and advice exchanged between Schell Bray and the co-founders of Industrial Heat, therefore, are privileged under Florida law. *See In re Int'l Oil Trading Co.*, 548 B.R. at 833 (concluding that "[t]he information exchanged between the parties was for the limited purpose of assisting in their common cause").

Likewise, to the extent that Mr. Darden and/or Mr. Mazzarino copied officers or employees of their other joint entities, it was done in furtherance of a common legal interest: maintaining corporate separateness. Exh. A. at ¶ 10. Any corporate lawyer knows that when the activities of multiple corporations become blurred, legal questions may arise as to whether one entity's potential liabilities may be imputed to another. *See generally Commonweal, Inc. v. IRS*,

---

[7] This factor refers to the confidential nature of the communication *per se*; obviously, it should not be interpreted to swallow the exception itself. *See In re Int'l Oil Trading Co.*, 548 B.R. at 833 (finding element satisfied where attorney-client communications were disclosed to litigation funder).

171 B.R. 405, 409 (Bankr. M.D. Fla. 1994) (describing issues of corporate separateness "[i]n general terms").  Thus, for example, if the officers of Industrial Heat shared with officers or employees of CIP a draft public statement regarding the Rossi investment for the purpose of insuring that the statement did not improperly implicate CIP or CA in the private investments of Messrs. Darden and Mazzarino, that sharing did not constitute a waiver of the privilege.

Moreover, in some instances, the information needed by Industrial Heat's counsel to address legal issues resided in the other entities which, among other functions, provided relevant services to Industrial Heat.  *See* Exh. A at ¶ 5 (describing CIS as "provid[ing] services to a number of Cherokee entities, including CA and CIP, as well as affiliated entities that are involved with private investments that Mr. Darden and I have made, including Industrial Heat"). The practice at issue here—copying certain officers and/or employees on particular attorney-client emails from time-to-time for the purpose of facilitating corporate separateness—thus falls within the definition of the common interest exception.  *Cf. Upjohn Co. v. United States*, 449 U.S. 383, 388 (1981) ("The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client.").

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their motion for a protective order and deny Plaintiffs'/Counter-Defendants' anticipated motion to compel production of the disputed emails discussed herein because they are protected by the attorney client privilege and the work product doctrine.

Dated: February 14, 2017

Respectfully submitted,

/s/ *Christopher R. J. Pace*
Christopher R.J. Pace
cpace@jonesday.com
Florida Bar No. 721166
Christopher M. Lomax
clomax@jonesday.com
Florida Bar No. 56220
Erika S. Handelson
ehandelson@jonesday.com
Florida Bar No. 91133
Christina T. Mastrucci
cmastrucci@jonesday.com
Florida Bar No. 113013
JONES DAY
600 Brickell Avenue
Brickell World Plaza
Suite 3300
Miami, FL 33131
Tel: 305-714-9700
Fax: 305-714-9799

*Attorneys for Defendants/Counter-Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 14, 2017, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel or parties of record.

/s/ *Erika S. Handelson*
Erika S. Handelson