# Exhibit 14



**SILVER**
LAW GROUP

87889 Overseas Highway
P.O. Box 710
Islamorada, Florida 33036

Phone:  305-664-3363
Fax:    305-664-3365

December 14, 2015

**VIA E-Mail and U.S. Mail**
Jones Day
Attn: Mr. Christopher R.J. Pace, Esq.
600 Brickell Avenue
Brickell World Plaza, Suite 3300
Miami, Florida 33131
crjpace@jonesday.com

     Re:    E-CAT License Agreement

Mr. Pace:

    As you are aware, the undersigned has been retained by Andrea Rossi ("Rossi") and Leonardo Corporation ("Leonardo") in connection with the License Agreement and amendments thereto entered into by and between Rossi, Leonardo, Industrial Heat, LLC. ("IH") and Ampenergo, Inc. relating to my client's intellectual property referred to therein as the E-Cat IP. I am in receipt of your letter dated December 4, 2015 and feel compelled to correct several misstatements and/or misrepresentations contained therein. For your convenience, I will address each misstatement in the same order they were asserted in your letter. The misstatements include, but are not limited to, the following:

**IH Never Engaged the ERV**

    There is no merit whatsoever to your client's allegation that "[n]either IPH nor IH 'engaged' Mr. Penon to serve as the ERV for the Guaranteed Performance process" and that "[s]uch an engagement would need to be negotiated and would need to involve very specific written instructions on what an ERV would have to do..." In fact, as evidenced by numerous correspondence between IH's officers, including Thomas Darden and John Vaughn, and my clients, IH was not only aware of Mr. Penon's engagement as the ERV for the Guaranteed Performance phase of the testing, but also participated in setting forth the parameters and requirements for the test before it began. There is substantial evidence to support the fact that IH not only knew of the ERV's engagement in the Guaranteed Performance test, but was actively engaged with the ERV throughout the process. I have attached as Exhibit "A" hereto one e-mail as an example of the communication between our clients pertaining to the ERV's engagement in such testing.

CONFIDENTIAL

IH-00126456

Moreover, although the contractual provision pertaining to the ERV's compensation is set forth in Paragraph 4 of the License Agreement, it is clear that the agreement contemplates that the ERV would be engaged in both the initial "Validation" phase as well as the "Guaranteed Performance" phase. Notably absent from the agreement is any provision relieving IH of its responsibility for payment of its share of the ERV's expense in relation to the Guaranteed Performance portion of the testing. As expressed in my initial letter to IH, as a result of IH or IPH's failure to comply with terms of the agreement, my clients have been forced to pay the full amount of the ERV's fees in relation to the Guaranteed Performance testing. My clients are entitled to be reimbursed by IPH immediately for IPH's portion of the same. You indicated in your letter that they would remit payment, but as of yet, no payment has been received.

**Current Testing by ERV is not the Guaranteed Performance**

IPH's contention that the current testing of the E-Cat Unit "cannot be the Guaranteed Performance process" predicated upon the beginning date of the test is similarly without merit. While the original License Agreement provided that the Guaranteed Performance was to occur during the "400 day period commencing on the date immediately following delivery of the Plant to the Company", that provision was amended by the parties due to IH's election not to begin the testing immediately upon delivery. Pursuant to the Second Amendment to License Agreement executed by Mr. Thomas Darden and Dr. Rossi, the 400 day period for the Guaranteed Performance was to commence on an a date agreed to in writing between the parties. A copy of the Second Amendment to License Agreement is attached hereto as Exhibit "B".

The parties subsequently agreed that the Guaranteed Performance test would begin in February 2015 with Mr. Penon as the Expert Responsible for Validation ("ERV"). In fact, both IH and my clients were actively conversing with Mr. Penon regarding the testing requirements, standards and protocols. The parties' intention that the current operation was to serve as the Guaranteed Performance is clear. The correspondence between the ERV and Mr. Darden of IH and IPH is unambiguous and clear that the current testing is, and always has been, being conducted as the Guaranteed Performance validation. Any claim to the contrary by your clients is clearly disingenuous.

