# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

ANDREA ROSSI and LEONARDO
CORPORATION,

    Plaintiffs,

  v.

THOMAS DARDEN; JOHN T. VAUGHN,
INDUSTRIAL HEAT, LLC; IPH
INTERNATIONAL B.V.; and
CHEROKEE INVESTMENT PARTNERS,
LLC,

    Defendants.

CASE NO. 1:16-cv-21199-CMA

---

INDUSTRIAL HEAT, LLC and IPH
INTERNATIONAL B.V.,

    Counter-Plaintiffs,

  v.

ANDREA ROSSI and LEONARDO
CORPORATION,

    Counter-Defendants,

  and

J.M. PRODUCTS, INC.; HENRY
JOHNSON; FABIO PENON; UNITED
STATES QUANTUM LEAP, LLC;
FULVIO FABIANI; and JAMES BASS,

    Third-Party Defendants.

---

**DEFENDANT INDUSTRIAL HEAT, LLC'S AMENDED RESPONSES AND OBJECTIONS TO PLAINTIFF ANDREA ROSSI'S FIRST SET OF INTERROGATORIES**

Defendant Industrial Heat, LLC ("Industrial Heat"), pursuant to Federal Rules of Civil Procedure ("Federal Rules") 26 and 33, hereby responds to Plaintiff Andrea Rossi's ("Rossi") First Set of Interrogatories ("Interrogatories").

## PRELIMINARY STATEMENT

Industrial Heat provides these responses and objections ("Amended Responses") without waiving any objections as to the admissibility in evidence of these Amended Responses, the information produced pursuant to, or referenced in, these Amended Responses, or the subject matter of the Interrogatories or of the information produced pursuant to, or referenced in, these Amended Responses.  The Amended Responses are also subject to and without waiver of Industrial Heat's rights: (i) to object to other discovery directed to the subject matter of the Interrogatories or Amended Responses; (ii) to make additional objections or to seek protective orders; and (iii) to revise, correct, add to, or clarify the Amended Responses or information referred to below in accordance with all applicable rules.  Industrial Heat reserves the right to supplement these Amended Responses after it has had a full and fair opportunity to participate in discovery.

Industrial Heat has not completed investigation of the facts related to this case.  Therefore, Industrial Heat responds to these Interrogatories based upon information and documents acquired and reviewed to date, which may or may not be inclusive of all documents relevant to the matters in dispute in this case.  Accordingly, the present Amended Responses are offered without prejudice to supplementation or modification at a later date.

**GENERAL OBJECTIONS**

Industrial Heat asserts the following General Objections to each of the Interrogatories. These objections are in addition to objections set forth separately in each and every Interrogatory.

1.      Industrial Heat will respond to the  Interrogatories according to its understanding of the ordinary meaning of any vague, ambiguous or undefined words or phrases contained therein.

2.      Industrial Heat objects to the definition of "E-Cat IP" to the extent that it is intended to encompass information beyond that encompassed by the definition of "E-Cat IP" contained in the License Agreement.

3.      There are defined terms and phrases in the definitions section of the Interrogatories that are not used in any of the specific interrogatories.  As a result, it is unnecessary for Industrial Heat to object to such unnecessary definitions but does not thereby waive any objections to those definitions as used in any subsequent discovery request. Furthermore, to the extent any defined term or phrase in the Request reflects a characterization by Rossi but the meaning of the defined term or phrase is clear (such as describing the property located at 7861 NW 46th Street[1] as the "Testing Facility"), Industrial Heat does not accept or endorse the characterization, but does not object to the defined term or phrase since its meaning is clear and any characterization is irrelevant.

4.      Industrial Heat objects to the definitions of Industrial Heat, IPH and Cherokee (and the alternative terms used for these entities) to the extent they include persons or entities "purporting to act," but not in fact acting, on behalf of Industrial Heat, IPH International or

_____

[1] As explained below, Rossi's First Set of Interrogatories states that the property located at 4861 NW 46th Street is the "Testing Facility."  Industrial Heat assumes that Rossi intended to reference the property located at 7861 NW 46th Street.

Cherokee Investment Partners because Rossi has provided no basis for the identification of such persons or entities and further because such persons or entities are not, by definition, acting on behalf of the above identified companies, but only purporting to do so. However, these Amended Responses include persons or entities Industrial Heat knows are acting or purporting to act on its behalf.

## INTERROGATORY RESPONSES AND OBJECTIONS

**INTERROGATORY NO. 1:** Identify each and every person assisting in the preparation of or supplying information for your answers to these Interrogatories, each respective person's relationship to you and for each such person, identify by number each such Interrogatory for which such person supplied information for or assisted in the preparation of.

**ANSWER:** In addition to its General Objections, Industrial Heat objects to this Interrogatory to the extent it seeks information on which legal counsel for Industrial Heat assisted in preparing the responses below and as to which Interrogatory a particular counsel provided assistance.

Subject to, and without waiving, the foregoing General and Specific Objections, the following people – excluding legal counsel for Industrial Heat – assisted in the preparation of or supplying information for these Responses:

1. John T. Vaughn, Vice President of Industrial Heat, supplied information for the responses to Interrogatory Nos. 2, 5, 6, 12, 13, 14 and 15.

2. Thomas Darden, Manager, President and Director of Industrial Heat, supplied information for the responses to Interrogatory Nos. 5, 11, 12 and 15.

3. Brian McLaughlin, former director at APCO Worldwide, an outside consultant to Industrial Heat, supplied information for the response to Interrogatory No. 12.

4. Dewey Weaver, managing partner of Deep River Ventures, LLC, a consultant for Industrial Heat, supplied information for the responses to Interrogatory Nos. 12 and 13.

5.  Jim Fogleman, Secretary and Treasurer of Industrial Heat, supplied information for the response to Interrogatory No. 7.

