DIGITAL AUDIO RECORDING

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO. 16-21199-CIV

DR. ANDREA ROSSI, LEONARDO CORP.,

        Plaintiffs,            MIAMI, FLORIDA

    vs.

                                    MARCH 14, 2017

THOMAS DARDEN, JOHN T. VAUGHN,
INTERNATIONAL HEAT, LLC.,            PAGES 1 - 55
IPH INTERNATIONAL B.V., CHEROKEE
INVESTMENT PARTNERS, LLC,

              Defendants.     /


TRANSCRIPT OF DISCOVERY HEARING
BEFORE THE HONORABLE JOHN J. O'SULLIVAN
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

FOR THE PLAINTIFF:          JOHN WILLIAM ANNESSER, ESQ.
                           ROBERT BERNSTEIN, ESQ.
                           Perlman Bajandas Yevoli
                           & Albright, P.L.
                           283 Catalonia Avenue
                           Suite 200
                           Coral Gables, Florida 33134

FOR THE DEFENDANT:          CHRISTOPHER MARTIN LOMAX, ESQ.
                           CHRISTOPHER PACE, ESQ.
                           Jones Day
                           600 Brickell Avenue
                           Suite 3300
                           Miami, Florida  33131


TRANSCRIBED BY:             DIANE M. MILLER, RMR, CRR
                           Official Court Reporter
                           701 Clematis Street
                           West Palm Beach, FL  33401
                           (561)514-3728
                           diane_miller@flsd.uscourts.gov

Tuesday, March 14, 2017.

DIGITAL AUDIO RECORDING

```
 1                    P-R-O-C-E-E-D-I-N-G-S
 2            THE COURT:  Good afternoon.
 3            MR. ANNESSER:  Good afternoon, Your Honor.
 4            MR. LOMAX:  Good afternoon.
 5            THE COURT:  We are here on the case of Rossi versus
 6   Darden and others -- case number 16-civil 21199 -- on two
 7   issues:  One is the motion for protective order related to
 8   attorney-client privilege documents; and the second, a
 9   memorandum of law regarding communications with Deep River
10   Ventures.
11            Can I have appearance for the plaintiff first?
12            MR. ANNESSER:  Your Honor, John Annesser and Robert
13   Bernstein on behalf of plaintiffs.  I also have with me my
14   client, Dr. Rossi.
15            THE COURT:  Okay, good; good to see you.
16            For the defendants?
17            MR. LOMAX:  Good afternoon, Your Honor; Christopher
18   Lomax and Christopher Pace on behalf of defendants.
19            THE COURT:  Okay, good.
20            All right.  Let me hear from the defendants first on
21   the motion relating to what is his name Mazzaro [phonetic] --
22   Mazzarino?
23            MR. LOMAX:  Mazzarino.
24            THE COURT:  Is it Mazzarino?
25            MR. LOMAX:  Yes, Your Honor.
```

Tuesday, March 14, 2017.

DIGITAL AUDIO RECORDING

1          THE COURT:  Okay, we will handle each of these

2   separately, so I'll hear from you, and then them on opposite

3   side, Mazzarino [unintelligible) then we will discuss the other

4   one.

5          MR. LOMAX:  Thank you, Your Honor.

6          By way of brief background, I think Your Honor

7   probably read the briefing but --

8          THE COURT:  Yeah, I have.

9          MR. LOMAX:  -- Mr. Mazzarino was a founder of

10  Industrial Heat, the defendant in this case.  He is also a

11  founder of one of the other defendants in this case, Cherokee

12  Investment Partners.  He works closely with Tom Darden, who is

13  a defendant in this case, and also J.T. Vaughn, who is a

14  defendant in this case.

15         Mr. Mazzarino has been heavily involved in matters

16  related to all of these defendants, specifically the license

17  agreement that was entered between Mr. Mazzarino; Dr. Rossi and

18  his company, Leonardo Corporation; and our clients, Industrial

19  Heat and IPH, in October 2012.

20         There were numerous meetings, conversations, and

21  other, I would say, moments of contemplation and thought that

22  were put into the agreement, and Mr. Mazzarino was someone

23  would was relied upon, his knowhow --

24         THE COURT:  That isn't before us, is it; or no?  I

25  thought they agreed that those ones are privileged.

Tuesday, March 14, 2017.

DIGITAL AUDIO RECORDING

1          MR. LOMAX:  I believe they have, Your Honor, but I
2  just want to make sure that we have the relevant background.
3          THE COURT:  Okay.
4          MR. LOMAX:  And I think it is still relevant because
5  even after the agreement was entered into, in October 2012,
6  there is no reason to believe that Mr. Mazzarino's involvement,
7  his necessity, what he had to offer, and contract would have
8  been cut off at that date.  It continued, and it continues
9  until today.
10          And Mr. Mazzarino was someone who has been relied
11  upon to participate in communications that involved the
12  solicitation of legal advice and obtaining legal services from
13  law firms, and plaintiffs have now challenged those
14  communications as being not privileged, even though they are
15  clearly and squarely within the attorney-client doctrine.  Even
16  more so, certain communications and certain documents that have
17  been exchanged that involve Mr. Mazzarino constitute attorney
18  work product.
19          So I would start off by saying that Mr. Mazzarino has
20  been arguably named as a third party in this entire thing, but
21  he is not really.  He is a third party in name because he
22  doesn't necessarily work for Industrial Heat, but I believe
23  that the facts and the history of this relationship will show
24  that he is much more than that.  He is not a passive investor
25  who heard about Industrial Heat from some friends and decided

Tuesday, March 14, 2017.

DIGITAL AUDIO RECORDING

1   to get on board.  He was a founder of the company, and he

2   continued to participate in the decisions that were made by the

3   company, when he was asked to do so.

4           THE COURT:  How come they haven't sued him?

5           MR. LOMAX:  You Honor, that was their own choice.

6   They deposed him.  Many ours were spent deposing him.  There

7   were documents requested that he has been involved in, they

8   have been produced; and they are certain documents that he was

9   asked about in his deposition that are directly related to this

10  litigation.

11          So obviously, he is someone who has been on the

12  plaintiffs' radar.  He knows he has been involved in this

13  matter, and so to take the position now that he is an outsider,

14  that he is somehow not within the province of the

15  attorney-client privilege, we think is inappropriate.

16          THE COURT:  Just so I understand, IH Holding

17  International owns Industrial Heat?

18          MR. LOMAX:  Yes, Your Honor.

19          THE COURT:  And who owns IH Holding International?

20          MR. LOMAX:  I believe Mr. Mazzarino is an owner and

21  Tom Darden.

22          THE COURT:  Are those the two owners, or are there

23  more than two owners?

24          MR. PACE:  Your Honor, Chris Pace.

25          Those are two of the owners.  There is more than two

Tuesday, March 14, 2017.

DIGITAL AUDIO RECORDING

1  owners.

2          At one point, the founding group, which includes

3  Mr. Mazzarino, was smaller.  I mean, it was Mr. Mazzarino,

4  Mr. Darden.  They subsequently brought in additional investors.

5          THE COURT:  Okay.

6          So when we say he is an owner of Industrial Heat, we

7  mean he is an owner of the company that owns Industrial Heat?

8  Is that what we mean?  I mean, he is an owner of the holding

9  company that owns Industrial Heat?

10         MR. PACE:  Now, that -- originally, Industrial Heat

11  was owned directly by Mazzarino and Darden; and then, IHHI was

12  formed in, I think it was 2015.  I would have to go back and

13  check the records.

14         THE COURT:  Is that right?

15         MR. PACE:  Yes.

16         THE COURT:  Okay.

17         All right, go ahead.

18         MR. LOMAX:  And so, Your Honor, there is no privilege

19  waiver here by involving Mr. Mazzarino in communications with

20  attorneys.  I think what is most important to look at here is

21  the expectation of Industrial Heat and Mr. Darden and involving

22  Mr. Mazzarino.

23         THE COURT:  What about these Cherokee partners,

24  investors, and advisers, and all of that kind of stuff?

25         MR. LOMAX:  Okay.  So beyond just Mr. Mazzarino,

Tuesday, March 14, 2017.

DIGITAL AUDIO RECORDING

1  these companies, Cherokee Investment Partners, which is a

2  defendant here, Cherokee Advisers, Cherokee Investment Services

3  are all companies that were started by Mr. Darden and

4  Mr. Mazzarino, and they generally serve as providers of certain

5  services to those entities that we know as Cherokee, including

6  Industrial Heat.  And so there may be someone who works for

7  Cherokee Investment Services who is asked to perform a certain

8  task by Mr. Darden or Mr. Mazzarino for a specific purposes,

9  and they have been involved in these communications not because

10  there is some outside third party who is being brought in for

11  reasons that are not known or understood but because they work

12  for and work alongside with Mr. Darden and Mr. Mazzarino.

13          And so it's the defendant's position that these sort

14  of, I would say, infrequent inclusions of individuals from

15  these entities is not a waiver of the privilege.  It is not

16  meant to be a waiver of the privilege.

17          THE COURT:  What about his deposition where he says,

18  "I never held an operating position in this company."  I think

19  he is referring to Industrial Heat here.  He was not a –– he

20  denied being responsible for making legal decisions or legal

21  strategy decisions on behalf of Industrial Heat, that that

22  would be other management people in Schell Bray that would make

23  those decisions.  He even he said he didn't play a role in

24  being a go-between between Industrial Heat Flores and

25  Industrial Heat.  He said he was episodically involved.

Tuesday, March 14, 2017.

DIGITAL AUDIO RECORDING

```
 1          MR. LOMAX:  I think he was episodically involved, and
 2   this was a very sort of protracted engagement and took place
 3   over many, many years; and so if he is only involved every so
 4   often, that would result in a number of communications where he
 5   was relied upon, his knowhow, his knowledge, his understanding,
 6   his experience was relied upon in obtaining legal advice; and
 7   so, he wasn't involved in the day-to-day operations.  That was
 8   Mr. Darden and Mr. Vaughn.  But as a founder of the company, as
 9   someone who had a stake in the company and someone who they
10   trusted to help them make these decisions, he was brought in
11   from time to time in circumstances where legal advice was being
12   sought and provided.
13          THE COURT:  Okay, all right.
14          What do plaintiffs say about all of this?
15          MR. ANNESSER:  Yes, Your Honor.
16          To begin, the first issue is the legal standard is
17   that there has to be a legal interest in common with the
18   parties; and the legal interest, as claimed by Mr. John
19   Mazzarino, as evidenced by his affidavit that was attached to
20   the motion, it is a common interest and security --
21          THE COURT:  Hold on, tell me -- I mean, I have the
22   motion here, tell me what paragraph.
23          MR. ANNESSER:  Yes, Your Honor.  It is the affidavit
24   of John Mazzarino.
25          THE COURT:  Yeah, I got that.
```

Tuesday, March 14, 2017.

DIGITAL AUDIO RECORDING

1    MR. ANNESSER:  Okay.  Third page, paragraph nine at

2 the bottom, "We share a common interest in securing a return on

3 our investment and in avoiding or managing litigation that

4 could adversely affect our investment.

5    THE COURT:  Okay.

6    MR. ANNESSER:  So the legal interests that they are

7 claiming is securing a return on our investment.  That sounds

8 like a business interest.

9    Moreover, Your Honor, there is a couple time periods

10 here that are particularly relevant.  The first is prior to the

11 creation of Industrial Heat.  Industrial Heat was created in

12 the latter part of 2012, and we have conceded that up until

13 that point, Mr. Mazzarino, as a founding member of Industrial

14 Heat, would have been involved and we understand, that could

15 be privileged.

16    After that, Industrial Heat operated -- pursuant to

17 his own statements in his deposition, he was not a managing

18 member.  He did not have any responsibility with the company.

19 He made absolutely sure to distance himself from any decision

20 that was being made.  In his deposition, he made it very clear,

21 he had nothing to do with it except for being episodically

22 involved.

23    In April, end of April 29th, 2013, Industrial Heat

24 assigned the license agreement to IPH International B.V., which

25 is a separate entity which we have now come to know is not a

Tuesday, March 14, 2017.

DIGITAL AUDIO RECORDING

1    subsidiary of Industrial Heat but is, in fact, opened by

2    another entity called IPH B.V. Holdings LTD, I believe.

3              THE COURT:  IH Holdings International?

4              MR. ANNESSER:  IH Holdings International owns

5    Industrial Heat.  There is another company which is IPH B.V.

6    Holdings, Inc., if I'm not mistaken, that owns IPH, the

7    recipient or the assignee of the license agreement.

8              So after April 29th, 2013, any involvement with

9    Industrial Heat or even as a distance director of IHHI had

10   nothing to do with the license agreement.  They had no rights

11   under the license agreement except to the physical plant that

12   had been sold to Industrial Heat, had nothing to could with the

13   testing --

14             THE COURT:  Is this in the filings?

15             MR. ANNESSER:  Your Honor, I believe it is.

16             It was discussed in their background, Your Honor.

17   This is just background information.

18             Your Honor, I believe they discussed Mr. Mazzarino's

19   involvement with these companies --

20             THE COURT:  I don't see -- I don't remember them

21   discussing IPH --

22             MR. ANNESSER:  Your Honor, in reviewing it this

23   morning -- okay, they discussed IHHI -- I'm sorry, IH

24   International Limited and then --

25             THE COURT:  Yeah.

Tuesday, March 14, 2017.

DIGITAL AUDIO RECORDING

1          MR. ANNESSER:  -- and then -- which is where they

2  discussed him being an officer of the parent company of

3  Industrial Heat.

4          THE COURT:  Yeah, that's -- but they call that IH

5  Holdings International Limited.

6          MR. ANNESSER:  Yes, Your Honor.  He is not, to our

7  knowledge or understanding, a director of the company that owns

8  IPH, the company that is the assignee under the assignment

9  agreement for the Leonardo license, so the people who, in

10  essence, owe Dr. Rossi money pursuant to the terms of the

11  license agreement.

12          Now IH is also on the line because they are not

13  released from their liability, but that's separate and aside.

14  Any communications regarding the license agreement and carrying

15  on is done by IPH International B.V., not IH.

16          After that, Your Honor, after April -- I'm sorry,

17  after the creation and after that assignment, I believe it was

18  April 2015 -- I could be a month off there -- Mr. Mazzarino had

19  no direct ownership or even second stage --

20          THE COURT:  April of what, 2015?

21          MR. ANNESSER:  2015.

22          THE COURT:  Yeah.

23          MR. ANNESSER:  At some time before that,

24  Mr. Mazzarino had no direct ownership in this chain for IH or

25  IPH B.V. Holdings, which is the entity that holds the license

Tuesday, March 14, 2017.

DIGITAL AUDIO RECORDING

1  agreement.

2         THE COURT:  Who owns that company?

3         MR. ANNESSER:  That's IPH B.V. -- I'm sorry, IPH B.V.

4  Holdings.  I don't know who owns that one.

5         THE COURT:  Okay.

6         MR. ANNESSER:  That is the owner of IPH International

7  B.V.

8         Now, Your Honor, the Court has to consider the

9  standard of whether the disclosure was necessary to obtain the

10 information or the legal advice that they were seeking; whether

11 the disclosure was meant to go to third parties; and lastly and

12 most importantly, the information exchange between the parties

13 was for the limited purpose of assisting in their common legal

14 cause.  So any communication -- again, their common legal

15 cause, as they have stated it, is to insure that they are going

16 to have financial returns and to insure separation of the

17 companies.

18         Now, they are asking for their cake and they want to

19 eat it, too, in that they are saying all of these companies are

20 all very separate, but yet, really, they are all the same

21 people working together and, therefore, the privilege should

22 apply across-the-board.

23         The same argument can be made and we are making with

24 respect to the other Cherokee companies.  There are three other

25 Cherokee companies where there are employees.  There is

Tuesday, March 14, 2017.

DIGITAL AUDIO RECORDING

1  Cherokee Investment Partners which is a party to this

2  litigation; there is Cherokee Investment Services that provides

3  some sort of back office services for some of the other

4  Cherokee entities; and then there is Cherokee Advisers which

5  appears to be the funding arm of everything.

