```
1                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF FLORIDA
2                            MIAMI DIVISION
                     CASE NO.  16-CIV-21199-CMA/JJO
3

4       ANDREA ROSSI, et al.,

5                     Plaintiffs,

6            vs.

7                                          Miami, Florida
                                           February 23, 2017
8       THOMAS DARDEN, et al.,             Pages 1-29

9                     Defendants.
        _____
10
                     TRANSCRIPT OF DISCOVERY HEARING
11             BEFORE THE HONORABLE JOHN J. O'SULLIVAN
                   UNITED STATES MAGISTRATE JUDGE
12

13      APPEARANCES:

14      FOR THE PLAINTIFFS:
                          Perlman, Bajandas, Yevoli & Albright, PL
15                        BY:  PORPOISE EVANS, ESQ.
                          BY:  CHRISTOPHER PERRE, ESQ.
16                        283 Catalonia Avenue
                          2nd Floor
17                        Coral Gables, Florida 33134

18

19      FOR THE DEFENDANTS:
                          Jones Day
20                        BY:  CHRISTOPHER M. LOMAX, ESQ.
                          BY:  ERIKA S. HANDELSON, ESQ.
21                        600 Brickell Avenue
                          Suite 3300
22                        Miami, Florida 33131

23      TRANSCRIBED BY:        DAWN M. SAVINO, RPR
                               Official Court Stenographer
24                             400 N. Miami Avenue, 10S03
                               Miami, Florida  33128
25                             Telephone:  305-523-5598

26
```

PROCEEDINGS RECORDED BY DIGITAL AUDIO RECORDING
TRANSCRIPT PRODUCED BY COMPUTER

                                    2

```
1                         P-R-O-C-E-E-D-I-N-G-S
2               COURTROOM DEPUTY:  All rise.
3               THE COURT:  Good afternoon.  We're here today on the
4       case of Andrea Rossi versus Thomas Darden and others, case
5       number 16-civil-21199.
6                   Can I have appearances for the Plaintiff first.
7               MR. EVANS:  Good afternoon, Your Honor.  Porpoise Evans
8       and Chris Perre on behalf of Plaintiffs.
9               THE COURT:  Thanks.
10                  For the Defendant?
11              MR. LOMAX:  Good afternoon, Your Honor.  Christopher
12      Lomax and Erika Handelson on behalf of the Defendants.
13              THE COURT:  All right.  We're here on -- who filed the
14      first notice?
15              MR. LOMAX:  Plaintiffs, did Your Honor.
16              THE COURT:  Okay.  All right.
17                  What's the problem?  I tell you, I'm seeing way too
18      much of you guys, I can tell you that right now.  I have cases
19      that are just as big as this, I see maybe once or twice, I've
20      seen you guys like twice a week.  It's way too much.
21                  You know what that indicates to me?  That indicates
22      that you lawyers either don't know what you're doing, or you're
23      being completely uncooperative with each other because most of
24      these discovery disputes should be resolved amongst the parties,
25      not with getting the court involved.
```

1           So with that caveat, go ahead.  Because it's way too

2    many times that I'm seeing you fellahs, and women.  Go ahead.

3           MR. EVANS:  Understood, Your Honor.  Today the issue we

4    brought before the court could easily have been brought by the

5    Defendants because it involves a privilege issue.

6           There were -- there was at least one document produced,

7    several are at issue, but at least one which, on its face,

8    privileged.  It was produced by Defendants in October, maybe

9    early November.  When Plaintiffs were reviewing the documents,

10   they came across it and sent a letter to Defendants saying it

11   appears this could be privileged, we're sequestering it, and let

12   us know how you would like to handle it.  This was on November

13   16th, Your Honor.

14          Over 30 days went by, December 20th.  As the case was

15   progressing, the Defendants ultimately sent a letter saying

16   you're right, that document is privileged.  We would like you to

17   destroy it and return any copies, standard letter.  Plaintiffs'

18   position at that point was that the privilege had been waived,

19   objections to using the document after over a month had passed

20   had been waived, they clearly weren't that interested in the

21   document, and we sent a letter back to them in that regard.

22   That was on December 28th.

23          Over another month passed when we received another

24   letter from the Plaintiffs -- I mean, from the Defendants

25   dealing with a couple of more documents that had been produced.

4

1    Not referring to the prior document.  We never got a response to

2    our letter saying that we believed the privilege has been

3    waived.  But on February 1st, we did get a letter referring to a

4    couple of additional documents to which Defendants were claiming

5    privilege. One of those documents we agreed with, and it was

6    destroyed and hasn't been thought of since.  Two of those

7    documents we believe there is no privilege, and they're at issue

8    before the court.  The day after we received that letter,

9    February 2nd, we responded to Defendants and told them these are

10   not privileged documents, the second two.  The first, we agreed

11   with them.

