# EXHIBIT 6

HIGHLY CONFIDENTIAL- ATTORNEYS' EYES ONLY

Page 1

```
 1              UNITED STATES DISTRICT COURT
                SOUTHERN DISTRICT OF FLORIDA
 2                    MIAMI DIVISION
 3               CASE NO. 1:16-cv-21199-CMA
 4   ANDREA ROSSI, et al.,
 5        Plaintiffs,
     v.
 6
     THOMAS DARDEN, et al.,
 7
          Defendants.
 8   - - - - - - - - - - - - - - - - - - - -x
     INDUSTRIAL HEAT, LLC, et al.,
 9
          Counter-Plaintiffs,
10
     v.
11
     ANDREA ROSSI, et al.,
12
          Counter-Defendants.
13   and
14   J.M. PRODUCTS, et al.,
15        Third-Party Defendants.
     - - - - - - - - - - - - - - - - - - - -x
16
                 600 Brickell Avenue, Suite 3300
17                      Miami, Florida
                   Friday, February 10, 2017
18                  10:11 a.m. - 7:25 p.m.
19
20           HIGHLY CONFIDENTIAL TRANSCRIPT
21                ATTORNEYS' EYES ONLY
22          VIDEO DEPOSITION OF ANDREA ROSSI
23
          Taken before Janet Baldauf, Registered
24   Professional Reporter and Notary Public in and for
     the State of Florida at Large, pursuant to Notice of
25   Taking Deposition filed in the above cause.
```

Veritext Legal Solutions

800-726-7007                                    305-376-8800

Page 234

1  that?
2       MR. PACE: Yes. I'm trying to understand.
3       THE WITNESS: You know, these picture are,
4   first of all --
5       MR. ANNESSER: Just answer his question if
6   you understand it. I'm going to object to the
7   form because I'm not sure I understand the
8   question.
9       THE WITNESS: The place where the steam
10  became water is not -- is not illustrated by these
11  photographs, Attorney.
12 BY MR. PACE:
13   Q.  But it did occur somewhere within the
14 container?
15      MR. LEON DE LA BARRA: Object to form.
16      THE WITNESS: Can you repeat the question.
17 BY MR. PACE:
18   Q.  But the conversion of steam to water
19 occurred in the container?
20      MR. ANNESSER: Object to form.
21      MR. LEON DE LA BARRA: Object to the form.
22      THE WITNESS: No.
23 BY MR. PACE:
24   Q.  Where did it occur, outside the container
25 then?

Page 235

1   A.  Yes.
2   Q.  Where outside the container?
3   A.  In a proper heat exchanger that was placed
4 not inside the container.
5   Q.  Where was the heat exchanger?
6   A.  The heat exchanger was in a proper room that
7 is not indicated in this photographs. The steam
8 through a pipe is gone in a heat exchanger that is not
9 here.
10  Q.  This heat exchanger, who installed that?
11  A.  I did.
12  Q.  Who helped you install it?
13  A.  Contractors.
14  Q.  Which contractors?
15  A.  Well, I use very much flying contractors
16 that in that industrial park everyday come to know if
17 you need something. I use it to many of them. The
18 heat exchanger that I have put down has been made by me
19 with their help.
20  Q.  Okay.
21  A.  So -- in -- sorry.
22  Q.  I'm sorry. I interrupted you that time.
23 Please finish your answer.
24  A.  I had finished.
25  Q.  Do you know their names? Do you know any of

Page 236

1 their names?
2   A.  No, I don't remember. We are talking of two
3 years ago, and they were just guys. In that area, if
4 you go there, they have the truck. It's people that
5 has a truck that is a small workshop. They have
6 everything there. You call them, and they are able to
7 do anything. They are able to do whatever you need.
8   Q.  Who removed it?
9   A.  Sorry.
10  Q.  Who removed this heat exchanger that you
11 built?
12  A.  It has been built by pipes --
13  Q.  No. I'm sorry. My question was who removed
14 it?
15      MR. LEON DE LA BARRA: Object to form.
16      THE WITNESS: I removed it with the help of
17  contractors.
18 BY MR. PACE:
19  Q.  Because it doesn't exist any longer at the
20 Doral plant?
21  A.  No because I have used the pieces of it to
22 do other things because now it was completely useless.
23  Q.  Well, it didn't exist at the Doral location
24 in February of 2016, did it?
25      MR. ANNESSER: Object to the form.

