# Exhibit 7

Page 214

1  Industrial Heat had not conveyed information to
2  Mr. Rossi --
3  A.  Yes.
4  Q.  -- is that -- is that fair?
5  A.  Yes.
6  Q.  Were you trying to influence Mr. Rossi to consider
7  a -- a different party to validate Mr. Rossi's
8  work in Florida?
9     MR. SHARE: Objection to form.
10 A.  Well, I don't know if I was trying to convince him
11 to use someone -- I -- we just wanted to make sure
12 that a third-party evaluation was accepted by both
13 parties.
14 Q.  Why not be more direct with Mr. Rossi?
15    MR. SHARE: Objection.  Form.
16 A.  I'm -- I can't answer that.  I'm not sure.
17 Q.  Well, in other words, J.T. Vaughan had told you
18 that Industrial Heat doesn't accept Penon;
19 correct?
20 A.  Uh-huh.
21 Q.  And you could have said to Mr. Rossi, Hey, I was
22 just talking to J.T. Vaughan on the phone.  They
23 don't accept Penon.

Page 215

1  A.  Well, I assumed that they had that conversation
2  with him.
3  Q.  Well, if they had that conversation, why -- why
4  would you send an email --
5     MR. SHARE: Objection to form.
6  A.  I -- I just -- I suppose I should have had that
7  conversation with Andrea.
8  Q.  In the -- on the second page of the document in
9  your email, you ask at the -- at the last sentence
10 of the first paragraph, "Do you --" Andrea Rossi
11 "-- have any certification or letter from the --"
12 quote/unquote "'-- client' and invoices for sale
13 of energy?"
14    Do you see that?
15 A.  Yes.
16 Q.  Why did you ask for that?
17 A.  Again, we wanted to make sure that everybody was
18 making -- living up to their ends of the
19 agreement.
20 Q.  What did that have to do with the agreement?
21    MR. SHARE: Objection to form.
22 A.  That the invoices from the sale of energy would
23 show that they were producing energy.

Page 216

1  Q.  Okay.  Now, let me ask you to look at Mr. Rossi's
2  reply to your email.
3     Now, you had asked him a direct question
4  as to whether Industrial Heat agreed with Rossi
5  about Penon doing the certification, as we just
6  saw; correct?
7  A.  Yes.
8  Q.  And Mr. Rossi did not answer that -- did he -- in
9  his email?
10    MR. CHAIKEN: Object to form.
11 A.  Yes, he did not.
12 Q.  Now, with -- what did he say with respect to your
13 request for certifications or letters from the,
14 quote, "client," close quote and invoices for sale
15 of energy?
16 A.  Did not have the documents.
17    (Witness reviews document.)  Did not
18 have the documents.
19 Q.  Related to the commercial agreement between
20 Industrial Heat and their customer?
21 A.  Yeah.
22 Q.  And he goes -- he goes on to say he spoke -- that
23 he, Rossi, spoke with the director of the factory

Page 217

1  and the customer, and they are very positive so
2  far; is that right?
3  A.  That's what it says.
4  Q.  What did you understand that to mean?
5  A.  That everything was going okay.
6  Q.  When -- on either of your two visits, did you meet
7  with a director of the factory and the customer?
8  A.  No.
9     THE WITNESS: These are all screwed up
10 now.
11    COURT REPORTER: That's all right.
12    MR. BELL: Marking as the exhibit next
13 in order some documents.  The first one is dated
14 at the top June 1, 2015 and stamped JB 00010.
15    (Exhibit 29, JB 00010-232.)
16 A.  (Witness reviews document.)
17 Q.  So I want you to feel free to look through the
18 entire packet, but let me ask you just to look at
19 the page -- and this is -- kind of -- a mixture of
20 several different documents, but towards the back
21 end there's one stamped at the bottom "HJ 216";
22 it's dated March 3, 2015.
23 A.  H -- what?