```
 1                    UNITED STATES DISTRICT COURT
                      SOUTHERN DISTRICT OF FLORIDA
 2                          MIAMI DIVISION
                       CASE NO. 16-CV-21199-CMA
 3


 4                                        Miami, Florida
         ANDREA ROSSI, et al.
 5                                        March 28, 2017
                  Plaintiff,
 6                                        2:04 p.m. to 2:39 p.m.
             vs.
 7                                        Courtroom 12-2
         THOMAS DARDEN, et al.,
 8                                        (Pages 1 to 28)
                  Defendant.
 9       ──────────────────────────────────────────────────────

10                            MOTION HEARING
             BEFORE THE HONORABLE CECILIA M. ALTONAGA,
11                    UNITED STATES DISTRICT JUDGE

12       APPEARANCES:

13       FOR THE PLAINTIFF:     BRIAN W. CHAIKEN, ESQ.
                                Perlman, Bajandas, Yevoli & Albright, P.L.
14                              283 Catalonia Avenue, Suite 200
                                Coral Gables, FL 33134
15                              (305) 377-0086
                                Bchaiken@pbyalaw.com
16
                                JOHN ANNESSER, ESQ.
17                              Perlman, Bajandas, Yevoli,& Albright, P.L.
                                283 Catalonia Avenue, Suite 200
18                              Coral Gables, FL 33134
                                (305) 377-0086
19                              Jannesser@pbyalaw.com

20

21

22

23

24

25
```

```
1    APPEARANCES (CONTINUED):

2      FOR THE DEFENDANT:        CHRISTOPHER R.J. PACE, ESQ.
                                 Jones Day
3                                600 Brickell Avenue, Suite 3300
                                 Brickell World Plaza
4                                Miami, FL 33131
                                 (305) 714-9700
5                                Crjpace@jonesday.com

6                                CHRISTOPHER M. LOMAX, ESQ.
                                 Jones Day
7                                600 Brickell Avenue, Suite 3300
                                 Brickell World Plaza
8                                Miami, FL 33131
                                 (305) 714-9700
9                                Clomax@jonesday.com

10

11

       REPORTED BY:             STEPHANIE A. McCARN, RPR
12                              Official Court Reporter
                                400 North Miami Avenue
13                              Twelfth Floor
                                Miami, Florida 33128
14                              (305) 523-5518
                                Stephanie_McCarn@flsd.uscourts.gov
15

16

17

18

19

20

21

22

23

24

25
```

```
 1                        I N D E X

 2                        WITNESSES

 3
     WITNESSES FOR THE PLAINTIFF:                    Page
 4                                                    --

 5


 6
     WITNESSES FOR THE DEFENDANT:                    Page
 7                                                    --

 8

 9   EXHIBITS IN EVIDENCE          PRE    MARKED   ADMITTED

10   Plaintiff's Exhibit No.       --      --        --

11   Defendant's Exhibit No.       --      --        --

12

13

14

15

16

17                       MISCELLANEOUS

18
                                                    Page
19   Proceedings.......................................  4
     Court Reporter's Certificate.....................  28
20

21

22

23

24

25
```

```
 1        (The following proceedings were held at 2:04 p.m.)

 2            COURT SECURITY OFFICER:  All rise.

 3            THE COURT:  Good afternoon.  Please be seated.

 4            I would ask the attorneys to state your names, please.

 5            MR. CHAIKEN:  Good afternoon, Your Honor.  Brian

 6    Chaiken and Jonathan Annesser on behalf of Plaintiffs.

 7            MR. PACE:  Good afternoon, Your Honor.  Chris Pace and

 8    Chris Lomax, at Jones Day, on behalf of the Defendants.

 9            THE COURT:  All right.

10            This is the Plaintiff's appeal.  I'll hear from

11    Plaintiff's counsel.

12            MR. CHAIKEN:  Yes.  Good afternoon, Your Honor.  Brian

13    Chaiken again, on behalf of the Plaintiffs.  I should mention

14    that Plaintiff, Dr. Rossi, is in the courtroom as well.

15            THE COURT:  Yes, good afternoon.

16            THE PLAINTIFF:  Good afternoon.

17            MR. CHAIKEN:  Well, Your Honor, we are here on our

18    appeal of Magistrate O'Sullivan's ruling declaring that this

19    document, we've called it the Zalli document, is an

20    attorney/client privileged document.  We believe that at the

21    outset, Defendants have failed to meet their burden to

22    establish that this document is, in fact, attorney/client

23    privileged document.  That's number one.  Number two, if the

24    Court was to conclude that the document is subject to that

25    privilege, we believe that the crime fraud exception applies,
```

1    and the document should not be able to be used as a shield to

2    protect their crimes.

