```
 1                    UNITED STATES DISTRICT COURT
                      SOUTHERN DISTRICT OF FLORIDA
 2                          MIAMI DIVISION
                        CASE NO. 16-CV-21199-CMA
 3

 4    ANDREA ROSSI, et al.,              Miami, Florida

 5             Plaintiffs,               March 24, 2017

 6        vs.                            9:37 a.m. to 10:45 a.m.

 7    THOMAS DARDEN, et al.,             Courtroom 12-2

 8             Defendants.               (Pages 1 to 60)

 9    _____

                             MOTION HEARING
10            BEFORE THE HONORABLE CECILIA M. ALTONAGA,
                     UNITED STATES DISTRICT JUDGE
11

12    APPEARANCES:

      FOR THE PLAINTIFFS:    JOHN ANNESSER, ESQ.
13                           Perlman, Bajandas, Yevoli & Albright, P.L.
                             283 Catalonia Avenue, Suite 200
14                           Coral Gables, FL 33134
                             (305) 377-0086
15                           Jannesser@pbyalaw.com

16    FOR THE DEFENDANTS:    CHRISTOPHER R. J. PACE, ESQ.
                             Jones Day
17                           600 Brickell Avenue, Suite 3300
                             Brickell World Plaza
18                           Miami, FL 33131
                             (305) 714-9700
19                           Crjpace@jonesday.com

20                           CHRISTOPHER M. LOMAX, ESQ.
                             Jones Day
21                           600 Brickell Avenue, Suite 3300
                             Brickell World Plaza
22                           Miami, FL 33131
                             (305) 714-9700
23                           Clomax@jonesday.com

24

25
```

```
 1      REPORTED BY:              STEPHANIE A. McCARN, RPR
                                  Official Court Reporter
 2                                400 North Miami Avenue
                                  Twelfth Floor
 3                                Miami, Florida 33128
                                  (305) 523-5518
 4                                Stephanie_McCarn@flsd.uscourts.gov

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                        I N D E X

 2                         WITNESSES

 3
    WITNESSES FOR THE PLAINTIFFS:                    Page
 4                                                    --

 5

 6
    WITNESSES FOR THE DEFENDANTS:                    Page
 7                                                    --

 8

 9  EXHIBITS IN EVIDENCE          PRE    MARKED    ADMITTED

10  Plaintiff's Exhibit No.      --       --         --

11  Defendant's Exhibit No.      --       --         --

12

13

14

15

16

17                         MISCELLANEOUS

18
    Proceedings.......................................  Page
19                                                       4
    Court Reporter's Certificate.....................   51
20

21

22

23

24

25
```

```
 1          (The following proceedings were held at 9:37 a.m.)

 2              THE COURT:  Andrea Rossi, Leonardo Corporation v.

 3    Thomas Darden.

 4              MR. ANNESSER:  Good morning, Your Honor.

 5              THE COURT:  Good morning.

 6              MR. PACE:  Good morning, Your Honor.

 7              THE COURT:  For Plaintiffs, if you'll please state

 8    your appearances.

 9              MR. ANNESSER:  Yes, Your Honor.  John Annesser, on

10    behalf of the Plaintiffs.  With me today is Dr. Rossi, my

11    client.

12              THE COURT:  Thank you.  Good morning.

13              And for Defense.

14              MR. PACE:  Good morning, Your Honor.  Chris Pace and

15    Chris Lomax from Jones Day, on behalf of the Defendants.

16              THE COURT:  Please, be seated gentlemen.

17              MR. PACE:  Thank you.

18              THE COURT:  Quite a flurry of activity lately.  I

19    don't want to be entering any more orders denying motions to

20    seal, so, please, don't seek to file anything under seal.  All

21    right?

22              MR. ANNESSER:  Your Honor, and if I may, I apologize

23    for that.  Our protective order that was entered by O'Sullivan

24    in this case had required that for anything that had been

25    designated as confidential or highly confidential, so to comply
```

```
 1    with that, I believe both parties have been filing under seal
 2    notwithstanding the fact, and we understand this Courts
 3    position.  With that --
 4              THE COURT:  Right.  And I think that protective order
 5    was something you all proposed, and the language was something
 6    you all included.
 7              MR. ANNESSER:  Yes, Your Honor.
 8              MR. PACE:  I think it said it had to be in conform if
 9    consistent with the local rules, so I don't agree with Mr.
10    Annesser, but we get the Court's message.  Your Honor, we
11    understand.
12              THE COURT:  All right.  So let's get that out of the
13    way.
14              Next, we have a more recent appeal, this one filed by
15    the Plaintiff of Judge O'Sullivan's ruling regarding some
16    privileged communications, I'm referring to Docket Entry 217,
17    which I won't be addressing today certainly, since that was
18    just filed yesterday, but let's address it next week.  So I
19    don't know if you have your calendars available, and I can
20    bring you in for a hearing on that.  I'm doing these on short
21    order because you all need the discovery to get trial-ready,
22    and discovery has long been closed.
23              So what day would you all like to come in to address
24    Plaintiff's appeal of that order?
25              MR. PACE:  Your Honor, I think just for the Defense, I
```

```
 1    do have to be in a meeting in Washington, D.C. on the 29th, so
 2    that's the Wednesday and was planning to -- it's the Jones Day
 3    heads of litigation all coming to D.C., so I was actually
 4    planning to stay for the dinner that night.  So I guess, I
 5    would ask if it not be Wednesday or Thursday.  I could do
 6    Monday, Tuesday, and it looks -- it looks like Friday though I
 7    have something.
 8              THE COURT:  We could do it Tuesday afternoon, if
 9    that's convenient for everyone?
10              MR. ANNESSER:  Yes, Your Honor.  It is convenient for
11    the Plaintiffs.
12              MR. PACE:  That would be perfect for us, as well, Your
13    Honor.
14              THE COURT:  Okay.  So we'll set it for 2 o'clock on
15    Tuesday, March 28.
16              All right.  So let's address this Defendant's appeal,
17    the amended appeal.
18              MR. PACE:  Thank you, Your Honor.
19              THE COURT:  All right.
20              MR. PACE:  If I can -- actually I'm going -- I'm
21    sorry.  I'm going to step up to the podium, I always feel a
22    little bit more comfortable there.
23              THE COURT:  All right.
24              MR. PACE:  So if I may provide some context to start,
25    Your Honor?  The -- this case involved -- part of what this
```

1    case involved are some individuals who got -- formed a company,

2    got involved in looking at alternative technology and investing

3    in alternative technology.  They had made their money, their

4    wealth primarily through real estate investing; so did not

5    have -- were not steeped in intellectual property law and how

6    those -- and how that worked, how the protection of

7    intellectual property was important to things like, you know,

8    these kind of, you know, new researched developments.

9              They retained a firm called Deep River Investors to --

10   that had both that knowledge, why is it important to have

11   patents, trade secret protections, things like that of your

12   intellectual property, as well as they were charged with kind

13   of developing the knowledge about this field called -- it's

14   called Low Energy Nuclear Reaction.  It's this idea that you

15   can, you know, get more energy than you put in out of, you

16   know, certain alternative testing.  It's an attempt to find

17   alternative fuels, in a sense.

18             So they had a firm called Deep River Ventures that

19   was -- their job was both to help them understand, for example,

20   the patent lawyers, right, you know, when the real estate

21   people sit down with the patent lawyers, and the patent lawyers

22   try to tell them what prior art is, can be some kind of, you

23   know, confusion there, they're translators in that sense.  But

24   also, that they were people who knew the industry and were

25   finding out about the industry.  So for example, if you're

1    going to investigate Mr. Smith, you may want to know that

2    Mr. Jones is doing the exact same research and is funded by,

3    you know, is funded by Exxon -- right, I mean, you know -- or

4    funded by Boeing, or something like that.  You might say, hmm,

5    maybe Mr. Smith isn't the best investment.  That's the kind of

6    a role that Deep River Ventures was in.

7            In connection with the privilege log, there were a

8    number -- not surprisingly -- there were a number of

9    communications between the patent lawyers, Deep River Ventures

10   and different defendants, primarily Industrial Heat.

11   Plaintiffs en masse challenged that.  They said Dewey Weaver,

12   who is the main person behind Deep River Ventures -- so when I

13   refer to Dewey Weaver, I'm referring to this consultant -- if

14   Dewey Weaver was involved at all, it can't be privileged, the

15   idea that he's like a third party, you know, absent from the

16   situation.  And it was -- again it was kind of a categorical.

17   It wasn't based on any particular communication.  It was his

18   name showed up in the privilege log.  There can't be a

19   privilege.

20           The issue was before Judge O'Sullivan a couple of

21   times, and finally the judge asked for briefing on a particular

22   issue.  So the judge asked that -- if I can, I'm reading from

23   the transcript, which is attached -- we have attached as

24   Exhibit E, I believe, to our appeal.

25           This is my colleague and friend Mr. Lomax speaking.

```
 1    He says, Just to understand Your Honor's ruling, then I think

 2    part of the issue is that we're arguing that Dewey Weaver --

 3    that Dewey Weaver, in any context whatever -- whatsoever, in

 4    Deep River Ventures could not be involved in communications.

 5            And then Judge O'Sullivan steps in and says, I guess

 6    you're going to have to brief that because I do not know what

 7    this is off the top of my head.  It sounds like the contract

 8    has dueling provisions.  I'll get to the contract in a second.

 9            And so this is what -- this is what prompted the

10    briefing issue.  We viewed the briefing as this kind of -- the

11    categorical challenge, so let's address this, you know, across

12    the category.  And as we explained to the judge in our

13    subsequent briefing to Judge O'Sullivan, said, well, there's

14    three ways to look at this.  First is, in connection with these

15    patent law firms, in fact, there's a dual engagement.  So the

16    patent law firms gave the engagement letters, they actually

17    engaged Industrial Heat and Deep River Ventures; so there was a

18    dual engagement.  So they were both clients, so in that

19    sense --

20            THE COURT:  Wait, but who engaged who?  The patent law

21    firms --

22            MR. PACE:  Sorry.  You're right, Your Honor, I just

23    said it the wrong way.

24            THE COURT:  Right.  It's difficult when you use "they"

25    without identifying who the "they" is.
```

1          MR. PACE:  I apologize, Your Honor.  And I think I

2     gave it to you in the wrong order, as well.  Both Industrial

3     Heat and Deep River Ventures engaged the two patent firms.

4          THE COURT:  So Industrial Heat, one of the Defendants

5     and a nonparty in this case, engaged who?

6          MR. PACE:  There's two patent law firms, Myers Bigel

7     and a firm called NK Patent Law.

8          THE COURT:  Okay.

9          MR. PACE:  So --

10          THE COURT:  So we have a Defendant, Industrial Heat,

11     and a nonparty who retained two patent law firms.

12          MR. PACE:  Correct.  And separate engagement letters

13     for each.  So there's one for Myers Bigel; there's one for

14     NK Patent Law.

15          So we said, well, as to those communications, the

16     involvement of this nonparty should not be an issue because

17     it's actually a client.

18          Second category is work product.  And we said, well,

19     in that context, it doesn't matter whether it's -- you know,

20     something protected for work product isn't protected because it

21     has to, you know -- let me take a step back.  Whether a

22     nonparty is involved in a lawyer-party communication doesn't

23     destroy the work product privilege, right, as long as it is not

24     your adversary.

25          And then in the third category, we address that -- and

```
 1    again, remember these are all being done kind of categorical.
 2    There's not a particular document being challenged in this
 3    context.  I'll raise that separately for a second.  But in the
 4    third we looked at, we explained to the judge why the
 5    engagement letter between Deep River Ventures -- and I am not
 6    talking about the law firm -- so between Deep River Ventures
 7    and Industrial Heat, that it allowed them to do--
 8              THE COURT:  Them -- who them?
 9              MR. PACE:  I'm sorry.  It allowed Deep River Ventures
10    to do a lot of work, it required them or requested them to do a
11    lot of work, patent-related in the intellectual property area.
12    The reason that came up is there is one provision in that
13    agreement that says, you're not our agent.  And what we said
14    is, okay, that's one provision over here, which we really think
15    is kind of for employment law purposes, but here is the scope
16    of their work.  Their work involves them informing you about
17    this field, what's going on in this field, working with the
18    lawyers as contemplated by the agreement.
19              So, you know, it doesn't matter what label you want to
20    put on them, agent, representative, relevant person to be in
21    the room.  In any event, that doesn't destroy the privilege.
22              THE COURT:  Which privilege?  The work product?
23              MR. PACE:  Well, it wouldn't destroy work product.  It
24    also wouldn't destroy the attorney/client.  Even if it was --
25    even if it just was between let's say a different law firm.  So
```

```
 1    there's -- there is a third law firm that comes into play.
 2    It's -- that was not one that Deep River Ventures had engaged.
 3    So if it's communications with that law firm, that Deep River
 4    Ventures is involved with Industrial Heat doesn't automatically
 5    destroy the privilege.  That's the -- that's the level that,
 6    from our view, we were discussing it because we were -- there
 7    wasn't a particular document being challenged.
 8              In fact, separately there was from Judge O'Sullivan,
 9    he did ask us to re-review the documents, in light of he had
10    made -- he looked at two documents and said, this one's
11    privileged, this one's not.  I want you to go back and
12    re-review, and ones that are like the "not," I want you to
13    produce.  And I have a copy of the "not" one, if you want to
14    see that.  So there was a direction for an individual view,
15    that was done -- that was done actually back in February.  That
16    was done, I know, prior to the 21st of February, I think
17    somewhere around February 16th.
18              So come into our hearing the other day we addressed
19    these categories because again there's particular documents
20    aren't being challenged.  There's not like, look at entry X or
21    entry Y.  It's Deep River involved can't be privileged.  And to
22    an extent the judge's ruling is based on one of those
23    categorical issues.  We disagree with the judge's order.  To
24    the extent the judge's order was based on, you had to come in
25    here and prove it on a document-by-document basis.
```

```
 1            THE COURT:  Well, he didn't do that, did he?
 2            MR. PACE:  No.  I don't think he did.
 3            THE COURT:  Right.
 4            MR. PACE:  The only reason I say that is, if you
 5   look --
 6            THE COURT:  I'm not going to do it in the first
 7   instance, he would.
 8            MR. PACE:  I agree, Your Honor.
 9            THE COURT:  Right.
10            MR. PACE:  And what I'm saying is the ruling is a
11   little bit unclear because what he said is --
12            THE COURT:  If it's unclear, why didn't you go back to
13   him for clarification?
14            MR. PACE:  I'm --
15            THE COURT:  That's not my purpose.
16            MR. PACE:  Your Honor, I appreciate that.  The context
17   is the judge ruled -- on Thursday -- on Thursday, gave us till
18   Monday to either produce all the documents or appeal.
19            THE COURT:  I saw that.
20            MR. PACE:  I --
21            THE COURT:  But you're not clear on the scope of his
22   order, right?
23            MR. PACE:  Well, no.  No, I'm not.  And I apologize
24   for not.  I mean --
25            THE COURT:  Oh.  No, no.  I don't need an apology.
```

```
 1    But that's not the purpose of an appeal from a magistrate

 2    judge's discovery order to get me to clarify the order.

 3              MR. PACE:  Well, if I can, Your Honor?  I mean,

 4    certainly, one of the things I'm concerned is just because I'm

 5    not clear doesn't mean that everybody else -- that somebody is

 6    not going to say it was clear you should have understood what I

 7    ruled.  The judge did enter a ruling saying you have to produce

 8    all of these documents.

 9              THE COURT:  Right.

10              MR. PACE:  I guess what I'm saying is, it's one of two

11    alternatives, I think either of which would be -- would be

12    incorrect and would require it to go back to the magistrate

13    judge.  If it was -- if it was on the substance of any of these

14    categorical issues, I think that for the reasons I've said, we

15    are correct on the categorical issues.

16              If it was you needed to -- you didn't come in here and

17    show me on a document-by-document basis that these are

18    privileged, what I would say is that wasn't before the court on

19    that day.  And we're entitled to go -- it should be reversed,

20    and the judge should have to decide how he's going to tackle

21    that if that's the way he wants it to be done.  But --

22              THE COURT:  So what are you asking of me?  Is this,

23    there are these two possibilities.

24              MR. PACE:  Well, he's -- I guess I'm asking you, you

25    can send it back to the magistrate judge --
```

1        THE COURT:  Or you can go right back to him on a

2   motion to reconsider for clarification.

3        MR. PACE:  Well, he -- Your Honor, in the time period

4   he gave us, he ruled against us, and told us you either have to

5   produce all of these things -- I mean --

6        THE COURT:  Right.

7        MR. PACE:  -- I'm dealing with -- we were dealing with

8   privilege -- I apologize if I did not handle this the best way

9   possible, Your Honor.  But we were dealing with privilege

10  issues.  We didn't want to destroy the privilege.  We're

11  concerned what if -- you know, once you produce it, what's

12  going to happen?  This is Thursday, we have the summary

13  judgment motions due the following week, we have to get this

14  appeal done by Monday.  We pursued the appeal because we viewed

15  it as either way the judge is incorrect, either the judge was

16  making a categorical ruling and that's not correct, or the

17  judge was making -- if -- if we're wrong about it and the judge

18  was making a document-by-document ruling that too would be

19  incorrect.