**Mr. Dameron is a Co-Inventor**

Contrary to your client's claim that Mr. Dameron was a "co-inventor" of the E-Cat technology which is the subject of PCT International Application No. PCT/US2015/016897, Mr. Dameron's involvement with the E-Cat technology which is the subject of the aforementioned application was that of a glorified handyman and assistant to Dr. Rossi. Mr. Dameron performed the tasks he was directed to perform by Dr. Rossi and was not responsible for the development of any aspect of the E-Cat Units or Hot-Cat Units beyond performing such menial tasks. Mr. Dameron is not entitled to claim any intellectual property rights by virtue of his having performed manual labor on Dr. Rossi's invention, nor can his involvement give rise to any claim to the previously developed intellectual property of my clients. IH's intentional infringement upon my client's IP cannot and will not stand.

CONFIDENTIAL

IH-00126457

While you are correct in stating that the License Agreement provides that if there are any "inventions, discoveries, concepts, ideas, information" or anything else developed by IH or its affiliates relating to the E-Cat IP then it shall be the property of IH or its assigns, but clearly there were no "inventions, discoveries, concepts, information" or anything else developed by IH or Mr. Dameron relating to the E-Cat IP. Furthermore, such provision does not apply to Dr. Rossi's underlying E-Cat IP or his subsequent developments of the same. Neither IH, nor its affiliates or assigns has any lawful right to the underlying IP and/or any further development thereof by my clients other than those rights granted under the License Agreement which is limited to a right to use, but not own, such intellectual property.

**Neither IPH nor IH has undertaken the National Phase outside its Territory**

Contrary to your client's allegation that they have not "undertaken the national phase of seeking and obtaining a patent from a foreign patent office ... in a jurisdiction outside of the Territory", IH has in fact applied for patents using my clients intellectual property in countries outside of the licensed territory such as in Europe. In fact, IH's patent attorney Justin R. Nifong, Esq. applied for a European patent utilizing my client's intellectual property on or around November 9, 2015. I have independently verified that such application was submitted, and assigned a European Application Number by the European Patent Office. You will note that IH is not licensed to use my client's intellectual property anywhere in the European Union. Such action is a clear violation of the License Agreement and an unauthorized infringement upon my clients' IP rights. Demand is again made that IH and IPH International, BV cease and desist such infringement and immediately withdraw all patent and/or PCT applications immediately.

**IH Licensed More Than The Right To Use Certain Intellectual Property**

While your letter seems to infer that you believe the License Agreement confers more than just a license to use my client's Intellectual Property, the plain and unambiguous language of the License Agreement sets forth the scope of the license. The License Agreement §1 provides, in relevant part, that "Leonardo and Rossi hereby grant to [IH] the exclusive right and license under the Patents and other E-Cat IP to **develop, manufacture, make, have made, use, have used, offer to sell, have offered for sale, sell, have sold, import, and have imported** all the products deriving from the E-Cat IP in the Territory (the "License")." Any use of the License beyond that scope provided above is a clear infringement upon my clients' intellectual property and patents and is actionable.

**The "Total Price" Under the Agreement Has Been Paid**

As set forth above, your client's claim that the Guaranteed Performance has not been performed is without merit. The Guaranteed Performance is currently under way, and upon completion, the full amount stated in §3 of the License Agreement shall be due and owing. While your letter states that the "total price has already been paid" such statement is incorrect as my clients have fully complied with their obligations under the License Agreement and Amendments thereto, and expect that your clients will do the same. Your statement that the "total price has already been paid" is, in and of itself, an anticipatory breach of the License Agreement and is actionable.

CONFIDENTIAL

Notwithstanding the above, and without waiving any rights my clients may have with respect to IH and/or IPH's anticipatory repudiation of the License Agreement and infringement upon my clients' intellectual property, my clients will agree to a meeting with you and your client in an attempt to amicably resolve the parties' differences. At such meeting, my client expects you client to provide reasonable assurances that it will perform in accordance with the License Agreement upon completion of the Guaranteed Performance validation.

Please have your staff contact my paralegal, Linda Conley, to coordinate the time and place for such meeting. I understand that it is the holiday season, but I suggest that we attempt to schedule this meeting as soon as practical.

Very truly yours,

JOHN W. ANNESSER, ESQ.
The Silver Law Group, P.A.
P.O. Box 710
Islamorada, FL 33036
(305) 664-3363   Telephone
(305) 664-3365   Fax
JAnnesser@silverlawgroup.com - primary

CONFIDENTIAL

IH-00126459