6.  The responses to Interrogatory Nos. 3, 4, and 10 are legal objections drafted by counsel.

7.  The responses to Interrogatory Nos. 8 and 9 direct Rossi to documents produced in discovery and do not contain additional factual information supplied by non-counsel.

**INTERROGATORY NO. 2:**  Please identify each and every person who has, claims to have or whom you believe may have knowledge or information pertaining to any fact alleged in the pleadings (as defined in Federal Rule of Civil Procedure 7(a)) filed in this action or any fact underlying the subject matter of this action.  For each person identified, please state the specific nature and substance of the knowledge that you believe the person(s) identified in your response may have.

**ANSWER:**  In addition to its General Objections, Industrial Heat objects to this Interrogatory as overbroad, unduly burdensome and not proportionate to the needs of the case in that it seeks identification of persons with knowledge (or even just possibly with knowledge) as to every allegation in the pleadings, which would include such matters as the State of incorporation for named entity parties and the dates of documents cited in the pleadings, and concern allegations where there is no dispute between the parties.  Industrial Heat objects to this Interrogatory as overbroad, unduly burdensome, and not proportionate to the needs of the case because it also seeks identification of persons with knowledge (or even just possibly with knowledge) of "any fact underlying the subject matter of this action" even if not tied or tethered to an allegation in any of the pleadings.  Industrial Heat also objects to this Interrogatory as seeking information that can be obtained in a more convenient, less burdensome and less expensive manner through either or both of a review of documents and data produced in discovery and depositions (with the time limit for depositions requiring a party to focus on facts in dispute and significant to the

resolution of this litigation as opposed to every allegation included in any pleading).  Industrial

Heat objects to this Interrogatory to the extent that it seeks information protected by an

Applicable Privilege or Protection.

Subject to, and without waiving the foregoing General and Specific Objections, the

following may have knowledge or information pertaining to facts alleged in the pleadings or

underlying the subject matter of this action:

1. All individuals listed in Plaintiffs' Initial Disclosures, Defendants' Initial Disclosures, or otherwise referenced herein.   Industrial Heat states that, in addition to the individuals listed in this Response, there are additional individuals with knowledge of the facts alleged in the pleadings whose identities can be identified through the documents that it will produce.  As stated above, it would be unduly burdensome to list each and every individual who may have knowledge or information pertaining to any fact alleged in the pleadings (*e.g.* each individual with knowledge of any payment made to Rossi or Leonardo Corporation in connection with the operation of the Plant (as defined below)).

2. Henry Johnson
   c/o ARAN, CORREA & GUARCH, P.A.
   255 University Drive
   Coral Gables, FL 33134-6732
   Tel.: 305-665-3400

3. James Bass
   515 NE 8th Avenue
   Deerfield Beach, FL 33441
   Tel: 954-421-8078

4. Jim Fogelman
   c/o JONES DAY
   600 Brickell Avenue, Suite 3300
   Miami, FL 33131
   Tel: 305-714-9700

5. Dewey Weaver
   c/o JONES DAY
   600 Brickell Avenue, Suite 3300
   Miami, FL 33131
   Tel: 305-714-9700

6. Brian McLaughlin

Imperium Global Advisors
12034 Devilwood Drive
Potomac, MD 20854
Tel: 240-354-5987

7.  Laura Kelly
    Myers Bigel
    P.O. Box 37428
    Raleigh, NC 27627

8.  Lynne Borchers
    Myers Bigel
    P.O. Box 37428
    Raleigh, NC 27627

9.  Justin Nifong
    NK Patent Law
    4917  Waters Edge Drive, Suite 275
    Raleigh, NC 27606

10. Frank Ochiuti
    O&R Patent Law
    321 Summer Street
    Boston, MA 02210

11. Steven Hartanto and Hady Hartanto
    Suite 902 K Wah Center
    191 Jaa Road, North Point
    Hong Kong

12. Joe Pike
    9663 Mashie Court
    Naples, FL 34108

13. Daniel and Mia Pike
    Address Unknown

14. Xu Hang
    Address Unknown

15.  Zhang Jjian
    Address Unknown

16. Lu Rui Feng
    Address Unknown

17. Chen Zhen Min
    Address Unknown

18. Chen Zheyua
    Address Unknown

19. Dong Jun Ling
    Address Unknown

20. Giuseppe Levi
    Bologna University
    Bologna Italy

21. Evelyn Foschi
    Bologna, Italy

22. Bo Hoistad
    Uppsala University
    Uppsala, Sweden

23. Roland Pettersson
    Uppsala University
    Uppsala, Sweden

24. Lars Tegner
    Uppsala University
    Uppsala, Sweden

25. Hanno Essen
    Royal Institute of Technology
    Stockholm, Sweden

26. Woodford Investment Management Ltd.
    9400 Garsington Road
    Oxford Business Park
    Oxford, United Kingdom
    OX4 2HN

27. Craig Cassarino
    AmpEnergo, Inc.
    4110 Sunset Boulevard
    Steubenville, OH 43952

28. Ron Engleman
    AmpEnergo, Inc.
    4110 Sunset Boulevard

Steubenville, OH 43952

29. Richard Noceti
AmpEnergo, Inc.
4110 Sunset Boulevard
Steubenville, OH 43952

30. Robert Gentile
AmpEnergo, Inc.
4110 Sunset Boulevard
Steubenville, OH 43952

31. Karl Norwood
AmpEnergo, Inc.
4110 Sunset Boulevard
Steubenville, OH 43952

**INTERROGATORY NO. 3:** If you denied any of the allegations contained in Plaintiffs' Complaint filed in the above styled matter, please state with specificity, each and every reason and/or factual basis for such denial and for each allegation denied, identify those persons/entities with knowledge of the facts and/or circumstances which form the basis for your denial and identify any document(s) you believe support such denial.