6         While they are saying that their pursued purpose of

7  his communications was to keep them as separate entities is

8  very clear that they were anything but that.  We are asking for

9  communications and, presumptively, that long list of close to

10 4,000 privileged communications should pertain to Dr. Rossi,

11 the E-CAT, the E-CAT IP, and that's it -- and Leonardo

12 Corporation, not to anything under the sun.  If they have other

13 investments, we don't want to know about that.  That's not what

14 we have asked for.

15        It's clear, Your Honor, both from the affidavit of

16 Mr. Mazzarino as well as the allegations in their motion that

17 the interest that they are seeking to protect are business

18 interests.  Financial gain is a business interest.  It's not

19 seeking to avoid a lawsuit or otherwise.

20        THE COURT:  I guess it depends on how you determine

21 financial -- I would agree that generally "financial interest"

22 would be a business purpose; but, on the other hand, you may go

23 to a lawyer and say what is the best way for us to form this

24 company in order to protect my financial interests; in other

25 words, make sure I don't get sued, or make sure that if we

Tuesday, March 14, 2017.

DIGITAL AUDIO RECORDING

1  break up, that there is going to be a fair distribution of the

2  assets, or whatever; and then, it becomes a legal interest

3  rather than a business interest.

4      MR. ANNESSER:  Your Honor, I would agree with to the

5  extent that once that is done -- once that formation is done,

6  and that's why we have conceded, prior to Industrial Heat being

7  formed.  That is, any other investor, they want to protect

8  their interest and their money in setting up the proper legal

9  entity or otherwise.  That, I concede 100 percent.  But once

10  that's formed, once that was put into place, the operation of

11  the company which he has testified again and again to, to every

12  single question, "I wasn't really involved, I didn't make

13  business decisions, I didn't make legal decisions."  They were

14  sharing this with him as an investor.

15      And you know, to take it further out, I have invested

16  in Home Depot stock; if they send me a privileged communication

17  as an investor, they waived privilege.  There can be no

18  question, that is a publicly traded company.

19      THE COURT:  That's a little bit different.

20      MR. ANNESSER:  Well, Your Honor, this it is and it

21  isn't.  IHHI, the now holding company for Industrial Heat, has

22  numerous investors.  It is not just Mr. Mazzarino and

23  Mr. Darden.  If I'm not mistaken, it is a list of 10 to 15

24  different names, if not more.  So while it is different,

25  because it is a publicly traded company, the concept is the

DIGITAL AUDIO RECORDING

1    same.  As an investor, if your roles do not cross over into the

2    management side, you are not an essential part of that

3    decision-making process.

4         Again, the test being:  Are they reasonably necessary

5    for the transmission of the communication.  And here, his

6    testimony very clearly makes it obvious that, no, he wasn't.

7    He was episodically involved.  Mr. Lomax has argued to you

8    that, you know, they have relied on his knowledge and

9    experience on a number of these issues.

10        Well, if they are legal issues, hopefully they are

11   relying on their attorneys.  But he is a businessman, he is not

12   an attorney.  His legal experience is as a businessman.  They

13   have not suggested -- and it is their burden to do so -- or

14   have they offered any evidence or shown the Court that, in this

15   particular case, we are relying on some legal experience that

16   he had or, for some reason, he was essential to the

17   communication and to achieve the goals between the two parties.

18   Again, the next prong to that is that that communication had to

19   be limited solely to that common interest.

20        Well, the common interest in this particular case or

21   the common litigation, if you are going to extend it that far,

22   is the current case.  And so if they are saying any

23   communications regarding the current case should include him, I

24   think there is a missing gap because some of these

25   communications occurred between October 26th, 2012, and

Tuesday, March 14, 2017.

1    pre-April 2016, when it case was filed.  Certainly, there could

2    be some anticipation towards the end; but if they are

3    anticipating litigation the day after they form the company, I

4    would certainly be surprised.

5             Thank you, Your Honor.

6             THE COURT:  What is IPH?

7             MR. PACE:  Your Honor, IHHI owns all of entities that

8    have been described.  So between IHHI and IPH, there is another

9    entity.  And so IPH was originally a subsidiary of Industrial

10   Heat.  IPH then subsequently became a subsidiary of another

11   company that was formed, all of which comes under the IHHI

12   umbrella.

13            So what happened was the ownership was essentially

14   transferred up to a holding company, and that includes, you

15   know, John Mazzarino as well as Thomas Darden.  And, you know,

16   there is a reason they sued both Industrial Heat and IPH on

17   their breach of contract claims.  I mean, they can't really say

18   that Industrial Heat has no obligation, and yet they are suing

19   unless they are going to dismiss their breach of contract

20   claim.  So Industrial Heat has always been involved in

21   connection with the license agreement, as has IPH.  The

22   assignment -- you know, the assignment may involve all of

23   benefits, but that doesn't change some of the obligations.

24            THE COURT:  Okay.

25            MR. PACE:  I'm sorry, I jumped on Mr. Lopez.  I

DIGITAL AUDIO RECORDING

1   apologize.

2           THE COURT:  Anything else, Mr. Lomax?

3           MR. LOMAX:  No, Your Honor.

4           THE COURT:  Okay.  All right.

5           So in this case, the burden is on the party asserting

6   the privilege to establish through evidence that the privilege

7   applies.  An affidavit is the usual way of proceeding, and the

8   affidavit can't be conclusory but must be precise; and I find

9   in this case that the affidavit of Mr. Mazzarini --

10  Mazzarino -- some day I'll get his name right -- Mazzarino is

11  sufficient to establish by a preponderance of the evidence that

12  the documents for which the defendant has asserted a privilege

13  are, in fact, privileged.

14          I find that his close relationship to the companies

15  involved here as well as his investment in those companies make

16  him a person who would have been reasonably need to know, that

17  it was necessary to communicate with him in order to provide

18  the proper legal services, and that the -- it was necessary for

19  him to be in that loop.  And that's because of the reasons

20  stated in his affidavit, as well as the fact that he was one of

21  the original founders of this company.  He was closely involved

22  with the holing company, as well as with IH at its

23  commencement, although he later did not have any apparent

24  management authority in there.

25          He did testify that he was episodically involved, and

Tuesday, March 14, 2017.

1  I find that the communications between counsel and him and the

2  related Cherokee companies are privileged.

3          So let's go to the second motion which is relating to

4  Deep River Ventures.

5          MR. LOMAX:  Your Honor, again you have read the

6  briefing, but just by way of brief background, Deep River

7  Ventures was a consultant retained by Industrial Heat to

8  provide services related to patent related issues.  And as we

9  stated in our briefing, there have been communications between

10  Deep River Ventures and Industrial Heat involving Industrial

11  Heat's counsel and Deep River Ventures' counsel.

12          As we explained, Deep River Ventures has retained

13  Meyers Bigel and had a retention with NK Patent Law, and there

14  are challenges here now to the communications that involved

15  those --

16          THE COURT:  I'm sorry, tell me the names you just

17  said.

18          MR. LOMAX:  Meyers Bigel, it is a law firm that was

19  part of a joint representation agreement with Industrial Heat

20  and Deep River Ventures.

21          THE COURT:  Okay.

22          MR. LOMAX:  And then NK Patent Law.

23          THE COURT:  Meyers Bigel and NK Patent Law -- where

24  do I have -- one second here.

25          Okay, yeah, Meyer Bigel and NK Patent Law, right.  Go

Tuesday, March 14, 2017.

1   ahead, I'm sorry.

2          MR. LOMAX:  And defendants have challenged the

3   communications involving Meyers Bigel and NK Patent Law and

4   challenged the privilege that we have asserted.  There is

5   clearly a privileged relationship between those entities, and

6   there is no reason why those communications should be produced

7   in this litigation.

8          THE COURT:  How do you know that this is -- you say

9   there is clearly a relationship.  They are hired as a

10  consultant for business purpose of -- I mean, you can read the

11  contract, I guess, of what the business purpose was, but

12  essentially, it was to work on these ventures.

13         MR. LOMAX:  Right.

14         Well, part of the reason, Your Honor, is because they

15  entered into representation agreements with lawyers, and so the

16  communications that are going on between Deep River Ventures

17  and NK Patent Law and Meyers Bigel are actually communications

18  with their own lawyers, not just the lawyers of Industrial

19  Heat.

20         THE COURT:  Okay.  But I mean, communications with

21  lawyers are not -- are only protected generally and, you know,

22  there is some exceptions, as if it is asking for legal advise,

23  right?

24         MR. LOMAX:  That is correct, Your Honor.  These

25  communications were for purposes of obtaining legal advice.

DIGITAL AUDIO RECORDING

1    Deep River Ventures was hired as a patent consultant, and

2    Industrial Heat is a company that was investing in clean

3    energy; and part of that process was seeking and pursuing

4    patents, protecting patents, finding out what information is

5    available about certain technology, and Deep River Ventures was

6    retained for part of that purpose.

7             In terms of the legal nature of the representation,

8    it is spelled out in the joint representation agreements

9    between Meyers Bigel and NK Patent Law.  Defendants have raised

10   in their briefing the fact that the agreement between Deep

11   River Ventures --

12             THE COURT:  It is not signed by one of --

13             MR. LOMAX:  It is not signed by one of the parties,

14   but Mr. Weaver provided an affidavit saying there is a legal

15   relationship between NK Patent Law and Deep River Ventures.

16             THE COURT:  That was attached to your reply, is that

17   what that was?

18             MR. LOMAX:  Yes, Your Honor.

19             THE COURT:  One line -- what is Mr. Weaver's -- he is

20   a managing partner.  Is he basically Deep River Ventures?

21             MR. LOMAX:  Yes.  It is Mr. Weaver and one other

22   person, Paul Morris, but Mr. Weaver is basically Deep River

23   Ventures, for purposes of this engagement.

24             So, Your Honor, it is the defendant's position that

25   there is no waiver of privilege here by inclusion of a third

Tuesday, March 14, 2017.

DIGITAL AUDIO RECORDING

1  party and communications because Deep River Ventures is

2  actually a party to the legal representation agreement with

3  these law firms.

4         So the extent that Your Honor would like to discuss

5  the legal issue about third parties being consulted for patent

6  purposes, there are cases in our brief that talk about

7  consultants who can provide legal services on issues related to

8  patents, and they even go so far to talk about situations where

9  you can have a public relations consultant.  That's something

10  that's not even remotely related to legal services, who can

11  provide advice that would be considered legal.

12         So for this purpose, Your Honor, the consultation

13  that was provided by the attorneys and Deep River Ventures to

14  assist Industrial Heat in pursuing, protecting, and exploring

15  patents is clearly protected as attorney-client privilege.

16         THE COURT:  Okay.

17         What do you say?

18         MR. ANNESSER:  Your Honor, we have one of the same

19  issues that we had with Mr. Mazzarino.  The Meyers Bigel

20  agreement was executed -- or purported to have been executed

21  August 26, 2013.  By August 26, 2013, Industrial Heat had

22  assigned all of its rights to the intellectual property as well

23  as the rest of the contractual rights under the agreement to

24  IPH.  So a joint agreement between Industrial Heat, Meyers

25  Bigel, and Deep River Ventures, DRV, goes without day.

Tuesday, March 14, 2017.

DIGITAL AUDIO RECORDING

1          As to any projects that they worked on, and there

2     were understandably many other projects that they worked on,

3     those aren't reflected in this list or should not be reflected

4     in this list of privileged communications that has been

5     produced.  Again, those should be related to Dr. Rossi, the

6     E-CAT, the E-CAT IP, et cetera.

7          Now, there is case law to stand for the point that

8     when patent attorneys are concerned with drafting and preparing

9     patent specifications or patent ability of an invention, the

10    attorney-client privilege is inapplicable.  The case which is

11    cited in our brief is Osterneck v. Et Barwick [phonetic]

12    Industries.  That actually goes on to say not just that or when

13    a lawyer acts as a negotiator or business agent, the privilege

14    has been held not to apply.

15         With respect to NK Patent Law, though the affidavit

16    is self-serving even --

17         THE COURT:  Which affidavit?

18         MR. ANNESSER:  The affidavit that Mr. Weaver had

19    executed and it was --

20         THE COURT:  The one saying that "I didn't sign that,

21    but we have a relationship"?

22         MR. ANNESSER:  Yes, Your Honor.  It's a self-serving

23    affidavit.  There was no --

24         THE COURT:  You would agree that you don't need --

25    you don't have to have a signed agreement.  They point out that

DIGITAL AUDIO RECORDING

1  you can have attorney-client privilege without.

2         MR. ANNESSER:  Yes, Your Honor.  But the agreements

3  are very specific.  In fact, I would ask the Court, as we

4  discussed last time this issue came up, to look at the

5  consulting agreement between Deep River Ventures and Industrial

6  Heat.

7         THE COURT:  That's attached to the original motion,

8  right?

9         MR. ANNESSER:  Yes, Your Honor.

10         And as we discussed the first time, it is very

11  specific that under no circumstances is Deep River Ventures

12  deemed to be an agent of Industrial Heat.

13         THE COURT:  Where is that in here?

14         MR. ANNESSER:  Your Honor, it is --

15         THE COURT:  I remember looking at it last time we

16  met, but I don't recall --

17         MR. ANNESSER:  At the consulting confidentiality

18  noncompetition and inventions agreement, Exhibit B.  It is --

19         THE COURT:  Hold on, let me make sure I get -- I'm

20  looking at Exhibit A.  Exhibit B?

21         MR. ANNESSER:  Exhibit B, paragraph D.

22         THE COURT:  Hold on a second.

23         The problem, the way this thing is -- this is Exhibit

24  B to the original motion?

25         MR. ANNESSER:  To the original motion, Your Honor.

Tuesday, March 14, 2017.

```
1              THE COURT:  What is it called?

2              MR. ANNESSER:  It is called "consulting

3    confidentiality noncompetition and inventions agreement."

4              THE COURT:  I got it.  I got it.

5              Where are you pointing to?

6              MR. ANNESSER:  It is on the second page, Your Honor,

7    paragraph D, second sentence.

8              THE COURT:  Independent contract under that?

9              MR. ANNESSER:  Yes, Your Honor.  It says,

10   "Consultant shall not be deemed an employee, partner, agent, or

11   joint venturer with company, or any of it's affiliates for any

12   purpose."  It couldn't be any clearer with that respect.

13             Furthermore, the Meyers --

14             THE COURT:  That's because they want to make sure

15   they don't get sued when they do something --

16             MR. ANNESSER:  Absolutely.  But again, they have to

17   have it one of two of two ways.  You can't have both.

18             So when you look at the Meyers Bigel agreement, which

19   is attached to their motion as Exhibit A, it's very clear and

20   they state, "Our firm's practice is dedicated exclusively to

21   intellectual property law, and we do not handle any matters

22   outside of the scope of this practice."

23             THE COURT:  Right.

24             MR. ANNESSER:  As with Deep River Ventures, anything

25   relating to intellectual property, quite frankly, should not
```

Tuesday, March 14, 2017.

DIGITAL AUDIO RECORDING

1  be -- Dr. Rossi's intellectual property at least, should not be

2  included in any of that confidential or privileged

3  communication log because all of his intellectual property, all

4  rights that go with it, were assigned to IPH, not Industrial

5  Heat.

6  So this agreement is very clear that Industrial Heat

7  and DRV had a relationship related solely to intellectual

8  property.  In fact, one of the letters -- and I don't have it

9  with me today -- that we discussed last time, Deep River

10  Ventures says, "We are not attorneys, we don't offer legal

11  advice."

12  And so, again, we come back to the same issue with

13  respect to the purpose of the communication.  It had to be

14  necessary in order to enable the company to have legal advice

15  rendered to them or to provide their attorneys the information

16  necessary with respect to a particular legal interest.

17  With respect to the argument that has been made

18  regarding work product, the case law is very clear that rule

19  26(b)(3) applies only to documents prepared principally or

20  exclusively to assist in anticipated or ongoing litigation.