12        Fast forward two additional weeks, and my colleagues

13   were in deposition and they sought to use the documents that had

14   been disputed.  And after not having any additional response

15   from the Defendants to our letter saying we intend to use these,

16   we believe the privilege has been waived or that the documents

17   are not privileged, this was last week, February 16th, at which

18   point the Defendants instructed their witness not to answer

19   questions about those documents because they were claiming

20   privilege.  We immediately sought to come before the court for a

21   ruling on that issue.

22        That's what brings us here today.

23        THE COURT:  So what does the law say?  Once you tell

24   them about the document, how much time do they have to say okay,

25   destroy it?

1          MR. EVANS:  Well, the law is unclear on it, Your Honor.

2     There is no bright line on when they must destroy it.  It's

3     reasonable.  They must make -- to quote the law --

4          THE COURT:  Where are you quoting from?

5          MR. EVANS:  I'm quoting from the Federal Rule of

6     evidence 502.

7          THE COURT:  You're talking about the first document

8     now, right?

9          MR. EVANS:  I am talking about the first document

10    which, on its face, again, does appear to be privileged and that

11    we believe that was waived.

12          THE COURT:  Okay.

13          MR. EVANS:  I'm quoting the case from the Southern

14    District, April 8, 2015, the case is Thermoset Corp versus

15    Building Materials.  It's a Judge Cohn, 2015, US District Court

16    Lexis 45924.  And the court said the final element of Rule

17    502(b) requires that the producing party take prompt remedial

18    efforts to rectify the inadvertent disclosure.

19          Our position is that these were not prompt remedial

20    efforts when, after our initially notifying them on November

21    16th we did not even hear a word from them until December 20th.

22    And there's a pattern of our being very forthright about what we

23    have, what we intend to do and then hearing nothing for months

24    or weeks from defense counsel.

25          I use this case of Thermoset, particularly because it

1    -- you know what, I'm sorry.  I'd also direct the court to a

2    second case which is partially on point.  That case is United

3    States versus Sigmund, a little bit earlier, it's from 2013 and

4    -- it's 2013 US District Lexis 157653.  And I would like to

5    point the court towards Sigmund because Sigmund actually was a

6    case where the party who had produced the claimed privilege

7    documents waited about nine months, I believe, before attempting

8    to claw it back, which is much longer --

9          THE COURT:  Do you have any case where the party who

10   received the privileged document said I have a privileged

11   document of yours, what do you want me to do with it?  Are there

12   any cases like that?

13         MR. EVANS:  Yeah, I believe that's what happened in the

14   Sigmund case.

15         THE COURT:  That wasn't the other party saying, you

16   know, I now realize that I gave you this stuff and I want it

17   back.

18         MR. EVANS:  I don't have a direct answer for you, Your

19   Honor, because I'd have to look much more closely.

20         THE COURT:  Well, you'll have to look at what the facts

21   are, because it's kind of unusual, I think, that the party who

22   received it, who says this is privileged, if you think it's

23   privileged, then you should throw it out or destroy it or return

24   it.

25         In other words, you receive a document that's

1    privileged, then you should stop looking at it.  I think that's

2    what the rules indicate.

3            MR. EVANS:  Exactly.  And we didn't look at it to study

4    it and to determine whether it was privileged, that was the

5    point.  We saw that it appeared to be a legal memorandum, it was

6    not from any law firm that we had ever heard of, but we didn't

7    go any further in terms of inspecting the document at that point

8    because it was from a law firm, appeared to be -- it was marked

9    confidential and privileged, if I'm not mistaken.  And I

10   actually said to my colleague you don't have any choice but to

11   notify them immediately and you can't look at that document.

12   That was what happened the same day.

13           THE COURT:  Okay.  Rule 26 says that you may promptly

14   present the information to the court under seal for a

15   determination of the claim.

16           MR. EVANS:  Well Your Honor, I do believe if there was

17   any misstep, it was not coming to the court sooner.  But

18   assuming that by Defendants' silence they concurred with the

19   waiver of the privilege and that there wasn't any mistake on our

20   point, it was that we didn't come to have Your Honor decide it

21   back in December.

22           THE COURT:  Well, I mean, when you sent the letter, did

23   you say we think this is privileged, if we don't hear from you

24   we're going to assume that you're waiving the privilege and

25   we'll use the document?  Did you put them on any kind of notice

1    like that?