Page 237

1       THE WITNESS: Can you -- I did not
2   understand the question.
3 BY MR. PACE:
4   Q.  Sure. You remember seeing me at the Doral
5 warehouse in December 16 of 2016?
6   A.  I remember.
7   Q.  The heat exchanger you are talking about now
8 had been removed by then, correct?
9       MR. ANNESSER: Object to form.
10      MR. LEON DE LA BARRA: Join.
11      THE WITNESS: I don't understand the
12  English. This heat exchanger has been removed
13  after the end of the test.
14 BY MR. PACE:
15  Q.  Okay. So it was sometime after
16 February 2016?
17  A.  If this was the question, this is the
18 answer. Sorry.
19  Q.  I'm still a little lost and then we'll take
20 a quick break here because we have to move on to some
21 other subjects before we end, but you said in Exhibit
22 17 --
23  A.  Yes.
24  Q.  -- what comes into there, that top pipe,
25 what we labeled as pipe number one is steam, correct?

Page 238

1  A.  I am very sorry.  I did not understand the
2 question.
3  Q.  Sure.  Let's go through this again.  In
4 Exhibit 17 --
5  A.  Yes.
6  Q.  -- the top pipe in that picture.
7  A.  The top pipe, number one, yes.
8  Q.  What you call number one.
9  A.  Yes.
10  Q.  You said what came in there was steam?
11  A.  Came in where was steam?  Was full of steam.
12  Q.  What came in this pipe was steam?
13  A.  Yes, yes.  It was full of steam.
14  Q.  So somewhere the steam had to exit -- your
15 testimony now is that somewhere the steam had to exit
16 this container and go to -- and the heat at least from
17 the steam had to exit the container and be dissipated
18 or sent out of the warehouse; is that correct?
19  A.  No.
20  Q.  Okay.  How would the steam be eliminated
21 from --
22  A.  With a heat exchanger.
23  Q.  Let me.  If steam came into the container --
24  A.  The steam enters in the container, goes in
25 these four pipes.  In this phase we were using only

Page 239

1 four pipes.  In some other phases we use also the other
2 pipes.  In this moment we were at the end of the job.
3 We were -- we had in operation only the four pipes.  So
4 the steam -- then the steam exited from the container
5 inside a pipe, inside a system of pipe, and run through
6 the place where the heat exchanger was.  The heat
7 exchanger exchanged heat between air and steam and cool
8 and the steam.
9  Q.  Is it the other side -- then if I'm looking
10 at Exhibit 17, is where the heat -- is where the steam
11 is exiting this container somewhere on the other side
12 of those pipes?
13  A.  You -- you -- you can see because this
14 photography does not take the area where there was the
15 bypass.
16  Q.  There was a bypass?
17  A.  Yes, sir.
18  Q.  Where would that --
19  A.  Between the number 17 and the number 16, you
20 have a hole.  So the number 16 is not a continuation of
21 the 17 because if I look at the 17 and I look at the
22 16, I have -- first I have to put the 17, and then I
23 have to put the 16 because, as you can see, the 17 has
24 the left side that is the end -- the left end of the
25 container -- looking at the container from the point of