3            Now, I'll walk you through both of those arguments.

4    First, I'll refer, Your Honor, to your case -- and we handed a

5    copy to the assistant up there.  It's the *In re Denture Cream*

6    *Products* case.  That's actually one of your cases where you

7    said that the Florida Supreme Court has held that, unlike a

8    claim of attorney/client privilege made by an individual --

9            THE COURT REPORTER:  You have to read slower, please.

10           MR. CHAIKEN:  I will.

11           The claim of privilege raised by a corporation is

12   subject to a heightened level of scrutiny.  And you identify

13   it, five different factors that they must meet as requirements.

14   We don't believe they've met any of these requirements.  At the

15   hearing before Magistrate O'Sullivan, there was no affidavit

16   filed in support of any of these requirements.  There was no

17   live testimony given.  There was simply argument of counsel

18   saying, Judge, by looking at this document, we think that it's

19   privileged; and therefore, it is privileged.

20           I believe we've attached copies of the hearing

21   transcripts where Judge O'Sullivan made his rulings.  And he

22   doesn't make factual findings of these five points that you've

23   identified in your ruling.

24           THE COURT:  Where did -- where did you ask the

25   magistrate judge to make these five findings?

1          MR. CHAIKEN:  I don't believe that we made those

2     requests, Your Honor, at that hearing.

3          THE COURT:  Why?

4          MR. CHAIKEN:  Why did not -- why did we not make the

5     request?

6          THE COURT:  Why are you asking me, in the first

7     instance, to address those five factors when you didn't alert

8     the magistrate judge that you wanted him to address those, and

9     that you felt the Defendants had failed in their burden with

10    regard to each of those?

11         MR. CHAIKEN:  Well, Your Honor, at that time, we

12    thought it was the Defendant's burden to meet those five

13    requirements.  It wasn't ours --

14         THE COURT:  Where do -- where do you address that with

15    the magistrate judge?  Because I don't address matters in the

16    first instance when they pertain to discovery.

17         MR. CHAIKEN:  Well, the magistrate judge made his

18    ruling and moved on to the next issue at that time.  We

19    didn't -- we didn't raise these five requirements at that time.

20         THE COURT:  Wouldn't that be the fair approach to

21    move, ask him to reconsider, and address these five before you

22    take an appeal, and ask me to find that he committed clear

23    error on the basis that he failed to consider and properly

24    apply those five, when he was never asked to?

25         MR. CHAIKEN:  Well, that's a route we could've gone,

```
 1    Your Honor.  I think that the burden, however, is on the
 2    Defendants to say this is -- you know -- we believe it's a
 3    privileged document.  We believe we've met these requirements.
 4              THE COURT:  I'm dealing with a procedural issue.
 5              MR. CHAIKEN:  I understand.
 6              THE COURT:  Appellate jurisdiction.
 7              MR. CHAIKEN:  Understood.
 8              THE COURT:  And due deference and respect given to
 9    other judicial officers.  So you're asking me to reverse my
10    paired magistrate judge and say that he improperly reached
11    determinations and improperly applied the law when, in fact,
12    that law was not presented to him, and he was not asked to make
13    those determinations in the way you're now asking me to address
14    the matter.  No?
15              MR. CHAIKEN:  Understood, Your Honor.  The opinion in
16    In re Denture Creams goes on, if I may?
17              THE COURT:  Um-hmm.
18              MR. CHAIKEN:  It states that the burden of proof rests
19    squarely on the party claiming the attorney/client privilege to
20    show the primary purpose of the communication in question was
21    for the purpose of obtaining legal advice, not business advice.
22              And it goes on to state, The business aspects of a
23    decision are not protected simply because legal considerations
24    are involved.  In these cases the document does not contain
25    sufficient information to indicate whether the material was
```

1    considered confidential, the material should not be considered

2    privileged.

3           And that's you citing the *Hasty v. Lockheed Martin*

4    case, in your opinion.