20        THE COURT:  Why would it be incorrect on a

21  document-by-document basis if you never even addressed this

22  matter on a document-by-document basis?

23        MR. PACE:  Because we weren't required to address it

24  at that --

25        THE COURT:  Not that you weren't required to, but you

1     certainly had the opportunity to, right?

2             MR. PACE:  Well, I guess, at any --

3             THE COURT:  In fact, it behooves you to -- it behooves

4     a litigant asserting a privilege to create that privilege log

5     and have a basis why you're withholding every single document.

6             MR. PACE:  We did provide a privilege log, Your Honor.

7             THE COURT:  All right.  And did you indicate there the

8     basis for the withholding of each document?

9             MR. PACE:  There is.  The privilege log does contain

10    that.  And I think as Your Honor ruled -- one of my favorite

11    cases just because of my involvement, was *In re:  Denture*

12    *Cream*, was that you can't just kind of categorically attack it.

13    So --

14            THE COURT:  Right.

15            MR. PACE:  -- I apologize.  I should have explained

16    more context.  These were listed on a privilege log.  The

17    privilege log was provided to the other side.  I have a copy of

18    those entries for our privilege log.  I have a copy of their

19    privilege log.  You can see they're pretty similar.

20            We're not -- can somebody challenge particular

21    documents?  They can.  We're not saying that.

22            But what we're saying is if you challenge it on a

23    category basis, right, you say anything involving Deep River

24    Ventures can't be privileged, then you're not challenging

25    individual documents.  You're challenging kind of concepts,

```
 1    right?  You say -- an easy example would be, you know, you had
 2    the janitor involved, anything where you listed the janitor as
 3    involved in the communications, none of those can be
 4    privileged.  Maybe you can challenge that on a
 5    category-by-category basis.  I'm allowed to respond and
 6    explain, well, I'm sorry, you actually -- the person you
 7    identified is a vice president of the company not a janitor, so
 8    you're wrong.  That challenge doesn't require me to then go in
 9    and say let me walk you through each document.
10         And in fact, there was an actual document-by-document
11    review that the judge, in a different context requested and was
12    done.  He didn't ask it to be done in court.  He didn't want it
13    to be.  I more than understand that.  But he did ask us to
14    re-review documents based on a privilege ruling he made on two
15    documents, and we did that.  And that's not the subject of the
16    appeal.  That's not the thing that was being challenged.
17         So I think the judge ruled on the category basis.  And
18    on the category basis for the reasons I've stated, I think that
19    the judge was -- the judge ruled incorrectly.
20         THE COURT:  Okay.  So what is his ruling?
21         MR. PACE:  His ruling would then be, that whenever
22    Deep River Ventures was involved, because he did it across the
23    span, we have to produce all those documents.
24         THE COURT:  On the basis that what?
25         MR. PACE:  That there cannot be a privilege or work
```

```
 1    product simply because Deep River Ventures was involved.
 2              THE COURT:  There could be no assertion of the
 3    attorney/client or work product privilege?
 4              MR. PACE:  Correct.  And I even asked the extension on
 5    the work product because when he first ruled, he mentioned
 6    attorney/client, and I stood up and said, Your Honor, I wanted
 7    to understand this applied to work product as well, at least to
 8    the extent they were challenging work product, and he said it
 9    did.  So it was a categorical ruling.
10              THE COURT:  All right.
11              MR. PACE:  And from what we've argued here in our
12    appeal, I don't think there can be a categorical ruling against
13    the involvement of Deep River Ventures.  It's simply Deep River
14    Ventures involved in what would otherwise be a protected
15    communication.  Whether by attorney/client or by work product
16    doesn't automatically destroy either the attorney/client
17    privilege or the work product.
18              THE COURT:  And the reason why the magistrate judge
19    found that the privilege was destroyed by Deep River's
20    involvement is what?
21              MR. PACE:  The one reason that the magistrate judge
22    stated was that there's kind of agency language -- kind of, I
23    apologize.
24              THE COURT:  There was direct language saying that Deep
25    River is not an agent.
```

```
 1              MR. PACE:  There was language in the agreement stating
 2     that Deep River was not an agent.
 3              THE COURT:  Right.
 4              MR. PACE:  So it was the--
 5              THE COURT:  And so what evidence is there -- did you
 6     present the magistrate judge, that notwithstanding the
 7     agreement's direct language about the absence of an agency
 8     relationship, there in fact was one?
 9              MR. PACE:  If I can answer that in two ways, Your
10     Honor?  The first way is, there isn't a requirement for an
11     agency relationship.  That somebody is involved helping with
12     the exchange of legal advice from, you know, nonlawyer to
13     lawyer, that person doesn't have to be an agent.
14              Now, there may be cases that will kind of casually
15     refer to say -- refer these people as agents in some capacity,
16     but conceptionally from the law, it doesn't matter.  If I
17     need -- just for example, I will give you an easy example, I
18     need an interpreter.  I mean, that person may not for all
19     purposes be my agent, but if I'm speaking to someone who only
20     speaks Spanish, and my Spanish is abysmal, and I ask for
21     somebody -- I can ask for somebody off the street, I mean, if
22     it's needed, I, as the lawyer, to communicate with this
23     individual.  So the agency issue is whether somebody says I'm
24     your agent or not is irrelevant.  That's part of it.  The other
25     part of it is, you look at the scope of the responsibilities
```

1    and the duties.  From the legal stand point, that's what you

2    should be looking at.

3            And here, they were broadly engaged to provide

4    assistance to Industrial Heat in connection with its

5    intellectual property portfolio and protection.  And so in that

6    context -- and that's the reason why they show up on these

7    communications with the patent law firms.  I mean, if Your

8    Honor wants, I can show you the one communication that the

9    judge -- it is a one page e-mail -- where the judge said that

10   this is not privileged, and I think it gives you a pretty good

11   idea of why these people do and why we actually think that the

12   document is privileged, but that's a different issue.

13           Yeah.  It talks about a meeting that was had between

14   Industrial Heat, Deep River Ventures, and one of the law firms

15   called Myers Bigel, and a strategy that was set during the

16   course of that meeting.  That's what these folks do.  And that

17   was what, you know, the judge had before the judge on the

18   record.  So that's our view in terms of why there cannot be a

19   categorical ruling.

20           I'm happy to continue but --

21           THE COURT:  It's all right.  Why don't I give

22   Mr. Annesser a chance to respond then?  Thank you.

23           MR. ANNESSER:  Again, good morning, Your Honor.

24           THE COURT:  Good morning.

25           MR. ANNESSER:  To provide a supplemental background in

1    terms of -- in addition to what Mr. Pace has told you.

2    There're very limited issues here, notwithstanding the fact

3    that Mr. Pace classifies this as a broad paint -- or a broad

4    stroke of the brush.

5         In particular, the documents that are responsive with

6    respect to Mr. Weaver, as listed on the privilege log or

7    otherwise, have been limited in this case to communications

8    involving the E-Cat, and the E-Cat IP, Dr. Rossi and Leonardo

9    Corporation; so two of the Plaintiffs as well as the underlying

10   subject matter of the litigation.  So that had already been

11   limited.  Anything that appears on a privilege log would have

12   to fall within those categories, dealing with those issues.

13        Specifically, the joint representation agreements upon

14   which the Defendants rely to support their claims in this

15   matter -- or I'm sorry -- to support their claim of privilege

16   in this matter relates solely to intellectual property, number

17   one, and the first one was entered into August 26th, 2013, with

18   I believe it was Myers Bigel.  As of August 26th, 2013 -- I'm

19   sorry -- and that was entered into between Industrial Heat and

20   purportedly Deep River Ventures.  As of that date, Industrial

21   Heat nor Deep River Ventures had any interest whatsoever in the

22   E-Cat or E-Cat IP or any license agreement with Dr. Rossi.  By

23   that point in time the license agreement had been assigned to

24   the defendant, IPH International BV.  As such the

25   communications should be limited at that point in time to

```
 1    communicate -- well, anything regarding to the E-Cat had
 2    nothing to do with the license holder, had nothing to do with
 3    Industrial Heat.  That had all been assigned, that's notable.
 4            The second agreement, the NK Patent Law that they rely
 5    upon was entered into in February -- I'm sorry --
 6    February 10th, 2014.  And again at that point in time
 7    Industrial Heat nor Deep River Ventures had anything to do with
 8    the E-Cat or E-Cat IP.  So to the extent they had
 9    communications regarding other matters, those have already been
10    excluded by the court's order because we're only talking about
11    things dealing with the E-Cat, E-Cat IP.
12            To go on further, at the hearing on this matter before
13    Judge O'Sullivan, in fact he had ordered the Defendants to come
14    with their documents for review.  Instead of bringing all their
15    documents, they brought a sampling.  They brought a stack I
16    would guess 100, 150 pages and presented that to Judge
17    O'Sullivan to review.  He starts looking through and one after
18    the next he goes, this is business, this is business, and I
19    don't know the documents exactly that he examined nor would I
20    because they were presented to him for an *in camera* inspection.
21    We would have been happy to have an *in camera* inspection of
22    everything.
23            But what it came down to at the end was the nature of
24    Deep River Ventures and Dewey Weaver's relationship with the
25    parties.  When we look at that directly, it becomes apparent it
```

```
 1    would be the same as if I sent attorney/client privileged

 2    information to my child's caretaker.  He was not involved in

 3    those aspects regarding the E-Cat or E-Cat IP, to the extent he

 4    was involved with Industrial Heat.  Again he wasn't employed,

 5    he had no agreement with IPH International BV.  There's some

 6    claims now that IH may have acted as an agent for IPH.  But

 7    specifically in the agreement between Industrial Heat and

 8    Mr. Weaver, it says explicitly they shall not be an agent.

 9    Could not be clearer in that respect.

10            So the communications are broad -- although it is a

11    broad-brush stroke to consider them together as a whole, I

12    think the Court can properly, to save the time of the Court for

13    this many e-mails, say, no, this guy is not related, they have

14    not met their burden of showing that in any way he could have

15    been relevant to legal communications or legal advice that's

16    being allegedly rendered.

17            On top of that, there -- you know, there's case law

18    going back and forth, but there's numerous documents.  They're

19    solely either between the parties and Mr. Weaver, and/or

20    Mr. Weaver and his partner, Mr. Morris in Deep River Ventures,

21    that have no attorney copied on them.  They're not

22    forwarding --

23            THE COURT:  Are those documents part of the ones at

24    issue here?

25            MR. ANNESSER:  Yes, Your Honor.  Yes, Your Honor.
```

```
 1    They have claimed privilege on I believe somewhere in the
 2    neighborhood of 5 to 700 documents specifically with Mr. Weaver
 3    on it.  A total of almost 5,000 documents regarding other
 4    things.  The documents that they've disclosed appear all to be
 5    in a time period prior to any concept of litigation in this
 6    case.
 7            To the extent that they're relying on work product,
 8    the case load is very clear to the extent that there has to be
 9    some sort of anticipation of litigation.  Litigation doesn't
10    have to have started, but they've got to be anticipating it.
11    The communications go all the way back to 2013, where if they
12    were anticipating litigation at that point in time, certainly
13    they could come in here and show that.
14            Judge O'Sullivan's ruling was predicated on the fact
15    they failed to make any showing that these documents were
16    privileged.  They failed to bring someone in.  They certainly
17    could have brought every document and said, Judge, look at
18    these and this why on each one.  In fact, the court told
19    them -- didn't tell us to brief it, they have the burden --
20    told them to brief this for me.  Tell me why I should apply the
21    privilege -- the privilege to these documents.  And they did
22    their brief, they approached it the way that they thought best
23    fit, which was not to go through each document.
24            We certainly can't bear the burden of going through
25    800 documents or 700 documents, whatever it is, that we've
```

1    never seen.  The descriptions on them are often very broad.

2    There's actually descriptions for documents between Mr. Weaver

3    and Mr. Morris where it says attorney/client -- or

4    communications with attorneys, and there's no attorney copied

5    on it.  So certainly we can't bear the burden of having to show

6    that privilege doesn't apply where we can't see the document

7    itself.

8            So Judge O'Sullivan's ruling was predicated on the

9    fact that they made -- that they failed to make any showing

10   whatsoever that they should be privileged.  They failed to show

11   that Mr. Weaver was at all an individual that may be involved

12   or may fall under the privilege within the case law at hand.

13   So just like, again, my child's caretaker, we don't have to

14   look document by document to know that somebody who has not got

15   a relationship at all, is not part of the privilege.

16           THE COURT:  But he does have a relation, right?

17           MR. ANNESSER:  But again the relationship --

18           THE COURT:  And Mr. Pace used the example of, you

19   know, if I have a third party like an interpreter, that doesn't

20   destroy the privilege, right?

21           MR. ANNESSER:  Your Honor, well, again there are

22   exceptions.  And certainly an interpreter is one of those

23   exceptions.  And if --

24           THE COURT:  Right.  So if there's somebody that's

25   involved because they're interpreting technical stuff, that

1    would kind of be similar to an interpreter.

2         MR. ANNESSER:  Well, again in the context of what

3    we're looking at, when we look at e-mails that have been

4    defined, at least as they have been represented to us, if they

5    were interpreting anything dealing with the E-Cat and E-Cat IP,

6    they had no rights to it whatsoever -- Industrial Heat being

7    they, I'm sorry -- Industrial Heat had no rights to the E-Cat

8    or E-Cat IP whatsoever after April of 2013.  So these

9    communications coming after that time period -- and, in fact,

10   before and after the joint representation agreement --

11   arguably, those shouldn't apply to the E-Cat or E-Cat IP in and

12   of itself.

13        We're very limited in terms of what --

14        THE COURT:  So you think that the documents that the

15   Defendants have identified as privileged are overly broad?  Is

16   that what you are saying?

17        MR. ANNESSER:  No, Your Honor.  In fact, what I'm

18   saying is to the extent documents existed outside of IPH, we

19   have to look at that with a different -- with a different shade

20   because they had no rights to these things.  They couldn't be

21   seeking legal advice as to their rights with the E-Cat IP when

22   they had none.

23        THE COURT:  Right.  But I thought they only had to

24   produce documents that related to that in the first instance.

25        MR. ANNESSER:  Yes, Your Honor.  So to the extent --

1    THE COURT:  So to the extent they're showing up on

2  this privilege log, they shouldn't even be there.  They're not

3  responsive.

4    MR. ANNESSER:  Well, Your Honor, I can't tell you

5  whether they inadvertently put something that doesn't have to

6  do with the e-mail --

7    THE COURT:  Nor can I.

8    MR. ANNESSER:  -- and the only way to do that would be

9  to look at them.  And again they were given the opportunity.

10  And they certainly could have come in to Judge O'Sullivan.  He

11  had told them to bring all the documents, although they decided

12  to bring a sampling.  They could have brought it.  It was their

13  burden to present to the magistrate their arguments which

14  arguably should have been on a e-mail-by-e-mail basis.  But the

15  court found that Mr. Weaver and his relationship did not

16  satisfy the requirements of one that would be covered under the

17  privilege.

18    THE COURT:  Because?

19    MR. ANNESSER:  I think there was a number of reasons,

20  but one is he was -- the contractual relationship between the

21  parties very clearly said he is not an agent or representative

22  or otherwise.  To the extent that the Defendants now argue,

23  that, well, we really can't look at a contractual relationship.

24  I think the best people to define the relationship are the two

25  parties in it, and the way they defined it was that there was

```
 1      no agency, there was no requirement.

 2           Now, certainly -- and this should be distinguished

 3      from other cases where, as an example, a lower-level or

 4      mid-level employee of a company is involved in dissipating the

 5      information that may have been provided or the advice that may

 6      have been provided by counsel.  This is different.  This is a

 7      separate company altogether that purportedly is relating solely

 8      to IT tasks for Industrial Heat that has no interest in the

 9      E-Cat at this time period.  So if they were dealing with the

10      E-Cat --

11           THE COURT:  Right.  So if they have no interest in the

12      E-Cat, why are these documents even identified as responsive to

13      your request for production?

14           MR. ANNESSER:  That is a very good question, Your

15      Honor.  And unfortunately I can't look at them to determine

16      that.  I assume that they have.  I assume that they've --

17           THE COURT:  That they have what?

18           MR. ANNESSER:  -- that they have gone through and made

19      sure that what they've disclosed on the privilege log is

20      responsive to our request because again they're the only ones

21      who can see it.  I can't tell the court.  But to the extent

22      that they relate to the E-Cat IP, they had no right to the

23      E-Cat IP, they couldn't have been doing anything in terms of

24      patenting or otherwise with the E-Cat IP because they had no

25      rights to it.  And Deep River Ventures has been shown in other
```

respects to have a relationship that's more attune to a bagman

in many respects to carry out tasks for Industrial Heat.  That

does not make them an essential part of an attorney/client

communication.