**ANSWER:** In addition to its General Objections, Industrial Heat objects to this Interrogatory on the grounds that it is overbroad and unduly burdensome. Interrogatories are unduly broad if they ask in an undifferentiated way for all facts or witnesses that support an opposing party's case. This Interrogatory indiscriminately sweeps an entire pleading and impermissibly requires Industrial Heat to provide in essence a running narrative or description of its entire case. Industrial Heat further objects to this Interrogatory as it is duplicative of Interrogatory No. 2. The identity of persons with knowledge of the facts which form the basis for Industrial Heat's denials are listed in response to Interrogatory No. 2. Industrial Heat also objects to this Interrogatory to the extent it seeks information protected by an Applicable Privilege or Protection.

**INTERROGATORY NO. 4:** Please identify each and every corporation, partnership, limited liability company or other business entity in which IH has an ownership interest, control interest, beneficial interest and/or is a member, director or officer. For each such entity, please state the

State/Province and Country in which the entity was formed, the nature of the business each such entity is engaged in and describe the nature of IH's interest in such entity including, but not limited to: (a) the percent of each such entity owned by IH; (b) the names of each and every share holder owning in excess of ten percent (10%) of such entity(ies); (c) the names of any common employees and/or officers (employees and/or officers engaged in both IH and any of the identified entities) and (d) indentify any agreements and/or contracts between IH and any such entity.

**ANSWER:**  In addition to its General Objections, Industrial Heat objects to this Interrogatory on the grounds that it is overbroad, unduly burdensome, harassing, not reasonably calculated to lead to the discovery of admissible evidence and not proportionate to the needs of this case.  This Interrogatory is a fishing expedition for information regarding Industrial Heat's ownership interests, control interests, beneficial interests, and other corporate positions.  The Court has already determined that Plaintiffs' allegations that Defendants created foreign and domestic companies are not sufficient to support Plaintiffs' claims.  Moreover, there is no allegation in the Complaint (as narrowed by the Court's Order on Defendants' motion to dismiss (the "Dismissal Order")) that makes material, or even relevant, to this case Industrial Heat's ownership interests, control interests, etc., particularly absent a limitation or requirement connecting such an interest to an issue in dispute in this litigation.  Further, given the breadth of Rossi's definition of "IH," this Interrogatory seeks such irrelevant and immaterial information as the ownership interests of Industrial Heat representatives and consultants.  Industrial Heat also objects to this Interrogatory because the phrases "control interest" and "beneficial interest" are undefined and, without a definition, vague and ambiguous.  Industrial Heat objects to this Interrogatory to the extent that it seeks information protected by an Applicable Privilege or Protection.

**INTERROGATORY NO. 5:** Please state with specificity, each and every date and time that IH, IPH, Cherokee or any of their respective employees, officers, agents, assigns and/or representatives visited the Testing Facility, located at 4861 [sic] NW 46th Street, Doral, FL 33166, from September 1, 2014 through the present.  For each such visit, please state the date of the visit, the duration of the visit, the names of all of the persons present during such visit, the purpose of the visits and identify any documents including, but not limited to, photographs,

memoranda, notes, journals and/or other recordings reflecting observations, measurements or notations made by IH, IPH, Cherokee or any of their respective employees, agents, representatives, guests, investors and/or assigns during the visit.

**ANSWER:** In addition to its General Objections, Industrial Heat objects to this Interrogatory because the terms "representatives" and "assigns," as used in the context of this Interrogatory, are vague and ambiguous. Industrial Heat objects to this Interrogatory to the extent that it seeks information protected by an Applicable Privilege or Protection. Industrial Heat also understands that this Interrogatory and any other references herein to the "Testing Facility" are meant to refer to 7861 NW 46th Street, Doral, Florida 33166 and not 4861 NW 46th Street, Doral, Florida 33166.

Subject to, and without waiving the foregoing General and Specific Objections, Industrial Heat will produce non-privileged documents addressing any visits to the "Testing Facility" by Industrial Heat, IPH International, Cherokee Investment Partners or an employee, officer or agent of same during the specified time period from which Rossi can ascertain the answers to this Interrogatory. Industrial Heat will provide further identifying information about such documents after the production of documents in discovery. In addition, and without limiting the information in such documents, Industrial Heat states the following about visits to the "Testing Facility" (not limited to visits by Industrial Heat, IPH International, Cherokee Investment Partners or any employee, officer, or agent of same):

1. On or about January 1, 2015, John T. Vaughn visited the Testing Facility for the purpose of checking on the facility. The visit lasted approximately one hour.

2. During the week of February 9, 2015, Thomas Darden, John T. Vaughn visited the Testing Facility with Paul Lamacraft (and possibly Harry Raikes) from the Woodford Fund ("Woodford"). The visit lasted approximately two hours and the

purpose of the visit was to meet with Andrea Rossi, Fulvio Fabiani, James Bass, and Barry West.

3.  On or about February 24, 2015, Thomas Barker Dameron and John T. Vaughn visited the Testing Facility to observe the operation of the 1 MW plant (the "Plant") and meet with Andrea Rossi.  The visit lasted approximately two hours.

4.  On or about March 27, 2015, Daniel Pike, Mia Pike, Xu Hang, and Zhang Jjian visited the Testing Facility to observe the operation of the Plant and meet with Andrea Rossi.

5.  On or about July 7, 2015, Steven Hartanto, Hady Hartanto, Lu Rui Feng, Chen Zhen Min, Chen Zheyuan, and Dong Jun Ling visited the Testing Facility to observe the operation of the Plant and meet with Andrea Rossi.