21  In this case, the communications with Mr. Weaver and

22  his company, there are, in fact, over 50 of them that don't

23  even have an attorney copied on the e-mail much less a party to

24  the "to or from."  Fifty communications between Mr. Darden,

25  Mr. Weaver, Mr. Weaver and Mr. Morris, part of that same

Tuesday, March 14, 2017.

1   company that they have declared as privileged.  In fact, on

2   those communications, they said that those are communications

3   with counsel which, obviously, counsel isn't each appearing as

4   a copied party.

5            It is our position, Your Honor, that they have the

6   burden to prove that the privilege -- to prove their privilege

7   by showing that, A, an attorney-client relationship exists, and

8   B, a particular communication that they are asserting the

9   privilege for is confidential.

10           They have mask coded which is -- it's violative of

11  the confidential -- I'm sorry, of the protective order that

12  this Court entered to mass code things just because it's a

13  communication between parties or, in this case, nonparties as

14  privileged communications.  They have not shown a single

15  instance.

16           In fact, when they brought in examples at the last

17  hearing, this Court went through about half a dozen of them and

18  found one that it found to be legal information that was being

19  sought.  Of the others, the Court found that they were all

20  business.

21           And notwithstanding the instruction to go back and

22  look through these again, the subsequent production was

23  insubstantial.  There were a handful of documents, at most, of

24  these 4,000 documents that have been listed on the privileged

25  communication log.

Tuesday, March 14, 2017.

DIGITAL AUDIO RECORDING

1          It is clear that the relationship between the parties

2   was that of a business relationship.  They were not essential

3   to the rendition of legal services outside of the realm of IP.

4   And the argument can be made and we would accept that if

5   communications existed with respect to IP as to their other

6   projects, that may be privileged.  But it could not be in this

7   case because Industrial Heat did not have any intellectual

8   property rights, nor did DRV have any obligations or any duties

9   with respect to Dr. Rossi's rights because those had been

10  assigned.  Those were long gone by the time any of these

11  agreements with Meyers Bigel or NK Patent Law had been signed.

12          THE COURT:  Okay.

13          What does the defendant say?

14          MR. LOMAX:  First, Your Honor, this distinction that

15  is being drawn between IPH International and Industrial Heat is

16  a little confusing given all of the claims that have been filed

17  against Industrial Heat in this matter that directly relate to

18  its obligations under the license agreement.

19          For a little more context, IPH International is a

20  holding company.  It doesn't have boots on the ground.  It is

21  not doing work.  It is not out here in the field doing the work

22  that Industrial Heat is doing.  So even after the licensed

23  agreement was assigned, Industrial Heat was still the party

24  involved in engaging with Mr. Rossi and his company, Leonardo,

25  for purposes of continuing the work that was being done,

1  whether it be the guarantied performance, the validation,

2  whatever aspect of the license agreement that was involved.

3  There are no representations that have been made here that

4  Mr. Rossi dealt with someone from IPH International, that he

5  has some sort of deep disagreement with someone from IPH

6  International.  It is a holding company, Your Honor.

7          Secondly, if we were to read the entirety of the

8  consulting agreement, you have been directed only to one

9  paragraph, and I don't think any contract is going to be read

10 on a one paragraph or one sentence basis.  You were asked to

11 look at paragraph D.  I would also ask the Court to look at

12 paragraph Q or section Q, paragraph four, which is devoted --

13         THE COURT:  Tell me where are you at.  I'm sorry.

14         MR. LOMAX:  This is on page 33 of 41 in the filing,

15 which is --

16         THE COURT:  Okay, I got it.

17         MR. LOMAX:  So paragraph four states.

18         THE COURT:  Cooperation.

19         MR. LOMAX:  Cooperation.  And about halfway down, you

20 know, we talk about all of the things that they are supposed to

21 cooperate and be involved together with.  And at the end, it

22 says that these cooperation terms are not limited to execution

23 of documents and assistance or cooperation in legal

24 proceedings.

25         So clearly, there was contemplation in this agreement

Tuesday, March 14, 2017.

1  about Deep River Ventures being involved in any kind of legal

2  advice or any kind of services that they were asked to be

3  involved with.

4          I think there is even a paragraph in this document

5  that talks about them doing pretty much -- pretty much whatever

6  Industrial Heat asked them to do within the scope of this

7  agreement.  So there is no restriction on what Industrial Heat

8  could ask Deep River Ventures to do, what they could ask them

9  to be involved in.  There is nothing in here that says

10 Industrial Heat is barred and prohibited from including Deep

11 River Ventures in consultation with its attorneys on issues

12 related to patents or otherwise.

13         And so the restriction that Plaintiffs' Counsel was

14 trying to place on this agreement and on the relationship

15 simply does not exist.

16         And finally, Your Honor, I think that it's clear --

17 you know, we could get into all of the nuance and all of the

18 different paragraphs, but it is clear based upon Industrial's

19 Heat's efforts to enter an agreement, a joint representation

20 agreement with its attorneys on two different occasions, two

21 different sets of attorneys, they contemplated that they would

22 be including Deep River Ventures in providing information to

23 counsel in order to receive legal advice every time and the

24 reverse of that.  And so to state that a blanket challenge to

25 any communication that involved Deep River Ventures should

DIGITAL AUDIO RECORDING

1  result in the production of all communications between

2  Industrial Heat and its lawyers, its patent lawyers, or

3  otherwise would be, I believe, inappropriate and inconsistent

4  with the law of this circuit and this Court.

5          THE COURT:  Okay.  All right.

6          In this instance, I find that the communications

7  which -- which involved Deep River Ventures are not protected

8  by the attorney-client privilege, and the defendant has failed

9  to meet their burden.

10          Again, the burden of claiming a privilege is on the

11  party asserting that privilege, and it is a heavy burden.  And

12  here, the only thing that has been provided to the Court is a

13  consulting agreement with Deep River Ventures, as well as

14  agreements with two different counsel and an unsigned.  But

15  subsequently, there is an affidavit -- short affidavit that

16  says that Deep River Ventures engaged NK Patent Law for legal

17  services pursuant to the dual representation agreement.

18          As I said, the burden is on the defendant here to

19  convince the Court that these are privileged documents.  They

20  haven't come forth with proof.  DRV is the consulting company

21  who was hired in order to do patent consulting.  The services

22  included maintaining relationships with the investors,

23  identifying investment as strategic partnerships, staying

24  abreast in new developments, assisting with the overall

25  business, providing assistance in other capacities.

Tuesday, March 14, 2017.

DIGITAL AUDIO RECORDING

1            In the consulting agreement itself, it indicates that

2   the consultant shall not be deemed an agent, which is what,

3   here, the defendant wants me to conclude that he was.

4            There is another contrasting paragraph where

5   basically it says that -- that the -- that the consulting

6   agreement, Deep River can do all sorts of stuff for this

7   company, but it's the burden of the defendant to show that the

8   purpose of their communications with the lawyers was for legal

9   purpose rather than a business purpose.  And there has been no

10  proof provided to me.  There is no affidavit, no testimony,

11  nothing to show what the primary purpose was of the

12  communications between counsel and when those communications

13  included Deep River Ventures and Mr. Weaver and Mr. Morris, is

14  it?

15            MR. ANNESSER:  Yes, Your Honor.

16            THE COURT:  So I fine the defendant has failed to

17  meet their burden to establish that these are protected, and I

18  am going to order that they be provided to plaintiff's counsel.

19            All right.

20            MR. ANNESSER:  Your Honor, if we can have a date.  I

21  believe our motions for summary judgment are due by the 21st,

22  so we would like to expedite.  It should be hopefully pretty

23  easy, since they have the log.

24            THE COURT:  Yeah.

25            When can you provide the documents?

Tuesday, March 14, 2017.

DIGITAL AUDIO RECORDING

1          MR. PACE:  Your Honor, I assume we probably could

2  either provide the documents or, if we choose to do so, file an

3  appeal by the --

4          THE COURT:  Today is what?  Today is the 16th, so

5  there is not much time.

6          MR. PACE:  Yeah.  No, no, I'm trying --

7          THE COURT:  The 14th -- no, no, the 14th, I'm sorry.

8  So you are talking about a week from today that you have to

9  file --

10          MR. ANNESSER:  Yes, Your Honor.

11          MR. PACE:  We can provide them or file our appeal

12  by -- I'm just trying to think.  If we end up filing an appeal,

13  to have the time to draft it, we could do it by Monday.

14          MR. ANNESSER:  Your Honor, that would give us one day

15  to process all of the documents with respect to our motion for

16  summary judgment if --

17          THE COURT:  Yeah, well.

18          MR. ANNESSER:  If Counsel could do it by Friday.

19          THE COURT:  Well, Friday, at least file a notice of

20  appeal, if you are going appeal.  I mean, if you file an

21  appeal, I'm going to stay my order because, you know, once

22  these things are out there, they are out there.

23          MR. PACE:  I understand, Your Honor.

24          I'm just saying, I know with Judge Altonaga, when we

25  file things that look weird in the record, she strikes them.

Tuesday, March 14, 2017.

DIGITAL AUDIO RECORDING

1  So how about if I say this:  By Friday, by the end of the day

2  Friday, we will either have produced the documents or we will

3  have notified opposing Counsel that by Monday, we will be

4  filing an appeal.  Can I do it that way?  Because I think if we

5  file something on the docket on Friday, we might get a ruling

6  from Judge Altonaga.

7        THE COURT:  She doesn't take long to rule.

8        MR. PACE:  And it says "motion to strike," and it is

9  going to create confusion that is unnecessary.

10       THE COURT:  All right.  So they are going to notify

11  you by Friday.  They are either going to provide you the

12  documents and notify you that -- I don't know if it is an

13  appeal objecting to my -- to my --

14       MR. PACE:  Yes, Your Honor.

15       THE COURT:  -- order.

16       MR. PACE:  Can I ask, just for clarification, does

17  the ruling apply to those documents that were held on the basis

18  of work product, or only on attorney-client privilege?

19       THE COURT:  You haven't proven worked product either.

20  So you provided me no proof other than the agreement, the

21  consulting agreement, and some -- and legal agreements.

22       MR. PACE:  I understand, but there were not specific

23  documents being challenged.  It was categorically --

24       THE COURT:  I understand that, don't --

25       MR. PACE:  I just wanted to make sure we were clear.

Tuesday, March 14, 2017.

34

DIGITAL AUDIO RECORDING

1        THE COURT:  That's as to any -- both privileges that
2    were asserted, I find that you haven't met your burden to -- it
3    is a heavy burden, according to the Eleventh Circuit, that you
4    have.
5        I mean, I was trying to find the exact burden.  A lot
6    of cases call it a "heavy burden."  I found one case that said
7    a "preponderance," which to me doesn't seem as heavy as a
8    "heavy burden," but I find that you haven't met either of those
9    burdens.  So it's as to all of the documents.
10        So the order is stayed until Friday, and then, by --
11    if the defendant announces to plaintiff that he is going to
12    appeal this matter, then the order will continue to be stayed
13    through Monday.  If you don't file the appeal by Monday, then
14    the stay is lifted.  If for some reason you change your mind
15    between --
16        MR. PACE:  I understand.  And then if we do a file on
17    Monday, then the stay --
18        THE COURT:  The stay would continue.  You don't have
19    to get another stay from her because I -- I mean, releasing
20    privileged documents, once that cat is out of the bag, that's
21    kind of hard to --
22        MR. PACE:  I appreciate that, Your Honor.
23        THE COURT:  Okay.  But if you don't file it by 5:00
24    o'clock on Monday, then the stay is lifted.  You have to give
25    them the documents.

Tuesday, March 14, 2017.

DIGITAL AUDIO RECORDING

1        Let's say between Friday and Monday, you come to your

2   senses and realize O'Sullivan is brilliant, and why am I

3   appealing.

4        MR. PACE:  I have always thought that, Your Honor.  I

5   was always had my senses.

6        Your Honor, we have one other small issue, I think,

7   which is you had ordered the production of tax returns, and we

8   would just want to get that resolved.  They asked us to come

9   over and inspect them, and only I could look at them.  I think

10  the answer is they just have to be produced.  I am happy to

11  limit them to not provide them with our clients but otherwise

12  just give me the copies of the documents.

13       THE COURT:  You have to remind me what my order was.

14  Was it "for attorney's eyes only"?

15       MR. ANNESSER:  Actually, Mr. Pace represented that

16  only he would look at it.  "Attorney's eyes only" under our

17  standing order means that it's attorneys as well as one client.

18  He had represented to the Court that it would be just him, no

19  clients, nothing else.

20       The other thing -- and, quite frankly, Your Honor, my

21  memory does not serve me in this case -- it was my

22  understanding that like the bank documents that they came over

23  and reviewed, that they would be made available for review and

24  inspection.  I could be mistaken, but we did want to ask the

25  Court for clarification.

Tuesday, March 14, 2017.

DIGITAL AUDIO RECORDING

1          MR. PACE:  Your Honor said "produce."  I never say

2     and Mr. Annesser knows it, I never say that "only I will see

3     something," because I have a legal team.  And trust me, my job

4     ends up me having to do a lot of different cases.  I would not

5     agree that, for example, Mr. Lomax, what he is saying is I

6     would agree to something that Mr. Lomax wouldn't be able to

7     see.

8          THE COURT:  Who do you want to see it besides you?

9          MR. PACE:  The legal team, the lawyers can see them.

10    I mean, there is a Jones Day legal -- I mean, they know the

11    lawyers working on it.  That's counsel of -- counsel of record

12    that would have to be able to see it.  But I just don't want to

13    limit it to me because then I'm kind of concerned.  I can't

14    give it to Mr. Lomax, I can't give it to Miss Handelson, et

15    cetera, and we just want it produced.

16         MR. ANNESSER:  Your Honor, the other problem that we

17    run into -- we have seen this recently with Judge Altonaga --

18    we don't want these tax returns filed or anything like that as

19    part of the motion.  Notwithstanding this Court's protective

20    order, we have run into the issue ourselves where we have gone

21    to file things that are covered under the protective order.  We

22    have tried to file them under seal, and the Court has refused

23    to do so.  So in this particular case --

24         THE COURT:  Protective order for discovery is

25    completely different than what comes out in open court.

Tuesday, March 14, 2017.

DIGITAL AUDIO RECORDING

1          MR. ANNESSER:  Yes, Your Honor, but the whole purpose

2   is this is private financial information that is protected

3   under Florida law.  To the extent the Court is going to allow

4   them to see it, which the Court has indicated it will, then we

5   would like to insure the maximum level of protection.  And

6   certainly, like the bank records, they are welcome to come and

7   inspect them, but we don't necessarily -- and again, if the

8   Court ordered otherwise, I can't argue with it.  But my

9   recollection was, it's just like the bank records.  The Court

10  ordered them to come over, inspect them, they did that, they

11  saw everything, that the tax returns would be handled the same

12  way.  I may be incorrect, but that was my understanding.

13          THE COURT:  That's not my recollection; but again,

14  you know, I don't remember exactly -- I mean, I remember having

15  this argument at the end.  The reason why I was requiring it to

16  be turned over was because, as part of the -- his complaint, he

17  indicated that as part of your agreement, that he -- that your

18  client was required to properly pay taxes and that if he

19  didn't, that would be a breach of the -- of the contract.

20          MR. PACE:  And Your Honor, Your Honor's order was

21  produce the documents; and "produce the documents" means we

22  produce copies of them.  I mean, we can go inspect them and

23  demand copies, then we are going to have to come back here

24  again.

25          And by the way, the information -- whatever the rules

DIGITAL AUDIO RECORDING

1  are for sealing is what Judge Altonaga is going to enforce or

2  Your Honor is going to enforce; you know, that they filed

3  something and even if the judge denied their sealing motion,

4  doesn't, you know, dictate any of the outcome here.

5          But let's just stop messing around with this.  Give

6  me the -- there are two Leonardo corporations.  I don't know

7  how many tax returns there are.  There is Andrea Rossi.  I

8  mean, it is not that many pieces of paper.