2          MR. EVANS:  Not in the initial e-mail on November 16th.

3    However, on December 28th, I believe that was the substance of

4    the letter responding to their December 20th letter.

5          THE COURT:  That what, after they told you that it was

6    privileged?

7          MR. EVANS:  Correct.

8          THE COURT:  Okay.  But then you're arguing that it was

9    waived only because of the amount of time they spent in between

10   November 6th and December 20th.

11         MR. EVANS:  Well, our letter had several grounds.  One

12   was that it was not put on the privilege log, they did not give

13   us an amended privilege log to include the document; that more

14   than 30 days had passed and that the document itself was marked

15   confidential, so clearly had been reviewed.

16         THE COURT:  Okay.  What do you say about all this,

17   about this first one?

18         MR. LOMAX:  Thank you, Your Honor.

19         THE COURT:  Is that microphone on, Cheri?

20         COURTROOM DEPUTY:  Might have turned it off.

21         MR. LOMAX:  How about now?

22         THE COURT:  Yeah, there you go.

23         MR. LOMAX:  Your Honor, as an initial matter, I would

24   point out that there is no rule that I'm aware of that says

25   without a request for a response in a certain amount of time,

1    one party can unilaterally decide that enough time has gone by

2    that constitutes your delay as a waiver.  We responded to the

3    information that we received about this document and we

4    specifically stated these are privileged materials.  We ask that

5    you destroy them and to not use them any further in this

6    litigation.

7         Then we were met with the response -- and I would point

8    Your Honor to the protective order in this case that

9    specifically talked about what is supposed to happen.  Paragraph

10   21 of the protective order that you entered and that Plaintiffs

11   agreed to states that if a party inadvertently or

12   unintentionally produces materials subject to a claim of

13   privilege or work product protection, the materials for which a

14   claim of inadvertent or unintentional production is thereafter

15   made, shall be returned to the producing party within seven

16   calendar days of the producing party's written request, or

17   otherwise destroyed.  And the production will not operate as a

18   waiver of the applicable privilege or work product protection.

19   Moreover, any notes or summaries referring or relating to any

20   such inadvertently or unintentionally produced materials shall

21   be destroyed.  We sent a letter directly along those lines and

22   the response that we got was you've waived it.

23        Thereafter, there was no effort to come to court to

24   adjudicate whether or not we waived the privilege.  Instead,

25   Plaintiffs unilaterally decided we don't care what you guys say

1    about this privilege, we're going to go forward.  We're going to

2    use it in depositions, we're going to use it to advance the

3    merits of our case.

4         The protective order speaks directly to this issue.  It

5    should have been destroyed and if they wanted to challenge the

6    claim --

7         THE COURT:  Well, does it say that you have to do

8    something within seven days?

9         MR. LOMAX:  Yes, Your Honor.  Within seven days of

10   being notified of opposing party's claim of privilege, you are

11   to destroy.

12        THE COURT:  Okay.  All right.  But you didn't -- in

13   other words, they notified you that they found a privileged

14   document.  You didn't respond until December 20th, about seven

15   weeks later.

16        MR. LOMAX:  Correct.

17        THE COURT:  Or maybe six weeks later.  I'm sorry.

18   Maybe five weeks, it was November 16th to December 20th.  So

19   five weeks later you responded and said --

20        MR. LOMAX:  Privileged.

21        THE COURT:  -- destroy it.

22        MR. LOMAX:  Please destroy it.

23        THE COURT:  Why didn't you respond quicker than that?

24        MR. LOMAX:  Your Honor, there's no real excuse for why

25   we didn't respond quicker.  There were a lot of things going on.

1    Your Honor may not recall, we were ordered to produce a number

2    of documents, ended up producing over 100,000 pages of

3    documents.  Other things were happening in the litigation.  This

4    didn't have a hard concrete deadline, it just didn't happen as

5    swiftly as it could have.

6          THE COURT:  All right.  Anything further, Mr. Evans?  I

7    mean, the whole idea of a protective order is to allow clawback

8    so that the parties aren't, you know, wrapped up in making sure

9    that every document is not privileged.  That's the idea of it.

10   That's why they came up with this whole clawback thing is give

11   them your documents, if you find something that's privileged,

12   give it back or destroy it.

13         MR. LOMAX:  One other point to correct, Your Honor.  It

14   is on the privilege log that we produced, this document.  That

15   was stated by Plaintiffs, and I just want to correct the record

16   that it is there.