Page 240

1 observation of this photography while the photograph in
2 number 16 shows us the right end of the container.
3  Q.  Uh-huh.
4  A.  But attention, between the 17 and the 16,
5 there is a piece of plant that has not been
6 photographed, you understand.
7  Q.  I understand.
8  A.  In that area there was the bypass.
9  Q.  Okay.  And I think we actually -- that's not
10 for this picture -- I've got pictures down the road,
11 but I just want to ask this before we take a break.
12  A.  No.  The number 18, you have to put the
13 number 18 to follow the logic at the left --
14     MR. ANNESSER:  Dr. Rossi, there is no
15   question.
16     THE WITNESS:  You are right and I am stupid.
17   I am very, very stupid.  I continue to make the
18   same mistake, and I don't know why.
19     MR. PACE:  Dr. Rossi, I'm just going to stop
20   you so that we can get to this and take a quick
21   break.  Let me just do this.  Exhibit 18.
22   (Thereupon, Photograph was marked for
23   identification as Defendant's Exhibit 18.)
24     THE WITNESS:  Okay.
25 BY MR. PACE:

Page 241

1  Q.  When we look at Exhibit 17, we can see in
2 the far left side tubing.
3  A.  Exactly.  There --
4  Q.  Exhibit 18 -- let me do this.
5  A.  Sorry.
6  Q.  Exhibit 18 is, in fact, the tubing that we
7 see on the far left in Exhibit 17?
8  A.  You are correct.
9  Q.  So that was the point you were just making.
10  A.  Yes.
11  Q.  This tubing is for inserting water, correct?
12  A.  No.
13  Q.  Okay.  So what is it for inserting?
14  A.  Nothing.
15  Q.  Nothing.  So these tubes -- who put these
16 tubes in?
17  A.  When you say tubes, you mean these hoses?
18  Q.  Yes, sir.
19  A.  Because if you say tube, I think to the
20 steam.
21  Q.  Correct.  I'm sorry.  Let me use the phrase
22 you are using.  Hoses.
23  A.  The hoses are emergency hoses connected with
24 the hydraulic, the hydraulic center of the factory in
25 case of overheating.  We never use them in all the year

HIGHLY CONFIDENTIAL- ATTORNEYS' EYES ONLY

Page 290

1  steam from the --
2    A.   Which one, Counselor?
3    Q.   Actually, all three show the same pipe,
4  correct?
5    A.   No because --
6    Q.   They are different angles?
7    A.   -- here is also another one.
8    Q.   Let me do it -- I appreciate that.  In fact,
9  same thing on number 25 if you look at the bottom.  In
10 24, 25 and 26 --
11   A.   24, 25, and 26 they have the common
12 denominator that is the steam pipe.
13   Q.   And that's the silver encased piping?
14   A.   It is correct.
15   Q.   And that was designed to carry the steam
16 from the plant over to the JM Products container?
17   A.   Yes.
18        THE VIDEOGRAPHER:  We are at 7 minutes, sir.
19 BY MR. PACE:
20   Q.   And this pipe has been -- I'm sorry?
21   A.   It's okay.
22   Q.   This piping has now been taken down at the
23 Doral warehouse, correct?
24   A.   Yes.
25   Q.   Who took it down?

Page 291

1    A.   I did.
2    Q.   When?
3    A.   After the test, after the sealing of the
4  test.
5    Q.   Do you know -- was it immediately after, if
6  you know?
7    A.   I don't remember, but I --
8    Q.   Who assisted?
9    A.   Sorry.
10   Q.   Did anyone assist you in taking down the
11 piping?
12   A.   Can you repeat the question.
13   Q.   Yes.  It's kind of the last question.  Did
14 anyone assist you in taking down the piping?
15   A.   Yes.
16   Q.   Who?
17   A.   Contractors.
18   Q.   Do you know their names?
19   A.   No.
20        MR. PACE:  I think I've run out of time.
21        THE VIDEOGRAPHER:  Here marks the end of
22   videotape number eight and the deposition.  We are
23   going off the record at 7:25 p.m.
24        (Thereupon, the taking of the deposition was
25        concluded at 7:25 p.m.  Signature and
          formalities were not waived.)