5           Your Honor, we don't believe that the document itself

6    identified information that was to be kept confidential.  We

7    don't believe the magistrate found that specifically --

8           THE COURT:  But you haven't seen the document, right?

9           MR. CHAIKEN:  No.  We -- actually -- procedurally what

10   happened was the document --

11          THE COURT:  It was inadvertently disclosed?

12          MR. CHAIKEN:  Correct.  We had seen the document,

13   we're preparing to use it, they asked it to be clawed back and

14   that's what generated the --

15          THE COURT:  Okay.

16          MR. CHAIKEN:  -- Magistrate O'Sullivan.

17          We don't have the documents in here today.  We've

18   actually asked Defense counsel to bring it with them.  So I'm

19   going off of my recollection actually, but my recollection is

20   that the document didn't specifically say this is confidential

21   information and this is somehow protected.  And, in fact, to

22   this day there's no -- the privilege log provided by Defendants

23   in this case doesn't identify a document, doesn't identify

24   Mr. Zalli, doesn't identify the purposes for which the

25   privilege is claimed; so we still don't know those things.  And

1    those things were not addressed at the hearing before

2    Magistrate O'Sullivan as well.

3            In response to our appeal today, Defendants have filed

4    at Docket Entry 228 several exhibits, and those exhibits

5    actually, I think, raise more questions than they do provide

6    answers.  One of the exhibits is a declaration of Uzi Shaya,

7    attached as Exhibit D.

8            THE COURT:  Did you spell that name?

9            MR. CHAIKEN:  Shaya, S-H-A-Y-A, first name Uzi, U-Z-I.

10           THE COURT:  Thank you.

11           MR. CHAIKEN:  In that affidavit, Mr. Shaya claims that

12   he had discussions with a Dr. Levi.  And that's subject to

13   another motion that we had put before you, that you had

14   remanded back to Magistrate O'Sullivan.  Where we believe ----

15           THE COURT:  But could I just correct you on one thing,

16   Mr. Chaiken?  It's Magistrate Judge.

17           MR. CHAIKEN:  I apologize.

18           THE COURT:  It's like calling me "District."  It's an

19   adjective, but it's -- it's not a noun.

20           MR. CHAIKEN:  I apologize.

21           THE COURT:  That's all right.  A lot of lawyers make

22   that mistake, and in fact other judges do as well.  But I

23   learned that early on in "baby judge" school, it's Magistrate

24   Judge not simply a magistrate.

25           MR. CHAIKEN:  I'll be sure to refer to that going

1    forward.

2            THE COURT:  So if you call Judge O'Sullivan

3    magistrate, he won't be pleased.

4            MR. CHAIKEN:  I'll remember that.

5            THE COURT:  I would assume.  All right.  Go ahead.

6            MR. CHAIKEN:  The declaration of Mr. Shaya states that

7    he had been retained by Mr. Jaffe to assist with providing

8    legal advice to Defendant Thomas Darden in this case.  It

9    doesn't go into any more description than that.  Mr. Shaya is

10   not a lawyer, doesn't claim to be a lawyer.  We don't know the

11   nature of the legal advice that's being requested so as to be

12   able to even make an argument, just to say that the legal

13   advice to which they were talking about is unrelated to the

14   legal issues in this case.

15           Notwithstanding that, Mr. Shaya states that, in fact,

16   he was offering to do a business deal with Mr. Levi, and that

17   was part of what he was engaged to do apparently.  We don't

18   know the nature of it, but, in fact, if that's what he was

19   hired to assist to do, that's a business deal, and we can

20   distinguish nonlegal services from legal services.  And if

21   Mr. Zalli was engaged to provide nonlegal services, as we

22   suspect he was --

23           THE COURT:  Well, did you have these discussions with

24   Mr. Pace?

25           MR. CHAIKEN:  Did we have these discussions --

1             THE COURT:  Or Mr. Lomax?

2             MR. CHAIKEN:  -- about the --

3             THE COURT:  What you're saying now.  The things you

4    don't know.  The information that's given, but all the

5    questions you still have.

6             MR. CHAIKEN:  We've had numerous discussions about

7    whether or not we believe that this was a legal or nonlegal

8    case, whether there were fraud investigation services that were

9    being discussed or straight deal services.  They claim that

10   they were legal services.  We believe that they -- clearly from

11   the document itself, it doesn't look like they're legal

12   services, and from the information we got from this affidavit

13   and from Dr. Giuseppe Levi, we don't believe they were legal

14   services.  But we don't have the document anymore to look at.