Again, the requirements for an attorney/client

communication are set forth in this Court's order in *In re*

*Denture Cream Products Liability Litigation,* 2012 U.S Dist.

LEXIS 151014.  And this Court found that the communication

would have to have been made or would not have been made but

for the contemplation of legal advice, number one; the employee

making the communication did so at the direction of his or her

corporate superior -- again, this is in the context of an

employee; the superior made the request to the employee as part

of the corporation's effort to secure legal advice or services;

the contents of the communication relates to the legal services

being rendered and the subject matter of the communication is

within the scope of the employee's duties; and the

communication is not disseminated beyond those persons who,

because of the corporate structure, need to know its contents.

And that's something they failed to make a showing of

before Magistrate O'Sullivan.  They failed to show that the

dispute -- that the disclosure to Mr. Weaver or Deep River

Ventures, Mr. Morris, was necessary in order to disseminate

that to other people within the corporation or to, in essence,

put in effect whatever legal advice they were seeking or

1    receiving.

2            And those failures to demonstrate that fall on the

3    Defendants.  And again they certainly had the opportunity to go

4    e-mail by e-mail and say look this one, this one, this one,

5    present it to the court as well as a copy of it for an *in

6    camera* review.  They failed to do that.  And now they take an

7    appeal and say, well, the judge was overbroad in his order.  It

8    should have been reviewed on a case-by-case basis.  The court

9    asked for them to bring it in.  They failed to do so.

10           THE COURT:  All right.

11           MR. ANNESSER:  Thanks, Your Honor.

12           THE COURT:  Thank you, Mr. Annesser.

13           Mr. Pace?

14           MR. PACE:  Thank you, Your Honor.  I would actually

15   like to start with that point.  Since -- sorry, I should be at

16   the -- I should know better than to speak before I get to a

17   microphone.

18           Let me start on that point.  This was the February 7th

19   hearing.  The judge talked about bringing the documents in.

20   Mr. Lomax brought in several thousand pages of the documents,

21   said, Judge, I don't know if you want to review all of them,

22   but I brought in several thousand pages of them.  Judge

23   O'Sullivan said quickly on the record, You're right I'm not

24   going to view all of that.  This was when there was a --

25   actually a broader set at issue, and then he looked at a few of

1    them.  So that's a nonissue.  That's a red herring.  That was

2    not the March hearing that occurred the other day.

3           Two, just so we're clear, because I realize I may have

4    not have said this and Mr. Annesser just said something that

5    was clearly incorrect, he said, the contract says they're not

6    an agent, representative, or otherwise.  The language we're

7    talking about is a provision in the contract that said they are

8    an independent contractor.

9           Just to be clear, these show up in agreements all the

10   time, right?  When you -- are you an agent employee, do you get

11   certain health benefits or not.  But there's no denying the

12   relationship.  And I can have an independent contractor assist

13   me, or a client can have an independent contractor assist them

14   without destroying the privilege.  So that's a incorrect

15   statement.

16          I do agree that Judge O'Sullivan at that February -- I

17   think it was the 9 -- that he looked at some on February 7th

18   and some on February 9 did look at some individual documents.

19   That's not what was subject of review.  He looked at some

20   documents and then said go back and re-review -- go back, you

21   folks at Jones Day, re-review, and if there's documents that

22   fall on the non-privileged side of the line as I have explained

23   it to you, produce them.  And so that was done.  That was

24   separate.  He didn't then say come back in in March, and bring

25   everything that's left over, and I'm going to review it

```
 1    document-by-document, or you have to defend it
 2    document-by-document, that was never done.  So Mr. Annesser is
 3    kind of consciously conflating things.
 4            The IP issue is a red herring, the whole issue of the
 5    transfer.  IPH International is a affiliate of Industrial
 6    Heat.  It's a Netherlands company that holds -- essentially
 7    holds the IP.  The obligations, as Mr. Annesser kind of
 8    consciously didn't explain to you, the obligations under this
 9    license agreement flow to Industrial Heat.  So they assigned
10    kind of the patent rights, so to speak, to IPH or some of the
11    intellectual property rights to IPH.  But the Industrial Heat
12    folks were kind of doing the work or were doing the work, so
13    they still had an interest in it.  They're affiliated
14    companies, they're under the same holding company or the same
15    parent company.
16            So and -- and the fact that they're pursuing legal
17    issues relating to -- relating to the E-Cat IP, you know what?
18    If they didn't have a right to or if they couldn't have filed a
19    patent application, that still doesn't destroy the privilege.
20    So that's why I saying that's a red herring because even
21    putting aside the issue, the fact of the matter is, somebody
22    can come consult me about trying to get a patent on certain,
23    you know, intellectual property, and at the end of the day they
24    may not be able to get it.  They have no chance in the world
25    because they're an employee, let's say, of a company and it's
```

```
 1    work-for-hire, that doesn't mean that my communications with

 2    that person can't -- were never privileged.  That's the

 3    argument he just made to you.

 4            So the timing on the engagements doesn't -- yeah,

 5    doesn't matter.

 6            The issue in terms of responsiveness, again, one, is

 7    responsive to the discovery -- and there're some broad

 8    discovery requests.  But, two, also one of the issues that kind

 9    of pops up is, look -- and, again, he has the one example that

10    the judge said was not privileged -- I don't want to put it in

11    the record, but I'm happy to show Your Honor -- you'll see that

12    there's a kind of passing -- there is a reference, clearly, to

13    the what's called the E-Cat technology as part of a broader

14    strategy session in terms of talking about protecting the

15    intellectual property rights.  That's enough to make something

16    responsive; so, you know, the fact that they were talking about

17    the E-Cat IP but -- doesn't mean -- I'm sorry -- the fact that

18    they were talking about the E-Cat IP doesn't mean the entire

19    communication had to be about the E-Cat IP.  Obviously, it

20    could talk about a number of different things.

21            But in any event, Industrial Heat pursuing, you know,

22    addressing intellectual property issues as it relates to the

23    E-Cat technology isn't destroyed, somehow no longer can be

24    privileged under this argument simply because the rights as

25    opposed to the obligations under this license agreement had
```

```
 1    been assigned to IPH.  They're perfectly entitled to go -- and
 2    by the way Mr. Annesser's argument doesn't show up in their
 3    briefs to the district court -- to the magistrate judge in
 4    terms of what was being briefed for that hearing, so that
 5    wasn't the argument they were kind of presenting to the
 6    magistrate judge.
 7          The documents, I think there's -- I'm trying to limit
 8    the scope of my reply to what he raised.  So the last thing I
 9    believe that he raised was documents without attorneys on them.
10    These were documents where I think they're all redacted
11    documents -- I think they're all redactions and they're
12    withheld because there's the advice from a lawyer.  In other
13    words, Deep River Ventures can meet with the law firm.
14    Particularly, since they're the direct client of the law firm.
15    They can meet with NK Patent Law.  They can meet with Myers
16    Bigel, and then they can communicate information about that to
17    Industrial Heat.  We talked -- like the e-mail that says, Oh,
18    we talked to the lawyers.  They said we have to get this patent
19    application on file.
20          Again, if there is a document-by-document challenge or
21    issue, that's one thing.  But when you're kind of attacking it
22    categorically, simply saying how can -- do we -- how can Deep
23    River Ventures have a communication that involves anything
24    privileged with Industrial Heat?  It's easy.  I mean, I don't
25    think there is a difficulty in understanding that.
```

1        So again, just so I'm clear, though, too, we're not --
2    I'm not saying that all these documents should be reviewed on a
3    document-by-document basis.  I am saying that if that's what
4    we're required to do, we're going to be required to do it.  I
5    understand that.  Judge O'Sullivan can order that if that is
6    otherwise his inclination.  I do understand that.  What I'm
7    saying is that was clearly not the purpose of the hearing on
8    last Thursday, which is one of the reasons why I'm saying I
9    don't believe that could have been his ruling, even though I
10   think what Mr. Annesser has just said, this is why we appeal
11   this, he thinks that was the judge's ruling.

12        I think it was on the categorical basis, and on the
13   categorical basis, I think it's very clear that it was contrary
14   to law and as a consequence should be returned to the
15   magistrate judge.  Thank you, Your Honor.

16        THE COURT:  What is your position regarding any of
17   these documents or communications being in anticipation of
18   litigation?

19        MR. PACE:  Oh, thank you, Your Honor.  I forgot to
20   mention that.  Again, Mr. Annesser is kind of consciously
21   conflating two different things.  He says the documents go back
22   to 2013.  None of the work product documents go back to 2013.
23   I think the only work product documents are 2016.  Are there
24   any 2015, late 2015?

25        So it -- we -- the documents aren't being claimed as

 1    work product back in 2013.  I agree there has to be reasonable

 2    anticipation of litigation.

 3           THE COURT:  And you're saying all of these documents

 4    that you're raising the privilege on were in anticipation of

 5    litigation?

 6           MR. PACE:  Oh, I'm sorry.  No, Your Honor.  I

 7    apologize.  The privilege log list identifies some of these

 8    documents.  A small number of these documents as work product.

 9    So there's a lot of -- most of them are just withheld on the

10    basis of attorney/client privilege.  There's a small number of

11    them that are also withheld as both attorney/client privilege

12    and work product.

13           THE COURT:  All right.

14           MR. PACE:  So what I am saying is -- when we briefed

15    it, though, because the way it was raised with Judge O'Sullivan

16    was across the board anytime Dewey Weaver shows up, you have to

17    turn it over.  We felt we had to address not only the

18    attorney/client, but also contacts where it was both

19    attorney/client and work product.

20           If I could have just one second because I don't want

21    to make a misrepresentation to the court.

22       (Pause in proceedings.)

23           MR. PACE:  So there was one, and it wasn't addressed

24    on this basis.  There was one document that was 2014 that was

25    withheld for both attorney/client privilege and work product.

```
 1    And so -- but the rest of them were more recent and, I think,

 2    relate to the litigation involving, you know, the current

 3    litigation or what led to the current litigation.  And again

 4    this was not challenged before Judge O'Sullivan.  In other

 5    words, they didn't come in and say, hey Judge O'Sullivan

 6    there's one document in 2014, how is that work product?  I

 7    think there was a -- I think it was in anticipation of -- I

 8    think there was another -- I think there was a patent challenge

 9    proceeding that was going on, but again to be fair, that was

10    never raised specifically with Judge O'Sullivan.

11            So thank you, Your Honor.

12            THE COURT:  Thank you.

13            Mr. Annesser?

14            MR. ANNESSER:  Your Honor, I'll be very brief; so I

15    will do it from the table here, if that's all right with the

16    Court?  What concerns me most is to the extent that they're

17    claiming an agency relationship, notwithstanding the agreement

18    with DRV --

19            THE COURT:  No.  I think, am I correct, Mr. Pace?

20    You're not saying there's an agency relationship.  He's an

21    independent contractor, right?

22            MR. PACE:  I'm saying he's an independent contractor,

23    but that he can be covered by -- as -- whatever you want to

24    phrase, somebody who can facilitate or be involved in legal

25    services.
```

```
 1              THE COURT:  Somebody who doesn't destroy the
 2   confidence of the communications, correct?  Somebody's whose
 3   involvement does not destroy the confidence of those
 4   communications.
 5              MR. PACE:  Yes, Your Honor.  And I apologize, I am
 6   clearly getting older, my hearing is going.
 7              THE COURT:  Mine is going as well, that's all right.
 8   Par for the course here.
 9              Mr. Annesser?
10              MR. ANNESSER:  Yes, Your Honor.  The communications to
11   the extent they're -- well, again the limitations put on the
12   agreements between the parties relates solely to the E-Cat,
13   E-Cat IP -- I'm sorry -- with respect to IP, not E-Cat IP --
14   and so to the extent it goes outside of that, it would require
15   a in camera review of each document, if they're claiming that.
16              But again the burden has been -- has been, is on the
17   Defendants in this case to show why that privilege applies.
18   Specifically, the privilege is in derogation of the common law
19   or the standard policies of open disclosure and discovery.
20   Here, there's a claim before the Court brought by the
21   Defendants in this action that we failed to disclose or discuss
22   any of our IP dealings, patent applications, etc.
23              And they're claiming privilege on such a broad -- a
24   broad number of e-mails, I mean, there's hundreds and hundreds
25   of e-mails that, all tole, are probably thousands and thousands
```

1   of pages.  I understand why the court would not want to waste

2   the time because it would take days to go through each one of

3   these e-mails and determine one way or another.

4        And so I believe Judge O'Sullivan looked at it, looked

5   at all the facts that he had before him and said, look, the

6   relationship between Deep River Ventures and Industrial Heat

7   was not one that would qualify under the privilege to avoid

8   waiving that privilege.  And to the extent that that

9   determination has been made -- if they wanted to raise certain

10  documents and say, look, look, here it definitely is qualified.

11  You know, he's --

12        THE COURT:  Well, how could it be?  Once the finding

13  is made that the involvement of this company and person

14  destroys the confidentiality of the communication, how could

15  the party asserting the privilege come forward and say, all

16  right, but here as to this document, the fact that Deep River

17  is copied on it, doesn't destroy the privilege?

18        MR. ANNESSER:  You are absolutely right, Your Honor.

19  The burden was on them to do that beforehand.  They should've

20  come and had they -- had they done what they should have done,

21  they should have come to the court and said, look, Judge,

22  before you make this ruling that it completely destroys the

23  privilege, look at these cases where privilege -- where it

24  would be under -- or would be included within the privilege or

25  the people who can be disclosed without waiving the privilege.

1   They didn't do that.

2          We can't take it -- we can't argue the opposite side

3   of that without saying -- we can't say, Judge, we want this

4   particular document.  I think once we raise the issue that he

5   is not an individual to which disclosure can be made and still

6   preserve the privilege, the burden was on them to show that the

7   privilege applies to these documents.  And they failed to do

8   so.  They had the opportunity when they briefed it.  They

9   certainly could have put in, in their brief and point out

10  specific examples or otherwise.  They failed to do so.

11         So our hands are tied, as the Plaintiffs in this

12  action, on an issue that is relevant and is at issue in this

13  case, solely based on the representation of counsel for the

14  Defendants.  They haven't -- the only affidavit with respect to

15  Mr. Weaver is that he had an agreement with NK Patent Law.

16  There was no affidavit saying, you know, I was the person who

17  was responsible for advising them on this or that.  Those are

18  the type of factual showings those are the type of things that

19  you have to present before the court to entitle you to the

20  privilege.

21         Privilege is not something that's automatically given

22  and might be taken away.  They have to be entitled to it.

23  They've failed to show the Court that they are.

24      (Pause in proceedings.)

25         THE COURT:  I'm -- frankly, Mr. Pace, on what basis

```
 1    would I reverse the magistrate judge?

 2              MR. PACE:  Your Honor, the basis that the magistrate

 3    judge made a categorical ruling that the involvement of Deep

 4    River Ventures destroys the privilege.  That --

 5              THE COURT:  Why -- why would -- why would I reverse

 6    his factual finding?  It is a factual finding that this entity

 7    was not, certainly not an agent, and certainly not tasked with

 8    working on behalf of the Defendants here, who are asserting the

 9    privilege, and to keep these communications confidential.

10              In other words, his conclusion was based on whatever

11    factual record you developed before him.  We have the agreement

12    that talks about independent contractor not agent, and that's

13    about it, right?

14              MR. PACE:  And that's what he based his ruling on.

15              THE COURT:  Right.  So you could have -- as

16    Mr. Annesser said, you could have presented sworn statements

17    that talked about the role that this company played,

18    notwithstanding the independent contractor language and how

19    that did not destroy the confidences being exchanged between

20    counsel and the Defendants, right?

21              MR. PACE:  Could we have presented additional

22    evidence?

23              THE COURT:  Evidence.

24              MR. PACE:  Certainly.

25              THE COURT:  Right.
```

```
 1              MR. PACE:  I agree.  I mean --
 2              THE COURT:  So I keep going back to your recourses to
 3    seek reconsideration.
 4              MR. PACE:  Well, but --
 5              THE COURT:  Not for me to say the magistrate judge was
 6    incorrect, because on this record, on this sparse record,
 7    that's what he had before him, and I don't see any clear error
 8    being committed by his conclusion.
 9              MR. PACE:  There's also -- again, I think it has to be
10    based on the record that's before the magistrate judge, but
11    there's, for example, the situations where Deep River Ventures
12    was, in fact, the client, so communications with NK Patent Law
13    and with Myers Bigel, where it was demonstrated that NK -- that
14    Deep River Ventures was a client along with Industrial Heat,
15    and then of course, for what we're talking about with the work
16    product protection where it shouldn't matter.  So to an extent
17    the judge's ruling -- and I think the only ruling the judge
18    made was on the agency issue, that shouldn't affect -- it was
19    clearly erroneous that that would affect the work product.  It
20    would --
21              THE COURT:  Right.  But as you say, you didn't ask the
22    magistrate judge to make a document-by-document ruling.  He
23    made a global ruling, and then you can come, as Mr. Annesser
24    said, as to individual documents and explain why that finding
25    would not apply.
```

```
 1              MR. PACE:  But I think what -- I think what
 2   Mr. Annesser said and what the court recognized was that we
 3   would -- I think what the judge was ordering us -- I shouldn't
 4   say think, I sound equivocal.  I know what the judge was
 5   ordering us was to turn over everything.  It wasn't that the
 6   judge was saying, I don't find that there can be a, you know,
 7   a sufficient connection in a certain context.  Now, go -- now
 8   go apply that and come back to me and filter this down further.
 9   He said, as a consequence, produce everything, including the
10   communications where Deep River Venture was the client,
11   including the communications that would involve work product.
12              I mean, that was part of the problem is it was a
13   sweeping ruling.  And, as I said, Your Honor, it was very clear
14   there was a context in the February 7th and February 9th
15   hearing where there was a little bit of review on a
16   document-by-document basis.  It was done as the judge -- you
17   know -- as requested with the judge.  That wasn't for the
18   briefing, and so it wasn't for the hearing the other day.
19              I mean, if we had to come into a hearing and defend
20   each of the 500 documents, I mean, I guess we have to do that,
21   but we also have to have some kind of notice of it because you
22   can't just walk in and suddenly say, I've got all this ready.
23   We viewed it as speaking in categories, that's the way the
24   judge took the argument, and then we have the ruling.  So I do
25   think the judge's ruling was a categorical ruling.  I think
```

1    that's erroneous, that should go back.  Once back in front of

2    Judge O'Sullivan, I certainly agree that Judge O'Sullivan can

3    require us, for example, to present things in categories.