6.  On or about August 21, 2015, Thomas Darden, John T. Vaughn, Paul Lamacraft and Harry Raikes visited the Testing Facility to observe the operation of the Plant and meet with Andrea Rossi.  This visit lasted less than two hours.

7.  On February 16-17, 2016, John T. Vaughn, Joseph Murray and Christopher Pace visited the Testing Facility to observe the shutdown of the Plant and to inspect the methods being used to measure the Plant's performance.  The February 15 visit lasted approximately seven hours and the February 16 visit lasted approximately four and a half hours.

8.  On or about June 2, 2016, John T. Vaughn, Joseph Murray and Christopher Pace visited the Testing Facility to further observe the Plant following shutdown and to take additional photographs of the Plant.  The visit lasted less than 2 hours.

9.  On an unknown date or dates in 2015, Joe Pike visited the Testing Facility to

observe the operation of the Plant and meet with Andrea Rossi.

**INTERROGATORY NO. 6:** If you believe that Mr. Fabio Penon ("Mr. Penon") failed to follow the test protocol prepared by Mr. Penon for the 1MW E-Cat which was sent to you by Mr. Penon on February 10, 2015 and attached hereto as Exhibit "A", please state the basis for your belief including, but not limited to:

|     |     |
| --- | --- |
| (a) | Each and every reason why you believe the protocol was not followed; |
| (b) | The date(s) which you believe the protocol was not followed; |
| (c) | The manner in which you believe the protocol was not followed; |
| (d) | the date your first discovered that the protocol was not followed; |
| (e) | the person(s) who discovered or determined that the protocol was not followed; |
| (f) | how you discovered that the protocol had not been followed; and |
| (g) | identify each and every document supporting your claim that the test protocol was not followed. |

**ANSWER:** In addition to its General Objections, Industrial Heat objects to this Interrogatory because the Exhibit A attached to the Interrogatories is not in fact a test protocol, but a proposal for a test protocol dated nearly one month before Plaintiffs began operating the 1MW plant at what Rossi calls the "Testing Facility."  This protocol differs substantially from the test plan that Penon subsequently produced and represented to be the "Tests Plan."  Whether Penon followed a proposal that was not in fact the test plan Penon later represented to be the "Tests Plan" is therefore irrelevant or, even if marginally relevant, responding to such a question would be unduly burdensome and not proportionate to the needs of this case.  Industrial Heat also objects to this Interrogatory to the extent it seeks information protected by an Applicable Privilege or Protection.

Subject to, and without waiving the foregoing General and Specific Objections, Industrial Heat attaches hereto as Exhibit 1 a copy of what Penon represented to be the "Tests Plan."

**INTERROGATORY NO. 7:** Please identify each and every individual, corporation, partnership, limited liability company or other business entity which has a direct financial and/or ownership interest in IH, IPH, and Cherokee including any member, director or officer of each. For each such person or entity, please state the date such individual or entity acquired a financial

and/or ownership interest in IH, IPH, and/or Cherokee and their respective percentage ownership interest in each.

**ANSWER:**  In addition to its General Objections, Industrial Heat objects to this Interrogatory on the grounds that it is overbroad, unduly burdensome, harassing, not reasonably calculated to lead to the discovery of admissible evidence and not proportionate to the needs of this case.  This Interrogatory is a fishing expedition for information regarding the ownership of Cherokee Investment Partners.  There is no allegation in the Complaint (as narrowed by the Dismissal Order) that makes material, or even relevant, to this case those who have a financial or ownership interest in Cherokee Investment Partners, particularly absent a limitation or requirement connecting such an interest to an issue in dispute in this litigation.  Further, given the breadth of Rossi's definitions of "IH," "IPH" and "Cherokee," this Interrogatory seeks such irrelevant and immaterial information as, *e.g.*, those with financial or ownership interests in subsidiaries, consultants, and contractors of Industrial Heat, IPH International, or Cherokee Investment Partners.  Industrial Heat also objects to this Interrogatory because the phrase "financial and/or ownership interest" is undefined and, without a definition, it is vague and ambiguous as to how a financial interest is distinguishable from an ownership interest.  Industrial Heat objects to this Interrogatory to the extent that it seeks information protected by an Applicable Privilege or Protection.

Subject to, and without waiving the foregoing General and Specific Objections, Industrial Heat states that (a) it is wholly owned by IH Holdings International, Ltd., (b) it formerly was the sole owner of IPH International B.V., and (c) IPH International B.V. is now a wholly owned subsidiary of IPHBV Holdings Ltd.

**INTERROGATORY NO. 8:**  Please describe with specificity, each and every attempt (whether successful or not) made by you or by any other person or entity on your behalf to replicate, duplicate, construct, test, evaluate, manufacture, experiment, or operate an E-Cat device or any

portion thereof or any device derived from any/or all of the E-Cat IP.  For each such attempt, please identify the persons present, the specific protocol followed, the date of each attempt, the results of each such attempt and whether you informed the Plaintiffs of such attempt.

**ANSWER:**  In addition to its General Objections, Industrial Heat objects to this Interrogatory to the extent that it seeks information protected by an Applicable Privilege or Protection.  Industrial Heat further objects to the phrase "E-Cat device" which is vague and ambiguous without a definition, but Industrial Heat assumes that phrase is intended to equate to an "E-Cat Product" as defined in the License Agreement, and as noted above, Industrial Heat objects to the definition of "E-Cat IP" to the extent that it is intended to encompass information beyond that encompassed by the definition of "E-Cat IP" contained in the License Agreement.

Subject to, and without waiving the foregoing General and Specific Objections, Industrial Heat will produce non-privileged documents addressing attempts by Industrial Heat or others on its behalf to replicate or test an E-Cat Product or a device derived from the E-Cat IP (as both are defined by the License Agreement), from which Rossi can ascertain the answers to this Interrogatory.  Industrial Heat will provide further identifying information about such documents after the production of documents in discovery.