9          We will comply with the protective order.  And we are

10 not planning on publishing this on the internet or anything

11 like that.  I don't even know if there is a motion to which it

12 all applied; but if there is, we will file whatever appropriate

13 sealing motion is required.  If the judge grants it, great; if

14 the judge denies it, the judge is denying it.  I mean, I think

15 that's the way the system is supposed to work.

16         MR. ANNESSER:  Your Honor, he said something here

17 that really concerns me.  There are two issues.  First of all,

18 he brought up Dr. Rossi's tax returns.  Those have never been

19 discussed.  Leonardo, they have alleged that Leonardo failed to

20 pay taxes.  Now, he is asking for Dr. Rossi's tax returns.

21 That hasn't been noticed for today nor am I truly prepared to

22 argue with respect to Dr. Rossi tax returns.  This court

23 addressed.

24         THE COURT:  The complaint alleges what?

25         MR. PACE:  The obligation -- obligation applies to

Tuesday, March 14, 2017.

DIGITAL AUDIO RECORDING

1  both Leonardo and Rossi?

2           MR. ANNESSER:  I don't believe so, Your Honor.  I

3  believe the obligation was for Leonardo, because Leonardo was

4  the one who was allegedly paid by Industrial Heat.

5           MR. PACE:  So it does -- the license agreement

6  requires the provision of -- that both Rossi and Leonardo have

7  paid their taxes, that they have kind of adequately taken care

8  of any of their tax obligations.

9           THE COURT:  Paying taxes relating to this, or just

10  pay taxes for --

11           MR. PACE:  Well, I mean, it could relate to other

12  things as well.  Remember, as we talked about before, there was

13  historical issues with tax return challenges in Italy as to

14  these individuals.  So that's why --

15           THE COURT:  They weren't paying taxes in Italy.

16           MR. PACE:  That may well be true, Your Honor; but

17  again, in Leonardo Corporation, it covers both Leonardo and

18  Rossi, because while our payment was to Leonardo, the IP was

19  not exclusively owned by Leonardo.  There is some ownership

20  interest by Rossi.  So there could be an issue connected with

21  that.

22           THE COURT:  How would Rossi have an obligation to pay

23  taxes regarding money he gave to a company?

24           MR. PACE:  Well, it depends.  I don't know if this is

25  a C corporation or an S corporation, whatever.  We will find

Tuesday, March 14, 2017.

DIGITAL AUDIO RECORDING

1  out when we get the tax returns.

2         MR. ANNESSER:  Your Honor, discovery has been closed

3  in this for --

4         MR. PACE:  We have a document request.  There is a

5  document request asking for those tax returns.

6         MR. ANNESSER:  More so, Your Honor, I'm not prepared.

7  I don't have the complaint in front of me, nor do I have the

8  requests in front of me to be able to properly respond.  It

9  wasn't noticed for today.

10         So with respect to Dr. Rossi individually, I believe

11  that we need to have that brought up at a different time, when

12  I can be prepared to argue it.  I don't believe it is at all

13  relevant in this case.  I don't think the allegations go to

14  that.  They claim that they paid Leonardo.  Leonardo would then

15  have an obligation to pay taxes, as appropriate.

16         In fact, this is has been a fishing expedition the

17  whole way through.  There has been no evidence whatsoever that

18  Dr. Rossi failed to pay his taxes.  I'm not quite sure, quite

19  frankly, what a tax return is going to do to show him that

20  either.  Tax returns reflect a number of things --

21  depreciation, et cetera -- on different assets, and how it is

22  handled may or may not reflect it.

23         THE COURT:  I don't know how he is going to handle

24  the -- if he has a -- I have no idea.  He could have a schedule

25  that lists that as a Schedule C or something, you know, that

Tuesday, March 14, 2017.

1  business, and I don't know how that's going to be -- it is

2  going to be on the tax returns at all.  I mean, it might be on

3  there, but it might not be identified as money they got from

4  Darden and Darden's companies.

5          All right.  I'm going to require that you provide

6  Leonardo Corporation tax returns and that you provide them

7  to -- copies to counsel, that they are for attorneys eyes only.

8  That would include all attorneys in the case and not to be

9  disclosed except for those attorneys.

10          If you are going to file it with a -- with some kind

11  of -- I don't know what is going on down the road.  If it is

12  something you have to file with your summary judgment motion or

13  something else, you need to notify opposing Counsel and give

14  opposing Counsel an opportunity to brief what the Court -- why

15  those should be detected, other than you notifying the Court,

16  well, pursuant to this discovery order or protective order, you

17  should protect it.  That's your only responsibility.  You don't

18  really care if it is protected or not, I assume, but you

19  have -- you know, so you have more reason to brief it to the

20  Court and try to protect it.

21          MR. ANNESSER:  Can we ask for two days before

22  anything is filed to brief it before the Court?

23          MR. PACE:  We can tell them -- we will tell them on

24  Monday, if we are going to file it on Tuesday.  I mean this is

25  only because our deadline is fast approaching; but, otherwise,

Tuesday, March 14, 2017.

DIGITAL AUDIO RECORDING

1  look, the parties are going to have to, you know, coordinate on

2  it.

3          I don't know if we are going to be filing it or not.

4  I don't know if I will know by Friday afternoon.  That's part

5  of my issue.  If you want to do two calendar days, I guess I

6  can notify them on Sunday.

7          THE COURT:  All right.  Notify them 48 hours

8  before -- 48 hours because you guys won't file it until

9  midnight.

10          MR. PACE:  Your Honor, we will notify them what

11  otherwise would be close of business on Sunday.  How does that

12  sound?

13          THE COURT:  5:00 o'clock on Sunday?

14          MR. PACE:  5:00 o'clock on Sunday.

15          Yes, Your Honor, you're right.  I'm sure we will be

16  filing Tuesday late at night, whatever we end up filing.

17          Just so we are clear, there are two Leonardo

18  cooperations, we get the tax returns for any Leonardo

19  corporations, because it is the --

20          THE COURT:  What are the two?

21          MR. PACE:  Well, they supposedly have been merged

22  into one now; but there is a Leonardo Corporation of New

23  Hampshire and a Leonardo Corporation of Florida, which now

24  claim to be one entity.

25          THE COURT:  So it is actually three?

Tuesday, March 14, 2017.

DIGITAL AUDIO RECORDING

```
 1          MR. PACE:  Well, no -- I'm sorry.  Leonardo of New
 2   Hampshire was supposed to be merged into Leonardo of Florida.
 3   So there now is one left over.  But during this time period, I
 4   believe there would have been two because Leonardo New
 5   Hampshire and Leonardo Florida would have existed separately.
 6   I don't know if they filed tax returns for them or not.
 7          THE COURT:  Okay.
 8          MR. ANNESSER:  Yes, Your Honor, specifically at the
 9   time, in 2013, a tax return was filed by a Leonardo New
10   Hampshire.  I'm not sure if Florida filed one or not, at that
11   point in time.  The merger occurred in 2016; and after the
12   merger occurred, there was an amended return filed, and that's
13   where we plan on pursuing.
14          MR. PACE:  Your Honor, I think we get all the
15   returns.  If there was an original return that was false and
16   then an amended return in 2016, after litigation began --
17          THE COURT:  I agree, any returns that were filed.
18          MR. ANNESSER:  Yes, Your Honor.  The amended return
19   actually by requirement has to have the old return attached.
20          MR. PACE:  Understood, understood.
21          Thank you, Your Honor.
22          THE COURT:  So for -- well, I mean what do you want
23   me to put in my order, "for Leonardo Corporation of New
24   Hampshire and Leonardo Corporation of Florida"?
25          MR. PACE:  Yes, Your Honor.
```

Tuesday, March 14, 2017.

DIGITAL AUDIO RECORDING

1          THE COURT:  Okay.  All right.  And when do you want

2    those by?

3          MR. PACE:  Well, they were supposed to be produced

4    today.

5          MR. ANNESSER:  Just to clarify, this is where there

6    may be some concern.  I don't know if Leonardo Florida filed

7    anything in 2013 or not.  We would have to look at it.

8          We were supposed to produce today.  We were operating

9    under the assumption that it was Leonardo New Hampshire, the

10   company that was paid the $10 million, et cetera.  I would have

11   to go and look, and I'm not sure if I can get that information

12   before the end of the day today.

13         THE COURT:  Is there an accountant that did these?

14         MR. ANNESSER:  There is, and I know that they are on

15   corporate extensions or corporate returns are due today.  I can

16   certainly have them by tomorrow on Leonardo Florida only.

17         THE COURT:  Provide everything you can today; and if

18   you need to find out about Leonardo Florida for, you know,

19   prior year --

20         MR. ANNESSER:  It may not exist.

21         THE COURT:  -- provide it by tomorrow.

22         MR. PACE:  Thank you, Your Honor.

23         MR. ANNESSER:  Thank you, Your Honor.

24         THE COURT:  Okay, what else can I help you with?

25   Anything else?  No.

Tuesday, March 14, 2017.

DIGITAL AUDIO RECORDING

1        (PROCEEDINGS ADJOURNED.)

2                    **C-E-R-T-I-F-I-C-A-T-E**

3             I hereby certify that the foregoing is

4        a transcription, to the best of my ability, of the

5        DIGITAL AUDIO RECORDING of proceedings in the

6        above-entitled matter.

7

         *3/20/2015*_____          */s/DIANE MILLER*
8         DATE                          DIANE MILLER, RMR, CRR
                                        Official Court Reporter
9                                       United States District Court
                                        701 Clematis Street, Room 259
10                                      West Palm Beach, FL  33401
                                        561-514-3728
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Tuesday, March 14, 2017.

**$**

**$10 [1]**   44/10

**/**

**/s/DIANE [1]**   45/7

**1**

**10 [1]**   14/23
**100 [1]**   14/9
**14 [1]**   1/5
**14th [2]**   32/7 32/12
**15 [1]**   14/23
**16-21199-CIV [1]**   1/2
**16-civil [1]**   2/6
**16th [1]**   32/4

**2**

**200 [1]**   1/15
**2012 [4]**   3/19 4/5 9/12
 15/25
**2013 [6]**   9/23 10/8 21/21
 21/21 43/9 44/7
**2015 [5]**   6/12 11/18 11/20
 11/21 45/7
**2016 [3]**   16/1 43/11 43/16
**2017 [1]**   1/5
**21199 [1]**   2/6
**21st [1]**   31/21
**259 [1]**   45/9
**26 [3]**   21/21 21/21 25/19
**26th [1]**   15/25
**283 [1]**   1/15
**29th [2]**   9/23 10/8

**3**

**3/20/2015 [1]**   45/7
**33 [1]**   28/14
**3300 [1]**   1/19
**33131 [1]**   1/19
**33134 [1]**   1/16
**33401 [2]**   1/23 45/10
**3728 [2]**   1/24 45/10

**4**

**4,000 [2]**   13/10 26/24
**41 [1]**   28/14
**48 [2]**   42/7 42/8

**5**

**50 [1]**   25/22
**514-3728 [1]**   1/24
**55 [1]**   1/6
**561 [1]**   1/24
**561-514-3728 [1]**   45/10
**5:00 [3]**   34/23 42/13 42/14

**6**

**600 [1]**   1/18

**7**

**701 [2]**   1/23 45/9

**A**

**ability [2]**   22/9 45/4
**able [3]**   36/6 36/12 40/8
**above [1]**   45/6
**above-entitled [1]**   45/6
**abreast [1]**   30/24

**absolutely [2]**   9/19 24/16
**accept [1]**   27/4
**according [1]**   34/3
**accountant [1]**   44/13
**achieve [1]**   15/17
**across [1]**   12/22
**across-the-board [1]**   12/22
**acts [1]**   22/13
**actually [6]**   19/17 21/2
 22/12 35/15 42/25 43/19
**additional [1]**   6/4
**addressed [1]**   38/23
**adequately [1]**   39/7
**ADJOURNED [1]**   45/1
**adversely [1]**   9/4
**advice [10]**   4/12 8/6 8/11
 12/10 13/21 15/21 25/11
 25/14 29/2 29/23
**advise [1]**   19/22
**advisers [3]**   6/24 7/2 13/4
**affect [1]**   9/4
**affidavit [15]**   8/19 8/23
 13/15 17/7 17/8 17/9 17/20
 20/14 22/15 22/17 22/18
 22/23 30/15 30/15 31/10
**affiliates [1]**   24/11
**after [11]**   4/5 9/16 10/8
 11/16 11/16 11/17 11/17
 16/3 27/22 43/11 43/16
**afternoon [5]**   2/2 2/3 2/4
 2/17 42/4
**again [15]**   12/14 14/11 14/11
 15/4 15/18 18/5 22/5 24/16
 25/12 26/22 30/10 37/7
 37/13 37/24 39/17
**against [1]**   27/17
**agent [4]**   22/13 23/12 24/10
 31/2
**agree [6]**   13/21 14/4 22/24
 36/5 36/6 43/17
**agreed [1]**   3/25
**agreement [41]**   3/17 3/22 4/5
 9/24 10/7 10/10 10/11 11/9
 11/11 11/14 12/11 16/21
 18/19 20/10 21/2 21/20
 21/23 21/24 22/25 23/5
 23/18 24/3 24/18 25/6 27/18
 27/23 28/2 28/8 28/25 29/7
 29/14 29/19 29/20 30/13
 30/17 31/1 31/6 33/20 33/21
 37/17 39/5
**agreements [6]**   19/15 20/8
 23/2 27/11 30/14 33/21
**ahead [2]**   6/17 19/1
**Albright [1]**   1/14
**all [38]**   2/20 3/16 6/17
 6/24 7/3 8/13 8/14 12/19
 12/20 12/20 16/7 16/11
 16/22 17/4 21/22 25/3 25/3
 26/19 27/16 28/20 29/17
 29/17 30/1 30/5 31/6 31/19
 32/15 33/10 34/9 38/12
 38/17 40/12 41/2 41/5 41/8
 42/7 43/14 44/1
**allegations [2]**   13/16 40/13
**alleged [1]**   38/19
**allegedly [1]**   39/4
**alleges [1]**   38/24

**allow [1]**   37/3
**alongside [1]**   7/12
**also [5]**   2/13 3/10 3/13
 11/12 28/11
**although [1]**   17/23
**Altonaga [4]**   32/24 33/6
 36/17 38/1
**always [5]**   16/20 35/4 35/5
**am [4]**   31/18 35/2 35/10
 38/21
**amended [3]**   43/12 43/16
 43/18
**ANDREA [2]**   1/3 38/7
**ANNESSER [4]**   1/13 2/12 36/2
 36/16
**announces [1]**   34/11
**another [6]**   10/2 10/5 16/8
 16/10 31/4 34/19
**answer [1]**   35/10
**anticipated [1]**   25/20
**anticipating [1]**   16/3
**anticipation [1]**   16/2
**anything [9]**   13/8 13/12 17/2
 24/24 36/18 38/10 41/22
 44/7 44/25
**apologize [1]**   17/1
**apparent [1]**   17/23
**appeal [10]**   32/3 32/11 32/12
 32/20 32/20 32/21 33/4
 33/13 34/12 34/13
**appealing [1]**   35/3
**appearance [1]**   2/11
**APPEARANCES [1]**   1/12
**appearing [1]**   26/3
**appears [1]**   13/5
**applied [1]**   38/12
**applies [3]**   17/7 25/19 38/25
**apply [3]**   12/22 22/14 33/17
**appreciate [1]**   34/22
**approaching [1]**   41/25
**appropriate [2]**   38/12 40/15
**April [7]**   9/23 9/23 10/8
 11/16 11/18 11/20 16/1
**aren't [1]**   22/3
**arguably [1]**   4/20
**argue [3]**   37/8 38/22 40/12
**argued [1]**   15/7
**argument [4]**   12/23 25/17
 27/4 37/15
**arm [1]**   13/5
**around [1]**   38/5
**as [64]**
**aside [1]**   11/13
**asked [8]**   5/3 5/9 7/7 13/14
 28/10 29/2 29/6 35/8
**asking [5]**   12/18 13/8 19/22
 38/20 40/5
**aspect [1]**   28/2
**asserted [3]**   17/12 19/4 34/2
**asserting [3]**   17/5 26/8
 30/11
**assets [2]**   14/2 40/21
**assigned [5]**   9/24 21/22 25/4
 27/10 27/23
**assignee [2]**   10/7 11/8
**assignment [4]**   11/8 11/17
 16/22 16/22
**assist [2]**   21/14 25/20