17         THE COURT:  All right.  As to the first document, I

18   find that it remains privileged, can't be used in the litigation

19   and should be destroyed by the Plaintiff or -- I don't know if

20   you want it destroyed or returned.  If you have any copies,

21   destroy it.

22         MR. LOMAX:  Your Honor, and I would also ask you to

23   consider the use of the document that occurred afterwards in

24   depositions.

25         THE COURT:  Yeah, I'm not considering that now so --

1        MR. LOMAX:  Okay.

2        THE COURT:  -- let's get moving on this case.  All

3    right?  I mean, you know, does this, like, make or break your

4    case or are we just doing this as a law school question?

5        MR. EVANS:  It is a proverbial -- from what I

6    understand, it's a proverbial smoking gun.  It's not an

7    intellectual exercise.

8        THE COURT:  Well, it seems to me it is.  Under the

9    protective order that you entered, you're supposed to destroy it

10   if you receive something that is protected.  And it was clearly

11   protected, you should have put it in an envelope or destroyed it

12   and not used it anymore.

13       MR. EVANS:  I understand.

14       THE COURT:  All right.  What's the next?  Now, we're

15   talking about these other two, there's two documents that you

16   can't agree on whether or not they're privileged?  Is that what

17   is left?

18       MR. EVANS:  Yes, Your Honor.

19       THE COURT:  Okay. What are they?  What documents are

20   they?

21       MR. EVANS:  Those are documents that -- it's two

22   e-mails, Your Honor.  It's two e-mails to an individual whose

23   name is Zalli, so we have referred to them as the Zalli

24   documents.

25       THE COURT:  Do you have them here?

 1          MR. EVANS:  I do, Your Honor.

 2          THE COURT:  All right.  And remind me now, these were

 3   given to you in a group of stuff, and then you identified it or

 4   they told you hey, you have some privileged documents of ours?

 5          MR. EVANS:  These were identified by Defendants.  We

 6   did not -- there's no indication on them that they -- no indicia

 7   of privilege on them.

 8          THE COURT:  So there's two.  One of them you agreed was

 9   privileged after consultation, and two of them you can't decide?

10   Is that what it is?

11          MR. EVANS:  Yes, Your Honor.

12          THE COURT:  Okay.

13          MR. LOMAX:  Do you have a copy?

14          MR. EVANS:  I do have copies.  Can you locate the

15   copies?  Thank you.

16          THE COURT:  This is from Tom Darden, I'm looking at one

17   that's dated November 4, 2015.  Tom Darden, Zalli, Z-A-L-L-I, at

18   JFG.  Who is Zalli?

19          MR. LOMAX:  Your Honor, Mr. Zalli is one of

20   Mr. Darden's attorneys.

21          THE COURT:  Okay.  And Mr. Darden is writing to him?

22          MR. LOMAX:  He's writing to him in which e-mail?  The

23   November 4th?

24          THE COURT:  November 4, 2015 at 7:32 a.m.

25          MR. LOMAX:  Your Honor, as you know, this case is about

a contract, the payment of which would have come due at the end

of the performance of a test.  Mr. Darden is outlining to his

lawyer his understanding of the potential issues with that

contract.

THE COURT:  Okay.  Let me take a quick look at this

then.  Okay.

Why does the Plaintiff think this is not privileged?

MR. EVANS:  To begin with, Your Honor, we really

actually have no reason to believe, except for taking

Defendants' word, that Mr. Zalli or Ms. Zalli is an attorney.

But I think the most important thing is shadowed or foreshadowed

by the subject line which says info regarding business problem.

This is not -- there are no legal -- there's no legal advice

either being given or being sought in this e-mail, but rather if

you look to the very last -- the second to last paragraph, the

one that begins "we want to know" --

THE COURT:  Yeah.

MR. EVANS:  -- that is what this e-mail is about.

Essentially or -- not even essentially, but what Defendants are

doing here is seeking investigative services from Mr. Zalli.

They're asking for Mr. Zalli to look into Mr. Rossi, our client,

to look into his relationship with Fabio Penon, they're not

seeking legal advice.  They're not asking for legal advice,

there's no indication that there's a legal relationship or

there's an advisory relationship.  What it appears to be from

1   this communication is help with a business problem as described

2   in the subject line and specifically, investigative services.

3   If they went out and hired a private investigator to do exactly

4   what they're doing here, what they're asking for here, they

5   would have given the same description of their side of the

6   litigation or the pending litigation, and then concluded as they

7   did here with the request for investigative services.  This

8   isn't about legal advice.