Page 292

1  RE   : ROSSI v DARDEN
   DEPO OF: ANDREA ROSSI
2  TAKEN : 2-23-17
3
4            EXCEPT FOR ANY CORRECTIONS
             MADE ON THE ERRATA SHEET BY
5            ME, I CERTIFY THIS IS A TRUE
             AND ACCURATE TRANSCRIPT.
6            FURTHER DEPONENT SAYETH NOT.
7            _____
             ANDREA ROSSI
8
9
10 STATE OF FLORIDA   )
                     ) SS:
11 COUNTY OF         )
12
13      Sworn and subscribed to before me this
14      _____ day of _____ 2017.
15 PERSONALLY KNOWN _____ OR I.D._____
16
17
   _____
18 Notary Public in and for
   the State of Florida at Large.
19
20
21 My commission expires:
22
23
24
25

Page 293

1            ERRATA SHEET
2  RE   : ROSSI v DARDEN
   DEPO OF: ANDREA ROSSI
3  TAKEN : 2-23-17
4  DO NOT WRITE ON TRANSCRIPT, ENTER ANY CHANGES HERE
5  Page #| Line #| Change           | Reason
6  _____|_____|_____|_____
7  _____|_____|_____|_____
8  _____|_____|_____|_____
9  _____|_____|_____|_____
10 _____|_____|_____|_____
11 _____|_____|_____|_____
12 _____|_____|_____|_____
13 _____|_____|_____|_____
14 _____|_____|_____|_____
15 _____|_____|_____|_____
16 _____|_____|_____|_____
17 _____|_____|_____|_____
18 _____|_____|_____|_____
19 _____|_____|_____|_____
20 _____|_____|_____|_____
21 State of Florida)
   County of    )
22
   Under penalties of perjury, I declare that I have
23 read by deposition transcript, and it is true and
   correct subject to any changes in form or
24 substance entered here.
   _____       _____
25 Date              ANDREA ROSSI

Page 294

1  CERTIFICATE OF OATH OF WITNESS
2
3  STATE OF FLORIDA
         SS:
4  COUNTY OF MIAMI-DADE
5
6
7       I, JANET BALDAUF, Registered Professional
8  Reporter, Florida Professional Reporter and Notary
9  Public in and for the State of Florida at Large,
10 certify that the witness, ANDREA ROSSI, personally
11 appeared before me on 2-23-17 and was duly sworn by
12 me.
13      WITNESS my hand and official seal this
14 23rd day of February 2017.
15
16
17 _____
   JANET BALDAUF, RPR, FPR
18 Notary Public
   State of Florida at Large
19
20 Notary # FF208072
21 My Commission Expires: 3-31-2019
22
23
24
25

Page 295

1  REPORTER'S DEPOSITION CERTIFICATE
2
3       I, JANET BALDAUF, Registered Professional
4  Reporter and Florida Professional Reporter, certify
5  that I was authorized to and did stenographically
6  report the deposition of ANDREA ROSSI, the witness
7  herein on 2-23-17; that a review of the transcript
8  was requested; that the foregoing pages numbered
9  from 1 to 296 inclusive is a true and complete
10 record of my stenographic notes of the deposition by
11 said witness; and that this computer-assisted
12 transcript was prepared under my supervision.
13      I further certify that I am not a
14 relative, employee, attorney or counsel of any of
15 the parties, nor am I a relative or employee of any
16 of the parties' attorney or counsel connected with
17 the action.
18      DATED this 23rd day of February 2017.
19
20
21 _____
22 JANET BALDAUF
   Florida Professional Reporter
23 Registered Professional Reporter
24
25