15        So it's our contention that there is no indication

16   from either the document itself or from this affidavit other

17   than, you know, the self-serving statements by Mr. Shaya that

18   these are legal services.  You know, it's our contention that

19   what they were doing was, one, seeking to change the

20   testimony -- potential testimony of Dr. Levi going forward, and

21   offer him money in exchange for doing whatever services they

22   wanted him to perform.

23        In -- as it relates specifically to the technology

24   that's at issue in this case.  And again, that's the subject

25   matter of that other motion, but we think it directly relates

1   to this specific communication and any other communications

2   they may have had.

3         THE COURT:  And you addressed these issues with the

4   magistrate judge?

5         MR. CHAIKEN:  Yes, Your Honor.

6         THE COURT:  What page?

7         MR. CHAIKEN:  I believe that's Page 14.

8         THE COURT:  Of the transcript?

9         MR. CHAIKEN:  14 Line 13 of that transcript.

10     (Pause in proceedings.)

11        THE COURT:  All right.  Thank you.

12        I'm sorry.  Go ahead.

13        MR. CHAIKEN:  If I may just address the second part of

14   my argument?

15        THE COURT:  Yes.

16        MR. CHAIKEN:  So the first part was we don't believe

17   they've met their burden to establish privilege to begin with.

18   If the Court is inclined to say that they have met their

19   burden, we would say that the crime fraud exception applies,

20   and therefore this document should not be considered

21   privileged.

22        THE COURT:  Did you raise the crime fraud exception

23   with Magistrate Judge O'Sullivan, Mr. Chaiken?

24        MR. CHAIKEN:  We did on reconsideration.

25        THE COURT:  Where?

1        MR. CHAIKEN:  So it's the second transcript.

2        THE COURT:  I have Docket Entry 226-4.  What other one

3   is there?

4        MR. CHAIKEN:  It was from March -- I want to say

5   March 9th.  Yes, March 9th, 2017.

6        THE COURT:  What's the docket entry, please?

7        MR. CHAIKEN:  I've not seen the docket entry.  Yeah, I

8   think we just recently filed it.  I think in the last -- give

9   me a moment, please.

10        THE COURT:  Yes.

11     (Pause in proceedings.)

12        MR. CHAIKEN:  Docket Entry 226, I believe, Your Honor.

13        THE COURT:  That's the one I have here.  226 -- well,

14   I'm looking at 226-4.  Do you want me to look at something

15   else?

16        MR. CHAIKEN:  No. 5, I believe, Your Honor.

17        THE COURT:  No. 5?  And in your appeal, did you brief

18   this crime fraud exception?

19        MR. CHAIKEN:  We mentioned it.  Let's see.

20        THE COURT:  I mean, on the last page you have a

21   parenthetical about it, for fraud upon the court, but that's

22   not the crime fraud exception.

23        MR. CHAIKEN:  Yes.  Well, Your Honor, it was raised in

24   our motion for reconsideration before Judge -- Magistrate Judge

25   O'Sullivan.

1    THE COURT:  But I'm saying in this appeal, Docket

2    Entry 217, do you raise that as a reason why you maintained

3    Judge O'Sullivan committed error?

4    MR. CHAIKEN:  Right.  Your Honor, we mentioned it with

5    respect to our Plaintiff's motion for sanctions for bad-faith

6    litigation conduct.  That's Docket Entry 167.

7    THE COURT:  That's not what I have before me because

8    I've already denied that.

9    MR. CHAIKEN:  Right.

10    THE COURT:  And sent it over for you to address with

11    the magistrate judge.

12    MR. CHAIKEN:  And we've also identified in the last

13    page of our appeal with respect to the --

14    THE COURT:  Fraud upon the court.

15    MR. CHAIKEN:  Correct.

16    THE COURT:  But that's not the crime fraud exception,

17    is it?  There are two different types of fraud?

18    MR. CHAIKEN:  Correct, Your Honor.

19    THE COURT:  All right.  Mr. Chaiken, don't you think

20    your better course is to go back to Magistrate Judge O'Sullivan

21    on this?

22    MR. CHAIKEN:  If that's -- that's your ruling, Your

23    Honor, that's the way we'll go.  Do I think it's a better

24    course of action?