4            I -- you know, my personal thought from the rulings

5    that I've seen is that there's a certain -- if they're arguing

6    waiver, I think they have a certain burden of production, but

7    the whole burden issue I think we can put to the side for a

8    second.  Judge O'Sullivan can implement a procedure that he

9    feels is appropriate to, you know, put things in a category, so

10   to speak, certainly, but what he just can't do is what he did

11   is rule categorically.

12           Thank you, Your Honor.

13           THE COURT:  Let me be clear, the order you are

14   appealing from is the March 14 order, correct?  Docket

15   Entry 170, because your appeal says Docket Entry 143.

16           MR. PACE:  Your Honor, the -- I think that was -- is

17   that the notice -- I'm sorry, Your Honor.  The judge's ruling

18   is only reflected in the transcript.  There's not an actual

19   order yet entered so the March 7th order -- oh, there is an

20   order?  Okay.  Then it would be the March 7th order -- I

21   apologize.  The hearing was March 14th, so it would be --

22           THE COURT:  There's an order I have Docket Entry 170,

23   that was entered by Judge O'Sullivan on March 14.  Your amended

24   appeal Docket Entry 184 references March 14, 2017, order by

25   Docket Entry number 143.

1        MR. PACE:  Yes.  Yes, Your Honor.

2        THE COURT:  So what are you referring me to?  What am

3   I supposed to be reversing?

4        MR. PACE:  Yes, Your Honor, it's the March 14th, order

5   that would be reversed.

6        THE COURT:  Docket Entry 170, not 143?  Oh, I guess

7   143 is referring to your request to have communications be

8   protected.

9        MR. PACE:  Oh, I --

10       THE COURT:  Is that right?

11       MR. PACE:  Yes, Your Honor.

12       THE COURT:  So it is, in fact, Docket Entry 170 that

13   you want me to reverse?

14       MR. PACE:  Yes, Your Honor.

15     (Pause in proceedings.)

16       THE COURT:  The order itself, the Docket Entry 170

17   doesn't explain the basis for the conclusion that the

18   communications are unprotected.  Your appeal talks about two

19   questions that you were asked to brief.  Whether these

20   communications involved business advice versus legal advice,

21   and, second, whether including Deep Water on those

22   communications resulted in a waiver, Deep River Ventures,

23   right?

24       MR. PACE:  Yes, Your Honor.  Those two, yes.

25       THE COURT:  Right.  And so we have one finding that

1    your request to have those communications be protected is

2    denied, but I don't know if the finding was based on, first,

3    because the document related to business advice versus legal

4    advice, and/or whether the conclusion is because there was a

5    waiver of the privilege by including Deep River.

6            MR. PACE:  I think it's clear at the hearing, Your

7    Honor, that it was the latter.  That's the only thing he

8    articulated in the transcript.

9            THE COURT:  Ah, where?  Where is that in the

10   transcript that you have provided me with your appeal?  That I

11   can reach that conclusion.

12           I don't have that transcript, do I?

13           MR. PACE:  I think it was included.

14           THE COURT:  I have a transcript of discovery

15   proceedings on February the 7th, an excerpt, I have an excerpt

16   of the proceedings on February the 9th, but not proceedings

17   held on March 14th, right?  Correct?

18           MR. PACE:  I think you're right, Your Honor.

19           THE COURT:  All right.  So I don't know on which one,

20   the other, or both the decision was reached.  You're assuming

21   it's because the magistrate judge found waiver through Deep

22   River's inclusion in the communications versus a finding that

23   many of those documents he was looking at, that you showed him

24   pertained to business advice versus legal advice.

25           MR. PACE:  Well, at the March 14th hearing, he was not

1    looking at individual documents.  He was looking -- he was just

2    addressing the barter -- I apologize, I can submit it

3    immediately after this hearing.  We do have a transcript now.

4    We actually didn't have a transcript I think on Monday or only

5    had maybe a rough, but in this instance I find that the -- I'm

6    sorry.  We should have brought a copy with us to the court

7    today.  I do apologize.

8         The judge ruled on Page 30, In this instance I find

9    that the communications which involved Deep River Ventures are

10   not protected by the attorney/client privilege and the

11   Defendant has failed to meet their burden.

12        Then he only speaks about Deep River Ventures being

13   involved is what destroys the burden; so the business versus

14   legal was not a basis that he kind of categorically ruled on

15   anything.  He wasn't looking at individual documents.  And, in

16   fact, he had -- any document-by-document assessment was done at

17   prior hearings, not being done on March 14th.

18        And again, I apologize, Your Honor, we can submit this

19   into the record today.  We should have provided it after we got

20   it.

21     (Pause in proceedings.)

22        THE COURT:  Well, I certainly can't rule intelligently

23   on this appeal.  I mean, your appeal briefs both matters.  It

24   also raises the -- the problem with the absence of a

25   document-by-document review and the absence of

1    document-by-document findings.  It -- it addresses the

2    inclusion of business information and communications, not

3    destroying a privilege.  It addresses a number of things, and

4    yet all I have is one line in an order and one line from a

5    transcript you've read from, but I don't know.  I don't know.

6         MR. PACE:  I -- I understand, Your Honor, we -- we had

7    the ruling if the Court's -- and we appealed because we had the

8    adverse ruling, and we're required to produce the documents

9    that are privileged.

10        THE COURT:  I understand that.

11        MR. Pace:  I mean if, Your Honor --

12        THE COURT:  Let me go ahead and remand it so you can

13   have further proceedings before Judge O'Sullivan and you can

14   clarify for me, if you want to come back to me, what the

15   conclusion is based on and whether or not you want to engage in

16   a document-by-document assertion of privilege and obtain a

17   document-by-document ruling on the existence or not of

18   privilege and which privilege, but I can't intelligently rule

19   on this the way you're presenting it to me.

20        MR. PACE:  We will go back and present the issue to

21   Judge O'Sullivan and ask him for that direction.

22        THE COURT:  Mr. Annesser?

23        MR. ANNESSER:  Your Honor, the only reason I would ask

24   the Court to reconsider the decision to remand it back to Judge

25   O'Sullivan is we're currently in the midst of our briefings on

```
 1   summary judgment motions.  I believe the first briefings have
 2   been filed, responses will be due I believe in about 12 days,
 3   if I'm not mistaken.  So there's a timing element that
 4   certainly the disclosures --
 5            THE COURT:  There is nothing I can do about that.
 6            MR. ANNESSER:  And, Your Honor, there was one other
 7   thing that I wanted to request clarification from the Court,
 8   and it actually pertains to our motion that we're currently
 9   setting for next week.  There was some confusion, at least by
10   me, as to whether Rule 72 or 73 applies with respect to
11   Magistrate O'Sullivan's orders.  In this case, both parties
12   consented solely to the discovery hearings being held by Judge
13   O'Sullivan.
14            And 73 deals with those where a consent has been
15   provided for proceedings or trials by the magistrate, and that
16   provides for appeals directly to the 11th, whereas, 72 is
17   non-dispositive --
18            THE COURT:  That's what we have here.
19            MR. ANNESSER:  Yes, Your Honor.  And there was a
20   little -- well, perhaps a ambiguity between the two with
21   respect to this because in a case where the court refers
22   certain things without the consent to the party --
23            THE COURT:  I referred them.  I don't need your
24   consent to refer discovery matters to the magistrate.
25            MR. ANNESSER:  Yes, Your Honor.  The question was
```

1    where consent has been given, does that change --

2              THE COURT:  I don't -- I don't believe it does.

3              MR. ANNESSER:  Okay.  Thank you, Your Honor.  Just for

4    clarification.

5              THE COURT:  Is there anything additional?

6              MR. PACE:  No, Your Honor.  Thank you so much.

7              THE COURT:  Thank you.

8              MR. ANNESSER:  Your Honor, I would ask one thing, to

9    bring it back before the Court, is there a period of time, and

10   is that something that we should be bringing back before the

11   Court, or is that the Defendant's responsibility, and the time

12   period in which to do so?

13             THE COURT:  To bring back before the Magistrate Judge?

14             MR. ANNESSER:  Yes, Your Honor.

15             THE COURT:  I suggest you both talk about it and try

16   to resolve it as quickly as possible.

17             MR. ANNESSER:  Thank you, Your Honor.

18             MR. PACE:  We'll contact Judge O'Sullivan on -- Judge

19   O'Sullivan's chambers by no later than Monday to try to arrange

20   for whatever additional proceedings or hearings are needed.

21             THE COURT:  Very well.

22             MR. PACE:  Thank you, Your Honor.

23             MR. ANNESSER:  Thank you, Your Honor.

24             THE COURT:  Thank you.  Nice to see everyone.

25        (The proceedings adjourned at 10:45 a.m.)

51

<u>C E R T I F I C A T E</u>

I hereby certify that the foregoing is an accurate transcription of the proceedings in the above-entitled matter.

_04/25/17_
DATE

STEPHANIE A. McCARN, RPR
Official United States Court Reporter
400 North Miami Avenue, Twelfth Floor
Miami, Florida 33128
(305) 523-5518

## 0

**04/25/17** [1] - 51:7

## 1

**1** [1] - 1:8
**100** [1] - 22:16
**10:45** [2] - 1:6, 50:25
**10th** [1] - 22:6
**11th** [1] - 49:16
**12** [1] - 49:2
**12-2** [1] - 1:7
**14** [3] - 44:14, 44:23, 44:24
**143** [4] - 44:15, 44:25, 45:6, 45:7
**14th** [5] - 44:21, 45:4, 46:17, 46:25, 47:17
**150** [1] - 22:16
**151014** [1] - 29:8
**16-CV-21199-CMA** [1] - 1:2
**16th** [1] - 12:17
**170** [5] - 44:15, 44:22, 45:6, 45:12, 45:16
**184** [1] - 44:24

## 2

**2** [1] - 6:14
**200** [1] - 1:13
**2012** [1] - 29:7
**2013** [7] - 21:17, 21:18, 24:11, 26:8, 35:22, 36:1
**2014** [3] - 22:6, 36:24, 37:6
**2015** [1] - 35:24
**2016** [1] - 35:23
**2017** [2] - 1:5, 44:24
**217** [1] - 5:16
**21st** [1] - 12:16
**24** [1] - 1:5
**26th** [2] - 21:17, 21:18
**28** [1] - 6:15
**283** [1] - 1:13
**29th** [1] - 6:1

## 3

**30** [1] - 47:8
**305** [5] - 1:14, 1:18, 1:22, 2:3, 51:9
**3300** [2] - 1:17, 1:21
**33128** [2] - 2:3, 51:9
**33131** [2] - 1:18, 1:22
**33134** [1] - 1:14
**377-0086** [1] - 1:14

## 4

**4** [1] - 3:19
**400** [2] - 2:2, 51:8

## 5

**5** [1] - 24:2
**5,000** [1] - 24:3
**500** [1] - 43:20
**51** [2] - 1:8, 3:19
**523-5518** [2] - 2:3, 51:9

## 6

**600** [2] - 1:17, 1:21

## 7

**700** [2] - 24:2, 24:25
**714-9700** [2] - 1:18, 1:22
**72** [2] - 49:10, 49:16
**73** [2] - 49:10, 49:14
**7th** [6] - 30:18, 31:17, 43:14, 44:19, 44:20, 46:15

## 8

**800** [1] - 24:25

## 9

**9** [1] - 31:17, 31:18
**9:37** [2] - 1:6, 4:1
**9th** [2] - 43:14, 46:16

## A

**a.m** [4] - 1:6, 4:1, 50:25
**able** [1] - 32:24
**above-entitled** [1] - 51:4
**absence** [3] - 19:7, 47:24, 47:25
**absent** [1] - 8:15
**absolutely** [1] - 39:18
**abysmal** [1] - 19:20
**accurate** [1] - 51:3
**acted** [1] - 23:6
**action** [3] - 38:21, 40:12
**activity** [1] - 4:18
**actual** [2] - 17:10, 44:18
**addition** [1] - 21:1
**additional** [3] - 41:21,

50:5, 50:20
**address** [7] - 5:18, 5:23, 6:16, 9:11, 10:25, 15:23, 36:17
**addressed** [3] - 12:18, 15:21, 36:23
**addresses** [2] - 48:1, 48:3
**addressing** [3] - 5:17, 33:22, 47:2
**adjourned** [1] - 50:25
**ADMITTED** [1] - 3:9
**adversary** [1] - 10:24
**adverse** [1] - 48:8
**advice** [14] - 19:12, 23:15, 26:21, 28:5, 29:10, 29:14, 29:25, 34:12, 45:20, 46:3, 46:4, 46:24
**advising** [1] - 40:17
**affect** [2] - 42:18, 42:19
**affidavit** [2] - 40:14, 40:16
**affiliate** [1] - 32:5
**affiliated** [1] - 32:13
**afternoon** [1] - 6:8
**agency** [8] - 18:22, 19:7, 19:11, 19:23, 28:1, 37:17, 37:20, 42:18
**agent** [14] - 11:13, 11:20, 18:25, 19:2, 19:13, 19:19, 19:24, 23:6, 23:8, 27:21, 31:6, 31:10, 41:7, 41:12
**agents** [1] - 19:15
**agree** [6] - 5:9, 13:8, 31:16, 36:1, 42:1, 44:2
**agreement** [14] - 11:13, 11:18, 19:1, 21:22, 21:23, 22:4, 23:5, 23:7, 26:10, 32:9, 33:25, 37:17, 40:15, 41:11
**agreement's** [1] - 19:7
**agreements** [3] - 21:13, 31:9, 38:12
**ahead** [1] - 48:12
**al** [2] - 1:4, 1:7
**Albright** [1] - 1:13
**allegedly** [1] - 23:16
**allowed** [3] - 11:7, 11:9, 17:5
**almost** [1] - 24:3
**alternative** [4] - 7:2, 7:3, 7:16, 7:17
**alternatives** [1] -

14:11
**altogether** [1] - 28:7
**ALTONAGA** [1] - 1:10
**ambiguity** [1] - 49:20
**amended** [2] - 6:17, 44:23
**ANDREA** [1] - 1:4
**Andrea** [1] - 4:2
**ANNESSER** [32] - 1:12, 4:4, 4:9, 4:22, 5:7, 6:10, 20:23, 20:25, 23:25, 25:17, 25:21, 26:2, 26:17, 26:25, 27:4, 27:8, 27:19, 28:14, 28:18, 30:11, 37:14, 38:10, 39:18, 48:23, 49:6, 49:19, 49:25, 50:3, 50:8, 50:14, 50:17, 50:23
**Annesser** [15] - 4:9, 5:10, 20:22, 30:12, 31:4, 32:2, 32:7, 35:10, 35:20, 37:13, 38:9, 41:16, 42:23, 43:2, 48:22
**Annesser's** [1] - 34:2
**answer** [1] - 19:9
**anticipating** [2] - 24:10, 24:12
**anticipation** [5] - 24:9, 35:17, 36:2, 36:4, 37:7
**anytime** [1] - 36:16
**apologize** [12] - 4:22, 10:1, 13:23, 15:8, 16:15, 18:23, 36:7, 38:5, 44:21, 47:2, 47:7, 47:18
**apology** [1] - 13:25
**apparent** [1] - 22:25
**appeal** [19] - 5:14, 5:24, 6:16, 6:17, 8:24, 13:18, 14:1, 15:14, 17:16, 18:12, 30:7, 35:10, 44:15, 44:24, 45:18, 46:10, 47:23
**appealed** [1] - 48:7
**appealing** [1] - 44:14
**appeals** [1] - 49:16
**appear** [1] - 24:4
**appearances** [1] - 4:8
**APPEARANCES** [1] - 1:11
**application** [2] - 32:19, 34:19
**applications** [1] - 38:22
**applied** [1] - 18:7