**INTERROGATORY NO. 9:** Please describe with specificity, any and all due diligence performed by IH, IPH, and/or Cherokee and their agents, employees, principals, predecessors, assigns and/or representatives before (a) entering into the License Agreement at issue in the above-styled case and (b) entering into the "Term Sheet" referenced in Paragraph 75 of your Counterclaim.

**ANSWER:** In addition to its General Objections, Industrial Heat objects to this Interrogatory because the terms "representatives" and "assigns," as used in the context of this Interrogatory, are vague and ambiguous.  Industrial Heat objects to this Interrogatory to the extent that it seeks information protected by an Applicable Privilege or Protection.  To the extent there is any ambiguity, Industrial Heat further clarifies its understanding that "Term Sheet" as used in this

Interrogatory is the Term Sheet attached as Exhibit 17 to the Second Amended Answer, Additional Defenses, Counterclaims and Third Party Claims. Industrial Heat objects to the phrase "due diligence" as vague and ambiguous because it is not tethered to a particular agreement or transaction, but understands the phrase to mean in the context of the Interrogatory due diligence as to the License Agreement or a subject thereof before entering the License Agreement and due diligence as to the Term Sheet or a subject thereof before entering the Term Sheet.

Subject to, and without waiving the foregoing General and Specific Objections, Industrial Heat will produce non-privileged documents addressing the "due diligence" performed by Industrial Heat, IPH International, Cherokee Investment Partners, or an employee, officer, principal or agent of same, as to the License Agreement or a subject thereof before entering the License Agreement and as to the Term Sheet or a subject thereof before entering the Term Sheet, from which Rossi can ascertain the answers to this Interrogatory. Industrial Heat will provide further identifying information about such documents after the production of documents in discovery.

**INTERROGATORY NO. 10:** Please state each item of damage that you claim whether as an affirmative claim or as a setoff and include in your answer: (a) the count or defense to which the item of damages relates; (b) the category into which each item of damages falls, *i.e.*, general damages, special or consequential damages (such as lost profits), interest, and any other relevant categories and (c) the factual basis for each item of damages and identify any documents which support such damages, and an explanation of how you computed each item of damages, including any mathematical formula used.

**ANSWER:**   In addition to its General Objections, Industrial Heat objects to this Interrogatory on the grounds that it is overbroad and unduly burdensome. Interrogatories are unduly broad if they ask in an undifferentiated way for all facts that support an opposing party's case. This Interrogatory, which seeks the factual basis for each item of damages, indiscriminately sweeps

an entire pleading and impermissibly requires the Industrial Heat to provide in essence a running narrative or description of its entire case.  Industrial Heat further objects to this Interrogatory to the extent it seeks information protected by an Applicable Privilege or Protection.  Industrial Heat also objects to this Interrogatory to the extent that it seeks information relating to counts in the Second Amended Answer, Additional Defenses, Counterclaims and Third Party Claims to which Rossi is not a party.

Subject to, and without waiving the foregoing General and Specific Objections, Industrial Heat will produce non-privileged documents supporting its claims for damages against Rossi, from which Rossi can ascertain the answers to this Interrogatory.  Industrial Heat will provide further identifying information about such documents after the production of documents in discovery.

**INTERROGATORY NO. 11:**  Please identify each and every individual and/or entity to whom IH, IPH, Cherokee and/or their respective employees, agents, representatives, and/or assigns disclosed any part of the E-Cat IP including, but not limited to, sub-licensees, researchers, scientists, subsidiaries, parent companies and affiliates.

**ANSWER:**  In addition to its General Objections, Industrial Heat objects to this Interrogatory because the terms "representatives" and "assigns," as used in the context of this Interrogatory, are vague and ambiguous.  Industrial Heat objects to this Interrogatory to the extent that it seeks information protected by an Applicable Privilege or Protection.  As noted above, Industrial Heat objects to the definition of "E-Cat IP" to the extent that it is intended to encompass information beyond that encompassed by the definition of "E-Cat IP" contained in the License Agreement.  Industrial Heat further objects to this Interrogatory as vague and ambiguous as to whether the covered "individual[s] and/or entit[ies]" (a) are intended to mean individuals or entities other than "IH, IPH, Cherokee and/or their respective employees, agents, representatives, and/or assigns" ("Other Parties") or (b) are intended to cover, *e.g.*, the "disclos[ure]" of the E-Cat IP

from one Industrial Heat employee to another Industrial Heat employee.   Industrial Heat understands and responds to this Interrogatory on the basis that the first interpretation (*i.e.*, "(a)") is the correct interpretation, otherwise, any responses to this Interrogatory would be overbroad and unduly burdensome.   Industrial Heat objects to this Interrogatory to the extent the covered "individual[s] and/or entit[ies]" are intended to cover Rossi or entities owned by Rossi as unduly burdensome and disproportionate to the needs of the case because disclosure, *e.g.*, by an Industrial Heat employee to Rossi is not an issue in dispute in this litigation.   Industrial Heat also objects to this Interrogatory to the extent that it seeks information about disclosures of the E-Cat IP to patent offices or other agencies involved in the issuance of patents, in connection with the patent application process.