## A

assistance [2]   28/23 30/25
assisting [2]   12/13 30/24
assume [2]   32/1 41/18
assumption [1]   44/9
attached [5]   8/19 20/16 23/7
24/19 43/19
attorney [12]   2/8 4/15 4/17
5/15 15/12 21/15 22/10 23/1
25/23 26/7 30/8 33/18
attorney's [2]   35/14 35/16
attorney-client [9]   2/8 4/15
5/15 21/15 22/10 23/1 26/7
30/8 33/18
attorneys [13]   6/20 15/11
21/13 22/8 23/10 25/15
29/11 29/20 29/21 35/17
41/7 41/8 41/9
AUDIO [1]   45/5
August [2]   21/21 21/21
authority [1]   17/24
available [2]   20/5 35/23
Avenue [2]   1/15 1/18
avoid [1]   13/19
avoiding [1]   9/3

## B

B.V [9]   1/7 9/24 10/2 10/5
11/15 11/25 12/3 12/3 12/7
back [5]   6/12 13/3 25/12
26/21 37/23
background [5]   3/6 4/2 10/16
10/17 18/6
bag [1]   34/20
Bajandas [1]   1/14
bank [3]   35/22 37/6 37/9
barred [1]   29/10
Barwick [1]   22/11
based [1]   29/18
basically [3]   20/20 20/22
31/5
basis [2]   28/10 33/17
be privileged [1]   9/15
Beach [2]   1/23 45/10
became [1]   16/10
becomes [1]   14/2
before [8]   1/10 3/24 11/23
39/12 41/21 41/22 42/8
44/12
began [1]   43/16
begin [1]   8/16
behalf [3]   2/13 2/18 7/21
believe [15]   4/1 4/6 4/22
5/20 10/2 10/15 10/18 11/17
30/3 31/21 39/2 39/3 40/10
40/12 43/4
benefits [1]   16/23
BERNSTEIN [2]   1/13 2/13
besides [1]   36/8
best [2]   13/23 45/4
between [24]   3/17 7/24 7/24
12/12 15/17 15/25 16/8 18/1
18/9 19/5 19/16 20/9 20/10
20/15 21/24 23/5 25/24
26/13 27/1 27/15 30/1 31/12
34/15 35/1
beyond [1]   6/25

## B (col 2)

Bigel [11]   18/13 18/18 18/23
18/25 19/3 19/17 20/9 21/19
21/25 24/18 27/11
bit [1]   14/19
blanket [1]   29/24
board [2]   5/1 12/22
boots [1]   27/20
both [7]   13/15 16/16 24/17
34/1 39/1 39/6 39/17
bottom [1]   9/2
Bray [1]   7/22
breach [3]   16/17 16/19 37/19
break [1]   14/1
Brickell [1]   1/18
brief [7]   3/6 18/6 21/6
22/11 41/14 41/19 41/22
briefing [4]   3/7 18/6 18/9
20/10
brilliant [1]   35/2
brought [6]   6/4 7/10 8/10
26/16 38/18 40/11
burden [14]   15/13 17/5 26/6
30/9 30/10 30/11 30/18 31/7
31/17 34/2 34/3 34/5 34/6
34/8
burdens [1]   34/9
business [15]   9/8 13/17
13/18 13/22 14/3 14/13
19/10 19/11 22/13 26/20
27/2 30/25 31/9 41/1 42/11
businessman [2]   15/11 15/12

## C

C-E-R-T-I-F-I-C-A-T-E [1]
45/2
cake [1]   12/18
calendar [1]   42/5
call [2]   11/4 34/6
called [3]   10/2 24/1 24/2
came [2]   23/4 35/22
can't [6]   16/17 17/8 24/17
36/13 36/14 37/8
capacities [1]   30/25
care [2]   39/7 41/18
carrying [1]   11/14
case [25]   1/2 2/5 2/6 3/10
3/11 3/13 3/14 15/15 15/20
15/22 15/23 16/1 17/5 17/9
22/7 22/10 25/18 25/21
26/13 27/7 34/6 35/21 36/23
40/13 41/8
cases [3]   21/6 34/6 36/4
cat [5]   13/11 13/11 22/6
22/6 34/20
Catalonia [1]   1/15
categorically [1]   33/23
cause [2]   12/14 12/15
certain [6]   4/16 4/16 5/8
7/4 7/7 20/5
certainly [4]   16/1 16/4 37/6
44/16
certify [1]   45/3
cetera [4]   22/6 36/15 40/21
44/10
chain [1]   11/24
challenge [1]   29/24
challenged [4]   4/13 19/2
19/4 33/23

## C (col 3)

challenges [2]   18/14 39/13
change [2]   16/23 34/14
check [1]   6/13
CHEROKEE [15]   1/7 3/11 6/23
7/1 7/2 7/2 7/5 7/7 12/24
12/25 13/1 13/2 13/4 13/4
18/2
choice [1]   5/5
choose [1]   32/2
Chris [1]   5/24
CHRISTOPHER [4]   1/17 1/17
2/17 2/18
circuit [2]   30/4 34/3
circumstances [2]   8/11 23/11
cited [1]   22/11
CIV [1]   1/2
civil [1]   2/6
claim [3]   16/20 40/14 42/24
claimed [1]   8/18
claiming [2]   9/7 30/10
claims [2]   16/17 27/16
clarification [2]   33/16
35/25
clarify [1]   44/5
clean [1]   20/2
clear [11]   9/20 13/8 13/15
24/19 25/6 25/18 27/1 29/16
29/18 33/25 42/17
clearer [1]   24/12
clearly [6]   4/15 15/6 19/5
19/9 21/15 28/25
Clematis [2]   1/23 45/9
client [12]   2/8 2/14 4/15
5/15 21/15 22/10 23/1 26/7
30/8 33/18 35/17 37/18
clients [3]   3/18 35/11 35/19
close [3]   13/9 17/14 42/11
closed [1]   40/2
closely [2]   3/12 17/21
code [1]   26/12
coded [1]   26/10
come [9]   5/4 9/25 25/12
30/20 35/1 35/8 37/6 37/10
37/23
comes [2]   16/11 36/25
commencement [1]   17/23
common [8]   8/17 8/20 9/2
12/13 12/14 15/19 15/20
15/21
communicate [1]   17/17
communication [11]   12/14
14/16 15/5 15/17 15/18 25/3
25/13 26/8 26/13 26/25
29/25
communications [35]   2/9 4/11
4/14 4/16 6/19 7/9 8/4
11/14 13/7 13/9 13/10 15/23
15/25 18/1 18/9 18/14 19/3
19/6 19/16 19/17 19/20
19/25 21/1 22/4 25/21 25/24
26/2 26/2 26/14 27/5 30/1
30/6 31/8 31/12 31/12
companies [11]   7/1 7/3 10/19
12/17 12/19 12/24 12/25
17/14 17/15 18/2 41/4
company [36]   3/18 5/1 5/3
6/7 6/9 7/18 8/8 8/9 9/18
10/5 11/2 11/7 11/8 12/2

**C**

company... **[22]**  13/24 14/11
14/18 14/21 14/25 16/3
16/11 16/14 17/21 17/22
20/2 24/11 25/14 25/22 26/1
27/20 27/24 28/6 30/20 31/7
39/23 44/10
complaint **[3]**  37/16 38/24
40/7
completely **[1]**  36/25
comply **[1]**  38/9
concede **[1]**  14/9
conceded **[2]**  9/12 14/6
concept **[1]**  14/25
concern **[1]**  44/6
concerned **[2]**  22/8 36/13
concerns **[1]**  38/17
conclude **[1]**  31/3
conclusory **[1]**  17/8
confidential **[3]**  25/2 26/9
26/11
confidentiality **[2]**  23/17
24/3
confusing **[1]**  27/16
confusion **[1]**  33/9
connected **[1]**  39/20
connection **[1]**  16/21
consider **[1]**  12/8
considered **[1]**  21/11
constitute **[1]**  4/17
consultant **[6]**  18/7 19/10
20/1 21/9 24/10 31/2
consultants **[1]**  21/7
consultation **[2]**  21/12 29/11
consulted **[1]**  21/5
consulting **[10]**  23/5 23/17
24/2 28/8 30/13 30/20 30/21
31/1 31/5 33/21
contemplated **[1]**  29/21
contemplation **[2]**  3/21 28/25
context **[1]**  27/19
continue **[2]**  34/12 34/18
continued **[2]**  4/8 5/2
continues **[1]**  4/8
continuing **[1]**  27/25
contract **[7]**  4/7 16/17 16/19
19/11 24/8 28/9 37/19
contractual **[1]**  21/23
contrasting **[1]**  31/4
conversations **[1]**  3/20
convince **[1]**  30/19
cooperate **[1]**  28/21
cooperation **[4]**  28/18 28/19
28/22 28/23
cooperations **[1]**  42/18
coordinate **[1]**  42/1
copied **[2]**  25/23 26/4
copies **[4]**  35/12 37/22 37/23
41/7
Coral **[1]**  1/16
CORP **[1]**  1/3
corporate **[2]**  44/15 44/15
corporation **[10]**  3/18 13/12
39/17 39/25 39/25 41/6
42/22 42/23 43/23 43/24
corporations **[2]**  38/6 42/19
correct **[1]**  19/24

could **[17]**  9/4 9/14 10/12
11/18 16/1 27/6 29/8 29/8
29/17 32/1 32/13 32/18 35/9
35/24 39/11 39/20 40/24
couldn't **[1]**  24/12
counsel **[17]**  18/1 18/11
18/11 26/3 26/3 29/13 29/23
30/14 31/12 31/18 32/18
33/3 36/11 36/11 41/7 41/13
41/14
couple **[1]**  9/9
Court's **[1]**  36/19
covered **[1]**  36/21
covers **[1]**  39/17
create **[1]**  33/9
created **[1]**  9/11
creation **[2]**  9/11 11/17
cross **[1]**  15/1
CRR **[2]**  1/22 45/8
current **[2]**  15/22 15/23
cut **[1]**  4/8

**D**

DARDEN **[15]**  1/6 2/6 3/12
5/21 6/4 6/11 6/21 7/3 7/8
7/12 8/8 14/23 16/15 25/24
41/4
Darden's **[1]**  41/4
date **[3]**  4/8 31/20 45/8
day **[10]**  1/18 8/7 8/7 16/3
17/10 21/25 32/14 33/1
36/10 44/12
day-to-day **[1]**  8/7
days **[2]**  41/21 42/5
deadline **[1]**  41/25
dealt **[1]**  28/4
decided **[1]**  4/25
decision **[2]**  9/19 15/3
decision-making **[1]**  15/3
decisions **[7]**  5/2 7/20 7/21
7/23 8/10 14/13 14/13
declared **[1]**  26/1
dedicated **[1]**  24/20
deemed **[3]**  23/12 24/10 31/2
deep **[32]**  2/9 18/4 18/6
18/10 18/11 18/12 18/20
19/16 20/1 20/5 20/10 20/15
20/20 20/22 21/1 21/13
21/25 23/5 23/11 24/24 25/9
28/5 29/1 29/8 29/10 29/22
29/25 30/7 30/13 30/16 31/6
31/13
defendant **[13]**  1/17 3/10
3/13 3/14 7/2 17/12 27/13
30/8 30/18 31/3 31/7 31/16
34/11
defendant's **[2]**  7/13 20/24
defendants **[8]**  1/8 2/16 2/18
2/20 3/11 3/16 19/2 20/9
demand **[1]**  37/23
denied **[2]**  7/20 38/3
denies **[1]**  38/14
denying **[1]**  38/14
depends **[2]**  13/20 39/24
deposed **[1]**  5/6
deposing **[1]**  5/6
deposition **[4]**  5/9 7/17 9/17
9/20

Depot **[1]**  14/16
depreciation **[1]**  40/21
described **[1]**  16/8
detected **[1]**  41/15
determine **[1]**  13/20
developments **[1]**  30/24
devoted **[1]**  28/12
diane **[4]**  1/22 1/24 45/7
45/8
dictate **[1]**  38/4
did **[8]**  9/18 17/23 17/25
27/7 27/8 35/24 37/10 44/13
didn't **[5]**  7/23 14/12 14/13
22/20 37/19
different **[11]**  14/19 14/24
14/24 29/18 29/20 29/21
30/14 36/4 36/25 40/11
40/21
DIGITAL **[1]**  45/5
direct **[2]**  11/19 11/24
directed **[1]**  28/8
directly **[3]**  5/9 6/11 27/17
director **[2]**  10/9 11/7
disagreement **[1]**  28/5
disclosed **[1]**  41/9
disclosure **[2]**  12/9 12/11
discovery **[4]**  1/10 36/24
40/2 41/16
discuss **[2]**  3/3 21/4
discussed **[8]**  10/16 10/18
10/23 11/2 23/4 23/10 25/9
38/19
discussing **[1]**  10/21
dismiss **[1]**  16/19
distance **[2]**  9/19 10/9
distinction **[1]**  27/14
distribution **[1]**  14/1
DISTRICT **[3]**  1/1 1/1 45/9
DIVISION **[1]**  1/2
docket **[1]**  33/5
doctrine **[1]**  4/15
document **[3]**  29/4 40/4 40/5
documents **[24]**  2/8 4/16 5/7
5/8 17/12 25/19 26/23 26/24
28/23 30/19 31/25 32/2
32/15 33/2 33/12 33/17
33/23 34/9 34/20 34/25
35/12 35/22 37/21 37/21
does **[6]**  27/13 29/15 33/16
35/21 39/5 42/11
doesn't **[6]**  4/22 16/23 27/20
33/7 34/7 38/4
doing **[4]**  27/21 27/21 27/22
29/5
done **[4]**  11/15 14/5 14/5
27/25
down **[2]**  28/19 41/11
dozen **[1]**  26/17
DR **[5]**  1/3 3/17 13/10 27/9
38/20
Dr. **[8]**  2/14 11/10 22/5
25/1 38/18 38/22 40/10
40/18
Dr. Rossi **[6]**  2/14 11/10
22/5 38/22 40/10 40/18
Dr. Rossi's **[2]**  25/1 38/18
draft **[1]**  32/13
drafting **[1]**  22/8

**D**

drawn [1]  27/15
DRV [4]  21/25 25/7 27/8
  30/20
dual [1]  30/17
due [2]  31/21 44/15
during [1]  43/3
duties [1]  27/8

**E**

E-CAT [4]  13/11 13/11 22/6
  22/6
e-mail [1]  25/23
each [2]  3/1 26/3
easy [1]  31/23
eat [1]  12/19
efforts [1]  29/19
either [6]  32/2 33/2 33/11
  33/19 34/8 40/20
Eleventh [1]  34/3
else [5]  17/2 35/19 41/13
  44/24 44/25
employee [1]  24/10
employees [1]  12/25
enable [1]  25/14
end [8]  9/23 16/2 28/21
  32/12 33/1 37/15 42/16
  44/12
ends [1]  36/4
energy [1]  20/3
enforce [2]  38/1 38/2
engaged [1]  30/16
engagement [2]  8/2 20/23
engaging [1]  27/24
enter [1]  29/19
entered [4]  3/17 4/5 19/15
  26/12
entire [1]  4/20
entirety [1]  28/7
entities [6]  7/5 7/15 13/4
  13/7 16/7 19/5
entitled [1]  45/6
entity [6]  9/25 10/2 11/25
  14/9 16/9 42/24
episodically [5]  7/25 8/1
  9/21 15/7 17/25
ESQ [4]  1/13 1/13 1/17 1/17
essence [1]  11/10
essential [3]  15/2 15/16
  27/2
essentially [2]  16/13 19/12
establish [3]  17/6 17/11
  31/17
et [5]  22/6 22/11 36/14
  40/21 44/10
even [14]  4/5 4/14 4/15 7/23
  10/9 11/19 21/8 21/10 22/16
  25/23 27/22 29/4 38/3 38/11
every [3]  8/3 14/11 29/23
everything [3]  13/5 37/11
  44/17
evidence [4]  15/14 17/6
  17/11 40/17
evidenced [1]  8/19
exact [1]  34/5
exactly [1]  37/14
example [1]  36/5

examples [1]  26/16
except [3]  9/21 10/11 41/9
exceptions [1]  19/22
exchange [1]  12/12
exchanged [1]  4/17
exclusively [3]  24/20 25/20
  39/19
executed [3]  21/20 21/20
  22/19
execution [1]  28/22
Exhibit [6]  23/18 23/20
  23/20 23/21 23/23 24/19
exist [2]  29/15 44/20
existed [2]  27/5 43/5
exists [1]  26/7
expectation [1]  6/21
expedite [1]  31/22
expedition [1]  40/16
experience [4]  8/6 15/9
  15/12 15/15
explained [1]  18/12
exploring [1]  21/14
extend [1]  15/21
extensions [1]  44/15
extent [3]  14/5 21/4 37/3
eyes [3]  35/14 35/16 41/7