9           THE COURT:  Okay.  What do you say?

10          MR. LOMAX:  Your Honor, Mr. Zalli is an attorney, he's

11  Mr. Darden's attorney.

12          THE COURT:  Where is he located?

13          MR. LOMAX:  He's in Israel.

14          THE COURT:  Okay.

15          MR. LOMAX:  I have a copy of his bio if you need to see

16  it.

17          THE COURT:  You can show it to opposing counsel, I

18  guess, because he has some doubt as to whether he's an attorney.

19          MR. LOMAX:  Your Honor, this -- if you would read this,

20  you read the document?

21          THE COURT:  I did read it.  Yeah.  I mean, what he

22  makes is the point at the end, he doesn't say "I need some legal

23  advice, what should I do about this potential fraud problem I'm

24  looking at", instead, they said "I need you to find out for me

25  what the relationship is between this fellow and a couple other

1   guys".

2        MR. LOMAX:  Your Honor, as you saw, Mr. Darden laid out

3   the entire understanding of the situation that he had with the

4   people he's now in litigation with.  And he was contacting this

5   individual to find out what, if any, information exists that

6   would support a potential claim against these folks for engaging

7   in fraudulent conduct, which actually now is being litigated.

8   And this was just the initial set of information that he

9   provided to this attorney to assist in that process.  The

10  relationship didn't end here.  He provided background

11  information.  He said "this is where we need to start; I need to

12  find out this information, I want to seek information and have

13  advice from you based upon this information".

14        THE COURT:  Where does he say that he wants advice from

15  him based on the information?

16        MR. LOMAX:  Well, he doesn't directly state that in

17  this e-mail, but this is the nature of the relationship that he

18  was seeking with this attorney, and he had to give this

19  background information in order to do that.

20        And, you know, just to respond to Plaintiff counsel's

21  point that this is information regarding a business problem;

22  well, Mr. Darden had a business and he entered into a

23  relationship, a business relationship, with Mr. Rossi that went

24  the wrong way.  So it's a business problem.  That doesn't mean

25  that he can't seek legal advice about his business problem and

1    that's what he's doing.  As Your Honor saw, he laid it all out.

2    He talked about the contract.  He talked about the individuals

3    involved.  And in order to understand whether he's going to have

4    claims that are potentially going to be against him or that if

5    he has claims that may be filed against someone else, he needs

6    to know that information.  So he retained this individual for

7    that purpose, which was to seek legal advice about the potential

8    claims at issue in this dispute.

9          And so this is not something -- first of all,

10   Plaintiffs were not supposed to review this document and make

11   their own assessment about whether it was privileged.  We

12   identified this document, we sent a clawback letter then they

13   made their own determination and said "you know what, we don't

14   agree, we're going to go forward and use these documents in

15   depositions".  That's not how the protective order works, Your

16   Honor.  I read it to you.  Paragraph 21, they're supposed to

17   destroy the document, not have any trace of it, no notes about

18   it, then come to you and say "well, we disagree, this is a

19   privileged document".  That's not what happened here.  Here we

20   are now after the fact.

21         THE COURT:  Had you reviewed this document prior to

22   being notified?

23         MR. EVANS:  We had reviewed -- we were aware of this

24   document and we were excited at what we saw on the paper.  And

25   what I heard from my colleagues was they were in disbelief about

1    what they saw, and clearly there's nothing on there to suggest

2    that it's a privileged communication.

3              THE COURT:  But what happened when he contacted you and

4    told you that it was a privileged communication?  Why didn't you

5    then seal it and provide it to the court?

6              MR. EVANS:  Again Your Honor, I'll go back to my

7    previous statement which was that was a misstep and that would

8    have been appropriate.  But not hearing anything back from our

9    immediate -- our immediate response to Defendants that we don't

10   consider this a privileged document, we've reviewed it before

11   you ever mentioned it and the passage of weeks after that letter

12   from us, which came the day after they asked for the clawback,

13   led us to believe that there was nothing left to discuss, that

14   it was not going to be a contested matter.  We thought maybe

15   they -- they were making their best effort at clawing something

16   back that is potentially explosive, and then they made the

17   decision that, you know, it was not worth the fight because

18   obviously it was not privileged.

19             MR. LOMAX:  Your Honor, again, we don't have an

20   obligation after we make a claim of privilege to then go back

21   and forth about all of these issues.  We've made the claim of

22   privilege.  They're supposed to then say "well, let's go to the

23   court.  We disagree, well we have to have a dispute, take it and

24   let the court decide".  They're supposed to destroy the

25   document, they're using it.