Page 296

1  VERITEXT LEGAL SOLUTIONS
   One Biscayne Tower, Suite 2250
2  Two South Biscayne Boulevard
   Miami, Florida 33131
3  (305) 376-8800
4
   _____, 2017
5
   ANDREA ROSSI
6  c/o JOHN W. ANNESSER, ESQUIRE
   Perlman Bajandas Yevoli & Albright, P.L.
7  283 Catalonia Avenue, Suite 200
   Coral Gables, Florida 33134
8
9
   RE   : ROSSI v DARDEN
10 DEPO OF: ANDREA ROSSI
   TAKEN  : 2-23-17
11 READ & SIGN BY: Days
   Attn: ANDREA ROSSI:
12
   This letter is to advise you that the transcript
13 of the deposition listed above is completed and
   is available for reading and signing.
14
   PLEASE CALL THE ABOVE NUMBER TO MAKE AN APPOINTMENT to
15 come to the Veritext office closest to you to read and
   sign the transcript. Our office hours are from 8:30
16 a.m. to 4:30 p.m., Monday through Friday.
17 IN THE EVENT OTHER ARRANGEMENTS ARE MADE, please send
   us a list of any and all corrections, signed and
18 notarized, noting page and line numbers and the reason
   for such changes, so we can furnish all counsel with a
19 copy of same. If the reading and signing has not been
   completed prior to the referenced date, we shall
20 conclude that you have waived the reading and signing
   of the deposition
21 transcript. Your prompt attention to this matter is
   appreciated.
22
   Sincerely,
23
24 JANET BALDAUF, RPR, FPR
25 cc: Counsel of Record

Page 297

1  VERITEXT LEGAL SOLUTIONS
   One Biscayne Tower, Suite 2250
2  Two South Biscayne Boulevard
   Miami, Florida 33131
3  (305) 376-8800
4
5  _____, 2017
6  CHRISTOPHER R.J. PACE, ESQUIRE
   Jones Day
7  600 Brickell Avenue, Suite 3300
   Miami, Florida 33131
8
   RE   : ROSSI v DARDEN
9  DEPO OF: ANDREA ROSSI
   TAKEN  : 2-23-17
10 READ & SIGN BY: 30 Days
11
   Dear Counsel:
12
13 The original transcript of the deposition listed
   above is enclosed for your file. The witness
14 did not waive reading and signing and has been
   sent a letter notifying them to come in and read
15 and sign their deposition transcript.
16 The witness will be provided a copy of their
   deposition transcript for reading in our office
17 should they come in to review the transcript, and
   we will forward to you any corrections made by
18 the witness at that time, along with an original
   signature page which should be attached to the
19 original transcript which is in your possession.
20
21 Sincerely,
22
23 JANET BALDAUF, RPR, FPR
24
25

VERITEXT LEGAL SOLUTIONS
COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the foregoing transcript is a true, correct and complete transcript of the colloquies, questions and answers as submitted by the court reporter. Veritext Legal Solutions further represents that the attached exhibits, if any, are true, correct and complete documents as submitted by the court reporter and/or attorneys in relation to this deposition and that the documents were processed in accordance with our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining the confidentiality of client and witness information, in accordance with the regulations promulgated under the Health Insurance Portability and Accountability Act (HIPAA), as amended with respect to protected health information and the Gramm-Leach-Bliley Act, as amended, with respect to Personally Identifiable Information (PII). Physical transcripts and exhibits are managed under strict facility and personnel access controls. Electronic files of documents are stored in encrypted form and are transmitted in an encrypted fashion to authenticated parties who are permitted to access the material. Our data is hosted in a Tier 4 SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and State regulations with respect to the provision of court reporting services, and maintains its neutrality and independence regardless of relationship or the financial outcome of any litigation. Veritext requires adherence to the foregoing professional and ethical standards from all of its subcontractors in their independent contractor agreements.

Inquiries about Veritext Legal Solutions' confidentiality and security policies and practices should be directed to Veritext's Client Services Associates indicated on the cover of this document or at www.veritext.com.