25    THE COURT:  I mean, I think it's the appropriate thing

```
 1    to do, right?  Before one starts asking another judge to find a
 2    fellow jurist committed error on various grounds that were not
 3    brought to that judge's attention.  Did you argue the crime
 4    fraud exception in this hearing -- let me -- Docket
 5    Entry 226-5, what page?
 6            MR. CHAIKEN:  We argued that the-- we argued that the
 7    crime fraud exception did apply with respect to the bad-faith
 8    litigation conduct.  So, yes.  We did not --
 9            THE COURT:  I said, this document.
10            MR. CHAIKEN:  To this document, yes.
11            THE COURT:  You did not?
12            MR. CHAIKEN:  No.  As to this document, the Zalli
13    document, that's before you, we did argue.  And -- and, yes, we
14    did.
15            THE COURT:  What page?  I have the transcript here.
16            MR. CHAIKEN:  In fact, I believe it was Magistrate
17    Judge O'Sullivan who actually raised it in response to my
18    argument.  Specifically on Page 9, Your Honor.
19            THE COURT:  Page 9?
20            MR. CHAIKEN:  Yes.  The court identifies the issue
21    Lines 7 through 12.  He doesn't use the exact words crime fraud
22    exception, but he identifies the issue.
23        (Pause in proceedings.)
24            THE COURT:  All right.  So --
25            MR. CHAIKEN:  It goes on, he does -- he does identify
```

1    it exactly on Lines 4 through 6, Your Honor.

2             THE COURT:  So where do you make the argument?  Where

3    do you elucidate the points you're going to try to make now

4    with me, to have me assign error to the Magistrate Judge's

5    handling of this crime fraud exception?  He brings it up, not

6    you.  So what did you do to bring this point to him and how did

7    you explain it?

8             MR. CHAIKEN:  I did not explain it as well as I should

9    have at that time, Your Honor.

10            THE COURT:  All right.  I mean, he brings it up.

11            MR. CHAIKEN:  You're right.

12            THE COURT:  And that's -- that's all that happens.  He

13   says, There is -- "I recognize there's this crime fraud

14   exception," and then you all keep going on.  But there's no

15   legal analysis, there's no citations to authority furnished,

16   nor is there in your present appeal.  I know you're directing

17   me to other motions you filed in the last few weeks, but that's

18   not -- this appeal didn't incorporate by reference all of those

19   other filings, right?

20            MR. CHAIKEN:  Correct, Your Honor.

21            THE COURT:  Okay.  Thank you, Mr. Chaiken.  I'm not --

22            Defense?

23            MR. PACE:  Thank you, Your Honor.  If I may, I'm

24   sorry.  I'm just always comfortable up here.  I apologize.

25            THE COURT:  That's fine.

1        MR. PACE:  Your Honor, if I can address just a few

2   issues.  First of all, as to the ruling in the February

3   hearing, which was --

4        THE COURT:  Which hearing?  Because there have been a

5   number and --

6        MR. PACE:  Yes, Your Honor.  February 23rd hearing.

7        THE COURT:  The Docket Entry 226-4?

8        MR. PACE:  Yes, Your Honor.

9        THE COURT:  Transcript?  All right.

10       MR. PACE:  And there was a order issued that day by

11  Judge O'Sullivan, Magistrate Judge O'Sullivan.  The -- under

12  Rule 72, of course, the proper answer is you have to file your

13  objections within 14 days to this Court.  They did not.  So, I

14  mean, procedurally they're not even in the right timetable.

15       Second issue is I think your Court identified -- Your

16  Honor identified it, which is in that hearing, they don't raise

17  a number of these issues, and Mr. Chaiken has just admitted to

18  that.  The one issue that they raised was they said we're not

19  even sure if Mr. Zalli is a lawyer.

20       THE COURT:  And that was clarified, and there was a --

21  he's an Israeli lawyer.

22       MR. PACE:  Correct, Your Honor.  In fact, our exhibit

23  -- our potential Exhibit No. 3 that we submitted the other day

24  is actually the document that Mr. Lomax handed to-- it wasn't

25  necessarily Mr. Chaiken, but one of his colleagues

1    demonstrating that.  So that really -- that was not in dispute.

2         They certainly knew about the Zalli engagement, from

3    having deposed Tom Darden several days before, I believe it was

4    on February 16th.  So in the context in which this was raised,

5    was really -- it was our clawback letter, they were refusing to

6    send it back.