**applies** [3] - 38:17, 40:7, 49:10
**apply** [5] - 24:20, 25:6, 26:11, 42:25, 43:8
**appreciate** [1] - 13:16
**approached** [1] - 24:22
**appropriate** [1] - 44:9
**April** [1] - 26:8
**area** [1] - 11:11
**arguably** [2] - 26:11, 27:14
**argue** [2] - 27:22, 40:2
**argued** [1] - 18:11
**arguing** [2] - 9:2, 44:5
**argument** [5] - 33:3, 33:24, 34:2, 34:5, 43:24
**arguments** [1] - 27:13
**arrange** [1] - 50:19
**art** [1] - 7:22
**articulated** [1] - 46:8
**aside** [1] - 32:21
**aspects** [1] - 23:3
**asserting** [3] - 16:4, 39:15, 41:8
**assertion** [2] - 18:2, 48:16
**assessment** [1] - 47:16
**assigned** [4] - 21:23, 22:3, 32:9, 34:1
**assist** [2] - 31:12, 31:13
**assistance** [1] - 20:4
**assume** [2] - 28:16
**assuming** [1] - 46:20
**attached** [1] - 8:23
**attack** [1] - 16:12
**attacking** [1] - 34:21
**attempt** [1] - 7:16
**attorney** [1] - 23:21, 25:4
**attorney/client** [15] - 11:24, 18:3, 18:6, 18:15, 18:16, 23:1, 25:3, 29:3, 29:5, 36:10, 36:11, 36:18, 36:19, 36:25, 47:10
**attorneys** [1] - 25:4, 34:9
**attune** [1] - 29:1
**August** [2] - 21:17, 21:18
**automatically** [3] - 12:4, 18:16, 40:21
**available** [1] - 5:19
**Avenue** [5] - 1:13, 1:17, 1:21, 2:2, 51:8
**avoid** [1] - 39:7

**B**

**background** [1] - 20:25
**bagman** [1] - 29:1
**Bajandas** [1] - 1:13
**barter** [1] - 47:2
**based** [10] - 8:17, 12:22, 12:24, 17:14, 40:13, 41:10, 41:14, 42:10, 46:2, 48:15
**basis** [23] - 12:25, 14:17, 15:21, 15:22, 16:5, 16:8, 16:23, 17:5, 17:17, 17:18, 17:24, 27:14, 30:8, 35:3, 35:12, 35:13, 36:10, 36:24, 40:25, 41:2, 43:16, 45:17, 47:14
**bear** [2] - 24:24, 25:5
**becomes** [1] - 22:25
**BEFORE** [1] - 1:10
**beforehand** [1] - 39:19
**behalf** [3] - 4:10, 4:15, 41:8
**behind** [1] - 8:12
**behooves** [2] - 16:3
**benefits** [1] - 31:11
**best** [4] - 8:5, 15:8, 24:22, 27:24
**better** [1] - 30:16
**between** [14] - 8:9, 11:5, 11:6, 11:25, 20:13, 21:19, 23:7, 23:19, 25:2, 27:20, 38:12, 39:6, 41:19, 49:20
**beyond** [1] - 29:18
**Bigel** [1] - 10:6, 10:13, 20:15, 21:18, 34:16, 42:13
**bit** [3] - 6:22, 13:11, 43:15
**board** [1] - 36:16
**Boeing** [1] - 8:4
**Brickell** [4] - 1:17, 1:17, 1:21, 1:21
**brief** [7] - 9:6, 24:19, 24:20, 24:22, 37:14, 40:9, 45:19
**briefed** [3] - 34:4, 36:14, 40:8
**briefing** [5] - 8:21, 9:10, 9:13, 43:18
**briefings** [2] - 48:25, 49:1
**briefs** [2] - 34:3, 47:23
**bring** [8] - 5:20, 24:16,

27:11, 27:12, 30:9, 31:24, 50:9, 50:13
**bringing** [3] - 22:14, 30:19, 50:10
**broad** [9] - 21:3, 23:10, 23:11, 25:1, 26:15, 33:7, 38:23, 38:24
**broad-brush** [1] - 23:11
**broader** [2] - 30:25, 33:13
**broadly** [1] - 20:3
**brought** [8] - 22:15, 24:17, 27:12, 30:20, 30:22, 38:20, 47:6
**brush** [2] - 21:4, 23:11
**burden** [2] - 23:14, 24:19, 24:24, 25:5, 27:13, 38:16, 39:19, 43:7, 44:6, 44:7, 47:11, 47:13
**business** [7] - 22:18, 45:20, 46:3, 46:24, 47:13, 48:2
**BV** [2] - 21:24, 23:5
**BY** [1] - 2:1

**C**

**calendars** [1] - 5:19
**camera** [4] - 22:20, 22:21, 30:6, 38:15
**cannot** [2] - 17:25, 20:18
**capacity** [1] - 19:15
**caretaker** [2] - 23:2, 25:13
**carry** [1] - 29:2
**case** [15] - 4:24, 6:25, 7:1, 10:5, 21:7, 23:17, 24:6, 24:8, 25:12, 30:8, 38:17, 40:13, 49:11, 49:21
**CASE** [1] - 1:2
**case-by-case** [1] - 30:8
**cases** [4] - 16:11, 19:14, 28:3, 39:23
**casually** [1] - 19:14
**Cat** [33] - 21:8, 21:22, 22:1, 22:8, 22:11, 23:3, 26:5, 26:7, 26:8, 26:11, 26:21, 28:9, 28:10, 28:12, 28:22, 28:23, 28:24, 32:17, 33:13, 33:17, 33:18, 33:19, 33:23, 38:12, 38:13
**Catalonia** [1] - 1:13

**categorical** [14] - 8:16, 9:11, 11:1, 12:23, 14:14, 14:15, 15:16, 18:9, 18:12, 20:19, 35:12, 35:13, 41:3, 43:25
**categorically** [4] - 16:12, 34:22, 44:11, 47:14
**categories** [4] - 12:19, 21:12, 43:23, 44:3
**category** [9] - 9:12, 10:18, 10:25, 16:23, 17:5, 17:17, 17:18, 44:9
**category-by-category** [1] - 17:5
**CECILIA** [1] - 1:10
**certain** [8] - 7:16, 31:11, 32:22, 39:9, 43:7, 44:5, 44:6, 49:22
**Certainly** [1] - 41:24
**certainly** [18] - 5:17, 14:4, 16:1, 24:12, 24:16, 24:24, 25:5, 25:22, 27:10, 28:2, 30:3, 40:9, 41:7, 44:2, 44:10, 47:22, 49:4
**Certificate.................
....** [1] - 3:19
**certify** [1] - 51:2
**challenge** [7] - 9:11, 16:20, 16:22, 17:4, 17:8, 34:20, 37:8
**challenged** [6] - 8:11, 11:2, 12:7, 12:20, 17:16, 37:4
**challenging** [3] - 16:24, 16:25, 18:8
**chambers** [1] - 50:19
**chance** [2] - 20:22, 32:24
**change** [1] - 50:1
**charged** [1] - 7:12
**child's** [2] - 23:2, 25:13
**Chris** [2] - 4:14, 4:15
**CHRISTOPHER** [2] - 1:16, 1:20
**claim** [2] - 21:15, 38:20
**claimed** [2] - 24:1, 35:25
**claiming** [3] - 37:17, 38:15, 38:23
**claims** [2] - 21:14, 23:6
**clarification** [4] -

13:13, 15:2, 49:7, 50:4
**clarify** [2] - 14:2, 48:14
**classifies** [1] - 21:3
**clear** [12] - 13:21, 14:5, 14:6, 24:8, 31:3, 31:9, 35:1, 35:13, 42:7, 43:13, 44:13, 46:6
**clearer** [1] - 23:9
**clearly** [6] - 27:21, 31:5, 33:12, 35:7, 38:6, 42:19
**client** [7] - 4:11, 10:17, 31:13, 34:14, 42:12, 42:14, 43:10
**clients** [1] - 9:18
**clomax@jonesday.
com** [1] - 1:23
**closed** [1] - 5:22
**colleague** [1] - 8:25
**comfortable** [1] - 6:22
**coming** [2] - 6:3, 26:9
**committed** [1] - 42:8
**common** [1] - 38:18
**communicate** [3] - 19:22, 22:1, 34:16
**communication** [14] - 8:17, 10:22, 18:15, 20:8, 29:4, 29:6, 29:8, 29:11, 29:15, 29:16, 29:18, 33:19, 34:23, 39:14
**communications** [32] - 5:16, 8:9, 9:4, 10:15, 12:3, 17:3, 20:7, 21:7, 21:25, 22:9, 23:10, 23:15, 24:11, 25:4, 26:9, 33:1, 35:17, 38:2, 38:4, 38:10, 41:9, 42:12, 43:10, 43:11, 45:7, 45:18, 45:20, 45:22, 46:1, 46:22, 47:9, 48:2
**companies** [1] - 32:14
**company** [10] - 7:1, 17:7, 28:4, 28:7, 32:6, 32:14, 32:15, 32:25, 39:13, 41:17
**completely** [1] - 39:22
**comply** [1] - 4:25
**concept** [1] - 24:5
**conceptionally** [1] - 19:16
**concepts** [1] - 16:25
**concerned** [2] - 14:4, 15:11
**concerns** [1] - 37:16
**conclusion** [6] -

41:10, 42:8, 45:17, 46:4, 46:11, 48:15
**confidence** [2] - 38:2, 38:3
**confidences** [1] - 41:19
**confidential** [3] - 4:25, 41:9
**confidentiality** [1] - 39:14
**conflating** [2] - 32:3, 35:21
**conform** [1] - 5:8
**confusion** [2] - 7:23, 49:9
**connection** [4] - 8:7, 9:14, 20:4, 43:7
**consciously** [3] - 32:3, 32:8, 35:20
**consent** [4] - 49:14, 49:22, 49:24, 50:1
**consented** [1] - 49:12
**consequence** [2] - 35:14, 43:9
**consider** [1] - 23:11
**consistent** [1] - 5:9
**consult** [1] - 32:22
**consultant** [1] - 8:13
**contact** [1] - 50:18
**contacts** [1] - 36:18
**contain** [1] - 16:9
**contemplated** [1] - 11:18
**contemplation** [1] - 29:10
**contents** [2] - 29:15, 29:19
**context** [12] - 6:24, 9:3, 10:19, 11:3, 13:16, 16:16, 17:11, 20:6, 26:2, 29:12, 43:7, 43:14
**continue** [1] - 20:20
**contract** [4] - 9:7, 9:8, 31:5, 31:7
**contractor** [7] - 31:8, 31:12, 31:13, 37:21, 37:22, 41:12, 41:18
**contractual** [2] - 27:20, 27:23
**contrary** [1] - 35:13
**convenient** [2] - 6:9, 6:10
**copied** [3] - 23:21, 25:4, 39:17
**copy** [5] - 12:13, 16:17, 16:18, 30:5, 47:6
**Coral** [1] - 1:14
**corporate** [2] - 29:12,

29:19
**Corporation** [2] - 4:2, 21:9
**corporation** [1] - 29:24
**corporation's** [1] - 29:14
**correct** [8] - 10:12, 14:15, 15:16, 18:4, 37:19, 38:2, 44:14, 46:17
**counsel** [3] - 28:6, 40:13, 41:20
**couple** [1] - 8:20
**course** [3] - 20:16, 38:8, 42:15
**Court** [13] - 2:1, 3:19, 23:12, 29:8, 37:16, 38:20, 40:23, 48:24, 49:7, 50:9, 50:11, 51:8
**court** [15] - 14:18, 17:12, 24:18, 27:15, 28:21, 30:5, 30:8, 34:3, 36:21, 39:1, 39:21, 40:19, 43:2, 47:6, 49:21
**COURT** [102] - 1:1, 4:2, 4:5, 4:7, 4:12, 4:16, 4:18, 5:4, 5:12, 6:8, 6:14, 6:19, 6:23, 9:20, 9:24, 10:4, 10:8, 10:10, 11:8, 11:22, 13:1, 13:3, 13:6, 13:9, 13:12, 13:15, 13:19, 13:21, 13:25, 14:9, 14:22, 15:1, 15:6, 15:20, 15:25, 16:3, 16:7, 16:14, 17:20, 17:24, 18:2, 18:10, 18:18, 18:24, 19:3, 19:5, 20:21, 20:24, 23:23, 25:16, 25:18, 25:24, 26:14, 26:23, 27:1, 27:7, 27:18, 28:11, 28:17, 30:10, 30:12, 35:16, 36:3, 36:13, 37:12, 37:19, 38:1, 38:7, 39:12, 40:25, 41:5, 41:15, 41:23, 41:25, 42:2, 42:5, 42:21, 44:13, 44:22, 45:2, 45:6, 45:10, 45:12, 45:16, 45:25, 46:9, 46:14, 46:19, 47:22, 48:10, 48:12, 48:22, 49:5, 49:18, 49:23, 50:2, 50:5, 50:7, 50:13, 50:15,

50:21, 50:24
**court's** [1] - 22:10
**Court's** [3] - 5:10, 29:6, 48:7
**Courtroom** [1] - 1:7
**Courts** [1] - 5:2
**covered** [2] - 27:16, 37:23
**Cream** [2] - 16:12, 29:7
**create** [1] - 16:4
**crjpace@jonesday. com** [1] - 1:19
**current** [2] - 37:2, 37:3

## D

**D.C** [2] - 6:1, 6:3
**DARDEN** [1] - 1:7
**Darden** [1] - 4:3
**DATE** [1] - 51:7
**date** [1] - 21:20
**days** [2] - 39:2, 49:2
**dealing** [7] - 15:7, 15:9, 21:12, 22:11, 26:5, 28:9
**dealings** [1] - 38:22
**deals** [1] - 49:14
**decide** [1] - 14:20
**decided** [1] - 27:11
**decision** [2] - 46:20, 48:24
**Deep** [44] - 7:9, 7:18, 8:6, 8:9, 8:12, 9:4, 9:17, 10:3, 11:5, 11:6, 11:9, 12:2, 12:3, 12:21, 16:23, 17:22, 18:1, 18:13, 18:19, 18:24, 19:2, 20:14, 21:20, 21:21, 22:7, 22:24, 23:20, 28:25, 29:22, 34:13, 34:22, 39:6, 39:16, 41:3, 42:11, 42:14, 43:10, 45:21, 45:22, 46:5, 46:21, 47:9, 47:12
**defend** [2] - 32:1, 43:19
**DEFENDANT** [2] - 1:16, 3:6
**Defendant** [2] - 10:10, 47:11
**defendant** [1] - 21:24
**Defendant's** [3] - 3:11, 6:16, 50:11
**defendants** [1] - 8:10
**Defendants** [13] - 1:8, 4:15, 10:4, 21:14, 22:13, 26:15, 27:22,

30:3, 38:17, 38:21, 40:14, 41:8, 41:20
**Defense** [2] - 4:13, 5:25
**define** [1] - 27:24
**defined** [2] - 26:4, 27:25
**definitely** [1] - 39:10
**demonstrate** [1] - 30:2
**demonstrated** [1] - 42:13
**denied** [1] - 46:2
**denture** [1] - 16:11
**Denture** [1] - 29:7
**denying** [2] - 4:19, 31:11
**derogation** [1] - 38:18
**descriptions** [2] - 25:1, 25:2
**designated** [1] - 4:25
**destroy** [5] - 10:23, 11:21, 11:23, 11:24, 12:5, 15:10, 18:16, 15:20, 32:19, 38:1, 38:3, 39:17, 41:19
**destroyed** [2] - 18:19, 33:23
**destroying** [2] - 31:14, 48:3
**destroys** [4] - 39:14, 39:22, 41:4, 47:13
**determination** [1] - 39:9
**determine** [2] - 28:15, 39:3
**developed** [1] - 41:11
**developing** [1] - 7:13
**developments** [1] - 7:8
**Dewey** [7] - 8:11, 8:13, 8:14, 9:2, 9:3, 22:24, 36:16
**different** [9] - 8:10, 11:25, 17:11, 20:12, 26:19, 28:6, 33:20, 35:21
**difficult** [1] - 9:24
**difficulty** [1] - 34:25
**dinner** [1] - 6:4
**direct** [3] - 18:24, 19:7, 34:14
**direction** [3] - 12:14, 29:11, 48:21
**directly** [2] - 22:25, 49:16
**disagree** [1] - 12:23
**disclose** [1] - 38:21
**disclosed** [2] - 24:4, 28:19, 39:25
**disclosure** [3] - 29:22,