Subject to, and without waiving the foregoing General and Specific Objections, Industrial Heat will produce non-privileged documents from which Rossi can ascertain Industrial Heat's disclosures of the E-Cat IP to patent offices or other agencies in involved in the patent application process.   Industrial Heat states that Industrial Heat and IPH entered into a Technology Internal Use and Evaluation Agreement with a third party entity to allow that third party entity to test and evaluate certain technology related to the E-Cat IP ("Evaluation Agreement").[2]   Industrial Heat provided portions of the E-Cat IP to that third party entity pursuant to the Evaluation Agreement.   Furthermore, certain family members of Thomas Darden were present when Rossi orally conveyed the energy catalyst formula to Thomas Darden.   Other than the third party entity referenced above, while Industrial Heat was fully entitled under the License Agreement to disclose the E-Cat IP (as defined in the License Agreement) to other individuals or entities, "IH, IPH, Cherokee and/or their respective employees [and/or] agents"

---

[2] Because no confidentiality order has been entered in this case, the identity of this third party entity will not be revealed in this response. After the Court enters a confidentiality order, Industrial Heat will produce a copy of the Technology Internal Use and Evaluation Agreement that will reveal the identity of the third party entity.

have not disclosed the E-Cat IP to any Other Parties (excluding Rossi and entities owned by Rossi).

**INTERROGATORY NO. 12:** Please identify each and every public statement including, but not limited to, any presentation, lecture, panel discussion, press release, speech, seminar, information session, investor presentation and/or interview given by IH, IPH, Cherokee and/or their respective employees, representatives and/or agents in which such person or entity mentions, references, explains or discusses the E-Cat, the E-Cat IP or any part thereof.  For each such public statement identified, please state the date such statement was made, the names of any parties present (if known), the location of such public statement and whether such statement was recorded or otherwise transcribed or published.

**ANSWER:**  In addition to its General Objections, Industrial Heat objects to this Interrogatory because the term "representatives," as used in the context of this Interrogatory, is vague and ambiguous.  Industrial Heat objects to this Interrogatory to the extent that it seeks information protected by an Applicable Privilege or Protection.  As noted above, Industrial Heat objects to the definition of "E-Cat IP" to the extent that it is intended to encompass information beyond that encompassed by the definition of "E-Cat IP" contained in the License Agreement.  Industrial Heat also objects to this Interrogatory to the extent it seeks information regarding statements as to "any part" of the E-Cat or E-Cat IP.  The E-Cat and the E-Cat IP contain many parts such as wires, tubes, pipes, and bolts and basic elements such as nickel.  Requiring Industrial Heat to provide information regarding statements as to any of these parts is overbroad, unduly burdensome, and disproportionate to the needs of this case.  Industrial Heat further objects to the extent that "every public statement" is intended to encompass any passing reference to the E-Cat or the E-Cat IP made by any IH, IPH or Cherokee employee, representative or agent in a public setting.  Responding to a request for such information is overbroad, unduly burdensome, and disproportionate to the needs of this case.

Subject to, and without waiving the foregoing General and Specific Objections, Industrial Heat will produce non-privileged documents addressing any public statement by Industrial Heat,

IPH International, Cherokee Investment Partners, or an employee or agent of same, that mentions, references, explains, or discusses the E-Cat or the E-Cat IP, from which Rossi can ascertain the answers to this Interrogatory.  Industrial Heat will provide further identifying information about such documents after the production of documents in discovery.

Additionally, the following oral public statement that explains or discusses the E-Cat or the E-Cat IP has been made:

1. In August 2013, Thomas Darden made general references to the E-Cat IP at an annual business and environmental sustainability retreat  in Iceland.  Thomas Darden only discussed Industrial Heat having licensed the E-Cat IP, he did not discuss any confidential or technical facts associated with the E-Cat IP.

**INTERROGATORY NO. 13:** Please identify with specificity each and every instance or occurrence that you allege Rossi and Leonardo violated the confidentiality provisions contained in the License Agreement.  For each instance or occurrence, please state with specificity (a) the date of the alleged violating disclosure; (b) to whom the alleged violating disclosure was made; (c) the specific language of such disclosure; (d) whether you had knowledge about the disclosure before it was made and (e) identify each and every document supporting your allegation of such disclosure.

**ANSWER:**  In addition to its General Objections, Industrial Heat objects to this Interrogatory to the extent it seeks information on whether Industrial Heat knew about disclosures by Rossi before they were made on the grounds that such is overbroad, unduly burdensome, harassing, not reasonably calculated to lead to the discovery of admissible evidence and not proportionate to the needs of this case.  As to the terms of the License Agreement, Rossi or the New Hampshire corporation of Leonardo Corporation would only be permitted to make a disclosure with a written approval, and as to the E-Cat IP, Rossi or the New Hampshire corporation of Leonardo Corporation would only be permitted to make a disclosure pursuant to License Agreement Section 13.2 or pursuant to a signed, written instrument amending or waiving a provision of the

License Agreement.  Industrial Heat objects to this Interrogatory to the extent that it seeks information protected by an Applicable Privilege or Protection.

Subject to, and without waiving the foregoing General and Specific Objections, Industrial Heat will produce non-privileged documents addressing each instance or occurrence that Industrial Heat contends Rossi or Leonardo violated the confidentiality provisions contained in the License Agreement, from which Rossi can ascertain the answers to this Interrogatory. Industrial Heat will provide further identifying information about such documents after the production of documents in discovery.

**INTERROGATORY NO. 14:** Indentify each and every instance in which you allege that Plaintiffs have violated Section 13.3 of the License Agreement.  For each instance or occurrence, please state with specificity (a) the name of the person or entity for whom or which Plaintiffs provided services or own an interest; (b) the date(s) on which all such violating actions took place; (c) the geographic location in which such violating action took place and (d) the damages that you believe are attributable to each such violation.

**ANSWER:**  In addition to its General Objections, Industrial Heat objects to this Interrogatory to the extent that it seeks information protected by an Applicable Privilege or Protection.  Subject to, and without waiving the foregoing General and Specific Objections, Industrial Heat will produce non-privileged documents addressing each instance that Industrial Heat contends Plaintiffs violated License Agreement Section 13.3, from which Rossi can ascertain the answers to this Interrogatory.  Industrial Heat will provide further identifying information about such documents after the production of documents in discovery.