**F**

fact [10]  10/1 17/13 17/20
  20/13 23/3 25/8 25/22 26/1
  26/16 40/16
facts [1]  4/23
failed [4]  30/8 31/16 38/19
  40/18
fair [1]  14/1
false [1]  43/15
far [2]  15/21 21/8
fast [1]  41/25
field [1]  27/21
Fifty [1]  25/24
file [17]  32/2 32/9 32/11
  32/19 32/20 32/25 33/5
  34/13 34/16 34/23 36/21
  36/22 38/12 41/10 41/12
  41/24 42/8
filed [11]  16/1 27/16 36/18
  38/2 41/22 43/6 43/9 43/10
  43/12 43/17 44/6
filing [6]  28/14 32/12 33/4
  42/3 42/16 42/16
filings [1]  10/14
finally [1]  29/16
financial [6]  12/16 13/18
  13/21 13/21 13/24 37/2
find [9]  17/8 17/14 18/1
  30/6 34/2 34/5 34/8 39/25
  44/18
finding [1]  20/4
fine [1]  31/16
firm [1]  18/18
firm's [1]  24/20
firms [2]  4/13 21/3
first [7]  2/11 2/20 8/16
  9/10 23/10 27/14 38/17
fishing [1]  40/16
FL [2]  1/23 45/10
Flores [1]  7/24
FLORIDA [13]  1/1 1/4 1/16

1/19 37/3 42/23 43/2 43/5
  43/10 43/24 44/6 44/16
  44/18
flsd.uscourts.gov [1]  1/24
foregoing [1]  45/3
form [2]  13/23 16/3
formation [1]  14/5
formed [4]  6/12 14/7 14/10
  16/11
forth [1]  30/20
found [4]  26/18 26/18 26/19
  34/6
founder [4]  3/9 3/11 5/1 8/8
founders [1]  17/21
founding [2]  6/2 9/13
four [2]  28/12 28/17
frankly [3]  24/25 35/20
  40/19
Friday [9]  32/18 32/19 33/1
  33/2 33/5 33/11 34/10 35/1
  42/4
friends [1]  4/25
front [2]  40/7 40/8
funding [1]  13/5
further [1]  14/15
Furthermore [1]  24/13

**G**

Gables [1]  1/16
gain [1]  13/18
gap [1]  15/24
gave [1]  39/23
generally [3]  7/4 13/21
  19/21
get [19]  5/1 13/25 17/10
  23/19 24/15 29/17 33/5
  34/19 35/8 40/1 42/18 43/14
  44/11
give [7]  32/14 34/24 35/12
  36/14 36/14 38/5 41/13
given [1]  27/16
go [13]  6/12 6/17 7/24
  12/11 13/22 18/3 18/25 21/8
  25/4 26/21 37/22 40/13
  44/11
go-between [1]  7/24
goals [1]  15/17
goes [2]  21/25 22/12
gone [2]  27/10 36/20
good [7]  2/2 2/3 2/4 2/15
  2/15 2/17 2/19
got [5]  8/25 24/4 24/4
  28/16 41/3
grants [1]  38/13
great [1]  38/13
ground [1]  27/20
group [1]  6/2
guarantied [1]  28/1
guess [3]  13/20 19/11 42/5
guys [1]  42/8

**H**

half [1]  26/17
halfway [1]  28/19
Hampshire [6]  42/23 43/2
  43/5 43/10 43/24 44/9
hand [1]  13/22
Handelson [1]  36/14

**H**

handful [1]   26/23
handle [3]   3/1 24/21 40/23
handled [2]   37/11 40/22
happened [1]   16/13
happy [1]   35/10
hard [1]   34/21
has [31]   3/15 4/10 4/19 5/7
  5/11 5/12 8/17 12/8 14/11
  14/21 15/7 16/18 16/20
  16/21 17/12 18/12 22/4
  22/14 25/17 28/5 30/8 30/12
  31/9 31/16 36/22 37/4 40/2
  40/16 40/17 40/24 43/19
hasn't [1]   38/21
have [101]
haven't [5]   5/4 30/20 33/19
  34/2 34/8
having [2]   36/4 37/14
he [71]
hear [2]   2/20 3/2
heard [1]   4/25
hearing [2]   1/10 26/17
HEAT [54]
Heat's [2]   18/11 29/19
heavily [1]   3/15
heavy [5]   30/11 34/3 34/6
  34/7 34/8
held [3]   7/18 22/14 33/17
help [2]   8/10 44/24
her [1]   34/19
here [22]   2/5 6/19 6/20 7/2
  7/19 8/22 9/10 15/5 17/15
  18/14 18/24 20/25 23/13
  27/21 28/3 29/9 30/12 30/18
  31/3 37/23 38/4 38/16
hereby [1]   45/3
him [12]   5/4 5/6 5/6 11/2
  14/14 15/23 17/16 17/17
  17/19 18/1 35/18 40/19
himself [1]   9/19
hired [3]   19/9 20/1 30/21
historical [1]   39/13
history [1]   4/23
Hold [3]   8/21 23/19 23/22
holding [7]   5/16 5/19 6/8
  14/21 16/14 27/20 28/6
Holdings [7]   10/2 10/3 10/4
  10/6 11/5 11/25 12/4
holds [1]   11/25
holing [1]   17/22
Home [1]   14/16
Honor [76]
Honor's [1]   37/20
HONORABLE [1]   1/10
hopefully [2]   15/10 31/22
hours [2]   42/7 42/8

**I**

I'll [2]   3/2 17/10
I'm [24]   10/6 10/23 11/16
  12/3 14/23 16/25 18/16 19/1
  23/19 26/11 28/13 32/6 32/7
  32/12 32/21 32/24 36/13
  40/6 40/18 41/5 42/15 43/1
  43/10 44/11
idea [1]   40/24

identified [1]   41/3
identifying [1]   30/23
IH [10]   5/16 5/19 10/3 10/4
  10/23 11/4 11/12 11/15
  11/24 17/22
IHHI [7]   6/11 10/9 10/23
  14/21 16/7 16/8 16/11
important [1]   6/20
importantly [1]   12/12
inapplicable [1]   22/10
inappropriate [2]   5/15 30/3
Inc [1]   10/6
include [2]   15/23 41/8
included [3]   25/2 30/22
  31/13
includes [2]   6/2 16/14
including [3]   7/5 29/10
  29/22
inclusion [1]   20/25
inclusions [1]   7/14
inconsistent [1]   30/3
incorrect [1]   37/12
Independent [1]   24/8
indicated [2]   37/4 37/17
indicates [1]   31/1
individually [1]   40/10
individuals [2]   1/14 39/14
Industrial [54]
Industrial's [1]   29/18
Industries [1]   22/12
information [10]   10/17 12/10
  12/12 20/4 25/15 26/18
  29/22 37/2 37/25 44/11
infrequent [1]   7/14
inspect [4]   35/9 37/7 37/10
  37/22
inspection [1]   35/24
instance [2]   26/15 30/6
instruction [1]   26/21
insubstantial [1]   26/23
insure [3]   12/15 12/16 37/5
intellectual [7]   21/22 24/21
  24/25 25/1 25/3 25/7 27/7
interest [15]   8/17 8/18 8/20
  9/2 9/8 13/17 13/18 13/21
  14/2 14/3 14/8 15/19 15/20
  25/16 39/20
interests [3]   9/6 13/18
  13/24
INTERNATIONAL [15]   1/6 1/7
  5/17 5/19 9/24 10/3 10/4
  10/24 11/5 11/15 12/6 27/15
  27/19 28/4 28/6
internet [1]   38/10
invention [1]   22/9
inventions [2]   23/18 24/3
invested [1]   14/15
investing [1]   20/2
investment [12]   1/7 3/12 7/1
  7/2 7/7 9/3 9/4 9/7 13/1
  13/2 17/15 30/23
investments [1]   13/13
investor [5]   4/24 14/7 14/14
  14/17 15/1
investors [4]   6/4 6/24 14/22
  30/22
involve [2]   4/17 16/22
involved [26]   3/15 4/11 5/7

  5/12 7/9 7/25 8/1 8/3 8/7
  9/14 9/22 14/12 15/7 16/20
  17/15 17/21 17/25 18/14
  27/24 28/2 28/21 29/1 29/3
  29/9 29/25 30/7
involvement [3]   4/6 10/8
  10/19
involving [4]   6/19 6/21
  18/10 19/3
IP [5]   13/11 22/6 27/3 27/5
  39/18
IPH [25]   1/7 3/19 9/24 10/2
  10/5 10/6 10/21 11/8 11/15
  11/25 12/3 12/3 12/6 16/6
  16/8 16/9 16/10 16/16 16/21
  21/24 25/4 27/15 27/19 28/4
  28/5
is [221]
isn't [3]   3/24 14/21 26/3
issue [8]   8/16 21/5 23/4
  25/12 35/6 36/20 39/20 42/5
issues [9]   2/7 15/9 15/10
  18/8 21/7 21/19 29/11 38/17
  39/13
it [136]
it's [13]   7/13 13/15 13/18
  22/22 24/11 24/19 26/10
  26/12 29/16 31/7 34/9 35/17
  37/9
Italy [2]   39/13 39/15
its [7]   17/22 21/22 27/18
  29/11 29/20 30/2 30/2
itself [1]   31/1

**J**

J.T [1]   3/13
job [1]   36/3
JOHN [7]   1/6 1/10 1/13 2/12
  8/18 8/24 16/15
joint [5]   18/19 20/8 21/24
  24/11 29/19
Jones [2]   1/18 36/10
judge [9]   1/11 32/24 33/6
  36/17 38/1 38/3 38/13 38/14
  38/14
judgment [3]   31/21 32/16
  41/12
jumped [1]   16/25

**K**

keep [1]   13/7
kind [7]   6/24 29/1 29/2
  34/21 36/13 39/7 41/10
knowhow [2]   3/23 8/5
knowledge [3]   8/5 11/7 15/8
known [1]   7/11
knows [2]   5/12 36/2

**L**

last [4]   23/4 23/15 25/9
  26/16
lastly [1]   12/11
late [1]   42/16
later [1]   17/23
latter [1]   9/12
law [20]   2/9 4/13 18/13
  18/18 18/22 18/23 18/25
  19/3 19/17 20/9 20/15 21/3

**L**

**law... [8]**   22/7 22/15 24/21
25/18 27/11 30/4 30/16 37/3
**lawsuit [1]**   13/19
**lawyer [2]**   13/23 22/13
**lawyers [9]**   19/15 19/18
19/18 19/21 30/2 30/2 31/8
36/9 36/11
**least [2]**   25/1 32/19
**left [1]**   43/3
**legal [43]**   4/12 4/12 7/20
7/20 8/6 8/11 8/16 8/17
8/18 9/6 12/10 12/13 12/14
14/2 14/8 14/13 15/10 15/12
15/15 17/18 19/22 19/25
20/7 20/14 21/2 21/5 21/7
21/10 21/11 25/10 25/14
25/16 26/18 27/3 28/23 29/1
29/23 30/16 31/8 33/21 36/3
36/9 36/10
**LEONARDO [34]**   1/3 3/18 11/9
13/11 27/24 38/6 38/19
38/19 39/1 39/3 39/3 39/6
39/17 39/17 39/18 39/19
40/14 40/14 41/6 42/17
42/18 42/22 42/23 43/1 43/2
43/4 43/5 43/9 43/23 43/24
44/6 44/9 44/16 44/18
**less [1]**   25/23
**let [2]**   2/20 23/19
**let's [3]**   18/3 35/1 38/5
**letters [1]**   25/8
**level [1]**   37/5
**liability [1]**   11/13
**license [13]**   3/16 9/24 10/7
10/10 10/11 11/9 11/11
11/14 11/25 16/21 27/18
28/2 39/5
**licensed [1]**   27/22
**lifted [2]**   34/14 34/24
**like [9]**   9/8 21/4 31/22
35/22 36/18 37/5 37/6 37/9
38/11
**limit [2]**   35/11 36/13
**limited [5]**   10/24 11/5 12/13
15/19 28/22
**line [2]**   11/12 20/19
**list [4]**   13/9 14/23 22/3
22/4
**listed [1]**   26/24
**lists [1]**   40/25
**litigation [8]**   5/10 9/3 13/2
15/21 16/3 19/7 25/20 43/16
**little [3]**   11/19 27/16 27/19
**LLC [2]**   1/6 1/7
**log [3]**   25/3 26/25 31/23
**LOMAX [8]**   1/17 2/18 15/7
17/2 18/22 36/5 36/6 36/14
**long [3]**   13/9 27/10 33/7
**look [12]**   6/20 23/4 24/18
26/22 28/11 28/11 32/25
35/9 35/16 42/1 44/7 44/11
**looking [2]**   23/15 23/20
**loop [1]**   17/19
**Lopez [1]**   16/25
**lot [2]**   34/5 36/4
**LTD [1]**   10/2

**M**

**made [9]**   5/2 9/19 9/20 9/20
12/23 25/17 27/4 28/3 35/23
**MAGISTRATE [1]**   1/11
**mail [1]**   25/23
**maintaining [1]**   30/22
**make [11]**   4/2 7/22 8/10
13/25 13/25 14/12 14/13
17/15 23/19 24/14 33/25
**makes [1]**   15/6
**making [3]**   7/20 12/23 15/3
**management [3]**   7/22 15/2
17/24
**managing [3]**   9/3 9/17 20/20
**many [6]**   5/6 8/3 8/3 22/2
38/7 38/8
**MARCH [1]**   1/5
**MARTIN [1]**   1/17
**mask [1]**   26/10
**mass [1]**   26/12
**matter [4]**   5/13 27/17 34/12
45/6
**matters [2]**   3/15 24/21
**maximum [1]**   37/5
**Mazzarini [1]**   17/9
**Mazzarino [32]**   2/22 2/23
2/24 3/3 3/9 3/15 3/17 3/22
4/10 4/17 4/19 5/20 6/3 6/3
6/11 6/19 6/22 6/25 7/4 7/8
7/12 8/19 8/24 9/13 11/18
11/24 13/16 14/22 16/15
17/10 17/10 21/19
**Mazzarino's [2]**   4/6 10/18
**Mazzaro [1]**   2/21
**mean [21]**   6/3 6/7 6/8 6/8
8/21 16/17 19/10 19/20
32/20 34/5 34/19 36/10
36/10 37/14 37/22 38/8
38/14 39/11 41/2 41/24
43/22
**means [2]**   35/17 37/21
**meant [2]**   7/16 12/11
**meet [2]**   30/9 31/17
**meetings [1]**   3/20
**member [2]**   9/13 9/18
**memorandum [1]**   2/9
**memory [1]**   35/21
**merged [2]**   42/21 43/2
**merger [2]**   43/11 43/12
**messing [1]**   38/5
**met [3]**   23/16 34/2 34/8
**Meyer [1]**   18/25
**Meyers [11]**   18/13 18/18
18/23 19/3 19/17 20/9 21/19
21/24 24/13 24/18 27/11
**MIAMI [3]**   1/2 1/4 1/19
**midnight [1]**   42/9
**might [3]**   33/5 41/2 41/3
**miller [4]**   1/22 1/24 45/7
45/8
**million [1]**   44/10
**mind [1]**   34/14
**Miss [1]**   36/14
**missing [1]**   15/24
**mistaken [3]**   10/6 14/23
35/24
**moments [1]**   3/21