1          THE COURT:  Well, either destroy it or seal it.

2          MR. LOMAX:  Or seal it.

3          In addition to this, Your Honor, on the point that this

4    document is not privileged, this is a classic initial

5    consultation where someone goes in and lays it all out and says

6    "here is my issue, what can you do to help me.  This is what I

7    think I want you to do, but you talk to me about it".  And if

8    Plaintiffs are saying that that's not privileged, that a person

9    cannot sit down with a lawyer and explain a problem that they're

10   having and seek some advice and seek some consultation, then I

11   dare say we have a real big problem with communications between

12   lawyers and their clients or people who are seeking legal

13   advice.

14         THE COURT:  Okay.  I find this is seeking legal advice

15   and, you know, if you read it, he talks about the reason why --

16   let me see.  The reason we have not engaged in conflict with

17   Rossi, which would lead one to believe a conflict would be, you

18   know, demanding money back or in anticipation of litigating

19   something because we're not satisfied, the technology doesn't

20   work.  Also there's the chance that the one MW plant will fail,

21   this could make this all moot.

22         So I find that this is a -- that he's laying out the

23   facts for legal advice, and he's suggesting that the lawyer find

24   out the relationship between some of the parties who are

25   involved in the underlying dispute.  So I find that it is

1    privileged and it can't be used in this litigation.  Any copies

2    are to be either returned or destroyed.

3           What's the next one?  This is another one to Zalli and

4    Usi (ph)?  Who is Usi?

5           MR. LOMAX:  I think that's another person at the firm,

6    Your Honor.

7           THE COURT:  And this is what?  "I'm sending this to my

8    other e-mail".

9           MR. LOMAX:  This is part of the same type of

10   communication.

11          THE COURT:  Well, he's sending him what?  I don't see

12   what he's sending him.

13          MR. LOMAX:  These are the parties that he says he's

14   concerned about, and you see their names.  It's the same

15   individuals in the other communication that he listed.

16          THE COURT:  I don't know.  First of all, why are you

17   trying to protect this?  What does this say?  It says "I'm

18   sending this from another e-mail.  Here's some added

19   information.  I'll respond also in other e-mail".  Then he says

20   -- he gives Fulvio Fabiani's phone number and e-mail, Andrea

21   Rossi's phone number, it looks like, and I guess some e-mails

22   for him and Fabio Penon's e-mail.

23          MR. LOMAX:  You know, Your Honor, it's just part and

24   parcel of the other communication.  It's not a huge deal if they

25   want to use it, if they think this is something useful.  We

1    disagree.  We think it's communications with his attorneys, and

2    shouldn't be used for purposes of this litigation.

3         THE COURT:  I guess I don't understand, this is from

4    Tom Darden, but at the bottom there it says Collette Sauer,

5    legal assistant to Henry Johnson?

6         MR. LOMAX:  Yeah, that's actually just contact

7    information for the various people who ended up being parties to

8    this case.  Henry Johnson is a third party defendant in the

9    case.  So if you look at this, Your Honor, all these people

10   ended up being parties to this case and these are the folks that

11   Mr. Darden was inquiring about.  Same folks that you referenced.

12        THE COURT:  Well, I mean, is there some document that

13   puts this in -- these things are four months apart.  This isn't

14   like the next day.

15        MR. LOMAX:  Right.

16        THE COURT:  I don't understand.  This thing has to have

17   some context.  Is there an e-mail?  It sounds like I don't know

18   what -- I mean, there's definitely a communication with his

19   attorneys.  But I don't have any kind of context of what was the

20   e-mail the day before?  Did the attorney say can you send us,

21   you know, the addresses of some people so we can try to contact

22   them or we can sue them or do we know?

23        MR. LOMAX:  We don't have that, Your Honor.

24        MR. EVANS:  And Your Honor, in addition on this e-mail,

25   there's no indication who Mr. Uzi is, but the e-mail address is

 1    different.  So I would say that as far as -- even if we were to

 2    concede, which I'm not sure that Mr. Jaffe is involved in

 3    privileged communications, the privilege seems to be destroyed

 4    by the inclusion of this third party Usi.

 5              THE COURT:  Who is Usi?

 6              MR. EVANS:  I have no -- I'm sorry.

 7              THE COURT:  I'm asking them, I guess.

 8              MR. LOMAX:  Your Honor, I would have to make sure -- I

 9    don't want to make a misrepresentation on the record about

10    Mister or Mrs. Usi, but I believe he was another lawyer working

11    on this case with Mr. Zalli.

12              THE COURT:  He is at a different e-mail.  I mean, it's

13    not at the same company.  It's at Wall Company instead of JFG

14    Company.  I suppose IL, is that his real, you know, connotation

15    or whatever?