7         THE COURT:  Um-hmm.

8         MR. PACE:  So I don't think this is a situation where,

9    at least, in terms of that ruling, the magistrate judge can

10   only, kind of, rule on what's been presented to him.

11        I think this is a distinction, for example, when we

12   were before Your Honor last Friday, where we did raise the

13   issue of saying if we have to do this on a document-by-document

14   basis that's a real problem.  If they don't raise it -- if they

15   don't raise the five elements from Your Honor's, you know,

16   opinion in *Daubert*, then Magistrate Judge O'Sullivan cannot be

17   expected to rule on it.  Therefore, by definition it's not,

18   kind of, contrary to law or clearly erroneous.

19        As to the reconsideration hearing, there's two issues

20   with that.  One, of course, is that they had -- they really

21   should have raised that in February at the February 23rd

22   hearing.  Again, they had already deposed Thomas Darden, and so

23   the fact of the matter is, if they wanted to assert this, they

24   could have asserted it back then.

25        He's raising for you kind of a red herring in the

1  sense that the document this Uzi Shaya individual -- and I

2  think I just butchered his name.  I apologize for that.  But

3  that's in response to a declaration they submitted on their

4  other motion by a Professor Levi, but that all talks about

5  activities in 2016, well after the litigation began.

6       This document is an e-mail that doesn't involve

7  Mr. Shaya.  It's just between Tom Darden and Mr. Zalli or Zalli

8  Jaffe -- I want to make sure that I'm not misspeaking -- and

9  it's from November -- the beginning of November of 2015.  So

10 very disparate circumstances.

11      Magistrate Judge O'Sullivan looked at the document.

12 He made a ruling on it, that it was covered by the

13 attorney/client privilege.  They haven't really demonstrated

14 that there is a clear error in connection with the judge doing

15 so.

16      Now, you know, if on their motion for sanctions they

17 want to -- and I'm sure we'll end up litigating that -- but the

18 motion for sanctions deals with completely separate conduct.

19 It's not dealing with this -- it's not dealing with this

20 e-mail.

21      Also, Your Honor, as Your Honor just pointed out, they

22 haven't made any arguments here to the Court, so they're not

23 giving a basis to demonstrate why Magistrate Judge O'Sullivan

24 committed clear error, and the fact is that's because they

25 cannot.

1        He looked at the -- unlike the situation we had

2    Friday, he had the e-mail in front of him, he looked at it, and

3    he said, This one is privileged.  I find that it contains legal

4    advice.  It's a document written from Tom Darden to the lawyer,

5    so it's not necessarily written in a lot of, you know,

6    legalese, but it is a request for legal services.

7        There's a second document he looked at, which is

8    months later, and he looked at that and said, And this one is

9    not privileged, and he's produced that, and they've used it as

10    an exhibit.  There's no sign -- they haven't shown anything

11    about any kind of clearly erroneous.

12        So, first of all, they're untimely in terms of their

13    appeal, and Your Honor doesn't need to reach these issues.

14    But, second of all, the standard of Rule 72 is very clear, and

15    it has to be clearly erroneous.  They have not shown that in

16    connection with their second argument, connection with their

17    first -- I'm sorry -- they have not shown that connection with

18    either of the two arguments.

19        In the first case, they never raised these with Judge

20    O'Sullivan.  In the second case, I don't know when you talk

21    about Magistrate Judge O'Sullivan having raised it, I'm not --

22    procedurally that's a little bit unusual.  I'm not sure that

23    necessarily precludes them, but he raised it, he ruled on it,

24    and he addressed it properly.

25        In fact, he talked about their declaration from

1    Levi -- from Professor Levi and said, This -- there's --

2    there's no actual allegation -- no actual evidence here of

3    either fraud or corruption.  In other words, he looked at it

4    and said, The guy says, I felt threatened.  But when I look at

5    the provisions in here, it doesn't look threatening.  And he

6    says, I think they wanted to pay me money.  But when I look in

7    here, he never says somebody offered to give me money.

8        We submitted the Shaya declaration to clear that up

9    and to say there was no fraud, there was no coercion.  In fact,

10   this guy kept contacting our per -- you know, the -- kept

11   contacting Uzi Shaya afterwards, inconsistent with somebody

12   who's feeling threatened or -- or, you know, defrauded in some

13   sort of a way.

14        But, in any event, the judge examined it, he ruled

15   upon it.  They haven't established the basis upon which, you

16   know, his ruling was somehow, kind of -- was anyhow clearly

17   erroneous.