38:19, 40:5
**disclosures** [1] - 49:4
**discovery** [9] - 5:21, 5:22, 14:2, 33:7, 33:8, 38:19, 46:14, 49:12, 49:24
**discuss** [1] - 38:21
**discussing** [1] - 12:6
**dispositive** [1] - 49:17
**dispute** [1] - 29:22
**disseminate** [1] - 29:23
**disseminated** [1] - 29:18
**dissipating** [1] - 28:4
**Dist** [1] - 29:7
**distinguished** [1] - 28:2
**DISTRICT** [3] - 1:1, 1:1, 1:10
**district** [1] - 34:3
**DIVISION** [1] - 1:2
**Docket** [7] - 5:16, 44:15, 44:22, 44:24, 44:25, 45:12, 45:16
**docket** [2] - 44:14, 45:6
**document** [51] - 11:2, 12:7, 12:25, 14:17, 15:18, 15:21, 15:22, 16:5, 16:8, 17:9, 17:10, 20:12, 24:17, 24:23, 25:6, 25:14, 32:1, 32:2, 34:20, 35:3, 36:24, 37:6, 38:15, 39:16, 40:4, 42:22, 43:16, 46:3, 47:16, 47:25, 48:1, 48:16, 48:17
**document-by-document** [17] - 12:25, 14:17, 15:18, 15:21, 15:22, 17:10, 32:1, 32:2, 34:20, 35:3, 42:22, 43:16, 47:16, 47:25, 48:1, 48:16, 48:17
**documents** [55] - 12:9, 12:10, 12:19, 13:18, 14:8, 16:21, 16:25, 17:14, 17:15, 17:23, 21:5, 22:14, 22:15, 22:19, 23:18, 23:23, 24:2, 24:3, 24:4, 24:15, 24:21, 24:25, 25:2, 26:14, 26:18, 26:24, 27:11, 28:12, 30:19, 30:20, 31:18, 31:20, 31:21, 34:7, 34:9, 34:10,

34:11, 35:2, 35:17, 35:21, 35:22, 35:23, 35:25, 36:3, 36:8, 39:10, 40:7, 42:24, 43:20, 46:23, 47:1, 47:15, 48:8
**done** [15] - 11:1, 12:15, 12:16, 14:21, 15:14, 17:12, 31:23, 32:2, 39:20, 43:16, 47:16, 47:17
**down** [3] - 7:21, 22:23, 43:8
**Dr** [3] - 4:10, 21:8, 21:22
**DRV** [1] - 37:18
**dual** [2] - 9:15, 9:18
**due** [2] - 15:13, 49:2
**dueling** [1] - 9:8
**during** [1] - 20:15
**duties** [2] - 20:1, 29:17

## E

**E-Cat** [33] - 21:8, 21:22, 22:1, 22:8, 22:11, 23:3, 26:5, 26:7, 26:8, 26:11, 26:21, 28:9, 28:10, 28:12, 28:22, 28:23, 28:24, 32:17, 33:13, 33:17, 33:18, 33:19, 33:23, 38:12, 38:13
**e-mail** [5] - 20:9, 27:6, 30:4, 34:17
**e-mail-by-e-mail** [1] - 27:14
**e-mails** [5] - 23:13, 26:3, 38:24, 38:25, 39:3
**easy** [3] - 17:1, 19:17, 34:24
**effect** [1] - 29:25
**effort** [1] - 29:14
**either** [7] - 13:18, 14:11, 15:4, 15:15, 18:16, 23:19
**element** [1] - 49:3
**employed** [1] - 23:4
**employee** [6] - 28:4, 29:10, 29:13, 31:10, 32:25
**employee's** [1] - 29:17
**employment** [1] - 11:15
**en** [1] - 8:11
**end** [2] - 22:23, 32:23
**Energy** [1] - 7:14
**energy** [1] - 7:15

**engage** [1] - 48:15
**engaged** [6] - 9:17, 9:20, 10:3, 10:5, 12:2, 20:3
**engagement** [5] - 9:15, 9:16, 9:18, 10:12, 11:5
**engagements** [1] - 33:4
**enter** [1] - 14:7
**entered** [6] - 4:23, 21:17, 21:19, 22:5, 44:19, 44:23
**entering** [1] - 4:19
**entire** [1] - 33:18
**entitle** [1] - 40:19
**entitled** [4] - 14:19, 34:1, 40:22, 51:4
**entity** [1] - 41:6
**entries** [1] - 16:18
**Entry** [9] - 5:16, 44:15, 44:22, 44:24, 44:25, 45:6, 45:12, 45:16
**entry** [2] - 12:20, 12:21
**equivocal** [1] - 43:4
**erroneous** [2] - 42:19, 44:1
**error** [1] - 42:7
**ESQ** [3] - 1:12, 1:16, 1:20
**essence** [1] - 29:24
**essential** [1] - 29:3
**essentially** [1] - 32:6
**estate** [2] - 7:4, 7:20
**et** [2] - 1:4, 1:7
**etc** [1] - 38:22
**event** [2] - 11:21, 33:21
**EVIDENCE** [1] - 3:9
**evidence** [3] - 19:5, 41:22, 41:23
**exact** [1] - 8:2
**exactly** [1] - 22:19
**examined** [1] - 22:19
**example** [10] - 7:19, 7:25, 17:1, 19:17, 25:18, 28:3, 33:9, 42:11, 44:3
**examples** [1] - 40:10
**exceptions** [2] - 25:22, 25:23
**excerpt** [2] - 46:15
**exchange** [1] - 19:12
**exchanged** [1] - 41:19
**excluded** [1] - 22:10
**Exhibit** [3] - 3:10, 3:11, 8:24
**EXHIBITS** [1] - 3:9
**existed** [1] - 26:18

**existence** [1] - 48:17
**explain** [4] - 17:6, 32:8, 42:24, 45:17
**explained** [4] - 9:12, 11:4, 16:15, 31:22
**explicitly** [1] - 23:8
**extension** [1] - 18:4
**extent** [17] - 12:22, 12:24, 18:8, 22:8, 23:3, 24:7, 24:8, 26:18, 26:25, 27:1, 27:22, 28:21, 37:16, 38:11, 38:14, 39:8, 42:16
**Exxon** [1] - 8:3

## F

**facilitate** [1] - 37:24
**fact** [21] - 5:2, 9:15, 12:8, 16:3, 17:10, 19:8, 21:2, 22:13, 24:14, 24:18, 25:9, 26:9, 26:17, 32:16, 32:21, 33:16, 33:17, 39:16, 42:12, 45:12, 47:16
**facts** [1] - 39:5
**factual** [4] - 40:18, 41:6, 41:11
**failed** [13] - 24:15, 24:16, 25:9, 25:10, 29:20, 29:21, 30:6, 30:9, 38:21, 40:7, 40:10, 40:23, 47:11
**failures** [1] - 30:2
**fair** [1] - 37:9
**fall** [4] - 21:12, 25:12, 30:2, 31:22
**favorite** [1] - 16:10
**February** [12] - 12:15, 12:16, 12:17, 22:5, 22:6, 30:18, 31:16, 31:17, 31:18, 43:14, 46:15, 46:16
**felt** [1] - 36:17
**few** [1] - 30:25
**field** [3] - 7:13, 11:17
**file** [2] - 4:20, 34:19
**filed** [4] - 5:14, 5:18, 32:18, 49:2
**filing** [1] - 5:1
**filter** [1] - 43:8
**finally** [1] - 8:21
**findings** [1] - 48:1
**firm** [9] - 7:9, 7:18, 10:7, 11:6, 11:25, 12:1, 12:3, 34:13, 34:14
**firms** [8] - 9:15, 9:16,

9:21, 10:3, 10:6, 10:11, 20:7, 20:14
**first** [8] - 9:14, 13:6, 18:5, 19:10, 21:17, 26:24, 46:2, 49:1
**fit** [1] - 24:23
**FL** [3] - 1:14, 1:18, 1:22
**Floor** [2] - 2:2, 51:8
**FLORIDA** [1] - 1:1
**Florida** [3] - 1:4, 2:3, 51:9
**flow** [1] - 32:9
**flurry** [1] - 4:18
**folks** [3] - 20:16, 31:21, 32:12
**following** [2] - 4:1, 15:13
**FOR** [4] - 1:12, 1:16, 3:3, 3:6
**foregoing** [1] - 51:2
**forgot** [1] - 35:19
**formed** [1] - 7:1
**forth** [2] - 23:18, 29:6
**forward** [1] - 39:15
**forwarding** [1] - 23:22
**frankly** [1] - 40:25
**Friday** [1] - 6:6
**friend** [1] - 8:25
**front** [1] - 44:1
**fuels** [1] - 7:17
**funded** [3] - 8:2, 8:3, 8:4

## G

**Gables** [1] - 1:14
**gentlemen** [1] - 4:16
**given** [3] - 27:9, 40:21, 50:1
**global** [1] - 42:23
**guess** [8] - 6:4, 9:5, 14:10, 14:24, 16:2, 22:16, 43:20, 45:6
**guy** [1] - 23:13

## H

**hand** [1] - 25:12
**handle** [1] - 15:8
**hands** [1] - 40:11
**happy** [3] - 20:20, 22:21, 33:11
**head** [1] - 9:7
**heads** [1] - 6:3
**health** [1] - 31:11
**HEARING** [1] - 1:9
**hearing** [5] - 5:20, 12:18, 22:12, 30:19, 31:2, 34:4, 35:7,

38:6, 43:15, 43:18, 43:19, 44:21, 46:6, 46:25, 47:3
**hearings** [3] - 47:17, 49:12, 50:20
**Heat** [27] - 8:10, 9:17, 10:3, 10:4, 10:10, 11:7, 12:4, 20:4, 20:14, 21:19, 21:21, 22:3, 22:7, 23:4, 23:7, 26:6, 26:7, 28:8, 29:2, 32:6, 32:9, 32:11, 33:21, 34:17, 34:24, 39:6, 42:14
**held** [4] - 4:1, 46:17, 49:12
**help** [1] - 7:19
**helping** [1] - 19:11
**hereby** [1] - 51:2
**herring** [3] - 31:1, 32:4, 32:20
**highly** [1] - 4:25
**hire** [1] - 33:1
**hmm** [1] - 8:4
**holder** [1] - 22:2
**holding** [1] - 32:14
**holds** [2] - 32:6, 32:7
**Honor** [69] - 4:4, 4:6, 4:9, 4:14, 4:22, 5:7, 5:10, 5:25, 6:10, 6:13, 6:18, 6:25, 9:22, 10:1, 13:8, 13:16, 14:3, 15:3, 15:9, 16:6, 16:10, 18:6, 19:10, 20:8, 20:23, 23:25, 25:21, 26:17, 26:25, 27:4, 28:15, 30:11, 30:14, 33:11, 35:15, 35:19, 36:6, 37:11, 37:14, 38:5, 38:10, 39:18, 41:2, 43:13, 44:12, 44:16, 44:17, 45:1, 45:4, 45:11, 45:14, 45:24, 46:7, 46:18, 47:18, 48:6, 48:11, 48:23, 49:6, 49:19, 49:25, 50:3, 50:6, 50:8, 50:14, 50:17, 50:22, 50:23
**Honor's** [1] - 9:1
**HONORABLE** [1] - 1:10
**hundreds** [2] - 38:24

## I

**idea** [3] - 7:14, 8:15, 20:11

**identified** [3] - 17:7, 26:15, 28:12
**identifies** [1] - 36:7
**identifying** [1] - 9:25
**IH** [1] - 23:6
**immediately** [1] - 47:3
**implement** [1] - 44:8
**important** [2] - 7:7, 7:10
**IN** [1] - 3:9
**inadvertently** [1] - 27:5
**inclination** [1] - 35:6
**included** [3] - 5:6, 39:24, 46:13
**including** [4] - 43:9, 43:11, 45:21, 46:5
**inclusion** [2] - 46:22, 48:2
**incorrect** [7] - 14:12, 15:15, 15:19, 15:20, 31:5, 31:14, 42:6
**incorrectly** [1] - 17:19
**independent** [7] - 31:8, 31:12, 31:13, 37:21, 37:22, 41:12, 41:18
**indicate** [1] - 16:7
**individual** [9] - 12:14, 16:25, 19:23, 25:11, 31:18, 40:5, 42:24, 47:1, 47:15
**individuals** [1] - 7:1
**Industrial** [27] - 8:10, 9:17, 10:2, 10:4, 10:10, 11:7, 12:4, 20:4, 20:14, 21:19, 21:20, 22:3, 22:7, 23:4, 23:7, 26:6, 26:7, 28:8, 29:2, 32:5, 32:9, 32:11, 33:21, 34:17, 34:24, 39:6, 42:14
**industry** [2] - 7:24, 7:25
**information** [4] - 23:2, 28:5, 34:16, 48:2
**informing** [1] - 11:16
**inspection** [2] - 22:20, 22:21
**instance** [4] - 13:7, 26:24, 47:5, 47:8
**instead** [1] - 22:14
**intellectual** [10] - 7:5, 7:7, 7:12, 11:11, 20:5, 21:16, 32:11, 32:23, 33:15, 33:22
**intelligently** [2] - 47:22, 48:18
**interest** [4] - 21:21,

28:8, 28:11, 32:13
**International** [3] -
21:24, 23:5, 32:5
**interpreter** [4] - 19:18,
25:19, 25:22, 26:1
**interpreting** [2] -
25:25, 26:5
**investigate** [1] - 8:1
**investing** [2] - 7:2, 7:4
**investment** [1] - 8:5
**Investors** [1] - 7:9
**involve** [1] - 43:11
**involved** [23] - 6:25,
7:1, 7:2, 8:14, 9:4,
10:22, 12:4, 12:21,
17:2, 17:3, 17:22,
18:1, 18:14, 19:11,
23:2, 23:4, 25:11,
25:25, 28:4, 37:24,
45:20, 47:9, 47:13
**involvement** [7] -
10:16, 16:11, 18:13,
18:20, 38:3, 39:13,
41:3
**involves** [2] - 11:16,
34:23
**involving** [3] - 16:23,
21:8, 37:2
**IP** [22] - 21:8, 21:22,
22:8, 22:11, 23:3,
26:5, 26:8, 26:11,
26:21, 28:22, 28:23,
28:24, 32:4, 32:7,
32:17, 33:17, 33:18,
33:19, 38:13, 38:22
**IPH** [8] - 21:24, 23:5,
23:6, 26:18, 32:5,
32:10, 32:11, 34:1
**irrelevant** [1] - 19:24
**issue** [20] - 8:20, 8:22,
9:2, 9:10, 10:16,
19:23, 20:12, 23:24,
30:25, 32:4, 32:21,
33:6, 34:21, 40:4,
40:12, 42:18, 44:7,
48:20
**issues** [9] - 12:23,
14:14, 14:15, 15:10,
21:2, 21:12, 32:17,
33:8, 33:22
**IT** [1] - 28:8
**itself** [3] - 25:7, 26:12,
45:16

### J

**janitor** [3] - 17:2, 17:7
**jannesser@pbylaw.
com** [1] - 1:15
**job** [1] - 7:19

**JOHN** [1] - 1:12
**John** [1] - 4:9
**joint** [2] - 21:13, 26:10
**Jones** [6] - 1:16, 1:20,
4:15, 6:2, 8:2, 31:21
**judge** [44] - 8:21, 8:22,
9:12, 11:4, 13:17,
14:7, 14:13, 14:20,
14:25, 15:15, 15:17,
17:11, 17:17, 17:19,
18:18, 18:21, 19:6,
20:9, 20:17, 30:7,
30:19, 33:10, 34:3,
34:6, 35:15, 41:1,
41:3, 42:5, 42:10,
42:17, 42:22, 43:3,
43:4, 43:6, 43:16,
43:17, 43:24, 46:21,
47:8
**JUDGE** [1] - 1:10
**Judge** [33] - 5:15,
8:20, 9:5, 9:13, 12:8,
22:13, 22:16, 24:14,
24:17, 25:8, 27:10,
30:21, 30:22, 31:16,
35:5, 36:15, 37:4,
37:5, 37:10, 39:4,
39:21, 40:3, 44:2,
44:8, 44:23, 48:13,
48:21, 48:24, 49:12,
50:13, 50:18
**judge's** [8] - 12:22,
12:23, 12:24, 14:2,
35:11, 42:17, 43:25,
44:17
**judgment** [2] - 15:13,
49:1

### K

**keep** [2] - 41:9, 42:2
**kind** [25] - 7:8, 7:12,
7:22, 8:5, 8:16, 9:10,
11:1, 11:15, 16:12,
16:25, 18:22, 19:14,
26:1, 32:3, 32:7,
32:10, 32:12, 33:8,
33:12, 34:5, 34:21,
35:20, 43:21, 47:14
**knowledge** [2] - 7:10,
7:13

### L

**label** [1] - 11:19
**language** [7] - 5:5,
18:22, 18:24, 19:1,
19:7, 31:6, 41:18
**last** [2] - 34:8, 35:8
**late** [1] - 35:24