**INTERROGATORY NO. 15:** In paragraph 132 of your Counterclaim, you state "on information and belief, Leonardo and Rossi have not paid their federal taxes on payments made to them from Counter-Plaintiffs."  Please state, with specificity, what "information" you have to support the your (sic) allegation in Paragraph 132 of your Counterclaim.  If such "information" includes any documents, please (a) identify the document, (b) identify the source of such documents, and (c) the specific language contained in the document which you relied upon as "information".

**ANSWER:**  In addition to its General Objections, Industrial Heat objects to this Interrogatory to the extent that it seeks information protected by an Applicable Privilege or Protection.  Subject to, and without waiving the foregoing General and Specific Objections, Industrial Heat states the following:  During at least one discussion in 2013 in which Thomas Darden was a participant, Andrea Rossi stated that he did not have to pay taxes on the payments made by Industrial Heat, and further made a reference to having offshore corporations or bank accounts.  During this conversation Mr. Darden informed Rossi that he did not believe it could be correct that no taxes were owed, in part because the payments were to Leonardo Corporation and Leonardo Corporation was a United States corporation.  Also, a member of AEG informed Industrial Heat that he used the same accountant as Rossi and that accountant told him that Rossi had not paid taxes on his income during either the time he used the accountant or during the last two years he used the accountant, who is no longer Rossi's accountant.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

**INTERROGATORY NO. 16:** (Propounded by the Court) Did you or did you not have access to $89 million as of February 15, 2016?  If you had less than $89 million, then identify the amount of money you did have.

**ANSWER:**  Yes, Industrial Heat did have access to $89 million as of February 15, 2016 through fundraising from investors.  Industrial Heat had an available cash balance of $16,761,138.52 in its accounts on February 15, 2016.  Industrial Heat had not called upon investors to fund any added capital as of that date because it already knew well before February 15, 2016 that Rossi and Leonardo could not achieve Guaranteed Performance under the License Agreement.  If Rossi and Leonardo had successfully conducted the Guaranteed Performance Test as specified in the License Agreement and had transferred all of the E-Cat IP to Industrial Heat (which did not occur), Industrial Heat could have raised the additional funds from investors to pay amounts due under the License Agreement.  For example, an arrangement existed with the Woodford Funds for an additional $150 million in capital if the circumstances warranted, and other investors had sufficient capital to provide the additional funds as well.

VERIFICATION

I, John T. Vaughn, am currently Vice President of Industrial Heat, LLC ("Industrial Heat"). I am authorized by Industrial Heat to verify on its behalf the Amended Responses and Objections to Rossi's First Set of Interrogatories ("Amended Responses"). I have read the Amended Responses and know the contents thereof, and I state that the facts contained in the Amended Responses are true and correct to the best of my knowledge, information and belief, subject to the objections set forth in the Amended Responses. I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED ON ___11/22___, 2016          BY: _____
                                             John T. Vaughn

Dated:  November 22, 2016.                    Respectfully submitted,


                                              */s/ Christopher R.J. Pace*
                                              Christopher R.J. Pace
                                              cpace@jonesday.com
                                              Florida Bar No. 721166
                                              Christopher M. Lomax
                                              clomax@jonesday.com
                                              Florida Bar No. 56220
                                              Christina T. Mastrucci
                                              cmastrucci@jonesday.com
                                              Florida Bar No. 113013
                                              Erika S. Handelson
                                              ehandelson@jonesday.com
                                              Florida Bar No. 91133
                                              JONES DAY
                                              600 Brickell Avenue
                                              Brickell World Plaza
                                              Suite 3300
                                              Miami, FL 33131
                                              Tel: 305-714-9700
                                              Fax: 305-714-9799

                                              *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served by e-mail

on counsel of record on the service list below this 22nd day of November, 2016.


*/s/ Erika S. Handelson*
Erika S. Handelson

## SERVICE LIST

John W. Annesser, Esq.
Brian Chaiken
Paul D. Turner
D. Porpoise Evans
PERLMAN, BAJANDAS, YEVOLI &
ALBRIGHT, P.L.
283 Catalonia Avenue, Suite 200
Coral Gables, FL 33134
Tel.: (305) 377-0086
Fax: (305) 377-0781
jannesser@pbyalaw.com
bchaiken@pbyalaw.com
pturner@pbyalaw.com
pevans@pbyalaw.com
*Counsel for Plaintiffs*

Fernando S. Aran
ARAN, CORREA & GUARCH, P.A.
255 University Drive
Coral Gables, FL 33134-6732
Tel.: (305) 665-3400
Fax: (305) 665-2250
faran@acg-law.com
*Counsel for JM Products, Inc. and Henry Johnson*

Rodolfo Nuñez
RODOLFO NUNEZ, P.A.
255 University Drive
Coral Gables, Florida 33134
Tel: (305) 665-3400
Fax: (305) 665-2250
rnunez@acg-law.com
*Counsel for United States Quantum Leap, LLC and Fulvio Fabiani*

# EXHIBIT 1

Ing. Fabio Penon                                                                    Tests plan

# E-CAT MW1 ENERGY PLANT IN MIAMI
# TESTS PLAN

## 1. Plant description

The MW1-USA plant under test consists of 115 power generation units, grouped in modules. Only 111 units will be operational during the tests: Four units will be used as spare parts.
Every unit absorbs a power of about 1.1 kW – 2.5 kW

Each unit consists of a reaction chamber, where the nickel powder reacts with the hydrogen in the presence of a catalyst.
Electric heaters heath the reaction chamber and by this way trigger the reaction between nickel and hydrogen.
The power panel regulates the power supply of the electric heaters

The cooling water is contained in a tank, placed inside the plant, that receives the water from an external plant.
It is conveyed by pumps in the units E-Cat, where it is heated to vaporize. The steam is collected in one tube of the steam line, which conveys it to the outside of the shelter.
The steam is then passed through the customer's facility, where it cools up to its condensation.
The water is so recycled to the internal tank in a closed loop. The water is distilled water.
The external tank is connected with the internal tank, by a water line and a floating valve, so that the level of water inside the internal tank is maintained constant. The water flows from the external tank into the internal tank by gravity.