**Monday [8]**   32/13 33/3 34/13
34/13 34/17 34/24 35/1
41/24
**money [4]**   11/10 14/8 39/23
41/3
**month [1]**   11/18
**more [8]**   4/16 4/24 5/23
5/25 14/24 27/19 40/6 41/19
**Moreover [1]**   9/9
**morning [1]**   10/23
**Morris [3]**   20/22 25/25 31/13
**most [3]**   6/20 12/12 26/23
**motion [17]**   2/7 2/21 8/20
8/22 13/16 18/3 23/7 23/24
23/25 24/19 32/15 33/8
36/19 38/3 38/11 38/13
41/12
**motions [1]**   31/21
**MR [10]**   5/24 6/19 7/8 18/22
28/4 32/23 34/16 36/16
37/20 38/25
**Mr. [53]**
**Mr. Annesser [1]**   36/2
**Mr. Darden [7]**   6/4 6/21 7/3
7/12 8/8 14/23 25/24
**Mr. John [1]**   8/18
**Mr. Lomax [5]**   15/7 17/2 36/5
36/6 36/14
**Mr. Lopez [1]**   16/25
**Mr. Mazzarini [1]**   17/9
**Mr. Mazzarino [18]**   3/9 3/17
3/22 4/17 4/19 6/3 6/3 6/22
6/25 7/4 7/8 7/12 9/13
11/18 11/24 13/16 14/22
21/19
**Mr. Mazzarino has [1]**   3/15
**Mr. Mazzarino is [1]**   5/20
**Mr. Mazzarino was [1]**   4/10
**Mr. Mazzarino's [2]**   4/6
10/18
**Mr. Morris [2]**   25/25 31/13
**Mr. Pace [1]**   35/15
**Mr. Rossi [1]**   27/24
**Mr. Vaughn [1]**   8/8
**Mr. Weaver [8]**   20/14 20/21
20/22 22/18 25/21 25/25
25/25 31/13
**Mr. Weaver's [1]**   20/19
**much [5]**   4/24 25/23 29/5
29/5 32/5
**must [1]**   17/8

**N**

**name [3]**   2/21 4/21 17/10
**named [1]**   4/20
**names [2]**   14/24 18/16
**nature [1]**   20/7
**necessarily [2]**   4/22 37/7
**necessary [6]**   12/9 15/4
17/17 17/18 25/14 25/16
**necessity [1]**   4/7
**need [5]**   17/16 22/24 40/11
41/13 44/18
**negotiator [1]**   22/13
**never [4]**   7/18 36/1 36/2
38/18
**new [7]**   30/24 42/22 43/1
43/4 43/9 43/23 44/9

**N**

**next [1]**  15/18
**night [1]**  42/16
**nine [1]**  9/1
**NK [11]**  18/13 18/22 18/23
 18/25 19/3 19/17 20/9 20/15
 22/15 27/11 30/16
**no [30]**  1/2 3/24 4/6 6/18
 10/10 11/19 11/24 14/17
 15/6 16/18 17/3 19/6 20/25
 22/23 23/11 28/3 29/7 31/9
 31/10 31/10 32/6 32/6 32/7
 32/7 33/20 35/18 40/17
 40/24 43/1 44/25
**noncompetition [2]**  23/18
 24/3
**nonparties [1]**  26/13
**not [73]**
**nothing [6]**  9/21 10/10 10/12
 29/9 31/11 35/19
**notice [1]**  32/19
**noticed [2]**  38/21 40/9
**notified [1]**  33/3
**notify [6]**  33/10 33/12 41/13
 42/6 42/7 42/10
**notifying [1]**  41/15
**notwithstanding [2]**  26/21
 36/19
**nuance [1]**  29/17
**number [4]**  2/6 8/4 15/9
 40/20
**numerous [2]**  3/20 14/22

**O**

**o'clock [3]**  34/24 42/13
 42/14
**O'SULLIVAN [2]**  1/10 35/2
**objecting [1]**  33/13
**obligation [6]**  16/18 38/25
 38/25 39/3 39/22 40/15
**obligations [4]**  16/23 27/8
 27/18 39/8
**obtain [1]**  12/9
**obtaining [3]**  4/12 8/6 19/25
**obvious [1]**  15/6
**obviously [2]**  5/11 26/3
**occasions [1]**  29/20
**occurred [3]**  15/25 43/11
 43/12
**October [3]**  3/19 4/5 15/25
**off [3]**  4/8 4/19 11/18
**offer [2]**  4/7 25/10
**offered [1]**  15/14
**office [1]**  13/3
**officer [1]**  11/2
**Official [2]**  1/22 45/8
**often [1]**  8/4
**old [1]**  43/19
**on opposite [1]**  3/2
**once [6]**  14/5 14/5 14/9
 14/10 32/21 34/20
**one [28]**  2/7 3/4 3/11 6/2
 12/4 17/20 18/24 20/12
 20/13 20/19 20/21 21/18
 22/20 24/17 25/8 26/18 28/8
 28/10 28/10 32/14 34/6 35/6
 35/17 39/4 42/22 42/24 43/3

43/10
**ones [1]**  3/25
**ongoing [1]**  25/20
**only [15]**  8/3 19/21 25/19
 28/8 30/12 33/18 35/9 35/14
 35/16 35/16 36/2 41/7 41/17
 41/25 44/16
**open [1]**  36/25
**opened [1]**  10/1
**operated [1]**  9/16
**operating [2]**  7/18 44/8
**operation [1]**  14/10
**operations [1]**  8/7
**opportunity [1]**  41/14
**opposing [3]**  33/3 41/13
 41/14
**opposite [1]**  3/2
**order [22]**  2/7 13/24 17/17
 25/14 26/11 29/23 30/21
 31/18 32/21 33/15 34/10
 34/12 35/13 35/17 36/20
 36/21 36/24 37/20 38/9
 41/16 41/16 43/23
**ordered [3]**  35/7 37/8 37/10
**original [5]**  17/21 23/7
 23/24 23/25 43/15
**originally [2]**  6/10 16/9
**Osterneck [1]**  22/11
**other [21]**  3/3 3/11 3/21
 7/22 12/24 12/24 13/3 13/12
 13/22 13/24 14/7 20/21 22/2
 27/5 30/25 33/20 35/6 35/20
 36/16 39/11 41/15
**others [2]**  2/6 26/19
**otherwise [8]**  13/19 14/9
 29/12 30/3 35/11 37/8 41/25
 42/11
**our [17]**  3/18 9/3 9/4 9/7
 11/6 18/9 21/6 22/11 24/20
 26/5 31/21 32/11 32/15
 35/11 35/16 39/18 41/25
**ours [1]**  5/6
**ourselves [1]**  36/20
**out [11]**  14/15 20/4 20/8
 22/25 27/21 32/22 32/22
 34/20 36/25 40/1 44/18
**outcome [1]**  38/4
**outside [3]**  7/10 24/22 27/3
**outsider [1]**  5/13
**over [8]**  8/3 15/1 25/22
 35/9 35/22 37/10 37/16 43/3
**overall [1]**  30/24
**owe [1]**  11/10
**own [3]**  5/5 9/17 19/18
**owned [2]**  6/11 39/19
**owner [5]**  5/20 6/6 6/7 6/8
 12/6
**owners [4]**  5/22 5/23 5/25
 6/1
**ownership [4]**  11/19 11/24
 16/13 39/19
**owns [10]**  5/17 5/19 6/7 6/9
 10/4 10/6 11/7 12/2 12/4
 16/7

**P**

**P-R-O-C-E-E-D-I-N-G-S [1]**  2/1
**P.L [1]**  1/14

**PACE [9]**  1/17 2/18 5/24
 5/24 32/23 34/16 35/15
 37/20 38/25
**page [3]**  9/1 24/6 28/14
**PAGES [1]**  1/6
**paid [4]**  39/4 39/7 40/14
 44/10
**Palm [1]**  1/23 45/10
**paper [1]**  38/8
**paragraph [12]**  8/22 9/1
 23/21 24/7 28/9 28/10 28/11
 28/12 28/12 28/17 29/4 31/4
**paragraphs [1]**  29/18
**parent [1]**  11/2
**part [11]**  9/12 15/2 18/19
 19/14 20/3 20/6 25/25 36/19
 37/16 37/17 42/4
**participate [2]**  4/11 5/2
**particular [5]**  15/15 15/20
 25/16 26/8 36/23
**particularly [1]**  9/10
**parties [9]**  8/18 12/11 12/12
 15/17 20/13 21/5 26/13 27/1
 42/1
**partner [2]**  20/20 24/10
**partners [5]**  1/7 3/12 6/23
 7/1 13/1
**partnerships [1]**  30/23
**party [11]**  4/20 4/21 7/10
 13/1 17/5 21/1 21/2 25/23
 26/4 27/23 30/11
**passive [1]**  4/24
**patent [19]**  18/8 18/13 18/22
 18/23 18/25 19/3 19/17 20/1
 20/9 20/15 21/5 22/8 22/9
 22/9 22/15 27/11 30/2 30/16
 30/21
**patents [5]**  20/4 20/4 21/8
 21/15 29/12
**Paul [1]**  20/22
**pay [6]**  37/18 38/20 39/10
 39/22 40/15 40/18
**paying [2]**  39/9 39/15
**payment [1]**  39/18
**people [3]**  7/22 11/9 12/21
**percent [1]**  14/9
**perform [1]**  7/7
**performance [1]**  28/1
**period [1]**  43/3
**periods [1]**  9/9
**Perlman [1]**  1/14
**person [2]**  17/16 20/22
**pertain [1]**  13/10
**phonetic [2]**  2/21 22/11
**physical [1]**  10/11
**pieces [1]**  38/8
**place [3]**  8/2 14/10 29/14
**plaintiff [3]**  1/13 2/11
 34/11
**plaintiff's [1]**  31/18
**plaintiffs [4]**  1/4 2/13 4/13
 8/14
**plaintiffs' [2]**  5/12 29/13
**plan [1]**  43/13
**planning [1]**  38/10
**plant [1]**  10/11
**play [1]**  7/23
**point [5]**  6/2 9/13 22/7

Rossi vs. Darden et al.                    53

**P**

point... **[2]**   22/25 43/11
pointing **[1]**   24/5
position **[5]**   5/13 7/13 7/18
  20/24 26/5
practice **[2]**   24/20 24/22
pre **[1]**   16/1
pre-April **[1]**   16/1
precise **[1]**   17/8
prepared **[4]**   25/19 38/21
  40/6 40/12
preparing **[1]**   22/8
preponderance **[2]**   17/11 34/7
presumptively **[1]**   13/9
pretty **[3]**   29/5 29/5 31/22
primary **[1]**   31/11
principally **[1]**   25/19
prior **[3]**   9/10 14/6 44/19
private **[1]**   37/2
privilege **[23]**   2/8 5/15 6/18
  7/15 7/16 12/21 14/17 17/6
  17/6 17/12 19/4 20/25 21/15
  22/10 22/13 23/1 26/6 26/6
  26/9 30/8 30/10 30/11 33/18
privileged **[16]**   3/25 4/14
  9/15 13/10 14/16 17/13 18/2
  19/5 22/4 25/2 26/1 26/14
  26/24 27/6 30/19 34/20
privileges **[1]**   34/1
probably **[2]**   3/7 32/1
problem **[2]**   23/23 36/16
proceeding **[1]**   17/7
proceedings **[3]**   28/24 45/1
  45/5
process **[3]**   15/3 20/3 32/15
produce **[5]**   36/1 37/21 37/21
  37/22 44/8
produced **[7]**   5/8 19/6 22/5
  33/2 35/10 36/15 44/3
product **[4]**   4/18 25/18 33/18
  33/19
production **[3]**   26/22 30/1
  35/7
prohibited **[1]**   29/10
projects **[3]**   22/1 22/2 27/6
prong **[1]**   15/18
proof **[3]**   30/20 31/10 33/20
proper **[2]**   14/8 17/18
properly **[2]**   37/18 40/8
property **[7]**   21/22 24/21
  24/25 25/1 25/3 25/8 27/8
protect **[5]**   13/17 13/24 14/7
  41/17 41/20
protected **[6]**   19/21 21/15
  30/7 31/17 37/2 41/18
protecting **[2]**   20/4 21/14
protection **[1]**   37/5
protective **[7]**   2/7 26/11
  36/19 36/21 36/24 38/9
  41/16
protracted **[1]**   8/2
prove **[2]**   26/6 26/6
proven **[1]**   33/19
provide **[14]**   17/17 18/8 21/7
  21/11 25/15 31/25 32/2
  32/11 33/11 35/11 41/5 41/6
  44/17 44/21

provided **[7]**   8/12 20/14
  21/13 30/12 31/10 31/18
  33/20
providers **[1]**   7/4
provides **[1]**   13/2
providing **[2]**   29/22 30/25
province **[1]**   5/14
provision **[1]**   39/6
public **[1]**   21/9
publicly **[1]**   14/18 14/25
publishing **[1]**   38/10
purported **[1]**   21/20
purpose **[14]**   12/13 13/6
  13/22 19/10 19/11 20/6
  21/12 24/12 25/13 31/8 31/9
  31/9 31/11 37/1
purposes **[5]**   7/8 19/25 20/23
  21/6 27/25
pursuant **[4]**   9/16 11/10
  30/17 41/16
pursued **[1]**   13/6
pursuing **[3]**   20/3 21/14
  43/13

**Q**

question **[2]**   14/12 14/18
quite **[4]**   24/25 35/20 40/18
  40/18

**R**

radar **[1]**   5/12
raised **[1]**   20/9
rather **[2]**   14/3 31/9
read **[5]**   3/7 18/5 19/10
  28/7 28/9
realize **[1]**   35/2
really **[6]**   4/21 12/20 14/12
  16/17 38/17 41/18
realm **[1]**   27/3
reason **[8]**   4/6 15/16 16/16
  19/6 19/14 34/14 37/15
  41/19
reasonably **[2]**   15/4 17/16
reasons **[2]**   7/11 17/19
recall **[1]**   23/16
receive **[1]**   29/23
recently **[1]**   36/17
recipient **[1]**   10/7
recollection **[2]**   37/9 37/13
record **[2]**   32/25 36/11
RECORDING **[1]**   45/5
records **[3]**   6/13 37/6 37/9
referring **[1]**   7/19
reflect **[2]**   40/20 40/22
reflected **[2]**   22/3 22/3
refused **[1]**   36/22
regarding **[5]**   2/9 11/14
  15/23 25/18 39/23
relate **[2]**   27/17 39/11
related **[11]**   2/7 3/16 5/9
  18/2 18/8 18/8 21/7 21/10
  22/5 25/7 29/12
relating **[4]**   2/21 18/3 24/25
  39/9
relations **[1]**   21/9
relationship **[11]**   4/23 17/14
  19/5 19/9 20/15 22/21 25/7
  26/7 27/1 27/2 29/14

relationships **[1]**   30/22
released **[1]**   11/13
releasing **[1]**   34/19
relevant **[4]**   4/2 4/4 9/10
  40/13
relied **[5]**   3/23 4/10 8/5 8/6
  15/8
relying **[2]**   11/5 15/15
remember **[5]**   10/20 23/15
  37/14 37/14 39/12
remind **[1]**   35/13
remotely **[1]**   21/10
rendered **[1]**   25/15
rendition **[1]**   27/3
reply **[2]**   20/16
Reporter **[2]**   1/22 45/8
representation **[7]**   18/19
  19/15 20/7 20/8 21/2 29/19
  30/17
representations **[1]**   28/3
represented **[2]**   35/15 35/18
request **[2]**   40/4 40/5
requested **[1]**   5/7
requests **[1]**   40/8
require **[1]**   41/5
required **[2]**   37/18 38/13
requirement **[1]**   43/19
requires **[1]**   39/6
requiring **[1]**   37/15
resolved **[1]**   35/8
respect **[11]**   12/24 22/15
  24/12 25/13 25/16 25/17
  27/5 27/9 32/15 38/22 40/10
respond **[1]**   40/8
responsibility **[2]**   9/18
  41/17
responsible **[1]**   7/20
rest **[1]**   21/23
restriction **[2]**   29/7 29/13
result **[2]**   8/4 30/1
retained **[3]**   18/7 18/12 20/6
retention **[1]**   18/13
return **[10]**   9/2 9/7 39/13
  40/19 43/9 43/12 43/15
  43/16 43/18 43/19
returns **[18]**   12/16 35/7
  36/18 37/11 38/7 38/18
  38/20 38/22 40/1 40/5 40/20
  41/2 41/6 42/18 43/6 43/15
  43/17 44/15
reverse **[1]**   29/24
review **[1]**   35/23
reviewed **[1]**   35/23
reviewing **[1]**   10/22
right **[18]**   2/20 6/14 6/17
  8/13 17/4 17/10 18/25 19/13
  19/23 23/8 24/23 30/5 31/19
  33/10 41/5 42/7 42/15 44/1
rights **[6]**   10/10 21/22 21/23
  25/4 27/8 27/9
River **[31]**   2/9 18/4 18/6
  18/10 18/11 18/12 18/20
  19/16 20/1 20/5 20/11 20/15
  20/20 20/22 21/1 21/13
  21/25 23/5 23/11 24/24 25/9
  29/1 29/9 29/11 29/22 29/25
  30/7 30/13 30/16 31/6 31/13
RMR **[2]**   1/22 45/8