16              MR. LOMAX:  Yes.

17              THE COURT:  All right.

18              MR. LOMAX:  I mean, I can --

19              THE COURT:  Well, I find you haven't shown that this is

20    privileged because I don't know what it's in response to.  The

21    information within it doesn't look like it's privileged to me.

22              MR. LOMAX:  Right.

23              THE COURT:  It looks like it's just information.  You

24    know, that is not -- there's certainly no privilege to people's

25    addresses and phone numbers.  So on this second document, I find

1       that the Defendant has not shown that it's privileged.

2                MR. LOMAX:  I understand.

3                THE COURT:  I just don't even know why we're talking

4       about this document because unless this is some kind of secret

5       or something, everybody in the place probably knows what his

6       phone numbers are.  All right.

7                MR. LOMAX:  Understood.

8                THE COURT:  Any other issues?

9                MR. EVANS:  That's all from Plaintiffs, Your Honor.

10               THE COURT:  Let me give these back to you.  Well, the

11      one you can give to the Defendant.  The other one you can do

12      what you want.

13               Are there any other issues to address today?

14               MR. LOMAX:  Yes, Your Honor.  Two issues from the

15      Defendants.  If I may provide some documents to the court and to

16      Plaintiffs' counsel.

17               And just by way of background, Your Honor, we were

18      before you several months ago on Plaintiffs' motion to quash

19      subpoenas to banks for bank accounts for the Plaintiffs.  And

20      Your Honor quashed the subpoenas and ruled that if we were

21      unable to obtain relevant information from Plaintiffs, we could

22      come back before Your Honor again to make our appeal for why

23      these bank records should be produced.

24               So I want to re-raise that issue and I want to provide

25      some documents to support my position.

```
1          THE COURT:  Okay.  Did you give them these documents
2    before?
3          MR. LOMAX:  These are all documents that are part of
4    the case; yes, sir.
5          THE COURT:  No, I mean did you give it to them in this
6    discussion?  I mean, I don't understand.  You're supposed to try
7    to resolve this stuff before you came here.  How can you be
8    giving him documents that you know you should have sent them to
9    him a week ago, and said "hey, here's what I'm going to give to
10   Judge O'Sullivan and we need to try to resolve this issue".
11         MR. LOMAX:  We talked about the documents generally.  I
12   don't know that I said I'm going to put together these three
13   sets.
14         THE COURT:  Okay.  Well, good.  You guys can talk about
15   it amongst yourselves and then you can let me know when you're
16   finished and try to resolve the issue.  Before you come here,
17   don't come here and show me a document, a case or anything that
18   you haven't shown to the other side ahead of time, because
19   that's what you're supposed to do when you confer.
20         COURTROOM DEPUTY:  All rise.  Court's in recess.
21         THE COURT:  Back on the record in Rossi versus Darden.
22         What do we got left?
23         MR. EVANS:  We've been able -- Your Honor, we've been
24   able to resolve the issue that you sent us out to resolve.
25         THE COURT:  Okay.  Good.
```

1          MR. EVANS:  And I think it makes sense to at least tell

2     you on the record what our resolution is.

3          THE COURT:  All right.

4          MR. EVANS:  If you need a written order, I think that

5     will help guide the written order.

6          THE COURT:  So go ahead.

7          MR. EVANS:  The issue, Your Honor, was the bank account

8     statements that were subpoenaed and that have not been reviewed.

9          THE COURT:  Are those in your possession now?

10         MR. EVANS:  They are in our possession.

11         THE COURT:  Okay.

12         MR. EVANS:  And Mr. Darden was going to ask Your Honor

13    to just open up the bank account statements and turn them over,

14    because he had certain questions about interrogatory responses

15    that Plaintiffs had given.  And after going through it again,

16    because I know that my colleagues and Mr. Darden had discussed,

17    it we actually came to a solution.

18         THE COURT:  Mr. Lomax, right?

19         MR. EVANS:  Yes.  I'm sorry.

20         MR. LOMAX:  I would love to be Mr. Darden.

21         THE COURT:  You would probably have more money.

22         MR. LOMAX:  Correct.

23         MR. EVANS:  So Mr. Lomax and I were actually able to

24    come to an agreement.  And what we're going to do is the

25    attorneys for the parties are going to meet between now and the

1     end of next week to sit down, review the bank account statements

2     together in order to look specifically for any checks or other

3     payment entries that would indicate payments to vendors who did

4     work on the E-Cat.

5          THE COURT:  Okay.

6          MR. EVANS:  And then we will allow them to take -- make

7     photocopies of those cancelled checks that are in the bank

8     statements or whatever.  You know, if there's no cancelled check

9     and it was an electronic payment, they could take a photocopy of

10    that redacted page.