18        If I could have just one second to make sure I'm

19   not -- um, oh -- the only other thing I did want to raise --

20        Mr. Chaiken corrected himself.  He referred to, for a

21   second, Professor Levi as a witness, and then he said as a

22   potential witness.  Here's the reason:  He's never been

23   deposed, no one asked to depose him, he's not on anyone's

24   witness list, he's not a witness, he's never been a witness.

25   So that's just not an accurate statement.

1       If -- if they had -- there isn't a person in Italy who

2  was deposed.  They got him to come over to the Dominican

3  Republic, and Mr. Annesser and I had a nice trip to the

4  Dominican Republic to depose him, Professor Levi.

5       So that's again a complete red herring to say it was

6  intent to, kind of, interfere at all with anything that was

7  going on before this Court.  It was actually an effort to try

8  to, kind of, have some engagement with him.

9       But, in any event, I can get into the details on it.

10  I don't think it's before your Court because it was never

11  before Magistrate Judge O'Sullivan.  Thank you, Your Honor.

12       THE COURT:  Thank you.

13       Mr. Chaiken.

14       MR. CHAIKEN:  Yes, Your Honor.  Real briefly, with

15  respect to the 14-day requirement, we are within 14 days of

16  Judge -- Magistrate Judge O'Sullivan denying our motion for

17  reconsideration.  We did first go to him, before we came to

18  you, specifically with respect to whether or not, at the

19  outset, this document should have been considered privileged at

20  all.  Now, if you just look at the transcript from the initial

21  hearing where this issue was raised, February 23, 2017, here,

22  and you can see what Magistrate Judge O'Sullivan considered.

23  And we think that you are entitled to do a *de novo* review to

24  see if he did, in fact, commit a clear error as respect to that

25  document.  So we would ask that you would look at what he

1   relied upon in making his ruling and just take a look at a

2   document and make your ruling, if you're going to limit it to

3   just that and that alone.

4          On reconsideration, what we asked the judge to

5   reconsider was the -- whether or not this document should be

6   considered privileged in the light of what we learned about

7   from -- from Professor Levi over in Italy.  Professor Levi was

8   identified not necessarily just by us, Professor Levi was

9   identified by the Defendants in their initial disclosure as

10  persons with knowledge regarding the facts of this case.  So to

11  say that he's not on anybody's list or is not a potential

12  witness, that's not true.  He certainly is a potential witness

13  in this case and, in fact, may come to testify in the case.

14         Going into the details of what happened here, now, if

15  you look at the affidavit of Uzi Shaya -- and I may have

16  butchered his name as well -- but again that affidavit I think

17  makes this more murky.  Clearly, Uzi Shaya says, I am working

18  for Mr. Zalli, who's the person who Tom Darden communicated

19  with.  And he says, I've been hired -- I've been retained by

20  him.  And, in fact, I went to Mr. Levi, and I asked him to

21  perform services in exchange for money.  That's Paragraphs 2

22  and Paragraphs 4 of his affidavit that's before you.

23         That -- that issue was brought before the Magistrate

24  Judge O'Sullivan, and I think you can consider that as well, in

25  determining whether or not this initial communication should be

 1    considered privileged.

 2         One -- I think I will just leave it at that.

 3         Thank you, Your Honor.

 4         MR. PACE:  May I say just two things?  One is,

 5    Mr. Chaiken is inaccurate.  Mr. -- Professor Levi was not

 6    identified in initial disclosures; that's where you say who

 7    might be a witness.  He was identifying in interrogatories

 8    persons who have knowledge, period.  So there's a big

 9    difference.  If you're asked, tell me anyone who might have

10    knowledge, you have to provide it.  If you're -- remember in

11    your initial disclosure you're saying these are potential

12    witnesses.  Neither side identified him as a potential witness.