**lately** [1] - 4:18
**latter** [1] - 46:7
**law** [20] - 7:5, 9:15,
9:16, 9:20, 10:6,
10:11, 11:6, 11:15,
11:25, 12:1, 12:3,
19:16, 20:7, 20:14,
23:17, 25:12, 34:13,
34:14, 35:14, 38:18
**Law** [6] - 10:7, 10:14,
22:4, 34:15, 40:15,
42:12
**lawyer** [4] - 10:22,
19:13, 19:22, 34:12
**lawyer-party** [1] -
10:22
**lawyers** [6] - 7:20,
7:21, 8:9, 11:18,
34:18
**least** [3] - 18:7, 26:4,
49:9
**led** [1] - 37:3
**left** [1] - 31:25
**legal** [15] - 19:12,
20:1, 23:15, 26:21,
29:10, 29:14, 29:15,
29:25, 32:16, 37:24,
45:20, 46:3, 46:24,
47:14
**Leonardo** [2] - 4:2,
21:8
**letter** [1] - 11:5
**letters** [2] - 9:16,
10:12
**level** [3] - 12:5, 28:3,
28:4
**LEXIS** [1] - 29:8
**Liability** [1] - 29:7
**license** [5] - 21:22,
21:23, 22:2, 32:9,
33:25
**light** [1] - 12:9
**limit** [1] - 34:7
**limitations** [1] - 38:11
**limited** [5] - 21:2,
21:7, 21:11, 21:25,
26:13
**line** [3] - 31:22, 48:4
**list** [1] - 36:7
**listed** [3] - 16:16, 17:2,
21:6
**litigant** [1] - 16:4
**litigation** [12] - 6:3,
21:10, 24:5, 24:9,
24:12, 35:18, 36:2,
36:5, 37:2, 37:3
**Litigation** [1] - 29:7
**load** [1] - 24:8
**local** [1] - 5:9
**log** [14] - 8:7, 8:18,

16:4, 16:6, 16:9,
16:16, 16:17, 16:18,
16:19, 21:6, 21:11,
27:2, 28:19, 36:7
**Lomax** [3] - 4:15,
8:25, 30:20
**LOMAX** [1] - 1:20
**look** [20] - 9:14, 12:20,
13:5, 19:25, 22:25,
24:17, 25:14, 26:3,
26:19, 27:9, 27:23,
28:15, 30:4, 31:18,
33:9, 39:5, 39:10,
39:21, 39:23
**looked** [7] - 11:4,
12:10, 30:25, 31:17,
31:19, 39:4
**looking** [8] - 7:2, 20:2,
22:17, 26:3, 46:23,
47:1, 47:15
**looks** [2] - 6:6
**Low** [1] - 7:14
**lower** [1] - 28:3
**lower-level** [1] - 28:3

### M

**magistrate** [18] - 14:1,
14:12, 14:25, 18:18,
18:21, 19:6, 27:13,
34:3, 34:6, 35:15,
41:1, 41:2, 42:5,
42:10, 42:22, 46:21,
49:15, 49:24
**Magistrate** [3] - 29:21,
49:11, 50:13
**mail** [7] - 20:9, 27:6,
27:14, 30:4, 34:17
**mails** [5] - 23:13, 26:3,
38:24, 38:25, 39:3
**main** [1] - 8:12
**March** [14] - 1:5, 6:15,
31:2, 31:24, 44:14,
44:19, 44:20, 44:21,
44:23, 44:24, 45:4,
46:17, 46:25, 47:17
**MARKED** [1] - 3:9
**masse** [1] - 8:11
**matter** [13] - 10:19,
11:19, 15:22, 19:16,
21:10, 21:15, 21:16,
22:12, 29:16, 32:21,
33:5, 42:16, 51:4
**matters** [3] - 22:9,
47:23, 49:24
**McCARN** [2] - 2:1,
51:7
**mean** [19] - 8:3, 13:24,
14:3, 14:5, 15:5,
19:18, 19:21, 20:7,

33:1, 33:17, 33:18,
34:24, 38:24, 42:1,
43:12, 43:19, 43:20,
47:23, 48:11
**meet** [4] - 34:13,
34:15, 47:11
**meeting** [3] - 6:1,
20:13, 20:16
**mention** [1] - 35:20
**mentioned** [1] - 18:5
**message** [1] - 5:10
**met** [1] - 23:14
**MIAMI** [1] - 1:2
**Miami** [7] - 1:4, 1:18,
1:22, 2:2, 2:3, 51:8,
51:9
**microphone** [1] -
30:17
**mid** [1] - 28:4
**mid-level** [1] - 28:4
**midst** [1] - 48:25
**might** [2] - 8:4, 40:22
**mine** [1] - 38:7
**MISCELLANEOUS** [1]
- 3:17
**misrepresentation** [1]
- 36:21
**mistaken** [1] - 49:3
**Monday** [5] - 6:6,
13:18, 15:14, 47:4,
50:19
**money** [1] - 7:3
**morning** [7] - 4:4, 4:5,
4:6, 4:12, 4:14,
20:23, 20:24
**Morris** [3] - 23:20,
25:3, 29:23
**most** [2] - 36:9, 37:16
**motion** [2] - 15:2, 49:8
**MOTION** [1] - 1:9
**motions** [3] - 4:19,
15:13, 49:1
**MR** [105] - 4:4, 4:6,
4:9, 4:14, 4:17, 4:22,
5:7, 5:8, 5:25, 6:10,
6:12, 6:18, 6:20,
6:24, 9:22, 10:1,
10:6, 10:9, 10:12,
11:9, 11:23, 13:2,
13:4, 13:8, 13:10,
13:14, 13:16, 13:20,
13:23, 14:3, 14:10,
14:24, 15:3, 15:7,
15:23, 16:2, 16:6,
16:9, 16:15, 17:21,
17:25, 18:4, 18:11,
18:21, 19:1, 19:4,
19:9, 20:23, 20:25,
23:25, 25:17, 25:21,
26:2, 26:17, 26:25,

27:4, 27:8, 27:19, 28:14, 28:18, 30:11, 30:14, 35:19, 36:6, 36:14, 36:23, 37:14, 37:22, 38:5, 38:10, 39:18, 41:2, 41:14, 41:21, 41:24, 42:1, 42:4, 42:9, 43:1, 44:16, 45:1, 45:4, 45:9, 45:11, 45:14, 45:24, 46:6, 46:13, 46:18, 46:25, 48:6, 48:11, 48:20, 48:23, 49:6, 49:19, 49:25, 50:3, 50:6, 50:8, 50:14, 50:17, 50:18, 50:22, 50:23
**Myers** [1] - 10:6, 10:13, 20:15, 21:18, 34:15, 42:13

## N

**name** [1] - 8:18
**nature** [1] - 22:23
**necessary** [1] - 29:23
**need** [6] - 5:21, 13:25, 19:17, 19:18, 29:19, 49:23
**needed** [3] - 14:16, 19:22, 50:20
**neighborhood** [1] - 24:2
**Netherlands** [1] - 32:6
**never** [5] - 15:21, 25:1, 32:2, 33:2, 37:10
**new** [1] - 7:8
**next** [4] - 5:14, 5:18, 22:18, 49:9
**nice** [1] - 50:24
**night** [1] - 6:4
**NK** [7] - 10:7, 10:14, 22:4, 34:15, 40:15, 42:12, 42:13
**NO** [1] - 1:2
**non** [2] - 31:22, 49:17
**non-dispositive** [1] - 49:17
**non-privileged** [1] - 31:22
**none** [3] - 17:3, 26:22, 35:22
**nonissue** [1] - 31:1
**nonlawyer** [1] - 19:12
**nonparty** [4] - 10:5, 10:11, 10:16, 10:22
**North** [2] - 2:2, 51:8
**notable** [1] - 22:3
**nothing** [3] - 22:2, 49:5

**notice** [2] - 43:21, 44:17
**notwithstanding** [5] - 5:2, 19:6, 21:2, 37:17, 41:18
**Nuclear** [1] - 7:14
**number** [11] - 8:8, 21:16, 27:19, 29:10, 33:20, 36:8, 36:10, 38:24, 44:25, 48:3
**numerous** [1] - 23:18

## O

**o'clock** [1] - 6:14
**O'Sullivan** [26] - 4:23, 8:20, 9:5, 9:13, 12:8, 22:13, 22:17, 27:10, 29:21, 30:23, 31:16, 35:5, 36:15, 37:4, 37:5, 37:10, 39:4, 44:2, 44:8, 44:23, 48:13, 48:21, 48:25, 49:13, 50:18
**O'Sullivan's** [5] - 5:15, 24:14, 25:8, 49:11, 50:19
**obligations** [3] - 32:7, 32:8, 33:25
**obtain** [1] - 48:16
**Obviously** [1] - 33:19
**occurred** [1] - 31:2
**OF** [1] - 1:1
**official** [1] - 2:1
**Official** [1] - 51:8
**often** [1] - 25:1
**older** [1] - 38:6
**once** [4] - 15:11, 39:12, 40:4, 44:1
**one** [46] - 5:14, 10:4, 10:13, 11:12, 11:14, 12:2, 12:13, 12:22, 14:4, 14:10, 16:10, 18:21, 19:8, 20:8, 20:9, 20:14, 21:17, 22:17, 24:18, 25:22, 27:16, 27:20, 29:10, 30:4, 33:6, 33:8, 33:9, 34:21, 35:8, 36:20, 36:23, 36:24, 37:6, 39:2, 39:3, 39:7, 45:25, 46:19, 48:4, 49:6, 50:8
**one's** [2] - 12:10, 12:11
**ones** [3] - 12:12, 23:23, 28:20
**open** [1] - 38:19
**opportunity** [4] - 16:1, 27:9, 30:3, 40:8

**opposed** [1] - 33:25
**opposite** [1] - 40:2
**order** [26] - 4:23, 5:4, 5:21, 5:24, 10:2, 12:23, 12:24, 13:22, 14:2, 22:10, 29:6, 29:23, 30:7, 35:5, 44:13, 44:14, 44:19, 44:20, 44:22, 44:24, 45:4, 45:16, 48:4
**ordered** [1] - 22:13
**ordering** [2] - 43:3, 43:5
**orders** [2] - 4:19, 49:11
**otherwise** [7] - 18:14, 21:7, 27:22, 28:24, 31:6, 35:6, 40:10
**outside** [2] - 26:18, 38:14
**overbroad** [1] - 30:7
**overly** [1] - 26:15

## P

**P.L** [1] - 1:13
**Pace** [8] - 4:14, 21:1, 21:3, 25:18, 30:13, 37:19, 40:25, 48:11
**PACE** [74] - 1:16, 4:6, 4:14, 4:17, 5:8, 5:25, 6:12, 6:18, 6:20, 6:24, 9:22, 10:1, 10:6, 10:9, 10:12, 11:9, 11:23, 13:2, 13:4, 13:8, 13:10, 13:14, 13:16, 13:20, 13:23, 14:3, 14:10, 14:24, 15:3, 15:7, 15:23, 16:2, 16:6, 16:9, 16:15, 17:21, 17:25, 18:4, 18:11, 18:21, 19:1, 19:4, 19:9, 30:14, 35:19, 36:6, 36:14, 36:23, 37:22, 38:5, 41:2, 41:14, 41:21, 41:24, 42:1, 42:4, 42:9, 43:1, 44:16, 45:1, 45:4, 45:9, 45:11, 45:14, 45:24, 46:6, 46:13, 46:18, 46:25, 48:6, 50:18, 50:22
**page** [1] - 20:9
**Page** [4] - 3:3, 3:6, 3:18, 47:8
**Pages** [1] - 1:8
**pages** [4] - 22:16, 30:20, 30:22, 39:1

**paint** [1] - 21:3
**par** [1] - 38:8
**parent** [1] - 32:15
**part** [10] - 6:25, 9:2, 19:24, 19:25, 23:23, 25:15, 29:3, 29:13, 33:13, 43:12
**particular** [8] - 8:17, 8:21, 11:2, 12:7, 12:19, 16:20, 21:5, 40:4
**Particularly** [1] - 34:14
**parties** [7] - 5:1, 22:25, 23:19, 27:21, 27:25, 38:12, 49:11
**partner** [1] - 23:20
**party** [5] - 8:15, 10:22, 25:19, 39:15, 49:22
**passing** [1] - 33:12
**patent** [18] - 7:20, 7:21, 8:9, 9:15, 9:16, 9:20, 10:3, 10:6, 10:11, 11:11, 20:7, 32:10, 32:19, 32:22, 34:18, 37:8, 38:22
**Patent** [6] - 10:7, 10:14, 22:4, 34:15, 40:15, 42:12
**patent-related** [1] - 11:11
**patenting** [1] - 28:24
**patents** [1] - 7:11
**Pause** [6] - 36:22, 40:24, 45:15, 47:21
**people** [7] - 7:21, 7:24, 19:15, 20:11, 27:24, 29:24, 39:25
**perfect** [1] - 6:12
**perfectly** [1] - 34:1
**perhaps** [1] - 49:20
**period** [6] - 15:3, 24:5, 26:9, 28:9, 50:9, 50:12
**Perlman** [1] - 1:13
**person** [8] - 8:12, 11:20, 17:6, 19:13, 19:18, 33:2, 39:13, 40:16
**personal** [1] - 44:4
**persons** [1] - 29:18
**pertained** [1] - 46:24
**pertains** [1] - 49:8
**phrase** [1] - 37:24
**PLAINTIFF** [2] - 1:12, 3:3
**Plaintiff** [1] - 5:15
**Plaintiff's** [2] - 3:10, 5:24
**plaintiffs** [1] - 8:11
**Plaintiffs** [6] - 1:5, 4:7,

4:10, 6:11, 21:9, 40:11
**planning** [2] - 6:2, 6:4
**play** [1] - 12:1
**played** [1] - 41:17
**Plaza** [2] - 1:17, 1:21
**podium** [1] - 6:21
**point** [8] - 20:1, 21:23, 21:25, 22:6, 24:12, 30:15, 30:18, 40:9
**policies** [1] - 38:19
**pops** [1] - 33:9
**portfolio** [1] - 20:5
**position** [2] - 5:3, 35:16
**possibilities** [1] - 14:23
**possible** [2] - 15:9, 50:16
**PRE** [1] - 3:9
**predicated** [2] - 24:14, 25:8
**present** [6] - 16:9, 27:13, 30:5, 40:19, 44:3, 48:20
**presented** [4] - 22:16, 22:20, 41:16, 41:21
**presenting** [2] - 34:5, 48:19
**preserve** [1] - 40:6
**president** [1] - 17:7
**pretty** [2] - 16:19, 20:10
**primarily** [2] - 7:4, 8:10
**privilege** [66] - 8:7, 8:18, 8:19, 10:23, 11:21, 11:22, 12:5, 15:8, 15:9, 15:10, 16:4, 16:6, 16:9, 16:16, 16:17, 16:18, 16:19, 17:14, 17:25, 18:3, 18:17, 18:19, 21:6, 21:11, 21:15, 24:1, 24:21, 25:6, 25:12, 25:15, 25:20, 27:2, 27:17, 28:19, 31:14, 32:19, 36:4, 36:7, 36:10, 36:11, 36:25, 38:17, 38:18, 38:23, 39:7, 39:8, 39:15, 39:17, 39:23, 39:24, 39:25, 40:6, 40:7, 40:20, 40:21, 41:4, 41:9, 46:5, 47:10, 48:3, 48:16, 48:18
**privileged** [19] - 5:16, 8:14, 12:11, 12:21, 14:18, 16:24, 17:4,

20:10, 20:12, 23:1,
24:16, 25:10, 26:15,
31:22, 33:2, 33:10,
33:24, 34:24, 48:9
**problem** [2] - 43:12,
47:24
**procedure** [1] - 44:8
**proceeding** [1] - 37:9
**proceedings** [13] -
4:1, 36:22, 40:24,
45:15, 46:15, 46:16,
47:21, 48:13, 49:15,
50:20, 50:25, 51:3
**Proceedings.............**
**.........................** [1] -
3:19
**produce** [10] - 12:13,
13:18, 14:7, 15:5,
15:11, 17:23, 26:24,
31:23, 43:9, 48:8
**product** [24] - 10:18,
10:20, 10:23, 11:22,
11:23, 18:1, 18:3,
18:5, 18:7, 18:8,
18:15, 18:17, 24:7,
35:22, 35:23, 36:1,
36:8, 36:12, 36:19,
36:25, 37:6, 42:16,
42:19, 43:11
**production** [2] -
28:13, 44:6
**Products** [1] - 29:7
**prompted** [1] - 9:9
**properly** [1] - 23:12
**property** [10] - 7:5,
7:7, 7:12, 11:11,
20:5, 21:16, 32:11,
32:23, 33:15, 33:22
**proposed** [1] - 5:5
**protected** [6] - 10:20,
18:14, 45:8, 46:1,
47:10
**protecting** [1] - 33:14
**protection** [3] - 7:6,
20:5, 42:16
**protections** [1] - 7:11
**protective** [2] - 4:23,
5:4
**prove** [1] - 12:25
**provide** [4] - 6:24,
16:6, 20:3, 20:25
**provided** [6] - 16:17,
28:5, 28:6, 46:10,
47:19, 49:15
**provides** [1] - 49:16
**provision** [3] - 11:12,
11:14, 31:7
**provisions** [1] - 9:8
**purportedly** [1] -
21:20, 28:7