The heating elements of the E-Cat units, the pumps for the water, the internal services to the shelter and the control panel are powered by the public grid

In the plant some measuring instruments are installed:
- flowmeter for measuring the flow rate of cooling water inlet into the shelter.
It is located along the line of return of the water, between the plant of the Customer and the 1 MW E-Cat
- temperature probe for measuring the cooling water temperature at the inlet of the shelter.
It is located in the internal water tank, containing cooling distilled water
- temperature probe for measuring steam temperature at the outlet of the shelter.
It is located along the steam pipe at the outside of the shelter
- pressure probe for measuring steam pressure at the outlet of the shelter.
It is located along the steam pipe at the outside of the shelter
- power analyzer for measuring the power supply.
It is located along the electric power line before the E-Cat

Ing. Fabio Penon

Tests plan

## 2. Test set up

### 2.1 List of components

n. 60   Water pump                    ( Prominent )
n. 115 E-Cat units
n. 1     Water pump
n. 1     Internal Water tank              ( 0.2 C.M. )
n. 1     Auxiliary external water tank

### 2.2 Measurement instrumentation

- Flowmeter                              Test report n. 01/2015, dated 2015/01/15
- Power analyzer PCE 830           Calibration certificate n. 0518/15, dated 2015/01/28
- Probe for water temperature measurement    HSTC - TT - TI – 24S.
- Probe for steam temperature measurement   TU - T - NPT - U 72
- Probe for steam pressure measurement      PX 309-100A5V
- Multifunction calibrator

The measurement chain of temperature a will be calibrated by the thermometer HSTC-TT-TI-24S-1M-SMPW-M

## 3. Calculation of the energy mutiple

### 6.1 Calculation of the energy produced ( $E_P$ )

The energy produced by 111 power generator units is given by the sum of the heat of heating of water, heat of vaporization of water and heat of superheating the steam.

$E_p = E_R + E_V + E_S$

$E_R$ ( energy of heating of water up to100 °C ) =  $M_w$ x $C_{sw}$ x ( $T_{vw} - T_{iw}$ )
where
$M_w$ = mass of water vaporized during the whole test, coming from tank
$T_{iw}$ = inlet temperature of the water, coming from tank
$C_{sw}$= specific heat of water = 1,14 Wh/(kg°K)
$T_{vw}$ = vaporization temperature of the water = 100 °C

$E_V$ = ( energy of vaporization of water ) = λ x $M_w$
λ =  ( latent energy of vaporization) =  627,5 Wh/kg

Ing. Fabio Penon                                                                Tests plan

$E_s$ ( heating energy of steam ) = $M_s$ x $C_{ps}$ x ( $T_{os} - T_{vw}$ )
$M_s$ = mass of steam produced during the whole test
$C_{ps}$ =specific heat of steam at constant pressure = 0,542 Wh/kg

$T_{os}$ = outlet temperature of the steam
$T_{vw}$ = vaporization temperature of the water

The values refer to the atmospheric pressure

In order to be conservative:
- it will be not taken into account the heating energy of steam
- the temperature of the incoming water will be always considered to be equal to the maximum value of the same measured during the entire test day
It will be possible small leaks of water to the inside of the shelter and are present measurement uncertainties
To take this into account the total mass of water transited during the test period will be reduced by 10%..

*3.2 Calculation of the energy absorbed ( $E_a$ )*

The energy is supplied from the public grid
In order to be conservative:
- all the supplied energy is supposed be absorbed by the 111 reactors
In reality a part of this energy feeds the pump, which conveys the water from the tank external to the reactors This energy doesn't feed the reactors

*3.3 Calculation of the 'energy multiple'*

Energy multiple = $\dfrac{\text{energy produced ( } E_P \text{ )}}{\text{energy absorbed ( } E_A \text{ )}}$

# 4. Test protocol

Before testing Leonardo Corporation will implement the system in accordance with reference documentation
The ERV will provide the measuring devices: probe for measuring water inlet temperature, probe to measure outlet steam temperature, probe to measure the outlet steam pressure, inlet water flowmeter, electrical power analyser
Leonardo Corporation will install measuring devices with reference documentation

Ing. Fabio Penon                                                    Tests plan

Before the plant start up the ERV will verify the compliance of the plant configuration and of the measuring chains with reference documentation.
He will carry out a trial run
Leonardo Corporation will start the system

The ERV will then follow the system start-up to reach the operating conditions and at least the next 24 hours of operation

According to data collected after the first 24 hours of operation, he will make an initial assessment of the 'Energy Multiple' and he will prepare the report

During the test will be detected the electrical power supplied, the temperature of the inlet water, the temperature and the pressure of the outlet steam, the flow rate of inlet water.

At 00.00 of every day of the test, the measurement system will calculate the mass of water that has passed through the E-Cat and the total energy supplied to the E-Cat.
Every event that occurs from the start until the close of the tests, after 350 days of operation, will be recorded in the logbook by Leonardo Corporation.

During the 350 days of operation, the ERV will visits to the plant with a frequency approximately four months in order to verify the configuration of the system and the measuring chains and make evaluations of Multiple Energy

At the end of the 350 days of operation the ERV will follow the shutdown of the plant
At the conclusion of the test the ERV will produce a final report, showing the results

Abano Terme, 2015/02/09

POIESIS srl
Fabio Penon  M.E.