**R**

**road [1]**  41/11
**ROBERT [2]**  1/13 2/12
**role [1]**  7/23
**roles [1]**  15/1
**Room [1]**  45/9
**ROSSI [18]**  1/3 2/5 2/14 3/17
11/10 13/10 22/5 27/24 28/4
38/7 38/22 39/1 39/6 39/18
39/20 39/22 40/10 40/18
**Rossi's [4]**  25/1 27/9 38/18
38/20
**rule [2]**  25/18 33/7
**rules [1]**  37/25
**ruling [2]**  33/5 33/17
**run [2]**  36/17 36/20

**S**

**said [8]**  7/23 7/25 18/17
26/2 30/18 34/6 36/1 38/16
**same [7]**  12/20 12/23 15/1
21/18 25/12 25/25 37/11
**saw [1]**  37/11
**say [14]**  3/21 6/6 7/14 8/14
13/23 16/17 19/8 21/17
22/12 27/13 33/1 35/1 36/1
36/2
**saying [8]**  4/19 12/19 13/6
15/22 20/14 22/20 32/24
36/5
**says [8]**  7/17 24/9 25/10
28/22 29/9 30/16 31/5 33/8
**schedule [2]**  40/24 40/25
**Schell [1]**  7/22
**scope [2]**  24/22 29/6
**seal [1]**  36/22
**sealing [3]**  38/1 38/3 38/13
**second [7]**  2/8 11/19 18/3
18/24 23/22 24/6 24/7
**Secondly [1]**  28/7
**section [1]**  28/12
**securing [2]**  9/2 9/7
**security [1]**  8/20
**see [8]**  2/15 10/20 36/2
36/7 36/8 36/9 36/12 37/4
**seeking [4]**  12/10 13/17
13/19 20/3
**seem [1]**  34/7
**seen [1]**  36/17
**self [2]**  22/16 22/22
**self-serving [2]**  22/16 22/22
**send [1]**  14/16
**senses [2]**  35/2 35/5
**sentence [2]**  24/7 28/10
**separate [4]**  9/25 11/13
12/20 13/7
**separately [2]**  3/2 43/5
**separation [1]**  12/16
**serve [2]**  7/4 35/21
**services [14]**  4/12 7/2 7/5
7/7 13/2 13/3 17/18 18/8
21/7 21/10 27/3 29/2 30/17
30/21
**serving [2]**  22/16 22/22
**sets [1]**  29/21
**setting [1]**  14/8
**shall [2]**  24/10 31/2

**share [1]**  9/2
**sharing [1]**  14/14
**she [2]**  32/25 33/7
**short [1]**  30/15
**show [4]**  4/23 31/7 31/11
40/19
**showing [1]**  26/7
**shown [2]**  15/14 26/14
**side [2]**  3/3 15/2
**sign [1]**  22/20
**signed [4]**  20/12 20/13 22/25
27/11
**simply [1]**  29/15
**since [1]**  31/23
**single [2]**  14/12 26/14
**situations [1]**  21/8
**small [1]**  35/6
**smaller [1]**  6/3
**sold [1]**  10/12
**solely [2]**  15/19 25/7
**solicitation [1]**  4/12
**some [18]**  4/25 7/10 11/23
13/3 13/3 15/15 15/16 15/24
16/2 16/23 17/10 19/22 28/5
33/21 34/14 39/19 41/10
44/6
**somehow [1]**  5/14
**someone [8]**  3/22 4/10 5/11
7/6 8/9 8/9 28/4 28/5
**something [10]**  21/9 24/15
33/5 36/3 36/6 38/3 38/16
40/25 41/12 41/13
**sorry [10]**  10/23 11/16 12/3
16/25 18/16 19/1 26/11
28/13 32/7 43/1
**sort [4]**  7/13 8/2 13/3 28/5
**sorts [1]**  31/6
**sought [2]**  8/12 26/19
**sound [1]**  42/12
**sounds [1]**  9/7
**SOUTHERN [1]**  1/1
**specific [4]**  7/8 23/3 23/11
33/22
**specifically [2]**  3/16 43/8
**specifications [1]**  22/9
**spelled [1]**  20/8
**spent [1]**  5/6
**squarely [1]**  4/15
**stage [1]**  11/19
**stake [1]**  8/9
**stand [1]**  22/7
**standard [2]**  8/16 12/9
**standing [1]**  35/17
**start [1]**  4/19
**started [1]**  7/3
**state [2]**  24/20 29/24
**stated [3]**  12/15 17/20 18/9
**statements [1]**  9/17
**states [4]**  1/1 1/11 28/17
45/9
**stay [6]**  32/21 34/14 34/17
34/18 34/19 34/24
**stayed [2]**  34/10 34/12
**staying [1]**  30/23
**still [2]**  4/4 27/23
**stock [1]**  14/16
**stop [1]**  38/5
**strategic [1]**  30/23

**strategy [1]**  7/21
**Street [2]**  1/23 45/9
**strike [1]**  33/8
**strikes [1]**  32/25
**stuff [2]**  6/24 31/6
**subsequent [1]**  26/22
**subsequently [3]**  6/4 16/10
30/15
**subsidiary [3]**  10/1 16/9
16/10
**sued [4]**  5/4 13/25 16/16
24/15
**sufficient [1]**  17/11
**suggested [1]**  15/13
**suing [1]**  16/18
**Suite [2]**  1/15 1/19
**summary [3]**  31/21 32/16
41/12
**sun [1]**  13/12
**Sunday [4]**  42/6 42/11 42/13
42/14
**supposed [5]**  28/20 38/15
43/2 44/3 44/8
**supposedly [1]**  42/21
**sure [11]**  4/2 9/19 13/25
13/25 23/19 24/14 33/25
40/18 42/15 43/10 44/11
**surprised [1]**  16/4
**system [1]**  38/15

**T**

**take [3]**  5/13 14/15 33/7
**taken [1]**  39/7
**talk [3]**  21/6 21/8 28/20
**talked [1]**  39/12
**talking [1]**  32/8
**talks [1]**  29/5
**task [1]**  7/8
**tax [18]**  35/7 36/18 37/11
38/7 38/18 38/20 38/22 39/8
39/13 40/1 40/5 40/19 40/20
41/2 41/6 42/18 43/6 43/9
**taxes [9]**  37/18 38/20 39/7
39/9 39/10 39/15 39/23
40/15 40/18
**team [2]**  36/3 36/9
**technology [1]**  20/5
**tell [6]**  8/21 8/22 18/16
28/13 41/23 41/23
**terms [3]**  11/10 20/7 28/22
**test [1]**  15/4
**testified [1]**  14/11
**testify [1]**  17/25
**testimony [2]**  15/6 31/10
**testing [1]**  10/13
**than [8]**  4/24 5/23 5/25
14/3 31/9 33/20 36/25 41/15
**that [271]**
**their [26]**  5/5 10/16 11/13
12/13 12/14 12/18 13/6
13/16 14/8 14/8 15/11 15/13
16/17 16/19 19/18 20/10
24/19 25/15 26/6 27/5 30/9
31/8 31/17 38/3 39/7 39/8
**there [73]**
**therefore [1]**  12/21
**these [25]**  3/1 3/16 6/23 7/1
7/9 7/13 7/15 8/10 10/19

## T

**these... [16]**   12/19 15/9
15/24 19/12 19/24 21/3
26/22 26/24 27/10 28/22
30/19 31/17 32/22 36/18
39/14 44/13
**they [98]**
**thing [4]**   4/20 23/23 30/12
35/20
**things [7]**   26/12 28/20 32/22
32/25 36/21 39/12 40/20
**think [18]**   3/6 4/4 5/15 6/12
6/20 7/18 8/1 15/24 28/9
29/4 29/16 32/12 33/4 35/6
35/9 38/14 40/13 43/14
**third [7]**   4/20 4/21 7/10 9/1
12/11 20/25 21/5
**this [71]**
**THOMAS [2]**   1/6 16/15
**those [24]**   3/25 4/13 5/22
5/25 7/5 7/23 17/15 18/15
19/5 19/6 22/3 22/5 26/2
26/2 27/9 27/10 31/12 33/17
34/8 38/18 40/5 41/9 41/15
44/2
**though [2]**   4/14 22/15
**thought [3]**   3/21 3/25 35/4
**three [2]**   12/24 42/25
**through [5]**   17/6 26/17 26/22
34/13 40/17
**time [16]**   8/11 8/11 9/9
11/23 23/4 23/10 23/15 25/9
27/10 29/23 32/5 32/13
40/11 43/3 43/9 43/11
**today [12]**   4/9 25/9 32/4
32/4 32/8 38/21 40/9 44/4
44/8 44/12 44/15 44/17
**together [2]**   12/21 28/21
**Tom [2]**   3/12 5/21
**tomorrow [2]**   44/16 44/21
**too [1]**   12/19
**took [1]**   8/2
**towards [1]**   16/2
**traded [2]**   14/18 14/25
**TRANSCRIBED [1]**   1/22
**TRANSCRIPT [1]**   1/10
**transcription [1]**   45/4
**transferred [1]**   16/14
**transmission [1]**   15/5
**tried [1]**   36/22
**true [1]**   39/16
**truly [1]**   38/21
**trust [1]**   36/3
**trusted [1]**   8/10
**try [1]**   41/20
**trying [4]**   29/14 32/6 32/12
34/5
**Tuesday [2]**   41/24 42/16
**turned [1]**   37/16
**two [18]**   2/6 5/22 5/23 5/25
5/25 15/17 24/17 24/17
29/20 29/20 30/14 38/6
38/17 41/21 42/5 42/17
42/20 43/4

## U

**umbrella [1]**   16/12

**under [13]**   10/11 11/8 13/12
16/11 21/23 23/11 24/8
27/18 35/16 36/21 36/22
37/3 44/9
**understand [6]**   5/16 9/14
32/23 33/22 33/24 34/16
**understandably [1]**   22/2
**understanding [4]**   8/5 11/7
35/22 37/12
**understood [3]**   7/11 43/20
43/20
**unintelligible [1]**   3/3
**UNITED [3]**   1/1 1/11 45/9
**unless [1]**   16/19
**unnecessary [1]**   33/9
**unsigned [1]**   30/14
**until [4]**   4/9 9/12 34/10
42/8
**up [10]**   9/12 14/1 14/8
16/14 23/4 32/12 36/4 38/18
40/11 42/16
**upon [5]**   3/23 4/11 8/5 8/6
29/18
**us [4]**   3/24 13/23 32/14
35/8
**usual [1]**   17/7

## V

**validation [1]**   28/1
**VAUGHN [3]**   1/6 3/13 8/8
**venturer [1]**   24/11
**ventures [30]**   2/10 18/4 18/7
18/10 18/12 18/20 19/12
19/16 20/1 20/5 20/11 20/15
20/20 20/23 21/1 21/13
21/25 23/5 23/11 24/24
25/10 29/1 29/8 29/11 29/22
29/25 30/7 30/13 30/16
31/13
**Ventures' [1]**   18/11
**versus [1]**   2/5
**very [6]**   8/2 9/20 12/20
13/8 15/6 23/3 23/10 24/19
25/6 25/18
**violative [1]**   26/10

## W

**waived [1]**   14/17
**waiver [4]**   6/19 7/15 7/16
20/25
**want [14]**   4/2 12/18 13/13
14/7 24/14 35/8 35/24 36/8
36/12 36/15 36/18 42/5
43/22 44/1
**wanted [1]**   33/25
**wants [1]**   31/3
**was [99]**
**wasn't [4]**   8/7 14/12 15/6
40/9
**way [10]**   3/6 13/23 17/7
18/6 23/23 33/4 37/12 37/25
38/15 40/17
**ways [1]**   24/17
**we [91]**
**Weaver [8]**   20/14 20/21 20/22
22/18 25/21 25/25 25/25
31/13
**Weaver's [1]**   20/19

**week [1]**   32/8
**weird [1]**   32/25
**welcome [1]**   37/6
**well [23]**   13/16 14/20 15/10
15/20 16/15 17/15 17/20
17/22 19/14 21/22 30/13
32/17 32/19 35/17 39/11
39/12 39/16 39/24 41/16
42/21 43/1 43/22 44/3
**went [1]**   26/17
**were [27]**   3/20 3/22 5/2 5/6
5/7 7/3 12/10 13/8 14/13
19/25 22/5 22/24 26/19 26/23
27/2 27/10 28/7 28/10 29/2
33/17 33/22 33/25 34/2
43/17 44/3 44/8 44/8
**weren't [1]**   39/15
**West [2]**   1/23 45/10
**whatever [7]**   14/2 28/2 29/5
37/25 38/12 39/25 42/16
**whatsoever [1]**   40/17
**when [14]**   5/3 6/6 16/1 22/8
22/12 24/15 24/18 26/16
31/12 31/25 32/24 40/1
40/11 44/1
**where [14]**   7/17 8/4 8/11
11/1 12/25 18/23 21/8 23/13
24/5 28/13 31/4 36/20 43/13
44/5
**whether [3]**   12/9 12/10 28/1
**while [3]**   13/6 14/24 39/18
**who [20]**   3/12 3/13 4/10
4/25 5/11 5/19 7/6 7/7 7/10
8/9 8/9 11/9 12/2 12/4
17/16 21/7 21/10 30/21 36/8
39/4
**whole [2]**   37/1 40/17
**why [6]**   14/6 19/6 35/2
37/15 39/14 41/14
**WILLIAM [1]**   1/13
**within [3]**   4/15 5/14 29/6
**without [2]**   21/25 23/1
**won't [1]**   42/8
**words [1]**   13/25
**work [11]**   4/18 4/22 7/11
7/12 19/12 25/18 27/21
27/21 27/25 33/18 38/15
**worked [3]**   22/1 22/2 33/19
**working [2]**   12/21 36/11
**works [2]**   3/12 7/6
**wouldn't [1]**   36/6

## Y

**yeah [9]**   3/8 8/25 10/25
11/4 11/22 18/25 31/24 32/6
32/17
**year [1]**   44/19
**years [1]**   8/3
**Yes [20]**   2/25 5/18 6/15
8/15 8/23 11/6 20/18 20/21
22/22 23/2 23/9 24/9 31/15
32/10 33/14 37/1 42/15 43/8
43/18 43/25
**yet [2]**   12/20 16/18
**Yevoli [1]**   1/14
**you [86]**
**you're [1]**   42/15