11         THE COURT:  Okay.  Sounds good.  I don't see that you

12    need an order, do you?  I mean, you put it on the record so --

13         MR. EVANS:  I think we're probably good then.

14         THE COURT:  Okay.  All right.  Anything else?

15         MR. LOMAX:  Do we need an order on the issues?

16         THE COURT:  Yeah, I'll issue that order though because

17    that was pretty similar.  All right?

18         Anything else?

19         MR. LOMAX:  No, thanks for your time.

20         THE COURT:  All right.  Thanks for getting the matter

21    resolved, I appreciate it.

22         MR. LOMAX:  Thank you, Your Honor.

23         Oh, I did have one sort of ministerial matter, Your

24    Honor.  You ordered us to have the deposition of Fulvio Fabiani

25    in Russia, he was going to appear by phone or video conference.

1          THE COURT:  Yeah.

2          MR. LOMAX:  And there are some logistical issues.

3  Apparently, the state department says it is illegal to take a

4  deposition in Russia.

5          THE COURT:  I'm not aware of that.

6          MR. LOMAX:  And so other, I guess, service providers

7  like the court reporters are saying they've done it before.  So

8  we're just trying to find out exactly what it is we can do, and

9  you ordered it to occur on March 28th.  I'm sorry.  February

10  28th.

11          THE COURT:  Yeah.

12          MR. LOMAX:  And so it's just unclear if we'll be able

13  to resolve all of those issues by that date.  We're doing

14  everything we can in order to make it happen, but it may have to

15  happen sometime thereafter.

16          THE COURT:  Well, I mean, I guess you'll have to let me

17  know.  When you know a little more, you'll have to let me know,

18  you know, if you need a few more days.  But the discovery period

19  is over and summary judgment motions, I'm sure, are due shortly

20  thereafter, and I don't know if his deposition goes to summary

21  judgment motions or not.

22          It's illegal to take -- the state department says it's

23  illegal to do what?

24          MR. LOMAX:  The Russian state department says.

25          THE COURT:  Oh, the Russian state department.

1          MR. LOMAX:  Sorry.  Yes.

2          THE COURT:  Oh, okay.  I thought you meant our state

3    department was saying no.  I got no idea what the Russians -- I

4    don't even know what our state department would say, but I don't

5    know what the -- you know, the answer is.  I guess you'll have

6    to try to work it through.

7          Why did you consult the Russian state department?

8          MR. LOMAX:  Mr. Pace reviewed the website.  He's very

9    thorough in that way, and he just wanted to make sure we were

10   going to be in compliance with all the various rules and he

11   determined that there would be an issue with the legality of

12   actually taking his deposition in Russia.

13         THE COURT:  But I thought you guys were going to be

14   here and he was going to be in Russia?

15         MR. LOMAX:  Right.  Even under those circumstances.

16         THE COURT:  Oh, really?

17         MR. LOMAX:  Yes, Your Honor.

18         THE COURT:  So what, Mr. Pace wants to travel to Russia

19   some day?  Or is he worried that Putin is going to ask for his

20   extradition or what?

21         MR. LOMAX:  I don't think he does.  I don't think he

22   does, it's just --

23         THE COURT:  Some countries -- you know, I've had a case

24   where, I think it's France or Switzerland, it's against the law

25   for them to turn over documents --

1          MR. LOMAX:  Right.  Yeah.

2          THE COURT:  -- in a lot of instances in discovery.  And

3    I just order them -- you know, usually there's a US subsidiary

4    that's involved, I just tell them look, you got to do it.  You

5    know, if you don't want to do it, get out of the lawsuit or take

6    a default or something.  I'm not saying that's going to apply to

7    you, but there are some crazy laws in some of these other

8    countries.

9          MR. LOMAX:  Right.  So we'll keep Your Honor updated if

10   there is other --

11         THE COURT:  Maybe they can agree to move them to, you

12   know, somewhere in the next country that's closer or somewhere

13   and go there.

14         All right.  Good luck.

15         MR. EVANS:  Someplace that hasn't been annexed.

16         THE COURT:  Right.  Don't send him to the Ukraine.

17              (PROCEEDINGS CONCLUDED)
                          * * * * *
18
                  C E R T I F I C A T E
19   I certify that the foregoing is a correct transcript from the
     digital audio recording of proceedings in the above-entitled
20   matter.

21
     3-25-2017                /s/ Dawn M. Savino
22   Date                     DAWN M. SAVINO, RPR

23

24

25