13    So that's a correction on that.

14         The second is, again as I note, there's a huge time

15    difference between these.  You're talking about a November 2015

16    e-mail.  They're trying to talk about Professor Levi talking

17    about activities that occurred in June and July of 2016, after

18    the litigation began, and after which point you could actually

19    have investigative services -- I'm not going to get into the

20    whole work product issue, but I'm just saying the two are very

21    distinct.  Judge -- you know -- Magistrate Judge O'Sullivan did

22    look at the -- he had read the Levi declaration, and expressed

23    his views on it personally there, but then said, you know, A,

24    that doesn't demonstrate anything to me in terms of some kind

25    of fraud on the court, fraud in the litigation, but also it

```
 1   doesn't change my view, original view from the 23rd, which is
 2   that this is privileged.
 3          Last point is, I don't think a reconsideration is
 4   actually -- changes the time clock in term -- because then you
 5   can always just, kind of, re-raise something before a
 6   magistrate judge and reset your time clock under Rule 72.
 7          Thank you, Your Honor.
 8      (Pause in proceedings.)
 9          THE COURT:  I'm not comfortable in reversing the
10   Magistrate Judge.  I'm not even sure how or why I would.
11   Today, the Plaintiffs are making essentially two arguments.
12   And the first is that the magistrate judge committed error in
13   finding this document to be protected by the attorney/client
14   privilege and, in reliance, bring me a copy of my own decision
15   in In re Denture Cream, address the five relevant factors that
16   I identified there, and yet concede that those factors were not
17   brought to the attention of the magistrate judge, nor was he
18   asked to make a ruling with respect to those five.  The issue
19   was not presented in that fashion to the magistrate judge.
20          Alternatively, Plaintiffs say there's a crime fraud
21   exception here, so even if there is an attorney/client
22   privilege, that Defendants can't avail themselves of that to
23   the extent the document is perpetrating a fraud.  The issue is
24   not briefed in the appeal.  Not in Docket Entry 217.  And I
25   don't think the issue was presented to the magistrate judge in
```

1   that fashion either.  Certainly, it was not presented to him in

2   that fashion in the hearing that was held on February 23rd.

3   Docket Entry 226-4 contains the transcript of what was

4   discussed and that's not there.

5           And the only reference to any crime fraud exception,

6   as -- as we've all come to recognize, appears in Docket

7   Entry 226-5, the hearing held on March 25th, which Magistrate

8   Judge O'Sullivan who raises it as a potential issue but it was

9   not advanced as such by the Plaintiff, nor was he briefed on

10  its application in that context.

11          So I will be denying the appeal, and as I said before,

12  I think the better course, the more appropriate course to

13  follow is to present the matter to the magistrate judge in the

14  fashion in which you are presenting it to me now, and that

15  would be -- that would be what fairness dictates and proper

16  procedure dictates.

17          Is there anything additional?

18          MR. CHAIKEN:  Your Honor, does the Court grant us

19  leave to bring these issues before Magistrate Judge O'Sullivan?

20          THE COURT:  You're always free to present matters to

21  his -- to his consideration.

22          MR. CHAIKEN:  And nothing further, Your Honor.

23          THE COURT:  All right.

24          MR. PACE:  Your Honor, I'm sorry.  I do have one thing

25  further only in that context.

1        THE COURT:  Um-hmm.

2        MR. PACE:  Which is I just don't want this to be

3    something they keep re-raising in front of Magistrate Judge

4    O'Sullivan, so I'm not clear.  I know they have a motion for

5    sanctions that's separate that has been sent to Magistrate

6    Judge O'Sullivan, but I assume that at least the issue of

7    whether this document is privileged or not has now been

8    resolved.

9        THE COURT:  No, it hasn't.  The Plaintiffs are

10   dissatisfied.  They're dissatisfied with the Magistrate Judge's

11   ruling, and they're equally dissatisfied with me denying their

12   appeal.  And as I've said to them and I think my remarks have

13   made clear, their recourse is to go back to that

14   decision-maker.

15       MR. PACE:  I understand --

16       THE COURT:  And present to him the issues they want

17   decided in the proper context with the proper legal citations

18   to authority and the proper written legal analysis.

19       MR. PACE:  I understand.  Thank you, Your Honor.

20       THE COURT:  Thank you.

21       MR. CHAIKEN:  Thank you for your time, Your Honor.

22       THE COURT:  Thank you.  You all have a good afternoon.

23       (The proceedings concluded at 2:39 p.m.)

24

25

1          **C E R T I F I C A T E**

2

   I hereby certify that the foregoing is an

3

accurate transcription of the proceedings in the

4

above-entitled matter.

5

6

7   __04/10/17__
     DATE          STEPHANIE A. McCARN, RPR

8                 Official United States Court Reporter
                400 North Miami Avenue, Twelfth Floor

9                 Miami, Florida 33128
                (305) 523-5518

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25