**purpose** [3] - 13:15,
14:1, 35:7
**purposes** [2] - 11:15,
19:19
**pursued** [1] - 15:14
**pursuing** [2] - 32:16,
33:21
**put** [9] - 7:15, 11:20,
27:5, 29:25, 33:10,
38:11, 40:9, 44:7,
44:9
**putting** [1] - 32:21

## Q

**qualified** [1] - 39:10
**qualify** [1] - 39:7
**questions** [1] - 45:19
**quickly** [2] - 30:23,
50:16
**quite** [1] - 4:18

## R

**raise** [3] - 11:3, 39:9,
40:4
**raised** [4] - 34:8, 34:9,
36:15, 37:10
**raises** [1] - 47:24
**raising** [1] - 36:4
**re** [7] - 12:9, 12:12,
16:11, 17:14, 29:6,
31:20, 31:21
**re-review** [5] - 12:9,
12:12, 17:14, 31:20,
31:21
**reach** [1] - 46:11
**reached** [1] - 46:20
**Reaction** [1] - 7:14
**read** [1] - 48:5
**reading** [1] - 8:22
**ready** [2] - 5:21, 43:22
**real** [2] - 7:4, 7:20
**realize** [1] - 31:3
**really** [2] - 11:14,
27:23
**reason** [6] - 11:12,
13:4, 18:18, 18:21,
20:6, 48:23
**reasonable** [1] - 36:1
**reasons** [4] - 14:14,
17:18, 27:19, 35:8
**receiving** [1] - 30:1
**recent** [2] - 5:14, 37:1
**recognized** [1] - 43:2
**reconsider** [2] - 15:2,
48:24
**reconsideration** [1] -
42:3
**record** [8] - 20:18,

30:23, 33:11, 41:11,
42:6, 42:10, 47:19
**recourses** [1] - 42:2
**red** [3] - 31:1, 32:4,
32:20
**redacted** [1] - 34:10
**redactions** [1] - 34:11
**refer** [4] - 8:13, 19:15,
49:24
**reference** [1] - 33:12
**references** [1] - 44:24
**referred** [1] - 49:23
**referring** [4] - 5:16,
8:13, 45:2, 45:7
**refers** [1] - 49:21
**reflected** [1] - 44:18
**regarding** [6] - 5:15,
22:1, 22:9, 23:3,
24:3, 35:16
**relate** [2] - 28:22, 37:2
**related** [4] - 11:11,
23:13, 26:24, 46:3
**relates** [4] - 21:16,
29:15, 33:22, 38:12
**relating** [3] - 28:7,
32:17
**relation** [1] - 25:16
**relationship** [14] -
19:8, 19:11, 22:24,
25:15, 25:17, 27:15,
27:20, 27:23, 27:24,
29:1, 31:12, 37:17,
37:20, 39:6
**relevant** [3] - 11:20,
23:15, 40:12
**rely** [2] - 21:14, 22:4
**relying** [1] - 24:7
**remand** [2] - 48:12,
48:24
**remember** [1] - 11:1
**rendered** [2] - 23:16,
29:16
**reply** [1] - 34:8
**REPORTED** [1] - 2:1
**Reporter** [2] - 2:1,
51:8
**Reporter's** [1] - 3:19
**representation** [3] -
21:13, 26:10, 40:13
**representative** [3] -
11:20, 27:1, 27:8
**represented** [1] - 26:4
**request** [6] - 28:13,
28:20, 29:13, 45:7,
46:1, 49:7
**requested** [3] - 11:10,
17:11, 43:17
**requests** [1] - 33:8
**require** [4] - 14:12,
17:8, 38:14, 44:3

**required** [7] - 4:24,
11:10, 15:23, 15:25,
35:4, 48:8
**requirement** [2] -
19:10, 28:1
**requirements** [2] -
27:16, 29:5
**research** [1] - 8:2
**researched** [1] - 7:8
**resolve** [1] - 50:16
**respect** [6] - 21:6,
23:9, 38:13, 40:14,
49:10, 49:21
**respects** [2] - 29:1,
29:2
**respond** [2] - 17:5,
20:22
**responses** [1] - 49:2
**responsibilities** [1] -
19:25
**responsibility** [1] -
50:11
**responsible** [1] -
40:17
**responsive** [6] - 21:5,
27:3, 28:12, 28:20,
33:7, 33:16
**responsiveness** [1] -
33:6
**rest** [1] - 37:1
**resulted** [1] - 45:22
**retained** [2] - 7:9,
10:11
**returned** [1] - 35:14
**reverse** [3] - 41:1,
41:5, 45:13
**reversed** [2] - 14:19,
45:5
**reversing** [1] - 45:3
**review** [15] - 12:9,
12:12, 17:11, 17:14,
22:14, 22:17, 30:6,
30:21, 31:19, 31:20,
31:21, 31:25, 38:15,
43:15, 47:25
**reviewed** [2] - 30:8,
35:2
**rights** [9] - 26:6, 26:7,
26:20, 26:21, 28:25,
32:10, 32:11, 33:15,
33:24
**River** [41] - 7:9, 7:18,
8:6, 8:9, 8:12, 9:4,
9:17, 10:3, 11:5,
11:6, 11:9, 12:2,
12:3, 12:21, 16:23,
17:22, 18:1, 18:13,
18:25, 19:2, 20:14,
21:20, 21:21, 22:7,
22:24, 23:20, 28:25,

29:22, 34:13, 34:23,
39:6, 39:16, 41:4,
42:11, 42:14, 43:10,
45:22, 46:5, 47:9,
47:12
**River's** [2] - 18:19,
46:22
**role** [2] - 8:6, 41:17
**room** [1] - 11:21
**ROSSI** [1] - 1:4
**Rossi** [4] - 4:2, 4:10,
21:8, 21:22
**rough** [1] - 47:5
**RPR** [2] - 2:1, 51:7
**Rule** [1] - 49:10
**rule** [3] - 44:11, 47:22,
48:18
**ruled** [3] - 13:17, 14:7,
15:4, 16:10, 17:17,
17:19, 18:5, 47:8,
47:14
**rules** [1] - 5:9
**ruling** [32] - 5:15, 9:1,
12:22, 13:10, 14:7,
15:16, 15:18, 17:14,
17:20, 17:21, 18:9,
18:12, 20:19, 24:14,
25:8, 35:9, 35:11,
39:22, 41:3, 41:14,
42:17, 42:22, 42:23,
43:13, 43:24, 43:25,
44:17, 48:7, 48:8,
48:17
**rulings** [1] - 44:4

## S

**sampling** [2] - 22:15,
27:12
**satisfy** [1] - 27:16
**save** [1] - 23:12
**saw** [1] - 13:19
**scope** [5] - 11:15,
13:21, 19:25, 29:17,
34:8
**seal** [3] - 4:20, 5:1
**seated** [1] - 4:16
**second** [7] - 9:8,
10:18, 11:3, 22:4,
36:20, 44:8, 45:21
**secret** [1] - 7:11
**secure** [1] - 29:14
**see** [7] - 12:14, 16:19,
25:6, 28:21, 33:11,
42:7, 50:24
**seek** [2] - 4:20, 42:3
**seeking** [2] - 26:21,
29:25
**send** [1] - 14:25
**sense** [3] - 7:17, 7:23,

9:19
**sent** [1] - 23:1
**separate** [3] - 10:12, 28:7, 31:24
**separately** [2] - 11:3, 12:8
**services** [3] - 29:14, 29:15, 37:25
**session** [1] - 33:14
**set** [4] - 6:14, 20:15, 29:6, 30:25
**setting** [1] - 49:9
**several** [2] - 30:20, 30:22
**shade** [1] - 26:19
**shall** [1] - 23:8
**short** [1] - 5:20
**should've** [1] - 39:19
**show** [13] - 14:17, 20:6, 20:8, 24:13, 25:5, 25:10, 29:21, 31:9, 33:11, 34:2, 38:17, 40:6, 40:23
**showed** [2] - 8:18, 46:23
**showing** [5] - 23:14, 24:15, 25:9, 27:1, 29:20
**showings** [1] - 40:18
**shown** [1] - 28:25
**shows** [1] - 36:16
**side** [4] - 16:17, 31:22, 40:2, 44:7
**similar** [2] - 16:19, 26:1
**simply** [4] - 18:1, 18:13, 33:24, 34:22
**single** [1] - 16:5
**sit** [1] - 7:21
**situation** [1] - 8:16
**situations** [1] - 42:11
**small** [2] - 36:8, 36:10
**Smith** [2] - 8:1, 8:5
**solely** [6] - 21:16, 23:19, 28:7, 38:12, 40:13, 49:12
**someone** [2] - 19:19, 24:16
**somewhere** [2] - 12:17, 24:1
**Sorry** [1] - 9:22
**sorry** [13] - 6:21, 11:9, 17:6, 21:15, 21:19, 22:5, 26:7, 30:15, 33:17, 36:6, 38:13, 44:17, 47:6
**sort** [1] - 24:9
**sound** [1] - 43:4
**sounds** [1] - 9:7
**SOUTHERN** [1] - 1:1

**span** [1] - 17:23
**Spanish** [2] - 19:20
**sparse** [1] - 42:6
**speaking** [3] - 8:25, 19:19, 43:23
**speaks** [2] - 19:20, 47:12
**specific** [1] - 40:10
**specifically** [5] - 21:13, 23:7, 24:2, 37:10, 38:18
**stack** [1] - 22:15
**stand** [1] - 20:1
**standard** [1] - 38:19
**start** [3] - 6:24, 30:15, 30:18
**started** [1] - 24:10
**starts** [1] - 22:17
**state** [1] - 4:7
**statement** [1] - 31:15
**statements** [1] - 41:16
**STATES** [2] - 1:1, 1:10
**States** [1] - 51:8
**stating** [1] - 19:1
**stay** [1] - 6:4
**steeped** [1] - 7:5
**step** [2] - 6:21, 10:21
**STEPHANIE** [2] - 2:1, 51:7
**Stephanie_McCarn @flsd.uscourts.gov** [1] - 2:4
**steps** [1] - 9:5
**still** [3] - 32:13, 32:19, 40:5
**stood** [1] - 18:6
**strategy** [2] - 20:15, 33:14
**street** [1] - 19:21
**stroke** [2] - 21:4, 23:11
**structure** [1] - 29:19
**stuff** [1] - 25:25
**subject** [4] - 17:15, 21:10, 29:16, 31:19
**submit** [2] - 47:2, 47:18
**subsequent** [1] - 9:13
**substance** [1] - 14:13
**suddenly** [1] - 43:22
**sufficient** [1] - 43:7
**suggest** [1] - 50:15
**Suite** [3] - 1:13, 1:17, 1:21
**summary** [2] - 15:12, 49:1
**superior** [2] - 29:12, 29:13
**supplemental** [1] -

20:25
**support** [2] - 21:14, 21:15
**supposed** [1] - 45:3
**surprisingly** [1] - 8:8
**sweeping** [1] - 43:13
**sworn** [1] - 41:16

### T

**table** [1] - 37:15
**tackle** [1] - 14:20
**talks** [3] - 20:13, 41:12, 45:18
**tasked** [1] - 41:7
**tasks** [2] - 28:8, 29:2
**technical** [1] - 25:25
**technology** [4] - 7:2, 7:3, 33:13, 33:23
**terms** [7] - 20:18, 21:1, 26:13, 28:23, 33:6, 33:14, 34:4
**testing** [1] - 7:16
**THE** [106] - 1:10, 1:12, 1:16, 3:3, 3:6, 4:2, 4:5, 4:7, 4:12, 4:16, 4:18, 5:4, 5:12, 6:8, 6:14, 6:19, 6:23, 9:20, 9:24, 10:4, 10:8, 10:10, 11:8, 11:22, 13:1, 13:3, 13:6, 13:9, 13:12, 13:15, 13:19, 13:21, 13:25, 14:9, 14:22, 15:1, 15:6, 15:20, 15:25, 16:3, 16:7, 16:14, 17:20, 17:24, 18:2, 18:10, 18:18, 18:24, 19:3, 19:5, 20:21, 20:24, 23:23, 25:16, 25:18, 25:24, 26:14, 26:23, 27:1, 27:7, 27:18, 28:11, 28:17, 30:10, 30:12, 35:16, 36:3, 36:13, 37:12, 37:19, 38:1, 38:7, 39:12, 40:25, 41:5, 41:15, 41:23, 41:25, 42:2, 42:5, 42:21, 44:13, 44:22, 45:2, 45:6, 45:10, 45:12, 45:16, 45:25, 46:9, 46:14, 46:19, 47:22, 48:10, 48:12, 48:22, 49:5, 49:18, 49:23, 50:2, 50:5, 50:7, 50:13, 50:15, 50:21, 50:24
**there're** [2] - 21:2, 33:7

**they've** [5] - 24:4, 24:10, 28:16, 28:19, 40:23
**thinks** [1] - 35:11
**third** [5] - 8:15, 10:25, 11:4, 12:1, 25:19
**Thomas** [1] - 4:3
**THOMAS** [1] - 1:7
**thousand** [2] - 30:20, 30:22
**thousands** [2] - 38:25
**three** [1] - 9:14
**Thursday** [5] - 6:5, 13:17, 15:12, 35:8
**tied** [1] - 40:11
**timing** [2] - 33:4, 49:3
**today** [4] - 4:10, 5:17, 47:7, 47:19
**together** [1] - 23:11
**tole** [1] - 38:25
**took** [1] - 43:24
**top** [2] - 9:7, 23:17
**total** [1] - 24:3
**trade** [1] - 7:11
**transcript** [9] - 8:23, 44:18, 46:8, 46:10, 46:12, 46:14, 47:3, 47:4, 48:5
**transcription** [1] - 51:3
**transfer** [1] - 32:5
**translators** [1] - 7:23
**trial** [1] - 5:21
**trial-ready** [1] - 5:21
**trials** [1] - 49:15
**try** [3] - 7:22, 50:15, 50:19
**trying** [2] - 32:22, 34:7
**Tuesday** [3] - 6:6, 6:8, 6:15
**turn** [2] - 36:17, 43:5
**Twelfth** [2] - 2:2, 51:8
**two** [16] - 10:3, 10:6, 10:11, 12:10, 14:10, 14:23, 17:14, 19:9, 21:9, 27:24, 31:3, 33:8, 35:21, 45:18, 45:24, 49:20
**type** [2] - 40:18

### U

**U.S** [1] - 29:7
**unclear** [2] - 13:11, 13:12
**under** [10] - 4:20, 5:1, 25:12, 27:16, 32:8, 32:14, 33:24, 33:25, 39:7, 39:24
**underlying** [1] - 21:9

**understood** [1] - 14:6
**unfortunately** [1] - 28:15
**United** [1] - 51:8
**UNITED** [2] - 1:1, 1:10
**unprotected** [1] - 45:18
**up** [10] - 6:21, 8:18, 11:12, 18:6, 20:6, 27:1, 31:9, 33:9, 34:2, 36:16

### V

**Venture** [1] - 43:10
**Ventures** [34] - 7:18, 8:6, 8:9, 8:12, 9:4, 9:17, 10:3, 11:5, 11:6, 11:9, 12:2, 12:4, 16:24, 17:22, 18:1, 18:13, 18:14, 20:14, 21:20, 21:21, 22:7, 22:24, 23:20, 28:25, 29:23, 34:13, 34:23, 39:6, 41:4, 42:11, 42:14, 45:22, 47:9, 47:12
**versus** [5] - 45:20, 46:3, 46:22, 46:24, 47:13
**vice** [1] - 17:7
**view** [4] - 12:6, 12:14, 20:18, 30:24
**viewed** [3] - 9:10, 15:14, 43:23
**vs** [1] - 1:6

### W

**wait** [1] - 9:20
**waiver** [4] - 44:6, 45:22, 46:5, 46:21
**waiving** [2] - 39:8, 39:25
**walk** [2] - 17:9, 43:22
**wants** [2] - 14:21, 20:8
**Washington** [1] - 6:1
**waste** [1] - 39:1
**Water** [1] - 45:21
**ways** [2] - 9:14, 19:9
**wealth** [1] - 7:4
**weaver** [9] - 21:6, 23:8, 23:19, 23:20, 24:2, 25:2, 25:11, 27:15, 29:22
**Weaver** [7] - 8:11, 8:13, 8:14, 9:2, 9:3, 36:16, 40:15
**Weaver's** [1] - 22:24
**Wednesday** [2] - 6:2,

6:5

**week** [3] - 5:18, 15:13, 49:9

**whatsoever** [5] - 9:3, 21:21, 25:10, 26:6, 26:8

**whereas** [1] - 49:16

**whole** [3] - 23:11, 32:4, 44:7

**withheld** [4] - 34:12, 36:9, 36:11, 36:25

**withholding** [2] - 16:5, 16:8

**WITNESSES** [3] - 3:2, 3:3, 3:6

**words** [3] - 34:13, 37:5, 41:10

**work-for-hire** [1] - 33:1

**World** [2] - 1:17, 1:21

**world** [1] - 32:24

## Y

**yesterday** [1] - 5:18

**Yevoli** [1] - 1:13